FILED

OCT 07 2024

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

**ELIZABETH TIGANO**
**MARY BERNSTEIN**
**3416 Deerwood Terrace, #113**
**Fremont, CA 94536**
**Email: mbernsteinpurple@hotmail.com**
**(510) 938-6280**
**Plaintiffs Pro Se**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ELIZABETH TIGANO, MARY BERNSTEIN<br><br>        Plaintiffs,<br><br>    vs.<br><br>ALAMEDA COUNTY SUPERIOR COURT, a California Court with Jurisdiction over Alameda County, KEITH KERN FONG EUMI K. LEE, JENNA M. WHITMAN; ELIZABETH RILES; SUSAN LEW; MARK P. FICKES, BENTRISH SATARZADEH, JOHN DOE 1-50; MARY ROE 1-50; XYZ CORP 1-50; ABC LLC 1-50; The names of the "John Doe 1-50" "Mary Roe 1-50", "XYZ Corp, 1-50", and "ABC LLC, 1-50", defendants being fictitious, and unknown to the Plaintiff,<br><br>        Defendants. | Case No. **24  07001  VKD**<br><br>**VERIFIED COMPLAINT**<br>**JURY TRIAL DEMANDED[1]**<br>Pursuant to Fed. R. Civ. P. 38 (a), (b) & (c) Plaintiff hereby demand a trial by jury on all issues. RULE 38. RIGHT TO A JURY TRIAL; DEMAND |

---

[1]  Senate judiciary act of 1789 specifically gave people to right represent in court   perhaps you are not familiar
Two cases haines v kerner  404 US 519 (1972) Erickson v Pardus 551 US 89 (2007)
This is a pro se complaint entitled to a liberal reading and less stringent standards as this complaint was prepared without the
    assistance of legal counsel.

- 1 -

VERIFIED COMPLAINT

## I. THE PARTIES

1. Plaintiff Elizabeth Tigano is a citizen of the United States and resides in and resides in Alameda County, California. She is a qualified individual with cognitive disabilities as is defined by 42 U.S.C. 12101 et. seq., and has need of reasonable accommodations of the judicial division of the State of California in Alameda County for the purpose of testifying a civil litigation, in which Plaintiff Tigano's fundamental right to basic human need such as shelter, and/or housing was at issue.[2] Plaintiff was diagnosed with the following mental and neurological disorders and related cognitive disabilities:

[2] Psalm 37 1 Fret not yourself because of evildoers!
  be not envious of wrongdoers!
2 For they will soon fade like the grass
  and wither like the green herb
10 In just a little while, the wicked will be no more;
  though you look carefully at his place, he will not be there.
11 But the meek shall inherit the land
  and delight themselves in abundant peace.
12 The wicked plots against the righteous
  and gnashes his teeth at him,
13 but the Lord laughs at the wicked,
  for he sees that his day is coming.
14 The wicked draw the sword and bend their bows
  to bring down the poor and needy,
  to slay those whose way is upright;
15 their sword shall enter their own heart,
  and their bows shall be broken.

– 2 –

VERIFIED COMPLAINT

Schizophrenia, PTSD Post traumatic Stress Disorder, Disassociative Identity Disorder, Bipolar 1 & 2.  Plaintiff Tigano medicated disabled entire childhood has never obtained employment as was determined severely disabled social security benefits since age 18.  Plaintiff Tigano has been hospitalized in psychiatric hospital multiple times throughout life. [3]  Plaintiff is a Mother.

## Woe to Those Who Rely on Egypt

- Isaiah 31 Woe to Those Who Rely on Egypt 1 Woe to those who go down to Egypt for help, who rely on horses, who trust in the multitude of their chariots and in the great strength of their horsemen, but do not look to the Holy One of Israel, or seek help from the Lord.

[3]

Matthew 6:5-15

The Lord's Prayer

5 "And when you pray, you must not be like the hypocrites. For they love to stand and pray in the synagogues and at the street corners, that they may be seen by others. Truly, I say to you, they have received their reward. 6 But when you pray, go into your room and shut the door and pray to your Father who is in secret. And your Father who sees in secret will reward you.

7 "And when you pray, do not heap up empty phrases as the Gentiles do, for they think that they will be heard for their many words. 8 Do not be like them, for your Father knows what you need before you ask him. 9 Pray then like this:

"Our Father in heaven,
hallowed be your name.[a]
10 Your kingdom come,
your will be done,[b]
    on earth as it is in heaven.
11 Give us this day our daily bread,[c]
12 and forgive us our debts,
    as we also have forgiven our debtors.
13 And lead us not into temptation,
    but deliver us from evil.[d]
14 For if you forgive others their trespasses, your heavenly Father will also forgive you, 15 but if you do not forgive others their trespasses, neither will your Father forgive your trespasses.

Matthew 6:9 Or Let your name be kept holy, or Let your name be treated with reverence

Matthew 6:10 Or Let your kingdom come, let your will be done

Matthew 6:11 Or our bread for tomorrow

Matthew 6:13 Or the evil one; some manuscripts add For yours is the kingdom and the power and the glory, forever. Amen

Matthew 6:5-15

Matthew 6:13 The Greek for temptation can also mean testing.

Matthew 6:13 Or from evil; some late manuscripts one, / for yours is the kingdom and the power and the glory forever. Amen.

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



My Birth Certificate & Hospital Bracelet

- 4 -

VERIFIED COMPLAINT

2. Plaintiff Mary Bernstein is a citizen of the United States and resides in Alameda County, California. She is a qualified individual with cognitive disabilities as is defined by 42 U.S.C. 12101 et. seq., and has needed the services/reasonable accommodations of the judicial division of the State of California in Alameda County for the purpose of a civil litigation, in which Plaintiff's fundamental right to basic human need such as shelter, and/or housing was at issue. Plaintiff was diagnosed with the following mental and neurological disorders and related cognitive disabilities: Post-Traumatic Stress Disorder, Anxiety Disorder, Major Depressive Disorder, Bipolar 1, Personality Disorder, Attention Deficit Hyperactive Disorder. Plaintiff Mary Bernstein was diagnosed age 5 as suffering ADHD hyperactivity and prescribed Ritalin for years which was administered by her mother as well as the school nurse at Blenman Elementary School. Plaintiff worked for many years in legal field; permanently disabled 2012. Plaintiff is a GrandMother. Plaintiff Mother was disabled and Plaintiff a member of family with disabled younger ones children. Plaintiff does not want such horrific behavior to be experienced by future generations by Courts towards disabled persons. Plaintiff hopes that this experience does not happen to other disabled persons in Court.

- 5 –

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



VERIFIED COMPLAINT



3.

VERIFIED COMPLAINT

My Birth Announcement & Newspaper Announcement

Beth + Seth 7-22-04
Day #2
TMC

VERIFIED COMPLAINT

Welcome Home

My first day at home was July 24

I was dressed in blue

My address 2439 N. Richey Blvd

My room was decorated with Stuffed Animals and Toys

Memories of my first day at home cried, slept, ate.

Seth and Aunt Mary and elvira

- 9 -

VERIFIED COMPLAINT

T M C
Both & Nurse Connie 7/22

Aunt mary holding the cat

- 10 --

VERIFIED COMPLAINT



- 11 -



seth and Ann Mary
and elulla

VERIFIED COMPLAINT



- 13 -

Beth + Seth 7-22-04 TMC
DAY # 2

- 14 -

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Seth and Unle Frank

Seth and Grandma Anne

Grandma + Seth 7-22-04
rmc

nick Names
for seth
mommys names
buggie eyes
with a da
squeeze bun
squissy muffin
squissy love
phoopy doo
teteta

– 15 –

VERIFIED COMPLAINT



- 16 -

VERIFIED COMPLAINT

Picture of Beth and Seth.

Seth 2½ months old

- 17 -

VERIFIED COMPLAINT



- 18 -

TMC
Beth + Nurse Connie 7/22

Aunt mary holding
Blvvra the cat

VERIFIED COMPLAINT

**Welcome Home**

My first day at home was July 24

I was dressed in blue

My address 2439 N. Richey Blvd

My room was decorated with Stuffed Animals
and Toys

Memories of my first day at home cried, slept, ate

Seth and Any Mary
and Elilia

VERIFIED COMPLAINT

My Birth Announcement & Newspaper Announcement

Beth + Seth 7-22-04 TMC
DAY # 2

– 21 –

VERIFIED COMPLAINT



My Birth Certificate & Hospital Bracelet

Picture of Beth and self

self 2½ weeks old

4.  Defendant Alameda County Superior Court is the trial court in Alameda County. State of California ("California") is the governmental entity responsible for the operation of the Alameda County Superior Court. Defendant State of California is a political subdivision of the United States of America and as such it and its political subdivisions are subject to the laws of the United States of America. They are specifically charged under the terms of the United States Constitution and the California Constitution with providing the service of courts and judicial proceedings. All counties of the State of California are political subdivisions of the State of California and are required under the Constitution of the State of California to provide courthouses that provide services to all persons including residents of this State and indigent qualified individuals with cognitive disabilities as defined by 42 U.S.C. 12131. Judicial Council of California is a political subdivision of the State of California charged with establishing The Rules of Court for all courts in this State. Plaintiff is challenging the alleged policy against appointment of counsel. It is a well-established principle of law that a party seeking to demonstrate standing must assert an injury that is "actual or imminent, not conjectural or hypothetical." Plaintiff Mary Bernstein has current case Mary Bernstein v. Associa, et al. Alameda County Superior

- 22 -

VERIFIED COMPLAINT

Court Case No. HG18897381 personal injury matter scheduled for trial January 6

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ALAMEDA**

COURTHOUSE ADDRESS:
Hayward Hall of Justice
24405 Amador Street, Hayward, CA 94544

Reserved for Clerk's File Stamp

FILED
Superior Court of California
County of Alameda
10/03/2024
Chad Finke, Executive Officer/Clerk of the Court
By _Jusela Moss_ Deputy
J. Moore

PLAINTIFF:
Mary Bernstein

DEFENDANT:
Associa Northern California et al

NOTICE OF CASE RESCHEDULING OR RELOCATION

CASE NUMBER:
HG18897381

TO THE PARTIES:
You are hereby notified that the above-entitled matter, previously set for

Mandatory Settlement Conference (MSC)                              as follows:

George E. McDonald Hall of Justice     on 11/08/2024   at 9:00 AM in Department 301

has been rescheduled, or relocated, as follows:

George E. McDonald Hall of Justice     on 12/10/2024   at 9:30 AM in Department 301

On Court's own motion, Per Judge Reilly MSC rescheduled to Tuesday, December 10, 2024 at 9:30AM.

Chad Finke, Executive Officer / Clerk of the Court

Dated: 10/03/2024                    By J. Moore
                                        Deputy Clerk

NOTICE OF CASE RESCHEDULING OR RELOCATION

09/17

2024

which is not concluded. Plaintiff Mary Bernstein has Alameda County Superior Court case no. 24CV063810 petition for writ. John Bernstein has Alameda County Superior Court case no. 24CV074471 petition for writ his own matter not affiliated with Plaintiffs Mary Bernstein and Elizabeth Tigano have Alameda County Superior Court case no. 24CV063817 unruh act. McCormack v. Herzog, 788 F.3d 1017, 1026 (9th Cir. 2015) (citation omitted). Because Plaintiff Mary Bernstein is challenging a court rule and its accompanying policies, she "must demonstrate a realistic danger of sustaining a direct injury as a result of the [rule's] operation or enforcement." Id. (citations omitted).

- 23 -

VERIFIED COMPLAINT

5. Defendant EUMI K. LEE is a Judge Dept. 512 in Alameda County Superior Court. EUMI K. LEE was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law. In Senate hearing nomination for U.S. District Court, Eumi Lee stated all women had a right to safety. Eumi Lee admonished Plaintiff for biblical citations when Plaintiff exercising free speech in complaints, legal papers. [4]



6. Defendant JENNA M. WHITMAN is a Judge Dept. 25 in Alameda County Superior Court. JENNA M. WHITMAN was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law. Jenna Whitman, an unassigned judge in response to reasonable accommodation request MC 410 directed Plaintiff in Order not to attach exhibits, biblical references, how long complaint and other unsolicited advice regarding pleading filings. Jenna Whitman also wrote discouraging remarks about filing motion for change of venue. Jenna Whitman denied extensions of time for disabled Plaintiff.[5]

7. Defendant ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 in Alameda County Superior Court. ELIZABETH RILES was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.

8. Defendant SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge in Alameda County Superior Court. SUSAN LEW was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.

---

[4] And yet this judge has allowed Defendants in the G128897381matter to harass, target, torment Plaintiff, her guests and her family  And yet this judge has allowed Defendants in this matter to harass, target, torment Plaintiff, her guests and her family.  Unless you are disabled, white, christian and older then you do not deserve to be safe according to Eumi Lee.

[5] Free speech violation Biblical verses, freedom of expression denial photos in First Amended Complaint, prohibition of verses, exhibits per dept jenna Whitman  Baphomet allowed at Iowa State Capital yet Plaintiff not allowed faith https://www.aol.com/news/former-mississippi-congressional-candidate-charged-153641144.html  JANINE CHANDLER, et al., v. CALIFORNIA DEP'T OF CORRECTIONS

AND REHABILITATION, et al. Case No. 1:21-cv-01657-JLT-HBK USDC Eastern District California.  Disability Rights California v. County of Alameda 5:20-cv-05256 (N.D. Cal.).

– 24 –

VERIFIED COMPLAINT

9. Defendant BENTRISH SATARZADEH is a Judge Dept. 507 in Alameda County Superior Court. BENTRISH SATARZADEH was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.

10. Defendant KEITH FONG is a Judge Dept. 517 in Alameda County Superior Court. KEITH FONG was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.

11. Defendant MARK FICKES is a Commissioner Dept. 519 in Alameda County Superior Court. MARK FICKES was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.

12. Defendant Alameda County Superior Court is the trial court in Alameda County. State of California ("California") is the governmental entity responsible for the operation of the Alameda County Superior Court. Defendant State of California is a political subdivision of the United States of America and as such it and its political subdivisions are subject to the laws of the United States of America. They are specifically charged under the terms of the United States Constitution and the California Constitution with providing the service of courts and judicial proceedings. All counties of the State of California are political subdivisions of the State of California and are required under the Constitution of the State of California to provide courthouses that provide services to all persons including residents of this State and indigent qualified individuals with cognitive disabilities as defined by 42 U.S.C. 12131. Judicial Council of California is a political subdivision of the State of California charged with establishing The Rules of Court for all courts in this State. Plaintiff is challenging the alleged policy against appointment of counsel. It is a well-established principle of law that a party seeking to demonstrate standing must assert an injury that is "actual or imminent, not conjectural or hypothetical." Plaintiff has current case Mary Bernstein v. Associa, et al. Alameda County Superior Court Case No. HG18897381 which is not concluded. McCormack v. Herzog, 788 F.3d 1017, 1026 (9th Cir. 2015) (citation omitted). Because Plaintiff Mary Bernstein is challenging a court rule and its accompanying policies, she "must demonstrate a realistic danger of sustaining a direct injury as a result of the [rule's] operation or enforcement." Id. (citations omitted).

## PROCEDURAL HISTORY LATE MOTHER ANNA SMITH-FOGLTANCE PANDEMIC

13. While Plaintiffs' late Mother Anna L. Smith-Fogltance is not a party to this action; reasonable accommodations were denied to her equal access to the court as a witness testifying on oxygen by Judge Paul Herbert July 2021. **Exhibit I.** Declarations Anna Smith Fogltance and Jacqueline Illera. COVID unprecedented time was still occurring pandemic see article[6] however people were allowed to travel during this time **July 2021** which previously not able. Never getting to see my mother again has impacted me severely my only parent. My disabled mother was the only parent I

---

[6] July 10 2021 Article How We Will Know When Covid is Over **Exhibit I**

VERIFIED COMPLAINT

ever knew.  My mother and sister hospitalized during this time had been enduring harassment in their area wherein neighborhood depreciated.  Likewise, my sister and my Mother were terrified of John Gibson as they were witnesses and afraid that he would travel and injure them in Arizona.  EXHIBITs L, M. Plaintiff needed to go to mother and either stay caring for her or attempt to have them brought to Fremont California for care.  Both Mother and Elizabeth were terrified of Meadow Brook John Gibson and others.  My sister was unable to testify because she was hospitalized.  My mother who would only live a few months was denied critical request to testify.  Plaintiff was exhausted working on matter since November 2020.  Motion for leave to file amended complaint was denied in February 24 2021 but judge directed to file serve complaint.  Doe amendments filed to begin service of process April 2021 basing off of preliminary complaint.  Judge Herbert admonishing her Anna Smith Fogltance for coughing on remote call making us go last; Judge Herbert making us be heard dead last and refusal to allow terminally ill Mother to request stay for Plaintiff Bernstein and testify what Plaintiff Bernstein was enduring in Meadow Brook Village Condominiums.  Anna Smith-Fogltance would also be testifying what she and Plaintiff Elizabeth Tigano were enduring by John Gibson Joaquin Rivera Michael Durbin during pandemic defendants in the HG18897381 Bernstein v. Associa matter.  EXHIBIT L. Our precious Mother that insured although she was disabled family members internment; this Court retaliation for Plaintiff Bernstein traveling for Mother's interment.This was done to our Beloved Mother.  The Court have this on their conscience death denial medical reasonable accommodations last rites and wish of terminally ill disabled woman out of state.  And if that was not enough retaliation by Judges for eldest daughter Plaintiff Bernstein travel Meadow Brook by Judge Eumi Lee December 2021 for leave to travel to handle internment and relocate assume care for disabled younger sister Plaintiff Elizabeth Bernstein. This is our story of interaction with Alameda County Superior Court.

April 2019 – November 4 2020 stay medical.
November 2020 – July 2021 nonstop
March 2021 Elizabeth hospital
May 2021 restraining orders
July 2021

VERIFIED COMPLAINT





- 27 -



VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



VERIFIED COMPLAINT



– 30 –

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



VERIFIED COMPLAINT



- 32 –

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



VERIFIED COMPLAINT



– 34 –



- 35 -

VERIFIED COMPLAINT



**ALAMEDA COURT CONTROVERSIES AND ABUSES COURT OF PUBLIC OPINION**

14. Senate judiciary act of 1789 specifically gave people to right represent in court. Two cases haines v kerner 404 US 519 (1972) Erickson v Pardus 551 US 89 (2007). This is a pro se complaint entitled to a liberal reading and less stringent standards as this complaint was prepared without the assistance of legal counsel. Courts mistreatment

VERIFIED COMPLAINT

of pro se litigants is a known fact by the public and discrimination when attempting to adjudicate matters. Alameda County Superior Court abuses are well documented. Unfortunately if litigants live in the area, the action occurring in Alameda County, the unfortunate litigant has no other option but to file litigation in Alameda County Superior Court. This is evident out of all of the pro se actions filed that Brian Vukadinovich[7] is one of the only individuals in the whole nation that successfully brought federal action to trial and won. Posner added the legal system has made representation **less affordable while at the same time created a maze of rules governing court proceedings,** making it nearly impossible for pro se litigants to navigate.[8] Brian Vukadinovich is now involved with a trial with a jurist Richard Posner.[9] No good deed goes unpunished. A judge Richard Posner conscripted Brian

---

[7] Former judge Richard Posner loses latest bid to dismiss wage lawsuit
https://www.reuters.com/legal/litigation/former-judge-richard-posner-loses-latest-bid-dismiss-wage-lawsuit-2023-09-26/ https://www.reuters.com/legal/litigation/after-posner-retired-7th-circuit-grim-diagnosis-brewing-battle-2022-03-29/ https://www.abajournal.com/news/article/co-leader-of-posners-former-pro-se-center-can-continue-his-wage-suit-court-says Vukadinovich filed his pro se suit against Posner in May 2022.

Posner, a former judge on the 7th U.S. Circuit Court of Appeals at Chicago, must face claims for breach of contract and unjust enrichment, Springmann said. Springmann dismissed Vukadinovich's fraud claim. But she said Vukadinovich could file an amended complaint with new allegations about experiencing emotional distress because of the barrage of questions that he received when the center closed. https://justice-for-pro-ses.org/
https://www.abajournal.com/news/article/posner_says_he_is_organizing_a_national_pro_bono_group_that_includes_ex_pri/#google_vignette https://www.prisonlegalnews.org/news/2020/jan/9/former-seventh-circuit-judge-posner-founds-short-lived-project-help-pro-se-litigants/

[8] https://www.prisonlegalnews.org/news/2020/jan/9/former-seventh-circuit-judge-posner-founds-short-lived-project-help-pro-se-litigants/ He said he decided to help those mistreated by the legal system simply because they could not afford an attorney. So in March 2018 he launched the Posner Center for Justice for Pro Se's, a nonprofit organization offering legal advice to pro se litigants at no cost. He believed there were at least a million pro se plaintiffs in the United States, many of them incarcerated; he wanted to let them know his organization was there "and then try to assist as many deserving pro se's as possible." In June 2019, Posner became an adviser to Legalist, a litigation financing company, helping clients obtain legal assistance in "David versus Goliath"-type cases. "The principal motive for my retirement was the failure of the court to treat litigants without financial resources fairly. Litigation finance patches an important hole for businesses with valid claims who lack the funds to hire an attorney," he stated. Unfortunately, that still leaves the needs of the vast majority of pro se litigants – mostly prisoners – unmet. About 16 months later, however, the Posner Center was forced to close its doors. The need for assistance was just too great. A notice of dissolution, posted on the organization's website on July 23, 2019, stated: "The mismatch was something on the order of 100 requests for assistance for every staff member. Since the lawyers and non-lawyers of the Posner Center were assisting the pro se litigants free of charge, perhaps it was inevitable that the demand would greatly exceed the supply. Thus, this experiment in assisting pro se litigants with their ongoing court cases has sadly come to an end." Abovethelaw.com

The sheer volume of requests received by the organization is a clear indication that access to justice in America is in crisis.
[9] Posner, 78, told the Chicago Daily Law Bulletin last week that he decided to retire because of conflicts with his colleagues over the treatment of pro se litigants, who represent themselves. In a new interview with the New York Times, Posner elaborated on his concerns about the treatment of such litigants.

"The basic thing is that most judges regard these people as kind of trash not worth the time of a federal judge," Posner said.

In the 7th Circuit, staff lawyers review appeals from pro se litigants, and their recommendations are generally rubber-stamped by judges, he noted.

Posner wanted to give the pro se litigants a better shake by reviewing all of the staff attorney memos before they went to the panel of judges. Posner had approval from the director of the staff attorney program. "But the judges, my colleagues, all 11 of them, turned it down and refused to give me any significant role. I was very frustrated by that," Posner said.

- 37 –

VERIFIED COMPLAINT

Vukadinovich to assist pro se litigants offering position as Executive Director with pay but then refused to pay after service for over a year by Brian Vukadinovich. The case is allowed to go forward. Brian Vukadinovich https://www.brianvukadinovich.com/ documents his suffering and triumph in books and teachings. Disabled persons that are pro se litigants adds a new level of discrimination to pro se litigants such as what Plaintiffs and witnesses have endured in this action. A disabled pro se litigant that is denied reasonable accommodations and enduring mistreatment adds to the psychological trauma.



University of Chicago Law Review discusses the odds

---

Posner has written about the pro se issue in an upcoming book, and its publication "would be particularly awkward" if he remained on the court because it "implicitly or explicitly" criticizes the other judges, he said.

Posner said he began to focus on the problems of pro se litigants about six months ago when he "awoke from a slumber of 35 years." He decided to write the book and "realized, in the course of that, that I had really lost interest in the cases," he told the Times.
https://www.abajournal.com/news/article/posner_most_judges_regard_pro_se_litigants_as_kind_of_trash_nor_worth_the_t

VERIFIED COMPLAINT



VERIFIED COMPLAINT



https://lawreview.uchicago.edu/print-archive/empirical-patterns-pro-se-litigation-federal-district-courts

The Posner Center for Justice for Pro Se's came and went. After the longtime judge's resignation from the bench, Richard Posner threw his hat into the ring of commentators trying to address our civil litigation system's pro se crisis. A denied cert petition and two years later, and Posner's center has shut down, but the need for a meaningful response to the crisis remains.

A failure to respond adequately to the current justice gap facing indigent litigants could not come at a worse time. As income inequality has grown over the last several decades, **public support for legal services has decreased by over 40%**. The result is more and more people going to both state and federal courts to validate their rights without an attorney. In some state systems, as many of 80 to 90 percent of litigants appear unrepresented in matters as **fundamental** as custody determinations and evictions. Similarly federal courts have seen a large uptick in the number of pro se plaintiffs, the vast majority of which are asserting claims for constitutional violations or employment discrimination.[10]

15. Alameda County Superior Court is no stranger to controversy in recent years regaring race and disability discrimination. Alameda County disabled sister treated as criminals Mention john Gibson man harassing us given over 2 years continuances criminal matter Alameda Court; court refusal to continue reissue restraining order – in fact extends for additional 3 years instead of 1 totalling over 6 years constitutional limits movement in housing. Office of Public Affairs | Justice Department Finds that

---

[10]  https://journals.law.harvard.edu/crcl/reframing-the-pro-se-litigation-crisis/

VERIFIED COMPLAINT

Alameda County, California, Violates the Americans with Disabilities Act and the U.S. Constitution | United States Department of Justice Justice Department Finds that Alameda County, California, Violates the Americans with Disabilities Act and the U.S. Constitution.

16. Disability Rights California filed a case against Alameda County in this court https://www.disabilityrightsca.org/press-release/settlement-reached-between-disability-rights-california-the-county-of-alameda-and-the.  Disability Rights California v. County of Alameda Court and Case Number: 5:20-cv-05256 (N.D. Cal.) The settlement agreement is the result of over two years of negotiations between the County, the U.S. Department of Justice, and DRC, as well as its co-counsel, Goldstein, Borgen, Dardarian & Ho, the Bazelon Center for Mental Health Law, Disability Rights Education & Defense Fund, and the Law Office of Aaron J. Fischer. The parties identified mutually desirable commitments to community-based behavioral health services. The County is seeking to further improve and deepen community-based services in an effort to best serve the residents of the County of Alameda. Disability Rights California Lawsuit against Alameda County | Disability Rights California  Seeking to end illegal segregation of people with mental health disabilities and racial injustice Disability Rights California Files Lawsuit against Alameda County Disability Rights California Files Lawsuit against Alameda County for Its Failed Mental Health System | Disability Rights California

17. Alameda County Superior Court at the order of the US District Court Judge examination 35 cases or more since 1970s 2 death row inmates to be resentenced amid review into decades of prosecutorial misconduct in Alameda County, DA announces | CNN  Alameda County prosecutors allegedly excluded Black people and Jews from death penalty juries.[11]  2 death row inmates to be resentenced amid review into decades of prosecutorial misconduct in Alameda County, DA announces Alameda County prosecutors allegedly excluded Black people and Jews from death penalty juries (msn.com). A judge in this

18. Then there is the Judge Frank Roesch DECISION AND ORDER IMPOSING PUBLIC ADMONISHMENT In a civil jury trial, he interrogated a witness in a hostile manner, made sarcastic remarks, and mishandled the witness's assertion of her Fifth Amendment privilege against self-incrimination. In a quiet title action, the judge questioned the parties and counsel in an injudicious manner. In another matter involving property real estate, a quiet title action, the action commenced in alameda court involves property condominium illegal emergency assessment  pattern involving real estae this court [12] Frank Roesch remains on the Alameda County Superior Court to date

---

[11] 2 death row inmates to be resentenced amid review into decades of prosecutorial misconduct in Alameda County, DA announces | CNN

2 death row inmates to be resentenced amid review into decades of prosecutorial misconduct in Alameda County, DA announces Alameda County prosecutors allegedly excluded Black people and Jews from death penalty juries (msn.com)

Alameda County prosecutors allegedly excluded Black people and Jews from death penalty juries

[12]  In 2015, Judge Roesch presided over a jury trial in Victaulic Co. v. American Home Assurance Co. (RG12642929) regarding Victaulic's claims against its insurers for breach of contract, bad faith, and punitive damages. After a three and one-half week trial, the jury awarded Victaulic $55,333,581.11. The Court of Appeal reversed the judgment due to Judge Roesch's misconduct and multiple errors during the trial. (Victaulic Co. v. American Home Assurance Co. (2018) 20 Cal.App.5th 948.)Victaulic Co. v. American Home Assurance Co. https://www.bing.com/ck/a?!&&p=d8c024b7375c9ae5JmltdHM9MTcyMjEyNDgwMCZpZ3Z3VpZD0zMGM0MjhkNi1kNjU

- 41 –

VERIFIED COMPLAINT

19. Then there is in 2017 2019 wrongful arrests alleged "computer glitch" Alameda County Superior Court https://www.findlaw.com/legalblogs/technologist/court-wont-act-on-computer-glitch-that-generates-bad-orders-and-warrants/ The Alameda County Superior Court's computer system has caused countless numbers of people to serve unnecessary jail time, be improperly arrested, and wrongly registered as sex offenders.[13]

20. Mark Fickes ethical violations Gay Alameda County judicial candidate blasted for possible ethics breach :: Bay Area Reporter (ebar.com) Canon No. 1 of the California Code of Judicial Ethics states that "a judge shall uphold the integrity and independence of the judiciary." Canon No. 2 states, "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities."   Mark Fickes denied

---

3LTY3NjctMTMyNC0zYzc5ZDdiOTY2YzQmaW5zaWQ9NTIxMA&ptn=3&ver=2&hsh=3&fclid=30c428d6-d657-6767-1324-3c79d7b966c4&psq=judge+frank+roesch+alameda+county&u=a1aHR0cHM6Ly9janAuY2EuZ292L3dwLWNvbnRlbnQvXBsb2Fkcy9zaXRlcy80MC8yMDIwIwLzEwL1JyZXNpZ25hF9ET19QdWJfQWRtXzEwLTE1L1TIwMjAuAucGRm&ntb=1

---

[13] The public defender's office has filed about 2,000 motions challenging legal process due to the faulty software. Alameda Court did not think it needed to fix the problem Until the courts fix the mess, the problem will continue to publicly plague the criminal justice system. In the meantime, the Alameda County public defender said, county administrators aren't ready to give up on a computer program that cost $4.5 million. https://barristers.ng/2017/07/01/court-won-t-act-on-computer-glitch-that-generates-bad-orders-and-warrants/ Court Won't Act on Computer Glitch That Generates Bad Orders and Warrants In Barrister In one California case, a 24-year-old Fremont man was arrested and jailed until his father posted $1,500 bail. They discovered later that it was due to the computer problem. The system failed to show that a judge had recalled a warrant for a non-appearance.

"It's affected my relationship with my parents," said the man, who spoke to the San Francisco Chronicle on condition that his name not be used. "They're not going to believe that four cops came to the door and messed up. It's affected my relationship with my neighbors, because I'm assuming everybody saw."

Until the courts fix the mess, the problem will continue to publicly plague the criminal justice system. In the meantime, the Alameda County public defender said, county administrators aren't ready to give up on a computer program that cost $4.5 million.

While judges dealt with the problem in the courtroom, public defender Brendon Woods petitioned an appeals court to order the county to fix the software. But now there is a problem with the paperwork.

Computer Troubles Trigger Wrongful Arrests In Alameda County - CBS San Francisco (cbsnews.com) CBS story OAKLAND (KPIX 5) -- In Alameda County, computer problems that are so bad some people are being wrongfully arrested.

Since august the Alameda County Court has been using the new court management software system...it was supposed to be an upgrade...but now public defenders and prosecutors agree.. It's causing chaos... And could be hampering justice.

Alameda County Public Defender Brendon Woods said, "It's more than frustrating. It's completely outrageous."

Woods said the new computer software that the county court is using is processing inaccurate records and causing legal nightmares.

"There are misdemeanor cases that are now felonies. We had a 12500 which is driving without a license show up as a felony," Woods said

Woods filed a motion with the Alameda County Court blaming the software -- called Odyssey – for wrongful arrest, unwarranted jail time and wrongly listing defendants in the system as sex offenders.

And in a court hearing Tuesday, court administration and even the district attorney all agreed, the software isn't working. They call it cumbersome, requiring multiple steps, screens and clicks to complete one action, making it prone to mistakes.

Woods said, "What would take a court clerk a minute or two to update normally, takes them 20-25 minutes, so clerks who are really working hard and trying to keep up simply can't."

So for some defendants, they show up to court, have their warrants recalled, but the information doesn't show up in the system.

In the worst examples, defendants are wrongly arrested on outdated warrants.

Woods said it is making the justice system "extremely inefficient."

"I would say people's constitutional rights are being violated on a daily basis," Woods said.

Hmmmm.....The maker of Odyssey tells the San Francisco Chronicle that it's committed to supporting Alameda County, but that the problems aren't the fault of the software and that it's working just fine in other places.

- 42 –

VERIFIED COMPLAINT

Plaintiffs appearance at reissuance hearing when incapacitated despite multiple requests MC 410.  Witness Plaintiff Elizabeth Tigano was denied opportunity to testify.  Plaintiff was denied ability to speak, oppose reissuance order.  Plaintiff was unable due to illness to file response to renewal request filed by John Gibson.  Commissioner denied constitutional right of Plaintiff and her witness, held renewal hearing not only issuing order for one year but three years out of spite, retaliation as Plaintiff advised Mark Fickes would be added to this complaint.  Plaintiff was/is the restrained person and the Petitioner John Gibson would not have been affected as the restraining order remained in place until Plaintiff would appear at the hearing to argue her position.

21.  As Tavares reported, "The [Price] vote to endorse Fickes and his proclamation on Wednesday that he voted for her in the 2022 DA's race raises questions about each other's impartiality. Any defense attorney in a courtroom with Fickes as judge and Alameda County prosecutors will certainly question whether their client will receive a fair trial."
https://www.bing.com/ck/a?!&&p=7e5dec9eeefbf48eJmltdHM9MTcyMjEyNDgwMC
ZpZ3VpZD0zMGM0MjhkNi1kNjU3LTY3NjctMTMyNC0zYzc5ZDdiOTY2YzQma
W5zaWQ9NTQxMA&ptn=3&ver=2&hsh=3&fclid=30c428d6-d657-6767-1324-
3c79d7b966c4&psq=mark+fickes+ethical&u=a1aHR0cHM6Ly9waWVkbW9udGV4
ZWRyYS5jb20vMjAyNC8wMi9sZXR0ZXItdG8tdGhlLWVkaXRvci1taWNoYWVs
LWpvaG5zb24tZm9yLWFjLXN1cGVyaW9yLWNvdXJ0LWp1ZGdl&ntb=1
https://www.bing.com/ck/a?!&&p=928c0e3f4b1e86e4JmltdHM9MTcyMjEyNDgwM
CZpZ3VpZD0zMGM0MjhkNi1kNjU3LTY3NjctMTMyNC0zYzc5ZDdiOTY2YzQm
aW5zaWQ9NTM2NQ&ptn=3&ver=2&hsh=3&fclid=30c428d6-d657-6767-1324-
3c79d7b966c4&psq=mark+fickes+ethical&u=a1aHR0cHM6Ly93d3cubGl2ZXXtb3Jld
mluZS5jb20vYmxvZ3MvdGltLXRhbGsvMjAyNC8wMi8wMS93YXMtanVkaWNpY
WwtY2Fub24tdmlvbGF0ZWQv&ntb=1  Editorial: Judicial candidate Fickes serious lapse in judgment has a Mark Fickes, a gay man who's a commissioner with the Alameda County Superior Court and a candidate for judge in March, committed a serious lapse in judgment last week when he told members of the Alameda County Democratic Central Committee, in response to a question from a committee member, that he voted for District Attorney Pamela Price in 2022. Price, who's also an elected member of the central committee, then promptly voted to endorse him. (Fickes secured the local Democratic Party's endorsement with 30 votes.) The whole episode reeks of a potential conflict of interest and raises questions about Fickes' and Price's impartiality should Fickes be elected.[14]

---

[14] Judicial candidates are not supposed to reveal their personal opinions. That may seem counterintuitive, but that's what the California Code of Judicial Ethics states. Judicial candidates are asked questions all the time, but that doesn't mean they should respond to them, according to the canon. And in fact, most of the time they don't. We've sent questionnaires to the judicial candidates in San Francisco and Alameda counties; several candidates invoked the judicial canons as the reason why they couldn't answer a question.  That Fickes made such an admission is all the more puzzling because as a court commissioner, he's subject to the same rules as judges. Further, in 2020 he ran unsuccessfully for judge and is, thus, familiar with the canons of judicial ethics. Canon No. 1 of the California Code of Judicial Ethics states that "a judge shall uphold the integrity and independence of the judiciary." Canon No. 2 states, "A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities." Impartiality is crucial for judges, and all judges, including those at the trial court level, must adhere to a higher standard. They should disclose any potential or real conflicts of interest and maintain their impartiality. They should exhibit judicial temperament. https://www.ebar.com/story.php?ch=News&sc=News&id=330805

- 43 -

VERIFIED COMPLAINT

22. Defendant EUMI K. LEE is a Judge Dept. 512 in Alameda County Superior Court. EUMI K. LEE was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state



law.

23. Defendant JENNA M. WHITMAN is a Judge Dept. 25 in Alameda County Superior Court. JENNA M. WHITMAN was an employee of the Alameda County Superior

Guidelines on campaigning prepared for judicial candidates by the California Judges Association's Committee on Judicial Ethics state that "Candidates may not make statements that commit the candidate with respect to cases, controversies, or issues that could come before the courts." Judicial candidates are not allowed to endorse in non-judicial races, they are not allowed to talk about how they might rule in a case.

Further, guidelines on campaigning prepared for judicial candidates by the California Judges Association's Committee on Judicial Ethics state that "Candidates may not make statements that commit the candidate with respect to cases, controversies, or issues that could come before the courts."https://www.bing.com/ck/a?!&&p=a10c5d72bc8add81JmltdHM9MTcyMjI5NzYwMCZpZ3VpZD0zMGM0MjhkNi1kNjU3LTY3NjctMTMyNC0zYzc5ZDdiOTY2YzQmaW5zaWQ9NTE5Mg&ptn=3&ver=2&hsh=3&fclid=30c428d6-d657-6767-1324-3c79d7b966c4&psq=PIEDMONTEXTRA+LETTER+TO+THE+EDITOR+MICHAEL+JOHNSON&u=a1aHR0cHM6Ly9waWVkbW9udGV4dHJhLY5jb20vMjAyNC8wMi9iZXR0ZXItZ8tdGhlLWVkaXRvci1taWNoYWVsLWpvaG5zb24tZm9yLWFjLWFsYW1lZGEtY291bnR5LWNvbnNvbGVkLWp1ZGdlLW9mLXRoZS1zdXBlcmlvci1jb3VydC1lbGVjdGlvbi8&ntb=1

VERIFIED COMPLAINT

Court and as an employee of the State of California, were acting under the color of



state law.[15]

24. Defendant SUSAN LEW is a Judge Pro Tempore Dept. 519 in Alameda County Superior Court. SUSAN LEW was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.

25. Defendant ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 in Alameda County Superior Court. ELIZABETH RILES was an employee of the Alameda County Superior Court and as an employee of the State of California, were



acting under the color of state law.

26. Defendant BENTRISH SATARZADEH is a Judge Dept. 507 in Alameda County Superior Court. BENTRISH SATARZADEH was an employee of the Alameda

---

[15] And yet this judge has allowed Defendants in the G128897381matter to harass, target, torment Plaintiff, her guests and her family  And yet this judge has allowed Defendants in this matter to harass, target, torment Plaintiff, her guests and her family. Unless you are disabled, white, christian and older then you do not deserve to be safe according to Eumi Lee.  Free speech violation Biblical verses, freedom of expression denial photos in First Amended Complaint, prohibition of verses, exhibits per dept jenna Whitman  Baphomet allowed at Iowa State Capital yet Plaintiff not allowed faith https://www.aol.com/news/former-mississippi-congressional-candidate-charged-153641144.html JANINE CHANDLER, et al., v. CALIFORNIA DEP'T OF CORRECTIONS AND REHABILITATION, et al. Case No. 1:21-cv-01657-JLT-HBK USDC Eastern District California. Disability Rights California v. County of Alameda 5:20-cv-05256 (N.D. Cal.).

- 45 -

County Superior Court and as an employee of the State of California, were acting



under the color of state law.

27. Defendant KEITH FONG is a Judge Dept. 517 in Alameda County Superior Court. KEITH FONG was an employee of the Alameda County Superior Court and as an employee of the State of California, were acting under the color of state law.



28. Defendant MARK FICKES is a Commissioner Dept. 519 in Alameda County Superior Court. MARK FICKES was an employee of the Alameda County Superior Court and

– 46 –

VERIFIED COMPLAINT

as an employee of the State of California, were acting under the color of state law.[16]



**Not doing what is within their jurisdiction either**
**Outside jurisdiction remember Jeffrey brand stated we talk and advise each other 11 2019 Paul Herbert conferring with other judges not assigned; jenna Whitman not assigned dictating what to file; helping defedants**
**Keith fong not allowing motion filing without leave**
**Elizabeth Riles unreasonable retaliatory for complaint denial witnesses evidence**
**Susan Lew holding court as formal matter (cited for not having formal declaration for witness testifying, rebuked for reasonable accommodations, criticizing for legal citations non attorney – small claims and civil harassment are informal matters for the laiety) denial witnesses evidence**
**Elizabeth Tigano and Mary Bernstein reputations affected by frivolous civil harassment orders imposed by John Gibson EXHIBIT L and constant threats of new filings of retraining orders, restricting disabled persons movements**
**https://www.justice.gov/opa/pr/justice-department-finds-alameda-county-california-violates-americans-disabilities-act-and-us**

**Justice Department Finds that Alameda County, California, Violates the Americans with Disabilities Act and the U.S. Constitution**

**https://www.theroot.com/did-the-exclusion-of-black-and-jewish-jurors-impact-doz-1851443340**

**Did The Exclusion of Black and Jewish Jurors Impact Dozens of Death Penalty Cases?**
**https://www.latimes.com/california/story/2024-04-23/federal-judge-orders-alameda-county-to-review-death-penalty-cases**

---

[16] ALAMEDA JUDICIAL CANDIDATE MARK FICKES ACCUSED OF VIOLATING ETHICS CODE WITH POLITICAL ENDORSEMENTS
Posted by AbusiveDiscretion Staff Writer | Jan 11, 2024 | News, California, State Level

VERIFIED COMPLAINT

Federal judge orders Alameda County to review death penalty cases

worry that the fix is in, so to speak.

Impartiality is crucial for judges, and all judges, including those at the trial court level, must adhere to a higher standard. They should disclose any potential or real conflicts of interest and maintain their impartiality.
They should exhibit judicial temperament
https://www.ebar.com/story.php?ch=News&sc=News&id=330805
Editorial: Judicial candidate Fickes has a serious lapse in judgment

https://www.psychologytoday.com/us/blog/empathy-and-relationships/201704/injustice-the-hands-judges-and-justices
Injustice at the Hands of Judges and Justices
Judge Jed Rakoff discusses the injustice caused by judicial bias.
"Why mediation isn't more widely used is beyond my comprehension, as is the fact that people would want to use retired judges with no little or no mediation training to "mediate", so they can get people to reach similar injustices through agreements reached in what is really "soft-arbitration." This is particularly true with regard to family law, where the research is very clear." Paul Herbert (misrepresentation length of settlement judge experience) and Jeffrey Brand ADR and JAMS

https://law.stackexchange.com/questions/18900/jurors-not-allowed-to-talk-to-each-other-during-the-trial

https://btlaw.com/insights/publications/2018/dont-feel-pressured-to-settle-a-case-that-you-dont-want-to-settle

United States Federal Judicial Misconduct

The Judicial Conduct and Disability Act of 1980(link is external) ("Act"), 28 U.S.C. §§ 351–364, and the Rules for Judicial-Conduct and Judicial-Disability Proceedings ("Rules") (pdf), as amended on March 12, 2019, govern this complaint process. You will likely want to consult the Act and the Rules before filing a complaint. Please visit the website of the appropriate court office, as described in the Rules and in question 3, to determine whether local rules apply and to obtain a complaint form.
https://www.uscourts.gov/judges-judgeships/judicial-conduct-disability/faqs-filing-judicial-conduct-or-disability-complaint

Who can I complain about?
You may file a complaint about a federal judge who you have reason to believe has committed misconduct or has a disability that interferes with the performance of

– 48 –

VERIFIED COMPLAINT

their judicial duties. A federal judge includes a judge of a United States district court, a judge of a United States court of appeals (including the Court of Appeals for the Federal Circuit), a judge of a United States bankruptcy court, a United States magistrate judge, a judge of the Court of Federal Claims, and a judge of the Court of International Trade.



The judicial council may take other action, such as requesting the special committee conduct an additional investigation.

Federal judges appointed under Article III of the U.S. Constitution (e.g., circuit and district judges) hold office for life pending good behavior. Only Congress can remove an Article III judge from office. If the judicial council finds an Article III judge's conduct may warrant impeachment, it must refer that finding to the Judicial Conference. On referral, the Judicial Conference will determine whether to certify the matter to Congress, which will then decide whether to initiate impeachment proceedings.

Judicial Conference Committee on Judicial Conduct and Disability
Attn: Office of the General Counsel
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, D.C. 20544

https://www.legalmatch.com/law-library/article/judicial-misconduct.html
Legal Match describes judicial misconduct

- 49 -

VERIFIED COMPLAINT

What is Judicial Misconduct?

The definition of judicial misconduct is a serious deviation from the accepted practices of a judge in the judicial profession. *Misconduct is defined as conduct which is prejudicial to the effective and expeditious administration of the business of the courts.*

The rules regarding official judicial misconduct also include rules concerning a judge's *disability, which may be a temporary or permanent condition which renders the judge unable to discharge the duties of their judicial office. 28 USC §§ 351 − 364* provides that any individual may complain about a federal judge whom they believe has committed judicial misconduct.

**What are Some Types of Judicial Misconduct?**

A judicial misconduct case begins when an individual files a complaint regarding the conduct of a judge. Examples of conduct which may constitute judicial misconduct may include when the judge:

- Uses their office to obtain special treatment for relatives or friends;
- Accepts bribes, gifts, or other personal favors which are related to their office;
- Engages in improper ex parte communication with a party or counsel for one side of a case;
- Engages in partisan political activity or makes an inappropriately partisan statement;
- Solicits funds for organizations;
- Violates rules or standards which pertain to restrictions on outside income or knowingly violates a requirement for financial disclosure;
- **Engages in offensive, abusive, or unwanted sexual conduct, which includes sexual harassment or sexual assault;**
- **Treats attorneys, litigants, judicial employees, or other individuals in a demonstrably hostile and egregious manner;**
- Creates a hostile work environment for judicial employees;
- **Intentionally discriminates based on one of more of the following:**
- **Race;**
- Color;
- Sex;
- Gender;
- Gender entity;
- Pregnancy;
- **Sexual orientation;**
- **Religion;**
- National origin;
- Age; or
- **Disability;**
- **Retaliates against individuals who participate in the judicial conduct and disability complaint process or report or disclose judicial misconduct or disability, which may include:**
  - ➢ Complainants;

– 50 –

➢ Witnesses;
➢ Judicial employees; or
➢ Other individuals;

- **Refuses to cooperate in an investigation of a judicial conduct or disability complaint or the enforcement of a decision under the Rules without good cause; or**
- **Fails to call to the attention of the relevant district chief judge or circuit chief judge any reliable information which is reasonably likely to constitute judicial misconduct or disability.**

This list does not constitute **all of the possible grounds for a complaint**. An individual is not permitted to use the complaint process to obtain an automatic disqualification of a judge which is presiding over a case.

Additionally, the process cannot be used to challenge the correctness of the judge's decision in a case. A judicial decision which is unfavorable to an individual does not, by itself, establish misconduct or a disability.

**How Can Judges Break the Law Inside the Courtroom?**
There are certain ways in which a judge may abuse the law they are supposed to uphold. This may include if a judge ignores the law in court. It may also include if a judge:

- **Lies under oath – It is important to note that a judge is always under oath in the courtroom;**
- Cites invalid laws or precedents – This may be hard to catch if an individual is not prepared to discuss these topics;
- Ignores certain laws or precedents – This is uncommon because a judge typically cannot ignore a law without explaining their reasoning. In this case, the judge would have to break two rules.
- Can I Ask a Judge to Recuse Himself if I Believe He Is Biased?

An individual may request a judge to recuse themselves if there is a conflict of interest. A recusal, also called a judicial disqualification, is a request for a judge presiding over a case to remove themselves from that case so a new judge can be chosen.

A recusal is requested by a motion, which the presiding judge may sustain or dismiss. Because of this, the motion should include substantial evidence showing the judicial conflict of interest. If the judge improperly dismisses the motion, the issue may be appealed after the conclusion of the trial.

Title 28 of the Judicial Code, or the United States Code, provides the standards for judicial recusal or disqualification. A judge is required to recuse themselves in any proceeding in which it would be reasonable to question their impartiality.

**Both state and federal laws *provide *that judges are required to recuse themselves if grounds exist to do so. A judge may be subject to punishment for not recusing themselves, depending on the circumstances.**

- 51 –

VERIFIED COMPLAINT

Examples of situations in which a conflict of interest may exist where a judge should likely recuse themselves include:

**A personal connection to a party in a case;**
Personal knowledge of the facts of a case;
**A familial relationship to one of the attorneys;** and
A financial interest in the outcome of the case.
Any party to the case, including the plaintiff or the defendant, may make the motion to request the judge recuse themselves from the case. There is not likely to be a penalty if the judge accidentally does not recuse themself, such as in cases where the judge is not aware that proper grounds for recusal exist. However, if proper grounds for recusal did exist, and the judge was aware, there may be penalties levied against the judge for not doing so.

What are Some Examples of Judicial Misconduct?
A specific example of a judge breaking the law involved a Catoosa County Magistrate Judge in Georgia. This judge engaged in several behaviors which were considered misconduct, including:

Smoking marijuana at least once a week;
Using the office to advance the personal interests of a family member, specifically a sister-in-law;
Inappropriately pointing a firearm at other individuals in the courthouse; and
Providing the identity of a confidential informant on a television show.
There are a limited number of examples such as these because, thankfully, they are rare.
However, there are likely many instances of misconduct that go unreported because individuals are unaware that the behavior constitutes judicial misconduct or they fear the complaint process.

How Can I Prove Judicial Misconduct?
Judicial misconduct may be difficult to prove if an individual does not know all of the rules. Having a basic familiarity with these rules may help prove judicial misconduct because the individual will be aware of what conduct to look for.

It is also important to review the examples listed above. This will help an individual be aware of conduct which is considered judicial misconduct. Other helpful actions may include:

Taking note of everything possible in writing;
Requesting a court reporter;
Bringing other court watchers to any hearings; and
Having as many issues on paper as possible.
When Can I Complain About Judicial Misconduct?
Any individual is permitted to complain about a federal judge pursuant to 28 USC §§ 351 − 364 if that judge:

Engaged in conduct that is damaging to the effective administration of a court; or
Becomes unable to discharge their duties because of a mental or physical disability.

- 52 −

VERIFIED COMPLAINT

As noted above, an individual does not have the right to complain about judicial misconduct if a wrong or poor decision is made by a federal judge. The remedy in this situation is the right to appeal.

How Does a Judicial Misconduct Complaint Work?
The judicial misconduct complaint process follows a step-by-step procedure. The steps include:

The individual bringing the complaint must obtain a pre-established form used for complaints regarding judicial misconduct from the clerk of the court;
The complaint is then filed with the clerk of the court and provided to the Chief Judge in that district;
The Chief Judge reviews the complaint to determine if it requires further investigation or should be dismissed;
If the Chief Judge determines that an investigation is necessary, they will appoint a special committee to investigate it;
The special committee will then investigate the claim and take the findings of their investigation and submit a report to the pre-established Judicial Council in the district; and
Lastly, the Judicial Council will make a decision regarding the steps that should be taken to remedy the judicial misconduct.
Do I Need an Attorney to File a Judicial Misconduct Complaint?
Yes, it is very important to have the assistance of a government lawyer if you believe judicial misconduct has occurred. Your attorney can guide you through each step of the complaint process, explain the relevant issues, and help you defend your complaint.

Judicial Commission of California
https://cjp.ca.gov/ The California Commission on Judicial Performance states:
The Commission on Judicial Performance, established in 1960, is the independent state agency responsible for investigating complaints of judicial misconduct and judicial incapacity and for disciplining judges, pursuant to article VI, section 18 of the **California Constitution**.
The commission's mandate is to protect the public, enforce rigorous standards of judicial conduct and maintain public confidence in the integrity and independence of the judicial system. While the majority of California's judges are committed to maintaining the high standards expected of the judiciary, an effective method of disciplining judges who engage in misconduct is essential to the functioning of our judicial system. Commission proceedings provide a fair and appropriate mechanism to preserve the integrity of the judicial process.
The commission's jurisdiction includes all judges of California's superior courts and the justices of the Court of Appeal and Supreme Court. The commission also has jurisdiction over former judges for conduct prior to retirement or resignation. Additionally, the commission shares authority with the superior courts for the oversight of court commissioners and referees. The Director-Chief Counsel of the commission is designated as the Supreme Court's investigator for complaints involving the judges of the State Bar Court. The commission does not have authority over federal judges, judges pro tem or private judges. In addition to its disciplinary function, the commission is responsible for handling judges' applications for disability retirement.
The commission's authority is limited to investigating allegations of judicial misconduct and, if warranted, imposing discipline. Judicial misconduct usually involves conduct in conflict with the

VERIFIED COMPLAINT

standards set forth in the **Code of Judicial Ethics**. The commission cannot change a decision made by any judicial officer; this is a function of the state's appellate courts. After investigation, and in some cases a public hearing, the commission may impose sanctions ranging from confidential discipline to removal from office.

Anyone may submit a complaint to the commission. See **Filing a Complaint** and **Overview of Commission Proceedings**.

LAST UPDATED: **07/16/24.**

OVERVIEW OF THE COMPLAINT PROCESS THE AUTHORITY OF THE COMMISSION ON JUDICIAL PERFORMANCE The Commission on Judicial Performance is the independent state agency responsible for investigating complaints of judicial misconduct and judicial incapacity and for disciplining judges (pursuant to article VI, section 18 of the California Constitution). Its jurisdiction includes all active California judges. The commission also has authority to impose certain discipline on former judges, and the commission has shared authority with local courts over court commissioners and referees. In addition, the Director-Chief Counsel of the commission is designated as the Supreme Court's investigator for complaints involving State Bar Court judges. The commission does not have authority over temporary judges (also called judges pro tem) or private judges. In addition to its disciplinary functions, the commission is responsible for handling judges' applications for disability retirement. This section describes the commission's handling and disposition of complaints involving judges. The rules and procedures for complaints involving commissioners and referees, and statistics concerning those matters for 2023, are discussed in Section V, Subordinate Judicial Officers. HOW MATTERS ARE BROUGHT BEFORE THE COMMISSION Anyone may make a complaint to the commission. Complaints must be in writing (see complaint form in Appendix 3). The commission also considers complaints made anonymously and matters it learns of in other ways, such as from news articles or from information received in the course of a commission investigation. JUDICIAL MISCONDUCT The commission's authority is limited to investigating alleged judicial misconduct and, if warranted, imposing discipline. Judicial misconduct usually involves conduct in conflict with the standards set forth in the Code of Judicial Ethics (see Appendix 2). Examples of judicial misconduct include intemperate courtroom conduct (such as yelling, rudeness, or profanity), improper communication with only one of the parties in a case, failure to disqualify in cases in which the judge has or appears to have a financial or personal interest in the outcome, delay in performing judicial duties, and public comment about a pending case. Judicial misconduct also may involve improper off-the-bench conduct such as substance abuse, using court resources for personal business, or misuse of the judicial title.

Judges do engage in discrimination and other misconduct or there would not be cases such as these:

- 54 -

VERIFIED COMPLAINT



VERIFIED COMPLAINT



The public is also allowed to file civil lawsuits against judges.

VERIFIED COMPLAINT



**https://www.ttb.org/programs/the-5-year-study**

Plaintiff and her family began enduring harassment, social isolation, aiientation inside HOA cmmunity. The very individuals court jurists Plaintiffs and family seeking fairness seeking adjudication vicimized Plaintiffs. I pray that no other disabled senior citizen litigant ever has to endure what I have had to endure as a taxpayer and U.S. Citizen. There have been multiple other disabled women that have been denied reasonable accommodations in California namely: Natalia Sidiakina, Susan Feris, Christine Considine. Despite ADA Christine Considine triumph concerning continuances as an ADA reasonable accommodation, Judges are still thumbing noses, denying and abusing disabled.



VERIFIED COMPLAINT



- 58 -

VERIFIED COMPLAINT



**RG19034687 BERNSTEIN MARY 9/11/2019**

**Bernstein VS Durbin**

**CH-100 Request for Orders to Stop Harassment (Civil Harassment)**

VERIFIED COMPLAINT

**RG19035648 BERNSTEIN MARY 9/19/2019**

**Bernstein VS Gibson**

**CH-100 Request for Orders to Stop Harassment (Civil Harassment)**

**RG19036528 BERNSTEIN MARY 9/25/2019**

**Bernstein VS Hernandez**

**CH-100 Request for Orders to Stop Harassment (Civil Harassment)**

**RG19037125 BERNSTEIN MARY 9/30/2019**

**Bernstein VS Simonson**

**CH-100 Request for Orders to Stop Harassment (Civil Harassment)**

Civil Harassment Petition filed
Case Number: RG20057366
Title: Bernstein VS Rivera
Case Type: Civil
Complaint Type: CH-100 Request for Orders to
Stop Harassment (Civil Harassment)
Case Number: HG20057369
Title: Bernstein VS Rivera
Case Type: Civil
Complaint Type: CH-100 Request for Orders to
Stop Harassment (Civil Harassment)
ATTORNEY TIME RECORDS CHALLENGED
Case Number: HG20067974
Title: Bernstein VS Gibson
Case Type: Civil
Case Number: HG20068279
Title: Bernstein VS Durbin
Case Type: Civil
Jacky restraining order
John Gibson restraining order
Gibson Third  08 HG
Mona Oliver  13 HG
03/08/2022
HG21110708
Bernstein VS Oliver
Civil Harassment
05/19/2022
Yes
03/08/2022

- 60 –

VERIFIED COMPLAINT

1  Bernstein VS Gibson
   Civil Harassment
2  05/19/2022
   No
3  04/05/2022
   HG20068279
4  Bernstein VS Durbin
5  Civil Harassment
   06/02/2022
6  **21CV000668** GIBSON vs BERNSTEIN
7  **Civil Unlimited** (Civil Harassment)
   Filed: 10/21/2021 Disposed: 05/19/2022 Court Finding - (Granted)
8
9  23CV031593 GIBSON vs TIGANO
   Civil Unlimited (Civil Harassment)   Hayward Hall of Justice / DEPT 519 - HON. Mark Fickes
10 Filed: 04/24/2023
   **HG20068279 Bernstein VS Durbin**
11 **DFEH DFEH CASE NUMBER: 201810-03850210**
12 **HUD MATTERS case numbers HUD CASE NUMBER: 09-19-4260-8**
   **DOJ matter case number CALIFORNIA DEPARTMENT OF JUSTICE**
13 **CASE NO. PIU 806129**
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 61 -

VERIFIED COMPLAINT



Luanne Rutherford claimed reviewed plaintiff motion for leave to file first amended complaint on September 3 2019, and claimed to prepare opposition to motion for leave to file first amended compaint on September 16 2019 for 4.10 hours. This is fraudulent for Plaintiff on medical leave until November 2020 and complete stay in effect. The motion for leave to file amended compaint which was not prepared and filed until January 28 2021. Again, Plaintiff was on medical leave until November 4 2020. The only documents to be prepared during stay were the renewed motion to extend stay by plainitff filed September 11 2019 and case management statement filed by plaintiff September 11 2019. The purpose was for October 2019 CMC scheduled by Paul Herbert in April 2019 to revisit and determine if stay lifted or if renewed. Luanne Rutherford claimed to prepare and file opposition to motion for leave to file first amended complaint -EXHIBITs O, P. Complete stay Apri 2019 - October 2019 First stay 6 months - no legal work to be peformed and no filngs by plaintiff or defense see court docket below - padding bills lying on bills fraud misrepreentation. <u>This is one of many fraudlent, erroneous cases applied to, phantom billings</u>

- 62 -

VERIFIED COMPLAINT

1  that disabled Plaintiff has burden identifying.
2  Scratched out billing entries that defendants McNamara
   must avail to Plaintiff.  Judges Eumi Lee and Keith
3  Fong attempted to grant fraudulent billings withou
   Plainitff opportunity to oppose and without hearing in
4  attempt to bankrupt disabled plaintiff and predatory
5  displacement entire family.



17  EXHIBIT O
18  4 4 2019 Luanne Rutherford Ex Parte Application Plaintiff no notice called by court at home hearing right then medicated 4 8
    2019 no notice then medical leave April 11 2019 hearing for six months Paul Herbert
19  EXHIBIT P
    Motion for extension stay October 9 2019 was on stay through November 4 2020 due to court closure covid and not to work on
20  matter advised by Judge until stay lifted – no one to work on case during stay invoices by defendants working on case during stay
    – judge Paul Herbert assisting advising in transcript defense counsel what to do to counteract Plaintiff research home sales
21  guiding defense counsel pages 43-46

22  **"Once is a coincidence and twice is a pattern"**
23  **Once An Accident, Twice A Coincidence, Three Times A**
24  **Pattern**

25
26  • 5 20 2022 email agreement farmers to waive attorneys fees and costs invoice
     entry #522
27  • McNamara attempted to get paid twice duplicate billing has been paid by
     farmers.
28

- 63 -

VERIFIED COMPLAINT

- No protective order filed on 11 5 2020  #128 for attorney to review

- No lengthy hearing travel time attending hearing 11 9 2020 #131 for 4.9 hours - no commute time as covid remote blue jean hearings

- Plaintiff's limited scope attorneys will testify that no such telephone conference ever occurred between Lloyd Winter and Luanne
- Rutherford or Christopher Allard which Christopher Allard attests to that all of these entries are true invoices and billing entries.

- #296 no third motion for recusal ever filed 9 13 2021

- #304 no telephone call occurred 9 28 201 for 1.2 hours with my limited scope attorneys they will testify

Multiple cases all intertwined with this HG18897381 judgment over reach

- 64 -

VERIFIED COMPLAINT



VERIFIED COMPLAINT



Motion to amend complaint filed January 28 2021 by Plaintiff Rutherford prepred and filed opposition to motion for leave to amend complaint years later February 9 2021.  This type of fraudulent, duplicative billing Plainitff is reporting to the state bar of California McNamara firm state bar compaint Luanne Rutherford and Christopher Allard.after stay lifted. EXHIBIT Z. Ethics violations.  Judges Eumi Lee and Keith Fong attempting to suppress and issue judgment of such fraudulent

- 66 -

VERIFIED COMPLAINT

billings on disabled senior citizen in effort to bankrupt plaintiff.  Plaintiff filed the
HG18897381 case personal injury mental anguish suffering in housing crisis.
Plaintiff is on social security and retaliatory judges denial reasonable
accommodations and attempt to make plaintiff and her family disabled homeless.
Predatory displacement.

- 67 -

VERIFIED COMPLAINT

McNamara law firm directing HOA members to harass evade service contributing to abuses of Mary Bernstein and Elizabeth Tigano Luanne Rutherford – directing John Gibson to file restraining order HUD complaint filed for harassment August 2021 husband stroke emergency room Plaintiff destabilized August 23 2021 John Gibson driving over guns in vehicle right when plaintiff pulled into carport parking right in front of unit #113 terrorizing – John Gibson had criminal felony charges for pulling gun on delivery driver in February 2021 on probation. Plaintiff was aware of gun ownership and violence. John Gibson taunting taking pictures of Plaintiff terrorizing in front of unit.  Plaintiff thought she was going to be shot and killed on the spot.  21CR003653 People of the State of California v. John Gibson case number Alameda County Superior Court.  Judges Eumi Lee and Keith Fong aware of John Gibson case in Alameda County Superior Court criminal matter.

HUD matter counseling non client John Gibson below.   Luanne Rutherford counseling members of HOA for years abuses Mary Bernstein demonstrated in billings discussion strategies inciting harassment against disabled senior citizen and famiily.

- 68 -

VERIFIED COMPLAINT



- 69 -

VERIFIED COMPLAINT



VERIFIED COMPLAINT



VERIFIED COMPLAINT



VERIFIED COMPLAINT



VERIFIED COMPLAINT



John Gibson served November 5 2021 Luanne communication service of process complaint – john Gibson had been evading service of complaint for weeks -- was called to Alameda County Sheriff to come and pick up

VERIFIED COMPLAINT



Concealing 2 25 2022 Eumi Lee Eliabeth Tigano mary bernstein appearance

VERIFIED COMPLAINT



VERIFIED COMPLAINT

Only one entry on billings redacted 2 25 2022 fabricated erroneous billings for entire case – misrepresentations fabrications by both Luanne Rutherford and Christopher Allard for billing in case abuse of discretion judges eumi lee and keith fong denial extensions attempt by Fong to thrwart filing of opposition to motion for attorney fees, reply costs memorandum and to make decision ruling under submission without hearing corruption abuses of discretion abuse of disabled plaintiff and Plaintiff Witness Elizabeth Tigano  court allowing abuses by defendants and defense counsel disparity treatment  **EXHIBIT J** Declaration Mary Bernstein Support of Motion to Strike Costs/Opposition to Motion Attorney Fees Declaration of Elizabeth Tigano in

– 77 –

VERIFIED COMPLAINT

1   Support of Opposition to Motion for Attorney Fees/Reply Costs **EXHIBIT K** Notice of Motion
    to Strike Costs Reply Motion to Strike Costs EXHIBIT Y

2   SUPPLEMENTAL DECLARATION OF MARY BERNSTEIN IN SUPPORT OF MOTION TO
    STRIKE TAX COSTS OPPOSITION TO MOTION FOR ATTORNEY FEES AND

3   OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA,
    MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND IN

4   SUPPORT OF REPLY IN SUPPORT OF MOTION TO STRIKE TAX COSTS

5

6   Fong, a former federal clerk attempting to prevent filing of opposition to motion for attorney fees
    .  Plaintiff attempted to disqualify Judge Jacqueline Corley as relationship exists

7   Fong and Judge Corley previous employment as well as Judge Corley appears to possess
    **prejudice to non represented, disabled plaintiffs.  Exhibits J, K.**

8

9   Each defendant's claim to attorney's fees must be considered separately. Plaintiff's complaint

10  is a personal injury action stated under various legal theories in separate causes of action. Not all

11  apply to each defendant.

12  According to Legal Match hosted at https://www.legalmatch.com/law-library/article/equitable-

13  servitudes.html Equitable Servitude is defined as:

14

15      What Is an Equitable Servitude?
        Equitable servitude is a concept in property law that restricts the use of property in a

16      manner that benefits another property, and it is enforceable in equity. These
        restrictions, typically outlined in the form of contracts or agreements, are designed

17      to ensure that the property is used or developed in a way consistent with the
        interests and intentions of the parties involved.

18

19  Equitable servitudes may apply to both residential and commercial properties, and they often

20  address issues such as land use, building restrictions, and maintenance responsibilities.

21

22  None of the causes as to any defendants is an equity action to enforce the CC&Rs or

23  Association rules as "equitable servitudes," No relief by way of injunction or mandate is

24  requested as against any defendant. Section 5975 (c) was not intended to apply to personal injury

25  actions. Consequently, the provisions for attorney's fees under Civil Code Section 5975 (c ) do

26  not apply. Defendants' motion should be denied as to each defendant.

27

28

VERIFIED COMPLAINT

According to Legal Match hosted at https://www.legalmatch.com/law-library/article/equitable-servitudes.html Equitable Servitude is defined as:

> What Is an Equitable Servitude?
> Equitable servitude is a concept in property law that restricts the use of property in a manner that benefits another property, and it is enforceable in equity. These restrictions, typically outlined in the form of contracts or agreements, are designed to ensure that the property is used or developed in a way consistent with the interests and intentions of the parties involved.

1. What Are Some Examples of an Equitable Servitude?

Some common examples of equitable servitudes include:

2. **Restrictions on building height or architectural style:** A property owner may be required to maintain a certain building height or adhere to a specific architectural style to preserve the aesthetic value of a neighborhood.

3. **Prohibitions on commercial use:** In some residential communities, an equitable servitude may prevent property owners from conducting commercial activities on their property to maintain the residential character of the area.

4. **Maintenance requirements:** A property owner may be required to maintain certain common areas, such as landscaping or shared facilities, as part of an equitable servitude within a homeowners' association.

5. **Environmental restrictions:** An equitable servitude may restrict certain activities, such as tree removal or alteration of natural features, to protect the environment or preserve the natural beauty of the area.

Equitable servitudes are similar to real covenants in that both involve agreements that restrict the use of property and run with the land, meaning they bind future owners of the property.

**Equitable Servitude**

VERIFIED COMPLAINT

An equitable servitude is a **restriction on property use** that is enforceable in equity. This case does not involve any restriction on property use.

Equitable servitudes may apply to both residential and commercial properties, and they often address issues such as land use, building restrictions, and maintenance responsibilities. **Plaintiff did not breach any maintenance responsibilities for unit, no restrict any use by defendants.** None of the causes as to any defendants is an equity action to enforce the CC&Rs or Association rules as "equitable servitudes," No relief by way of injunction or mandate is requested as against any defendant. Section 5975 (c) was not intended to apply to **personal injury** actions. Consequently, the provisions for attorney's fees under Civil Code Section 5975 (c ) do not apply. Defendants' motion should be denied as to each defendant.

**Defendants in case HG18897381 fraudulent billings submitted, costs without invoices as well as the case not involving equitiable servitude for reimbursement of attorney fees. EXHIBIT E Exhibits J, K.**
**Christopher Allard McNamara Invoices Motion for Attorneys fees attesting for Luanne Rutherford  Declaration perjurous**

Fraudulent entries

# "Once is a coincidence and twice is a pattern"
# Once An Accident, Twice A Coincidence, Three Times A Pattern

- 5 20 2022 email agreement farmers to waive attorneys fees and costs invoice entry #522
- McNamara attempted to get paid twice duplicate billing has been paid by farmers.
- No protective order filed on 11 5 2020  #128 for attorney to review

- 80 -

VERIFIED COMPLAINT

- No lengthy hearing travel time attending hearing 11 9 2020 #131 for 4.9 hours - no commute time as covid remote blue jean hearings

- Plaintiff's limited scope attorneys will testify that no such telephone conference ever occurred between Lloyd Winter and Luanne
- Rutherford or Christopher Allard which Christopher Allard attests to that all of these entries are true invoices and billing entries.

- #296 no third motion for recusal ever filed 9 13 2021

- #304 no telephone call occurred 9 28 201 for 1.2 hours with my limited scope attorneys they will testify

Multiple cases all intertwined with this HG18897381 judgment over reach

## I.   PLAINTIFF'S ACTION IS NOT AN ACTION "TO ENFORCE" AN "EQUITABLE SERVITUDE," AND THEREFORE NO ATTORNEY'S FEES ARE AWARDABLE UNDER CC SECTION 5975 (c)

Plaintiffs action for personal injury damages, based in part on CC&Rs as contractual

obligations," is not the equivalent of an action in equity "to enforce" the CC&Rs as "equitable

servitudes." The former is an action at law, the latter an action in equity."[17]

Civil Code Section 5975 (c) limits "prevailing party" attorney fees to "any action specified in

subdivision (a) to enforce the governing documents." Subdivision (a) specifies that CC&Rs are

"enforceable equitable servitudes."

Plaintiff's preliminary complaint did not seek enforcement in equity.  Plaintiff sought monetary,

compensatory, general, restitution and punitive damages for personal injury in prayer for relief.

---

[17]  As stated repeatedly throughout this litigation in plaintiff's memoranda, CC&Rs may be interpreted as contracts. See Frances T. v. Village Green Owners Assoc. (1986) 42 Cal.3d 490, $12-513, 229 CR 456, 469 ["Here, plaintiff's contract with defendants consists of the CCERs and the bylaws contained in the grant deed for plaintiff's condominium."], Diamond Bar Develop. Corp. v. Superior Court (1976 ) 60 CA3d 330, 333-334, 131 CR 458, 460. "Plaintiff's reference to CC&Rs as "equitable servitudes" in memoranda during this litigation is descriptive of one aspect of CC&Rs. Plaintiff also described the CC&Rs as contractual. These descriptive references do not turn this injury case at law into an equity action.

Not every case referencing CC&Rs is an action "to enforce an equitable servitude." Frances T. v. Village Green Owners Assoc. (1986) 42 Cal.3d 490, 513, 229 CR 456, was a personal injury case for a criminal attack in plaintiff's unit. It was not an action to "enforce" an equitable servitude.

- 81 -

VERIFIED COMPLAINT

Plaintiff is a non attorney and cobbled together preliminary complaint to the best of her ability as a disabled and traumatized person personal injury. **Exhibit H.** Plaintiff retained limited scope attorneys to assist with opposition to motion for summary judgment. Despite limited scope attorneys focusing on motion for summary judgment opposition only and Plaintiff on medical leave, both were admonished and lost. Plaintiff was admonished for the late filing and appearance despite Judge Eumi Lee aware and reluctantly providing medical leave. Transcript Vescos pages withheld wherein Eumi Lee advised Plaintiff in front of Plaintiff Elizabeth Tigano that Plaintiff was not to work on things during medical leave. This type of double talk, headgames were standard before this jurist along with grimaces, smirking. The judge then rebuked limited scope attorneys for not doing full representative tasks as well as ill Plaintiff on leave for not conducting depositions and other discovery prior to the summary judgment hearing. **Exhibit N. EXHIBIT R.** During Vesco hearing Judge Eumi Lee knew plaintiff intended to file amended complaint and stated during Vesco hearing April 22 2022 that she intended to allow Plaintiff to file amended complaint. Eumi Lee knew the intention of Plaintiff in CMC Statement as well as during Vesco hearing that Plaintiff would be amending complaint. Defendants had filed multiple demurrers and motions to strike. "Enforcement" requires an injunction or mandate. No injunction or mandate was sought by plaintiff. As stated by Witkin: *]. [Sec.493] Nature and Effect of Equitable Servitude."

" [E]quity will sometimes enforce the obligation against the successors of the covenantor, by an injunction against breach. The burden of the covenant thus becomes an 'equitable easement' or

- 82 –

VERIFIED COMPLAINT

servitude in the land of the covenantor." 4 Witkin, Summary of Law (9" ed. 1990), Real

Property, Sec. 493 p. 670."[18]

Witkin cites *Nahrstedt v. Lakeside Village Condominium Association* (1994) 8 C.4th 361,

33 CR2d 63, *Nahrstedt* states in pertinent part:

"Under the law of equitable servitudes, *courts may enforce a promise about the use of land*

even though the person who made the promise has transferred the land to another. [Citation.] The

underlying idea is that a landowner's promise to *refrain from particular conduct* pertaining to

land creates in the beneficiary of that promise an 'equitable interest in the land of the promisor.'

[Citations] a grantee or purchaser with notice that the premises are bound by a covenant "'will be

restrained from violating it." The doctrine is *useful chiefly to enforce uniform building*

*restrictions* under a general plan for an entire tract of land or for a subdivision." (Emphasis

added.) 8 Cal 4th at 379, 33 CR2d at 73.[19]

Plaintiff retained limited scope attorney Kevin Horan to assist with preliminary injunction and

complaint.  **Exhibit W.** This attorney was not to be practicing law unbeknownst to Plaintiff.

California State Bar victims compensation fund.  Plaintiff, a consumer and handicapped

vulnerable was victimized by member of the bar Kevin Horan.  A smalls claim trial held Plaintiff

awarded retainer; State Bar disciplinary Kevin Horan no longer practice law. **Exhibit X.** Kevin

Horan nursing home.

Plaintiff sought relief from collection of emergency lump sum payment levied at her due within a

matter of weeks $33,262.00 and threatened unknown future "emergency assessments, special

---

[18] "Although an injunction is defined by statute (C.C.P. 525, supra, Sec. 280) as a writ or order prohibiting, rather than compelling action, it has long been settled that a court with equitable jurisdiction may grant a mandatory injunction." 6 Witkin, Procedure (4" ed. 1997), Sec. 282, p. 225. "An injunction is an order or decree of a court either preventing (prohibitory injunction) or compelling (mandatory injunction) an act." 6 Witkin, Procedure (4" ed, 1997), Sec. 276 p. 219.

[19] *See e.g., Cabrini Villas Homeowners Association v. Haghverdian (2003) 111 Cal. App.4th 683, 4 CR 3d 192 (granted injunction ordering removal of air conditioner).

VERIFIED COMPLAINT

assessments" based on fraud malfeasance, misfeasance. Plaintiff did not seek any equity orders

of enforcement referenced in governing documents and 2) monetary damages for the harassment,

mental anguish and restitution damages denial of rights of pool. Plaintiff is not an attorney and

cannot be faulted as a disabled person with communication disabilities for language legal jargon

and lack of assistance by limited scope attorney mentally unfit.  There is no mention of pool in

governing documents in CC&Rs or Bylaws.  Plaintiff sought reasonable accommodations which

is a matter of law Civil Code sections 51 and 54.  Examples of such enforcement orders would

include, without limitation: (1) removal of the HOA Board President from the Board, (2)

ordering the association to perform some specific maintenance.  Plaintiff sought prevention of

collection of an illegal emergency special assessment that was voted against by majority of

members, reasonable accommodations and monetary damages for personal injury.

Reported cases regarding attorney's fees under Section 5975 (c) or known as Section 1354 (f) are

all equity actions seeking injunctive relief or mandate relating to the Association's governing

documents. They concern such matters as the type and size of fences, the type and color of

exterior siding, and voting rights.[20]  They are not personal injury cases for monetary damages.[21]

They are not reasonable accommodation denials.

---

[20]  See Rancho Santa Fe Ass'n v. Dolan-King (2004) 8 Cal.Rptr.3d 614, 115 Cal.App. 4% 28, rehearing denied, review filed [to enforce covenant as applied to fences], Parrott v. Mooring Townhomes Ass'n, Inc., (2003) 6 Cal.Rptr.3d 116, 112 Cal. App. 4" 873, review denied [to enforce covenant as applied to exterior siding], Kaplan v. Fairway Oaks Homeowners Ass'n (2002) 120 Cal Rptr.2d 158, 98 Cal.App. 4" 715, as modified ["to enforce the member's proxy and cumulative voting rights under the bylaws" (98 CA4th at 720)], review denied, Heather Farms Homeowners Assn. vy. Robinson (1994) 26 Cal Rptr.2d 758, 21 Cal. App.4™ 1568, rehearing denied, review denied (to enforce rules relating to modifications to units).

[21]  See Frances T. v. Village Green Owners Assoc. (1986) 42 Cal.3d 490, 513, 229 CR 456, 469 (Personal injury case with reference to CC&Rs) and White v. Cox (1971) 17 CA3d 824, 95 CR 259 (Personal injury case with reference to association's duty to maintain common areas under the condominium plan. The plan is noted to be an equitable servitude, 17 CA3d 828-829, 95 CR 259, 261-262).  [T]he Association is, for all practical purposes, the Project's "landlord." And traditional tort principles impose on landlords, no less than on homeowner associations that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents' safety in those areas under their control. *** As concluded above, the Association and the Project's residents also stand in a common law relationship, similar to that of landlord and tenant, that requires the landlord to exercise reasonable care in protecting tenants from criminal activity. *** 9 .. the Association owed a duty to plaintiff to protect her from the foreseeable criminal acts of others. (Frances T. v. Village Green.) Foreseeable Acts. Even when there is a special relationship between the parties, a duty to take affirmative action to

- 84 -

VERIFIED COMPLAINT

control the wrongful acts of a third party will be imposed where such conduct can be reasonably anticipated. The scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. In circumstances where the burden of preventing future harm is great, greater foreseeability is required; where the burden is relatively low, a lesser degree of foreseeability may be required. (Wentworth v. Sierra North Village HOA; internal cites and quotes deleted.) Landlords also have a duty to protect tenants from both non-tenants and other tenants where the vulnerable tenant has obtained a restraining order or has a copy of a police report stating that they are the victim of domestic violence, sexual assault, or stalking. CAL. CIV. CODE §§ 1941.5 – 1941.6. In California a landlord is required to provide a safe living environment for the tenants and the law has been established under the California Civil Code. The failure of a landlord to provide such conditions can lead to violation of the law and impose civil and, at times, even criminal liability upon the landlord.

Abba Father

God the Father, God the Son and God the Holy Spirit

Amos main point: God is going to punish the northern Jewish nation of Israel for a long list of sins – especially for exploiting the poor and selling justice to the highest-bidding briber. Amos 2:6-7

6 Thus saith the LORD; For three transgressions of Israel, and for four, I will not turn away the punishment thereof; because they sold the righteous for silver, and the poor for a pair of shoes;

7 That pant after the dust of the earth on the head of the poor, and turn aside the way of the meek: and a man and his father will go in unto the same maid, to profane my holy name:

Revelation 9

King James Version

9 And the fifth angel sounded, and I saw a star fall from heaven unto the earth: and to him was given the key of the bottomless pit.

2 And he opened the bottomless pit; and there arose a smoke out of the pit, as the smoke of a great furnace; and the sun and the air were darkened by reason of the smoke of the pit.

3 And there came out of the smoke locusts upon the earth: and unto them was given power, as the scorpions of the earth have power.

4 And it was commanded them that they should not hurt the grass of the earth, neither any green thing, neither any tree; but only those men which have not the seal of God in their foreheads.

5 And to them it was given that they should not kill them, but that they should be tormented five months: and their torment was as the torment of a scorpion, when he striketh a man.

6 And in those days shall men seek death, and shall not find it; and shall desire to die, and death shall flee from them.

7 And the shapes of the locusts were like unto horses prepared unto battle; and on their heads were as it were crowns like gold, and their faces were as the faces of men.

8 And they had hair as the hair of women, and their teeth were as the teeth of lions.

9 And they had breastplates, as it were breastplates of iron; and the sound of their wings was as the sound of chariots of many horses running to battle.

10 And they had tails like unto scorpions, and there were stings in their tails: and their power was to hurt men five months.

11 And they had a king over them, which is the angel of the bottomless pit, whose name in the Hebrew tongue is Abaddon, but in the Greek tongue hath his name Apollyon.

12 One woe is past; and, behold, there come two woes more hereafter.

13 And the sixth angel sounded, and I heard a voice from the four horns of the golden altar which is before God,

14 Saying to the sixth angel which had the trumpet, Loose the four angels which are bound in the great river Euphrates.

15 And the four angels were loosed, which were prepared for an hour, and a day, and a month, and a year, for to slay the third part of men.

VERIFIED COMPLAINT

No case awarding attorney fees under Section 5975 (a) or known as Section 1354 previously has been an action for personal injury damages. Such a case is not an "action specified in subdivision (a)" of Section 5975, Personal injury cases are nowhere mentioned.

Defendants seek a broad expansion of Section 5975 (c) that has no precedent. Section 5975 (c), by its reference only to actions specified in subdivision (a), is not global authority to award fees in all cases that may involve interpretation of CC&Rs.

This case is not concluded, additional individual defendants remain which were agents of the Defendants. The individual defendants must be treated separately in analyzing their statutory claims to attorney's fees, although they are represented by the same law firm. Not all causes of action relate to all three defendants. They do not stand in the same shoes. The property management firms do not have governing documents Plaintiff. Individual defendants have variable causes primarily related to personal injury.

## II. REDUCTION OF ATTORNEY'S FEES BY APPORTIONMENT

There are individual defendants that served on the HOA Board and individual non-board members in this matter. Assuming arguendo that the court finds that one or all three defendants are entitled to attorney's fees, there remain issues of apportionment:

16 And the number of the army of the horsemen were two hundred thousand thousand: and I heard the number of them.

17 And thus I saw the horses in the vision, and them that sat on them, having breastplates of fire, and of jacinth, and brimstone: and the heads of the horses were as the heads of lions; and out of their mouths issued fire and smoke and brimstone.

18 By these three was the third part of men killed, by the fire, and by the smoke, and by the brimstone, which issued out of their mouths.

19 For their power is in their mouth, and in their tails: for their tails were like unto serpents, and had heads, and with them they do hurt.

20 And the rest of the men which were not killed by these plagues yet repented not of the works of their hands, that they should not worship devils, and idols of gold, and silver, and brass, and stone, and of wood: which neither can see, nor hear, nor walk:

21 Neither repented they of their murders, nor of their sorceries, nor of their fornication, nor of their thefts.

- 86 -

VERIFIED COMPLAINT

1. If only one corporate defendant is entitled to an attorney's fees award, then the fees claimed by

defense counsel, who represented the three corporate defendants jointly, must be apportioned

between the defendants. **Counsel cannot recover attorney's fees for that portion of the work**

**pertaining to the defendant who is not entitled to a fee award. Likewise, counsel**

**representing individual HOA members in this action is not entitled to a fee award. Many**

**entries in the invoices submitted are not applicable to this HG18897381 matter in which**

**judgment. Further, some actions involved Plaintiff sister that is not a homeowner and not**

**a party to this action. Plaintiff's sister has had and has separate actions against**

**defendants. The billing time is applicable to agency matters HUD, Attorney General,**

**California Department of Fair Housing, individual restraining orders etc. This judgment,**

**matter did not encompass every matter for the past several years. The award if any would**

**be applicable only to this action.**

For example, if only Meadow Brook Association is entitled to attorney's fees, and 33% of the

work was on behalf of Associa and 33% on behalf of Massigham, then the fee claim must be

reduced by 66%.   No contract existed or CCRm between Associa Northern California,

Massigham or individual HOA community defendants and Plaintiff.  Therefore, fee award

equitiable services not applicable to these parties. If the work was on behalf of individual

defendants, the fee claim must be even further. For example, non represented John Gibson an

individual defendant and others.  Many billing entries redacted; if defendants make the argument

for fees, defendants are required to avail this redacted billing entries for Plaintiff to address. 2. If

the court finds that attommey's fees are awardable under some, but not all, of the causes of

action, then the work must be apportioned and the fees reduced accordingly.

Defendants have failed to provide any information **regarding apportionment** in their moving

- 87 -

VERIFIED COMPLAINT

papers. **Without such apportionment, the fees on their face are excessive and the request must be denied.**

Defendants claim that was a flat fee until October 2022 and then now on an hourly fee.[22] It is clear that billing entries were recreated as Plaintiff will show in oral argument phantom dates and work that was clearly never done. In addition, Plaintiff's limited scope attorneys will testify that no such telephone conference ever occurred between Lloyd Winter and Luanne Rutherford or Christopher Allard which Christopher Allard attests to that all of these entries are true invoices and billing entries. A state bar complaint is being filed against Luanne Rutherford and Christopher Allard for fraud. EXHIBIT Z.



# "Once is a coincidence and twice is a pattern"

---

[22] Defendants were initially represented by in-house counsel Robert Maltz, Esq. of Hartsuyker, Stratman, Williams-Abrego. In December 2018, Luanne Rutherford, Esq. of McNamara, Ambacher, Wheeler, Hirsig & Gray substituted in as counsel of record. In July 2022, Christopher B. Allard of McNamara, Ambacher, Wheeler, Hirsig & Gray took over as counsel of record for defendants. In October 2022, this matter was converted from a flat fee case to an hourly case. [Allard Decl., ¶7] MPA pg. 8, ¶2.

VERIFIED COMPLAINT

# <u>Once An Accident, Twice A Coincidence, Three Times A Pattern</u>

- 5 20 2022 email agreement farmers to waive attorneys fees and costs invoice entry #522
- McNamara attempted to get paid twice duplicate billing has been paid by farmers.

- No protective order filed on 11 5 2020  #128 for attorney to review

- No lengthy hearing travel time attending hearing 11 9 2020 #131 for 4.9 hours  - no commute time as covid remote blue jean hearings

- Plaintiff's limited scope attorneys will testify that no such telephone conference ever occurred between Lloyd Winter and Luanne
- Rutherford or Christopher Allard which Christopher Allard attests to that all of these entries are true invoices and billing entries.

- #296 no third motion for recusal ever filed 9 13 2021

- #304 no telephone call occurred 9 28 201 for 1.2 hours with my limited scope attorneys they will testify

Multiple cases all intertwined with this HG18897381 judgment over reach

In this case, defendants Massignahm, Associa Northern California, individual HOA community defendants and defendant Meadow Brook Association were all and are still all represented by the same attorneys. The demurrers and the summary judgment motion filed on their behalf were joint documents. All costs incurred, other than the filing fees for the answers, were jointly incurred.  Deposition attorney time and costs were incurred jointly. Court appearance fees were incurred jointly. Legal research and drafting time was incurred jointly.

On its face, <u>then, **not all of the attorney time**, and therefore fees, can be claimed to have heen incurred on behalf of one or the other.</u>

These issues are similar to those in *Cassim v. Allstate Ins. Co*, (2004) 33 Cal.4th 780, 16

– 89 –

VERIFIED COMPLAINT

CR2d 374, considering apportionment of attorneys fees between a contract cause of action and a tort cause of action. The plaintiff **was entitled only to fees incurred in the contract matter**. As stated in *Cassim*:

"The fees recoverable, however, may not exceed the amount attributable ta the attorney's efforts to obtain the rejected payment due on the insurance contract. Fees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable."" 33 Cal.4th at 807, 16 CR3d at 393, quoting from Brandt v. Superior Court (1985) 37 Cal.3d 813 at 819, 210 CR 211.
"To determine the percentage of the legal fees attributable to the contract recovery, the trial court should determine the total number of hours an attorney spent on the case and then determine how many hours were spent working exclusively on the contract recovery. Hours spent working on issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort." 33 Cal.4th at 812,16 CR3d at 397.

The party who claims the attorney's fees has the burden of proof on apportionment when fees **have been incurred jointly with one not entitled to fees.** See Cassim, supra, 33 Cal.4th at 813,16 CR3d at 398 0.16. See also Fennessy v. DeLeww-Cather Corp. 218 CA3d 1192, 1196, 267 CR 772, 774:

**("[T]t was undisputed that all defendants were represented by the same counsel,** who took depositions and performed other tasks that benefitted all defendants. Once [plaintiff] questioned [defendant's] entitlement to costs incurred by the six defendants nothing more needed to be or could have been added by additional declarations or affidavits [from plaintiff]." 218 CA3d at 1196, 267 CR at 774)

**III. REDUCTION OF FEES BECAUSE OF DUPLICATIVE WORK BY ATTORNEYS NOT OF RECORD**

As stated in Mix v. Tumanjan Development Corp. (2002) 102 CA 4" 1318, 1324, 126 CR2d 267, 272:

"Tt is not unusual for a litigant to be represented by more than one attorney.

- 90 -

VERIFIED COMPLAINT

For example, a litigant may be represented by both privately retained counsel and in house counsel. [Cases cited.] In those cases, a litigant entitled to an attorney fee award may recover attorney fees for both private counsel and in-house counsel, **provided the legal services are not unnecessarily duplicative."** (Emphasis added).

Only reasonable attorneys' fees are awardable. The fees requested here are unreasonable, and duplicative, for the reasons set forth below.

The firms of Hartsuyker, Stratman & Williams-Abrego now <u>Law Offices of Scott C Stratman</u> and McNamara, Ney, Beatty, Slattery, Borges & Ambacher LLP now <u>McNamara, Ambacher, Wheeler,</u> et al. have been paid already by Farmers Insurance under insurance policy insurance defense and now seek double billing, duplicative payment of legal services.  Christopher Bernard Allard #264842,  Robert Mark Maltz #143078 and Luanne Rutherford #153336 firms seek further enrichment in an attempt to predatorily displace and bankrupt disabled plaintiff.  In addition, Meadow Brook HOA has attempted to block, thwart any attempts to refinance to pay amounts by holding up, refusing to provide documentation to lenders in dispute during the summer of 2024 to insure displacement and homelessness of a disabled family.

Robert Malz initially the attorney and then Luanne Rutherford added.  An invoice memorandum of costs Anderw Elliott Andrew Spencer Elliott #254757 for preparation  reference for third party attorney Severson listed not even with either law firm demonstrating attempt to throw each and every billing and stick to this matter.  On its face it seems an unreasonable that defenddants attempt to impose unrelated costs and bills for this personal injury case." [23]

---

[23] There is only one plaintiff. There were 3 depositions no meadow brook hoa depositions and defense counsel
    refused to provide for depositions despite all of the third parties served with subpoenas.  The Court did not

VERIFIED COMPLAINT

1  The summary judgment motion was prepared by Luanne Rutherford. Christopher Allard did not

2  work on the motion for summary judgment at all.  The unfortunate

3  part of him coming into the case so "late in the game" is that, unlike defense counsel Mr. Allard

4  is in no position to attest to what fees and costs were incurred as he has had no familiarity with

5
6  the facts, the legal issues, the depositions, the interrogatories, and the demutters.  Therefore,

7  recreating the billings and attesting to their authenticity a declaration on behalf of another

8  attorney that is no longer with the firm is fraudulent, misrepresenting and deceitful.

9  Had Mr. Allard prepared the motions, appeared at court hearings, he would be in a position to

10 attest to the time and preparation.  A declaration is a statement under oath to the truth.  The court

11
12 will note that the demurrers prepared by Luanne Rutherford contain most, if not all, of the same

13 arguments and case law ultimately finding their way into the summary judgment motion

14 prepared by Luanne Rutherford boilerplate changing names only billings.

15 There has been considerable duplicative work for the defense. The law is clear that attorney's

16 fees are not awardable for duplicative work or unnecessary work; that only reasonable fees are

17
18 recoverable.

19 **IV. DISCRETION TO DETERMINE NO PREVAILING PARTY FOR PURPOSES OF**
   **ATTORNEY'S FEE AWARD.**

20

21 **Fair Housing Rights.  People do not elect to purchase a property in an HOA with varying**

22 **terms and conditions, no tenancy rights, no protection.  This would be enslavement and**

23 **bondage.  To be subjected to abuses, denial of accommodations, outrageous assessments**

24

25 _____

26 enforce subpoena deposition compliance.  None of the depositions were referenced in Defendants motion for

27 summary judgment.

28

- 92 –

VERIFIED COMPLAINT

imposed at whim, intimidation, dominination and manipulation, abuses, exploitation, social

isolation and alienation

Finally, the court has discretion in equity to determine that for purposes of attorney's fees

there is no "prevailing party." As stated in Kytasty v, Godwin (1980) 102 CA3d 762, 162 CR

556:

"The judgment as well as this opinion must be considered good news and bad news to each

of the parties, and in good conscience we cannot say attorneys' fees should be awarded to either

for the trial or for this appeal." 102 CA3d at 774, 162 CR at 563.

In this case, if one considers the actual impact of this court's ruling to the individual

homeowners of the complex, rather than the insurance carrier, the decision surely is mixed. It

may actually be viewed as detrimental to the Homeowners' Association in the long run.

The end result of the court's decision, urged upon the court by insurance defense counsel,

is that the homeowners have less protection from tenant's acts and omissions than otherwise

would be the case. A landlord homeowner (absentee who rents out his unit) is not liable for his

tenants acts or omissions in the common areas, despite the language of the CC&Rs stating that

the homeowter shall be "fully responsible" for the acts or omissions of his tenant in the common

areas.

There appears to be a conflict of interest between defendants Associa, Massingham individual

defendants HOA community and the Meadow Brook Homeowners' Association. If defendants

Associa, Massignham, individual hoa community defendants and the Meadow m

Brook Homeowner's Association were not insured by the same

cartier and were not represented by the same defense counsel, one may reasonably conclude their

positions would have been different.

- 93 –

VERIFIED COMPLAINT

The Meadow Brook Homeowner's Association would likely have cross-complained against Associa, Massingham concerning issues pointing fingers.  Likewise individual defendants in the community so harassing Plaintiff had to obtain restraining orders and file complaintis with HUD, Cal Dfeh.  Meadow Brook for instance was so unhappy with Associa that it retained a different property manager, Common Interest just prior to the filing of this Complaint.  On another note, one would believe that a homeowners association in a different scenario other than Meadow Broook whould have sided with a disabled plaintiff and her family on the argument that for instance John Gibson, Mona Oliver and others liable. There is no logical reason that the Association would want to permit Mona Oliver or any other homeowner to have irresponsible tenants, who are irresponsible and engage in violence and harassing conduct of the disabled. The only reason the argument was made by insurance defense counsel is that it benefits the insurance carrier in this particular case.

On the basis of the foregoing, this court may exercise its discretion and determine that there is both "good news" and "bad news" to cach of the actual parties in the case (not the carrier) and, **on that basis, find in the court's discretion that for the purposes of an award of attorneys' fees, there is no "prevailing party."** Aytasty v. Godwin (1980) 102 CA3d 762, 162 CR 556.


There is a second amended complaint **Exhibit F** that is operative with multiple additional defendants.   During this matter mcnamara firm has represented non board members, board members and lumped all in together as well as with multiple separate cases agencies and court. Judge Eumi Lee directed Plaintiff to file amended complaint with all causes of action, all defendants in Order.  Eumi Lee directed Plaintiff to retain all causes of action in preparation of

VERIFIED COMPLAINT

amended complaint prior to the filing of amended complaint and prior to the motion for summary judgment hearing.

If one is going to base this motion for <u>attorney fees based on an erroneous preliminary complaint</u> for personal injury as stated in cover sheet below filed in 2018 with an attorney that has been disbarred limited scope reliance and a handicapped senior citizen, then that would be erroneous.

**<u>Defendants in case HG18897381 fraudulent billings submitted, costs without invoices as well as the case not involving equitiable servitude for reimbursement of attorney fees.</u>**



Once Luanne Rutherford no longer with firm none of the "redacted" entries any longer demonstration John Gibson advisory harassment and others in case which will be proven at trial and in federal case which judges have allowed

MEMORANDUM OF COSTS

# Davis Sterling HOA not created for this type of abuses with no recourse, no representation abuses violations of disabled

VERIFIED COMPLAINT

# Discrimination refusal to allow morning CMC

1  

2  This Court vacated CMC scheduled for 9 17 2024 at the request of Defendants with no formal

3  motion. Plaintiff has been on medical leave and only returning to court.  This type of behavior has

4  been exhibited constantly by court bias, prejudice.  **Exhibit B.**



17  Mere suggestions no motions filed by Defendants the Court consistently does the bidding,

18  suggestion with whispers of motions filed no case law, no argument but merely typed statements in

Case Management Conferences or orally, letters to judges as well

19  Eumi Lee mere suggestion no formal motion to strike need be filed.  Eumi Lee stated that the Court

20  did not read the First Amended Complaint, **Exhibit G** however took face value from defendants

21  statement and struck complaint requiring Plaintiff to file yet another amended complaint See case

22  management statement by defendants invoices demonstrate the instruction of defense counsel

23  defendants to evade service

24  

25  

26  

27  

28  

VERIFIED COMPLAINT



This is not practicing law – the most recent accommodation of defendants is by Keith Fong department 517 vacating the 9 17 2024.

VERIFIED COMPLAINT



Plaintiff had requested morning court appearance.  Exhibit B from Dept 517 states that CMC are held on Friday mornings.  This email from Dept 517 clearly states that CMC held Friday mornings.  This is clear discrimination to not allow plaintiff this reasonable accommodation.  Plaintiff has had morning hearings the enteire time due to medical issues.

VERIFIED COMPLAINT



Alameda Court vacated settlement conference scheduled for 11 6 2024 moved to 12 10 2024

attempts by this Court to prevent Plaintiff from trial in this matter

Plaintiff has had to spend time that could be trial preparation on a fraudulent motion for attorney

fees and costs that this court attempted

VERIFIED COMPLAINT

to simply rubber stamp through. This Court attempted to block filing of opposition filing stating no

motions documents to be filed bankrupting plaintiff until CMC held. Court order 1 31 2024

however defendants have filed documents.

| |
|---|
| EXHIBIT 1 |
| Item #1 |
| Filing Filing Fee Pay To Invoice # |
| Filing - Answer to Complaint; Notice of |
| Asociation |
| $616.71 PACIFIC COAST LEGAL 483470 |
| GC 70611, 70602.5, 70602.6 $ 435* |
| Filing - Sub of atty $30.00 PACIFIC COAST LEGAL |
| SERVICES, INC 484508 |
| Filing - Motion to Quash $541.75 PACIFIC COAST LEGAL |
| SERVICES, INC 486261 |
| Filing - notice to set aside default $120.58 PACIFIC COAST LEGAL |
| SERVICES, INC 488077 |
| Filing - opp, dec $84.72 PACIFIC COAST LEGAL |
| SERVICES, INC 490401 |
| Filing - Supp dec to P's mnotion to compel $75.00 PACIFIC COAST LEGAL |
| SERVICES, INC 490473 |
| Filing - Disassoc of atty $45.00 PACIFIC COAST LEGAL |
| SERVICES, INC 504337 |
| Filing - Notice of entry of judgment $47.70 PACIFIC COAST LEGAL |
| SERVICES, INC 514354 |
| Filing - D's opp to P's M leave to amend the |
| complaint $47.70 PACIFIC COAST LEGAL 517216 |
| Filing - Reply x2 $37.33 FIRST LEGAL NETWORK LLC 20173044/7757157 |
| Filing - oppostion to Motion to Stay Case $58.33 FIRST LEGAL NETWORK LLC 10410123 |
| Filing - Motion for Summary Judgement $424.03 FIRST LEGAL NETWORK LLC 10422345 |
| Filing - Opp to Protective Order $35.00 FIRST LEGAL NETWORK LLC 10426015 |

VERIFIED COMPLAINT

| | |
|---|---|
| 1 | Filing - Advance Fees $1,476.98 FIRST LEGAL NETWORK LLC 10434779 |
| 2 | Filing - Motion to Strike $125.82 FIRST LEGAL NETWORK LLC 10434781 |
| 3 | Filing - Advance fees $666.99 FIRST LEGAL NETWORK LLC 10434782 |
| 4 | Filing - 10 Docs $361.38 FIRST LEGAL NETWORK LLC 10447372 |
| 5 | Filing - Motion to Strike - Fees Advanced $467.00 FIRST LEGAL NETWORK LLC 10450811 |
| 6 | Filing - Fees Advanced - |
| 7 | MSA/DEC/PO/POS/MPA $1,377.15 FIRST LEGAL NETWORK LLC 10450809 |
| 8 | Filing - Objection to Plaintiff's request $32.95 FIRST LEGAL NETWORK LLC 10450813 |
| 9 | Filing - Dec of Lunanne Rutherford $909.95 FIRST LEGAL NETWORK LLC 10454760 |
| 10 | Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC 10454761 |
| 11 | EXHIBIT 1 |
| 12 | Item #1 |
| 13 | Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC 10454762 |
| 14 | Filing MSJ reply brief $123.50 FIRST LEGAL NETWORK LLC 10458470 |
| 15 | Filing - electronic submission $39.95 FIRST LEGAL NETWORK LLC 10458469 |
| 16 | Filing - Fees Advanced - Memorandum of |
| 17 | Points and Authorities $986.15 FIRST LEGAL NETWORK LLC 10466546 |
| 18 | Filing - Oppostion to Disqualify Judge $63.14 FIRST LEGAL NETWORK LLC 10418066 |
| 19 | Filing - Demurrer with MTS $6.75 FIRST LEGAL NETWORK LLC 10477851 |
| 20 | Filing - oppostion $40.45 FIRST LEGAL NETWORK LLC 10477852 |
| 21 | Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC 10477850 |
| 22 | Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC 10482670 |
| 23 | Filing - MTS - Fees advanced $540.65 FIRST LEGAL NETWORK LLC 10482658 |
| 24 | Filing - D's Notice of Nonopposition $31.95 FIRST LEGAL NETWORK LLC 10487787 |
| 25 | Filing - Notice of Change of Firm Name $23.20 FIRST LEGAL NETWORK LLC 10487799 |
| 26 | Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC 10487793 |
| 27 | Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC 10493027 |
| 28 | Filing - Demurrer with MTS - Fees Advanced $165.65 FIRST LEGAL NETWORK LLC 10506276 |
| | Filing - Reply Briefs $31.95 FIRST LEGAL NETWORK LLC 10511416 |

VERIFIED COMPLAINT

| |
|---|
| Filing - MTS - Fees advanced $542.65 FIRST LEGAL NETWORK LLC 10515918 |
| Filing - D's Reply Brief in Support $31.95 FIRST LEGAL NETWORK LLC 10515917 |
| Filing - MTS - Fees advanced $90.25 FIRST LEGAL NETWORK LLC 20273542 |
| Filing - Stip of the parties to Extend - Fees |
| advanced $901.95 FIRST LEGAL NETWORK LLC 20273541 |
| Filing - stip - order $42.70 FIRST LEGAL NETWORK LLC 20273543 |
| Filing - Oppsition Dec $110.75 FIRST LEGAL NETWORK LLC 20275488 |
| Filing - Amended CMC Statement $90.25 FIRST LEGAL NETWORK LLC 20275493 |
| 2 |
| 24 2526272829 303132 33343536373839 40 41 424344 4546 |
| EXHIBIT 1 |
| Item #1 |
| Filing - D's Opposition to P $31.95 FIRST LEGAL NETWORK LLC 20275487 |
| Filing - CM Statement $61.90 FIRST LEGAL NETWORK LLC 20275492 |
| Filing - Dec of Andrew S. Elliott $31.95 FIRST LEGAL NETWORK LLC 20276065 |
| Filing - Opp; Dec $28.80 FIRST LEGAL NETWORK LLC 20276066 |
| TOTAL: $11,828.21 |

VERIFIED COMPLAINT

| Filing (Efiling fax filing costs not authorized only filing fees) | | Filing Fee (Filing Fees $60 with the exception of MSJ) | Actual filing fee California statewide fees/code effective January 1, 2024 | | Pay To | Invoice # |
|---|---|---|---|---|---|---|
| Filing - Answer to Complaint; | Notice of Asociation | $616.71 | Filing fee $435.00 GC 70612, 70602.5, 70602.6 | No fee no code | PACIFIC COAST LEGAL | 483470 |
| Filing - Sub of atty | | $30.00 | No fee no code | | PACIFIC COAST LEGAL SERVICES, INC | 484508 |
| Filing - Motion to Quash | | $541.75 | $ 60 filing fee motion GC 70617(a) | | PACIFIC COAST LEGAL SERVICES, INC | 486261 |
| Filing - notice to set aside default | | $120.58 | No filing fee for notice no code | | PACIFIC COAST LEGAL SERVICES, INC | 488077 |
| Filing - opp, dec | | $84.72 | No filing fee for opposition/declaration no code | | PACIFIC COAST LEGAL SERVICES, INC | 490401 |
| Filing - Supp dec to P's mnotion to compel | | $75.00 | No filing fee for declaration no code | | PACIFIC COAST LEGAL SERVICES, INC | 490473 |
| Filing - Disassoc of atty | | $45.00 | No filing fee for disassociation no code | | PACIFIC COAST LEGAL SERVICES, INC | 504337 |
| Filing - Notice of entry of judgment | | $47.70 | No filing fee for notice of entry of judgment no code | | PACIFIC COAST LEGAL SERVICES, INC | 514354 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFIED COMPLAINT

| Filing - D's opp to P's M leave to amend the complaint | $47.70 | No filing fee for opposition no code | PACIFIC COAST LEGAL | 517216 |
|---|---|---|---|---|
| Filing - Reply x2 | $37.33 | No filing fee for reply no code | FIRST LEGAL NETWORK LLC | 20173044/7 757157 |
| Filing - oppostion to Motion to Stay Case | $58.33 | No filing fee for opposition no code | FIRST LEGAL NETWORK LLC | 10410123 |
| Filing - Motion for Summary Judgement | $424.03 | $ 500 GC 70657(c), 70617(d) | FIRST LEGAL NETWORK LLC | 10422345 |
| Filing - Opp to Protective Order | $35.00 | No filing fee for opposition no code | FIRST LEGAL NETWORK LLC | 10426015 |
| Filing - Advance Fees | $1,476.98 | No advanced fee code reference to a motion filing $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10434779 |
| Filing - Motion to Strike | $125.82 | $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10434781 |
| Filing - Advance fees | $666.99 | No advanced fee code reference to a motion filing $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10434782 |
| Filing - 10 Docs | $361.38 | No advanced fee code reference to a motion filing $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10447372 |
| Filing - Motion to Strike - Fees Advanced | $467.00 | No advanced fee code reference | FIRST LEGAL | 10450811 |

VERIFIED COMPLAINT

| | | to a motion filing $ 60 filing fee motion GC 70617(a) | NETWORK LLC | |
|---|---|---|---|---|
| Filing - Fees Advanced - MSA/DEC/PO/POS/MPA | $1,377.15 | No advanced fee code reference to a motion filing $ 60 filing fee motion GC 70617(a) (Duplicate summary judgment cost? Only 1 motion for summary judgment filed) | FIRST LEGAL NETWORK LLC | 10450809 |
| Filing - Objection to Plaintiff's request | $32.95 | No filing fee objection no code | FIRST LEGAL NETWORK LLC | hjj10450813 |
| Filing - Dec of Lunanne Rutherford | $909.95 | No filing fee declaration no code | FIRST LEGAL NETWORK LLC | 10454760 |
| Filing - D's Notice of Nonopposition | $32.95 | No nonopposition filing fee no code | FIRST LEGAL NETWORK LLC | 10454761 |

## $11,828 IN FILING FEES??? FRAUD.

| Filing - D's Notice of Nonopposition | $32.95 | No filing feenonopposition fee no code | FIRST LEGAL NETWORK LLC | 10454762 |
|---|---|---|---|---|
| Filing MSJ reply brief | $123.50 | No filing fee msj one time filing fee $500.00 no code | FIRST LEGAL NETWORK LLC | 10458470 |
| Filing - electronic submission | $39.95 | Courtesy copy not recoverable | FIRST LEGAL NETWORK LLC | 10458469 |

VERIFIED COMPLAINT

| Filing - Fees Advanced - Memorandum of Points and Authorities | $986.15 | No filing fee memorandum no code | FIRST LEGAL NETWORK LLC | 10466546 |
|---|---|---|---|---|
| Filing - Opposition to Disqualify Judge | $63.14 | No opposition fee no code | FIRST LEGAL NETWORK LLC | 10418066 |
| Filing - Demurrer with MTS | $6.75 | $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10477851 |
| Filing - oppostion | $40.45 | No filing fee opposition no code | FIRST LEGAL NETWORK LLC | 10477852 |
| Filing - D's Notice of Nonopposition | $40.45 | No filing fee non opposition no code | FIRST LEGAL NETWORK LLC | 10477850 |
| Filing - Case management statement | $40.45 | No filing fee case management conference statement | FIRST LEGAL NETWORK LLC | 10482670 |
| Filing - MTS - Fees advanced | $540.65 | $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10482658 |
| Filing - D's Notice of Nonopposition | $31.95 | No filing fee nonopposition on no code | FIRST LEGAL NETWORK LLC | 10487787 |
| Filing - Notice of Change of Firm Name | $23.20 | No filing fee notice name change no code | FIRST LEGAL NETWORK LLC | 10487799 |
| Filing - D's Notice of Nonopposition | $40.45 | No filing fee nonopposition on no code | FIRST LEGAL NETWORK LLC | 10487793 |
| Filing - Case management statement | $40.45 | No filing fee CMC statement no code | FIRST LEGAL NETWORK LLC | 10493027 |
| Filing - Demurrer with MTS - Fees Advanced | $165.65 | $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10506276 |

VERIFIED COMPLAINT

| Filing - Reply Briefs | $31.95 | No filing fee reply no code | FIRST LEGAL NETWORK LLC | 10511416 |
|---|---|---|---|---|
| Filing - MTS - Fees advanced | $542.65 | $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 10515918 |
| Filing - D's Reply Brief in Support | $31.95 | No filing fee reply no code | FIRST LEGAL NETWORK LLC | 10515917 |
| Filing - MTS - Fees advanced | $90.25 | $ 60 filing fee motion GC 70617(a) | FIRST LEGAL NETWORK LLC | 20273542 |
| Filing - Stip of the parties to Extend - Fees advanced | $901.95 | No fee stipulation only | FIRST LEGAL NETWORK LLC | 20273541 |
| Filing - stip - order | $42.70 | $20.00 GC 70617(c)(2)) | FIRST LEGAL NETWORK LLC | 20273543 |
| Filing - Oppsition Dec | $110.75 | No opposition filing fee no code | FIRST LEGAL NETWORK LLC | 20275488 |
| Filing - Amended CMC Statement | $90.25 | No filing fee CMC Statement no code | FIRST LEGAL NETWORK LLC | 20275493 |
| Filing - D's Opposition to P | $31.95 | No filing fee opposition no code | FIRST LEGAL NETWORK LLC | 20275487 |
| Filing - CM Statement | $61.90 | No filing fee CMC Statement no code | FIRST LEGAL NETWORK LLC | 20275492 |
| Filing - Dec of Andrew S. Elliott this is a member of another firm not McNamara bills mixed together – Andrew Elliott Severson & Werson attorney | $31.95 | No filing fee declaration no code | FIRST LEGAL NETWORK LLC | 20276065 |
| Filing - Opp; Dec | $28.80 | No filing fee opposition/ declaration | FIRST LEGAL NETWORK | 20276066 |

VERIFIED COMPLAINT



| | | code | LLC | |
|---|---|---|---|---|

**TOTAL:**                    $11,828.21

## II. JURISDICTION

29. This court has jurisdiction over the matters contained in this complaint pursuant to the provisions of the Americans with Disabilities Act (ADA) of 1990, Title II, 42 U.S.C. 12131 et seq.; Americans with Disabilities Act Amendments Act (ADAAA) of 9/25/2008, 42 U.S.C. A. 12101 et. seq. The Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related state law claims for negligent infliction of emotional distress, and intentional infliction of emotional distress. Civil Rights violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq., ("ADA") and the Unruh Civil Rights Act, Cal. Civ. Code, § 51, et seq. ("the Unruh Act").

## III. VENUE

30. Venue is predicated upon 28 USC Section 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred with respect to employees of Alameda County Superior Court. Venue is appropriate in this court because Plaintiffs Mary Bernstein, Elizabeth Tigano and a substantial amount of the acts and omissions giving rise to this lawsuit occurred in this district.

## IV. SUMMARY OF FACTUAL ALLEGATIONS

– 108 –

VERIFIED COMPLAINT

31. On March 19, 2018 Plaintiff Mary Bernstein filed a civil litigation in VAlameda County Superior Court[24] for personal injury against HOA Meadow Brook Village Association – Fremont and property management firms managing the property.

32. Eumi K. Lee was transferred out of criminal department after appeal filed against her in a case. Eumi K. Lee was transferred to Dept. 512 and was assigned to this matter on or about September 2021.

33. Judge Eumi Lee when assigned to Plaintiff's matter ignored multiple motions filed regarding extension of time for motions to strike and demurrers filed in October 2021. Judge Eumi Lee from that point began admonishing, denials, abuses denied reasonable accommodations repeatedly again and again prior to Plaintiff interaction at all. Plaintiff had to seek emergency leave to handle mother internment matter December 6, 2021 leaving the state for a period of 30 days and to assume severely disabled younger sister to relocate to California.   As a judge presiding over the matter Bernstein v. Associa, et a., the judge has authority over Defendant Meadow Brook Village Association, agents – Fremont.  They can be issued by the judge early in a lawsuit to stop the defendant from continuing his or her allegedly harmful actions. **On November 30, 2021 Plaintiffs' Mother died.**   Plaintiff had to file an emergency leave to travel to Arizona December 6, 2021.  Judge Eumi Lee admonished Plaintiff for this request that enough time was not given despite this an emergency with a sudden death.  Plaintiffs Mary Bernstein and Elizabeth Tigano were harmed by Eumi Lee on due to harassment video calls, telephone calls subjected to disabled hate crime remarks terrorization during this entire process.  During the emergency family medical leave reluctantly granted by Judge Lee, at the behest of Plaintiff psychologist letters, when disabled Plaintiff Mary Bernstein out of state to tend to mother internment, relocation of disabled sister, on or about January 13, 2022, Judge Lee granted an *ex parte application* to accelerate hearing Farmers Insurance Exchange motion to quash summons filed by Farmers Insurance Exchange.  Plaintiff had not even seen documents nor aware of filing.  Alameda Court aware as this Judge procedural history that disabled Plaintiff requires extra time to respond due to disabilities and Judge was aware that Plaintiff was out of state at the time.  During the years 2022 and 2023, the Alameda County Superior Court has repeatedly denied reasonable accommodations to disabled Plaintiff Mary Bernstein despite multitudes of physician letters advising need reasonable accommodation.  Elizabeth Tigano  Plaintiff Elizabeth Tigano, a witness in Bernstein v. Associa was repeatedly denied reasonable accommodations by Judge Eumi Lee, Jenna Whitman an unassigned Judge.  Plaintiff Mary Bernstein and Plaintiff Witness Elizabeth Tigano have been subjected to repeated humiliation, embarrassment by this Judge beginning on February 25, 2022.  Plaintiffs Bernstein, Tigano, mockery in court, allowing ad hominem attacks by defense attorneys against disabled litigants requesting reasonable accommodations while in courtroom and in court filings.

## V. FACTS

---

[24]Alameda County Superior Court Case No. HG18897391

- 109 –

VERIFIED COMPLAINT

25. His blood redeems us. There was a price against us that we could not pay, but the blood of Jesus redeemed us. 1 Peter 1:18-19 says, "Forasmuch as ye know that ye were not redeemed with corruptible things.... But with the precious blood of Christ, as of a lamb without blemish and without spot." His blood brings us into fellowship with God. We are the Plaintiffs in this case Mary Bernstein and Elizabeth Tigano, half sisters. We are child sexual assault and child abuse survivors. I, Mary Bernstein disabled senior citizen, non attorney litigant and the caregiver for a disabled sister, a terminally ill husband and a senior disabled cat. I have been disabled for several years. I previously worked as an advocate in federal agencies and worked in the courts, private sector. I receive social security disability, I can no longer work, as I am permanently disabled. **Only through the Lord's grace am I able to keep putting one foot in front of the other each day during this stressful housing litigation**.

26. I, Mary Bernstein have disabilities ADHD, Bipolar, PTSD. I have mobility issues resulting from accident with my infant son in 1994 in stroller struck by vehicle in crosswalk nearly killing us both. I sustained injuries resulting in our move to Meadow Brook Village Fremont in 1994 for pool to rehabilitate. We rented unit for period of time 3663 Oakwood Terrace, #214 Fremont California 94536. Father in law John L. Bernstein II that owned unit 3416 Deerwood Terrace, #113, Fremont, CA 94536 assisted in realtor. Father in law John L. Bernstein II was then able to assist in transporting Mary Bernstein and younger son John L. Bernstein IV for multiple appointments Kaiser.

27. Plaintiff Bernstein from 2015-2017 was healing not receiving psychiatric care until hospitalization July 20-21 2017 due to the intense stress occurring HOA, financial matters. Plaintiff Bernstein suffered intense setback from emotional recovery PTSD HOA and has been receiving continual psychiatric care increased medications since July 2017. Conditions exacerbated by abuses by HOA retaliation, harassment and denial of privileges the Bernstein family endures despite payments. Swimming medically prescribed aquatic therapy to manage symptoms which Plaintiff has been denied for years.

28. A mentally disabled Complainant forced to conduct depositions, document reviews, investigations coordinate with multiple agencies, multiple attorney services without rest for nearly a year to the point of another medical, physical breakdown in her housing community. Fearful to leave her home, fearful to stay in it as continually accessible to harassment and abuses. Remaining animals forced to remain indoors to avoid cruelty to animals inflicted on them as retaliation.

29. Americans with Disabilities Act in the United States, U.S. Department of Justice

30. Alameda County as found in violation by the United States Department of Justice, lawsuits housing mentally ill mentioned

31. Disabled individuals in the United States protected by ADA. Many countries cultures view disabled persons as repugnant such as in South Korea. Pastor has created a Baby Box in Asia for young women to deliver their infants that they do not want to this Pastor, many of which are disabled infants.
https://www.liveaction.org/news/south-korean-pastor-babybox-honored-donation/
Pastor Lee Jong-Rak South Korea in a video discusses how people from continent Asia view disabled persons as repugnant. In the United States, we have the Americans with Disablities Act, Title II and other laws protection for disabled persons.

- 110 -

VERIFIED COMPLAINT

Alameda County was found in violation by the U.S. Department of Justice for allowing and injuring disabled persons. Justice Department Finds that Alameda County, California, Violates the Americans with Disabilities Act and the U.S. Constitution. There are several federal district court cases Northern District of California U.S. District Court pending concerning Alameda County disabled. https://www.justice.gov/opa/pr/justice-department-finds-alameda-county-california-violates-americans-disabilities-act-and-us.

32.  U.S. Department of Veterans Affairs National Center for PTSD https://www.ptsd.va.gov/understand_tx/written_exposure_therapy.asp states When you have PTSD, it's common to feel that the traumatic experience you went through is too difficult or stressful to manage. You likely avoid reminders (like people or situations) from the event, feeling a sense of danger.

33.  National Institute of Mental Health https://www.nimh.nih.gov/health/publications/bipolar-disorder Bipolar Disorder states Bipolar disorder is a chronic or episodic (which means occurring occasionally and at irregular intervals) mental disorder. It can cause unusual, often extreme and fluctuating changes in mood, energy, activity, and concentration or focus.

34.  Very Well Mind https://www.verywellmind.com/writing-and-adhd-20821 https://www.verywellmind.com/improving-reading-comprehension-in-students-with-adhd-20813 Writing and Comprehension difficulties for children and adults with ADHD. Keeping track of multiple concepts at once and continuously self-monitoring to make sure what they are reading makes sense can be incredibly difficult for a student with impaired working memory (often a problem for children with ADHD). Children and adults with ADHD write a different way. Reasonable accommodations to be made by courts for individuals with disabilities, particularly communication disabilities both state and federal courts. https://www.verywellmind.com/adhd-and-reading-comprehension-20806.

35.  I am not a professional attorney. I have retained professional attorneys and even they have not performed well enough for this Court, Departments 20 and 512 respectively, which is curious. This Court constantly has ridiculed me for not having an attorney and even when I have had attorneys, rulings have never been in my favor. Therefore, as a disabled person required to attempt to comply with restrictions by Dept. 512 that I do not completely understand in a reduced amount of time, this is extremely stressful. Disabled persons are to be given latitude in court as to provide equal access to the Courts ADA reasonable accommodations. Dept. 512 denied motion for summary judgment despite disputed facts, 137 page pleading drafted by attorneys stating that she did not know why it took so long when in fact she had granted emergency continuances fully aware of reasoning why limited scope attorneys were arguing months later due to mother's death, injury. Dept. 512 also chastised plaintiff for not conducting discovery during emergency leaves when motion for summary judgment stated discovery would be continuing.

34. Plaintiff filed a personal injury civil litigation in Alameda County Superior Court, Case No. CV18897381. Defendant Alameda County Superior Court has repeatedly denied and ignored reasonable accommodation requests of Plaintiff Bernstein and witness Plaintiff Elizabeth Tigano. Defendant Judge Eumi Lee has subjected disabled half sisters Plaintiffs Bernstein and Tigano to humiliation, mental anguish in hearings

– 111 –

beginning February 25, 2022.  Elizabeth Tigano reasonable accommodations from doctor regarding speaking to her in respectful manner ignored as well.

# VI. ARGUMENT

A.    *Violations 42 U.S.C. § 198181 NEGLIGENCE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS RELIGIOUS DISCRIMINATION BY Alameda County Superior Court*

Plaintiff Mary Bernstein has referenced in pleadings biblical verses, her faith and how the faith has sustained her through this difficult case.  Judge Eumi Lee admonished for biblical verses in First Amended Complaint prohibition.  Judge Jenna Whitman prohibition biblical verses in preparation of second amended complaint, photos and exhibits restricting freedom of expression.

B.    *42 U.S. Code § 12132 Disability Discrimination* ADA Violations Alameda County Superior Court - Numerous doctors written notes to this effect.

Alameda County Superior Court, in particular Judge Eumi Lee assigned to matter since September 2021 is aware of Plaintiff's disabilities through numerous reasonable accommodation requests and disabled sister Plaintiff cares for since Mother's death.

this court holding its nose providing reasonable medical accommodations to plaintiff and her family members; then retaliating punishing because pro per cannot conduct multiple motions, discovery with impairments

whether counsel assisting plaintiff or not this court consistently denies all motions from plaintiff while granting all defendants motions giving impression of bias, prejudice always concerned with age of motions as opposed to justice, merits

Plaintiff has a right to jury trial before peers as plaintiff did not seek and does not seek a bench trial defaults set aside pleaded for trial on the merits

Double standard at play in this Court.  Defendants corporate and individual provided with leeway, wide latitude in discovery, defaults, motion for summary judgment while plaintiff draconian, high standards harsh non enforcement of rules, discovery of other side when delaying, objecting.  Court allowing discovery abuses.

Default hearings to take wherein individuals did not answer, did not contact for extension.  Plaintiff wants to pursue these defaults as a few less defendants to try in case.

- 112 –

VERIFIED COMPLAINT

The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard" and when "a party exhibits a limited ability to **understand a proceeding affecting her rights. the court must undertake even more strenuous efforts to explain the process."** (Nielson v. Colgate-Palmolive, 199 F.3d 642 (2d Cir. 1999)). (emphasis added).

In Tennessee v. Lane, 541 U.S. 509 (2004), the Supreme Court of the United States held that the ADA apples to states courts and that, moreover:

"Cases such as Boddie, Grimn v. Illinois, 351 U.S. 12, and Gideon v. Wainwright, 372 U.S. 335, make clear that ordinary considerations of cost and convenience alone cannot justify a State's failure to provide individuals with a meaningful right of access to the courts. Judged against this backdrop. Title-us-affirmative obligation to accommodate is a reasonable prophylactic measure, reasonably targeted to a legitimate end." (emphasis added).

1.  . This is what California Congress decided:

In 2006, a task force of the California Commission on Access to Justice developed a model statute "State Equal Justice Act" that would implement a comprehensive right of access to equal justice. "Access to justice is a fundamental right in a democratic society. It is essential to the enforcement of all other rights and responsibilities in any society governed by the rule of law. It also is essential to the public's confidence in the legal system and its ability to reach just decisions. Recognizing its responsibilities in a democratic society, the State government assumes the duty to guarantee this right to all its citizens." (emphasis added).

The full text of "State Equal Justice Act" is published at:

http://www.povertylaw.orq/poverty-law-library/research-quides/civil-qideon/state-model-statute.pdf

Legal officials agree, however, that some issues decided in civil cases can be just as significant as in criminal cases, such as cases involving the elderly and individuals with disabilities, the well-being and safety of parents and children, and the basic need for adequate shelter.

  Plaintiff Bernstein's income is $26,000 annually through social security disability.  The denial of a cognitively disabled litigant's request for accommodation, such as extensions of time, continuances under the ADA Title II, 42 U.S.C. 12131 et seq. effectively denies that indigent cognitively disabled litigant his/her constitutional right to due process of law. The US Supreme Court held in Tennessee v. Lane, 541 U.S. 509 (2004) that the ADA Title II applies to state courts. The California Supreme Court in Kenneth Munson v. Del Taco, Inc., (2009) 46 661 , stated:

"A plaintiff who establishes a violation of the ADA, therefore, need not prove an intentional discrimination in order to obtain damages under section 52 [of the California Civil Code]".

In other words, the entities, including the California courts, should be PROACTIVE in eliminating the discrimination against people with disabilities.

The States can be sued for violations of and discrimination under ADA Title II, 42 U.S.C. 12131 et seq.

"As it applies to the class of cases implicating the fundamental right of access to

- 113 -

the courts, Title II constitutes a valid exercise of Congress' authority under 55 of the Fourteenth Amendment to enforce that Amendments substantive guarantees." (Tennessee v. Lane, 541 U.S. 509 (2004), at p. 510).

Under the ADA Title II, the defendants such as trial judges and ADA administrators can be sued in their official capacities, as an alternative method of suing the entity for which they are representative. (Haferv. Melo, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed.2d 301 (1991); Gorman v. Banch, 152 F.3d 907, 916 (8th Cir. 1998).)
**State judges do not enjoy absolute immunity for acts that are administrative rather than judicial in nature, such as providing accommodations for parties with disabilities under the ADA Title II.**
The US Supreme Court has held that judges can be held liable for damages in suits where actions which are administrative in nature are challenged. (Forester v. White, 484 US. 219, 224-225 (1988), Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994), Morrison v. Lipscomb, 877 F.2d 463 (6th Cir. 1989).)
Under the California Civil Code, Section 52, the plaintiff who establishes the violation of **the ADA Title II obtains injunctive relief, damages, and attorneys' fees.**
In light of the above, it is the inevitable conclusion that Plaintiff and the self-represented indigent cognitively disabled parties in civil litigation affecting basic human needs have been unlawfully denied their fundamental civil rights to access to justice and to due process in the California State courts. Moreover, in light of the above, it is the inevitable conclusion that providing extensions of time, continuances, disabled litigants in civil litigation, in which such litigants' fundamental rights to the basic human needs are at stake, DOES NOT create an undue financial burden and or administrative burden on the State courts, and DOES NOT fundamentally alter the nature of court services.
Consequently, the California State courts have been knowingly violating several Federal laws, including the Americans With Disabilities Act, Title II and the Fourteenth Amendment of the U.S. Constitution, by NOT providing reasonable and necessary accommodations, including, but not limited to, extension time, continuances to indigent cognitively disabled litigants. Thus. Plaintiffs were denied reasonable accommodations in violation of the ADA. Plaintiff Witness Elizabeth Tigano was prohibited by Eumi Lee from testifying. Commissioner Elizabeth Riles prevented Elizabeth Tigano from testifying. Judge Pro Tempore Susan Lew, discrimination against Elizabeth Tigano during testimony and prohibition of engineer son John L. Bernstein IV from testifying.

## VI. CAUSES OF ACTION

### Count I(42 U.S.C. § 1981)
### As to All Defendants
### FIRST CLAIM FOR RELIEF RELIGIOUS DISCRIMINATION

35. Plaintiffs Bernstein and Tigano repeat and reallege each and every allegation heretofore alleged as if fully set forth herein.

- 114 –

VERIFIED COMPLAINT

36. Defendant's conduct denying Plaintiffs reasonable accommodations were federally protected class extreme and outrageous and done with discrimination.

37. Defendant State of California Alameda County Superior Court is a public agency. Alameda County Superior Court, withheld from and denied to Plaintiffs accommodations, advantages, facilities and privileges thereof. The U.S. government has a public policy to promote equal rights for all citizens. One way to encourage this idea is to actively discourage discrimination against members of protected classes (such as racial minorities, religious, women, and the disabled). To prevent discrimination in public accommodations, the government enacted certain laws at the federal, state, and sometimes local levels. Specifically, the federal Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, national origin, and religion. The Unruh Civil Rights Act requires "full and equal accommodations, advantages, facilities, privileges or services in all business establishments.   Plaintiffs are members of a protected class, documented disabled women that have been harassed in court matters pleading for reasonable accommodations from this agency.

38. Under 42 U.S.C. §§ 1981 and 1982 Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a protected class; (2) defendant intended to discriminate against plaintiff based upon his membership in the protected class; and (3) the discrimination concerned one or more of the activities enumerated in § 1981. Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000). Like the Equal Protection Clause, § 1981 can only be violated by purposeful discrimination. Gen. Bldg. Contractor's Assn., Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). 42 U.S.C. § 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 has been interpreted to prohibit "intentional discrimination" based on race. Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617 (1987) (citation omitted). Plaintiffs are members of protected class: disabled women.

Plaintiff Mary Bernstein has referenced in pleadings biblical verses, her faith and how the faith has sustained her through this difficult case. Judge Eumi Lee admonished for biblical verses in First Amended Complaint prohibition. Judge Jenna Whitman prohibition biblical verses in preparation of second amended complaint, photos and exhibits restricting freedom of expression.

## COUNT II
### As to Defendant State of California Judicial Branch
### SECOND CLAIM FOR RELIEF 42 U.S. Code § 12132 Disability Discrimination
### ADA Violations

39. (a) That Eumi Lee, **Dept 512** Judge of Superior Court of Alameda County beginning February 25 2022, has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has excluded them from participation in, and/or denied her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq., has intentionally

subjected them to the unconscionable, immoral and inhumane treatment, abused and tortured then during the court processes causing her to experience pain and sufferings so severe that she began weeping on remote hearing calls, destabilizing February 25 2022. February 25 2022 ridiculing Plaintiff for ADHD symptoms admonishing for speaking. February 25 2022 embarassing medicated sister Elizabeth Tigano calling on her to stand up frightening her and that conclusion of hearing requesting Plaintiff only come into court room alone.  The suggestion that Elizabeth Tigano be left out in hall unsupervised. April 2023 medical emergency when returned to court Long Covid keeping plaintiff and witness longer than hearing during medical emergency causing East Bay Paratransit to be missed almost.  To date, Plaintiff only zoom hearings due to fear of medical emeregency again before Eumi Lee not wanting to adjourn despite medical breathing issues inhaler. Judge Eumi Lee has forced Plaintiff to proceed at times when unable to proceed due to health issues remotely.  Judge Eumi Lee denial reasonable accommodations, cruelty during medical emergencies.  Retaliation and abuses by Judge Eumi Lee vacating motion hearings for discovery matters.  Judge Eumi Lee granting carte blanche denial extensions costs and fees for attorneys summary judgment attempt to bankrupt plaintiff for fighting for her family and her home.[25]  The attorneys fees motion and memorandum costs filled

---

[25]  Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants. Defendants ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE
ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES' Corporate Entity Defendants ("CED") seek to recover over $19,262.00 in costs from Mary Bernstein Plainitf, an unrepresented litigant on social security disability fighting for her home.  Summary judgment was granted in favor of some of the Defendants in this action, three corporate entity defendants Massingham, Meadow Brook and Associa ("defendants"); however case is not over and scheduled for trial January 2025.CED also seeks attorneys' fees of $88,134.75. under Civil Code section 5975 (c).  Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants.  Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judment.  New counsel submitted a new Judgment entered July 17, 2023.  Notice of entry of Judgment served July 28, 2023.  Defendants then subsequently filed on August 14, 2023 untimely memorandum of costs in the amount of $19,262.00. Exhibit C.  Filing fees for example exborbitant or that Statewide Fee schedule demonstrates there is no fee.  Exhibit D. This was 17 days later. California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first. Plaintiff filed August 18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts.  Plaintiff had no information, dates or what to dispute other than vague amount placed there.  Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case.  Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for another attorney that incurred these costs in the case.  Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate.  There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand.  Motion for attorney fees iin the amount of $88,134.75 September 26, 2023.  Plaintiff filed motion to stirke tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

CED attetmpts to obtain reimbursement of costs under Cal. Code Civ. Proc. § 1032 et seq, including expenses that were not actually incurred by CED, and/or are not expressly allowed by §1032 et seq, and/or are not allowed as discretionary costs under § 1033.5.
For example, CED seeks costs for improper filings, efiling costs, deposition costs not incurred by
CED, research, bates stamping, non court ordered transcripts, non court order expert fees, associated with other cases, other attorneys, among others that were clearly incurred as a convenience or
benefit to the conduct of the litigation rather than reasonably necessary costs.
CED has failed to meet its burden in showing both in its Memorandum of Costs

- 116 –

VERIFIED COMPLAINT

1   with fraudulent entries by McNamara law firm.  Plaintiff has 640 billing entries to
2   analyze but many erroneous file and downright fraudulent billings.  For example below
    entries stating that work performed years before any work actually done.  Luanne
3   Rutherford
    The Alameda Sup. Court invokes Alameda County Sheriff to remove and displace
4   mentally ill people when coming into court to file matters.  I do not know if every pro se

5   ("MOC") and in its Opposition that many of these costs are allowable, and if they are allowable
6   or discretionary, that the amounts it seeks are reasonable and necessary. In its Opposition
    CED attempts to justify its unreasonable and unnecessary costs, but instead expressly supports
7   Plaintiff Mary Bernstein's contentions that it voluntarily assumed costs including but not limited to counsels' bates stamping,
       legal research, non court ordered expert witness fees, non court ordered transcript fees, and third-party costs for its own
8      convenience and/or benefit in
    preparation.  Plaintiff on social security disablilty respectfully requests that this Court grant its motion to tax and reduce to zero
9       $0 CED's MOC in addition to any such costs the Court deems
    appropriate to tax given that CED has not adequately specified, or adequately explained the
10  discrepancies in, costs and descriptions associated with filing costs, Therefore, Plaintiff's motion to tax and reduce all of the
       $19,262 to $0 awarded of the total amount sought should be granted.  In addition, Declaration of Andrew Elliott an attorney
11     not even affiliated with McNamara but an attorney at Severson representing third parties.  CED have attempted to bankrupt
    and take Plaintiff and her family's home since the beginning exploiting vulnerabilities of disabled and elderly homeowners.
12  Below listing California Statewide filing fees are not excessive amounts attempted to be reimbursed fraudulent.  Initial
    answer or complaint $435.00; motions $60.00; $500 motion for summary judgment; no filing fee substitution of attorneys
13  listed anywhere on fee schedule.  **Exhibit D.** Published here chrome-
    extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.courts.ca.gov/documents/Statewide-Civil-Fee-Schedule-eff-
    01012023.pdf https://www.courts.ca.gov/7646.htm.  California law recognizes three types of litigation costs: (1) allowable;
14  (2) disallowable;
    and (3) discretionary. Code Civ. Proc. § 1033.5, subds. (a), (b), (c)(4). For allowable and
15  discretionary costs to be recoverable, they must be both "reasonably necessary to the conduct of
    the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in
16  amount." Code Civ. Proc. § 1033.5 (c)(2-3). If specifically allowable under section 1033.5, the
    party challenging the costs has the burden of showing that the costs sought are not reasonable or
17  necessary. However, if the costs not specifically allowable are objected to, then the burden of
    proof lies with the requesting party to demonstrate that the costs were necessary and reasonable.
18  Ladas v. Cal. State Automobile Assn. (1993) 19 Cal.App.4th 761, 774. Whether a cost is
    reasonable is a question of fact. Lubetzky v. Friedman (1991) 228 Cal.App.3d 35, 39.  The Court should strike all costs as this
19  matter personal injury not enforcement of governing documents as exhibited in civil cover sheet for filing are not
    recoverable that are not reasonable in amount and/or not reasonably necessary to the litigation. Breach of contract one aspect
20  of complaint.  Plaintiff had limited scope attorney that was not eligible for practicing law, plaintiff a disabled litigant not an
    attorney at the time of the filing of the preliminary complaint.  This attorney can no longer practice law is in a hospice and
21  State Bar victims compensation fund.  Plaintiff won a small claims trial in this matter in this Court in 2019 for reimbursement
    of retainer.  Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for
22  reconsideration of that judment.  New counsel submitted a new Judgment entered July 17, 2023.  Notice of entry of Judgment
    served July 28, 2023.  Defendants then subsequently filed on August 14, 2023 untimely memorandum of costs in the amount
23  of $19,262.00.  This was 17 days later.  California Rules of Court Rule 3.1700 A prevailing party who claims costs must
    serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal
24  by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or
    dismissal, or within 180 days after entry of judgment, whichever is first.  Plaintiff filed August 18 2023 motion to strike costs
25  form as there were no invoices attached or dates simply vague lists and amounts.  Plaintiff had no information, dates or what
    to dispute other than vague amount placed there.  Further, California Rules of Court Rule 3.1700 states the memorandum of
26  costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost
    are correct and were necessarily incurred in the case.  Luanne Rutherford is the attorney that worked on the matters with the
27  law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for
    another attorney that incurred these costs in the case.  Further, costs have disingenuously be allocated to the cost
28  memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate.  There are several
    restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and
    Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which
    are not this HG 18897381 Alameda County Superior Court matter at hand.  Motion for attorney fees iin the amount of
    $88,134.75 September 26, 2023.  Plaintiff filed motion to strike tax costs form as there were no invoices just a list ready to be
    rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

- 117 –

VERIFIED COMPLAINT

litigant has as many errors by clerk office filing or if only my case. However, a audit of pro se litigant cases would reveal this fact. Multiple times clerks in Alameda County Superior Court supervisor Michelle Banks threatening disabled Plaintiff to call Alameda County Sheriff on her when filing documents and again March 2 2023. Plaintiff disabled and her sister have encountered resistance and attitude when attempting to file documents. Motions filed erroneously or not at all mutlitple times causing Plaintiff to be concerned. Does this happen in every case or just this case Disability rights are civil rights. From voting to parking, the ADA is a law that protects people with disabilities in many areas of public life. Long Covid discrimination medical Alameda County Superior Court – Discrimination harassment mentally ill filing motions First Amended Complaint – Court clerk stating she had to call Judge Eumi Lee 12 15 2022 before allowing FAC to be filed then fist 383 pages withheld; removal of previously filed documents; failure to file documents causing mental anguish for mentally disabled Plaintiff and her family facing housing crisis A motion for disqualification counsel was not filed despite file endorsed copy in plaintiff possesson on March 2, 2023; three contempt motions were not put on calendar. The clerk office wonders why disabled Plaintiff with bipolar, ptsd, adhd, asthmas mobility issues a senior when there appears to be indifference, calling of eumi lee judge to see if disabled pro se litigant "is allowed" to file documents. The treatment has been horrific. Plaintiff disabled has to consiststently despite severe illness review court docket and filings to insure documents still there. April 2022 a reply in support of second motion for protective order was removed by court. **Exhibit Q.** I have file endorsed copy. Myseriously 383 pages of First Amended Complaint appeared after not incorporated with initujal filing only after brought to attention of the Court.

**Clerks and Judges Preying on the Disabled Shaming for Disabilities and Intimidation Tactics**

Since the inception of this case in 2018, it appears running alongside a DOJ investigation into Alameda County Superior Court, Plaintiff, a disabled senior citizen and her witnesses, family members have encountered indifference denial of access to the court. During the pandemic, the abuse by Alameda County reached its Apex directing by Judges to terrified disabled Plaintiff, her sister Elizabeth Tigano and her late Mother Anna Smith Fogltance.

  We take it very seriously this case Alameda County Superior Court preying on disabled. Predatory Displacement Alameda County heartlessness for most vulnerable groups single mothers children disabled elderly

Late Mother passed and I am now caring for severely disabled sister and terminally ill husband with dementia, I myself am also disabled. Our safety and welfare compromised in Alameda County

Disabled not protected in Alameda County abused – we have undergone harassment had to obtain restraining orders not enforced by Alameda County Superior Court and now criminals allowed to move in  https://www.sfchronicle.com/eastbay/article/Housing-rescued-her-from-years-of-jail-and-17666993.php  https://www.theguardian.com/us-news/2022/dec/21/california-alameda-county-landlords-background-checks  http://sites.uchastings.edu/scholarship-blog/2018/04/04/eumi-lee-on-mugshots-on-the-internet/  protection of white collar criminals vilifying criminalizing civil plaintiffs in her courtroom disabled chastising patronizing condescending reprimanding like children humiliating disabled sister commanding her to stand up first time in court room heavily medicated and sedated

VERIFIED COMPLAINT

A judge that worries about mugshot invasion of privacy but not privacy of disabled citizens

https://www.theguardian.com/technology/2018/jun/12/mugshot-exploitation-websites-arrests-shame

https://www.theguardian.com/technology/2018/jun/12/mugshot-exploitation-websites-arrests-shame

Eumi Lee proposes a different solution: excluding mugshots from the public records, except when there is a specific law enforcement need or by court order.

"We are at such a pivotal mark in terms of criminal justice reform and also at this point of starting to fear the commercialisation of consumer and government data," the law professor said.

"Society must recognise the greater privacy interests at stake in the digital era."

A judge that crimializes the disabled iin her courtroom shamiong for ADHD and other issues wanting sister to be left in the hall  withholding court transcript pages double talk California county first in US to pass law banning criminal background checks for housing

OAKLAND, Calif. - Alameda County is the first county in the United States to ban landlords from criminal background checks on prospective tenants. The ordinance will prohibit both private and public landlords from requiring applicants to disclose arrests or convictions.   https://www.theguardian.com/us-news/2022/dec/21/california-alameda-county-landlords-background-checks

CMC    5 5 2023

Protective order second reply removed from docket

https://www.berkeleyside.org/2022/09/21/leonard-powell-city-of-berkeley-settlement

Leonard Powell 80 year old widow case number attempting to take his house away

RG15762567 The People of the State of California VS Powell RG15762567 The People of the State of California VS Powell Limited Civil (Other Civil Petition) A165544

Next Hearing: 02/24/2023 Court Trial

Limited Civil (Other Civil Petition)

Moms 4 housing mothers and babys in diapers thrown out in winter pandemic  The Magnolia Street house was kept vacant by Wedgewood Inc. for 18 months prior to Nov. 18, when the moms moved in and began making repairs.  Judge Patrick McKinney Friday, January 10, 2020 ruled against Dominique Walker of Moms 4 Housing  Walker, 34, and other mothers began occupying the three-bedroom home on Magnolia Street in November to avoid living on the streets. The mothers said the house had been vacant for two years,

https://www.kqed.org/news/11795419/judge-orders-homeless-mothers-to-leave-oakland-home  With guns drawn, Alameda County sheriff's

- 119 -

deputies enforced an eviction order early Tuesday morning, arresting two mothers who had moved into an empty West Oakland home, along with two of their supporters.

Officials confirmed the arrests of mothers Tolani King, 46, and Misty Cross, 38, as well as protesters Jesse Turner, 25, and Walter Baker, 28. All were charged with misdemeanors for obstructing police officers in their duties and are being held at Santa Rita Jail.

By Tuesday afternoon, all four had been released. The two moms, who were released first, and greeted by a small crowd of supporters, called conditions inside the jail terrible, and said they were now more fired up than ever to continue their fight.

https://www.kqed.org/news/11795944/moms-4-housing-members-evicted-from-oakland-home-4-arrested
https://www.kqed.org/news/11795944/moms-4-housing-members-evicted-from-oakland-home-4-arrested  https://www.counterpunch.org/2020/03/13/fighting-insecure-housing-qa-with-dominique-walker/  Wedgewood LLC  insecure housing

https://www.nytimes.com/2020/01/15/us/oakland-homeless-eviction.html
https://www.sfchronicle.com/eastbay/article/Berkeley-home-renovation-receivership-16948814.php
https://www.change.org/p/berkeley-city-council-stop-predatory-displacement-through-receivership
This case Bernstein v. Associa disabled family and disabled pet; late Mother denied reasonable accommodations traumatized leading to death Dissability Righgts Associations Calfiornia v. mentally disabled abuse in Alameda County by Aklaneda County institutionalized Case 5:20-cv-05256 Disability Rights California v. Alameda County DRC is California's Protection and Advocacy ("P&A") system. Motion hearing 3/24/2023 It is empowered and charged by federal law to protect the rights of California residents with mental health disabilities. In 2018, DRC opened an investigation into Alameda County's practices regarding unnecessary segregation in the County's psychiatric institutions.
Case 5:20-cv-05256  Disability Rights California v. Alameda County DRC is California's Protection and Advocacy ("P&A") system. Motion hearing 3/24/2023 It is empowered and charged by federal law to protect the rights of California residents with mental health disabilities. In 2018, DRC

- 120 -

VERIFIED COMPLAINT



o...y's practices regarding u...ychiatric institutions. Under this a...ehalf of people with disabilities in...to all "public entities," including D...gation into Alameda County's p...abled in 2018. 42 U.S.C. §...dividual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity or be subjected to discrimination by such entity." 42 U.S.C. § 12132. On November 1, 2019, DRC found probable cause to believe that the County's actions constitute abuse.

On Thursday, April 22, 2021, after a thorough multi-year investigation, the United States Department of Justice (DOJ) issued a report finding that Alameda County is violating the Americans with Disabilities Act (ADA). DRC Constituents Without Stable Housing Are at Serious Risk of Unnecessary Institutionalization. DRC Constituents who are homeless are deeply vulnerable to violence and trauma while living outside. Homelessness itself is a traumatic experience that aggravates the effects of mental health disabilities. The case of Bernstein v. Associa, et al., is not a frivolous case but rather serious housing crisis case which jeopardizes Plaintiff Mary Bernstein and her disabled family members housing which could render homelessness and potential institutionalization of the family which Alameda County has a pattern of abuse mentally ill. Alameda County Superior Court is the judicial authority that put these disabled constituents in the institutions which is the subject matter of Case 5:20-cv-05256 Disability Rights California v. Alameda County.

    I.      WITNESS DENIAL REASONABLE ACCOMMODATIONS LATE ANNA SMITH FOGLTANCE

    II.      DISABLED SISTER MISTREATMENT PLAINTIFF IS CAREGIVER FOTR REASONABLE ACCOMMATIONS ELIZABETH G. TIGANO

    On February 25, 2021 first time in court after emergency leave mother death indifference to disabled plaintiff and sister . Judge Eumi Lee addresses sister for nervousness calling her Ms. Tigano to

VERIFIED COMPLAINT

stand up.  Elizabeth is not a litigant.  At the conclusion of the lengthy hearing, the Judge stated to Disabled Plaintiff only you come in next time.  I advised that I could not leave my disabled sister alone in the hallway.   My sister had a complete violent meltdown the following day as this Judge wanted us to return every Friday for court

III.     PLAINTIFF MARY BERNSTEIN DENIAL REASONABLE ACCOMMODATIONS RETALIATORY ACTION FOR GRANTING REASONABLE ACCOMMODATIONS – DOUBLE TALK BOTH SIDES OF MOUTH CONFUSING INSTRUCTIONS, VACATING MOTIONS CAUSING REFILING WITTHOLDING VESCO TRANSCRIPT PAGES FROM HEARING TRANSCRIPTS, SUGGESTION NOTE TAKING RATHER THAN PROVIDING COURT REPORTER PER JAMESON V. DELTA FARMERS INSURANCE CONFLICT OF INTEREST

IV.     COURT ALLOWING ABUSES FARMER DEFENSE COUNSEL CRITICIZING PHYSICIAN LETTERS FOR REASONABLE ACCOMMODATIONS DEFENSE COUNSEL LEARNT REPRESENTING DOCTORS IN CASE WITNESS TAMPERING

V.      JUDGE REPRESENTS MAJORITY OF

VI.     MOTION FOR SUMMARY JUDGMENT RETALIATORY ACTION FOR CONTINUANCES GRANTED FEIGNED DID NOT KNOW WHY TOOK SO LONG, LIMITED SCOPE ATTORNEYS BERATED -  DURING VESCO HEARINGS ADVISED NOT TO DO WORK CONTINUANCES; THEN RULES AGAINST DISABLED PLAINTIFF FOR NOT CONDUCTING DEPOSITIONS DURING THIS TIME

VII.    JUDGE FACIAL GRIMACES, ROLLING EYES SCOLDING PLAINTIFF FOR ADHD SYMPTOMS PRESSURIZED SPEECH TALKING OUT OF TURN

VIII.   DISABLED SISTER ELIZABETH TIGANO HAS A RIGHT TO TESTIFY CONCERNING HER EXPERIENCES FEAR OF HOMELESSNESS, ABUSES BY MEMBERS OF THIS HOUSING COMMUNITY

VERIFIED COMPLAINT

IX. **Judge speaking out of both sides of mouth refusal to produce sealed vesco transcripts** 4 22 2022 and 5 13 2022 wherein  r gamesmanship if she works during from court which have been granted; ed and reprimanded for working not imes. Judge feigning she does not know g when judge granted the medical stay.

An example is the motion for summary judgment hearing wherein plaintiff in court reprimanded for not doing discovery during time on medical leave resulting in summary judgment granted to other side. In vesco hearings confidential judge has stated she wanted to see every incident detail in amended complaint. This kind of double talk is frightening and abusive to non attorney, unrepresented disabled plaintiff. Plaintiff is a senior citizen and has had eyes rolled at her by judge, grimaces made smirks and scolding as well as despite reasonable accommodations insensitivy correcting for ADHD symptoms.

X. My late mother Anna Smith-Folgtance denial of reasonable accommodations so atrocious a woman terminally attempting to testify to see her daughter a last time denied the ultimate violation of ADA reasonable accommodations

- 123 –

XI.

XII.

XIII. Vesco hearings venture on      and          2022 accusing
plaintiff of gamesmanship and plaintiff advised by judge to see
every incident listed defendants

XIV. Case 5:20-cv-05256  Disability Rights California v. Alameda
County

XV. https://gbdhlegal.com/wp-content/uploads/cases/ECF-1-
Complaint.pdf

XVI. https://www.cbsnews.com/sanfrancisco/news/former-alameda-
county-judge-pleads-no-contest-to-elder-abuse/

XVII. https://www.mercurynews.com/2019/12/20/alameda-county-judge-
admonished-for-hitting-lawyers-hand-crude-language/
https://theappeal.org/california-court-destroys-police-corruption-
cases/

XVIII. MyMother disabled in her last effort to assist her disabled
daughters testifying seeking protection displacement from home,
harassment knew that younger daughter would be coming into this

- 124 -

VERIFIED COMPLAINT



r sister upon mother passing   despite
hrenia bipolar managed to

er.com/2019/11/10/californias-criminal-
vhat-they-did-why-some-are-still-working/

ital nerve and face Judge insensitive to recovery time
pushing rushing to
have these hearings
senior citizen disabled
grandmother
Despite no objection from
adverse counsel, Judge Lee
hemmed and hawed on continuance for critical medical appointments and
surgeries long awaited January 2023.  The ADA Department harassing for
additional letters documentation from physicians for expected recovery time.
This treatment of disabled as if criminal, untrustworthy is despicable.  Alameda
County is the violator as found multiple scandals including the court.
Judge and clerk office attempted to prevent filing of first amended complaint
and what appears to be deliberate withholding of the first 383 pages of the filed
complaint.

Still recovering from eye injury orbital nerve sustained 2 26 2022  -  nerves
injury still and long covid respiratory issues concentration focus and sister
health psychiatric issues
Clerk office tampering with filings 12 15 2022   4 volumes binder FAC
Adam Byer pestering for more letters, documentation endlessly harassment
1 12 2023
https://abc7news.com/2-killed-in-dublin-alameda-county-sheriffs-deputy-
devin-williams-jr-suspected-double-homicide-charged-with-murder-
california-news/12216574/
Michelle Banks  Gina Fu  and Keisha Ghee  clerk office December 15 2022
Plaintiff inhaler to use for breathing
Myself Long Covid surgery upcoming  PTSD bipolar ADHD
12 22 2022 LONG TERM EFFECT OF COVID-19, CHRONIC FATIGUE
and LATE SEQUELAE OF CORONAVIRUS COVID-19.
he is also requesting to have her court hearings limited to 15 minutes at a
time only due to her postacute sequelae of COVID which causes shortness
of breath and fatigue. The symptoms get worse when she is stressed and
the court hearings do that to her.
POST-ACUTE SEQUELAE OF COVID-19 W CHRONIC FATIGUE
(primary encounter diagnosis)

VERIFIED COMPLAINT

Note: Letter done
3 ........ons in 2 months October – November 2022 Beth psychiatric
fr ........ ousing fragile mental state
M ........procedures Beth and I that we could not have done
p ........ rough march 2023recuperation
L ........ l elderly 80 year old wdower Aameda County attempting to
d ........ ed daugheer diaslysis attempting to displace   during COVID
atemptign to displace
people in their homes
My husband disabled
receiving social security
health failed during this case strokes robbed of his life
God loves little grandmothers and mothers even if the courts do not
My son injured in accident with me despite his injuries went on to complete
bachelor of science computer science although it took him a long time
African American church Desiny Christian Fellowship Fremont Calfiornia
People that do not pay rent providing housing but those that pay attempting
to displace, bankrupt
https://www.cbsnews.com/sanfrancisco/news/alameda-county-judge-
resigns-amid-claims-he-stole-1-6m-from-neighbor/
LATE SEQUELAE OF COVID-19
Note:
Plan: BENZONATATE 100 MG ORAL CAP - Take 1 capsule by mouth 3
times a day as needed for cough
    ALBUTEROL SULFATE 90 MCG/ACTUATION INHL HFAA - Inhale 2
Puffs by mouth every 6 hours as needed for quick relief of asthma
symptoms
   1 12 2023   in pain left side near lower rib cage stress. Appt coughing inhaler  Hanan Mohamed , MD
Paradoxal judge lee on vesco ventura hearings advising not to work during
illness then punishing retaliation for not doing work during medical leaves,[26]
**EXHIBITS S, T** stays causing distress and confusion for disabled Plainitff

---

[26] EXHIBIT S
Eumi Lee during medical emergency judge well aware of injury issues order denial of reasonable accommodations submitted
prior to this date 3 4 2022 with medical records motion to quash states non appearance
EXHIBIT T
Eumi Lee during medical emergency judge well aware of injury issues order denial of reasonable accommodations submitted
prior to this date 3 4 2022 with medical records case management conference states non appearance

VERIFIED COMPLAINT

1  Vesco hearings venture on 4 22 2022   and  5 13  2022 accusing plaintiff of
2  gamesmanship and plaintiff advised by judge to see every incident listed
   defendants
3  Du·plic·i·tous
4  /doo'plisədəs/
   adjective
5  deceitful:
6  "treacherous, duplicitous behavior"
   December 27 2022 once again attempted to have First Amended
7  Summons issued number A103 Window 10.  Clerk states that image could
8  not be pulled up FAC.  I am advised to bring a file endorsed copy of face
   pages with names to cross reference FAC next time.  Computers should be
9  able to bring up large files to view.
10 Declaration Ann    Jacky Zelda
   Regarding abusive treatment Judge Herbert hearing stay   7 2 2021 Jacqueleine
11 Illera was on line 2 24 2021 and Plaintiff Elizabeth Tigano witnesses to Judge
12 Paul Herbert abusiveness towards ill Plaintiff Mary Bernstein  Occupational
   Therapist and children's author Jacqueline Illera was also present on line remote
13 in Los Angeles, California Anna Smith Fogltance in Tucson Arizona and Plaintiff
14 Mary Bernstein in Fremont, California remotely on 7 2 2021 an eyewitness to the
   abuse of Anna Smith Fogltance and Plaintiff Mary Bernstein –
15

16

17 
18
19
20
21
22
23
24
25
26
27
28

- 127 -

VERIFIED COMPLAINT



Declaration Jacqueline V. Viera in Support of Motion of a New Judge

My name is Jacqueline V. Viera and I am knowledgeable about mistreatment Mary Bernstein has been enduring with the Alameda County Superior Court Paul Herbert. I Jacqueline V. Viera declare as follows:

I attended blue jeans hearing on July 2 2021 Bernstein v. Associe as a witness.

I attended February 24 2021 hearing as a witness Bernstein v. Associe.

I am a naturalized citizen from the Philippines I have been here many years. I am an occupational therapist and a published children's author. I want to complain about the behavior conduct towards myself as a witness as well as the experience I had before Judge Paul Herbert. I have been a witness on multiple restraining order hearings concerning retaliation for filing a civil complaints against the HOA that she lives in. Mary has been going through corporate mobbing unbearable I have endured with her in HOA Community assisted myself there with her there where her car stalled was towed by Triple AAA. I was in my red Mercedes when the harassment began my first time ever at Meadow Brook. We were surrounded by large crowds. Joaquin Rivera restraining order granted, John Gibson restraining order granted. Michael Durbin second civil harassment hearing pending. I was testifying February 24 2021 in support of Mary amending her complaint naming these individuals and the HOA that spawns this harassment of members of the HOA community. This was a despicable place. Mary's disabled sister Elizabeth Tigene has also endured harassment at the hands of the HOA, has witnessed abuses of Mary and likewise was testifying February 24 2021 for Mary to amend complaint new causes of action and name Doe Defendants. Mary is a functioning, caring adult despite all she has endured and continually is enduring. I have experienced it there at Meadow Brook Village condominiums. I have testified at first year and this year at civil harassment hearings. I am occupational therapist am aware of physical. Mary is disabled physically from accident her bones and her nearly killed in cross walk while working at cross walk to daycare. Mary is extremely bright suffers from PTSD was a legal professional for many years.

These people defame Mary saying she is psychotic, institutionalized her whole life. Many encounters this ill treatment on a daily basis as does her disabled sister that is on calls with her subjected also to the abuses. John Gibson directed a group of people at us July 30, 2020 circled around us in car abruptly they were upset about lawsuit. Mary provided medical records to defense counsel and these residents are aware of private medical records provided in discovery.

July 2 2021 hearing

I attended hearing remote was a witness to the dismissive attitude from the beginning. Mary's mother forbidden, which is prescribed oxygen with congestive heart failure also a witness. The judge began by scolding everyone on the calendar that done during it anyone makes any noises, rolling papers they will get lost. The other individuals were all attorneys on the line; we were all non attorneys. Some noise immediately made and judge stated their voices and I think it is Bernstein. We are not on video call her audio. We were treated as children and made to go last despite Mary's reasonable accommodations disability and her mother's. Mary made it known that she had witnesses including her mother oxygen congestive heart failure. During one of the other hearings Mary's mother coughed and the judge scolded as he said he did not get the citation from the attorney because someone coughed. This kind of abuse to elderly, sick people is extremely offensive and insensitive. After 45 minutes or so we were

finally called and judge began fussing at us for noise when no one was making noise. We made our appearances Mary's mother stated that she did not have any text in her dentures were not in. the judge began suggesting we all hang up discouraging us. The judge suggested that everyone would hang up and dial back in he did not know why we could not. I am not familiar with blue jeans system I am in Los Angeles and we only have two hearings. Mary's mother is not able to dial in log in, medicated prescriptions with technology as she is nearly 80 years old and has oxygen need. The judge refused to let any of us testify, continually dismissive as Mary and at the past hearing, scheduled to be hearing that he has done previously which further

VERIFIED COMPLAINT



A person with long COVID who has lung damage that causes shortness of breath, fatigue, and related effects is substantially limited in respiratory function, among other major life activities.

- 129 -

VERIFIED COMPLAINT

A person with long COVID who has symptoms of intestinal pain, vomiting, and nausea that have lingered for months is substantially limited in gastrointestinal function, among other major life activities.

A person with long COVID who experiences memory lapses and "brain fog" is substantially limited in brain function, concentrating, and/or thinking.

Judge using words abusive to Plaintiff Bernstein with medical issues, emotionally upset claiming Ranting Tangent dismissive words when trying to obtain stay to care for mother sister see them mother attempting to testify for mary Bernstein daughter to come assist them

Abusive towards women on line threatning

Mother on phone nearly an hour

No witnesses allowed


In November 2020 Judge Herbert began mistreating Plaintiff rebuking her for not working on discovery during a medical stay. EXHIBIT P.  Plaintiff Elizabeth Tigano was on hearing terrified of Judge witnessing abuse of elder sister by Judge.[27]

---

[27] EXHIBIT P

Motion for extension stay October 9 2019 was on stay through November 4 2020 due to court closure covid and not to work on matter advised by Judge until stay lifted – no one to work on case during stay invoices by defendants working on case during stay – judge Paul Herbert assisting advising in transcript defense counsel what to do to counteract Plaintiff research home sales guiding defense counsel pages 43-46

- 130 –

VERIFIED COMPLAINT



Deliberate delays yet opposed leave for terminally ill mother visit

ADA Reasonable Accommodations when returning to court

Beth hospitalized 3 times since moving to Meadow Brook

VERIFIED COMPLAINT

Disqua...                    ...octors
No mo...                     ...arings to be broken up in two parts   we
are re...                    ...fficulties may be taking east bay
para...
http...                      ...requently-asked-questions
Po...                        9: Evidence of mood & cognitive
im...

https://pubmed.ncbi.nlm.nih
.gov/34549199/
mother request for
reasonable
accommodations included oxygen ADA reasonable **request #2021-068**
**Bernstein v. Associa   6 24 2021**
**Include this information:**
**I will having other witnesses on the line with me and they are not to**
**be abused either.  My mother with oxygen, congestive heart failure**
**will be on the telephone for this hearing a witness as well as others.**
**This is part of reasonable accommodations these others present with**
**me due to the intense fear, stress level of this matter.  emotional**
**support animal**
**allow me to present presentation without interrupting constantly,**
**questions, abusing, destabilizing me  i will be presnting my motion**
**oral argument and reply response to opposition oral argument**
**presentation**

**11 16 2021 ADA Reasonable Accommodations Request Nos. #2021-**
**130 Mary Bernstein, #2021-131 Anna Smith-Fogltance  #2021-132**
**Elizabeth G. Tigano  #2021-Marilyn Fogltance**


**12 1 2021**
**Please prepare ADA reaasonable accommodations for me.  My mother**
**who was to be a witness 12/8 and 12/9 died yesterday anna smith**
**fogltance.  my sister elizaberth tigano also to be a witness is**
**hospitalized in psychiatric hospital.  I will have to have an emergency**
**stay.  i will be traveling to arizona to deal with the estate and these**
**matters immediately.**

**I have to put my surgery on hold to tend to these matters as well.**

– 132 –

VERIFIED COMPLAINT

**Alameda County Superior Court**
**Mental Health   Calendars are set at the John George Psychiatric**
**Pa~        ~nd Fridays at 9:00 a.m.**

En~        ~ron to come to court
Th~        ~temely frightened of  not allow defense counsel to
at~        ~n as she will be less medicated testifying with
emotional support animal
very scary for her
MOTION FOR
RECONSIDERATION
judge will try to state it has taken too long as she did for motion for
summary judgment instead of merits   retaliation for reasonable
acccommodations limited scope attorneys argued
Case 5:20-cv-05256 Document 1 Filed 07/30/20 DISABILITY RIGHTS
CALIFORNIA v COUNTY OF ALAMEDA et al.  COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF  Who has put most of these
constituents in the psychiatric institutions?  Why the Alameda County
Superior Court of coursez
Luke 18:1-8 ESV / 19 helpful votes Helpful Not Helpful
And he told them a parable to the effect that they ought always to pray and
not lose heart. He said, "In a certain city there was a judge who neither
feared God nor respected man. And there was a widow in that city who
kept coming to him and saying, 'Give me justice against my adversary.' For
a while he refused, but afterward he said to himself, 'Though I neither fear
God nor respect man, yet because this widow keeps bothering me, I will
give her justice, so that she will not beat me down by her continual
coming.'" ...  if a judge not interested in justice but simply wants to get rid
of an irritating woman can be merciful, how much more does our God
intend to be merciful.  We must always be persistent in prayer and faith.

94. As of 2019, approximately 2,567 people experiencing homelessness in
Alameda County—or 32% of the County's homeless population—identified
as having a serious mental disability. 95. Despite state law and policy that
discourages discharging people from psychiatric institutions to the streets
or emergency shelters,9 Defendants frequently discharge DRC
Constituents from psychiatric institutions such as John George and Villa
Fairmont to homelessness. Some DRC Constituents end up in emergency
shelters, if there are shelter beds available. Others end up in homeless

- 133 -

VERIFIED COMPLAINT

encampments crammed under overpasses in unsafe and degrading

c                                                    scribed the homeless

e                                                    g the world's most dire

p

h                                          ases/ECF-1-Complaint.pdf

9                                          e deeply vulnerable to violence

a                                          ess itself is a traumatic

                                           experience that aggravates
                                           the effects of mental health
                                           disabilities.
                                           99. The County has

acknowledged that, for DRC Constituents experiencing homelessness,
psychiatric hospitalization is among "the most frequent—and the most
expensive—source of [their] medical care."

**Vesco hearing transcript pages withheld wherein judge made remarks
gamesmanship 2 hearings**

**Farmers defense counsel mcnamara learnt during preparation of first
amended complaint representing kaiser permanente our doctors very
frightening as they are our sole doctors that treat us and will be
testifying at trial motion to disqualify interference with our medical
and psychiatric treatments luanne rutherford attempted to block
vesco hearing continuance based on doctors letters doctors
restricted what they can say now we understand why**

**Judge eumi lee giving a hard time in July, August and September
2022 concerning reasonable accommodations.  Throughout the case,
judge eumi lee retaliation penalizing for reasonable accommodations
motion for summary judgment transcript.  Paul Herbert chastised for
pandemic and litigation stay.**

**Alameda county sup court eumi lee covid and one for Bertrand
sartazeh Gibson oliver retaliation for judicial complaint**

- 134 –

VERIFIED COMPLAINT

I let the court know when I filed my initial complaint in March 2018 that I had disabilities requiring reasonable accommodations in a pleading format. The first time I had to obtain letter for reasonable accommodations in court for stay by doctors was April 2019. Shai Tsur wrote in support of stay and medical documentation for health failing walker, injury to leg taking care of Mother during emergency leave February – March 2019 out of state. There was no issue with the letter writing initially then October 2019 doctors expressed limitations concerning language in reasonable accommodation letters. McNamara had filed an opposition to second stay; hindsight is always 20/20. I have since learnt during that Kaiser medical whom my entire family receives medical care from is represented by McNamara. This is problematic conflict of interest as these doctors will be testifying at trial in this matter. Witness tampering

During Vesco hearings McNamara firm criticizing letter format before Judge Eumi Lee

# Limited Scope Attorney Representation summary judgment opposition

Eumi Lee engaging in embroilment

Judge Eumi Lee dismissed continued at the 5 13 2022 motion to strike demurrer knowing that Plaintiff would be amending complaint and judge stated inclined to grant 4 22 2022 vesco hearing. These VESCO portion transcripts were withheld from ordered transcripts. Court reporter prohibited from providing to Plaintiff. The judge during these Vesco hearings giving Plaintiff specific instructions and admonishments and then refusal to provide. This was strategy to remove corporate defendants BEFORE Plaintiff had chance to amend complaint demonstrating causes of action and claims doe defendants. This type of leapfrog fast ones pulled constantly. The judge attempted to block filing of first amended complaint in December 15 2022 by clerks in office needing to telephone eumi lee chambers for permission for filing. The judge intended to shield and dismiss corporate defendants 5 16 2022 BEFORE her ruling on motion for summary judgment granting stating that I did not do discovery or trial or any efforts Eumi Lee medical records reports had to reluctantly provide medical leave then penalized for it taking so long for hearing – this is in effect a retroactive denial of reasonable accommodations, *post-medical leave denial of reasonable accommodations to penalize for the need for the reasonable accommodation. These are the words utilized in the transcript taking so long.*

- 135 –



The judge was aware of the multiple medical leaves Plaintiff, Plaintiff's disability status, the pandemic and court closures and the limited scope attorney status working on only one dimension of the case. **See below in the highlighted paragraphs**. The denial of continuance to conduct discovery before this ruling. In addition, the Judge was fully aware in 4 22 2022[28] **EXHIBITS S, T** that Plaintiff would be amending complaint to clarify preliminary complaint which was filed with and direction disabled, non qualified attorney and disabled plaintiff quickly in March 2018. Judge mischaracterizes in that Plaintiff did not orally argue or request orally as limited scope attorney was arguing matter Sean Ferdin. Sean Ferdin argued matter competently (transcript can be provided during this trial); Jennifer Panicker prepared competent and comprehensive opposition papers.)

---

[28]  EXHIBIT S
Eumi Lee during medical emergency judge well aware of injury issues order denial of reasonable accommodations submitted
       prior to this date 3 4 2022 with medical records motion to quash states non appearance
EXHIBIT T
Eumi Lee during medical emergency judge well aware of injury issues order denial of reasonable accommodations submitted
       prior to this date 3 4 2022 with medical records case management conference states non appearance

VERIFIED COMPLAINT



In October 2023 Judge Eumi Lee admittance First Amended Complaint not read yet required extensive response to Order to Show Cause, admonishment of style of writing handicapped person non attorney with Long Covid burden to prepare second amended complaint without extension of time and extreme limitations confusing disabled litigant. Questionnaire judicial nomination references multiple self represented disabled litigants seeking recusal from Judge evidencing pattern of discrimination to self represented disabled litigants.   Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

EUMI LEE KEITH FONG did not have motion to strike FAC heavy lifting admittedly did not read struck attempted to push through costs and attorney fees without allowing plaintiff to oppose and without hearing ada violations and ethics

(b) That Judge Eumi Lee, **Dept 512** Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(c) That Judge Eumi Lee, **Dept 512** Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings

without accommodations and his knowledge of the requirement to conform to the ADA.

(d) That Jenna Whitman, **Dept. 25** Judge, Superior Court of Alameda County, beginning July 2023 has  discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 denial extensions Judge Jenna

– 137 –

VERIFIED COMPLAINT

Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions. Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history. Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression. Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

( e ) That Judge Jenna Whtiman, **Dept 25** Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(f) That Judge Jenna Whitman **Dept 25** Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

(g) That ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 Judge, Superior Court of Alameda County, beginning July 2023 and through April 2024 denial reasonable accommodations medical issues witness Elizabeth testifying no court reporter denial continuances has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 denial extensions Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions. Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history. Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression. Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

In 2023 Elizabeth Riles refusal to allow Elizabeth to speak at her own civil harassment or to testify for me. Refusal to look at evidence submitted.

23CV031593 GIBSON vs TIGANO

Civil Unlimited (Civil Harassment)   Hayward Hall of Justice

Filed: 04/24/2023

In 2023 Commissioner Elizabeth Rles will be added to the federal complaint Case Bernstein et al v. Lee et al 3:24-cv-00131-JSC for her unreasonableness in this matter. All ogther jjudes have given exeensions given my witness and my coindtion further testingn. This is demonstrastivion of vidcitiveness a petty trant this commissioner for

- 138 –

filing a complaint against her.   Alameda Court is responsible fot the action of this commisioner depriving my constittional right to defend myself against thiese unlimied years civil harassment order.

I am the one with the restraining order on me it does not incovience the petioner at all. This is absurd this reasonaing.  I have doctors orders to not particiate speaking and court until well after May 31 2024 testing to be done June 2024 and then reviisted later agter thast abouet abity to parri9cpae.

I will not be at the May 8 2024 hearing, I am unable to file papers or participate  and this judge is denyuing me acccess to court compromising my constitaional rights.  I am unable to proceed.

Elizabeth Riles denied Elizabeth Tigano the right to testify in previous her own restraining order case GIBSON vs TIGANO 23CV031593 as well as testifying in Mary Bernstein case last year.  Despite multiple doctors letters and requests, Elizabeth Riles and Alameda County Superior. Son Joel Bermstein jewish last name took off work Agust 3 2023 to appear in person and testify name was refused to testify on Mother Mary Bernstein behalf. Joel Bernstein lives with Moterh at property is aware of John Gibson. Restraining Order was maintained and kept on again.  Retaliatoin for reaonalbe accommodations by Dept 519 Elizaeth Riles courtroom for reasonavlew accommodations as there were elder abuse cases.

Elizabeth Tigano was not allowed to testify in her own restraiing order case no.    and not allowed to testify in my renewal 2023.  Jacqueline Illera testified, much evidence submitted. EXHIBITS L, M In this hearing, John Gibson testified never sees me Despite this Elizabeth Riles renewed for another year

Motion for modification son engineer refused by judge to testify; elizabeth tigano testified and stated harassed over and over.  Transcript attached John Gibson stated he never sees me

( h ) That ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(i) That Judge ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

(j) That SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge, Superior Court of Alameda County, beginning August 2023 has  discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 refusal witnesses to testify admonishment for using reasonable accommodaitons request elder hearings informal proceedings held to formal stndards Judge Jenna

- 139 -

VERIFIED COMPLAINT

Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions.   Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.  In addition when able a formal complaint will be lodged by myself and my sister Elizabeth Tigano.  This is a denial of Elizabeth to testify as a witness.  The civil harassment hearings are informal trials hearings yet Sussan Lew held to formal standards during modificiation refusal my engineer son to testify because he had not submitted declaration.  Further the Court Susan Lew held me to high standards with case law as that of an attorney.  In additon, Susan Lew Commisioner Riles surrogate judge for the day admonished my witness and I several tines for reaonable accommodations going first becxaue of "Elder Cases."

During the July 2023 reissuance hearing witnesses were denied; and despite John Gibson stating there and during the August 2023 modification hearing John Gibson stating that he did not even see me.  The transcript is asttached and will be an exhibit in federal court of the determination of this Alameda Court through this commissioner to indefinity place restraiing order on me by a man that has victimized me. A court reporter was not at the July 2023 hearing as no longer provied at these hearings unbeknonst to me.  The subsequent haring revocation trancxript attachewd.

The transcript demonstrates pages 19 and 20 that they never see me and I do not bother them.  Tbhere are no police reporsts.  This is demosntrastive of this court to purposefully despite witneesses, testimoiny and evidence to indeifintlyu place restrainng order on me.  A disabled senior ciziten with a walker becase i have a civiil lawsuit in alamenda county against HOA.

Also attachede is john gibson probabtionary report and anger management issued bhy this court.

ELIZABERH TIGANO ACCOUNT OF CIVIL HEARING MOTION TO MODIFY TERMINATE ORDER:
Judge Tempore in a civil harassment matter Gibson v. Bernstein 21CIV00668 Alameda County Superior Court
https://www.law.com/therecorder/almID/1201779836247/
I am disabled witness for my sister that has been enduring constant harassment by this man John Gibson that put restraining
order on me dismissed. My connection to the case Bernstein v. Associa HG18897381 is I was a witness, a witness in the 21CIV000668 matter.  Witness and had frivolous baseless restraining order placed on me by this man.  I was denied testifying in renewal matter of my sister restraining order and was denied arguing my own matter civil harassment by judge elizabeth riles.  My sister is elderly does not go near this man but he put restraining order on her because she served
him with complaint in civil matter.
The judge laughing at me asking the same question over and over about what have I seen.  I am disabled and this was

frightening her doing this over and over. I am not sure what she wanted me to say but I felt so humiliated. First she told me to

go to witness stand. Then the clerk said no they go to the jury box. I was so upset by her frustration with me. I explained

these people were horrific with cuss words because i was so upset. This made her smirk and she dismissed me. I had to walk

by this man laughing at me that terrorizes me. I have gone through so much harassment since my mother died and moved to

this HoA with my sister and her family. This man calls me a retarded fucking bitch constantly laughs at me when I go outside.

HUD is investigating this matter. My sister has done nothing, I have done nothting and this man is allowed to terrorize us.

This Susan attorney temporary judge kept saying the wrong date over and over that my sister was in court. This judge

seemed drugged, medicated or out of it. The people in the audience looked in shock. She should never have been a judge and cannot make it as an attrorney. She looked about 85 years old and seemed

disoriiented.

Judges Criticize Lew in Declarations

Several S.F. judges have detailed former staff attorney Susan Lew's allegedly poor job performance to defend against her

lawsuit, which claims discrimination.

February 01, 2008 at 12:00 AM

1 minute read

By Evan Hill | Updated on February 01, 2008

Former San Francisco Superior Court research attorney Susan Lew went from competing strongly in a judicial primary to

losing her job and then suing her former employer for retaliation and discrimination.

Now, a parade of both sitting and former judges has emerged to defend the court and its decision to dismiss Lew, castigating

her in testimony and, in the process, revealing some of the court's inner personnel machinations.

The often scathing commentary on Lew's alleged inefficiency and ineptness plays out in declarations and exhibits from nine

judges, including such prominent members of the bench as Presiding Judge David Ballati and 27-year veteran Philip Moscone.

The judges filed the declarations Jan. 18, as Lew's 2006 lawsuit has moved toward trial. Lew's attorney, John Scott of San Francisco's Scott Law Firm, declined to comment on the declarations. It's possible other

judges will make declarations in support of Lew on Feb. 15, when Scott will file his response. The court's motion for summary

judgment in the case, before U.S. District Judge Charles Breyer, is to be discussed March 7. Lew could not be reached for

comment.

Lew's most biting critics were Judge Diane Wick and retired Judge James Warren, who at separate times both directly

VERIFIED COMPLAINT

supervised her. Both apparently documented her performance closely.

"Dreadful!" Warren noted in a log he kept of Lew's work. "Terrible memo," he wrote in another entry.

Warren, presiding in law and motion at the time, oversaw Lew during roughly a monthlong evaluation period in 2005 when she

was assigned to him after allegedly doing poorly in a stint in the appeals section.

While working for him, Warren wrote, Lew committed a "dishonest act" that he considered "cheating": attempting to

surreptitiously substitute an unsatisfactory memo with an alternate version after he told her she could not.

According to Warren, Lew put the new memo into his files, even attempting to imitate a personal notation he makes on his

documents, while his back was turned during a telephone call.

Within a few weeks, he asked that Lew be transferred out of law and motion.

"Given her years of experience with the court, including her prior experience in Law and Motion, I was astounded at Ms. Lew's

substandard level of performance," Warren wrote. "I couldn't figure out how anyone doing work on that level was still with the

court."

In late 2004, before her time with Warren, Lew worked as the sole staff attorney for the appellate division under the supervision

of Wick, according to Wick's declaration.

A series of memos by Wick to her superiors, written between November and January, document her dissatisfaction with Lew's

assignment.

They culminate in a Jan. 31, 2005, message to then-Presiding Judge Robert Dondero informing him that Wick and her three

associate judges intended to resign their positions in the appellate division because of Lew's deficient research and the fact

that they lacked any confidence in her.

"The additional time required for us to serve in this position because we cannot rely on Ms. Lew's work product has seriously

impacted our ability to perform our other judicial responsibilities," Wick wrote. The court is represented in the case by Gail

Whaley of Hanson, Bridgett, Marcus, Vlahos & Rudy.

Lew, a onetime president of the San Francisco La Raza Lawyers Association and a court attorney for more than a decade,

alleges that she suffered a "continuing violation and pattern of discrimination" from the time she lost her judicial bid until her

firing. Lew argues this treatment was based on factors including her gender, political activity and her husband's terminal

illness.

Lew left her job with the court to run for judge in December 2001, but didn't garner enough votes in the primary to qualify for

the runoff between Sean Connolly and Judge Gail Dekreon.

VERIFIED COMPLAINT

After returning to work, Lew alleges she was "relegated" to civil discovery, then assigned to probate, and finally put into a pool
of less-experienced "floater" attorneys a month after applying to the governor for a judicial appointment.

It was in January 2005, a month after telling her supervisors that her husband was terminally ill, that Lew says she was made
the only staff attorney for the appellate division though she had no experience in appellate or criminal law.

"The assignment was designed to set her up to fail," according to her complaint.

Five months later, court CEO Gordon Park-Li gave Lew a notice she was going to be fired. His decision was based on her
"documented lack of competency and inefficiency in performing her work" and a loss of trust, according to Park-Li's
declaration.

At the time of her candidacy, Lew received endorsements from several sitting judges, including Lillian Sing, Lenard Louie and
Julie Tang.

MARY BERNSTEIN ACCOUNT OF CIVIL HEARING MOTION TO MODIFY TERMINATE ORDER:

Judge Tempore in a civil harassment matter Gibson v. Bernstein 21C1V00668 Alameda County Superior Court
https://www.law.com/therecorder/almID/1201779836247/

A horrific experience by a disabled grandmother granted ADA reasonable accommodations previous commissioner, then
berated for taking time going first before elder cases. This judge tempore initially would not review evidence video
demonstrating harassment on Mary Bernstein and guests. The court clerk had to advise that yes this is how it is reviewed.

Susan Lew then refused initially witnesses, Son Engineer and disabled schizophrenic sister that has suffered at the hands of
this man John Gibson continually hate crimes calling her a retarded fucking bitch stalking her constantly.

Elizabeth Tigano sister while testifying frightened in front of this man could not recall specific dates on stand. Elizabeth is
highly medicated can recall dates if she is reviewing police reports or another document with a date but cannot recall specific
dates due to intense medication. Susan Lew repeatedly kept asking the same question Elizabeth answered repeatedly about
the conduct smirking but dissatisfied because date could not be presented confusing disabled sister testifying. Elizabeth
became upset when dismissed John Gibson smirking laughing upsetting her. This woman demeanor horrific to Mary Bernstein
berating, admonishing for an hour and a half taken up. Even when Susan Lew questionned the respondent John Gibson and
protected person Mona Oliver if Mary Bernstein has done anything to them since restraining order placed on April 2022 they

- 143 -

VERIFIED COMPLAINT

stated no. Nonetheless, Susan Lew elected to retain restraining order stating it is because the restraining order has been in

effect that Mary Bernstein has not bothered them. Mary Bernstein, I possess a master of science degree, am a caretaker for

disabled family members terminally ill husband of 30+ years and disabled younger sister schizophrenia. Mary Bernstein, I

utilize a walker am 57 years old have many health issues have not done anything to these people to warrant civil harassment

order. I have never been in trouble with the law in my life. This was a petition to terminate restraining order informal order in

which Mary Bernstein was berated for not presenting a legal brief. Mary Bernstein reading caselaw of which was rejected,

interruptions constantly while attempting to articulate and present matter. Mary Bernstein PTSD Bipolar ADHD memory issues

suffering from Long Covid brain fog constant interjections interference with presenting case.

This attorney was fired for incompetence as an attorney had no business performing jurist duties. This attorney should not

ever be allowed to act as a judge tempore over civil harassment matters peoples lives or any matter.

Judges Criticize Lew in Declarations

Several S.F. judges have detailed former staff attorney Susan Lew's allegedly poor job performance to defend against her

lawsuit, which claims discrimination.

February 01, 2008 at 12:00 AM

1 minute read

By Evan Hill | Updated on February 01, 2008

Former San Francisco Superior Court research attorney Susan Lew went from competing strongly in a judicial primary to

losing her job and then suing her former employer for retaliation and discrimination.

Now, a parade of both sitting and former judges has emerged to defend the court and its decision to dismiss Lew, castigating

her in testimony and, in the process, revealing some of the court's inner personnel machinations.

The often scathing commentary on Lew's alleged inefficiency and ineptness plays out in declarations and exhibits from nine

judges, including such prominent members of the bench as Presiding Judge David Ballati and 27-year veteran Philip Moscone.

The judges filed the declarations Jan. 18, as Lew's 2006 lawsuit has moved toward trial. Lew's attorney, John Scott of San Francisco's Scott Law Firm, declined to comment on the declarations. It's possible other

judges will make declarations in support of Lew on Feb. 15, when Scott will file his response. The court's motion for summary

judgment in the case, before U.S. District Judge Charles Breyer, is to be discussed March 7. Lew could not be reached for

comment.

VERIFIED COMPLAINT

Lew's most biting critics were Judge Diane Wick and retired Judge James Warren, who at separate times both directly
supervised her. Both apparently documented her performance closely.
"Dreadful!" Warren noted in a log he kept of Lew's work. "Terrible memo," he wrote in another entry.
Warren, presiding in law and motion at the time, oversaw Lew during roughly a monthlong evaluation period in 2005 when she
was assigned to him after allegedly doing poorly in a stint in the appeals section.
While working for him, Warren wrote, Lew committed a "dishonest act" that he considered "cheating": attempting to
surreptitiously substitute an unsatisfactory memo with an alternate version after he told her she could not.
According to Warren, Lew put the new memo into his files, even attempting to imitate a personal notation he makes on his
documents, while his back was turned during a telephone call.
Within a few weeks, he asked that Lew be transferred out of law and motion.
"Given her years of experience with the court, including her prior experience in Law and Motion, I was astounded at Ms. Lew's
substandard level of performance," Warren wrote. "I couldn't figure out how anyone doing work on that level was still with the
court."
In late 2004, before her time with Warren, Lew worked as the sole staff attorney for the appellate division under the supervision
of Wick, according to Wick's declaration.
A series of memos by Wick to her superiors, written between November and January, document her dissatisfaction with Lew's
assignment.
They culminate in a Jan. 31, 2005, message to then-Presiding Judge Robert Dondero informing him that Wick and her three
associate judges intended to resign their positions in the appellate division because of Lew's deficient research and the fact
that they lacked any confidence in her.
"The additional time required for us to serve in this position because we cannot rely on Ms. Lew's work product has seriously
impacted our ability to perform our other judicial responsibilities," Wick wrote. The court is represented in the case by Gail
Whaley of Hanson, Bridgett, Marcus, Vlahos & Rudy.
Lew, a onetime president of the San Francisco La Raza Lawyers Association and a court attorney for more than a decade,
alleges that she suffered a "continuing violation and pattern of discrimination" from the time she lost her judicial bid until her
firing. Lew argues this treatment was based on factors including her gender, political activity and her husband's terminal
illness.
Lew left her job with the court to run for judge in December 2001, but didn't garner enough votes in the primary to qualify for

- 145 -

the runoff between Sean Connolly and Judge Gail Dekreon.

After returning to work, Lew alleges she was "relegated" to civil discovery, then assigned to probate, and finally put into a pool

of less-experienced "floater" attorneys a month after applying to the governor for a judicial appointment.

It was in January 2005, a month after telling her supervisors that her husband was terminally ill, that Lew says she was made

the only staff attorney for the appellate division though she had no experience in appellate or criminal law.

"The assignment was designed to set her up to fail," according to her complaint.

Five months later, court CEO Gordon Park-Li gave Lew a notice she was going to be fired. His decision was based on her "documented lack of competency and inefficiency in performing her work" and a loss of trust, according to Park-Li's declaration. At the time of her candidacy, Lew received endorsements from several sitting judges, including Lillian Sing, Lenard Louie and Julie Tang.

( k ) That SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(l) That Judge SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

(m) That BENTRISH SATARZADEH is a Judge Dept. 507 Judge, Superior Court of Alameda County, beginning July 2022 has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano. has discriminated denial of reasonable accommodations continuances and admonishment for request for extension time to file motions. Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial. 2022 despite evidence Bentrish S. submitted restraining order kept on; despite my evidence concerning John Gibson I did not meet the standard allegedly. John Gibson claims for years

### PROCEDURAL HISTORY BENTRISH SATARDZEH RETALIATION TOWARDS PLAINTIFF FOR FILING JUDICIAL COMMISSION COMPLAINT IN 2020 AGAINST BENTRISH SATARZDEH

(i) That Bentrish Satarzadeh, Dept. 519 parameter of time early 2020 - Commissioner of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein with full knowledge of her cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein is subjected to during court hearings without accommodations and her knowledge of the requirement to conform to the ADA. On October 2, 2019 despite MC 410 reasonable

VERIFIED COMPLAINT

accommodations that Plaintiff Bernstein could not do afternoon hearings, not to take last, Bentrish Satardadezh kept Plaintiff Bernstein waiting until 4:10 pm to call case stating it would not be heard that date and that parties would have to come back. Prior to back to back. Defense HOA attorney and Mike Durbin the civil harassment respondent undermined Plaintiff for psychiatric conditions mocking with walker, toys Bentrish Satarzaeh smirking with defense counsel humiliating disabled unrepresented medicated Plaintiff Bernstein. Prior to January 21 2020 multiple psychotherapist letters provided explaining that the Gibson and Durbin civil harassment trials needed to be one week apart for Plaintiff which were ignored, denied. Plaintiff frantically traveled, submitted multiple times these MC 410s. Plaintiff was required to appear January 21 2020 facing all of Plaintiff to face once again multiple violent men, their defense attorneys and their family members all alone in court. Further, Commissioner Bentrish Satarzeh stated Plaintiff would have only ten minutes to present her case. Despite overwhelming evidence against Defendants Gibson, Durbin, including multiple prior police incident reports against John Gibson from other parties and prior restraining order false imprisonment, sexual predator restraining order other parties imposed on Mike Durbin for 3 years Commissioner Satarzeh lifted the restraining orders causing escalating harassment against Plaintiff, her family and guests resulting in second petitions for civil harassment. 911 calls, video footage captured concerning harassment towards Plaintiff, guests. Transcripts available from January 21 2020 back to back civil harassment trials.

The initial civil harassment before this Commissioner RGI 9035648 wherein the civil harassment Order was dropped conditionally on Defendant John Gibson not harassing further.  Transcript excerpts below.  Immediately after matter dismissed, John Gibson resumed harassment resulting in second restraining order filed HG20067974 and granted. This man brandished a gun on a delivery driver in criminal matter pending 21CR003653. This man John Gibson and Mona Oliver extremely dangerous guns in possession.  Mary Bernstein Elizabeth Tigano a witness request that the April matters HG 21110708, HG21110713 be heard on 2/23/2022 with 21CV000668 first.  HG21110708 and HG21110713 were filed first and should be heard first.  Many breaks to be given as Elizabeth Tigano and Mary Bernstein highly emotional.  Mary Bernstein and Elizabeth Tigano to appear in person in court testifying.

Request for transcripts from previous HG20067974 hearing and motion to quash hearing to be prepared.  Jameson v. Desta People of modest means involved in civil cases are entitled to a court reporter if one is not already provided, the California Supreme Court ruled July 5. As Courthouse News reported, the state's highest court unanimously found, in Jameson v. Desta. Fee waiver on file and granted.  Witnesses in lengthy hearings previously and evidence in this matter.  Our late Mother was to testify in restraining order matter against John Gibson December 8/9 2021 but passed away November 30 2021 concerning harassment of daughters.  HG21110713 Bernstein VS Gibson
Unlimited Civil (Civil Harassment)   Hayward Hall of Justice / DEPT 519 - HON.
        Document Download
Filed: 08/25/2021       Next Hearing: 04/05/2022 Civil Harassment Restraining Order Hearing
HG21110708 Bernstein VS Oliver

- 147 -

VERIFIED COMPLAINT

1    Unlimited Civil (Civil Harassment)   Hayward Hall of Justice / DEPT 519 - HON.
          Document Download
2    Filed: 08/25/2021      Next Hearing: 04/05/2022 Civil Harassment Restraining Order
     Hearing
3    21CV000668 GIBSON vs BERNSTEIN
     Unlimited Civil (Civil Harassment)   Hayward Hall of Justice / DEPT 519 - HON.
4    Tamiza Hockenhull   Document Download
5    Filed: 10/21/2021      Next Hearing: 02/22/2022 Civil Harassment Restraining Order
     Hearing
6
7    This man filed a restraining order 21CV000668 GIBSON vs BERNSTEIN on victim
     Mary Bernstein after Mary Bernstein filed third restraing order as a way to evade service
8    by Alameda County sheriff offices of HG21110713 Bernstein VS Gibson and
     HG18897381 Bernstein v. Associa (Doe Defendant John Gibson).  John Gibson and
9    Mona Oliver were only served with civil harassments filed August 2021 on November 30
10   2021 afer months of evading service. Mona Oliver is the common law wife/girlfriend
     owner that has engaged in harassment as well.This is the third restraining order Mary
11   Bernstein has had to file against this violent man.  Elizabeth Tigano was a previous
12   witness against John Gibson before moving with Mary Bernstein.  Elizaabeth Bernstein
     has been and continues to be severely traumatized by John Gibson.  This man has
13   continually rescheduled pretrial hearings since May 2021.  Elizabeth Tigano severely
14   disabled now lives with Mary Bernstein due to Mother passing November 30 2021.  In
     2022 civil harassment before Judge Commissioner Bentrish Satarzadeh again in transcript
15   admits she has much familiarity with case despite evidence Bentrish S. submitted
16   restraining order kept on; despite my evidence concverning John Gibson stating Plaintiff
     did not meet the standard allegedly.  John Gibson claims for years that he was afraid but
17   curiously did not file restraining order until after named in HUD sexual harassment
     matter and attempts to serve with complaint in this matter.
18
19
20
21
22
23
24
25
26
27
28

                                           - 148 -

VERIFIED COMPLAINT



McNamara law firm directing HOA members to harass evade service contributing to abuses of
Mary Bernstein and Elizabeth Tigano Luanne Rutherford – directing John Gibson to file
restraining order HUD complaint filed for harassment August 2021 husband stroke emergency
room Plaintiff destabilized August 23 2021 John Gibson driving over guns in vehicle right when
plaintiff pulled into carport parking right in front of unit #113 terrorizing – John Gibson had
criminal felony charges for pulling gun on delivery driver in February 2021 on probation.
Plaintiff was aware of gun ownership and violence.  John Gibson taunting taking pictures of
Plaintiff terrorizing in front of unit.  Plaintiff thought she was going to be shot and killed on the

- 149 -

VERIFIED COMPLAINT

spot.  21CR003653 People of the State of California v. John Gibson case number Alameda
County Superior Court.  Judges Eumi Lee and Keith Fong aware of John Gibson case in
Alameda County Superior Court criminal matter.

HUD matter counseling non client John Gibson below.   Luanne Rutherford counseling members
of HOA for years abuses Mary Bernstein demonstrated in billings discussion strategies inciting
harassment against disabled senior citizen and familily.

- 150 -

VERIFIED COMPLAINT



VERIFIED COMPLAINT



VERIFIED COMPLAINT



- 153 –

VERIFIED COMPLAINT



VERIFIED COMPLAINT



John Gibson served November 5 2021 Luanne communication service of process complaint – john Gibson had been evading service of complaint for weeks – was called to Alameda County Sheriff to come and pick up

VERIFIED COMPLAINT



Concealing 2 25 2022 Eumi Lee Eliabeth Tigano mary bernstein appearance

VERIFIED COMPLAINT



- 157 -

VERIFIED COMPLAINT

( n ) That BENTRISH SATARZADEH is a Judge Dept. 507Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

- 158 -

VERIFIED COMPLAINT

(o) That Judge BENTRISH SATARZADEH is a Judge Dept. 507Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

p) That KEITH FONG is a Judge Dept. 517 Judge, Superior Court of Alameda County, beginning February 2024 has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and Order to Show Cause scheduled admonishing Plaintiff denial morning hearings and extensions. **EXHIBITS U, V.** Previously Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions. Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history. Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression. Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial. Restrictions no filing motions without leave or any documents prior to CMC; threats that despite illness would grant motion attotney fees and cost against plaintiff; refusal morning hearings despite Plaintiff always reasonable accommodations morning hearings for six years, order to show cause threaten sancxtions.. Judge Keith Fong advising that no documents allowed to be filed until after CMC held. To date, no CMC has been held due to medical leave Plaintiff. Plaintiff has not been able to file documents due to medical conditions on medical leave. Judge Keith Fong attempting to rubber stamp costs and fees for attorneys summary judgment attempt to bankrupt plaintiff for fighting for her family and her home.[29] Judge Keith Fong attempted to decide without hearing extensive

---

[29] Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants. Defendants ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES' Corporate Entity Defendants ("CED") seek to recover over $19,262.00 in costs from Mary Bernstein Plainitf, an unrepresented litigant on social security disability fighting for her home. Summary judgment was granted in favor of some of the Defendants in this action, three corporate entity defendants Massingham, Meadow Brook and Associa ("defendants"); however case is not over and scheduled for trial January 2025.CED also seeks attorneys' fees of $88,134.75. under Civil Code section 5975 (c). Plaintiff filed an objection to proposed judgment on July 12 2023 submitted by Defendants. Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judment. New counsel submitted a new Judgment entered July 17, 2023. Notice of entry of Judgment served July 28, 2023. Defendants then subsequently filed on August 14, 2023 untimely memorandum of costs in the amount of $19,262.00. This was 17 days later. California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first. Plaintiff filed August 18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts. Plaintiff had no information, dates or what to dispute other than vague amount placed there. Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case. Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for another attorney that incurred these costs in the case. Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several

- 159 –

VERIFIED COMPLAINT

other cases which Plaintiff will demonstrate. There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand. Motion for attorney fees iin the amount of $88,134.75 September 26, 2023. Plaintiff filed motion to strike tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

CED attetmpts to obtain reimbursement of costs under Cal. Code Civ. Proc. § 1032 et seq, including expenses that were not actually incurred by CED, and/or are not expressly allowed by §1032 et seq, and/or are not allowed as discretionary costs under § 1033.5.
For example, CED seeks costs for improper filings, efiling costs, deposition costs not incurred by
CED, research, bates stamping, non court ordered transcripts, non court order expert fees, associated with other cases, other attorneys, among others that were clearly incurred as a convenience or
benefit to the conduct of the litigation rather than reasonably necessary costs.
CED has failed to meet its burden in showing both in its Memorandum of Costs
("MOC") and in its Opposition that many of these costs are allowable, and if they are allowable
or discretionary, that the amounts it seeks are reasonable and necessary. In its Opposition
CED attempts to justify its unreasonable and unnecessary costs, but instead expressly supports
Plaintiff Mary Bernstein's contentions that it voluntarily assumed costs including but not limited to counsels' bates stamping, legal research, non court ordered expert witness fees, non court ordered transcript fees, and third-party costs for its own convenience and/or benefit in
preparation. Plaintiff on social security disability respectfully requests that this Court grant its motion to tax and reduce to zero $0 CED's MOC in addition to any such costs the Court deems
appropriate to tax given that CED has not adequately specified, or adequately explained the
discrepancies in, costs and descriptions associated with filing costs, Therefore, Plaintiff's motion to tax and reduce all of the $19,262 to $0 awarded of the total amount sought should be granted. In addition, Declaration of Andrew Elliott an attorney not even affiliated with McNamara but an attorney at Severson representing third parties. CED have attempted to bankrupt and take Plaintiff and her family's home since the beginning exploiting vulnerabilities of disabled and elderly homeowners. Below listing California Statewide filing fees are not excessive amounts attempted to be reimbursed fraudulent. Initial answer or complaint $435.00; motions $60.00; $500 motion for summary judgment; no filing fee substitution of attorneys listed anywhere on fee schedule. Published here chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.courts.ca.gov/documents/Statewide-Civil-Fee-Schedule-eff-01012023.pdf https://www.courts.ca.gov/7646.htm. California law recognizes three types of litigation costs: (1) allowable; (2) disallowable;
and (3) discretionary. Code Civ. Proc. § 1033.5, subds. (a), (b), (c)(4). For allowable and
discretionary costs to be recoverable, they must be both "reasonably necessary to the conduct of
the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in
amount." Code Civ. Proc. § 1033.5 (c)(2-3). If specifically allowable under section 1033.5, the
party challenging the costs has the burden of showing that the costs sought are not reasonable or
necessary. However, if the costs not specifically allowable are objected to, then the burden of
proof lies with the requesting party to demonstrate that the costs were necessary and reasonable.
Ladas v. Cal. State Automobile Assn. (1993) 19 Cal.App.4th 761, 774. Whether a cost is
reasonable is a question of fact. Lubetzky v. Friedman (1991) 228 Cal.App.3d 35, 39.   The Court should strike all costs as this matter personal injury not enforcement of governing documents as exhibited in civil cover sheet for filing and are not recoverable that are not reasonable in amount and/or not reasonably necessary to the litigation. Breach of contract one aspect of complaint. Plaintiff had limited scope attorney that was not eligible for practicing law, plaintiff a disabled litigant not an attorney at the time of the filing of the preliminary complaint. This attorney can no longer practice law is in a hospice and State Bar victims compensation fund. Plaintff won a small claims trial in this matter in this Court in 2022 for reimbursement of retainer. Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judgment. New counsel submitted a new Judgment entered July 17, 2023. Notice of entry of Judgment served July 28, 2023. Defendants then subsequently filed on August 14, 2023 untimely memorandum of costs in the amount of $19,262.00. This was 17 days later. California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first. Plaintiff filed August 18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts. Plaintiff had no information, dates or what to dispute other than vague amount placed there. Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case. Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for

- 160 –

VERIFIED COMPLAINT

memorandum costs and attorneys fees denial extension of time to prepare extensive opposition without 640 entries billing unrelated cases.

On March 4 2024 an OSC to show cause was issued threatening for not appearing at afternoon conference due to COVID 19 which this court was aware of  2 21 2024 and dismissed as moot aDA request.  This Court has been aware since 2018 I only am able to participate in early morning appearances.  This Dept. 517 issued confusing January 31 2024 confusing instructions concerning filings and not to file until CMC. The CMC and motion hearings moved to 3 1 2024 and 3 5 2024 afternoon with instructions no leave then a OSC sanctions other deadlines march 20, 26 deadlines opposition replies attorney fees comprehensive if did not file would be ruled against and may 7 2024

Had just been diagnosed with covid 2 21 2024and saw 3 1 2024 dates changed to 3 5 2024 a ADA request to move as covid diagnosis disoriented brain fog did not see CMC on a date and explained could not do afternoon hearings

Judge dept 517 aware of covid diagnosis attached to request judge signed stated moot

Had just been diagnosed with covid 2 21 2024and saw 3 1 2024 dates changed to 3 5 2024 a ADA request to move as covid diagnosis disoriented brain fog did not see CMC on a date and explained could not do afternoon hearings

Judge dept 517 aware of covid diagnosis attached to request judge signed stated moot

Defendants we have learnt were not able to get a fair criminal trial people of color and jewish people, discriminated against serving on jury Alameda County; likewise we plaintiffs have not been able to get a fair hearings and attempts to forefeiture our jury trial the entire duration of case.  Therefore, it seems the same discrimination for civil trials may be afoot tactics.  Discrimination against disabled jewish and blacks attempting to save their homes. Moms 4 housing, Leonard Powell, Mary Bernstein how many others? Perhaps an audit of these as well these civil cases dismissed or bungled trial witness jury tamperin or outright denial of constitiuional righs to trial and serving on jury. God loves these little Mothers Grandmothers, Mary and Elizabeth whether this Court does or not. This is horrific potentially falsely accused defendants not receiving a fair trial with capital punishment nor is it fair victims of predatory displacement in civil matters to be denied.

 EUMI LEE KEITH FONG did not have motion to strike FAC heavy lifting admittedly did not read struck attempted to push through costs and attorney fees without allowing plaintiff to oppose and without hearing ada violations and ethics

OSC never vacated **EXHIBITS U, V.**[30]

---

another attorney that incurred these costs in the case. Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate.  There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand.  Motion for attorney fees iin the amount of $88,134.75 September 26, 2023.  Plaintiff filed motion to strke tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

30  EXHIBIT U

Keith Fong minutes Order to Show Cause vacated only after Plaintiff brought to attention that the judge stated it would be vacated previously and that plaintiff did not have to prepare response and appear – sanctions and OSC had been issued despite reasonable accommodations and medical records submitted 3 5 2024 – matter left on calendar until 5 7 2024 stressing Plaintiff Bernstein

EXHIBIT V

VERIFIED COMPLAINT

## **September 17, 2024 CMC vacated**

This Court vacated CMC scheduled for 9 17 2024 at the request of Defendants with no formal motion. This has been a repeated pattern by ths Court to take direction from defense counsel. The Court is supposed to be neutral. No formal motions to strike, dismiss need be filed or vacated as the Court has been doing defense counsel bidding. Emails to the Court by defense counsel or suggestion in case management statements and letters to court. Plaintiff suspects ex parte communications occurring. Plaintiff has been on medical leave and only returning to court. This type of behavior has been exhibited constantly by court bias, prejudice.

Plaintiff has had to spend time that could be trial preparation on a fraudulent motion for attorney fees and costs that this court attempted to simply rubber stamp through. This Court attempted to block filing of opposition filing stating no motions documents to be filed bankrupting plaintiff until CMC held. Court order 1 31 2024 however defendants have filed documents.

Email from dept 517 states that CMC are held on Fridays  Exhibit B

Plaintiff submitted ADA requestr MC 410 of need for morning CMC heearing

Breathing issues coughing inhaler phone psalms playing take call in joel room

Denial did not bother ADA request is court reporter present?

The judge does some morning court appearances including trial

The court has provided court reporters in the past for all hearings and all morning for us procedural history will reflect – judge federal clerk

no vesco hearing held – no email to opposing counsel judge or ADA for morning cmc request ADA

---

Keith Fong Order - Order to Show Cause vacated only after Plaintiff brought to attention that the judge stated it would be vacated previously and that plaintiff did not have to prepare response and appear – sanctions and OSC had been issued despite reasonable accommodations and medical records submitted 3 5 2024 – matter left on calendar until 5 7 2024 stressing Plaintiff Bernstein

VERIFIED COMPLAINT

Plaintiff speech therapy hearing problems – medicated
Plaintiff Elizabeth Tigano
Coughing slow speech
Court reporter


To take it slow coming back to court Elizabeth and I after
medical issues


( q ) That KEITH FONG is a Judge Dept. 517 Judge of Superior Court of Alameda
County, has intended to continue to discriminate against the plaintiff, Mary Bernstein,
Elizabeth Tigano intentionally subject them to the unconscionable, immoral and
inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from
participation in, and/or deny her the access to and the benefits of, the services of the court
system and due process in violation of 42 U.S.C. 12132 et seq.

(r) That Judge KEITH FONG is a Judge Dept. 517 Judge of Superior Court of Alameda
County consistently insisted on continuing to deny necessary and reasonable
accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their
cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that
Bernstein Tigano are subjected to during court hearings without accommodations and his
knowledge of the requirement to conform to the ADA.

s) That MARK FICKES is a Commissioner Dept. 519 Judge, Superior Court of Alameda
County, beginning May 2 2024 has discriminated against the plaintiffs, Mary Bernstein,
and Plaintiff Witness Elizabeth Tigano. I have a jewish last name Bernstein. On April
22 2024 I learnt Alameda Coyunty investigation for discrimination against Blacks and
Jews. Judge orders review of Alameda County death penalty convictions over apparent
exclusion of Jewish, Black female jurors. Dozens of death penalty convictions in
Alameda County must be reviewed after prosecutors there were found to have
intentionally excluded Black and Jewish jurors during a murder trial ia federal judge
ordered. **Exhibit A.** This is after Department of Justice investigation determined in 2021
Alameda County violations abuses mentally ill persons.

On June 18, 2024 Commissioner Fickes issued restraining order for 3 three additional
years bringing to a total now of over six years restricted movements in condominium
association by a violent man. Commissioner Fickes was aware that Respondent could not
file a response due to medical reasons and could not appear but had every intention to
appear and oppose.

On April 15, 2024 Plaintiff submitted to Alameda Court request for extension of a
renewal restraiing order hearing by a man in housing community that Alameda County
has continually kept resreraiing order on despute witness testimony and court transcripts
wherein the party John Gibson stasted that there has been no contact with Mary
Bernstein. The Alameda Court has allowed this man that was charged with brandishing

- 163 -

weapon on an indfiviual and that has a criminal restraining order on him 21-CR-003653 People v. John Gibson to continually file renewal restraining orders indefinitely 21CV000668 GIBSON vs BERNSTEINdespite multiple witness testimony, and John Gibson admittance on court transcripts that he has not even seen Mary Bernstein and Mary Bernstein poses no threat.   https://fullerproject.org/story/how-domestic-abusers-weaponize-the-courts/ Commissioner Mark Fickes denial extensions of time reasonable accommodations due to medical issues.  Commissioner knew that women were incapacitated denial due process rights witness and litigant.  *In particular, on June 18 2024 civil harassment hearing held despite doctors notes and ADA requests for medical continuances for Respondent and her witness. Mark Fickes imposed three year additional restraining order on Plaintiff disabled that was not allowed to even appear and oppose. This brings the total to over five years, six years civil harassment order imposed on a disabled senior citizen female with a walker by a criminal defendant.  Plaintiff has never had any court actions against her or criminal charges ever filed.  CA Civ Proc Code Section 527.6 states:*

(p) (1)Either party may request a continuance of the hearing, which the court shall grant on a showing of good cause. The request may be made in writing before or at the hearing or orally at the hearing. The court may also grant a continuance on its own motion. https://california.public.law/codes/ca_civ_proc_code_section_527.6 I cannot file motion to continue and that is not is what is done for reasonable accommodations which are confidential.  I am unable to appear and speak on zoom due to complications.  I am unable to ravel to file a motion to cotntinue.  I cannot efile as cannot afford.

Once again we have provided documentation that we cannot appear until August 2024.  if we are not given a chance to appear, this constitues violatiopn of our constitutional civil rights.  This commissioner allegedly was a constitiutaonal civil rights lawyer.  Court reporter was also not provided.  Mark Fickes was aware that Petitioner a criminally violent man on probation directed to anger management by the Alaameda County Supeion Court in case no. 21CR003653.  Mark Fickes was also aware in court filing by Petitioner John Gibson an exhibit filed May 28 2024 from Meadow Brook counsel Angus and Terry dated Sepgtember a letter dated September 21 2023 that John Gibson was directed to cease and desist from harassing Mary Bernstein and Elizabeth Tigano.

( t ) That MARK FICKES is a Commissioner Dept. 519 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Plaintiff Witness Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(u) That MARK FICKES is a Commissioner Dept. 519 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Plaintiff Witness Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA

- 164 –

VERIFIED COMPLAINT

(g) That the State of California, Superior Court of Alameda County, knowingly and intentionally continue to discriminate against the plaintiffs, Mary Bernstein and Elizabeth Tigano.

(h) That the actions of the State of California and other named defendants were conscious, deliberate, and intentional in their active discrimination against the plaintiffs, Mary Bernstein and Elizabeth Tigano.

(i) That the actions of the State of California, Judicial Council of California, and Judicial Branch of the Government of California were conscious, deliberate, and intentional in their active discrimination against the against the plaintiffs, Mary Bernstein and Elizabeth Tigano, all other disabled litigants with cognitive disabilities and all other similarly situated disabled individuals in this State. That their persistent false advertising and misrepresentation of the actions of the judicial process on the California Courts web site at http://wm.courtinfo.ca.aov/ as "Committed to providing fair and equal access to justice for all Californians" was with full knowledge of plaintiffs disability, physical inability of plaintiffs to have "fair and equal access to justice" without legal counsel as accommodation, and with their knowledge of the requirements to conform to the ADA.

(j) That the actions of the State of California and the other defendants were conscious, deliberate, and intentional in their active discrimination against all other similarly situated cognitively disabled individuals of this State. That their persistent false advertising and misrepresentation of the actions of the judicial process as "fair and equal access to justice", knowing that cognitively disabled individuals were unable to gain meaningful access to court processes, was with full knowledge of cognitively disabled litigants' disabilities and their knowing failure to meet the requirements to conform to the ADA.

(k) That in alternative, the actions of the State of California and other defendants were knowing and resulted from the defendants' negligence in complying with the law.

(l) That in alternative, the actions of the State of California and other defendants were knowing and resulted from the defendants' negligence in complying with the law.

(m) That as a result of the defendants' actions, the plaintiffs Mary Bernstein and Elizabeth Tigano have suffered damages in the form of extreme pain and suffering, resulting in the exacerbations of their PTSD, ADHD, Bipolar conditions, the extreme embarrassment, humiliation, anxiety and panic attacks, dissociation and avoidance in her attempts to represent herself and to gain access to the services provided by the State of California and Superior Court of Alameda County and not being able to be accommodated.

## VII.  PRAYER/REQUEST FOR RELIEF

WHEREFORE, Plaintiff would hereby request this Honorable Court to:

1.  Render a ruling that by not providing extensions, continuances as accommodation to plaintiffs and other indigent litigants with cognitive disabilities in civil cases, in which such litigants' fundamental rights to basic human needs are at stake, the Judicial Branch of the California Government and its subdivisions violated the due process rights of Plaintiffs and other indigent litigants with cognitive disabilities.

- 165 -

VERIFIED COMPLAINT

2. Render a ruling that during the court processes in Superior Court of Alameda County, during which plaintiff Bernstein was denied requested accommodations, continuances and extensions, limiting freedom of expression her due process rights were violated and that all rulings made as a result of such court processes are reversed.

3. Render a ruling that the actions of Judge Eumi Lee of Alameda County Superior Court during the hearings and rulings above constituted intentional abuse, torture, and discrimination of cognitively disabled plaintiff Mary Bernstein and subjected cognitively disabled Plaintiff Elizabeth Tigano to traumatic experience.

4. Render a ruling that the actions of Judge Jenna Whitman of Alameda County Superior Court during the denial reasonable accommodations and rulings above constituted intentional abuse, torture, and discrimination of cognitively disabled plaintiff Mary Bernstein and subjected cognitively disabled Plaintiff Elizabeth Tigano to traumatic experience. U.S.C. 12133 and 29 U.S.C. 794a.

5.  Render judgment against the State of California, Superior Court of Alameda County, Court of for damages for plaintiffs' Bernstein and Tigano's pain and sufferings during abuse and torture, the resulting exacerbation of disabilities, past and ongoing medical and other expenses associated with disability evaluations and treatment, humiliation, and embarrassment during the course of proceedings in the Superior Court of Alameda County, attorney's fees, costs and expenses pursuant to the provisions of 42 U.S.C. 12133 and 29 U.S.C. 794a for defending them in the grievance procedure, their vindication of their rights in the state court, and for bringing this action.

6. Render judgment against ALAMEDA COUNTY SUPERIOR COURT EUMI LEE JENNA WHITMAN for damages for plaintiffs' Bernstein and Tigano's pain and sufferings during abuse and torture, the resulting exacerbation of disabilities, past and ongoing medical and other expenses associated with disability evaluations and treatment, humiliation, and embarrassment during the course of proceedings in the Superior Court of Alameda County, attorney's fees, costs and expenses pursuant to the provisions of 42 U.S.C. 12133 and 29 U.S.C. 794a for defending them in the grievance procedure, their vindication of their rights in the state court, and for bringing this action.

WHEREFORE, plaintiffs demand judgment against defendants, and each of them, for:

7. Compensatory damages according to proof;

8. Punitive damages exemplary damages;

WHEREFORE, plaintiffs respectfully request judgment against the defendants as Such other and further relief as this court may deem just and proper.

## VIII. CONCLUSION

For all the reasons stated above, Plaintiffs Mary Bernstein Elizabeth Tigano were denied reasonable accommodations unable to have medical procedures reasonable accommodation under the ADA Title II, as well as other reasonable accommodations by the Defendant State of California; Plaintiff Elizabeth Tigano denied reasonable accommodations as witness in matter.

Respectfully Submitted,

**Count I(42 U.S.C. § 1981)**
**As to All Defendants**
**FIRST CLAIM FOR RELIEF RELIGIOUS DISCRIMINATION**

- 166 –

VERIFIED COMPLAINT

40. Plaintiffs Bernstein and Tigano repeat and reallege each and every allegation heretofore alleged as if fully set forth herein.

41. Defendant's conduct denying Plaintiffs reasonable accommodations were federally protected class extreme and outrageous and done with discrimination.

42. Defendant State of California Alameda County Superior Court is a public agency. Alameda County Superior Court, withheld from and denied to Plaintiffs accommodations, advantages, facilities and privileges thereof. The U.S. government has a public policy to promote equal rights for all citizens. One way to encourage this idea is to actively discourage discrimination against members of protected classes (such as racial minorities, religious, women, and the disabled). To prevent discrimination in public accommodations, the government enacted certain laws at the federal, state, and sometimes local levels. Specifically, the federal Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, national origin, and religion. The Unruh Civil Rights Act requires "full and equal accommodations, advantages, facilities, privileges or services in all business establishments.   Plaintiffs are members of a protected class, documented disabled women that have been harassed in court matters pleading for reasonable accommodations from this agency.

43. Under 42 U.S.C. §§ 1981 and 1982 Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a protected class; (2) defendant intended to discriminate against plaintiff based upon his membership in the protected class; and (3) the discrimination concerned one or more of the activities enumerated in § 1981. Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000). Like the Equal Protection Clause, § 1981 can only be violated by purposeful discrimination. Gen. Bldg. Contractor's Assn., Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982). 42 U.S.C. § 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 has been interpreted to prohibit "intentional discrimination" based on race. Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617 (1987) (citation omitted). Plaintiffs are members of protected class: disabled women.

Plaintiff Mary Bernstein has referenced in pleadings biblical verses, her faith and how the faith has sustained her through this difficult case.  Judge Eumi Lee admonished for biblical verses in First Amended Complaint prohibition.  Judge Jenna Whitman prohibition biblical verses in preparation of second amended complaint, photos and exhibits restricting freedom of expression.

**COUNT II**
**As to Defendant State of California Judicial Branch**

VERIFIED COMPLAINT

**SIXTH CLAIM FOR RELIEF 42 U.S. Code § 12132 Disability Discrimination ADA Violations**

44.  (a) That Eumi Lee, **Dept 512** Judge of Superior Court of Alameda County beginning February 25 2022, has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has excluded them from participation in, and/or denied her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq., has intentionally

subjected them to the unconscionable, immoral and inhumane treatment, abused and tortured then during the court processes causing her to experience pain and sufferings so severe that she began weeping on remote hearing calls, destabilizing February 25 2022. February 25 2022 ridiculing Plaintiff for ADHD symptoms admonishing for speaking. February 25 2022 embarrasing medicated sister Elizabeth Tigano calling on her to stand up frightening her and that conclusion of hearing requesting Plaintiff only come into court room alone.  The suggestion that Elizabeth Tigano be left out in hall unsupervised. April 2023 medical emergency when returned to court Long Covid keeping plaintiff and witness longer than hearing during medical emergency causing East Bay Paratransit to be missed almost.  To date, Plaintiff only zoom hearings due to fear of medical emeregency again before Eumi Lee not wanting to adjourn despite medical breathing issues inhaler. Judge Eumi Lee has forced Plaintiff to proceed at times when unable to proceed due to health issues remotely.  Judge Eumi Lee denial reasonable accommodations, cruelty during medical emergencies.  In October 2023 Judge Eumi Lee admittance First Amended Complaint not read yet required extensive response to Order to Show Cause, admonishment of style of writing handicapped person non attorney with Long Covid burden to prepare second amended complaint without extension of time and extreme limitations confusing disabled litigant.  Questionnaire judicial nomination references multiple self represented disabled litigants seeking recusal from Judge evidencing pattern of discrimination to self represented disabled litigants.  Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

(b) That Judge Eumi Lee, **Dept 512** Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(c) That Judge Eumi Lee, **Dept 512** Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings

without accommodations and his knowledge of the requirement to conform to the ADA.

(d) That Jenna Whitman, **Dept. 25** Judge, Superior Court of Alameda County, beginning July 2023 has  discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 denial extensions Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions.  Judge Jenna Whitman

- 168 -

denial accommodations when various doctor notes not attached despite procedural history.  Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression.   Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

( e ) That Judge Jenna Whtiman, **Dept 25** Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(f) That Judge Jenna Whitman **Dept 25** Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

(g) That ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 Judge, Superior Court of Alameda County, beginning July 2023 and through April 2024 denial reasonable accommodations medical issues witness Elizabeth testifying no court reporter denial continuances has  discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 denial extensions Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions.  Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history.  Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression.   Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

( h ) That ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(i) That Judge ELIZABETH RILES is a Judge Dept. 512/Commissioner Dept. 519 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and

- 169 –

embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

(j) That SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge, Superior Court of Alameda County, beginning August 2023 has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 refusal witnesses to testify admonishment for using reasonable accommodaitons request elder hearings informal proceedings held to formal stndards Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions.  Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history.  Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression.  Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

( k ) That SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(l) That Judge SUSAN LEW is a Judge Pro Tempore Dept. 519 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

(m) That BENTRISH SATARZADEH is a Judge Dept. 507Judge, Superior Court of Alameda County, beginning July 2023 has discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and August 1 2023 denial extensions Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions.  Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history.  Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression.  Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.

( n ) That BENTRISH SATARZADEH is a Judge Dept. 507Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them

- 170 -

from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(o) That Judge BENTRISH SATARZADEH is a Judge Dept. 507Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

p) That KEITH FONG is a Judge Dept. 517 Judge, Superior Court of Alameda County, beginning February 2024 has  discriminated against the plaintiffs, Mary Bernstein, Elizabeth Tigano has discriminated covered up the abuse and and Order to Show Cause scheduled admonishing Plaintiff denial morning hearings and extensions Judge Jenna Whitman unassigned Judge denial of reasonable accommodations continuances and admonishment for request for extension time to file motions.  Judge Jenna Whitman denial accommodations when various doctor notes not attached despite procedural history.  Eumi Lee allegedly after nomination for federal court USDC California delegated these reaonasble accommodations for Tigano Bernstein to Jenna Whitman abdicating responsibility as assigned judge. A non assigned Judge giving conflicting order as to how to write second amended complaint no exhibits photos biblical verses violation freedom of speech, expression.  Plaintiff Elizabeth Tigano affected as causes extreme distress worried homelessness if condominium is loss and fear of caregiver Plaintiff Mary Bernstein health crises at the hand of this Judge denial.  Restrictions no filing motions without leave or any documents prior to CMC; threats that despite illness would grant motion attotney fees and cost against plaintiff; refusal morning hearings despite Plaintiff always reasonable accommodations morning hearings for six years, order to show cause threaten sancxtions.. **EXHIBITS U, V.**

( q ) That KEITH FONG is a Judge Dept. 517 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(r) That Judge KEITH FONG is a Judge Dept. 517 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA.

s) That MARK FICKES is a Commissioner Dept. 519  Judge, Superior Court of Alameda County, beginning May 2 2024 has  discriminated against the plaintiffs, Mary Bernstein, and Plaintiff Witness Elizabeth Tigano.  Commissioner Mark Fickes denial extensions of time reasonable accommodations due to medical issues.  Commissioner knew that women were incapacitated denial due process rights witness and litigant.  *In particular, on June 18 2024 civil harassment hearing held despite doctors notes and ADA requests for medical continuances for Respondent and her witness.  CA Civ Proc Code Section 527.6 states:*

(p) (1)Either party may request a continuance of the hearing, which the court shall grant on a showing of good cause. The request may be made in writing before or at the hearing or orally at the hearing. The court may also grant a continuance on its own motion. https://california.public.law/codes/ca_civ_proc_code_section_527.6 I cannot file motion to continue and that is not is what is done for reasonable accommodations which are conficdential. I am unable to appear and speak on zoom due to complications. I am unable to ravel to file a motion to cotntinue. I cannot efile as cannot afford.

Once again we have provided documentation that we cannot appear until August 2024. if we are not given a chance to appear, this constitues violatiopn of our constitutional civil rights. This commissioner allegedly was a constitiutaonal civil rights lawyer. Court reporter was also not provided. Mark Fickes was aware that Petitioner a criminally violent man on probation directed to anger management by the Alaameda County Supeior Court in case no. 21CR003653. Mark Fickes was also aware in court filing by Petitioner John Gibson an exhibit filed May 28 2024 from Meadow Brook counsel Angus and Terry dated Sepgtember a letter dated September 21 2023 that John Gibson was directed to cease and desist from harassing Mary Bernstein and Elizabeth Tigano. **EXHIBIT L.**

( t ) That MARK FICKES is a Commissioner Dept. 519 Judge of Superior Court of Alameda County, has intended to continue to discriminate against the plaintiff, Mary Bernstein, Plaintiff Witness Elizabeth Tigano intentionally subject them to the unconscionable, immoral and inhumane treatment, abuse, torture, humiliate, and embarrass then, exclude them from participation in, and/or deny her the access to and the benefits of, the services of the court system and due process in violation of 42 U.S.C. 12132 et seq.

(u) That MARK FICKES is a Commissioner Dept. 519 Judge of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein Plaintiff Witness Elizabeth Tigano with full knowledge of their cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein Tigano are subjected to during court hearings without accommodations and his knowledge of the requirement to conform to the ADA

(g) That the State of California, Superior Court of Alameda County, knowingly and intentionally continue to discriminate against the plaintiffs, Mary Bernstein and Elizabeth Tigano.

(h) That the actions of the State of California and other named defendants were conscious, deliberate, and intentional in their active discrimination against the plaintiffs, Mary Bernstein and Elizabeth Tigano.

 (i) That the actions of the State of California, Judicial Council of California, and Judicial Branch of the Government of California were conscious, deliberate, and intentional in their active discrimination against the against the plaintiffs, Mary Bernstein and Elizabeth Tigano, all other disabled litigants with cognitive disabilities and all other similarly situated disabled individuals in this State. That their persistent false advertising and misrepresentation of the actions of the judicial process on the California Courts web site at http://wm.courtinfo.ca.aov/ as "Committed to providing fair and equal access to justice for all Californians" was with full knowledge of plaintiffs disability, physical inability of plaintiffs to have "fair and equal access to justice" without legal counsel as accommodation, and with their knowledge of the requirements to conform to the ADA.

(j) That the actions of the State of California and the other defendants were

- 172 -

conscious, deliberate, and intentional in their active discrimination against all other similarly situated cognitively disabled individuals of this State. That their persistent false advertising and misrepresentation of the actions of the judicial process as "fair and equal access to justice", knowing that cognitively disabled individuals were unable to gain meaningful access to court processes, was with full knowledge of cognitively disabled litigants' disabilities and their knowing failure to meet the requirements to conform to the ADA.

(k) That in alternative, the actions of the State of California and other defendants were knowing and resulted from the defendants' negligence in complying with the law.

(l) That in alternative, the actions of the State of California and other defendants were knowing and resulted from the defendants' negligence in complying with the law.

(m) That as a result of the defendants' actions, the plaintiffs Mary Bernstein and Elizabeth Tigano have suffered damages in the form of extreme pain and suffering, resulting in the exacerbations of their PTSD, ADHD, Bipolar conditions, the extreme embarrassment, humiliation, anxiety and panic attacks, dissociation and avoidance in her attempts to represent herself and to gain access to the services provided by the State of California and Superior Court of Alameda County and not being able to be accommodated.

## VII.  PRAYER/REQUEST FOR RELIEF

WHEREFORE, Plaintiff would hereby request this Honorable Court to:

1. Render a ruling that by not providing extensions, continuances as accommodation to plaintiffs and other indigent litigants with cognitive disabilities in civil cases, in which such litigants' fundamental rights to basic human needs are at stake, the Judicial Branch of the California Government and its subdivisions violated the due process rights of Plaintiffs and other indigent litigants with cognitive disabilities.

2. Render a ruling that during the court processes in Superior Court of Alameda County, during which plaintiff Bernstein was denied requested accommodations, continuances and extensions, limiting freedom of expression her due process rights were violated and that all rulings made as a result of such court processes are reversed.

3. Render a ruling that the actions of Judge Eumi Lee of Alameda County Superior Court during the hearings and rulings above constituted intentional abuse, torture, and discrimination of cognitively disabled plaintiff Mary Bernstein and subjected cognitively disabled Plaintiff Elizabeth Tigano to traumatic experience.

4. Render a ruling that the actions of Judge Jenna Whitman of Alameda County Superior Court during the denial reasonable accommodations and rulings above constituted intentional abuse, torture, and discrimination of cognitively disabled plaintiff Mary Bernstein and subjected cognitively disabled Plaintiff Elizabeth Tigano to traumatic experience. U.S.C. 12133 and 29 U.S.C. 794a.

5. Render judgment against the State of California, Superior Court of Alameda County, Court of for damages for plaintiffs' Bernstein and Tigano's pain and sufferings during abuse and torture, the resulting exacerbation of disabilities, past and ongoing medical and other

VERIFIED COMPLAINT

expenses associated with disability evaluations and treatment, humiliation, and embarrassment during the course of proceedings in the Superior Court of Alameda County, attorney's fees, costs and expenses pursuant to the provisions of 42 U.S.C. 12133 and 29 U.S.C. 794a for defending them in the grievance procedure, their vindication of their rights in the state court, and for bringing this action.

6. Render judgment against ALAMEDA COUNTY SUPERIOR COURT EUMI LEE JENNA WHITMAN for damages for plaintiffs' Bernstein and Tigano's pain and sufferings during abuse and torture, the resulting exacerbation of disabilities, past and ongoing medical and other expenses associated with disability evaluations and treatment, humiliation, and embarrassment during the course of proceedings in the Superior Court of Alameda County, attorney's fees, costs and expenses pursuant to the provisions of 42 U.S.C. 12133 and 29 U.S.C. 794a for defending them in the grievance procedure, their vindication of their rights in the state court, and for bringing this action.

WHEREFORE, plaintiffs demand judgment against defendants, and each of them, for:

7. Compensatory damages according to proof;

8. Punitive damages exemplary damages;

WHEREFORE, plaintiffs respectfully request judgment against the defendants as Such other and further relief as this court may deem just and proper.


### VIII. CONCLUSION

For all the reasons stated above, Plaintiffs Mary Bernstein Elizabeth Tigano were denied reasonable accommodations unable to have medical procedures reasonable accommodation under the ADA Title II, as well as other reasonable accommodations by the Defendant State of California; Plaintiff Elizabeth Tigano denied reasonable accommodations as witness in matter. Respectfully Submitted,

    **DATED** this 4th day of October, 2024.


                                        **ELIZABETH TIGANO**


    **DATED** this 4th day of October, 2024.


                                          **MARY BERNSTEIN**


### VERIFICATION

- 174 -

VERIFIED COMPLAINT

(a) I, ELIZABETH TIGANO, the undersigned Plaintiff, declare under the penalty of perjury that the contents of this document titled VERIFIED COMPLAINT are true and correct to my own knowledge and that I make this verification because the facts set forth in said document are within our knowledge.

(b) I will submit to this Court all confidential documents containing confidential medical information to be held under seal in order to establish the undisputable facts that we are qualified persons with disabilities, including, but not limited to cognitive disabilities, as is defined by the Americans with Disabilities Act (ADA) of 1990, Title II, 42 U.S.C. 12131 et. seq. and Americans with Disabilities Act Amendments Act (ADAAA) of 9/25/2008, 42 U.S.C. A. 12101 et. seq.

(c) I, the undersigned plaintiff, declare under the penalty of perjury that the foregoing is true and correct and was executed in Alameda County, Fremont, California by Plaintiff Elizabeth Tigano this  4th  day of October 2024.

*Elizabeth C. Tigano*

**ELIZABETH TIGANO**

1 Samuel 11:9 King James Version (KJV)And they said unto the messengers that came, Thus shall ye say unto the men of Jabesh-gilead, To morrow, by that time the sun be hot, ye shall have help. And the messengers came and shewed it to the men of Jabesh; and they were glad.

**VERIFICATION**

(a) I, MARY BERNSTEIN, the undersigned Plaintiff, declare under the penalty of perjury that the contents of this document titled VERIFIED COMPLAINT are true and correct to my own knowledge and that I make this verification because the facts set forth in said document are within our knowledge.

(b) I will submit to this Court all confidential documents containing confidential medical information to be held under seal in order to establish the undisputable facts that we are qualified persons with disabilities, including, but not limited to cognitive disabilities, as is defined by the Americans with Disabilities Act (ADA) of 1990, Title II, 42 U.S.C. 12131 et. seq. and Americans with Disabilities Act Amendments Act (ADAAA) of 9/25/2008, 42 U.S.C. A. 12101 et. seq.

(c) I, the undersigned plaintiff, declare under the penalty of perjury that the

VERIFIED COMPLAINT

foregoing is true and correct and was executed in Alameda County, Fremont, California by Plaintiff Mary Bernstein this 4th day of October, 2024.

**MARY BERNSTEIN**

1 Samuel 11:9 King James Version (KJV)And they said unto the messengers that came, Thus shall ye say unto the men of Jabesh-gilead, To morrow, by that time the sun be hot, ye shall have help. And the messengers came and shewed it to the men of Jabesh; and they were glad.

45.
46.
47. have denied repeatedly reasonable accommodations submitted with volumes of doctors reports requesting reasonable accommodations for Plaintiff Mary Bernstein. the "Sargent Shriver Civil Counsel Act", which created pilot programs (Cal.Gov.Code § 68650) for the right to counsel in cases affecting basic human needs (such as domestic violence, deprivation of child custody, housing, and elder abuse).  Plaintiff filed complaints against Commissioners Satarzadeh and Llamas with Presiding Judge Tara Desautels that delegated to Judge BRAD SELIGMAN.  Judge Brad Seligman in April 23 2020 stated that there was not a medical letter involved and found no violation.  Judge Tara Desautels also refused to reassign Commissioner Llamas despite requests reasonable accommodations traumatizing Plaintiff and witnesses with his manner. ADA Adam Byer in email advised Plaintiff when unhappy with Jeffrey Brand denial reasonable accommodation to file 4 petitions for writ of mandate within 10 days with California Court of Appeals Plaintiff unable to proceed with 4 simultaneous civil harassment trials and in afternoons. I believe this was erroneous information this procedure as it did not make sense; I could not afford $775.00 per case and did not have the bandwidth for more oral arguments.  The case numbers are as follows: A158742    RG19037125   Bernstein v. Superior Court for the County of Alameda

– 176 –

VERIFIED COMPLAINT

A158741    RG19036528  Bernstein v. Superior Court for the County of Alameda
A158740    RG19035648  Bernstein v. Superior Court for the County of Alameda
A158739    RG19034687  Bernstein v. Superior Court for the County of Alameda. [31]

Declarations were provided and I wrote to Judge Jeffrey Brand my trauma: "It was terrifying seeing this man there with his counsel and I nearly fainted from the medications. I could not stay awake. This was October 2. My doctor wrote the note October 7 because I am disabled and incapable of arguing the afternoon hearings at this point due to intense medication. I have rebuttal evidence to present and a reply, rebuttal to prepare and submit for the two matters that are contesting."

48. This is a reasonable accommodation I am seeking. I have to have equal access to the courts with my full capacity to rebut those challenging the restraining order. The Court granted me a stay and continuance because of my extreme deterioration of health. This has been granted due to the tremendous toll that these actions have caused me psychologically and physically in some cases, such as when a person with a mental disability is unable to proceed, a continuance may be required as the only reasonable accommodation under the circumstances. (See In re Marriage of James M. & Christine C. (2008) 158 Cal.App.4th 1261, discussed below.) Rule 1.100(a)(3) In re Marriage of James M. & Christine C.

conform to the ADA. Traveled to Oakland breathing smoke from fires paratransit to deliver MC410 restraining order department MC 410s. Requests by ADA to keep filling out more and more MC 410s. Pleading with Judge McKinney in email October 31, 2019 Defendants Simons and Condio Hernandez not served yet. Six email messages November 1 2019 sumitted more MC 410s ADA refusal to open claiming security issues, removal of doctors notes continuously by ADA department submitted in tandem with MC 410s. On November 7 2019 Plaintiff exhausted dropped two of the restraining orders Condio and Simonsen. Plaintiff Bernstein requested separate days for Gibson Durbin as too much for Plaintiff, Judge Patrick McKinney said he conferred with Judge Herbert that they were all related to keep together the judges all talk together. Judge Herbert advised him to keep them all together all related to HOA. Judge McKinney on November 7 2019 continued until January 21, 2020 because Durbin not present only HOA attorney but that he would leave it up to the Judge that would be hearing matter on January 21 2020 to schedule trials on separate days. This is the same Judge Patrick McKinney that on January 10 2020 during COVID 19 Pandemic heartlessly ordered four African American vulnerable mothers with small children sheltering in a vacate house from the cold in the middle of winter onto the streets https://sanfrancisco.cbslocal.com/2020/01/10/judge-orders-oakland-mom-squatters-to-be-evicted-from-vacant-home/.

(i) That Bentrish Satarzadeh, **Dept. 519** parameter of time early 2020 - Commissioner of Superior Court of Alameda County consistently insisted on continuing to deny necessary and reasonable accommodations for Mary Bernstein with full knowledge of her cognitive disabilities and severe pain and sufferings, humiliation, and embarrassment that Bernstein is subjected to during court hearings without accommodations and her knowledge of the

---

[31] Four hearings have been continued to 11 7 2019. My doctor does not want me involved in any of this for 6 months. The civil harassment hearings are only held in the afternoons. With my high powered medications I cannot handle afternoons doing anything. The restraining orders need to be in effect for Gibson and Durbin gun owners, violent men during the stay. Requests for TRO Condio Hernandez and Simonson were not granted but will be pursued when these resume.

- 177 -

VERIFIED COMPLAINT

requirement to conform to the ADA.  On October 2, 2019 despite MC 410 reasonable accommodations that Plaintiff Bernstein could not do afternoon hearings, not to take last, Bentrish Satardadezh kept Plaintiff Bernstein waiting until 4:10 pm to call case stating it would not be heard that date and that parties would have to come back.  Prior to back to back.  Defense HOA attorney and Mike Durbin the civil harassment respondent undermined Plaintiff for psychiatric conditions mocking with walker, toys Bentrish Satarzaeh smirking with defense counsel humiliating disabled unrepresented medicated Plaintiff Bernstein.  Prior to January 21 2020 multiple psychotherapist letters provided explaining that the Gibson and Durbin civil harassment trials needed to be one week apart for Plaintiff which were ignored, denied.  Plaintiff frantically traveled, submitted multiple times these MC 410s.  Plaintiff was required to appear January 21 2020 facing all of Plaintiff to face once again multiple violent men, their defense attorneys and their family members all alone in court.  Further, Commissioner Bentrish Satarzeh stated Plaintiff would have only ten minutes to present her case.  Despite overwhelming evidence against Defendants Gibson, Durbin, including multiple prior police incident reports against John Gibson from other parties and prior restraining order false imprisonment, sexual predator restraining order other parties imposed on Mike Durbin for 3 years Commissioner Satarzeh lifted the restraining orders causing escalating harassment against Plaintiff, her family and guests resulting in second petitions for civil harassment.  911 calls, video footage captured concerning harassment towards Plaintiff, guests.  Transcripts available from January 21 2020 back to back civil harassment trials.

9. Render judgment against ALAMEDA COUNTY SUPERIOR COURT PAUL HERBERT, TARA DESAUTELS, BRAD SELIGMAN, BENTRISH SATARZADEH, JEFFREY BRAND, PATRICK MCKINNEY, PELAYO LLAMAS, TAMIZA HOCKENHULL for damages for plaintiff Bernstein's pain and sufferings during abuse and torture, the resulting exacerbation of disabilities, past and ongoing medical and other
expenses associated with disability evaluations and treatment, humiliation, and embarrassment during the course of proceedings in the Superior Court of Alameda County, attorney's fees, costs and expenses pursuant to the provisions of 42 U.S.C. 12133 and 29 U.S.C. 794a and section 52 of the California Civil Code for defending her in the grievance procedure, her vindication of her rights in the state court, and for bringing this action.
WHEREFORE, plaintiffs demand judgment against defendants, and each of them, for:
10. Compensatory damages according to proof;
11. Punitive damages exemplary damages;
12. Defendant USA Department of Housing and Urban Development do its job intervening, protecting Plaintiffs from abuses from HOA Meadow Brook agents in residential community fine community with violations for continual abuses on disabled residents, family and guests;
13. Defendant CAL DFEH do its job intervening protecting Plaintiffs from abuses during Alameda County litigation and post litigation
WHEREFORE, plaintiffs respectfully request judgment against the defendants as Such other and further relief as this court may deem just and proper.

## IX. CONCLUSION

- 178 -

VERIFIED COMPLAINT

For all the reasons stated above, Plaintiff Mary Bernstein was denied counsel, which is a reasonable accommodation under the ADA Title II, as well as other reasonable accommodations by the Defendant State of California; Plaintiff Elizabeth Tigano denied reasonable accommodations as witness in matter.

Department of Housing and Urban Development and their workshare partner California Department of Fair Employment and Housing denied protection and assistance to disabled Plaintiffs Mary Bernstein and Elizabeth Tigano under 81 FR 63054 - Quid Pro Quo and Hostile Environment Harassment and Liability for Discriminatory Housing Practices Under the Fair Housing Act.

Plaintiff Mary Bernstein this 24th day of August, 2024.

**MARY BERNSTEIN**

Plaintiff Elizabeth Tigano this 24th day of August, 2024.

**ELIZABETH TIGANO**

VERIFIED COMPLAINT

1 Samuel 17:47 ESV / 1,177
And that all this assembly may know that the Lord saves not with sword and spear. For the battle is the Lord's, and he will give you into our hand."

2 Chronicles 20:15 ESV / 990
And he said, "Listen, all Judah and inhabitants of Jerusalem and King Jehoshaphat: Thus says the Lord to you, 'Do not be afraid and do not be dismayed at this great horde, for the battle is not yours but God's.

2 Chronicles 32:7 ESV / 581
"Be strong and courageous. Do not be afraid or dismayed before the king of Assyria and all the horde that is with him, for there are more with us than with him.

Ephesians 6:12 ESV / 570
For we do not wrestle against flesh and blood, but against the rulers, against the authorities, against the cosmic powers over this present darkness, against the spiritual forces of evil in the heavenly places.

Proverbs 21:31 ESV / 511
The horse is made ready for the day of battle, but the victory belongs to the Lord.

Exodus 14:13-14 ESV / 463
And Moses said to the people, "Fear not, stand firm, and see the salvation of the Lord, which he will work for you today. For the Egyptians whom you see today, you shall never see again. The Lord will fight for you, and you have only to be silent."

1 Corinthians 15:57 ESV / 461
But thanks be to God, who gives us the victory through our Lord Jesus Christ.

Zechariah 4:6 ESV / 459
Then he said to me, "This is the word of the Lord to Zerubbabel: Not by might, nor by power, but by my Spirit, says the Lord of hosts.

Romans 8:28 ESV / 435
And we know that for those who love God all things work together for good, for those who are called according to his purpose.

2 Corinthians 10:4 ESV / 433
For the weapons of our warfare are not of the flesh but have divine power to destroy strongholds.

Exodus 15:3 ESV / 426
The Lord is a man of war; the Lord is his name.

VERIFIED COMPLAINT

2 Chronicles 20:17 ESV / 423
You will not need to fight in this battle. Stand firm, hold your position, and see the salvation of the Lord on your behalf, O Judah and Jerusalem.' Do not be afraid and do not be dismayed. Tomorrow go out against them, and the Lord will be with you."

2 Chronicles 20:16 ESV / 418
Tomorrow go down against them. Behold, they will come up by the ascent of Ziz. You will find them at the end of the valley, east of the wilderness of Jeruel.

Ephesians 6:17 ESV / 411
And take the helmet of salvation, and the sword of the Spirit, which is the word of God,

Galatians 5:17 ESV / 408
For the desires of the flesh are against the Spirit, and the desires of the Spirit are against the flesh, for these are opposed to each other, to keep you from doing the things you want to do.

Isaiah 64:8 ESV / 402
But now, O Lord, you are our Father; we are the clay, and you are our potter; we are all the work of your hand.

1 Samuel 17:46 ESV / 402
This day the Lord will deliver you into my hand, and I will strike you down and cut off your head. And I will give the dead bodies of the host of the Philistines this day to the birds of the air and to the wild beasts of the earth, that all the earth may know that there is a God in Israel,

2 Corinthians 4:8 ESV / 401
We are afflicted in every way, but not crushed; perplexed, but not driven to despair;

Acts 16:31 ESV / 401
And they said, "Believe in the Lord Jesus, and you will be saved, you and your household."

2 Chronicles 20:20 ESV / 398
And they rose early in the morning and went out into the wilderness of Tekoa. And when they went out, Jehoshaphat stood and said, "Hear me, Judah and inhabitants of Jerusalem! Believe in the Lord your God, and you will be established; believe his prophets, and you will succeed."

Romans 8:37 ESV / 387
No, in all these things we are more than conquerors through him who loved us.

- 181 -

VERIFIED COMPLAINT

1 Samuel 14:6 ESV / 382
Jonathan said to the young man who carried his armor, "Come, let us go over to the garrison of these uncircumcised. It may be that the Lord will work for us, for nothing can hinder the Lord from saving by many or by few."

Isaiah 31:1 ESV / 380
Woe to those who go down to Egypt for help and rely on horses, who trust in chariots because they are many and in horsemen because they are very strong, but do not look to the Holy One of Israel or consult the Lord!

1 Samuel 17:1-58 ESV / 379
Now the Philistines gathered their armies for battle. And they were gathered at Socoh, which belongs to Judah, and encamped between Socoh and Azekah, in Ephes-dammim. And Saul and the men of Israel were gathered, and encamped in the Valley of Elah, and drew up in line of battle against the Philistines. And the Philistines stood on the mountain on the one side, and Israel stood on the mountain on the other side, with a valley between them. And there came out from the camp of the Philistines a champion named Goliath of Gath, whose height was six cubits and a span. He had a helmet of bronze on his head, and he was armed with a coat of mail, and the weight of the coat was five thousand shekels of bronze. ...

Exodus 14:14 ESV / 376
The Lord will fight for you, and you have only to be silent."

James 4:7 ESV / 364
Submit yourselves therefore to God. Resist the devil, and he will flee from you.

Philippians 4:13 ESV / 356
I can do all things through him who strengthens me.

2 Kings 20:1-7 ESV / 355
In those days Hezekiah became sick and was at the point of death. And Isaiah the prophet the son of Amoz came to him and said to him, "Thus says the Lord, 'Set your house in order, for you shall die; you shall not recover.'" Then Hezekiah turned his face to the wall and prayed to the Lord, saying, "Now, O Lord, please remember how I have walked before you in faithfulness and with a whole heart, and have done what is good in your sight." And Hezekiah wept bitterly. And before Isaiah had gone out of the middle court, the word of the Lord came to him: "Turn back, and say to Hezekiah the leader of my people, Thus says the Lord, the God of David your father: I have heard your prayer; I have seen your tears. Behold, I will heal you. On the third day you shall go up to the house of the Lord, ...

2 Kings 19:14-19 ESV / 353

VERIFIED COMPLAINT

Hezekiah received the letter from the hand of the messengers and read it; and Hezekiah went up to the house of the Lord and spread it before the Lord. And Hezekiah prayed before the Lord and said: "O Lord, the God of Israel, enthroned above the cherubim, you are the God, you alone, of all the kingdoms of the earth; you have made heaven and earth. Incline your ear, O Lord, and hear; open your eyes, O Lord, and see; and hear the words of Sennacherib, which he has sent to mock the living God. Truly, O Lord, the kings of Assyria have laid waste the nations and their lands and have cast their gods into the fire, for they were not gods, but the work of men's hands, wood and stone. Therefore they were destroyed. ...

Deuteronomy 20:1 ESV / 350
"When you go out to war against your enemies, and see horses and chariots and an army larger than your own, you shall not be afraid of them, for the Lord your God is with you, who brought you up out of the land of Egypt.

John 10:1-42 ESV / 348
"Truly, truly, I say to you, he who does not enter the sheepfold by the door but climbs in by another way, that man is a thief and a robber. But he who enters by the door is the shepherd of the sheep. To him the gatekeeper opens. The sheep hear his voice, and he calls his own sheep by name and leads them out. When he has brought out all his own, he goes before them, and the sheep follow him, for they know his voice. A stranger they will not follow, but they will flee from him, for they do not know the voice of strangers." ...

Ecclesiastes 9:11 ESV / 343
Again I saw that under the sun the race is not to the swift, nor the battle to the strong, nor bread to the wise, nor riches to the intelligent, nor favor to those with knowledge, but time and chance happen to them all.

1 Samuel 17:37 ESV / 342
And David said, "The Lord who delivered me from the paw of the lion and from the paw of the bear will deliver me from the hand of this Philistine." And Saul said to David, "Go, and the Lord be with you!"

Exodus 14:13 ESV / 325
And Moses said to the people, "Fear not, stand firm, and see the salvation of the Lord, which he will work for you today. For the Egyptians whom you see today, you shall never see again.

Psalm 3:8 ESV / 321
Salvation belongs to the Lord; your blessing be on your people! Selah

Romans 8:31 ESV / 317
What then shall we say to these things? If God is for us, who can be against us?

- 183 -

VERIFIED COMPLAINT

1 Corinthians 10:13 ESV / 307
No temptation has overtaken you that is not common to man. God is faithful, and he will not let you be tempted beyond your ability, but with the temptation he will also provide the way of escape, that you may be able to endure it.

Ephesians 6:10 ESV / 305
Finally, be strong in the Lord and in the strength of his might.

Ephesians 6:1-24 ESV / 301
Children, obey your parents in the Lord, for this is right. "Honor your father and mother" (this is the first commandment with a promise), "that it may go well with you and that you may live long in the land." Fathers, do not provoke your children to anger, but bring them up in the discipline and instruction of the Lord. Bondservants, obey your earthly masters with fear and trembling, with a sincere heart, as you would Christ, ...

Revelation 1:1 ESV / 300
The revelation of Jesus Christ, which God gave him to show to his servants the things that must soon take place. He made it known by sending his angel to his servant John,

Ephesians 6:13 ESV / 297
Therefore take up the whole armor of God, that you may be able to withstand in the evil day, and having done all, to stand firm.

Deuteronomy 20:4 ESV / 296
For the Lord your God is he who goes with you to fight for you against your enemies, to give you the victory.'

Joshua 1:9 ESV / 290
Have I not commanded you? Be strong and courageous. Do not be frightened, and do not be dismayed, for the Lord your God is with you wherever you go."

Ephesians 6:11 ESV / 289
Put on the whole armor of God, that you may be able to stand against the schemes of the devil.

2 Chronicles 20:12 ESV / 288
O our God, will you not execute judgment on them? For we are powerless against this great horde that is coming against us. We do not know what to do, but our eyes are on you."

Proverbs 3:5 ESV / 287

VERIFIED COMPLAINT

Trust in the Lord with all your heart, and do not lean on your own understanding.

Psalm 28:7 ESV / 278
The Lord is my strength and my shield; in him my heart trusts, and I am helped; my heart exults, and with my song I give thanks to him.

Ephesians 2:8 ESV / 277
For by grace you have been saved through faith. And this is not your own doing; it is the gift of God,

Isaiah 41:10 ESV / 272
Fear not, for I am with you; be not dismayed, for I am your God; I will strengthen you, I will help you, I will uphold you with my righteous right hand.

Romans 13:1 ESV / 267
Let every person be subject to the governing authorities. For there is no authority except from God, and those that exist have been instituted by God.

John 1:12 ESV / 267
But to all who did receive him, who believed in his name, he gave the right to become children of God,

Psalm 23:1-6 ESV / 261
A Psalm of David. The Lord is my shepherd; I shall not want. He makes me lie down in green pastures. He leads me beside still waters. He restores my soul. He leads me in paths of righteousness for his name's sake. Even though I walk through the valley of the shadow of death, I will fear no evil, for you are with me; your rod and your staff, they comfort me. You prepare a table before me in the presence of my enemies; you anoint my head with oil; my cup overflows. ...

Psalm 44:6-7 ESV / 257
For not in my bow do I trust, nor can my sword save me. But you have saved us from our foes and have put to shame those who hate us.

Hosea 1:7 ESV / 253
But I will have mercy on the house of Judah, and I will save them by the Lord their God. I will not save them by bow or by sword or by war or by horses or by horsemen."

2 Chronicles 20:7 ESV / 247
Did you not, our God, drive out the inhabitants of this land before your people Israel, and give it forever to the descendants of Abraham your friend?

2 Chronicles 14:11 ESV / 243

VERIFIED COMPLAINT

And Asa cried to the Lord his God, "O Lord, there is none like you to help, between the mighty and the weak. Help us, O Lord our God, for we rely on you, and in your name we have come against this multitude. O Lord, you are our God; let not man prevail against you."

Ephesians 6:10-20 ESV / 239
Finally, be strong in the Lord and in the strength of his might. Put on the whole armor of God, that you may be able to stand against the schemes of the devil. For we do not wrestle against flesh and blood, but against the rulers, against the authorities, against the cosmic powers over this present darkness, against the spiritual forces of evil in the heavenly places. Therefore take up the whole armor of God, that you may be able to withstand in the evil day, and having done all, to stand firm. Stand therefore, having fastened on the belt of truth, and having put on the breastplate of righteousness, ...

2 Chronicles 20:9 ESV / 230
'If disaster comes upon us, the sword, judgment, or pestilence, or famine, we will stand before this house and before you—for your name is in this house—and cry out to you in our affliction, and you will hear and save.'

Revelation 1:1-20 ESV / 227
The revelation of Jesus Christ, which God gave him to show to his servants the things that must soon take place. He made it known by sending his angel to his servant John, who bore witness to the word of God and to the testimony of Jesus Christ, even to all that he saw. Blessed is the one who reads aloud the words of this prophecy, and blessed are those who hear, and who keep what is written in it, for the time is near. John to the seven churches that are in Asia: Grace to you and peace from him who is and who was and who is to come, and from the seven spirits who are before his throne, and from Jesus Christ the faithful witness, the firstborn of the dead, and the ruler of kings on earth. To him who loves us and has freed us from our sins by his blood ...

2 Corinthians 10:3-5 ESV / 222
For though we walk in the flesh, we are not waging war according to the flesh. For the weapons of our warfare are not of the flesh but have divine power to destroy strongholds. We destroy arguments and every lofty opinion raised against the knowledge of God, and take every thought captive to obey Christ,

Psalm 46:10-11 ESV / 220
"Be still, and know that I am God. I will be exalted among the nations, I will be exalted in the earth!" The Lord of hosts is with us; the God of Jacob is our fortress. Selah

John 3:16-17 ESV / 216

"For God so loved the world, that he gave his only Son, that whoever believes in him should not perish but have eternal life. For God did not send his Son into the world to condemn the world, but in order that the world might be saved through him.

2 Chronicles 32:8 ESV / 195
With him is an arm of flesh, but with us is the Lord our God, to help us and to fight our battles." And the people took confidence from the words of Hezekiah king of Judah.

2 Chronicles 20:6 ESV / 192
And said, "O Lord, God of our fathers, are you not God in heaven? You rule over all the kingdoms of the nations. In your hand are power and might, so that none is able to withstand you.

Psalm 44:5 ESV / 187
Through you we push down our foes; through your name we tread down those who rise up against us.

Psalm 20:7 ESV / 186
Some trust in chariots and some in horses, but we trust in the name of the Lord our God.

Matthew 16:18 ESV / 184
And I tell you, you are Peter, and on this rock I will build my church, and the gates of hell shall not prevail against it.

Jeremiah 3:23 ESV / 179
Truly the hills are a delusion, the orgies on the mountains. Truly in the Lord our God is the salvation of Israel.

1 Samuel 17:48 ESV / 175
When the Philistine arose and came and drew near to meet David, David ran quickly toward the battle line to meet the Philistine.

1 Samuel 17:26 ESV / 165
And David said to the men who stood by him, "What shall be done for the man who kills this Philistine and takes away the reproach from Israel? For who is this uncircumcised Philistine, that he should defy the armies of the living God?"

John 3:16 ESV / 163
"For God so loved the world, that he gave his only Son, that whoever believes in him should not perish but have eternal life.

1 John 1:9 ESV / 158

- 187 -

VERIFIED COMPLAINT

If we confess our sins, he is faithful and just to forgive us our sins and to cleanse us from all unrighteousness.

Psalm 33:17 ESV / 147
The war horse is a false hope for salvation, and by its great might it cannot rescue.

2 Chronicles 21:1-20 ESV / 147
Jehoshaphat slept with his fathers and was buried with his fathers in the city of David, and Jehoram his son reigned in his place. He had brothers, the sons of Jehoshaphat: Azariah, Jehiel, Zechariah, Azariah, Michael, and Shephatiah; all these were the sons of Jehoshaphat king of Israel. Their father gave them great gifts of silver, gold, and valuable possessions, together with fortified cities in Judah, but he gave the kingdom to Jehoram, because he was the firstborn. When Jehoram had ascended the throne of his father and was established, he killed all his brothers with the sword, and also some of the princes of Israel. Jehoram was thirty-two years old when he became king, and he reigned eight years in Jerusalem. ...

Romans 12:19 ESV / 145
Beloved, never avenge yourselves, but leave it to the wrath of God, for it is written, "Vengeance is mine, I will repay, says the Lord."

2 Chronicles 19:1-11 ESV / 144
Jehoshaphat the king of Judah returned in safety to his house in Jerusalem. But Jehu the son of Hanani the seer went out to meet him and said to King Jehoshaphat, "Should you help the wicked and love those who hate the Lord? Because of this, wrath has gone out against you from the Lord. Nevertheless, some good is found in you, for you destroyed the Asheroth out of the land, and have set your heart to seek God." Jehoshaphat lived at Jerusalem. And he went out again among the people, from Beersheba to the hill country of Ephraim, and brought them back to the Lord, the God of their fathers. He appointed judges in the land in all the fortified cities of Judah, city by city, ...

2 Chronicles 20:15-17 ESV / 142
And he said, "Listen, all Judah and inhabitants of Jerusalem and King Jehoshaphat: Thus says the Lord to you, 'Do not be afraid and do not be dismayed at this great horde, for the battle is not yours but God's. Tomorrow go down against them. Behold, they will come up by the ascent of Ziz. You will find them at the end of the valley, east of the wilderness of Jeruel. You will not need to fight in this battle. Stand firm, hold your position, and see the salvation of the Lord on your behalf, O Judah and Jerusalem.' Do not be afraid and do not be dismayed. Tomorrow go out against them, and the Lord will be with you."

Psalm 44:6 ESV / 137
For not in my bow do I trust, nor can my sword save me.

VERIFIED COMPLAINT

1 Timothy 6:12 ESV / 133
Fight the good fight of the faith. Take hold of the eternal life to which you were called and about which you made the good confession in the presence of many witnesses.

Psalm 33:16-17 ESV / 132
The king is not saved by his great army; a warrior is not delivered by his great strength. The war horse is a false hope for salvation, and by its great might it cannot rescue.

Psalm 91:1-4 ESV / 130
He who dwells in the shelter of the Most High will abide in the shadow of the Almighty. I will say to the Lord, "My refuge and my fortress, my God, in whom I trust." For he will deliver you from the snare of the fowler and from the deadly pestilence. He will cover you with his pinions, and under his wings you will find refuge; his faithfulness is a shield and buckler.

Romans 12:1 ESV / 126
I appeal to you therefore, brothers, by the mercies of God, to present your bodies as a living sacrifice, holy and acceptable to God, which is your spiritual worship.

Ephesians 6:16 ESV / 118
In all circumstances take up the shield of faith, with which you can extinguish all the flaming darts of the evil one;

Deuteronomy 31:6 ESV / 117
Be strong and courageous. Do not fear or be in dread of them, for it is the Lord your God who goes with you. He will not leave you or forsake you."

Psalm 24:8 ESV / 112
Who is this King of glory? The Lord, strong and mighty, the Lord, mighty in battle!

2 Chronicles 20:1-37 ESV / 112
After this the Moabites and Ammonites, and with them some of the Meunites, came against Jehoshaphat for battle. Some men came and told Jehoshaphat, "A great multitude is coming against you from Edom, from beyond the sea; and, behold, they are in Hazazon-tamar" (that is, Engedi). Then Jehoshaphat was afraid and set his face to seek the Lord, and proclaimed a fast throughout all Judah. And Judah assembled to seek help from the Lord; from all the cities of Judah they came to seek the Lord. And Jehoshaphat stood in the assembly of Judah and Jerusalem, in the house of the Lord, before the new court, ...

Proverbs 3:12 ESV / 103
For the Lord reproves him whom he loves, as a father the son in whom he delights.

- 189 -

VERIFIED COMPLAINT

2 Corinthians 2:14 ESV / 95
But thanks be to God, who in Christ always leads us in triumphal procession, and through us spreads the fragrance of the knowledge of him everywhere.

Matthew 16:7 ESV / 95
And they began discussing it among themselves, saying, "We brought no bread."

James 4:6 ESV / 90
But he gives more grace. Therefore it says, "God opposes the proud but gives grace to the humble."

Philippians 1:3 ESV / 79
I thank my God in all my remembrance of you,

Deuteronomy 3:22 ESV / 69
You shall not fear them, for it is the Lord your God who fights for you.'

Psalm 121:1-8 ESV / 64
A Song of Ascents. I lift up my eyes to the hills. From where does my help come? My help comes from the Lord, who made heaven and earth. He will not let your foot be moved; he who keeps you will not slumber. Behold, he who keeps Israel will neither slumber nor sleep. The Lord is your keeper; the Lord is your shade on your right hand. ...

Deuteronomy 1:30 ESV / 60
The Lord your God who goes before you will himself fight for you, just as he did for you in Egypt before your eyes,

Psalm 46:11 ESV / 54
The Lord of hosts is with us; the God of Jacob is our fortress. Selah

1 John 5:4 ESV / 50
For everyone who has been born of God overcomes the world. And this is the victory that has overcome the world—our faith.

John 16:33 ESV / 49
I have said these things to you, that in me you may have peace. In the world you will have tribulation. But take heart; I have overcome the world."

Romans 1:13 ESV / 46
I do not want you to be unaware, brothers, that I have often intended to come to you (but thus far have been prevented), in order that I may reap some harvest among you as well as among the rest of the Gentiles.

VERIFIED COMPLAINT

Psalm 46:8 ESV / 46 Helpful Not Helpful
Come, behold the works of the Lord, how he has brought desolations on the earth.

1 Peter 5:8 ESV / 37
Be sober-minded; be watchful. Your adversary the devil prowls around like a roaring lion, seeking someone to devour.

Paul Herbert should have known something wrong that disabled plaintiff with attorney on the line made to argue each time
When I filed this matter I had no idea alameda county investigation underway fot abuses of mentally ill
Intimidation dominiation manipulation
Denial ADA
Gaslighting predetermined outcome restraining order judges conferring abuse of disabled litigatin
Protective order motions vacated refusal to listen
Psalms
Chapter 121
Psalms
Chapter 121
1(A Song of degrees.) I will lift up mine eyes unto the hills, from whence cometh my help.

2My help cometh from the LORD, which made heaven and earth.

3He will not suffer thy foot to be moved: he that keepeth thee will not slumber.

4Behold, he that keepeth Israel shall neither slumber nor sleep.

5The LORD is thy keeper: the LORD is thy shade upon thy right hand.

6The sun shall not smite thee by day, nor the moon by night.

7The LORD shall preserve thee from all evil: he shall preserve thy soul.

8The LORD shall preserve thy going out and thy coming in from this time forth, and even for evermore.
The safety of the godly.

- We must not rely upon men and means, instruments and second causes. Shall I depend upon the strength of the hills? upon princes and great men? No; my confidence is in God only. Or, we must lift up our eyes above the hills; we must look to God who makes all earthly things to us what they are. We must see all our help in God; from him we must expect it, in his own way and time. This psalm teaches us to comfort ourselves in the Lord, when difficulties and dangers are greatest. It is almighty wisdom that contrives, and almighty power that works the safety of those that put themselves under God's protection. He is a wakeful, watchful Keeper; he is never weary; he not only does not sleep, but he does not so much as slumber. Under this shade they may sit with delight and assurance. He is always near his people for their protection and refreshment. The right hand is the working hand; let them but turn to their duty, and they shall find God ready to give them success. He will take care that his people shall not fall. Thou shalt not be hurt, neither by the open assaults, nor by the secret attempts of thine enemies. The Lord shall prevent the evil thou fearest, and sanctify, remove, or lighten the evil thou feelest. He will preserve the soul, that it be not defiled by sin, and disturbed by affliction; he will preserve it from perishing eternally. He will keep thee in life and death; going out to thy labour in the morning of thy days, and coming home to thy rest when the evening of old age calls thee in. It is a protection for life. The Spirit, who is their Preserver and Comforter, shall abide with them for ever. Let us be found in our work, assured that the blessings promised in this psalm are ours.

VERIFIED COMPLAINT

Commentary by Matthew Henry, 1710. I

I know because of you Lord
Judge and Jury
I sense perfect peace
You give us strength Lord
You go alongside us
You shield me from harm
Thank you for your supernatural help Lord God!
You are Creator of Heavens and Earth, help comes from you!
Favorable decisions
No Spirits of Anxiety, Fear
Holy Spirit Release
Faithful, compassionate, kind, mercies

https://www.chick.com/products/tract?stk=1185

Copyright 2024 by Jack T. Chick LLC.  Used by permission of Chick Publications. Website is www.chick.com

https://www.youtube.com/watch?v=PtDgZmSMG4o&t=3160s [32] 14:40
repentance because it was not a mistake it was a knowing
14:47
Rebellion can Fallen Angels repent to explain why Fallen Angels
14:53
cannot repent imagine a highly experienced and knowledgeable professional like a seasoned judge or a
15:01
top level executive who fully understands the laws and ethical standards of their
15:07
profession this person is not only aware of the rules but also the consequences
15:13
of breaking them now imagine this professional deliberately decides to
15:18
break a significant law or ethical standard fully aware of the gravity and
15:24

---

[32]

- 192 -

VERIFIED COMPLAINT

1   consequences of their action their decision is not made out of ignorance or
    15:30
2   misunderstanding it's a conscious Choice made with complete knowledge and
    15:36
3   awareness in this example the actions of the professional are similar to how the Fallen Angels
4   behaved like the

5   Respectfully Submitted,

6

7       **DATED** this 4th day of October, 2024.

8

9

10

11      **ELIZABETH TIGANO**

12

13      **DATED** this 4TH day of Ocrober, 2024.

14

15

16      **MARY  BERNSTEIN**

17              **VERIFICATION**

18  (a) I, ELIZABETH TIGANO, the undersigned Plaintiff, declare under the penalty of perjury that
    the contents of this document titled VERIFIED COMPLAINT are true and correct to my own
19  knowledge and that I make this verification because the facts set forth
    in said document are within our knowledge.
20   (b) I will submit to this Court all confidential documents containing confidential
    medical information to be held under seal in order to establish the undisputable facts that
21  we are qualified persons with disabilities, including, but not limited to cognitive disabilities,
    as is defined by the Americans with Disabilities Act (ADA) of 1990, Title II, 42 U.S.C.
22  12131 et. seq. and Americans with Disabilities Act Amendments Act (ADAAA) of
    9/25/2008, 42 U.S.C. A. 12101 et. seq.
23  (c) I, the undersigned plaintiff, declare under the penalty of perjury that the
24  foregoing is true and correct and was executed in Alameda County, Fremont, California by
    Plaintiff Elizabeth Tigano this 7thh day of October, 2024.
25

26

27      **ELIZABETH TIGANO**

28

                        - 193 –

    VERIFIED COMPLAINT

1

**VERIFICATION**

2   (a) I, MARY BERNSTEIN, the undersigned Plaintiff, declare under the penalty of perjury that
    the contents of this document titled VERIFIED COMPLAINT are true and correct to my own

3   knowledge and that I make this verification because the facts set forth
    in said document are within our knowledge.

4   (b) I will submit to this Court all confidential documents containing confidential

5   medical information to be held under seal in order to establish the undisputable facts that
    we are qualified persons with disabilities, including, but not limited to cognitive disabilities,

6   as is defined by the Americans with Disabilities Act (ADA) of 1990, Title II, 42 U.S.C.
    12131 et. seq. and Americans with Disabilities Act Amendments Act (ADAAA) of

7   9/25/2008, 42 U.S.C. A. 12101 et. seq.

8   (c) I, the undersigned plaintiff, declare under the penalty of perjury that the
    foregoing is true and correct and was executed in Alameda County, Fremont, California by

9   Plaintiff Mary Bernstein this 7th^th day of October, 2024.

10

11

12   **MARY  BERNSTEIN**

13

14

15   **EXHIBIT A Alameda Court jewish black
     discrimination**

16   **Rally decries exclusion of Black and
     Jewish jurors in Alameda County**

17   **https://jweekly.com/2024/06/18/a-
     perversion-of-justice-rally-decries-**

18   **exclusion-of-black-and-jewish-jurors-in-
     alameda-county/**

19

20   **OPINION | Righting the wrongs of
     keeping Jews off death penalty juries**

21   **https://jweekly.com/2024/06/24/yes-
     review-alameda-county-death-penalty-**

22   **cases-but-go-even-further/**

23   **Alameda County juror bias case begins
     https://jweekly.com/2005/03/25/juror-**

24   **bias-case-begins/**

25   **Did a Jewish judge conspire to keep Jews
     off jury**

26   **https://jweekly.com/2005/01/27/did-a-
     jewish-judge-conspire-to-keep-jews-off-**

27   **jury/**

28

VERIFIED COMPLAINT

Jews were excluded from Alameda County's death penalty juries for decades, new evidence reveals
https://jweekly.com/2024/05/13/jews-were-excluded-from-alameda-countys-death-penalty-juries-for-decades-new-evidence-reveals/
EXHIBIT B Dept 517 email mornings Friday CMC March 7 2024 no motion filing or requests without meeting in person or telephone
EXHIBIT C
Memorandum of Costs
EXHIBIT D
California Statewide Civil Fee Schedule 2024
EXHIBIT E
Christopher Allard McNamara Invoices Motion for Attorneys fees attesting for Luanne Rutherford
EXHIBIT F
Second Amended Complaint Plaintiff
EXHIBIT G
First Amended Complaint Plaintiff
EXHIBIT H
Preliminary Complaint filed with incapacitated attorney Kevin Horan Summons
Civil Cover Sheet Personal Injury
EXHIBIT I
Late Mother Anna Smith-Fogltance restraining order injunction, Elizabeth Tigano restraining orders Pima County Email Mother and sister assistance care Injunction harassment across street
July 10 2021 Article How We Will Know When Covid is Over
Declarations Anna Smith-Fogltance and Jacqueline Illera in support of request change of judge Paul Herbert
EXHIBIT J
Declaration Mary Bernstein Support of Motion to Strike Costs/Opposition to Motion Attorney Fees

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Declaration of Elizabeth Tigano in Support of Opposition to Motion for Attorney Fees/Reply Costs
EXHIBIT K
Notice of Motion to Strike Costs
Reply Motion to Strike Costs
EXHIBIT L
John Gibson Complaint 12 CR 003653 Alameda County Felony Brandishing Weapons Firearms assault grocery delivery driver during COVID in Meadow Brook Village Condominiums filed 3 18 2021
Warrant issued failure to appear 5 24 2021
John Gibson frivolous civil harassment petition against Mary Bernstein 21 CV 000668
John Gibson frivolous civil harassment petition against 23 CV031593 Elizabeth Tigano 4 24 2023
EXHIBIT M
Jacqueline Illera Declaration witness harassment John Gibson  1 8 2021 in connection with Mary Bernstein civil harassment petition
Elizabeth Tigano Declaration witness harassment John Gibson 1 8 2021 in connection with Mary Bernstein civil harassment petition
EXHIBIT N
Limited Scope Representation Lloyd Winter Motion for Summary Judgment Opposition
Eumi Lee Ruling granting summary judgment
Email Luanne Rutherford proposed Judgment 5 16 2022 no costs attorneys fees – invoice  5 20 2022 email agreement farmers to waive attorneys fees and costs invoice entry #522
Christopher Allard Judgment 7 17 2023 seeking costs Eumi Lee adds in can pursue attorney fees
EXHIBIT O

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4 4 2019 Luanne Rutherford Ex Parte Application Plaintiff no notice called by court at home hearing right then medicated 4 8 2019 no notice then medical leave April 11 2019 hearing for six months Paul Herbert
EXHIBIT P
Motion for extension stay October 9 2019 was on stay through November 4 2020 due to court closure covid and not to work on matter advised by Judge until stay lifted – no one to work on case during stay invoices by defendants working on case during stay – judge Paul Herbert assisting advising in transcript defense counsel what to do to counteract Plaintiff research home sales guiding defense counsel pages 43-46
EXHIBIT Q
Documents filed Motion for Protective Order
EXHIBIT R
Elizabeth Tigano thank you drawing card to Lloyd Winter limited scope attorneys for assisting us in opposition to motion for summary judgment
EXHIBIT S
Eumi Lee during medical emergency judge well aware of injury issues order denial of reasonable accommodations submitted prior to this date 3 4 2022 with medical records motion to quash states non appearance
EXHIBIT T
Eumi Lee during medical emergency judge well aware of injury issues order denial of reasonable accommodations submitted prior to this date 3 4 2022 with medical records case management conference states non appearance
EXHIBIT U
Keith Fong minutes Order to Show Cause vacated only after Plaintiff brought to attention that the judge stated it would be vacated previously and that plaintiff did not have to prepare response and appear

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

– sanctions and OSC had been issued despite reasonable accommodations and medical records submitted 3 5 2024 – matter left on calendar until 5 7 2024 stressing Plaintiff Bernstein

EXHIBIT V

Keith Fong Order - Order to Show Cause vacated only after Plaintiff brought to attention that the judge stated it would be vacated previously and that plaintiff did not have to prepare response and appear – sanctions and OSC had been issued despite reasonable accommodations and medical records submitted 3 5 2024 – matter left on calendar until 5 7 2024 stressing Plaintiff Bernstein

EXHIBIT W

Limited Scope Representation Kevin Horan 3 28 2018

EXHIBIT X

State Bar Kevin Horan Consumer Alert 7 2 2019

EXHIBIT Y

SUPPLEMENTAL DECLARATION OF MARY BERNSTEIN IN SUPPORT OF MOTION TO STRIKE TAX COSTS OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO STRIKE TAX COSTS

EXHIBIT Z State Bar Complaint Christopher Allard falsifying information perjury misrepresentation fraud ethics billing fraud

– 198 –

VERIFIED COMPLAINT

Exhibit A

**35** I have seen a wicked and ruthless man

flourishing like a luxuriant native tree,

**36** but he soon passed away and was no more;

though I looked for him, he could not be found.



The Jewish News
of Northern California

Search



*Rabbi Josh Weisman of Temple Beth Sholom speaks at a rally against the alleged purposeful withholding of Black and Jewish people from juries in Alameda County death penalty cases at Alameda County Superior Courthouse in Oakland, June 18, 2024. (Photo/Aaron Levy-Wolins)*

NEWS > BAY AREA

# 'A perversion of justice': Rally decries exclusion of Black and Jewish jurors in Alameda County

BY SUE FISHKOFF | JUNE 18, 2024

*Sign up for Weekday J and get the latest on what's happening in the Jewish Bay Area.*

For more than 30 years in Alameda County, potential Black and Jewish jurors have been excluded from capital trials — cases where the defendant faced the death penalty. And that, said speakers at a rally Tuesday outside the Alameda County Courthouse in Oakland, is a gross miscarriage of justice, one that demands immediate remedy.

Defendants facing criminal charges are guaranteed trial by an "impartial" jury of one's peers, drawn from a "cross-section of the community," according to the U.S. Constitution and the Supreme Court.

"A jury of your peers means a jury of your peers," said Rabbi Josh Weisman of Temple Beth Sholom in San Leandro. "If specific ethnic groups are excluded, that's a perversion of justice."

The morning rally, sponsored by an array of local rights organizations, called for the resentencing of every prisoner who received the death penalty in Alameda County. (Gov. Gavin Newsom placed a moratorium on executions in California in 2019, to last through 2026, the end of Newsom's term, and likely longer.) Demonstrators also demanded that all current and former prosecutors and judges implicated in this longstanding and illegal practice be held accountable.

"We must ensure they never find employment in the legal system again," said an activist who calls herself Turtle Woman from the progressive group Bend the Arc: Jewish Action California.

Interfaith leaders participated in the courthouse rally.

 **It's yet another example of the systemic racism plaguing our city, our state and our country.**

"We are here to confront a grave injustice in our jury system," said Brent Turner, an Oakland church deacon who is also active with the San Francisco Black and Jewish Unity Coalition. "It's yet another example of the systemic racism plaguing our city, our state and our country.

"The thought of how many lives have been lost because of the intentional exclusion of Black and Jewish jurors is heartbreaking," he said.

Morgan Zamora of the Oakland-based Ella Baker Center for Human Rights blasted what she called "a legacy of prosecutorial bias" in Alameda County, which she told the crowd "has resulted in harsher sentences" than might have been expected.

Yoel Haile of the ACLU of Northern California echoed Zamora's charge, saying that "previous DAs have failed to curb the practice of these inequalities" that he said were designed to bring about "convictions at any cost."

"We call on the state's attorney general, the state bar and the Committee on Judicial Performance to hold accountable prosecutors and judges implicated in this," Zamora said. "Such practices further erode trust in our legal system."

Speakers at the rally expressed support for Alameda County DA Pamela Price, whose office uncovered evidence of the practice in 2023 during the appeal of a man on death row since 1985 and shared that information with attorneys and the judge in the case. As a result, U.S. District Judge Vince Chhabria instructed Price's office to review every one of the 35 capital cases from Alameda County.

More than one speaker noted that the exclusion of Black and Jewish individuals from jury pools has been known within the department since the early 2000s, and only now, under Price's tenure, is it being acknowledged.



*Brent Turner of the San Francisco Bay Area Black and Jewish Unity Coalition speaks at the rally. (Photo/Aaron Levy-Wolins)*

DA Price, who was elected in 2022, has openly declared her opposition to the death penalty. She is facing a recall election in November.

"Other DAs have turned a blind eye to this issue," Turner told the crowd. "We commend DA Price for her courage in bringing it to light."

A New York Times article from 2005 reported that a former deputy DA from Oakland made a sworn statement declaring it was "standard practice" over the years in Alameda County to exclude Jews and Black women from death penalty juries, because it was felt they would not convict.

"The judge [in one case in 1987] told me, no Jew would vote to send a defendant to the gas chamber," the deputy DA said in his statement.

None of the speakers on Tuesday, however, addressed whether excluding these two groups from the jury pool in capital cases might have resulted in more death penalty convictions.

Rabbi Weisman noted that Black and Jewish Americans share a common history of being marginalized, and he intimated that they might bring that experience to bear in cases they are asked to consider.

"Just who is afraid of Black and Jewish jurors in death penalty cases?" he asked the crowd. "And why are they afraid? Is it because of the sense of connection to our histories of oppression?"

Citing the 18th-century Rabbi Simcha Bunim of Peshischa, Weisman told the crowd that the exhortation "Justice, justice shall you pursue" in Deuteronomy repeats the word "justice" to demand that the pursuit of justice must itself be conducted justly, if the end result is to be just.

"To exclude someone from a jury based on their identity is not justice," he said. "And if a judgment is reached by unjust means, it is not just."

J. covers our community better than any other source and provides news you can't find elsewhere. Support local Jewish journalism and give to J. today. Your donation will help J. survive and thrive!

Support J.



## Sue Fishkoff

Sue Fishkoff is the editor emerita of J. She can be reached at sue@jweekly.com.

BAY AREA
### Jews were excluded from Alameda County's death penalty juries for decades

### Did a Jewish judge conspire to keep Jews off jury

LOCAL VOICE                                    BAY AREA

Rally decries exclusion of Black and Jewish jurors in Alameda County

# Righting the wrongs of keeping Jews off death penalty juries

# Alameda County juror bias case begins



10/4/24, 4:49 AM          OPINION | Righting the wrongs of keeping Jews off death penalty juries



Get top headlines from J. right in your browser.

No thanks.          Sign me up!

Search



*The gas chamber at San Quentin State Prison prior to its disassembly in March 2019. (California Department of Correction and Rehabilitation)*

OPINION > LOCAL VOICE

# Yes, review Alameda County death penalty cases — but go even further

BY FLAURIE S. IMBERMAN, ELIE AXELROTH | JUNE 24, 2024

*Sign up for Weekday J and get the latest on what's happening in the Jewish Bay Area.*

This spring, long-hidden evidence came to light that Alameda County prosecutors had for decades systematically excluded Jews, African Americans and women from serving on juries in death penalty cases.

10/4/24, 4:49 AM                    OPINION | Righting the wrongs of keeping Jews off death penalty juries

Handwritten  Get top headlines from J. right in your browser.   s: One read:

"Banker. Jew                                                                   way."

Excluding pa                                                                   rt because

we are entitl                                                                  f

individuals t_                                                                 , our right —

our obligation, even — to serve on juries.

Discrimination in jury selection is not new, nor is it limited to excluding Jews.

A 1983 training manual for prosecutors in Dallas, Texas, explicitly directed prosecutors: "Do not take Jews, Negroes, Dagos, Mexicans or a member of any minority race on a jury, no matter how well educated." Our country's criminal justice system has long been rooted in racist practices, originally established to keep Black citizens and other disfavored minorities in their place. Controlling, through any means necessary, who serves on a jury is one element of this oppression.

Since 1973, 199 people in the U.S. have been exonerated after being wrongly convicted and sentenced to death, according to the Death Penalty Information Center. That is one exoneration for every eight people executed in the U.S. during that time. Dozens of other innocent men and women have been coerced into accepting plea deals for crimes they did not commit in order to secure their release from death row. A 2014 study in Proceedings of the National Academy of Sciences estimated that at least 4% of those sentenced to death are innocent.

According to Alameda County District Attorney Pamela Price, the recent discovery of rampant prosecutorial misconduct in jury selection may require overturning convictions in as many as 35 death penalty cases and lead to the retrying of 30-year-old cases.

## " Who among us wants to be responsible for executing an innocent person?

Who among us wants to be responsible for executing an innocent person?



As the Ramb... ...d
circumstanti... ...ould be
executed. Ar... ...y people be
set free than... ...zvot)

Public opinic... ...United
States are opposed to the death penalty. Our sacred teachings remind us: If you
destroy one life, it is as though you have destroyed all humankind; whereas if you
preserve one life, it is as though you preserved all humanity. (Mishnah Sanhedrin 4:5)
After the horrific loss of life in the Holocaust, Jewish opposition to capital punishment
has grown even stronger.

What has happened in Alameda County is appalling, especially when considered in
the context of the racist nature of our incarceration system and the pervasive
presence of antisemitism in the United States.

Yet we can right this wrong.

We applaud Price for taking this issue seriously and urge her to move forward quickly
with reviewing all of the cases identified with this travesty of justice.

In the same vein, we applaud Santa Clara County District Attorney Jeff Rosen's
decision in April  seeking to resentence 14 people prosecuted by his office who are
currently on death row. We encourage every district attorney in California to follow
suit.

As we advocate for the abolishment of the death penalty, we are also seeking
clemency for those currently sentenced to death.

In 2019, Gov. Gavin Newsom signed an executive order placing a moratorium on the
death penalty. We will continue to ask the governor to grant universal clemency to
everyone on death row in California, and we urge you to add your name to our
petition. It is crucial that the governor do this soon. He cannot run for a third term in
2026 and could be replaced by a death penalty advocate.

We were raised by parents who taught us that standing on the side of the oppressed is
at the heart ... ...of our

10/4/24, 4:49 AM                    OPINION | Righting the wrongs of keeping Jews off death penalty juries

parents' mei                    Get top headlines from J. right in your browser.          clemency
for all 636 p

J. covers ou
provides news you can't find elsewhere. Support local Jewish          Support J.
journalism and give to J. today. Your donation will help J. survive
and thrive!



## Flaurie S. Imberman

Flaurie S. Imberman is co-chair of Bend the Arc: Jewish Action, California.
She lives in Sunnyvale.



## Elie Axelroth

Elie Axelroth is a volunteer leader with Bend the Arc: Jewish Action,
California. She lives in San Luis Obispo.

BAY AREA

**Jews were excluded from
Alameda County's death
penalty juries for decades**

**Accuser of Jewish judge
deemed dishonest and unethical**

BAY AREA

**Santa Clara county judge to rule
if Jews were kept off jury**

**Did a Jewish judge conspire to
keep Jews off jury**

10/4/24, 4:49 AM

OPINION | Righting the wrongs of keeping Jews off death penalty juries



Get top headlines from J. right in your browser.



Search



*The René C. Davidson Courthouse of the Alameda County Superior Court in Oakland. (Photo/Gabriel Classon-Flickr CC BY 2.0)*

NEWS > BAY AREA

# Jews were excluded from Alameda County's death penalty juries for decades, new evidence reveals

BY JACKIE HAJDENBERG | MAY 13, 2024

*Sign up for Weekday J and get the latest on what's happening in the Jewish Bay Area.*

(JTA) — As many as 35 death-row cases in a California county could be under review for discriminatory practices, including the exclusion of both Black female and Jewish jurors.

The cases in Alameda County date as far back as 1977.

During jury selection in one murder case from the 1990s, the prosecution left handwritten notes about prospective jurors — including whether they were Jewish or Black.

"I liked him better than any other Jew, but no way," one note said. "Must kick."

One note characterizes the prospective juror as, "Banker. Jew?" followed by, "Nice guy — thoughtful but never a strong DP leader — Jewish background." "DP" means "death penalty."

Another note simply says at the top, "Jew? Yes."

California has had a moratorium on the death penalty as of 2019, but at least three people have been resentenced due to the early findings of the Alameda County review.

The intentional exclusion of Black and Jewish people, or any other group, from participating in a jury is illegal.

Prosecutors may have wanted to keep Jews off juries to increase chances of a death sentence. A 2016 Gallup poll found that, when compared with other religious groups, Jews are less supportive of capital punishment — though 54% still believed it to be "morally acceptable."

"When you intentionally exclude people based on their race, their religion, their gender or any protected category, it violates the Constitution," Alameda County District Attorney Pamela Price said at a news conference on April 22. "The evidence that we have uncovered suggests plainly that many people did not receive a fair trial in Alameda County."

The allegations of discrimination came to light in 2023 during an appeal on a death penalty case for Ernest Dykes, who was charged and sentenced in 1995 for murdering a 9-year-old boy during the robbery and attempted murder of his mother. A deputy

district attorney discovered "handwritten notes by prosecutors which appear to show that they intentionally excluded Jewish and Black female jurors from the jury pool," the District Attorney's Office of Alameda County said in a statement.

"These notes — especially when considered in conjunction with evidence presented in other cases — constitute strong evidence that, in prior decades, prosecutors from the office were engaged in a pattern of serious misconduct, automatically excluding Jewish and African American jurors in death penalty cases," Judge Vince Chhabria wrote in an April 22 court order.

This is not the first time allegations of religious and racial bias against Jewish and Black jurors have turned up in jury selection in Alameda County. Many Jewish activists have advocated against the death penalty, often focusing on opposition to the use of gas chambers as a form of execution.

John Quatman, who worked for 26 years as a deputy district attorney, said in 2005 that Stanley Golde, the trial judge presiding over a 1987 murder and robbery case, advised him during jury selection that "no Jew would vote to send a defendant to the gas chamber" and referenced the Israeli sentencing of Adolf Eichmann, an architect of the Holocaust.

"He said I could not have a Jew on the jury, and asked me if I was aware that when Adolf Eichmann was apprehended after World War II, there was a major controversy in Israel over whether he should be executed," Quatman said at the time. Eichmann was put to death.

"Judge Golde was only telling me what I already should have known to do," Quatman said in his statement. "It was standard practice to exclude Jewish jurors in death cases."

J. covers our community better than any other source and provides news you can't find elsewhere. Support local Jewish journalism and give to J. today. Your donation will help J. survive and thrive!

Support J.



## Jackie Hajdenberg

Jackie Hajdenberg is a reporter at JTA. She has a degree in political science from Barnard College and a master's in journalism from Columbia Journalism School. Her reporting and writing has appeared in USA Today, PBS Frontline, the Detroit Free Press, Vox and Hey Alma. She writes satire and hangs out on Twitter @DrJackieMrsHajd

**Tags:** courts, death penalty

BAY AREA

### Rally decries exclusion of Black and Jewish jurors in Alameda County

### Did a Jewish judge conspire to keep Jews off jury

LOCAL VOICE

### Righting the wrongs of keeping Jews off death penalty juries

BAY AREA

### Alameda County juror bias case begins





The Jewish News
of Northern California

DONATE

Search

# Did a Jewish judge conspire to keep Jews off jury

BY JOE ESKENAZI | JANUARY 27, 2005

*Sign up for Weekday J and get the latest on what's happening in the Jewish Bay Area.*

Lawyers for a death row prisoner are arguing that the respected Jewish judge who oversaw his case inappropriately colluded with the prosecutor to keep Jews off the jury.

In a statement made by former Alameda County prosecutor Jack Quatman on behalf of condemned prisoner Fred Freeman, the lawyer claims deceased Alameda County Superior Court Judge Stanley Golde chided him for not aggressively keeping Jews out of the jury pool when Quatman was prosecuting the 1987 trial.

"Judge Golde was a plain-spoken man, who was not shy about expressing his opinion. He said I could not have a Jew on the jury ... Judge Golde said no Jew would vote to send a defendant to the gas chamber. I thanked Judge Golde for this advice, and thereafter excused any prospective juror who was Jewish."

Quatman adds that Golde's advice was not entirely necessary as "it was standard practice to exclude Jewish jurors in death cases; as it was to exclude African American women from capital juries."

Quatman, currently in private practice in Whitefish, Mont., did not return repeated phone calls. In addition to his allegations against Golde, he also claimed Freeman's defense attorneys "handed me the case" through repeated acts of gross incompetence.

Officials in the Alameda County District Attorney's office would not comment on Quatman's possible motivation for making the accusation after so many years.

Freeman, who was convicted for a 1984 shooting murder in a Berkeley bar, is not Jewish, but the alleged wholesale exclusion of a "cognizable class" for membership in the jury would arguably have denied him the right to a jury of his peers according to his lawyers at the California Habeas Corpus Resource Center.

Freeman's lawyers will appear in court Feb. 8 for a discovery hearing, when Alameda County District Attorney Thomas Orloff expects to set hearing dates and "deal with some motions" — including one to recuse the district attorney's office and kick the case to the state attorney general.

Quatman's allegations against Golde, a former congregant at Oakland's Temple Sinai who died in 1998, ignited a firestorm of angry denials from the judge's friends and legal colleagues, who claim he would never have, in essence, rigged a trial.

"We definitely dispute [Quatman's] allegations," said Orloff.

Golde "was very proud of his background and his religion. He was active in our synagogues and respected in our Jewish community. His nickname among the other judges was 'The Maven.'"

Added U.S. District Judge D. Lowell Jensen, a lifelong friend of Golde's, in a written response to Freeman's habeas corpus petition: "It is simply inconceivable that Stanley Golde would throw over a lifetime of devotion to the law and to its ethical practice in an attempt to achieve the wrongful conviction and wrongful imposition of a death penalty for a defendant on trial in his courtroom."

Quatman's allegations regarding Golde have struck a chord with anti-death penalty activists.

While personally opposed to capital punishment on moral grounds, Golde sent 11 men to death row between 1980 and 1995; Stefanie Faucher, the program director of the San Francisco-based Death Penalty Focus referred to him as "a hanging judge."

If Quatman's recollection is true, all of Golde's capital cases — and, perhaps hundreds more, statewide — will be in doubt.

"You have a right to a jury of your peers. This does not mean just white people or black people but a sampling of the general public. This is absolutely wrong because it undermines our entire understanding of justice in California," said Faucher.

"And this attorney said this was standard practice."

J. covers our community better than any other source and provides news you can't find elsewhere. Support local Jewish journalism and give to J. today. Your donation will help J. survive and thrive!

Support J.

## Joe Eskenazi

Joe Eskenazi is the managing editor at Mission Local. He is a former editor-at-large at San Francisco magazine, former columnist at SF Weekly and a former J. staff writer.

BAY AREA
### Alameda County juror bias case begins

BAY AREA
### Santa Clara county judge to rule if Jews were kept off jury

BAY AREA
### Accuser of Jewish judge deemed dishonest and unethical

BAY AREA
### Jews were excluded from Alameda County's death penalty juries for decades





NEWS > BAY AREA

The Jewish News
of Northern California

# Alameda County juror bias case begins

Search

BY J. CORRESPONDENT | MARCH 25, 2005

*Sign up for Weekday J and get the latest on what's happening in the Jewish Bay Area.*

Former Alameda County prosecutor John Quatman began testimony Tuesday, March 22, in San Jose Superior Court following his claim last year that he colluded with a Jewish judge to keep Jews off a death penalty jury.

Quatman, now in private practice in Montana, alleged that deceased Judge Stanley Golde chided him for considering Jews for the 1987 jury of since-convicted murderer Fred Freeman. The former prosecutor further alleged that it was standard practice in Alameda County to exclude Jews and black women from capital juries.

His testimony came up at an evidentiary hearing to determine whether Freeman, currently on death row, may be granted a new trial.

Quatman's allegations are vigorously disputed by the Alameda County District Attorney's office. During Tuesday's proceedings, George Williamson, who represented the California attorney general's office, attempted to paint Quatman as ethically challenged, even forcing him to read notes he'd taken during the '87 trial on the physical appearance of female jurors.

Quatman claimed he waited years to make his allegations against Golde, a former congregant of Oakland's Temple Sinai, because accusations against the respected judge would have ruined the prosecutor's career.

J. covers our community better than any other source and provides news you can't find elsewhere. Support local Jewish

journalism and give to J. today. Your donation will help J. survive
and thrive!

Support J.

# J. Correspondent

### Accuser of Jewish judge deemed dishonest and unethical

### Did a Jewish judge conspire to keep Jews off jury

BAY AREA

### Santa Clara county judge to rule if Jews were kept off jury

### Shorts: Bay Area



# Exhibit **B**

**1 Do not fret because of those who are evil**

    **or be envious of those who do wrong;**

**2 for like the grass they will soon wither,**

    **like green plants they will soon die away.**

9/22/24, 7:32 AM                                      Mail - Mary Helen Bernstein MSAJS - Outlook

 Outlook

---

**Automatic reply: Alameda Superior Court EPOST: HG18897381 for [03/05/2024 Order re: Hearing on Motion for Attorney Fees filed b...]**

---

From Dept. 517, Superior Court <dept517@alameda.courts.ca.gov>
Date Thu 3/7/2024 5:21 PM
To    Mary Helen Bernstein MSAJS <Mbernsteinpurple@hotmail.com>

Please read this message in its entirety as it may answer your question(s).  Please do not leave multiple messages or voicemails. Voicemails are reserved only for those without access to email. Should you have access to email, do not expect a call back, as only email responses may be given. Please remember, the Court cannot accept Ex Parte Communications.

## Meet and Confer Requirement:

**The parties shall meet and confer prior to submitting any motion or request to the Court. To satisfy this requirement, the parties must discuss the matter in person or by telephone/video conference. Meeting and conferring solely by letter or written communication will not suffice. Each request shall include a certification by counsel that the parties have met and conferred in a good faith effort to resolve the particular dispute without judicial intervention. Failure to comply with this requirement may result in the Court declining to consider the request.**

Please review the following procedures carefully as it may answer your questions:

1. Check the Court's ECOURT PUBLIC PORTAL
   at https://eportal.alameda.courts.ca.gov/ before you ask about anything. The Alameda County Superior Court eCourt Public Portal provides the public with online access to civil case records through a secure web server.

2. INFORMAL DISCOVERY CONFERENCES: Email the department with jointly proposed dates and times, cc'ing the opposing party/counsel. Parties are required to meet and confer, prior to contacting the Department. IDC's are usually held on Wednesday mornings when the Court is not in trial. Counsel are expected to follow the requirements set forth in Local Rule 3.31.

3. LAW AND MOTION RESERVATIONS are REQUIRED to be made on eCourt. eCourt Public Portal | Alameda eCourt Public Portal (ca.gov)

4. LAW AND MOTION CONTESTED HEARINGS – Tentative rulings are posted on eCourt before the hearing and contain instructions as to how to contest. Parties must contest on eCourt and by email to the courtroom clerk at dept517@alameda.courts.ca.gov, cc'ing opposing party/counsel.
See http://www.alameda.courts.ca.gov/Pages.aspx/Tentative-Rulings for more information.

5. EX PARTE: Ex parte requests should be filed with directions given to the clerk's office to direct the request to the judge's work queue and do not require a reservation. All parties must be served.   A pdf copy of the moving papers should be emailed to Department 517 at the Dept517@alameda.courts.ca.gov, notifying the department clerk that an Ex Parte request has been filed, with the email copied to all parties.

Courtesy copies should also be delivered to Department 517 at D517CC@alameda.courts.ca. gov as stated above.  Opposition papers should be filed and delivered similarly.  The Court will ordinarily wait 24 hours for an opposition.  The Court will rule on the papers or schedule a hearing if the Court deems a hearing necessary.

6. COURTESY COPIES- Parties should submit identical courtesy copies of all law and motion papers to Department 517 no later than 12:00 p.m. the day after they are filed and served. Courtesy copies should be delivered in PDF format to Department 517 by email to the following email address dedicated solely for receiving courtesy copies and proposed orders: D517CC@alameda.courts.ca. gov.  The subject line of the email should identify the case name and number and the title of the document in short form.  No other information or communications shall be stated be in the subject line or the body of the email.

If a document attaches exhibits, *e.g.*, declarations and requests for judicial notice, and the document with exhibits exceeds 50 pages, paper copies of the document should also be delivered to Department 517.  Paper courtesy copies of documents that do not fall in this category need not be provided.  If the courtroom is closed, papers may be left in the box placed outside of Department 517.

If a party files a motion that requires the Court to review the pleadings, courtesy copies of the relevant pleading, e.g., complaint, cross-complaint, or answer, must also be delivered to Department 517.

7. CASE MANAGEMENT: Case Management Conferences are held on Tuesday and Thursday at 2:30 PM and on Friday at 10:30 AM, unless specially set by the Court.  Timely filed and completed case management conference statements are mandatory.  Ordinarily, the Court will post a tentative case management Order that will be adopted if no party appears to contest it.  The parties should meet and confer after the tentative ruling is posted to determine if any party contests the Order and whether appearances are necessary.

Parties need not submit courtesy copies of case management conference statements.

8. REMOTE HEARINGS: Please note, appearances are in person with the option to appear remotely. Information regarding appearances shall be provided in the published tentative order/ruling and is also available via eCourt on the Department's page. Zoom links shall not be sent out via email.

9. Counsel or self-represented litigants' EMAIL ADDRESS must appear on the face page of all pleadings. All email communications must be copied to all parties for whom an email address is available.

BE COURTEOUS and PATIENT. ALL requests will be handled in due course.

Automatic reply: Alameda Superior Court EPOST: HG16897303 for (01/05/2024 Order re: hearing on Motion for Attorney Fees filed b...] - Mary Helen Benston MSAIS - Outlook - Google Chrome

about:blank

🗑 Delete   ⊘ Report   ↩ Reply   ↪ Zoom   📖 Read / Unread   ⊘ Categorize   🏳 Flag / Unflag   🖨 Print   ...

Automatic reply: Alameda Superior Court EPOST: HG16897303 for (01/05/2024 Order re: Hearing on Motion for Attorney Fees filed b...]

Dept 517: Superior Court <dept517@alameda.courts.ca.gov>
To: You

↩ Reply   ↩ Reply All   → Forward   ...
Wed 01/10/24 9:28 AM

You forwarded this message on Mon 9/16/2024 6:36 AM

Please read this message in its entirety as it may answer your question(s). Please do not leave multiple messages or voicemails. Voicemails are reserved only for those without access to email. Should you have access to email, do not expect a call back, as only email responses may be given. Please remember, the Court cannot accept Ex Parte Communications.

**Meet and Confer Requirement:**

**The parties shall meet and confer prior to submitting any motion or request to the Court. To satisfy this requirement, the parties must discuss the matter in person or by telephone/video conference. Meeting and conferring solely by letter or written communication will not suffice. Each request shall include a certification by counsel that the parties have met and conferred in a good faith effort to resolve the particular dispute without judicial intervention. Failure to comply with this requirement may result in the Court declining to consider the request.**

Please review the following procedures carefully as it may answer your questions:

1. Check the Court's ECOURT PUBLIC PORTAL at https://eportal.alameda.courts.ca.gov/ before you ask about anything. The Alameda County Superior Court eCourt Public Portal provides the public with online access to civil case records through a secure web server.

2. INFORMAL DISCOVERY CONFERENCES: Email the department with jointly proposed dates and times, cc'ing the opposing party/counsel. Parties are required to meet and confer, prior to contacting the Department. IDC's are usually held on Wednesday mornings when the Court is not in trial. Counsel are expected to follow the requirements set forth in Local Rule 3.31.

3. LAW AND MOTION RESERVATIONS are REQUIRED to be made on eCourt. eCourt Public Portal. ( Alameda eCourt Public Portal (ca.gov)

[taskbar icons]   8:02 AM Friday 10/4/2024

Automatic reply: Alameda Superior Court EPOST: HG16897303 for (01/05/2024 Order re: hearing on Motion for Attorney Fees filed b...] - Mary Helen Benston MSAIS - Outlook - Google Chrome

about:blank

🗑 Delete   ⊘ Report   ↩ Reply   ↪ Zoom   📖 Read / Unread   ⊘ Categorize   🏳 Flag / Unflag   🖨 Print   ...

Automatic reply: Alameda Superior Court EPOST: HG16897303 for (01/05/2024 Order re: Hearing on Motion for Attorney Fees filed b...]

4. LAW AND MOTION CONTESTED HEARINGS – Tentative rulings are posted on eCourt before the hearing and contain instructions as to how to contest. Parties must contest on eCourt and by email to the courtroom clerk at dept517@alameda.courts.ca.gov, cc'ing opposing party/counsel. See http://www.alameda.courts.ca.gov/Pages.aspx/Tentative-Rulings for more information.

5. EX PARTE: Ex parte requests should be filed with directions given to the clerk's office to direct the request to the judge's work queue and do not require a reservation. All parties must be served. A pdf copy of the moving papers should be emailed to Department 517 at the Dept517@alameda.courts.ca.gov, notifying the department clerk that an Ex Parte request has been filed, with the email copied to all parties.

Courtesy copies should also be delivered to Department 517 at D517CC@alameda.courts.ca. gov as stated above. Opposition papers should be filed and delivered similarly. The Court will ordinarily wait 24 hours for an opposition. The Court will rule on the papers or schedule a hearing if the Court deems a hearing necessary.

6. COURTESY COPIES- Parties should submit identical courtesy copies of all law and motion papers to Department 517 no later than 12:00 p.m. the day after they are filed and served. Courtesy copies should be delivered in PDF format to Department 517 by email to the following email address dedicated solely for receiving courtesy copies and proposed orders: D517CC@alameda.courts.ca. gov. The subject line of the email should identify the case name and number and the title of the document in short form. No other information or communications shall be stated be in the subject line or the body of the email.

If a document attaches exhibits, e.g., declarations and requests for judicial notice, and the document with exhibits exceeds 50 pages, paper copies of the document should also be delivered to Department 517. Paper courtesy copies of documents that do not fall in this category need not be provided. If the courtroom is closed, papers may be left in the box placed outside of Department 517.

If a party files a motion that requires the Court to review the pleadings, courtesy copies of the relevant pleading, e.g., complaint, cross-complaint, or answer, must also be delivered to Department 517.

7. CASE MANAGEMENT: Case Management Conferences are held on Tuesday and Thursday at 2:30 PM and on Friday at 10:30 AM, unless specially set by the Court. Timely filed and completed case management conference statements are mandatory. Ordinarily, the Court will post a tentative case management Order that will be adopted if no party appears to contest it. The parties should meet and confer after the tentative ruling is posted to determine if any party contests the Order and whether appearances are necessary.

Parties need not submit courtesy copies of case management conference statements.

8. REMOTE HEARINGS: Please note, appearances are in person with the option to appear remotely. Information regarding appearances shall be provided in the published tentative order/ruling and is also available via eCourt on the Department's page. Zoom links shall not be sent out via email.

[taskbar icons]   8:02 AM Friday 10/4/2024



Please read this message in its entirety as it may answer your question(s).  Please do not leave multiple messages or voicemails. Voicemails are reserved only for those without access to email. Should you have access to email, do not expect a call back, as only email responses may be given. Please remember, the Court cannot accept Ex Parte Communications.

<u>**Meet and Confer Requirement:**</u>

<u>**The parties shall meet and confer prior to submitting any motion or request to the Court. To satisfy this requirement, the parties must discuss the matter in person or by telephone/video conference. Meeting and conferring solely by letter or written communication will not suffice. Each request shall include a certification by counsel that the parties have met and conferred in a good faith effort to resolve the particular dispute without judicial intervention. Failure to comply with this requirement may result in the Court declining to consider the request.**</u>

Please review the following procedures carefully as it may answer your questions:

1. Check the Court's ECOURT PUBLIC PORTAL at https://eportal.alameda.courts.ca.gov/ before you ask about anything. The Alameda County Superior Court eCourt Public Portal provides the public with online access to civil case records through a secure web server.

2. INFORMAL DISCOVERY CONFERENCES: Email the department with jointly proposed dates and times, cc'ing the opposing party/counsel. Parties are required to meet and confer, prior to contacting the Department. IDC's are usually held on Wednesday mornings when the Court is not in trial. Counsel are expected to follow the requirements set forth in Local Rule 3.31.

3. LAW AND MOTION RESERVATIONS are REQUIRED to be made on eCourt. eCourt Public Portal | Alameda eCourt Public Portal (ca.gov)

4. LAW AND MOTION CONTESTED HEARINGS – Tentative rulings are posted on eCourt before the hearing and contain instructions as to how to contest. Parties must contest on eCourt and by email to the courtroom clerk at dept517@alameda.courts.ca.gov, cc'ing opposing party/counsel. See http://www.alameda.courts.ca.gov/Pages.aspx/Tentative-Rulings for more information.

5. EX PARTE: Ex parte requests should be filed with directions given to the clerk's office to direct the request to the judge's work queue and do not require a reservation.  All parties must be served.   A pdf copy of the moving papers should be emailed to Department 517 at the Dept517@alameda.courts.ca.gov, notifying the department clerk that an Ex Parte request has been filed, with the email copied to all parties.

Courtesy copies should also be delivered to Department 517 at D517CC@alameda.courts.ca. gov as stated above.  Opposition papers should be filed and delivered similarly.  The Court will ordinarily wait 24 hours for an opposition.  The Court will rule on the papers or schedule a hearing if the Court deems a hearing necessary.

6. COURTESY COPIES - Parties should submit identical courtesy copies of all law and motion papers to Department 517 no later than 12:00 p.m. the day after they are filed and served.  Courtesy copies should be delivered in PDF format to Department 517 by email to the following email address dedicated solely for receiving courtesy copies and proposed orders: D517CC@alameda.courts.ca. gov.  The subject line of the email should identify the case name and number and the title of the document in short form.  No other information or communications shall be stated be in the subject line or the body of the email.

If a document attaches exhibits, *e.g.*, declarations and requests for judicial notice, and the document with exhibits exceeds 50 pages, paper copies of the document should also be delivered to Department 517.  Paper courtesy copies of documents that do not fall in this category need not be provided.  If the courtroom is closed, papers may be left in the box placed outside of Department 517.

If a party files a motion that requires the Court to review the pleadings, courtesy copies of the relevant pleading, e.g., complaint, cross-complaint, or answer, must also be delivered to Department 517.

7. CASE MANAGEMENT: Case Management Conferences are held on Tuesday and Thursday at 2:30 PM and on Friday at 10:30 AM, unless specially set by the Court.  Timely filed and completed case management conference statements are mandatory.  Ordinarily, the Court will post a tentative case management Order that will be adopted if no party appears to contest it.  The parties should meet and

confer after the tentative ruling is posted to determine if any party contests the Order and whether appearances are necessary.

Parties need not submit courtesy copies of case management conference statements.

8. REMOTE HEARINGS: Please note, appearances are in person with the option to appear remotely. Information regarding appearances shall be provided in the published tentative order/ruling and is also available via eCourt on the Department's page. Zoom links shall not be sent out via email.

9. Counsel or self-represented litigants' EMAIL ADDRESS must appear on the face page of all pleadings. All email communications must be copied to all parties for whom an email address is available.

BE COURTEOUS and PATIENT. ALL requests will be handled in due course.

9/16/24, 9:43 AM                               Mail - Mary Helen Bernstein MSAJS - Outlook

⠿  Outlook          🔍 Search                                    

🖶 Print      ✕ Close

**Fw: Alameda Superior Court EPOST: HG18897381 for [03/05/2024 Order re: Hearing on Motion for Attorney Fees filed b...] fridays 10 30 am cmc**

Mary Helen Bernstein MSAJS <Mbernsteinpurple@hotmail.com>
Mon 9/16/2024 9:39 AM
To: mary bernstein <bernstein.mary@aol.com>;  Mary Helen Bernstein <mhelenbernstein@yahoo.com>

---

**From:** Dept. 517, Superior Court <dept517@alameda.courts.ca.gov>
**Sent:** Thursday, March 7, 2024 5:20 PM
**To:** Mary Helen Bernstein MSAJS <Mbernsteinpurple@hotmail.com>
**Subject:** Automatic reply: Alameda Superior Court EPOST: HG18897381 for [03/05/2024 Order re: Hearing on Motion for Attorney Fees filed b...]

Please read this message in its entirety as it may answer your question(s).  Please do not leave multiple messages or voicemails. Voicemails are reserved only for those without access to email. Should you have access to email, do not expect a call back, as only email responses may be given. Please remember, the Court cannot accept Ex Parte Communications.
**Meet and Confer Requirement:**
**The parties shall meet and confer prior to submitting any motion or request to the Court. To satisfy this requirement, the parties must discuss the matter in person or by telephone/video conference. Meeting and conferring solely by letter or written communication will not suffice. Each request shall include a certification by counsel that the parties have met and conferred in a good faith effort to resolve the particular dispute without judicial intervention. Failure to comply with this requirement may result in the Court declining to consider the request.**

Please review the following procedures carefully as it may answer your questions:

10/4/24, 5:03 AM                    (10,256 unread) - bernstein.mary@aol.com - AOL Mail

cmc vacated refusal to schedule friday mornings save email that i have fong 9 17 2024

From:  mary bernstein (bernstein.mary@aol.com)

To:     bernstein.mary@aol.com

Date:  Monday, September 16, 2024 at 02:00 PM PDT



Exhibit C

10 A little while, and the wicked will be no more;

   though you look for them, they will not be found.

11 But the meek will inherit the land

   and enjoy peace and prosperity.

12 The wicked plot against the righteous

   and gnash their teeth at them;

13 but the Lord laughs at the wicked,

   for he knows their day is coming.

MC-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Christopher B. Allard (SBN 264842)
FIRM NAME: McNamara, Ambacher, Wheeler, Hirsig & Gray
STREET ADDRESS: 3480 Buskirk Ave #250
CITY: Pleasant Hill     STATE: CA   ZIP CODE: 94523
TELEPHONE NO.: (925)939-5330     FAX NO.:
E-MAIL ADDRESS: christopher.allard@mcnamaralaw.com
ATTORNEY FOR (name): Associa Northern California et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF: Mary Bernstein
DEFENDANT: Associa Northern California, et al.

| MEMORANDUM OF COSTS (SUMMARY) | CASE NUMBER: HG18897381 |
|---|---|

**The following costs are requested:**                                        **TOTALS**

| | | | |
|---|---|---|---:|
| 1. | Filing and motion fees | $ | 11,828 |
| 2. | Jury fees | $ | |
| 3. | Jury food and lodging | $ | |
| 4. | Deposition costs | $ | 1,484 |
| 5. | Service of process | $ | |
| 6. | Attachment expenses | $ | |
| 7. | Surety bond premiums | $ | |
| 8. | Witness fees | $ | |
| 9. | Court-ordered transcripts | $ | |
| 10. | Attorney fees *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required)* | $ | |
| 11. | Court reporter fees as established by statute | $ | |
| 12. | Models, enlargements, and photocopies of exhibits | $ | 685 |
| 13. | Interpreter fees | $ | |
| 14. | Fees for electronic filing or service | $ | |
| 15. | Fees for hosting electronic documents | $ | |
| 16. | Other | $ | 5,265 |

| **TOTAL COSTS** | $ | 19,262 |
|---|---|---:|

I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

Date: August 14, 2023

Christopher B. Allard                          *Christopher Allard*
_____                    ►          _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF DECLARANT)

| | | |
|---|---|---|
| Form Approved for Optional Use Judicial Council of California MC-010 [Rev. September 1, 2017] | **MEMORANDUM OF COSTS (SUMMARY)** (Proof of service on reverse) | Code of Civil Procedure, §§ 1032, 1033.5 |

CEB® | Essential Forms™
ceb.com

MC-011

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Bernstein v. Meadow Brook Village HOA | HG18897381 |

### MEMORANDUM OF COSTS (WORKSHEET)

1. **Filing and motion fees**

   Paper filed      Filing fee

   a. _See Attachment 1g_    $ ___11,828___

   b. _____    $ _____

   c. _____    $ _____

   d. _____    $ _____

   e. _____    $ _____

   f. _____    $ _____

   g. [X] Information about additional filing and motion fees is contained in Attachment 1g.

   TOTAL 1. | $ | 11,828

2. **Jury fees**

   Date      Fee & mileage

   a. _____    $ _____

   b. _____    $ _____

   c. _____    $ _____

   d. _____    $ _____

   e. [ ] Information about additional jury fees is contained in Attachment 2e.

   TOTAL 2. | $ | 0

3. [ ] Juror food: $_____ and lodging: $_____    TOTAL 3. | $ | 0

4. [X] **Deposition costs**

| Name of deponent | Taking | Transcribing | Travel | Videotaping | Subtotals |
|---|---|---|---|---|---|
| a. Athala Aevallos | $_____ | $ 371 | $_____ | $_____ | $ 371 |
| b. S. Massingham | $_____ | $ 510 | $_____ | $_____ | $ 510 |
| c. T. Fritz | $_____ | $ 603 | $_____ | $_____ | $ 603 |
| d. _____ | $_____ | $_____ | $_____ | $_____ | $ 0 |

   e. [ ] Information about additional deposition costs is contained in Attachment 4e.

   TOTAL 4. | $ | 1,484

Form Approved for Optional Use
Judicial Council of California
MC-011 [Rev. September 1, 2017]
CEB® Essential
ceb.com Forms™

**MEMORANDUM OF COSTS (WORKSHEET)**

Code of Civil Procedure,
§§ 1032, 1033.5

CBA

MC-011

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Bernstein v. Meadow Brook Village HOA | HG18897381 |

**5. Service of process**

| | Name of person served | Public officer | Registered process | Publication | Other *(specify)* |
|---|---|---|---|---|---|
| a. | _____ | $ _____ | $ _____ | $ _____ | $ _____ |
| b. | _____ | $ _____ | $ _____ | $ _____ | $ _____ |
| c. | _____ | $ _____ | $ _____ | $ _____ | $ _____ |

d. ☐ Information about additional costs for service of process is contained in Attachment 5d.

TOTAL 5. | $ | 0

**6.** Attachment expenses *(specify)*:       6. | $

**7.** Surety bond premiums *(itemize bonds and amounts)*:       7. | $

**8. a. Ordinary witness fees**

| | Name of witness | Daily fee | | Mileage | | Total |
|---|---|---|---|---|---|---|
| (1) | _____ | ____ days at ____ $/day | ____ miles at ____ ¢/mile: | | | $    0 |
| (2) | _____ | ____ days at ____ $/day | ____ miles at ____ ¢/mile: | | | $    0 |
| (3) | _____ | ____ days at ____ $/day | ____ miles at ____ ¢/mile: | | | $    0 |
| (4) | _____ | ____ days at ____ $/day | ____ miles at ____ ¢/mile: | | | $    0 |
| (5) | _____ | ____ days at ____ $/day | ____ miles at ____ ¢/mile: | | | $    0 |

(6) ☐ Information about additional ordinary witness fees is contained in Attachment 8b(6).

SUBTOTAL 8a. | $ | 0

*(Continued on next page)*

MC-011 [Rev. September 1, 2017]

**MEMORANDUM OF COSTS (WORKSHEET)**    Page _____ of _____

CEB® | Essential Forms®
ceb.com

CBA

**MC-011**

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Bernstein v. Meadow Brook Village HOA | HG18897381 |

8. **b.** **Expert fees** *(per Code of Civil Procedure section 998)*

      Name of witness           Fee

    (1) _____ _____ hours at $ _____ /hr    $    0

    (2) _____ _____ hours at $ _____ /hr    $    0

    (3) _____ _____ hours at $ _____ /hr    $    0

    (4) _____ _____ hours at $ _____ /hr    $    0

    (5) ☐ Information about additional expert fees is contained in Attachment 8b(5).

                    SUBTOTAL 8b.    $    0

  **c.** **Court-ordered expert fees**

      Name of witness           Fee

    (1) _____ _____ hours at $ _____ /hr    $    0

    (2) _____ _____ hours at $ _____ /hr    $    0

    (3) ☐ Information about additional court-ordered expert fees is contained in Attachment 8c(3).

                    SUBTOTAL 8c.    $    0

              TOTAL (8a, 8b, & 8c)  8.    $    0

9. **Court-ordered transcripts** *(specify):*         9.    $

10. **Attorney fees** *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required):*    10.    $

11. **Models, enlargements, and photocopies of exhibits** *(specify):*    11.    $    685
    Bates Stamping of Exhibits

12. **Court reporter fees** *(as established by statute)*

    a. *(Name of reporter):* _____ Fees: $ _____

    b. *(Name of reporter):* _____ Fees: $ _____ TOTAL 12.    $    0

    c. ☐ Information about additional court-reporter fees is contained in Attachment 12c.

13. **Interpreter fees**

    a. Fees of a certified or registered interpreter for the deposition of a party or witness

      *(Name of interpreter):* _____ Fees: $ _____

      *(Name of interpreter):* _____ Fees: $ _____

    b. Fees for a qualified court interpreter authorized by the court for an indigent person represented by a qualified legal services project or a pro bono attorney

      *(Name of interpreter):* _____ Fees: $ _____

      *(Name of interpreter):* _____ Fees: $ _____ TOTAL 13.    $    0

    c. ☐ Information about additional court-reporter fees is contained in Attachment 13c.

14. **Fees for electronic filing or service of documents through an electronic filing service provider** (enter here if required or ordered by the court):    14.    $

15. **Fees for hosting electronic documents through an electronic filing service provider** (enter here if required or ordered by the court):    15.    $

16. **Other** *(specify):* Expert fees - See Attachment 16    16.    $    5,265

| **TOTAL COSTS** | $    19,262 |
|---|---|

*(Additional information may be supplied on the reverse)*

**MEMORANDUM OF COSTS (WORKSHEET)**     Page _____ of _____

CEB | Essential
ceb.com | Forms

CBA

Memorandum of Costs (Worksheet)
**Attachment 1g**

| Filing | Filing Fee | Pay To |
|---|---|---|
| Filing - Answer to Complaint; Notice of Asociation | $616.71 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Sub of atty | $30.00 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Motion to Quash | $541.75 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - notice to set aside default | $120.58 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - opp, dec | $84.72 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Supp dec to P's mnotion to compel | $75.00 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Disassoc of atty | $45.00 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Notice of entry of judgment | $47.70 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - D's opp to P's M leave to amend the complaint | $47.70 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Reply x2 | $37.33 | FIRST LEGAL NETWORK LLC |
| Filing - oppostion to Motion to Stay Case | $58.33 | FIRST LEGAL NETWORK LLC |
| Filing - Motion for Summary Judgement | $424.03 | FIRST LEGAL NETWORK LLC |
| Filing - Opp to Protective Order | $35.00 | FIRST LEGAL NETWORK LLC |
| Filing - Advance Fees | $1,476.98 | FIRST LEGAL NETWORK LLC |
| Filing - Motion to Strike | $125.82 | FIRST LEGAL NETWORK LLC |
| Filing - Advance fees | $666.99 | FIRST LEGAL NETWORK LLC |
| Filing - 10 Docs | $361.38 | FIRST LEGAL NETWORK LLC |
| Filing - Motion to Strike - Fees Advanced | $467.00 | FIRST LEGAL NETWORK LLC |
| Filing - Fees Advanced - MSA/DEC/PO/POS/MPA | $1,377.15 | FIRST LEGAL NETWORK LLC |
| Filing - Objection to Plaintiff's request | $32.95 | FIRST LEGAL NETWORK LLC |
| Filing - Dec of Lunanne Rutherford | $909.95 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $32.95 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $32.95 | FIRST LEGAL NETWORK LLC |
| Filing MSJ reply brief | $123.50 | FIRST LEGAL NETWORK LLC |
| Filing - electronic submission | $39.95 | FIRST LEGAL NETWORK LLC |
| Filing - Fees Advanced - Memorandum of Points and Authorities | $986.15 | FIRST LEGAL NETWORK LLC |
| Filing - Oppostion to Disqualify Judge | $63.14 | FIRST LEGAL NETWORK LLC |
| Filing - Demurrer with MTS | $6.75 | FIRST LEGAL NETWORK LLC |
| Filing - oppostion | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - Case management statement | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - MTS - Fees advanced | $540.65 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - Notice of Change of Firm Name | $23.20 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - Case management statement | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - Demurrer with MTS - Fees Advanced | $165.65 | FIRST LEGAL NETWORK LLC |
| Filing - Reply Briefs | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - MTS - Fees advanced | $542.65 | FIRST LEGAL NETWORK LLC |
| Filing - D's Reply Brief in Support | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - MTS - Fees advanced | $90.25 | FIRST LEGAL NETWORK LLC |

Memorandum of Costs (Worksheet)
**Attachment 1g**

| | | |
|---|---|---|
| Filing - Stip of the parties to Extend - Fees advanced | $901.95 | FIRST LEGAL NETWORK LLC |
| Filing - stip - order | $42.70 | FIRST LEGAL NETWORK LLC |
| Filing - Oppsition Dec | $110.75 | FIRST LEGAL NETWORK LLC |
| Filing - Amended CMC Statement | $90.25 | FIRST LEGAL NETWORK LLC |
| Filing - D's Opposition to P | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - CM Statement | $61.90 | FIRST LEGAL NETWORK LLC |
| Filing - Dec of Andrew S. Elliott | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - Opp; Dec | $28.80 | FIRST LEGAL NETWORK LLC |

**TOTAL:**                              **$11,828.21**

Memorandum of Costs (Worksheet)
**Attachment 16**

| Expert | Expert Fee |
|---|---|
| R. Blackseth Interests, Inc. | $627.00 |
| H2 Engineers, Inc. | $4,637.50 |
| **TOTAL:** | **$5,264.50** |

CERTIFICATE OF SERVICE VIA E-MAIL

1

2      I hereby declare that I am a citizen of the United States, am over the age of eighteen years,

3  and not a party to the within action.

4      My electronic notification address is:  deborah.sanchez@mcnamaralaw.com.

5      On this date, I electronically served the foregoing

6  **DEFENDANTS ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE**
7  **ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES'S MEMORANDUM**
   **OF COSTS (SUMMARY) AND MEMORANDUM OF COSTS (WORKSHEET)**
8

9      based on a court order or an agreement of the parties to accept service by e-mail or
10

11 electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses

listed below. I did not receive, within a reasonable time after the transmission, any electronic
12
   message or other indication that the transmission was unsuccessful.
13

14 Plaintiff in Pro Per:

15 Ms. Mary Bernstein                          Richard Fong, Jr.
   3416 Deerwood Terrace, #113                 Fong & Pong APC
16 Fremont, CA 94536                           2161 Harbor Bay Parkway
                                               Alameda, CA 94502
17 Phone: 510-938-6280
   E-mail: mhelenbernstein@yahoo.com           Phone: 510-748-6800
18 E-mail: mbernsteinpurple@hotmail.com        Email: rfong@fonglaw.com

19

20     I declare under penalty of perjury under the laws of the State of California that the foregoing

21 is true and correct and that this declaration was executed on August 14, 2023 at Pleasant Hill,

22 California.

23

24                                             Deborah Sanchez

25

26

27

28

McNAMARA, AMBACHER WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

PROOF OF SERVICE

Exhibit D

14 The wicked draw the sword
    and bend the bow
to bring down the poor and needy,
    to slay those whose ways are upright.
15 But their swords will pierce their
own hearts,
    and their bows will be broken
16 Better the little that the righteous
have
    than the wealth of many wicked;
17 for the power of the wicked will be
broken,
    but the Lord upholds the righteous.

# Superior Court of California

## Statewide Civil Fee Schedule[1]
**Effective January 1, 2024**

|  |  | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **INITIAL FILING FEES IN CIVIL CASES** | | |

| | **Unlimited Civil Cases** | | |
|---|---|---|---|
| 1 | Complaint or other first paper in unlimited civil case (amount over $35,000), including: | GC 70611, 70602.5, 70602.6 | $ 435* |
| 2 | Complaint or other first paper in unlawful detainer case over $35,000 | | |
| 3 | Petition for a writ of review, mandate, or prohibition (other than a writ petition to the appellate division) | | |
| 4 | Petition for a decree of change of name or gender | | |
| 5 | Answer or other first paper filed by each party other than plaintiff (amount over $35,000) (including unlawful detainer) | GC 70612, 70602.5, 70602.6 | $ 435* |
| 6 | Claim opposing forfeiture of seized property, if value of property is $5,000 or less[2] | H&S 11488.5(a)(3) | No fee |

| | **Limited Civil Cases** | | |
|---|---|---|---|
| 7 | Complaint or other first paper (amount over $10,000 up to $35,000) | GC 70613(a), 70602.5 | $ 370* |
| 8 | Complaint or other first paper in unlawful detainer (amount over $10,000 up to $35,000) | GC 70613(a), 70602.5, CCP 1161.2 | $ 385* |
| 9 | Answer or other first paper filed by each party other than plaintiff (amount over $10,000 up to $35,000) (including unlawful detainer) | GC 70614(a), 70602.5 | $ 370* |
| 10 | Complaint or other first paper (amount up to $10,000) | GC 70613(b), 70602.5 | $ 225* |
| 11 | Complaint or other first paper in unlawful detainer (amount up to $10,000) | GC 70613(b), 70602.5, CCP 1161.2 | $ 240* |
| 12 | Answer or other first paper filed by each party other than plaintiff (amounts up to $10,000) (including unlawful detainer) | GC 70614(b), 70602.5 | $ 225* |

[1] Fees pursuant to the Uniform Civil Fees and Standard Fee Schedule Act of 2005 (Stats. 2005, ch. 75 (AB 145)), AB 1248 (Stats. 2007, ch. 738), SB 1407 (Stats. 2008, ch. 311), 2009 Budget Act (Stats. 2009, ch. 22, SBX4 13), SB 857 (Stats. 2010, ch. 720), SB 1021 (Stats. 2012, ch. 41), AB 2612 (Stats. 2012, ch. 377), SB 75 (Stats. 2013, ch. 31), AB 1293 (Stats. 2013, ch. 382), AB 330 (Stats. 2019, ch. 217) and other legislation.

[2] If the value of the property is more than $5,000, the filing fee is the fee in GC 70611, 70602.5, 70602.6.

* Fees marked with an asterisk will vary in the counties of Riverside, San Bernardino, and San Francisco because of a local surcharge for courthouse construction. The fees in those counties are shown in the appendix.

|   |   | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **Limited Civil Cases** | | |
| 13 | Amendment of complaint or of other first paper increasing amount at issue from $10,000 or less to more than $10,000 (but not exceeding $25,000) | GC 70613.5(a) | $ 145* |
| 14 | Cross-complaint or amendment of cross-complaint increasing amount at issue from $10,000 or less to more than $10,000 (but not exceeding $25,000) | GC 70613.5(b) | $ 145* |
| 15 | Amended complaint, cross-complaint, or amended cross-complaint that reclassifies case from limited civil to unlimited civil (CCP 403.060) | GC 70619 | $ 140 |
| 16 | Complaint or other first paper within small claims jurisdictional limit filed by assignee of record (with declaration) | B&P 6322.1(c)(1), GC 70613(b), CCP 116.420 | $ 181* |
| 17 | Answer or other first paper filed by each party other than plaintiff (case filed by assignee within small claims jurisdictional limit, with declaration) | B&P 6322.1(c)(1), GC 70614(b), CCP 116.420 | $ 181* |
| 18 | Amendment of complaint or of other first paper filed by assignee of record increasing amount at issue from within small claims limit to more than $10,000 (but not exceeding $25,000) | GC 70613.5(a) | $ 189* |
| 19 | Cross-complaint or amendment of cross-complaint in case filed by assignee with declaration, increasing amount at issue from within small claims limit to more than $10,000 (but not exceeding $25,000) | GC 70613.5(b) | $ 189* |

|   |   | | |
|---|---|---|---|
| | **Other Initial Filing Fees (both Limited and Unlimited Civil Cases)** | | |
| 20 | Additional fee for case designated as complex (one fee for all plaintiffs) | GC 70616(a) | $ 1,000 |
| 21 | Additional fee for case designated as complex (for each defendant, up to $18,000 total for case) | GC 70616(b) | $ 1,000 |
| 22 | Supplemental fee for filing of a complaint by a "high-frequency litigant," as defined in CCP § 425.55(b), in a construction-related accessibility case[3] | GC 70616.5 | $ 1,000 |
| 23 | Complaint, response, or other first paper filed on behalf of public entity (but fee is recoverable with judgment under GC 6103.5) | GC 6103 | No fee |
| 24 | Amended complaint or amended cross-complaint (other than one that changes amount at issue to reclassify case or require fee difference paid in limited civil case under GC 70613.5) | CCP 472 | No fee |
| 25 | Action to compel registration of voters | Elec. 2142 | No fee |
| 26 | Request for order to require counting of provisional ballots | Elec. 14310 | No fee |
| 27 | Petition for forfeiture where claim has been filed with district attorney for impounded vehicle | VC 14607.6(e)(4) | $ 100 |
| 28 | Abstract of judgment rendered from another court (unless filed with an application for order of sale of a dwelling under CCP | GC 70626(b)(2) | $ 45 |

---

[3] Caption must identify the action as subject to the supplemental fee.

| | | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **Other Initial Filing Fees (both Limited and Unlimited Civil Cases)** | | |
| | 704.750 or with an application for order of examination under CCP 708.160) | | |
| 29 | Issuing commission to take deposition out of state under CCP 2026.010 | GC 70626(b)(5) | $ 45 |
| 30 | Filing and entering award under Workers' Compensation Act | GC 70626(b)(6) | $ 45 |

| | | | |
|---|---|---|---|
| | **Discovery in Out-of-State Case** | | |
| 31 | Application for subpoena for discovery in out-of-state case (CCP 2029.300) | GC 70626(b)(5) | $45 |
| 32 | First petition by party for relief in discovery dispute related to out-of-state case (CCP 2029.610(a), CCP 2029.620(c)(1)) | GC 70611, 70602.5, 70602.6 | $ 435* |
| 33 | First petition by non-party for relief in discovery dispute related to out-of-state case (CCP 2029.610(a), CCP 2029.620(c)(2)) | GC 70626(c) | $ 80 |
| 34 | Subsequent petition by party for relief in discovery dispute related to out-of-state case (where first appearance fee was previously paid) (CCP 2029.620(c)(1)) | GC 70617(a) | $ 60 |
| 35 | Subsequent petition by non-party for relief in discovery dispute related to out-of-state case (where fee under GC 70626(c) was previously paid) (CCP 2029.620(c)(2)) | GC 70617(a) | $ 60 |
| 36 | Response by party to petition for relief in discovery dispute related to out-of-state case (where first appearance fee was not previously paid) (CCP 2029.610(c)) | GC 70612, 70602.5, 70602.6 | $ 435* |
| 37 | Response by party to petition for relief in discovery dispute related to out-of-state case (where first appearance fee was previously paid) | CCP 2029.620(d) | No fee |
| 38 | Response by non-party to petition for relief in discovery dispute related to out-of-state case | CCP 2029.610(c), CCP 2029.620(d) | No fee |

| | | | |
|---|---|---|---|
| | **Requests for Protective Orders** | | |
| 39 | Petition to prevent domestic violence and response | FC 6222, GC 70617(b)(7) | No fee |
| 40 | Petition to prevent abuse of an elder or dependent adult and response | W&I 15657.03(q), GC 70617(b)(10) | No fee |
| 41 | Petition to prevent civil harassment (involving violence, threats of violence, or stalking) and response | CCP 527.6(w)–(x) | No fee |
| 42 | Petition to prevent civil harassment (other) and response | GC 70611, 70612, 70602.5, 70602.6 | $ 435* |
| 43 | Petition to prevent workplace violence (involving violence, threats of violence, or stalking) and response | CCP 527.8(v)–(w) | No fee |
| 44 | Petition to prevent workplace violence (other) and response | GC 70611, 70612, 70602.5, 70602.6 | $ 435* |

|  |  | Code<br>Section(s) | Total<br>Fee Due |
|---|---|---|---|

| | **CIVIL MOTION AND OTHER FILING FEES** | | |
|---|---|---|---|
| 45 | Motion or other paper requiring a hearing (unless it is the party's first paper and the first paper filing fee is paid), including the following: | GC 70617(a) | $ 60 |
| 46 | Motion listed under CCP 1005(a)(1)–(12) | | |
| 47 | Motion or application to continue a trial date | | |
| 48 | Discovery motion under CCP 2016.010 et seq. | | |
| 49 | Motion for new trial | | |
| 50 | Ex parte application requiring a party to give notice of the ex parte appearance to other parties | | |
| 51 | Motion for summary judgment or for summary adjudication | GC 70617(d) | $ 500 |
| 52 | Application to appear as counsel pro hac vice | GC 70617(e)(1) | $ 500 |
| 53 | Renewal fee for application to appear as counsel pro hac vice for each year a case continues | GC 70617(e)(2) | $500 |
| 54 | Reclassification of limited jurisdiction case to unlimited jurisdiction (CCP 403.060) | GC 70619 | $ 140 |
| 55 | Processing change of venue[4] (payable to superior court from which the transfer was requested) (a separate check with the initial filing fee for the court to which the case will be transferred is also required) | GC 70618 | $ 50 |
| 56 | Request, application, or motion for, or notice of, continuance of hearing or case management conference | GC 70617(c)(1) | $ 20 |
| 57 | Stipulation and order (unless it is the party's first paper and the first paper filing fee is paid) | GC 70617(c)(2) | $ 20 |
| 58 | Request for order authorizing service of summons by posting (CCP 415.45) or by publication (CCP 415.50) | GC 70617(c)(3) | $ 20 |
| 59 | Amended notice of motion | GC 70617(b)(2) | No fee |
| 60 | Civil case management statement | GC 70617(b)(3) | No fee |
| 61 | Request for trial de novo after judicial arbitration | GC 70617(b)(4) | No fee |
| 62 | Stipulation that does not require an order | GC 70617(b)(5) | No fee |
| 63 | A request for entry of default or default judgment | GC 70617(b)(8) | No fee |

| | **CIVIL JURY AND TRIAL RELATED FEES** | | |
|---|---|---|---|
| 64 | Advance jury fee (nonrefundable) | CCP 631(b) | $ 150 |

---

[4] This is a processing fee "for making up and transmitting the transcript and papers" when venue in a case is changed. The motion fee under GC 70617 is charged separately for a motion for change of venue.

|  |  | Code Section(s) | Total Fee Due |
|---|---|---|---|

| CIVIL JURY AND TRIAL RELATED FEES | | | |
|---|---|---|---|
| 65 | Daily jury deposits (amount set by court) | CCP 631(e) | Amount set by court |
| 66 | Court reporting services in civil proceedings lasting one hour or less | GC 68086(a)(1)(A) | $ 30 |
| 67 | Court reporter per diem fees for civil proceedings lasting more than one hour (amount set by court) | GC 68086(a)(1)(B) | Amount set by court |
| 68 | Extra court reporter (amount set by court) | GC 69953.5 | Amount set by court |

| JUDGMENT RELATED FEES | | | |
|---|---|---|---|
| 69 | Renewal of judgment (CCP 683.150) | GC 70626(b)(4) | $ 45 |
| 70 | Notice of settlement (CRC 3.1385) | | No fee |
| 71 | Certified copy of order to DMV when court orders judgment paid in installments | VC 16379 | Amount set by court |

| POST JUDGMENT RELATED FEES | | | |
|---|---|---|---|
| 72 | Issuing writ of attachment, writ of mandate, writ of execution, writ of sale, writ of possession, writ of prohibition, writ of restitution, or any other writ for enforcement of an order or judgment | GC 70626(a)(1) | $ 40 |
| 73 | Issuing abstract of judgment | GC 70626(a)(2) | $ 40 |
| 74 | Issuing an order of sale | GC 70626(b)(1) | $ 45 |
| 75 | Application for order of sale of a dwelling (CCP 704.750) | GC 70617(a)(7) | $ 60 |
| 76 | Application for examination of third person controlling defendant's property (CCP 491.110, 491.150) | GC 70617(a)(3) | $ 60 |
| 77 | Application for order for judgment debtor examination (CCP 708.110, 708.160).  No separate fee is charged for filing the abstract of judgment with the application. | GC 70617(a)(6) | $ 60 |
| 78 | Certificate of satisfaction of judgment (CCP 724.100) | GC 70626(a)(3) | $ 40 |
| 79 | Notice to DMV of judgment debtor's default in making installment payments | VC 16381 | Amount set by court |

| SMALL CLAIMS FEES | | | |
|---|---|---|---|
| 80 | Filing claim for $1,500 or less | CCP 116.230(b)(1) | $ 30 |
| 81 | Filing claim for more than $1,500 but less than or equal to $5,000 | CCP 116.230(b)(2) | $ 50 |
| 82 | Filing claim for more than $5,000 but less than or equal to $12,500 (claim by natural persons only, with certain exceptions) | CCP 116.230(b)(3), CCP 116.221 | $ 75 |
| 83 | Filing claim by person who has filed more than 12 small claims in California within the previous 12 months | CCP 116.230(c) | $ 100 |

|  |  | Code Section(s) | Total Fee Due |
|---|---|---|---|
| **SMALL CLAIMS FEES** | | | |
| 84 | Amendment raising amount of claim from $1,500 or less to more than $1,500 but not exceeding $5,000 | CCP 116.230(d)(1) | $ 20 |
| 85 | Amendment raising amount of claim from more than $1,500 but not exceeding $5,000 to more than $5,000 but not exceeding $12,500 (claim by natural persons only, with certain exceptions) | CCP 116.230(d)(2), CCP 116.221 | $ 25 |
| 86 | Amendment raising amount of claim from $1,500 or less to more than $5,000 but not exceeding $12,500 (claim by natural persons only, with certain exceptions) | CCP 116.230(d)(3), CCP 116.221 | $ 45 |
| 87 | Service of copy of a claim under CCP § 116.340, for each defendant to whom the clerk mails a copy of the claim | CCP 116.232 | $ 15 |
| 88 | Transfer of case out of small claims court (defendant's claim exceeding jurisdictional limit) (no receiving court filing or transfer fee) | CCP 116.390 | No fee |
| 89 | Request for postponement of hearing, if defendant has been served | CCP 116.570 | $ 10 |
| 90 | Notice of appeal of small claims case | CCP 116.760 | $ 75 |
| 91 | Motion to vacate | CCP 116.745 | $ 20 |
| 92 | Fee for payment of judgment to court | CCP 116.860 | $ 20 |
| 93 | Application for order of examination of judgment debtor | GC 70617(a)(6), CCP 116.820 | $ 60 |
| 94 | Writ of execution | GC 70626(a)(1), CCP 116.820 | $ 40 |
| 95 | Abstract of judgment | GC 70626(a)(2), CCP 116.820 | $ 40 |

| **FAMILY LAW FEES** | | | |
|---|---|---|---|
| 96 | Petition or other first paper (including a joint petition) for dissolution of marriage or domestic partnership, legal separation, or nullity | GC 70670(b), 70602.5, 70602.6 | $ 435* |
| 97 | Response or other first paper filed in response to petition for dissolution of marriage or domestic partnership, legal separation, or nullity | GC 70670(d), 70602.5, 70602.6 | $ 435* |
| 98 | First paper in family law matter other than dissolution of marriage or domestic partnership, legal separation, or nullity | GC 70670(a), 70602.5, 70602.6 | $ 435* |
| 99 | First paper filed in response in family law matter other than dissolution of marriage or domestic partnership, legal separation, or nullity | GC 70670(c), 70602.5, 70602.6 | $ 435* |
| 100 | A settlement agreement or stipulation for judgment that is signed by a defaulted respondent and included in a judgment of dissolution of marriage or domestic partnership; or a stipulation to modify such an agreement if the stipulation is presented by the petitioner.  (Defaulted respondent is not charged a first paper fee under GC 70670.  GC 70671(b), (e).) | GC 70677(c) | No fee |

| | | Code Sections(s) | Total Fee Due |
|---|---|---|---|
| | **FAMILY LAW FEES** | | |
| 101 | Appearance, stipulation, and waiver of rights in dissolution of marriage or domestic partnership, legal separation or nullity or to establish parentage, when respondent is a member of the armed forces | GC 70673 | No fee |
| 102 | Petition for adoption (for each person to be adopted)[5] | H&S 103730 | $ 20 |
| 103 | Filings in a proceeding to declare a minor free from parental custody and control | FC 7806, 7841 | No fee |
| 104 | Domestic violence restraining orders, including a request to obtain, modify, or enforce an order to prevent domestic violence or response to that request; and any request that is necessary to obtain or give effect to a restraining order | GC 70671(f), GC 70677(b)(5), FC 6222 | No fee |
| 105 | Motion or order to show cause in family law matter (unless it is the party's first paper and the first paper filing fee is paid) | GC 70677(a) | $ 60 |
| 106 | Additional charge on motion or order to show cause to modify or enforce custody or visitation | GC 70678 | $ 25 |
| 107 | Stipulation and order not requiring a hearing; request or stipulation for continuance of hearing or case management conference not requiring a hearing | GC 70677(c) | $ 20 |
| 108 | Stipulation that does not require an order | GC 70677(b)(7) | No fee |
| 109 | A stipulation regarding the date of termination of marital or domestic partnership status if the court has retained jurisdiction over that date | GC 70671(c) | No fee |
| 110 | First paper or any subsequent paper filed by the Department of Child Support Services to establish parentage or to establish, modify, or collect support | GC 6103.9, 70672 | No fee |
| 111 | Response or subsequent paper filed in an action brought by the Department of Child Support Services to establish parentage or to establish, modify, or collect support if support is the only issue.  If a custody issue is raised, see charge for first paper filed in response to other family law matters. | GC 70672 | No fee |
| 112 | Filings on issues relating to parentage or support in a pre-existing non-governmental case in which a Title IV-D child support agency has intervened and is providing services under FC 17400 | GC 70672 | No fee |
| 113 | Statement to register a foreign support order or other first paper in a UIFSA case | GC 70677, FC 4927 | No fee |
| 114 | A document relating to a stipulated postjudgment modification of child support | GC 70671(d) | No fee |
| 115 | Costs for stepparent adoption, including investigation (amount set by court, up to $700) (FC 9001, 9002) | FC 9002 | Amount set by court |
| 116 | Child custody evaluation (amount set by court) | FC 3112 | Amount set by court |

---

[5] The fee is waived for agency adoptions when a statement from the agency is filed with the petition.

|  |  | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **FAMILY LAW FEES** | | |
| 117 | Court-appointed counsel for child (amount set by court) (FC 3150 et seq.) | FC 3153 | Amount set by court |
| 118 | Premarital counseling for minors | FC 304 | Amount set by court |
| 119 | Cost for investigation re: petition to declare child free from parental custody and control | FC 7851.5 | Amount set by court |
| 120 | Application fee for recognition of tribal court order for distribution of restricted assets upon dissolution | CCP 1733.1(a) | $100 |

| | **PROBATE FEES** | | |
|---|---|---|---|
| 121 | First-filed petition for letters of administration or letters testamentary, first-filed petition for special letters of administration with powers of general representative under Prob.C 8545 | GC 70650(a), 70602.5, 70602.6 | $ 435* |
| 122 | First objection to probate of will or codicil (Prob.C 8250); first petition for revocation of probate of will or codicil (Prob.C 8270) (if filed together with petition for appointment of personal representative under GC 70650(c), only the fee under GC 70650(c) is charged) | GC 70650(b), 70602.5, 70602.6 | $ 435* |
| 123 | Later-filed petition for letters of administration, letters testamentary, or special letters of administration with powers of general representative by a person other than the original petitioner | GC 70650(c), 70602.5, 70602.6 | $ 435* |
| 124 | First or subsequent petition for special letters of administration without powers of general personal representative | GC 70657.5(a)(3) | $ 200 |
| 125 | Opposition to a petition for appointment of a personal representative in a decedent's estate, other than a competing petition for appointment or a will contest, and objection or other opposition to first account of testamentary trustee subject to court supervision | GC 70651, 70602.5, 70602.6 | $ 435* |
| 126 | Petition (or opposition to petition) concerning the internal affairs of a trust under Prob.C 17200 et seq., or first account of trustee of testamentary trust subject to continuing court jurisdiction under Prob.C 17300 et seq. | GC 70652, 70602.5, 70602.6 | $ 435* |
| 127 | Petition (or opposition to petition) concerning the internal affairs of a trust created by court order under Prob.C 2580, 3100, or 3600 (trusts not subject to the $435 fee under GC 70652) | GC 70657.5(a)(1), 70652(d) | $ 200 |
| 128 | Petition for appointment of conservator, guardian of the estate or guardian of the person and estate or opposition to these petitions other than competing petition for appointment | GC 70653(a), (b), 70602.5, 70602.6 | $ 435* |
| 129 | Opposition to petition for appointment of conservator, guardian of the estate or guardian of the person and estate filed by or on behalf of the proposed conservatee or proposed ward or a parent of the proposed ward | GC 70653(f) | No fee |

| | | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **PROBATE FEES** | | |
| 130 | Petition for appointment of guardian of the person only or opposition to petition other than competing petition for appointment | GC 70654(a), (b), 70602.5 | $ 225 |
| 131 | Opposition to petition by the proposed ward or the parent of the proposed ward | GC 70654(e) | No fee |
| 132 | Petition or opposition filed after issuance of letters of guardianship or temporary guardianship, in guardianship of the person only | GC 70657(e) | No fee |
| 133 | First or subsequent petition for temporary letters of conservatorship or guardianship | GC 70657(a)(4) | $ 60 |
| 134 | Petition commencing other proceedings under the Probate Code and objections or other opposition to such petitions, including the following: | GC 70655, 70602.5, 70602.6 | $ 435* |
| 135 | Petition to determine the fact of death to determine title to real property and objections or other opposition (Prob.C 200) | GC 70655(c)(4), 70602.5, 70602.6 | $ 435* |
| 136 | Petition for an order concerning a particular transaction and objections or other opposition (Prob.C 3100) | GC 70655(c)(5), 70602.5, 70602.6 | $ 435* |
| 137 | Petition for an order concerning capacity determination and health care decision authority for adult without conservator and objections or other opposition (Prob.C 3200) | GC 70655(c)(6), 70602.5, 70602.6 | $ 435* |
| 138 | Petition for compromise of the claim of a minor or disabled adult, no civil action pending, and objections or other opposition (Prob.C 3600) | GC 70655(c)(1), 70602.5, 70602.6 | $ 435* |
| 139 | Petition concerning a power of attorney and objections or other opposition (Prob.C 4541) | GC 70655(c)(8), 70602.5, 70602.6 | $ 435* |
| 140 | Petition concerning advance health care directive and objections or other opposition (Prob.C 4766) | GC 70655(c)(7), 70602.5, 70602.6 | $ 435* |
| 141 | Petition to determine succession to real property and objections or other opposition (Prob.C 13151) | GC 70655(c)(2), 70602.5, 70602.6 | $ 435* |
| 142 | Spousal or domestic partnership property petition and objections or other opposition (Prob.C 13650)[6] | GC 70655(c)(3), 70602.5, 70602.6 | $ 435* |
| 143 | Petition for approval, compromise, or settlement of claims against deceased settlor, or for allocation of amounts due between trusts, or objections or other opposition (Prob.C 19020) | GC 70655(c)(9), 70602.5, 70602.6 | $ 435* |
| 144 | Any other petition that commences a proceeding under the Probate Code and objections or other opposition | GC 70655(c)(10), 70602.5, 70602.6 | $ 435* |
| 145 | Petition for order setting aside estate of small value if no estate is pending for the decedent (Prob.C 6602) | GC 70656(a), 70602.5 | $ 225 |
| 146 | Opposition to petition for order setting aside estate of small value (Prob.C 6602) | GC 70656(b), 70602.5 | $ 225 |

---

[6] No additional fee is collected if the petition is filed in a pending proceeding (Prob.C 13652).

| | | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **PROBATE FEES** | | |
| 147 | Petition (or opposition to petition) for an order listed below, filed after issuance of letters testamentary, letters of administration, or letters of special administration to a personal representative of a decedent's estate; letters of guardianship or temporary guardianship to a guardian of the estate or person and estate; or letters of conservatorship or temporary conservatorship to a conservator | GC 70658(a), 70602.5, 70602.6 | $ 435 |
| | • Petition for order concerning sale, lease, encumbrance, grant of an option, purchase, conveyance, or exchange of property | GC 70658(a)(1), 70602.5, 70602.6 | |
| | • Petition for order settling an account of a fiduciary | GC 70658(a)(2), 70602.5, 70602.6 | |
| | • Petition for order authorizing, instructing, or directing a fiduciary, or approving or confirming acts of a fiduciary | GC 70658(a)(3), 70602.5, 70602.6 | |
| | • Petition for order concerning payment of compensation or expenses of an attorney | GC 70658(a)(4), 70602.5, 70602.6 | |
| | • Petition for order concerning payment of compensation or expenses of a fiduciary | GC 70658(a)(5), 70602.5, 70602.6 | |
| | • Petition for order surcharging or removing a fiduciary | GC 70658(a)(6), 70602.5, 70602.6 | |
| | • Petition for order transferring or authorizing transfer of property of an estate to a fiduciary in another jurisdiction | GC 70658(a)(7), 70602.5, 70602.6 | |
| | • Petition for order allowing a fiduciary's request to resign | GC 70658(a)(8), 70602.5, 70602.6 | |
| | • Petition for order adjudicating a claim to property under Prob.C 850 et seq. | GC 70658(a)(9), 70602.5, 70602.6 | |
| | • Petition for order granting permission to fix the residence of a ward or conservatee outside of California | GC 70658(a)(10), 70602.5, 70602.6 | |
| | • Petition for order concerning payments for support, maintenance, or education of a ward or conservatee or a of person entitled to support, maintenance, or education from a ward or conservatee | GC 70658(a)(11), 70602.5, 70602.6 | |
| | • Petition for order concerning payment of surplus income to relatives of a conservatee (Prob.C 2423) or concerning substituted judgment (Prob.C 2580) | GC 70658(a)(12), 70602.5, 70602.6 | |
| | • Petition for order affecting legal capacity of a conservatee under Prob.C 1870 et seq. | GC 70658(a)(13), 70602.5, 70602.6 | |
| | • Petition for order adjudicating merits of a claim under Prob.C 2500 et seq. | GC 70658(a)(14), 70602.5, 70602.6 | |
| 148 | Petition (or opposition to petition) filed after the issuance of temporary letters of guardianship or conservatorship or letters of guardianship or conservatorship not subject to the $435 fee in GC 70658(a) and not exempt under GC 70657(e) | GC 70657(a)(3) | $ 60 |
| 149 | Petition (or opposition to petition) filed after the issuance of letters of guardianship or temporary letters of guardianship in a guardianship of the person only | GC 70657(e), 70658(c)(1) | No fee |

|  |  | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **PROBATE FEES** | | |
| 150 | Disclaimer of interest in a decedent's estate | GC 70657.5(c), 70658(c)(2) | No fee |
| 151 | Petition (or opposition to petition) after issuance of special letters of administration or letters testamentary or of administration in decedents' estates that are not subject to the $435 fee in GC 70658(a) | GC 70657.5(a)(2) | $ 200 |
| 152 | Motion, application or other paper requiring a hearing after the first paper, including motion or other paper listed in GC 70617(a)<br><br>(motions listed in CCP 1005(a)(1)–(12), motion to continue a trial date, discovery motions, motion for new trial) | GC 70657(a)(1), 70617(a) | $ 60 |
| 153 | Application for ex parte relief other than ex parte petition for discharge. | GC 70657(a)(2) | $ 60 |
| 154 | Ex parte petition for discharge of personal representative, conservator, or guardian upon completion of court-ordered distribution or transfer | GC 70657(a)(2) | No fee |
| 155 | Motion or other paper listed in GC 70617(b) (list of 13 items), including: | GC 70657(b) | No fee |
| | • Amended notice of motion | GC 70657(b), 70617(b)(2) | |
| | • Civil case management statement | GC 70657(b), 70617(b)(3) | |
| | • Request for trial de novo after judicial arbitration | GC 70657(b), 70617(b)(4) | |
| | • Stipulation that does not require an order | GC 70657(b), 70617(b)(5) | |
| | • A request for entry of default or default judgment | GC 70657(b), 70617(b)(8) | |
| | • Paper requiring a hearing on a petition to approve the compromise of a claim of a minor or person with a disability under Prob.C 3600. | GC 70657(b), 70617(b)(13) | |
| 156 | Petition to withdraw funds from blocked account | GC 70657(a) | $ 60 |
| 157 | Motion for summary judgment | GC 70657(c), 70617(d) | $ 500 |
| 158 | Deposit of estate planning documents | GC 70660 | $ 20 |
| 159 | Search for estate documents, for each search longer than 10 minutes | GC 70661 | $ 15 |
| 160 | Petition to establish record of birth, death, or marriage | H&S 103470, GC 70602.5 | $ 225 |
| 161 | Affidavit procedure for real property of small value under Prob.C 13201 | GC 70626(b)(9) | $ 45 |
| 162 | Guardianship investigations (amount set by court) | Prob.C 1513.1 | Amount set by court |

Page 11

|  |  | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **PROBATE FEES** | | |
| 163 | Information package for conservators | Prob.C 1835 | $ 20 |
| 164 | Conservatorship investigator's fee (amount set by court) | Prob.C 1851.5 | Amount set by court |
| 165 | Petition for summary probate (Public Administrator only) | Prob.C 7660 | $ 205 |
| 166 | Delivery of will to the court in which the estate may be administered (Prob.C 8200) | GC 70626(d) | $ 50 |
| 167 | Request for special notice in decedent's estate, guardianship, conservatorship, and trust proceedings (Prob.C 1250, 2700, 17204) | GC 70662 | $ 40 |
| 168 | Registering a conservatorship established outside of California (effective January 1, 2016) | GC 70663 | $ 30 |

### APPEAL AND WRIT RELATED FEES

| | **Appeal of Unlimited Civil Case** | | |
|---|---|---|---|
| 169 | Certificate for Court of Appeal or Supreme Court on motion prior to filing appeal record | GC 70620 | $ 20 |
| 170 | Appeal or cross appeal to court of appeal (payable to court of appeal) | GC 68926, 68926.1(b) | $ 775 |
| 171 | Deposit for preparation of clerk's transcript (payable to superior court) (charged when notice of appeal to court of appeal is filed under GC 68926) | GC 68926.1 | $ 100 |

| | **Other Appeals** | | |
|---|---|---|---|
| 172 | Appeal in limited civil case (to appellate division), where amount demanded in case does not exceed $10,000 | GC 70621(b), 70602.5 | $ 225 |
| 173 | Appeal in limited civil case (to appellate division), where amount demanded in case exceeds $10,000 (but does not exceed $35,000) | GC 70621(a), 70602.5 | $ 370 |
| 174 | Appeal in small claims case | CCP 116.760 | $ 75 |
| 175 | Writ petition to appellate division, where amount demanded in limited civil case does not exceed $10,000 | GC 70621(b), 70602.5 | $ 225 |
| 176 | Writ petition to appellate division, where amount demanded in limited civil case exceeds $10,000 (but does not exceed $35,000) | GC 70621(a), 70602.5 | $ 370 |
| 177 | Appeal from Labor Commissioner's Award (Lab.C 98.2) | GC 70611, 70602.5, 70602.6 | $ 435* |
| 178 | Appeal of final decision on parking citation violation (VC 40230) | GC 70615(b) | $ 25 |
| 179 | Appeal from determination of dangerous or vicious dog (F&A 31622) | GC 70626(b)(8) | $ 45 |
| 180 | Appeal of administrative fine or penalty (GC 53069.4(b)(2)) | GC 70615(a) | $ 25 |

| | | Code Section(s) | Total Fee Due |
|---|---|---|---|
| 181 | Appeal of administrative penalty for fare evasion or passenger conduct violation (PUC 99582) | GC 70615(c) | $ 25 |

| RECORDS RELATED FEES | | | |
|---|---|---|---|
| 182 | Certifying a copy of paper, record, or proceeding on file | GC 70626(a)(4) | $ 40 |
| 183 | Certificate for which fee is not otherwise fixed; includes lis pendens | GC 70626(a)(8) | $ 40 |
| 184 | Preparing a copy of any record, proceeding or paper on file (per page) | GC 70627(a) | $ 0.50 |
| 185 | Comparison of a copy with an original on file (per page) | GC 70627(b) | $ 1 |
| 186 | Searching records or files, for each search longer than 10 minutes | GC 70627(c) | $ 15 |
| 187 | Exemplification of record or other paper on file | GC 70628 | $ 50 |
| 188 | Document authenticated pursuant to court order (per signature) | GC 70629 | $ 15 |
| 189 | Certified copy of marriage or domestic partnership dissolution record (requested by public agency) | GC 70674 | $ 10 |
| 190 | Certified copy of marriage or domestic partnership dissolution record (requested by any other applicant) | GC 70674 | $ 15 |

| RETURNED CHECKS AND INSUFFICIENT PAYMENTS | | | |
|---|---|---|---|
| 191 | Administrative charge for a check that is returned without payment. A filing paid with such a check will be void if not paid, within 20 days of notification, in cash, by certified check, or by other means specified by the court, but not by traveler's check or personal check. | CCP 411.20(g), GC 71386 | Amount set by court |
| 192 | Administrative charge for processing a partial payment. A first paper filing submitted with a check for an insufficient amount will be void if the amount due is not paid within 20 days of notification. | CCP 411.21(g) | Amount set by court |

| MISCELLANEOUS FEES | | | |
|---|---|---|---|
| 193 | Administrative charge for collection of fees where fee waiver was previously granted | GC 68638(a) (3) | $ 25 |
| 194 | Administrative charge for recovering, as part of judgment, fees not paid by public entity under GC 6103 | GC 6103.5(d) | Amount set by court |
| 195 | Taking affidavit, except in criminal case or adoption proceedings | GC 70626(a)(5) | $ 40 |
| 196 | Acknowledgment of deed or other instrument | GC 70626(a)(6) | $ 40 |
| 197 | Recording or registering license or issuing certificate in connection with a license, required by law, for which charge is not otherwise prescribed | GC 70626(a)(7) | $ 40 |
| 198 | Filing affidavit of publication of notice of dissolution of partnership | GC 70626(b)(7) | $ 45 |

| | | Code Section(s) | Total Fee Due |
|---|---|---|---|
| | **MISCELLANEOUS FEES** | | |
| 199 | Filing and indexing papers for which a charge is not provided elsewhere | GC 70626(b)(10) | $ 45 |
| 200 | Appearance by videoconferencing | GC 70630 | Amount set by court |
| 201 | Reasonable fee for service or product, not to exceed costs, where no fee is otherwise provided for (Rule 10.815) | GC 70631 | Amount set by court |
| 202 | Administering funds held in trust for deposits of funds for reporters' transcripts | GC 70632 CRC 8.130 and 8.834 | $50 |
| 203 | Certificate of facts regarding unsatisfied judgment | VC 16373 | Amount set by court |

## Appendix:  First paper filing fees under the UCF in courts with local courthouse construction surcharges

| | | Limited civil cases | | | Unlimited civil cases (> $35,000), family, probate |
|---|---|---|---|---|---|
| | | Limited civil ≤ $10,000 | Limited civil > $10,000 | Amendment to amount over $10,000 < $25,000[7] | |
| Statewide uniform fee[8] | | $ 225 | $ 370 | $ 145 | $ 435 |
| Normal distribution to State Court Facilities Construction Fund[9] | | $ 20 | $ 25 | None | $ 35 |
| Riverside[10] | Local courthouse construction surcharge | $ 50 | $ 50 | None | $ 50 |
| | Distribution to SCFCF | $ 0 | $ 0 | None | $ 0 |
| | Total fee (with local surcharge and offset from SCFCF distribution) | $ 255 | $ 395 | $ 140 | $ 450 |
| San Bernardino[11] | Local courthouse construction surcharge | $ 35 | $ 35 | None | $ 35 |
| | Distribution to SCFCF | $ 0 | $ 0 | None | $ 0 |
| | Total fee (with local surcharge and offset from SCFCF distribution) | $ 240 | $ 380 | $ 140 | $ 435 |
| San Francisco[12] | Local courthouse construction surcharge | $ 10 | $ 10 | None | $ 50 |
| | Distribution to SCFCF | $ 10 | $ 15 | None | $ 0 |
| | Total fee (with local surcharge and offset from SCFCF distribution) | $ 225 | $ 370 | $ 145 | $ 450 |

---

[7] This column shows the fee under GC 70613.5 for a filing increasing the amount at issue in a limited civil case from $10,000 or less to more than $10,000, but not to exceed $25,000. The fee reflects the incremental amount that the first paper fee for a case with more than $10,000, but not to exceed $25,000 at issue exceeds the first paper fee for a case with $10,000 or less at issue.

[8] These uniform filing fees apply to both first paper filings and response filings in limited, unlimited, family law and probate cases.

[9] Under the Uniform Civil Fee legislation, the standard distributions to the State Court Facilities Construction Fund are $20, $25 and $35 depending on the level and type of filing. In Riverside, San Bernardino and San Francisco the distribution to the SCFCF is reduced to offset, to the extent possible, the local courthouse construction surcharge.

[10] In Riverside the maximum surcharge allowed by statute is $50 under GC 70622. As of January 1, 2009, the surcharge is $50 for all cases.

[11] In San Bernardino the maximum surcharge allowed by statute is $35, which is applied to all first paper filings. (GC 70624.)

[12] In San Francisco the maximum surcharge allowed by statute is $50. $10 is applied to limited civil cases and $50 to other first paper filings. (GC 70625.)

**Fees for limited civil unlawful detainer cases and cases filed by assignees
in courts with local courthouse construction surcharges**

| | | Limited civil unlawful detainer cases[13] | | Cases filed by assignees | |
|---|---|---|---|---|---|
| | | Unlawful detainer, limited civil ≤ $10,000 | Unlawful detainer, limited civil > $10,000 | Ltd civil with declarations <$5,000 | Amendment to amount over $10,000 < $25,000[14] |
| Statewide uniform fee | | $ 240 | $ 385 | $ 181 | $ 189 |
| Normal distribution to State Court Facilities Construction Fund[15] | | $ 20 | $ 25 | $ 20 | None |
| Riverside[16] | Local courthouse construction surcharge | $ 50 | $ 50 | $ 50 | None |
| | Distribution to SCFCF | $ 0 | $ 0 | $ 0 | None |
| | Total fee (with local surcharge and offset from SCFCF distribution) | $ 270 | $ 410 | $ 211 | $ 184 |
| San Bernardino[17] | Local courthouse construction surcharge | $ 35 | $ 35 | $ 35 | None |
| | Distribution to SCFCF | $ 0 | $ 0 | $ 0 | None |
| | Total fee (with local surcharge and offset from SCFCF distribution) | $ 255 | $ 395 | $ 196 | $ 184 |
| San Francisco[18] | Local courthouse construction surcharge | $ 10 | $ 10 | $ 10 | None |
| | Distribution to SCFCF | $ 10 | $ 15 | $ 10 | None |
| | Total fee (with local surcharge and offset from SCFCF distribution) | $ 240 | $ 385 | $ 181 | $ 189 |

---

[13] These amounts incorporate the additional $15 fee under CCP 1161.2 charged to plaintiffs in limited civil unlawful detainer cases.

[14] This column shows the fee under GC 70613.5 for a filing increasing the amount at issue in a limited civil case filed by an assignee (with declaration) from within the small claims jurisdictional limit to more than $10,000, but not to exceed $25,000. The fee reflects the incremental amount that the first paper fee for a limited civil case with more than $10,000, but not to exceed $25,000, at issue exceeds the first paper fee for a case with declarations with less than $5,000 at issue.

[15] Under the Uniform Civil Fee legislation, the standard distributions to the State Court Facilities Construction Fund are $20, $25 and $35 depending on the level and type of filing. In Riverside, San Bernardino and San Francisco the distribution to the SCFCF is reduced to offset, to the extent possible, the local courthouse construction surcharge.

[16] In Riverside the maximum surcharge allowed by statute is $50 under GC 70622. As of January 1, 2009, the surcharge is $50 for all cases.

[17] In San Bernardino the maximum surcharge allowed by statute is $35, which is applied to all first paper filings. (GC 70624.)

[18] In San Francisco the maximum surcharge allowed by statute is $50. $10 is applied to limited civil cases and $50 to other first paper filings. (GC 70625.)

Exhibit E

3 Trust in the Lord and do good;

dwell in the land and enjoy safe
pasture.

4 Take delight in the Lord,

and he will give you the desires of
your heart.

5 Commit your way to the Lord;

trust in him and he will do this:

6 He will make your righteous reward
shine like the dawn,

your vindication like the noonday
sun.

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90007
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas

Claim No: 5005612246-1-2

**For Services Rendered Through 10/20/2021**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 9/27/2021 | LR | Prepare Motion to Strike on behalf of Ritter, Simons and Thakur including memorandum of points and authorities, supporting declaration and proposed order | 5.20 | $910.00 | 299 |
| 9/27/2021 | LR | Receipt and review plaintiff's revised subpoena to Wells Fargo and Union Bank | 0.10 | $17.50 | 300 |
| 9/27/2021 | LR | Receipt and review Notice of Limited Scope Representation (blank) | 0.10 | $17.50 | 301 |
| 9/27/2021 | LR | Receipt and review Plaintiff's Seventh Doe Amendment to the Complaint | 0.10 | $17.50 | 302 |
| 9/28/2021 | LR | Internet research to locate attorney possibly representing plaintiff and telephone call to law firm to discuss case | 1.20 | $210.00 | 303 |
| 9/28/2021 | LR | Prepare demurrer to plaintiff's complaint on behalf of Zafra | 1.30 | $227.50 | 304 |
| 9/28/2021 | LR | Prepare Motion to Strike punitive damages on behalf of Zafra | 0.70 | $122.50 | 305 |
| 10/01/2021 | LR | ██████████████████████████ | 0.20 | $35.00 | 306 |
| 10/01/2021 | LR | Prepare meet and confer letter to plaintiff regarding demurrer and | 1.20 | $210.00 | 307 |

never occurred
per limited scope attorneys

Different case numbers, erroneous billings restraining order, John Gibson etc.

---

**Top Left:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Brinn
P.O. Box 268094
Oklahoma City, OK 73126-8994

November 23, 2022
Invoice 89430
Matter ID: FRM-1837
Christopher B. Alard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 9/30/2019

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 8/02/2019 2019007-067994411 | LR | Receipt and review email and letter from co-counsel and prepare email in response | 0.20 | $35.00 | 46 |
| 9/03/2019 | LR | Receipt and review Plaintiff's Case Management Conference Statement | 0.20 | $35.00 | 47 |
| 9/03/2019 ADA | LR | Receipt and review Plaintiff's Motion to Extend Stay | 0.40 | $70.00 | 48 |
| 9/03/2019 ADA | LR | Exchange emails with co-counsel regarding coordinated opposition to plaintiff's motion to extend stay | 0.30 | $52.50 | 49 |
| 9/03/2019 not filed FRAUD until 2021 | LR | Receipt and review plaintiff's motion for leave to file First Amended Complaint with exhibit, including review and analysis of plaintiff's proposed First Amended Complaint (229 pages) empty 145 filing 3 27 2021 motion for leave Attend compliant | 2.40 | $420.00 | 50 |
| overdraft produce entry | | | 4.10 | $892.50 | 51 |
| 9/16/2019 | LR | Prepare opposition to Plaintiff's motion to extend stay and for leave to file first amended complaint, including preparation of MPA and supporting declaration with exhibit; | 4.10 | $717.50 | 52 |
| 9/18/2019 | LR | Prepare Case Management Conference Statement | 0.50 | $87.50 | 53 |

---

**Top Right:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 89430
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 9/23/2019 RGI9034687 | LR | Telephone conference with Mike Durbin regarding service of request for temporary restraining order | 0.90 | $157.50 | 54 |
| 9/23/2019 RGI9034687 | LR | Prepare lengthy email to Farmers regarding plaintiff's motion to extend stay and service of request for temporary restraining order on Mike Durbin | 0.70 | $122.50 | 55 |
| 9/23/2019 RGI9034687 | LR | Telephone conference with co-counsel regarding plaintiff's request for temporary restraining order | 0.30 | $52.50 | 56 |
| 9/23/2019 RGI9034687 | LR | Telephone conference with Farmers regarding plaintiff's request for temporary restraining order | 0.40 | $70.00 | 57 |
| 9/23/2019 RGI9034687 | LR | Receipt and review emails from counsel and Mike Durbin regarding plaintiff's request for temporary restraining order | 0.30 | $52.50 | 58 |
| 9/23/2019 RGI9034687 | LR | Receipt and review Temporary Restraining Order papers and conduct research on required response | 2.80 | $490.00 | 59 |
| 9/25/2019 RGI9034687 | LR | Exchange multiple emails with HOA's personal counsel regarding response to plaintiff's request for temporary restraining order | 0.60 | $105.00 | 60 |
| 9/25/2019 RGI9034687 | LR | Receipt and review email from Farmers directing us to proceed with Mike Durbin at hearing on temporary restraining order | 0.10 | $17.50 | 61 |
| 9/25/2019 RGI9034687 | LR | Prepare emails to Mike Durbin and HOA's personal counsel regarding representation at hearing on TRO and direction for Durbin to come into office | 0.30 | $52.50 | 62 |
| 9/30/2019 RGI9034687 | LR | Prepare emails with Mike Durbin regarding temporary restraining order | 0.20 | $35.00 | 63 |
| 9/30/2019 RGI9034687 | LR | Telephone conference with Mike Durbin for purposes of preparing restraining order | 1.60 | $280.00 | 64 |
| 9/30/2019 RGI9034687 | LR | Prepare Response to plaintiff's Request for Civil Harassment | 4.30 | $752.50 | 65 |
| 9/30/2019 RGI9034687 | LR | Exchange additional emails with Mike Durbin, carrier and HOA's personal counsel regarding response to plaintiff's temporary restraining order | 0.50 | $87.50 | 66 |
| 9/30/2019 | LR | Research regarding title history and lien on Bernstein's property | 1.20 | $210.00 | 67 |
| | | **TOTAL LEGAL SERVICES** | **33.40** | **$4,095.00** | |

---

**Bottom Left:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Brinn
P.O. Box 268994
Oklahoma City, OK 73126-8994

November 23, 2022
Invoice 89431
Matter ID: FRM-1837
Christopher B. Alard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 12/19/2019

Continuance only not held on this date wrong case number not this matter

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 10/01/2019 PHU 806129 Tenancy | LR | Receipt and review email from HOA regarding plaintiff's request for information and prepare response email with requirements to represent under the Davis Stirling Act | 0.60 | $105.00 | 68 |
| 10/01/2019 RGI9034687 | LR | Prepare for oral argument at hearing on plaintiff's request for Civil Harassment Restraining Order, including research on standards for granting of the same | 3.10 | $542.50 | 69 |
| 10/02/2019 RGI9034687 | LR | Travel to and from Hayward for hearing on restraining order request against Mike Durbin (68 miles) | 2.80 | $245.00 | 70 |
| 10/03/2019 RGI9034687 | LR | Attend hearing on plaintiff's request for Civil Harassment Restraining Order against Mike Durbin - hearing not held continued | 4.20 | $735.00 | 71 |
| 10/08/2019 DTW ADA | LR | Review of case materials and preparation of notes and arguments for use at the Court's hearing on Plaintiff's Motion to Extend the Stay of Litigation and for a Protective Order and our Motion to Compel | 0.80 | $128.00 | 72 |
| 10/09/2019 ADA | LR | Attend hearing on Plaintiff's request to extend the stay of the case; | 1.60 | $256.00 | 73 |
| 10/09/2019 ADA | DTW | Preparation of written summary and analysis of the occurrences at and information gained from the Court's hearing on Plaintiff's Motion to Extend the Stay of the case; Plaintiff on second stay litigation no work to be performed HG18897381 | 0.40 | $64.00 | 74 |

---

**Bottom Right:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 89431
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 10/31/2019 RGI9034687 | LR | Exchange emails with Michael Durbin regarding changes to hearing on restraining order | 0.30 | $70.00 | 75 |
| 11/01/2019 RGI9034687 RGI9034687 | LR | Review of materials on court's docket regarding the multitude of restraining order motions filed by plaintiff  4 not multitudes | 0.40 | $70.00 | 76 |
| 11/05/2019 RGI9034687 | LR | Receipt and review email from Michael Durbin regarding gall bladder surgery and inability to attend hearing on restraining order | 0.10 | $17.50 | 77 |
| | | **CONFIDENTIAL MEDICAL DISCLOSURE VIOLATION** | | | |
| 11/06/2019 RGI9034687 | LR | Exchange emails with court clerk regarding Michael Durbin's inability to attend hearing on restraining order | 0.30 | $52.50 | 78 |
| 11/06/2019 RGI9034687 | LR | Prepare email to Michael Durbin regarding efforts to continue hearing on restraining order | 0.10 | $17.50 | 79 |
| 11/06/2019 RGI9034687 | LR | Receipt and review email from Renula Zafra regarding request for copy of complaint for purposes of trying to apply for a loan with Mutual of Omaha | 0.10 | $17.50 | 80 |
| 11/06/2019 RGI9034687 | LR | Prepare email to Farmers regarding Durbin's unavailability for hearing on restraining order | 0.20 | $35.00 | 81 |
| 11/07/2019 RGI9034687 | LR | Travel to and from Hayward for hearing on plaintiff's Request for Civil Harassment Restraining Order (68 miles) | 2.70 | $236.25 | 82 |
| 11/07/2019 RGI9034687 | LR | Attend hearing on plaintiff's request for Civil Harassment Restraining Order Bernstein did not request "honor" wrongly Bernstein upset court s re | 4.10 | $717.50 | 83 |
| 11/07/2019 RGI9034687 | LR | Telephone conference regarding extension of temporary restraining order | 0.30 | $52.50 | 84 |
| 12/19/2019 RGI9034687 | LR | (blacked out) | -0.70- | -$122.50- | 85 |
| unredact produce entry | | **TOTAL LEGAL SERVICES** | **22.90** | **$3,484.25** | |

**LEGAL SERVICES SUMMARY**

| Name | Status | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 6.30 | $87.50 | $481.25 |
| Luanne Rutherford | Partner | 14.60 | $175.00 | $2,555.00 |
| Drew T. Williams | Associate | 2.30 | $160.00 | $448.00 |
| | **TOTAL:** | **22.90** | | **$3,484.25** |

Total Fees and Disbursements    $3,484.25

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

December 9, 2022
Invoice 89726
Matter ID: FRM-1837
Christopher B. Allard
Page 3

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Max
Claim No: 5005612246-1-2

**For Services Rendered Through 8/31/2020**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/06/2020 | LR | ▮▮▮▮▮ | 0.70 | $122.50 | 86 |
| unredact produce entry | | | | | |
| 4/06/2020 | LR | ▮▮▮▮▮ | 4.80 | $816.00 | 87 |
| unredact produce entry | | | | | |
| | LR | ▮▮▮▮▮ | 0.20 | $35.00 | 88 |
| unredact produce entry | | | | | |
| 1/14/2020 | LR | Exchange emails with client regarding hearing on plaintiff's request for Civil Harassment Restraining Order | 0.10 | $52.50 | 89 |
| RG19034687 | | | | | |
| 1/16/2020 | LR | Receipt and review additional information from property management company regarding plaintiff's objection to cleaning of gutters | 1.70 | $297.50 | 90 |
| Tenancy | | | | | |
| 1/21/2020 | LR | Prepare for hearing on plaintiff's Request for Civil Harassment Restraining Order against Michael Durbin | 1.00 | $175.00 | 91 |
| RG19034687 | | | | | |
| 1/21/2020 | LR | Travel to and from Hayward for hearing on plaintiff's Request for Civil Harassment Restraining Order against Michael Durbin (68 miles) | 2.80 | $245.00 | 92 |
| RG19034687 | | | | | |
| 1/21/2020 | LR | Attend hearing on plaintiff's Request for Civil Harassment | 3.60 | $630.00 | 93 |
| RG19034687 | | | | | |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 89726
Page 3

Restraining Order against Michael Durbin

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/23/2020 | LR | Draft email to Farmers regarding results of hearing on restraining order | 0.40 | $70.00 | 94 |
| RG19034687 | | | | | |
| 2/03/2020 | LR | Receipt and review Disassociation of Attorneys from Robert Maltz | 0.10 | $17.50 | 95 |
| 3/30/2020 | LR | ▮▮▮▮▮ | 0.20 | $35.00 | 96 |
| unredact produce entry | | | | | |
| 3/30/2020 | LR | ▮▮▮▮▮ | 0.20 | $35.00 | 97 |
| unredact produce entry | | | | | |
| 3/31/2020 | LR | ▮▮▮▮▮ | 0.40 | ▮▮▮ | 98 |
| unredact produce entry | | | | | |
| 4/14/2020 | LR | Draft email to carrier regarding continuance of Case Management Conference | 0.30 | $52.50 | 99 |
| 5/14/2020 | LR | Prepare updated Case Management Conference Statement | 0.50 | $87.50 | 100 |
| 5/28/2020 | LR | Exchange emails with Association members regarding information to refinance property | 0.40 | $70.00 | 101 |
| 6/04/2020 | LR | Exchange numerous emails with HOA's counsel regarding collection of over due assessments from plaintiff | 0.60 | $105.00 | 102 |
| 6/04/2020 | LR | Legal research regarding ownership of Bernstein property | 0.80 | $140.00 | 103 |
| 6/30/2020 | LR | Receipt and review multiple orders setting discovery motions, motion for protective order, and motion to compel compliance with subpoena | 0.40 | $70.00 | 104 |
| 7/01/2020 | LR | Exchange multiple emails with HOA's personal counsel regarding need for declarations to support claim of prejudice to HOA to extend stay in matter | 0.70 | $122.50 | 105 |
| ADA vexed | | | | | |
| | | | | ▮▮▮ | 106 |
| 7/15/2020 | LR | Review and analysis of court docket and recent order related to discovery motions, and review of discovery propounded to date for purposes of determining further litigation strategies in effort to dispose of plaintiff's claims | 3.20 | $560.00 | |
| | | | | seeking declarations to prevent stay medical of plaintiff see entry Consider lien | 107 |
| 7/23/2020 | LR | ▮▮▮▮▮ | | $42.50 | |
| unredact produce entry | | | | | |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 89726
Page 4

Mike Durbin evading service if not himself not service

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 8/19/2020 | LR | Receipt and review documents from Mike Durbin regarding plaintiff's filing of second request for restraining order Directing Mike Durbin to evade service | 0.30 | $52.50 | 108 |
| HG20068279 | | | | | |
| 8/20/2020 | LR | ▮▮▮▮▮ | 0.70 | $122.50 | 109 |
| unredact produce entry | | | | | |
| 8/20/2020 | LR | Review of court's website regarding plaintiff's filing of additional requests for restraining order | 0.30 | $52.50 | 110 |
| 8/25/2020 | LR | Receipt and review multiple emails regarding Rosen's difficulty obtaining refinancing because of litigation Rosen has own litigation | 0.20 | $35.00 | 111 |
| 8/26/2020 | LR | Telephone conference with Mike Durbin regarding plaintiff's new request for restraining order | 1.70 | $297.50 | 112 |
| 8/31/2020 | LR | Receipt and review from property management company regarding plaintiff's complaints that pool will not open new mediation fraud | 0.20 | $35.00 | 113 |
| 8/31/2020 | LR | Prepare email to carrier and clients regarding mediation | 0.20 | $35.00 | 114 |
| 2019907-067994411 | | | | | |
| 5/31/2020 | LR | Exchange emails with HOA President regarding mediation | 0.20 | $35.00 | 115 |
| 2019907-067994411 | | | | | |
| 8/31/2020 | LR | Exchange emails with Kavina Nguyen regarding nature of lawsuit and Farmers retention for defense a different client not my lawsuit | 0.20 | $35.00 | 116 |
| unrelated case new | | | | | |
| 8/31/2020 | LR | Review of court's docket to check for proof of service of moving papers regarding new request for Restraining Order | 0.20 | $35.00 | 117 |
| HG20068279 ghost representation John Gibson 2nd restraining order | | | | | |
| second restraining order Mike Durbin RG20068279 | | | | | |

**TOTAL LEGAL SERVICES        24.80        $4,095.00**

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Luanne Rutherford | Partner | 2.80 | $87.50 | $245.00 |
| Luanne Rutherford | Partner | 22.00 | $175.00 | $3,850.00 |
| | **TOTAL:** | **24.80** | | **$4,095.00** |

Total Fees and Disbursements        $4,095.00
**TOTAL CURRENT CHARGES        $4,095.00**   4,307.50
Balance Forward        $17,886.75
**TOTAL AMOUNT DUE        $21,981.75**

Open Invoices

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

December 9, 2022
Invoice 89727
Matter ID: FRM-1837
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Max
Claim No: 5005612246-1-2

**For Services Rendered Through 11/30/2020**

this is again civil harassment hearing case number not this matter not enforcement of co&r

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 9/01/2020 | LR | Review court's docket for proof of service of moving papers regarding new request for restraining order | 0.10 | $17.50 | 118 |
| second restraining order Mike Durbin HG20068279 | | | | | |
| 9/10/2020 | LR | Draft email to Mike Durbin regarding plaintiff's failure to serve moving papers and expectation for court to set a new hearing date | 0.30 | $52.50 | 119 |
| HG20068279 ghost representation John Gibson 2nd restraining order | | | | | |
| 9/10/2020 | LR | ▮▮▮▮▮ | 0.20 | $35.00 | 120 |
| 9/30/2020 | LR | ▮▮▮▮▮ | 0.20 | $35.00 | 121 |
| HG20068279 ghost representation John Gibson 2nd restraining order | | | | | |
| 10/01/2020 | LR | Draft email to Mike Durbin regarding new hearing date for TRO | 0.20 | $35.00 | 122 |
| second restraining order Mike Durbin HG20068279 | | | | | |
| 10/27/2020 | LR | Prepare Reply Brief to motion to compel responses to discovery | 0.80 | $140.00 | 123 |
| 10/30/2020 | LR | Prepare Reply Brief in motion to Have Requests for Admission Deemed Admitted | 0.70 | $122.50 | 124 |
| 11/02/2020 | LR | Receipt and review of court's tentative ruling on Case Management Conference and discovery motions | 0.20 | $35.00 | 125 |
| 11/04/2020 | LR | Attend Case Management Conference via Bluejeans litigation stay filed 15 4 2020 | 2.80 | $490.00 | 126 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Invoice 89727
Re: Bernstein v. Meadow Brook Village HOA
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/04/2020 | LR | Receipt and review of notice from court regarding hearings on discovery motions | 0.20 | $35.00 | 127 |
| 11/05/2020 | LR | Receipt and review plaintiff's motion for protective order (219 pages) no protective order filed and served this time frame fraud | 1.80 | $315.00 | 128 |
| 11/06/2020 | LR | Legal research regarding HOA's legal responsibilities for ADA accommodations | 5.60 | $980.00 | 129 |
| ADA yes no | | | | | |
| 11/06/2020 | LR | Further legal research regarding mandatory nature of statute related to deeming request for admissions admitted if responses not provided before the hearing | 1.80 | $315.00 | 130 |
| | | hearing was not 4.9 hours bluejeans | | | |
| 11/09/2020 | LR | Attend lengthy hearings on defendants' motion to compel and motion to have requests for admission deemed admitted via bluejeans | 4.90 | $857.50 | 131 |
| 11/09/2020 | LR | Receipt and review Exhibits 1-43 from plaintiff in support of her opposition to the HOA's discovery motions | 1.50 | $262.50 | 132 |
| 11/10/2020 | LR | Research regarding pool expenses to heat in winter and dangers associated with high heat | 1.70 | $297.50 | 133 |
| tenancy | | | | | |
| 11/12/2020 | LR | Receipt and review Case Management Order | 0.20 | $35.00 | 134 |
| 11/12/2020 LR | | Exchange emails with Mike Durbin regarding status of current 3103 request and hearing on this date | 0.36 | $52.50 | 134 |
| | | stricken but not redacted no hearing held on this date | | | |
| 11/13/2020 | LR | Receipt and review plaintiff's Objections to orders on discovery motions | 0.40 | $70.00 | 135 |
| 11/13/2020 | LR | Prepare Notice of Entry of Order Granting motion to compel | 0.40 | $70.00 | 136 |
| 11/13/2020 | LR | Prepare Notice of Entry of Order regarding motion to have request for Admissions deemed admitted | 0.40 | $70.00 | 137 |
| 11/11/2020 | LR | Receipt and review email from plaintiff regarding Notices of Entry of Orders on discovery motions | 0.10 | $17.50 | 138 |
| 11/23/2020 | LR | Receipt and review email from plaintiff regarding issues with Orders on the HOA's discovery motions | 0.30 | $52.50 | 139 |
| 11/25/2020 | LR | Receipt and review multiple emails from plaintiff to the court objecting to handling of the filing of her oppositions to the HOA's discovery motions | 0.20 | $35.00 | 140 |

Resume review here - cross references all dates and actions fraudulent padded billings

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

January 6, 2021
Invoice 90001
Master ID: FRM-1857
Christopher B. Aihol
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Max
Claim No: 5005612246-1-2

For Services Rendered Through 2/24/2021

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 1/26/2021 | LR | ████████████ | 0.80 | $140.00 | 141 |
| 1/26/2021 | LR | ████████████ | 0.50 | $87.50 | 142 |
| 1/27/2021 | LR | Receipt and review Plaintiff's Motion for Leave to Amend Complaint (94 pages) including review of plaintiff's proposed amended complaint (93 pages)   fraudulent entry 50 status motion for leave amended complaint filed in 2019 | 1.70 | $297.50 | 143 |
| 2/01/2021 | LR | Prepare defendants' Case Management Conference Statement | 0.40 | $70.00 | 144 |
| 2/01/2021 | LR | Exchange emails with current property management company regarding response to plaintiff's filing of motion for leave to amend | 0.20 | $35.00 | 145 |
| 2/24/2021 | LR | Receipt and review plaintiff's motion for leave to file First Amended Complaint including review of proposed First Amended Complaint (443 pages) | 2.80 | $490.00 | 146 |
| 2/05/2021 | LR | Legal research regarding standard for permitting leave to amend complaint | 1.10 | $192.50 | 147 |
| 2/09/2021 | LR | Prepare opposition to plaintiff's motion for leave to file first | 6.70 | $1,172.50 | 148 |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Invoice 90001
Re: Bernstein v. Meadow Brook Village HOA
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | amended complaint | | | |
| 2/11/2021 | LR | unredact and produce entry | 0.20 | $35.00 | 149 |
| 2/11/2021 | LR | Exchange emails with property management company regarding anticipated direction of case | 0.30 | $52.50 | 150 |
| 2/16/2021 | LR | Receipt and detailed review of plaintiff's responses to form interrogatories and request for admissions | 3.20 | $560.00 | 151 |
| 2/17/2021 | LR | Receipt and review plaintiff's reply in support of her motion for leave to file First Amended Complaint | 0.90 | $157.50 | 152 |
| 2/18/2021 | LR | | 0.20 | $35.00 | 153 |
| 2/23/2021 | LR | Receipt and review tentative ruling on plaintiff's motion for leave to file First Amended Complaint and multiple emails from plaintiff regarding same | 0.50 | $87.50 | 154 |
| 2/23/2021 | LR | Review of moving papers and opposition to motion for leave to file First Amended Complaint for purposes of preparing for the oral argument at hearing | 0.70 | $122.50 | 155 |
| 2/24/2021 | LR | Attend lengthy hearing on plaintiff's motion for leave to file First Amended Complaint | 2.40 | $420.00 | 156 |
| 2/24/2021 | LR | Receipt and review numerous emails with numerous attachments from plaintiff in response to court's denial of her motion for leave to file First Amended Complaint | 2.10 | $367.50 | 157 |
| tenancy issue | | | | | 158 |
| 2/24/2021 | LR | Receipt and review video from plaintiff regarding claim that gate is stuck open   no such email to Luanne lists date | 0.30 | $52.50 | |
| 2/24/2021 | LR | | 0.60 | $87.50 | 159 |
| 2/24/2021 | LR | Prepare lengthy email to cocivie and clients regarding results of motion for leave to file a First Amended Complaint and next steps | 0.60 | $105.00 | 160 |
| 2/24/2021 | LR | ████████████ | 0.60 | $105 | 161 |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

January 6, 2021
Invoice 90002
Master ID: FRM-1857
Christopher B. Aihol
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Max
Claim No: 5005612246-1-2

For Services Rendered Through 4/15/2021

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 2/25/2021 | LR | Exchange emails with counsel for MUFG Union Bank regarding objections to plaintiff's subpoena for the HOA's banking records | 0.20 | $35.00 | 162 |
| 2/25/2021 | LR | Exchange emails with property management company regarding request for information related to prior attempt at ADR | 0.30 | $52.50 | 163 |
| 2/25/2021 | LR | Receipt and review Doe Amendment to Complaint naming an additional 22 defendants | 0.20 | $35.00 | 164 |
| 2/25/2021 | LR | Participate in exchange of emails regarding the identity and roles of the numerous defendants named in Plaintiff's Doe Amendment | 1.90 | $332.50 | 165 |
| 2/26/2021 | LR | Legal research regarding grounds for motion for summary judgment on plaintiff's individual causes of action | 4.50 | $787.50 | 166 |
| 3/09/2021 | LR | Receipt and review Second Doe Amendment to Complaint | 0.10 | $17.50 | 167 |
| 3/10/2021 | LR | unredact produce entry | 0.40 | $70.00 | 168 |
| 3/16/2021 | LR | Receipt and review Third Doe Amendment to Complaint | 0.10 | $17.50 | 169 |
| 3/16/2021 | LR | Prepare email to cocivie and client regarding Third Doe Amendment to Complaint | 0.20 | $35.00 | 170 |

**Top-left invoice:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| Farmers Insurance | | | | Invoice 90002 |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 3/22/2021 | LR | Exchange emails with property manager regarding second Doe Amendment to Complaint | 0.30 | $52.50 | 171 |
| 3/22/2021 | LR | Receipt and review packet from plaintiff preparing to serve Complaint for Doe defendants at our office; fraud courtesy copy affidavit of service demonstrates service | 0.20 | $35.00 | 172 |
| 3/31/2021 | LR | ▮▮▮▮▮▮▮▮▮▮ | 0.30 | $52.50 | 173 |
| 3/31/2021 | LR | ▮▮▮▮▮▮▮▮▮▮ | 0.40 | $49.50 | 174 |
| 4/07/2021 | LR | Receipt and review Notice of Acknowledgment from plaintiff for newly added defendants | 0.10 | $17.50 | 175 |
| 4/07/2021 | LR | Prepare email to carrier regarding plaintiff's improper service of newly named defendants | 0.20 | $35.00 | 176 |
| 4/08/2021 | LR | Review and analyze voluminous documents from Robert Maltz regarding prior pleadings, correspondence and discovery (1,619 excessive and unrelated mostly blank pages provided | 5.30 | $927.50 | 177 |
| 4/09/2021 201810-03850210 | LR | Review and analyze documents from Robert Maltz regarding HOA vendor services and received statements (478 pages) | 4.10 | $717.50 | 178 |
| 4/15/2021 201810-03850210 | LR | Review and analyze voluminous documents from Robert Maltz (pages 1-7,632) for purposes of identifying documents to support defendant's motion for summary judgment | 6.80 | $1,190.00 | 179 |
| 4/15/2021 | LR | Review and analyze plaintiff's Complaint for purposes of evaluating motion for summary judgment | 1.40 | $245.00 | 180 |

| | | TOTAL LEGAL SERVICES | 26.70 | $4,672.50 |

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 26.70 | 175.00 | $4,672.50 |
| | TOTAL | 26.70 | | $4,672.50 |

| Total Fees and Disbursements | $4,672.50 |
| TOTAL CURRENT CHARGES | $4,672.50 ~~$4,532.50~~ |
| Balance Forward | $13,947.50 |
| TOTAL AMOUNT DUE | $18,620.00 |

Open Invoices

---

**Top-right invoice:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1355712

| Farmers Insurance | January 6, 2023 |
| Attn: Corey Braun | Invoice 90003 |
| P.O. Box 268994 | Matter ID: FRM-1837 |
| Oklahoma City, OK 73126-8994 | Christopher B. Allard |
| | Page 2 |

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 4/30/2021

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 4/16/2021 201810-03850210 | LR | Further review and analysis of voluminous documents from Robert Maltz (pages 7,633-9,924) for purposes of identifying documents to support defendant's motion for summary judgment excessive and mostly blank pages and unrelated documents produced by defs | 3.10 | $542.50 | 181 |
| 4/19/2021 201810-03850210 | LR | Further review and analysis of voluminous documents from Robert Maltz (pages 9,925-21,976) for purposes of identifying documents to support motion for summary judgment | 7.10 | $1,242.50 | 182 |
| 4/20/2021 201810-03850210 | LR | Continue and complete review and analysis of voluminous documents from Robert Maltz (pages 21,977-30,938) for purposes of identifying documents to support motion for summary judgment | 6.70 | $1,172.50 | 183 |
| 4/21/2021 | LR | Legal research on elements of each of the twelve individual cause of action in plaintiff's complaint for purposes of preparing motion for summary judgment | 6.40 | $1,120.00 | 184 |
| 4/22/2021 | LR | Begin preparation of motion for summary judgment including preparation of with notice and factual background for memorandum of points and authorities | 3.20 | $560.00 | 185 |
| 4/22/2021 | LR | Prepare Notice of Motion and Motion for Summary Judgment motion for summary judgment not filed until 08/10/2021     Fraud | 1.30 | $192.50 | 186 |
| 4/22/2021 | LR | Receipt and review multiple emails from plaintiff requesting additional time to prepare opposition to motion for summary judgment     fraud no such email and no msj filed yet | 0.10 | $17.50 | 186 |

motion for summary judgment not filed until 08/10/2021; therefore I could not be requesting more time; my opposition filed 12/21/2021

---

**Bottom-left invoice:**

no summary judgment motion prepared at this time

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| Farmers Insurance | | | | Invoice 90003 |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 4/22/2021 | LR | Review of court's domain regarding plaintiff's intention to file motion for stay | 0.30 | $52.50 | 187 |
| 4/26/2021 tenancy | LR | Internet research and multiple telephone conferences with potential pool experts | 2.10 | $367.50 | 188 |
| 4/28/2021 tenancy - no expert cost | LR | Telephone conference with Andrew Morris regarding providing expert opinion on cost of outdoor heated pool maintenance | 0.70 | $122.50 | 189 |
| 4/28/2021 approval tenancy | LR | Research regarding therapy pool in Bay Area and special requirements to maintain them | 1.10 | $192.50 | 190 |
| 4/29/2021 tenancy | LR | Telephone conference with Farmers regarding request to retain experts on ADA issues | 0.30 | $52.50 | 191 |
| 4/29/2021 tenancy | LR | Telephone conference with pool ADA expert Bob Holmer regarding necessary inspection, length of time needs and potential scope of Declaration to support summary judgment | 0.60 | $105.00 | 192 |
| 4/29/2021 tenancy - no court order expert | LR | Prepare email to carrier regarding requested scope of authority to retain experts related to motion for summary judgment | 0.40 | $70.00 | 193 |
| 4/29/2021 | LR | Telephone conference with HOA property manager Selvia Bravo regarding inspection of pool and equipment | 0.40 | $70.00 | 194 |
| 4/29/2021 | LR | Telephone conference with pool manager regarding inspection of pool and equipment | 0.20 | $35.00 | 195 |
| 4/29/2021 tenancy | LR | Multiple telephone calls to potential experts for pool maintenance costs, conversion of pool to therapy pool, special equipment and chemicals needed for purposes of obtaining Declaration to support motion for summary judgment | 1.30 | $227.50 | 196 |
| 4/30/2021 tenancy | LR | Exchange emails with pool management company regarding access for visual inspection | 0.30 | $52.50 | 197 |

| | | TOTAL LEGAL SERVICES | 35.40 | $6,195.00 |

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 35.40 | 175.00 | $6,195.00 |
| | TOTAL | 35.40 | | $6,195.00 |

| Total Fees and Disbursements | $6,195.00 |

---

**Bottom-right invoice:**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1355712

| Farmers Insurance | January 6, 2023 |
| Attn: Corey Braun | Invoice 90004 |
| P.O. Box 268994 | Matter ID: FRM-1837 |
| Oklahoma City, OK 73126-8994 | Christopher B. Allard |
| | Page 2 |

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 5/28/2021

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/04/2021 tenancy | LR | Exchange emails with property manager and pool company regarding inspection of pool and equipment | 0.20 | $35.00 | 198 |
| 5/04/2021 tenancy | LR | Telephone calls to experts Morris and Holmer regarding scope of inspection of pool and equipment | 0.30 | $52.50 | 199 |
| 5/04/2021 not related to case | LR | Receipt and review email from property manager regarding property layout and access codes | 0.10 | $17.50 | 200 |
| 5/04/2021 tenancy | LR | Prepare email to experts Morris and Holmer regarding pool inspections, property layout and access codes | 0.20 | $35.00 | 201 |
| 5/05/2021 tenancy | LR | Further preparation of memorandum of points and authorities in support of motion for summary judgment | 5.10 | $892.50 | 202 |
| 5/07/2021 tenancy | LR | Participate in site visit of pools on property with experts | 3.10 | $542.50 | 203 |
| 5/10/2021 tenancy | LR | Telephone conference with expert Holmer regarding preliminary opinion from pool inspection and prepare email to same with pool permit | 1.00 | $175.00 | 204 |
| 5/12/2021 | LR | Prepare separate statement o undisputed material facts in support of motion for summary judgment | 4.20 | $735.00 | 205 |

## Top Left — Invoice 90004, Page 3

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90004
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/13/2021 | LR | Telephone conference with Susan Hernstel regarding Declaration in support of motion for summary judgment | 1.40 | $245.00 | 206 |
| 5/13/2021 | LR | Prepare Declaration of Susan Hernandez in support of motion for summary judgment | 1.70 | $297.50 | 207 |
| 5/14/2021 | LR | Further preparation of separate statement of undisputed material facts in support of motion for summary judgment | 3.20 | $560.00 | 208 |
| 5/17/2021 susan served | LR | Prepare email to Susan Hernandez regarding Doe Amendment naming her as a defendant | 0.20 | $35.00 | 209 |
| 5/24/2021 tenancy | LR | Prepare Declaration of Robert Holmer in support of motion for summary judgment | 2.80 | $490.00 | 210 |
| 5/24/2021 tenancy no court order expert | LR | Telephone conference with Robert Holmer regarding Declaration in support of summary judgment | 0.40 | $70.00 | 211 |
| 5/24/2021 | LR | Prepare email to carrier regarding progress toward filing motion for summary judgment | 0.20 | $35.00 | 212 |
| 5/24/2021 | LR |  | 0.30 | $35.00 | 213 |
| 5/25/2021 | LR |  | 0.30 | $52.50 | 214 |
| 5/26/2021 | LR |  | 0.60 | $105.00 | 215 |
| 5/26/2021 | LR | Prepare Declaration of Geraldine Linares in support of opposition to plaintiff's motion to stay case. | 1.10 | $192.50 | 216 |
| 5/28/2021 ADA | LR | Receipt and review plaintiff's motion to stay case | 0.50 | $87.50 | 217 |
| 5/28/2021 | LR | Prepare Declaration of Andrew Morris in support of motion for summary judgment | 2.40 | $420.00 | 218 |

**TOTAL LEGAL SERVICES     29.20     $5,110.00**

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 29.20 | 175.00 | $5,110.00 |
| | TOTAL | 29.20 | | $5,110.00 |

## Top Right — Invoice 90005, Page 2

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

January 6, 2023
Invoice 90005
Matter ID: FRM-1537
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mon
Claim No: 5005612246-1-2

**For Services Rendered Through 7/27/2021**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 6/03/2021 | LR | Prepare Case Management Conference Statement | 0.30 | $52.50 | 219 |
| 6/08/2021 | LR | Exchange emails with Susan Hernandez regarding pool at Association | 0.20 | $35.00 | 220 |
| 6/09/2021 | LR | Exchange emails with Geraldine Linares regarding Declaration in support of opposition to plaintiff's motion to stay case | 0.20 | $35.00 | 221 |
| 6/14/2021 3/20-cv-02983-WHO | LR | Legal research regarding plaintiff's filing of action in US District Court and 9 applications for restraining orders | 0.70 | $122.50 | 222 |
| 6/14/2021 | LR | Prepare opposition to plaintiff's Motion to Stay | 4.20 | $735.00 | 223 |
| 6/14/2021 | LR | Receipt and review of Order regarding Declaration in support of Opposition to plaintiff's Motion for Stay | 0.20 | $35.00 | 224 |
| 6/14/2021 | LR | Exchange emails with all counsel regarding stipulation for good faith settlement release agreement   no such settlement release offer | 0.20 | $35.00 | 225 |
| 6/18/2021 | LR | Further preparation of Opposition to plaintiff's Motion to Stay | 0.80 | $140.00 | 226 |
| 6/21/2021 not related to this case tenancy | LR | Exchange emails with Susan Hernandez regarding pool reopening and rules for use of the same | 0.30 | $52.50 | 227 |

## Bottom Left — Invoice 90005, Page 3

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90005
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 6/24/2021 | LR | Prepare email to Anthony Morris regarding Declaration in support of motion for summary judgment | 0.20 | $35.00 | 228 |
| 6/29/2021 | LR |  | 0.30 | $52.50 | 229 |
| 6/29/2021 John Gibson from 2021-09-14705609 | LR | Legal research regarding HOA's responsibility for criminal activity by association members | 1.30 | $227.50 | 230 |
| 6/29/2021 | LR | Receipt and review plaintiff's Case Management Conference statement with exhibits | 0.20 | $35.00 | 231 |
| 6/30/2021 | LR | Receipt and review tentative ruling on plaintiff's motion to stay | 0.10 | $17.50 | 232 |
| 6/30/2021 | LR | Receipt and review email from plaintiff regarding intention to contest tentative ruling on motion to stay | 0.10 | $17.50 | 233 |
| 6/30/2021 | LR | Receipt and review multiple emails from court regarding new tentative ruling on motion to stay | 0.20 | $35.00 | 234 |
| 6/30/2021 | LR | Prepare email to carrier regarding status of motion for summary judgment | 0.10 | $17.50 | 235 |
| 6/30/2021 | LR |  | 0.20 | $35.00 | 236 |
| 7/01/2021 | LR | Receipt and review new tentative ruling denying plaintiff's motion to stay case | 0.10 | $17.50 | 237 |
| 7/01/2021 | LR | Receipt and review email from plaintiff contesting tentative ruling denying her motion to stay case | 0.10 | $17.50 | 238 |
| 7/01/2021 | LR |  | 0.10 | $17.50 | 239 |
| 7/01/2021 | LR | Prepare email to carrier regarding tentative ruling denying plaintiff's motion to stay and her attack on Judge Herbert | 0.30 | $52.50 | 240 |
| 7/01/2021 | LR | Receipt and review emails exchanged between plaintiff and court regarding court reporter for hearing on motion to stay | 0.20 | $35.00 | 241 |
| 7/01/2021 ADA general | LR | Receipt and review email from court with information on Shriver pilot project to provide free legal services for indigent parties in unlawful detainer actions and forward the same to the carrier | 0.10 | $17.50 | 242 |

## Bottom Right — Invoice 90005, Page 4

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90005
Page 4

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 7/02/2021 | LR | Attend lengthy hearing on plaintiff's motion to stay case | 1.80 | $315.00 | 243 |
| 7/06/2021 | LR | Prepare proposed Order denying Motion to Stay | 0.30 | $52.50 | 244 |
| 7/06/2021 | LR | Prepare email to plaintiff regarding proposed order denying motion to stay | 0.20 | $35.00 | 245 |
| 7/07/2021 | LR | Receipt and review multiple orders from court setting hearings on plaintiff's motion to compel compliance with subpoenas and fix protective order | 0.10 | $17.50 | 246 |
| 7/12/2021 | LR | Receipt and review of the court's Case Management Order regarding further Case Management Conference | 0.10 | $17.50 | 247 |
| 7/12/2021 | LR | Receipt and review of Order denying plaintiff's Motion to Stay | 0.10 | $17.50 | 248 |
| 7/13/2021 no protective order | LR | Prepare opposition to plaintiff's motion for protective order and injunctive relief | 2.70 | $472.50 | 249 |
| 7/13/2021 duplicate billing third party counsel | LR | Prepare opposition to plaintiff's motion to compel compliance with subpoena to Union Bank | 1.80 | $315.00 | 250 |
| 7/13/2021 duplicate billing third party counsel | LR | Prepare opposition to plaintiff's motion to compel deposition of Richard Fong | 2.40 | $420.00 | 251 |
| 7/13/2021 duplicate billing third party counsel | LR | Prepare opposition to plaintiff's motion to compel compliance with subpoena to Wells Fargo | 1.10 | $192.50 | 252 |
| 7/13/2021 | LR | Exchange emails with property manager regarding denial of plaintiff's motion to stay | 0.20 | $35.00 | 253 |
| 7/21/2021 | LR | Exchange emails with Robert Holmer and revise his Declaration | 0.40 | $70.00 | 254 |
| 7/27/2021 ADA admin not case | LR | Receipt and review plaintiff's motion to disqualify Judge Herbert - court responds not defense counsel | 0.50 | $87.50 | 255 |
| 7/27/2021 this is judge Herbert court duplicate billing mcnamara | LR | Prepare opposition to plaintiff's motion to disqualify Judge Herbert | 3.10 | $542.50 | 256 |

**TOTAL LEGAL SERVICES     25.50     $4,462.50**

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 25.50 | 175.00 | $4,462.50 |
| | TOTAL | 25.50 | | $4,462.50 |

a

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Bruno
P.O. Box 268994
Oklahoma City, OK 73126-8994

January 6, 2023
Invoice 90007
Matter ID: FBM-1837
Christopher B. Alford
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 10/20/2021

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 9/27/2021 | LR | Prepare Motion to Strike on behalf of Ritter, Simons and Thakur including memorandum of points and authorities, supporting declaration and proposed order | 5.20 | $910.00 | 299 |
| 9/27/2021 | LR | Receipt and review plaintiff's revised subpoenas to Wells Fargo and Union Bank | 0.10 | $17.50 | 300 |
| 9/27/2021 | LR | Receipt and review Notice of Limited Scope Representation (blank) | 0.10 | $17.50 | 301 |
| 9/27/2021 | LR | Receipt and review Plaintiff's Seventh Doe Amendment to the Complaint | 0.10 | $17.50 | 302 |
| 9/28/2021 | LR | Internet research to locate attorney possibly representing plaintiff and telephone call to law firm to discuss case | 1.20 | $210.00 | 303 |
| 9/28/2021 | LR | Prepare demurrer to plaintiff's complaint on behalf of Zafin | 1.30 | $227.50 | 304 |
| 9/28/2021 | LR | Prepare Motion to Strike punitive damages on behalf of Zafin | 0.70 | $122.50 | 305 |
| 10/01/2021 | LR | ████████████████████ | 0.20 | $35.00 | 306 |
| 10/01/2021 | LR | Prepare meet and confer letter to plaintiff regarding demurrer and | 1.50 | $210.00 | 307 |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90007
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| | | motion to strike as to Elizabeth Hall | | | |
| 10/01/2021 | LR | Receipt and review Case Management Order | 0.10 | $17.50 | 308 |
| 10/01/2021 | LR | Telephone call to Farmers regarding service of Complaint on Elizabeth Hall in August and need to have default set aside | 0.10 | $17.50 | 309 |
| 10/01/2021 | LR | Legal research regarding standard for motion to set aside default | 1.10 | $192.50 | 310 |
| 10/01/2021 | LR | Exchange additional emails with Elizabeth Hall regarding date of service and request for entry of default | 0.40 | $70.00 | 311 |
| 10/01/2021 | LR | Receipt and review multiple emails from court and plaintiff regarding courts continuance of hearing dates on all motions | 0.20 | $35.00 | 312 |
| 10/01/2021 | LR | Receipt and review email from Lloyd Winter with Completed Notice of Limited Scope of Representation | 0.20 | $35.00 | 313 |
| 10/04/2021 | LR | Telephone conference with carrier regarding motion to set aside default against Elizabeth Hall, John Gibson issues, and other parties against whom requests for default were filed | 0.30 | $52.50 | 314 |
| 10/04/2021 | LR | Review of court's docket for names of parties with proof of service on file and request for default by plaintiff, as well as dates for hearings in the matter | 0.50 | $87.50 | 315 |
| 10/04/2021 | LR | Prepare email to property management company regarding service of current and/or former Board members and need for timely tender of defense | 0.60 | $105.00 | 316 |
| 10/04/2021 202109-06789411 | LR | Review and analyze documents from US District Court - Northern District in related case of Bernstein v. DFEH | 0.50 | $87.50 | 317 |
| 10/04/2021 202109-06789411 | LR | Prepare email to property management company regarding Doe Amendments to Complaint | 4.10 | $717.50 | 318 |
| 10/04/2021 | LR | Prepare email to property management company regarding Doe Amendments to Complaint | 0.20 | $35.00 | 319 |
| 10/04/2021 | LR | ██████████████████████ | 0.20 | $35.00 | 320 |
| 10/05/2021 | LR | Prepare court docket for documents related to court's rejection of request for default of Elizabeth Hall | 0.40 | $70.00 | 321 |
| 10/05/2021 | LR | Prepare meet and confer letter to plaintiff regarding demurrer and motion to strike on behalf of Elizabeth Hall | 0.70 | $122.50 | 322 |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90007
Page 4

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 10/05/2021 | LR | ████████████████████ | 0.20 | $35.00 | 323 |
| 10/11/2021 | LR | ████████████████████ | 0.20 | $35.00 | 324 |
| 10/11/2021 | LR | Prepare demurrer on behalf of Elizabeth Hall | 1.40 | $245.00 | 325 |
| 10/11/2021 | LR | Prepare motion to strike on behalf of Elizabeth Hall | 1.20 | $210.00 | 326 |
| 10/11/2021 | LR | Receipt and review email from plaintiff regarding objection to demurrer for Elizabeth Hall | 0.10 | $17.50 | 327 |
| 10/11/2021 | LR | Receipt and review plaintiff's Requests for Admission to Mark Simonson, Ronaldo Zafin and Leann Ritter, with multiple attachments | 0.60 | $105.00 | 328 |
| 10/11/2021 | LR | Receipt and review plaintiff's Requests for Admission to Aarti Thakur, with multiple attachments | 0.40 | $70.00 | 329 |
| 10/11/2021 | LR | ████████████████████ | 0.10 | $17.50 | 330 |
| 10/11/2021 | LR | ████████████████████ | 0.10 | $17.50 | 331 |
| 10/12/2021 | LR | ████████████████████ | 0.20 | $35.00 | 332 |
| 10/12/2021 | LR | ████████████████████ | 0.20 | $35.00 | 333 |
| 10/12/2021 | LR | ████████████████████ | 0.30 | $52.50 | 334 |
| 10/12/2021 | LR | Receipt and review email from plaintiff regarding notice of entry of default against Joey Morrison | 0.10 | $17.50 | 335 |
| 10/14/2021 | LR | Further preparation of demurrer and motion to strike on behalf of Elizabeth Hall | 1.80 | $315.00 | 336 |
| 10/14/2021 | LR | Receipt and review email from property manager regarding third party link to documents | 0.10 | $17.50 | 337 |
| 10/14/2021 202109-06789411 | LR | Telephone conference with property manager, Selin Bravo, regarding response to second HUD complaint | 0.40 | $70.00 | 338 |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90007
Page 5

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 10/15/2021 | LR | ████████████████████ | 0.10 | $17.50 | 339 |
| 10/17/2021 | LR | ████████████████████ | 0.10 | $17.50 | 340 |
| 10/18/2021 202109-06789411 | LR | Exchange emails with Department of Fair Employment and Housing regarding response to complaint | 0.30 | $52.50 | 341 |
| 10/18/2021 | LR | ████████████████████ | 0.20 | $35.00 | 342 |
| 10/19/2021 | LR | ████████████████████ | 0.20 | $35.00 | 343 |
| 10/19/2021 | LR | ████████████████████ | 0.20 | $35.00 | 344 |
| 10/20/2021 | LR | ████████████████████ | 0.50 | $87.50 | 345 |
| | | **TOTAL LEGAL SERVICES** | **28.70** | **$5,022.50** | |

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|------|-------|-----------|--------|
| Luanne Rutherford | Person | 28.70 | 175.00 | $5,022.50 |
| | **TOTAL** | **28.70** | | **$5,022.50** |

| | |
|---|---|
| Total Fees and Disbursements | $5,022.50 |
| TOTAL CURRENT CHARGES | $5,022.50 # 4,497.50 |
| Balance Forward | $39,460.00 |
| TOTAL AMOUNT DUE | $44,482.50 |

**Open Invoices**

| Invoice Date | Invoice Number | Original Amount | Payments and Credits | Balance |
|--------------|----------------|-----------------|----------------------|---------|
| 11/23/22 | 89428 | $5,127.50 | $52.50 | $5,075.00 |
| 12/20/22 | 89727 | $4,680.00 | $350.00 | $4,330.00 |
| 01/06/23 | 90001 | $4,742.50 | $0.00 | $4,742.50 |
| 01/06/23 | 90002 | $4,672.50 | $0.00 | $4,672.50 |
| 01/06/23 | 90003 | $6,105.00 | $0.00 | $6,105.00 |
| 01/06/23 | 90004 | $5,310.00 | $0.00 | $5,310.00 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Brsan
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice 90008
Matter ID: FRM-1837
Christopher R. Allred
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Associntion Northern California and Mrs
Claim No.: 5005512246-1-2

For Services Rendered Through 11/03/2021

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 10/21/2021 | LR | | 0.30 | $52.50 | 346 |
| 10/21/2021 202100-06/790411 | LR | Telephone conference with new adjuster regarding overview of case and parties to be defended 202100-14/705009 | 0.80 | $140.00 | 347 |
| 10/21/2021 | LR | | 0.40 | $47.50 | 348 |
| 10/22/2021 | LR | | 0.10 | $17.50 | 349 |
| 10/22/2021 | LR | | | | 350 |
| 10/22/2021 | LR | | 0.10 | $17.50 | 351 |
| 10/22/2021 | LR | | 0.20 | $35.00 | 352 |
| 10/22/2021 | LR | | 0.10 | $17.50 | 353 |

---

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90008
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 10/22/2021 | LR | | 0.10 | $17.50 | 354 |
| 10/25/2021 | LR | Receipt and review subpoenas from plaintiff to Union Bank, Management Solutions, Condominium Financial Management, Wells Fargo Bank, Bay Area Property, and Starman Construction | 0.40 | $70.00 | 355 |
| 10/27/2021 | LR | | 0.30 | $52.50 | 356 |
| 10/27/2021 | LR | Exchange emails with property manager regarding subpoena to Condominium Financial Management | 0.20 | $35.00 | 357 |
| 10/28/2021 | LR | Exchange emails with property manager regarding subpoena to Bay Area Property Management | 0.20 | $35.00 | 358 |
| 10/29/2021 | LR | Prepare Objections to subpoenas from plaintiff to Union Bank, Management Solutions, Condominium Financial Management, Wells Fargo Bank, Bay Area Property, and Starman Construction | 3.30 | $577.50 | 359 |
| 10/29/2021 | LR | | 0.60 | $105.00 | 360 |
| 11/01/2021 | LR | | 0.40 | $210.00 | 361 |
| 11/01/2021 fraud - no amended complaint filed | LR | Telephone call from Paul Olson at Farmers regarding status of plaintiff filing amended Complaint | 0.10 | $17.50 | 362 |
| 11/01/2021 | LR | | 3.10 | $542.50 | 363 |
| 11/01/2021 | LR | | 0.10 | $17.50 | 364 |
| 11/01/2021 fraud no motion for leave to file amended complaint | LR | Exchange emails with carrier regarding plaintiff's second motion for leave to file amened complaint | 0.20 | $35.00 | 365 |
| 11/01/2021 | LR | | 0.10 | $17.50 | 366 |
| 11/01/2021 | LR | | 0.40 | $70.00 | 367 |
| 11/01/2021 | LR | | 1.70 | $297.50 | 368 |

---

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90008
Page 4

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/01/2021 | LR | | 0.80 | $600.00 | 369 |
| 11/01/2021 | LR | | 0.50 | $140.00 | 370 |
| 11/01/2021 | LR | | 0.20 | $35.00 | 371 |
| 11/01/2021 | LR | | 1.60 | $280.00 | 372 |
| 11/01/2021 | LR | | 0.40 | $17.50 | 373 |
| 11/01/2021 | LR | | 2.10 | $367.50 | 374 |
| 11/01/2021 | LR | | 1.60 | $515.00 | 375 |
| 11/01/2021 | LR | | 0.10 | $17.50 | 376 |
| 11/03/2021 | LR | Exchange emails with plaintiff regarding service of documents on her attorney | 0.20 | $35.00 | 377 |
| 11/02/2021 | LR | | 0.10 | $17.50 | 378 |
| 11/03/2021 | LR | | 0.20 | $35.00 | 379 |
| 11/03/2021 | LR | | 0.30 | $52.50 | 380 |
| 11/03/2021 | LR | | 0.20 | $35.00 | 381 |
| 11/03/2021 | LR | | 0.50 | $87.50 | 382 |
| 11/03/2021 | LR | | 0.40 | $70.00 | 383 |
| 11/03/2021 | LR | | 0.20 | $35.00 | 384 |

---

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90008
Page 5

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/03/2021 | LR | | 1.40 | $260.00 | 385 |
| 11/03/2021 | LR | | 1.40 | $245.00 | 386 |
| 11/03/2021 | LR | | 0.60 | $105.00 | 387 |
| 11/03/2021 | LR | Exchange emails with plaintiff again advising we are not agents for service of process for any of the Doe defendants | 0.30 | $52.50 | 388 |
| 11/03/2021 | LR | | 0.50 | $53.50 | 389 |
| 11/03/2021 | LR | | 0.10 | $17.50 | 390 |

| | | TOTAL LEGAL SERVICES | 29.98 | $5,332.50 | |

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 29.90 | 175.00 | $5,332.50 |
| | TOTAL: | 29.90 | | $5,332.50 |

| | |
|---|---|
| Total Fees and Disbursements | $5,332.50 |
| TOTAL CURRENT CHARGES | $5,332.50  $497.50 |
| Balance Forward | $44,502.50 |
| TOTAL AMOUNT DUE | $49,735.00 |

| Invoice Date | Invoice Number | Open Invoices Original Amount | Payments and Credits | Balance |
|---|---|---|---|---|
| 11/23/22 | 89428 | $5,127.50 | $52.50 | $5,075.00 |
| 12/09/22 | 89727 | $4,480.00 | $350.00 | $4,130.00 |
| 01/06/23 | 90001 | $4,742.50 | $0.00 | $4,742.50 |
| 01/06/23 | 90002 | $4,672.50 | $0.00 | $4,672.50 |
| 01/06/23 | 90003 | $6,195.00 | $0.00 | $6,195.00 |
| 01/06/23 | 90004 | $5,510.00 | $0.00 | $5,510.00 |
| 01/06/23 | 90005 | $4,462.50 | $0.00 | $4,462.50 |
| 01/06/23 | 90006 | $5,092.50 | $0.00 | $5,092.50 |
| 01/06/23 | 90007 | $5,022.50 | $0.00 | $5,022.50 |
| | | | | $44,502.50 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice 90009
Matter ID: FBM-1827
Christopher R. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mea
Claim No: 500%012246-1-2

For Services Rendered Through 12/27/2021

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| Event Lea assigned | | | | | |
| 11/04/2021 | LR | Receipt and review Judicial Reassignment | 0.10 | $17.50 | 391 |
| 11/04/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 392 |
| 11/04/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 393 |
| 11/04/2021 | LR | Receipt and review Plaintiff's List of Witnesses for hearing on third Motion to Recuse Judge Herbert | 0.10 | $17.50 | 394 |
| fraud no third motion filed motion to recuse Judge Herbert | | | | | |
| 11/04/2021 | LR | ▓▓▓▓▓▓ | 0.50 | $87.50 | 395 |
| 11/04/2021 | LR | Exchange emails with Bay Area Property regarding objections to subpoena | 0.20 | $35.00 | 396 |
| 11/04/2021 | LR | ▓▓▓▓▓▓ | 0.30 | $52.50 | 397 |
| 11/04/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 398 |
| 11/05/2021 | LR | Receipt and review notice of taking deposition of various Board | 0.20 | $35.00 | 399 |
| fraud no depositions of HOA board members prepared | | | | | |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice  90009
Page 3

| Date | Atty | Description     Gibson service | Hours | Amount | |
|---|---|---|---|---|---|
| 11/05/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 400 |
| 11/05/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 401 |
| 11/05/2021 | LR | Telephone conference with Saxman Construction regarding subpoena from plaintiff | 0.30 | $52.50 | 402 |
| 11/08/2021 | LR | Receipt and review Eighth Amendment to Complaint naming Farmers as defendant | 0.10 | $17.50 | 403 |
| 11/08/2021 | LR | Prepare email to Farmer regarding 8th amendment to complaint naming Farmers as defendant | 0.10 | $17.50 | 404 |
| 11/08/2021 | LR | ▓▓▓▓▓▓ | 3.60 | $630.00 | 405 |
| 11/08/2021 | LR | ▓▓▓▓▓▓ | 1.10 | $192.50 | 406 |
| 11/10/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 407 |
| 11/11/2021 | LR | Prepare Case Management Conference Statement | 0.10 | $70.00 | 408 |
| 11/12/2021 | LR | Review of court docket and email to Bay Area Property regarding service of Complaint | 0.20 | $35.00 | 409 |
| 11/12/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 410 |
| 11/15/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 411 |
| 11/16/2021 | LR | ▓▓▓▓▓▓ | 0.10 | $17.50 | 412 |
| 11/16/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 413 |
| 11/16/2021 | LR | Receipt and review Request for Judicial Notice | 0.30 | $52.50 | 414 |
| 11/16/2021 202100-06799411 | LR | Receipt and review email from DFEH regarding interview with Bay Area Property personnel | 0.10 | $17.50 | 415 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice  90009
Page 4

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/18/2021 202100-06799411 | LR | Telephone call to Selma Bravo at Bay Area Property regarding DFEH's request for interview | 0.10 | $17.50 | 416 |
| 11/22/2021 | LR | Exchange emails with counsel for Farmers regarding Doe Amendment 8th to Complaint | 0.20 | $35.00 | 417 |
| 11/23/2021 | LR | Prepare Opposition to Plaintiff's Request for Judicial Notice | 3.40 | $595.00 | 418 |
| 11/29/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 419 |
| 11/29/2021 202100-06799411 | LR | Exchange emails with DFEH regarding interview of Selma Bravo and Yvonne at Bay Area Properties | 0.20 | $35.00 | 420 |
| 11/29/2021 202100-06799411 | LR | Telephone conference with Selma Bravo at Bay Area Properties regarding DFEH's request for interview | 0.20 | $35.00 | 421 |
| 11/30/2021 | LR | Receipt and review Saxman Construction's objection to subpoena from plaintiff | 0.10 | $17.50 | 422 |
| 11/30/2021 202100-06799411 | LR | Prepare lengthy email to carrier with dates of all events, names of all clients and further anticipated activities | 0.60 | $105.00 | 423 |
| 12/01/2021 | LR | ▓▓▓▓▓▓ | 4.20 | $735.00 | 424 |
| 12/01/2021 | LR | ▓▓▓▓▓▓ | 0.50 | $87.50 | 425 |
| 12/01/2021 | LR | ▓▓▓▓▓▓ | 1.80 | $315.00 | 426 |
| 12/03/2021 | LR | ▓▓▓▓▓▓ | 0.30 | $52.50 | 427 |
| 12/07/2021 | LR | ▓▓▓▓▓▓ | 0.40 | $70.00 | 428 |
| 12/01/2021 202100-06799411 | LR | Participate in interview with DFEH and personnel at Bay Area Property Management regarding Plaintiff's complaint of sexual harassment and threats from John Gibson | 1.10 | $192.50 | 429 |
| 12/03/2021 | LR | ▓▓▓▓▓▓ | 0.30 | $52.50 | 430 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice  90009
Page 5

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 12/03/2021 | LR | ▓▓▓▓▓▓ | 0.30 | $52.50 | 431 |
| 12/03/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 432 |
| 12/03/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 433 |
| leave mother's death emergency leave | | | | | |
| 12/03/2021 | LR | Exchange emails with court regarding continuance of December hearings     Gibson Oliver defaults | 0.30 | $52.50 | 434 |
| 12/03/2021 | LR | ▓▓▓▓▓▓ | 0.20 | $35.00 | 435 |
| 12/07/2021 202100-06799411 | LR | Prepare email to carrier regarding continuance of December hearings and interview by DFEH of property management employee | 0.20 | $35.00 | 436 |
| 12/07/2021 | LR | Receipt and review Order from court continuing December hearing dates | 0.10 | $17.50 | 437 |
| 12/07/2021 | LR | Receipt and review Farmers' Motion to Quash Service | 0.20 | $35.00 | 438 |
| 12/10/2021 | LR | ▓▓▓▓▓▓ | 0.40 | $69.50 | 439 |
| 12/14/2021 | LR | ▓▓▓▓▓▓ | 0.30 | $52.50 | 440 |
| 12/17/2021 202100-06799411 | LR | Receipt and review Notice of Case Closure from DFEH | 0.10 | $17.50 | 441 |
| 12/17/2021 202100-06799411 | LR | Prepare email to carrier and insureds regarding closure of DFEH claims due to lack of evidence | 0.20 | $35.00 | 442 |
| 12/21/2021 | LR | ▓▓▓▓▓▓ | 0.40 | $69.50 | 443 |
| 12/23/2021 | LR | Receipt and review Plaintiff's Opposition to motion for summary judgment/adjudication including plaintiff's separate statement of undisputed facts and declaration with exhibits (336 pages) | 2.40 | $420.00 | 444 |
| 12/27/2021 | LR | Prepare Reply Brief to motion for summary judgment/adjudication, | 6.80 | $1,190.00 | 445 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Baum
P.O. Box 268994
Oklahoma City, OK  73126-8994

February 13, 2023
Invoice 90876
Matter ID: FRM-1837
Christopher B. Allred
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 4/30/2022

LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/03/2022 | LR | Receipt and review Case Management Conference from specialty appearing Dave Pasowski | 0.10 | $17.50 | 446 |
| 1/04/2022 | LR | Exchange emails with Dave Yaszushib counsel regarding defendants' motion for summary judgment and demurrer | 0.20 | $35.00 | 447 |
| 1/10/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.20 | $35.00 | 448 |
| 1/13/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.20 | $35.00 | 449 |
| 1/13/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.40 | $70.00 | 450 |
| 1/14/2022 | LR | Receipt and review email from plaintiff's limited scope attorney regarding hearing on defendants' motion for summary judgment | 0.10 | $17.50 | 451 |
| 1/14/2022 | LR | Telephone conference with counsel for Farmers regarding defendants' demurrer and issues related to plaintiff's failure to prosecute | 0.50 | $87.50 | 452 |
| 1/14/2022 | LR | Draft email to counsel for Farmers regarding defendants' demurrer, motion to strike and motion for summary judgment | 0.20 | $35.00 | 453 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90876
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/14/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.80 | $140.00 | 454 |
| 1/18/2022 | LR | Receipt and review of Farmers second motion to quash service of summons | 0.20 | $35.00 | 455 |
| 1/19/2022 | LR | Receipt and review letter from counsel for Farmers regarding intention to seek ex parte hearing to advance hearing date for motion to quash service of summons | 0.10 | $17.50 | 456 |
| 1/19/2022 | LR | Draft email to Farmers' counsel regarding no objection to ex parte to advance hearing on motion to quash | 0.10 | $17.50 | 457 |
| 1/25/2022 | LR | Emails to and from court clerk regarding new hearing dates for demurrer, motion to strike, motion to set aside default and motion for summary judgment | 0.20 | $35.00 | 458 |
| 1/26/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.20 | $35.00 | 459 |
| 1/27/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.20 | $35.00 | 460 |
| 2/01/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.30 | $52.50 | 461 |
| 2/08/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.40 | $70.00 | 462 |
| 2/09/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.40 | $70.00 | 463 |
| 2/09/2022 | LR | Telephone conference with expert regarding combined motion for summary judgment hearing date | 0.20 | $35.00 | 464 |
| 2/15/2022 | LR | Receipt and review multiple Orders from court regarding continuances of hearings on all motions on calendar | 0.30 | $52.50 | 465 |
| 2/16/2022 | LR | Draft email to property management company with update on new hearing dates | 0.30 | $52.50 | 466 |
| 2/17/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 2.40 | $420.00 | 467 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90876
Page 4

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 2/17/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 1.20 | $210.00 | 468 |
| 2/17/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.40 | $70.00 | 469 |
| 2/17/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.40 | $70.00 | 470 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion to compel regarding subpoena to Union Bank | 0.30 | $52.50 | 471 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion to compel regarding subpoena to Wells Fargo | 0.20 | $35.00 | 472 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion to compel regarding subpoena for deposition of Richard Fong | 0.20 | $35.00 | 473 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion for protective order | 0.30 | $52.50 | 474 |
| 2/25/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 1.80 | $315.00 | 475 |
| 3/04/2022 | LR | Appear (telephonically) for Case Management Conference and hearing on Farmer's Motion to Quash service of summons | 1.60 | $280.00 | 476 |
| 3/04/2022 | LR | Receipt and review court's additional tentative rulings on Farmer's motion to quash, plaintiff's motion for protective order and plaintiff's motion for order compelling compliance with subpoena | 0.20 | $35.00 | 477 |
| 3/09/2022 | LR | Prepare Case Management Conference Statement | 0.40 | $70.00 | 478 |
| 3/10/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 2.70 | $472.50 | 479 |

Elizabeth Tigano Meadow Brook John Gibson sexual harassment case 09-23-3267-Tigano / Meadow Brook Village Association – Fremont 202307-23456631

| 3/18/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.40 | $70.00 | 480 |
| 3/18/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | | | 481 |

Elizabeth Tigano Meadow Brook John Gibson sexual harassment case 09-23-3267-Tigano / Meadow Brook Village Association – Fremont 202307-23456631

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90876
Page 5

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 3/18/2022 | LR | ...harassment case 09-23-3267-Tigano / Meadow Brook Village | 0.50 | $87.50 | 482 |
| 3/19/2022 | LR | Exchange emails with carrier and client regarding court's decision to continue hearings on motions | 0.30 | $52.50 | 483 |
| 4/04/2022 | LR | Prepare Case Management Conference Statement | 0.40 | $70.00 | 484 |
| 4/08/2022 | LR | Receipt and review Supplemental Declaration of Tiffany Ng in opposition to Motion for Order Compelling Compliance with Subpoena by Union Bank | 0.20 | $35.00 | 485 |
| 4/11/2022 | LR | Receipt and review Order regarding hearing on motion for contempt | 0.10 | $17.50 | 486 |
| 4/11/2022 | LR | Receipt and review Plaintiff's Reply in support of motion to compel Union Bank's compliance with subpoena | 0.10 | $17.50 | 487 |
| 4/11/2022 | LR | Receipt and review Plaintiff's Reply to Motion to Compel Richard Fong's compliance with deposition subpoena | 0.20 | $35.00 | 488 |
| 4/11/2022 | LR | Receipt and review Plaintiff's Case Management Conference Statement with attachments | 0.20 | $35.00 | 489 |
| 4/13/2022 | LR | Telephone conference with counsel for Wells Fargo regarding plaintiff's motion to compel compliance with subpoena | 0.20 | $35.00 | 490 |
| 4/14/2022 | LR | ▒▒▒▒▒▒▒▒▒▒▒ | 0.20 | $35.00 | 491 |
| 4/14/2022 | LR | Telephone conference with counsel for Wells Fargo regarding plaintiff's motion to compel compliance with subpoena | 0.30 | $52.50 | 492 |
| 4/20/2022 | LR | Receipt and review Plaintiff's request for reasonable accommodation through ADA coordinator at Case Management Conference | 0.20 | $35.00 | 493 |
| 4/25/2022 | LR | Attend Case Management Conference and hearing on Farmers' Motion to Quash service, via remote video conferencing | 2.70 | $472.50 | 494 |

Inadvertent previous billing entry 476 wherein Luanne stated attended this hearing and CMC

| TOTAL LEGAL SERVICES | 28.10 | $4,917.50 |

LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|------|---|-------|-----------|--------|
| Luanne Rutherford | Partner | 28.10 | $175.00 | $4,917.50 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

February 13, 2023
Invoice 90877
Matter ID: FRM-1837
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 6/30/2022**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 5/02/2022 | LR | ███████████ | 0.60 | $105.00 | 495 |
| 5/02/2022 | LR | ███████████ | 1.80 | $315.00 | 496 |
| 5/02/2022 | LR | ███████████ | 1.50 | $262.50 | 497 |
| 5/04/2022 | LR | Receipt and review Notice of Entry of Order granting Farmers' Motion to Quash service | 0.10 | $17.50 | 498 |
| 5/04/2022 | LR | ███████████ | 0.50 | $87.50 | 499 |
| 5/04/2022 | LR | ███████████ | 0.40 | $70.00 | 500 |
| 5/05/2022 | LR | ███████████ | 2.40 | $420.00 | 501 |
| 5/05/2022 | LR | ███████████ | 1.20 | $210.00 | 502 |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90877
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 5/05/2022 | LR | Receipt and review court's tentative ruling on defendants' motion for summary judgment | 0.40 | $70.00 | 503 |
| 5/05/2022 | LR | Receipt and review email regarding plaintiff contesting tentative ruling on defendants' motion for summary judgment | 0.10 | $17.50 | 504 |
| 5/06/2022 | LR | Prepare for oral argument at hearing on defendants' motion for summary judgment including review of moving, opposition and reply papers and court's tentative ruling | 1.30 | $227.50 | 505 |
| 5/06/2022 | LR | Attend hearing on defendants' motion for summary judgment, via remote video conferencing | 1.20 | $210.00 | 506 |
| 5/06/2022 | LR | ███████████ | 0.40 | $70.00 | 507 |
| 5/10/2022 | LR | ███████████ | 0.10 | $17.50 | 508 |
| 5/11/2022 | LR | ███████████ | 0.20 | $35.00 | 509 |
| 5/11/2022 | LR | Notify court and plaintiff of intention to contest tentative ruling on demurrer granting leave to amend no motion for leave to amend filed by plaintiff | 0.10 | $17.50 | 510 |
| 5/11/2022 | LR | Receipt and review Case Management Order setting trial | 0.10 | $17.50 | 511 |
| 5/12/2022 | LR | ███████████ | 1.40 | $245.00 | 512 |
| 5/12/2022 | LR | ███████████ | 0.70 | $122.50 | 513 |
| 5/13/2022 | LR | ███████████ | 0.80 | $140.00 | 514 |
| 5/13/2022 | LR | ███████████ | 1.80 | $315.00 | 515 |
| 5/13/2022 | LR | Receipt and review letters from plaintiff in support of her claim for continuance of hearings | 0.20 | $35.00 | 516 |
| | ADA vasco admin | | | | |

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90877
Page 4

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 5/19/2022 | LR | Receipt and review order on defendants' motion for summary judgment | 0.20 | $35.00 | 517 |
| 5/19/2022 | LR | ███████████ | 0.10 | $17.50 | 518 |
| 5/19/2022 | LR | Prepare Judgment on motion for summary judgment | 0.50 | $87.50 | 519 |
| 5/19/2022 | LR | Draft email to plaintiff with proposed Judgment for approval no attorney fees and costs sought | 0.20 | $35.00 | 520 |
| 5/19/2022 | LR | Draft lengthy email to carrier and clients regarding granting of motion for summary judgment, status of demurrer, trial date and further settlement discussions and obligations under insurer agreement to waive fees and costs in case | 0.50 | $87.50 | 521 |
| 5/20/2022 | LR | Receipt and review email from carrier regarding agreement to waive attorney's fees and costs | 0.10 | $17.50 | 522 |
| 5/20/2022 | LR | Exchange emails with Farmers regarding Plaintiff's 8th Amendment to Complaint | 0.20 | $35.00 | 523 |
| 6/01/2022 | LR | Receipt and review court's tentative ruling on demurrer and send emails and message through eCourt of intent to contest tentative ruling | 0.30 | $52.50 | 524 |
| 6/02/2022 | LR | ███████████ | 0.30 | $52.50 | 525 |
| 6/03/2022 | LR | ███████████ | 3.20 | $560.00 | 526 |
| 6/09/2022 | LR | Exchange multiple emails with Farmers counsel regarding responses to form interrogatories and what insurance information was provided to plaintiff | 0.50 | $87.50 | 527 |
| 6/13/2022 | LR | Receipt and review of Farmers' Third Motion to Quash service of summons | 0.30 | $52.50 | 528 |
| 6/13/2022 | LR | Receipt and review email from plaintiff regarding Farmers' Motion to Quash service of summons | 0.10 | $17.50 | 529 |
| 6/29/2022 | LR | Prepare email to all insureds regarding court sustaining demurrers with leave to amend, denial of motions to strike punitive damages and need for plaintiff to file and serve First Amended Complaint | 0.40 | $70.00 | 530 |

**TOTAL LEGAL SERVICES**     24.20     $4,335.00

All insured - I am also insured so this is to all the HOA community

---

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

February 13, 2023
Invoice 90878
Matter ID: FRM-1837
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 1/31/2023**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 7/20/2022 | CBA | Receipt and review of Farmers Insurance Exchange's' notice of no opposition to its motion to quash service of summons and no demurrer for failure to timely serve summons | 0.10 | $16.00 | 531 |
| 8/01/2022 | CBA | Receipt and review of the Court's order regarding plaintiff's leave to file a First Amended Complaint. | 0.20 | $32.00 | 532 |
| 8/05/2022 | CBA | Receipt and review of emails from plaintiff and the courtroom clerk regarding closed hearing on plaintiff's motion for reconsideration. | 0.20 | $32.00 | 533 |
| 8/10/2022 | CBA | Receipt and review of email from Court regarding hearing on plaintiff's Motion for Reconsideration of defendant's Motion for Summary Judgment, and deadline for plaintiff to file her First Amended Complaint. | 0.20 | $32.00 | 534 |
| 8/11/2022 | CBA | Telephone conference with client regarding case status including hearing on plaintiff's Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment and the deadline for plaintiff to file a First Amended Complaint. | 0.30 | $48.00 | 535 |
| 8/16/2022 | CBA | Receipt and review of Case Management Order regarding plaintiff's Motion for Reconsideration and deadline to file First Amended Complaint. | 0.20 | $32.00 | 536 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bucsiales v. Meadow Brook Village HOA

LEGAL SERVICES

| Date | Attn | Description | Hours | Amount |
|---|---|---|---|---|

TOTAL LEGAL SERVICES

LEGAL SERVICES SUMMARY

DISBURSEMENTS

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 91778
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 3/13/2023 | CBA | Receipt and review of plaintiff's Motion to Disqualify Opposing Counsel, including review of supporting declarations of plaintiff and Elizabeth Tigano. | 1.20 | $210.00 | 566 |
| 3/13/2023 | CBA | Receipt and review of plaintiff's Demand for Exchange of Expert Witness Information, and Disclosure of Expert Witness Information. Defendants never provided expert disclosure; court did not enforce defendants to do so either | 0.40 | $70.00 | 567 |
| 3/13/2023 | CBA | Draft email emails to plaintiff regarding her Reply Brief in support of her Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, Motion to Disqualify, and First Amended Complaint, including issues regarding lack of proper service, conflicting hearing dates, and identification of exhibits. | 0.40 | $70.00 | 568 |
| 3/14/2023 | CBA | Review and reply to emails from counsel for Farmers Insurance Exchange regarding plaintiff's First Amended Complaint, lack of proof of service and summons, and plaintiff's request to continue hearing dates. | 0.20 | $35.00 | 569 |
| 3/23/2023 | CBA | Receipt and review of court order regarding hearing on Farmers' Motion to Quash Service of Summons. | 0.10 | $17.50 | 570 |
| 3/28/2023 | CBA | Review and reply to email from counsel for Farmers Insurance Exchange regarding hearings on Farmers' Motion to Quash and plaintiff's Motion for Reconsideration. | 0.10 | $17.50 | 571 |
| 3/31/2023 | CBA | Prepare meet and confer letter to plaintiff regarding improper service of First Amended Complaint, including issues regarding incomplete First Amended Complaint and incorrect proof of service. | 0.80 | $140.00 | 572 |
| | | TOTAL LEGAL SERVICES | 13.30 | $2,327.50 | |

LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Christopher B. Alford | Partner | 13.30 | 175.00 | $2,327.50 |
| | TOTAL: | 13.30 | | $2,327.50 |

Total Fees and Disbursements     $2,327.50
TOTAL CURRENT CHARGES     $2,327.50

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

May 17, 2023
Invoice 92484
Matter ID: FRM-1877
Christopher B. Alford
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mass
Claim No: 5005612246-1-2

For Services Rendered Through 4/30/2023

LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 4/03/2023 | CBA | Review and reply to email from plaintiff regarding ADA request for continuation of existing hearings. | 0.30 | $42.00 | 573 |
| 4/27/2023 | CBA | Several emails to and from counsel for Farmers Insurance Exchange regarding plaintiff's ADA requests for further continuation of hearings on her Motion for Reconsideration and Motion to Quash service of summons. | 0.30 | $63.00 | 574 |
| 4/03/2023 | CBA | Review and reply to email (form carrier regarding pre-trial conference and various new case updates regarding plaintiff's First Amended Complaint, and plaintiff's Motion for Reconsideration. | 0.30 | $63.00 | 575 |
| 4/07/2023 | CBA | Prepare email to judge regarding plaintiff's request to ADA coordinator for further continuance of hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, request for Case Management Conference, lack of service of plaintiff's First Amended Complaint, and issues regarding the trial date. | 0.30 | $63.00 | 576 |
| 4/20/2023 | CBA | Receipt and review of email from plaintiff regarding her request to the court for a continuance of the hearing on her Motion for Reconsideration. | 0.10 | $21.00 | 577 |
| 4/19/2023 | CBA | Receipt and review of defendant Farmers Insurance Exchanges' | 0.40 | $84.00 | 578 |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92484
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| | | reply brief in support of its Motion to Quash plaintiff's service of summons, including review of supporting declaration, and proposed order. | | | |
| 4/19/2023 | CBA | Review of the court's demurred order sustaining the demurrer of defendants Leanne Reiter, Aseil Thabat, and Mark Slosarou with leave to amend as to the Complaint in its entirety, and analyze the court's rulings as to each of the twelve causes of action, in preparation of review of plaintiff's First Amended Complaint. | 0.40 | $84.00 | 579 |
| 4/19/2023 | CBA | Receipt and review of plaintiff's verified First Amended Complaint, including review and analysis of factual allegation and causes of action 1-4, and evaluate grounds for demurrer and motion to strike (pages 1-369) | 3.80 | $798.00 | 580 |
| 4/20/2023 | CBA | Further initial review of plaintiff's verified First Amended Complaint, including review and analysis of causes of action 5-26, and evaluate grounds for demurrer until motion to strike (pages 370-760). | 4.30 | $861.00 | 581 |
| 4/21/2023 | CBA | further initial review of plaintiff's verified First Amended Complaint, including review and analysis of causes of action 27-93, and evaluate grounds for demurrer and motion to strike (pages 761- | 5.40 | $1,134.00 | 582 |
| NO FORMAL MOTION TO STRIKE OR DEMURRER FILED ONLY EMAILS TO COURT | | | | | |
| 4/24/2023 | CBA | Review and reply to email from client LeAnne Reiter regarding case status and plaintiff's First Amended Complaint. | 0.20 | $42.00 | 583 |
| 4/25/2023 | CBA | Receipt and review of email from judge regarding plaintiff's ADA request regarding hearing schedule. | 0.10 | $21.00 | 584 |
| 4/25/2023 | CBA | Further initial review of plaintiff's verified First Amended Complaint, including review and analysis of causes of action 94-124, and evaluate grounds for demurrer and motion to strike (pages 1,289-1,828). | 5.80 | $1,218.00 | 585 |
| 4/26/2023 | CBA | Receipt and review of email from plaintiff to court regarding Vesco hearing, hearings on Motion for Reconsideration, Motion to Quash, and Americans with Disabilities Act grievance complaint. | 0.20 | $42.00 | 586 |
| 4/26/2023 | CBA | Review and reply to email from counsel for Farmers Insurance Exchange regarding plaintiff's request to the court to set a Vesco hearing. | 0.10 | $21.00 | 587 |
| 4/26/2023 | CBA | Receipt and review of email from plaintiff regarding documentation in support of her request for Vesco hearing, | 0.20 | $42.00 | 588 |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92484
Page 4

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| | | including review of attached medical records from her doctor's regarding limitations for attendance at hearings. | | | |
| 4/26/2023 | CBA | Receipt and review of voluminous exhibits to plaintiff's First Amended Complaint (301 pages). | 3.20 | $672.00 | 589 |
| 4/27/2023 | CBA | Review and reply to email from judge regarding ruling on plaintiff's request for ADA accommodation and hearing on plaintiff's Motion for Reconsideration. | 0.10 | $21.00 | 590 |
| 4/27/2023 | CBA | Receipt and review of the Court's Tentative Ruling on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.30 | $63.00 | 591 |
| 4/27/2023 | CBA | Draft email to carrier regarding the Court's Tentative Ruling on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, plaintiff's request to the ADA coordinator regarding special accommodations, service of plaintiff's First Amended Complaint, and further hearings. | 0.30 | $63.00 | 592 |
| 4/27/2023 | CBA | Review and reply to emails from counsel for Farmers Insurance Exchange regarding the Court's Tentative Ruling on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.20 | $42.00 | 593 |
| 4/27/2023 | CBA | Receipt and review of email from plaintiff regarding Vesco hearing including review of attached doctor's note. | 0.20 | $42.00 | 594 |
| 4/27/2023 | CBA | Receipt and review of email from plaintiff regarding notice of intent to appear and contest the court's tentative ruling denying plaintiff's Motion for Reconsideration, issue regarding need for Vesco hearing to address hearing schedule. | 0.20 | $42.00 | 595 |
| 4/27/2023 | CBA | Prepare for and argument at hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, including review of plaintiff's motion and reply brief, and supporting declarations and exhibits. | 2.10 | $441.00 | 596 |
| 4/27/2023 | CBA | Prepare Judgment in favor of defendants Association Northern California, Meadow Brook Village Association - Fremont, and Massinghton Associates, and dismissal with prejudice. | 0.60 | $126.00 | 597 |
| 4/28/2023 | CBA | Receipt and review of email from plaintiff regarding her sister's inability to testify as a witness at the hearing on plaintiff's Motion for Reconsideration, including review of attached supporting medical records of plaintiff's sister. | 0.10 | $42.00 | 598 |

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92484
Page 5

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 4/27/2023 | CBA | Further review of voluminous exhibits to plaintiff's First Amended Complaint (470 pages). | 4.30 | $903.00 | 599 |
| 4/28/2023 | CBA ADMIN | Attend Vesco hearing regarding plaintiff's request for ADA accomodations, including discussions regarding hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, via remote video conference. | 1.20 | $252.00 | 600 |
| 4/28/2023 | CBA ADmin vesco | Review and reply to email from carrier regarding Vesco hearing regarding plaintiff's request for ADA accomodations and hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.20 | $42.00 | 601 |
| 4/28/2023 | CBA | Continue and complete review of voluminous exhibits to plaintiff's First Amended Complaint (125 pages). | 1.10 | $231.00 | 602 |
| | | **TOTAL LEGAL SERVICES** | **36.20** | **$7,602.00** | |

### LEGAL SERVICES SUMMARY

| Name | | Rate/Hour | Amount |
|---|---|---|---|
| Christopher B. Allard | Partner | | |
| | Hours | | |
| | 36.20 | 210.00 | $7,602.00 |
| **TOTAL** | **36.20** | | **$7,602.00** |

Total Fees and Disbursements $7,602.00
TOTAL CURRENT CHARGES $7,602.00

---

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

June 17, 2023
Invoice 92842
Matter ID: FR84-1837
Christopher B. Abad
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Has
Claim No: 5005612246-1-2

For Services Rendered Through 5/31/2023

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/01/2023 | CBA | Receipt and review of Union Bank's Opposition to plaintiff's second motion for an order compelling compliance with subpoena to produce clients' banking records, including review of supporting declaration with exhibits. | 0.60 | $126.00 | 603 |
| 5/01/2023 | CBA | Prepare stipulation of the parties to extend deadline to file responsive pleading after order on plaintiff's Motion for Reconsideration, pursuant to judge's instruction. Eumi Lee directed favorable stipulation to defendants to be prepared. | 0.80 | $168.00 | 604 |
| 5/01/2023 | CBA | Receipt and review of emails from plaintiff regarding request for stipulation to continue Case Management Conference, including review of attached medical records and proposed stipulation. | 0.30 | $63.00 | 605 |
| 5/01/2023 | CBA | Review and reply to email from counsel for Union Bank regarding plaintiff's second motion for an order compelling compliance with subpoena to produce clients banking records, appearance at hearing, and request for plaintiff's underlying motion. | 0.20 | $42.00 | 606 |
| 5/01/2023 | CBA | Receipt and review of plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records, including review of supporting declaration and exhibits (287 pages). | 2.40 | $504.00 | 607 |
| 5/01/2023 | CBA | Receipt and review of email from plaintiff to Judge and ADA coordinator regarding request for Vesco hearing regarding | 0.40 | $84.00 | 608 |

---

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92842
Page 3

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | disability accommodations and request for continuance of Case Management Conference and hearing on plaintiff's Motion to Compel Union Bank's compliance with records subpoena, including review of attached supporting documentation from plaintiff. | | | |
| 5/01/2023 | CBA no formal objections just emails to judge | Draft email to plaintiff, Judge and ADA coordinator with objections to plaintiff's request for disability accommodations and request for continuance of Case Management Conference. | 0.30 | $63.00 | 609 |
| 5/01/2023 | CBA | Prepare proposed order on stipulation of the parties to extend deadline to file responsive pleading after order on plaintiff's Motion for Reconsideration. Eumi Lee pushed this stipulation on Plaintiff in hearing | 0.30 | $63.00 | 610 |
| 5/02/2023 | CBA | Attend conference with carrier regarding case status including discussions regarding plaintiff's First Amended Complaint, discussion, Motion to Strike, Case Management Conference, expert witnesses, Mandatory Settlement Conference and Trial. | 0.80 | $168.00 | 611 |
| 5/03/2023 | CBA | Receipt and review of email from plaintiff to Judge regarding request for continuance of Case Management Conference. | 0.10 | $21.00 | 612 |
| 5/03/2023 | CBA | Draft email to plaintiff regarding stipulation of the parties to extend deadlines to file responsive pleading after order on plaintiff's Motion for Reconsideration. | 0.10 | $21.00 | 613 |
| 5/03/2023 | CBA | Review and reply to email from plaintiff regarding stipulation to extend deadlines for defendants to file and serve responsive pleading to plaintiff's First Amended Complaint, including review of stipulation executed by plaintiff. | 0.20 | $42.00 | 614 |
| 5/04/2023 | CBA | Prepare for Case Management Conference, including review of file. | 0.30 | $63.00 | 615 |
| 5/04/2023 | CBA | Receipt and review of the court's Tentative Case Management Order. | 0.20 | $42.00 | 616 |
| 5/04/2023 | CBA | Receipt and review of the court's tentative ruling regarding plaintiff's motion for an order compelling Old North State Trust to comply with plaintiff's deposition subpoena. | 0.20 | $42.00 | 617 |
| 5/04/2023 | CBA | Receipt and review of the court's tentative ruling on Farmers' Insurance Exchanges' motion to quash service of summons and motion to dismiss. | 0.20 | $42.00 | 618 |

---

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92842
Page 4

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/05/2023 | CBA | Prepare defendants' detailed Case Management Conference statement, including issues regarding the case not being at issue, no operative complaint, demurrer, motion to strike, request to vacate trial, and issue regarding plaintiff's lack of service of filings. no motions to vacate, strike just oral or emails to court which judge indulges always | 0.80 | $168.00 | 619 |
| 5/05/2023 | CBA | Receipt and review of the Court's Order on plaintiff's Motion for Reconsideration and Vesco hearing. | 0.20 | $42.00 | 620 |
| 5/08/2023 | CBA | Receipt and review of plaintiff's Supplemental Reconsideration Order. | 0.20 | $42.00 | 621 |
| 5/08/2023 | CBA | Receipt and review of the court's order on Farmers Insurance Exchange's Motion to Quash Service of Summons, and to dismiss. | 0.20 | $42.00 | 622 |
| 5/08/2023 | CBA | Receipt and review of the court's order on plaintiff's Motion for Court determined Old North State out of state subpoena - 3rd party did not need to appear embarrassment | 0.10 | $21.00 | 623 |
| 5/10/2023 | CBA | Receipt and review of emails from plaintiff to Judge regarding notice of intent to appear and contest the court's tentative ruling on her Motion for Reconsideration. | 0.20 | $42.00 | 624 |
| 5/11/2023 | CBA | Receipt and review of the court's amended tentative ruling on plaintiff's Motion for Reconsideration. tentative rulings always favorable to defendants always | 0.20 | $42.00 | 625 |
| 5/11/2023 | CBA | Prepare for oral argument at continued hearing on plaintiff's Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, including review and analysis of additional arguments and documents referenced by plaintiff in her notice of contesting the court's tentative ruling. | 1.40 | $294.00 | 626 |
| 5/12/2023 | CBA | Attend continued hearing on plaintiff's Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, via Zoom video conferencing. | 1.30 | $273.00 | 627 |
| 5/12/2023 | CBA | Prepare defendants' Opposition to plaintiff's Motion to Disqualify Opposing Counsel. | 2.40 | $504.00 | 628 |
| 5/12/2023 | CBA | Prepare declaration in support of defendants' Opposition to plaintiff's Motion to Disqualify Opposing Counsel | 0.60 | $126.00 | 629 |
| 5/16/2023 | CBA | Prepare defendants' Demand for Exchange of Expert Witness Information. | 0.30 | $63.00 | 630 |
| 5/18/2023 | CBA | Receipt and review of the court's Tentative Ruling on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena. | 0.20 | $42.00 | 631 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92842
Page 5

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/18/2023 | CBA | Receipt and review of plaintiff's notice of intent to appear and contest the court's Tentative Ruling on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena. | 0.10 | $21.00 | 632 |
| 5/18/2023 | CBA | Prepare for oral argument at hearing on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records, including review of file, plaintiff's motion, and Union Banks' Opposition. | 0.40 | $84.00 | 633 |
| 5/19/2023 | CBA | Attend hearing on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records, via Zoom video conference, bank attorneys were there to argue case christopher did not need to attend | 0.80 | $168.00 | 634 |
| 5/19/2023 | CBA | Prepare defendant's Amended Case Management Conference statement, pursuant to Case Management Order from court requesting to know whether case is at issue and as to which defendants, discovery status, status of Alternative Dispute Resolution, and readiness for Mandatory Settlement Conference and Trial. | 0.70 | $147.00 | 635 |
| 5/19/2023 | CBA | Prepare attachment to defendants' Case Management Conference statement, including detailed chart regarding the status of each of the thirty-eight defendants, responsive pleadings including demurrer and motion to strike, and pending motions, pursuant to judge's Order. Judge(s) assisting directing defense counsel repeatedly in case | 0.80 | $168.00 | 636 |
| 5/19/2023 | CBA | Receipt and review of notice of continued hearing on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records. | 0.10 | $21.00 | 637 |
| 5/19/2023 | CBA | Receipt and review of Wells Fargo Bank's opposition to plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena, including review of supporting declaration with exhibits. | 0.60 | $126.00 | 638 |
| 5/19/2023 | CBA | Draft email to counsel for Wells Fargo Bank regarding plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena, and notice of intent to appear and oppose plaintiff's motion, which was not served upon our firm. | 0.10 | $21.00 | 639 |
| 5/20/2023 | CBA | Receipt and review of plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena. | 0.30 | $63.00 | 640 |
| 5/20/2023 | CBA | Review and reply to emails from counsel for Wells Fargo Bank regarding plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena, and similar motion | 0.20 | $42.00 | 641 |

at duplicative billings third party banks had counsel attending and preparation objections

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92842
Page 6

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | brought by plaintiff against Union Bank. | | | |
| 5/23/2023 | CBA | Telephone conference with counsel for Wells Fargo Bank regarding plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena for production of our client's banking records. | 0.40 | $84.00 | 642 |
| 5/24/2023 | CBA | Receipt and review of email from plaintiff to Judge preemptively contesting the court's ruling on her Motion to Disqualify Opposing Counsel, including review of attached docket's note. | 0.20 | $42.00 | 643 |
| 5/25/2023 | CBA | Receipt and review of the court's tentative Case Management Order. | 0.20 | $42.00 | 644 |
| 5/25/2023 | CBA | Receipt and review of the court's tentative ruling on plaintiff's Motion to Disqualify Opposing Counsel, Conflict defense counsel representing Kaiser, Plaintiff and family doctors medical providers | 0.20 | $42.00 | 645 |
| 5/25/2023 | CBA | Prepare for oral argument at hearing on plaintiff's Motion to Disqualify Opposing Counsel, including review of plaintiff's moving papers. Defense counsel never disclosed entire case | 0.60 | $126.00 | 646 |
| 5/25/2023 | CBA | Prepare for Case Management Conference in order to discuss numerous pending issues outlined by Judge in her tentative ruling, including review of file, etc. parte to judge nudging to look at issues | 0.40 | $84.00 | 647 |
| 5/25/2023 | CBA | Receipt and review of emails from plaintiff to Judge contesting the court's tentative ruling on her Motion to Disqualify Opposing Counsel, and tentative Case Management Order. | 0.20 | $42.00 | 648 |
| 5/26/2023 | CBA | Attend hearing on plaintiff's Motion to Disqualify Opposing Counsel, via Zoom video conferencing. | 1.10 | $231.00 | 649 |
| 5/26/2023 | CBA | Attend Case Management Conference, via Zoom video conferencing. | 0.60 | $126.00 | 650 |
| 5/26/2023 | CBA | Telephone conference with carrier regarding updates regarding hearing on plaintiff's motion to disqualify opposing counsel, and Case Management Conference including issue regarding vacated trial, Mandatory Settlement Conference, pending ruling on plaintiff's Motion for Reconsideration, and anticipated Demurrer and Motion to Strike | 0.30 | $63.00 | 651 |
| 5/26/2023 | CBA | Draft email to carrier regarding Mandatory Settlement Conference. | 0.10 | $21.00 | 652 |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 92842
Page 7

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/31/2023 | CBA | Receipt and review of the court's Tentative Ruling on plaintiff's motion for an order compelling Old North State Trust's compliance with subpoena. Judge refusal to order compliance discovery or enforce third parties and defendants vacating defaults | 0.20 | $42.00 | 653 |
| 5/31/2023 | CBA | Receipt and review of detailed email from plaintiff contesting the court's Tentative Ruling on plaintiff's motion for an order compelling Old North State Trust's compliance with subpoena. | 0.30 | $63.00 | 654 |
| 5/31/2023 | CBA | Prepare for oral argument at hearing on plaintiff's motion for an order compelling Old North State Trust's compliance with subpoena to produce clients' banking records, and continued hearings on plaintiff's motion for an order compelling Union Bank and Wells Fargo's compliance with subpoena, including review of file. | 0.70 | $147.00 | 655 |

**TOTAL LEGAL SERVICES**          25.10        $5,243.00

**LEGAL SERVICES SUMMARY**

| Name | | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|---|
| Christopher B. Allard | | Partner | 0.80 | 175.00 | $140.00 |
| Christopher B. Allard | | Partner | 24.30 | 210.00 | $5,103.00 |
| | | **TOTAL:** | 25.10 | | **$5,243.00** |

**DISBURSEMENTS**

| Date | Description | Amount |
|---|---|---|
| 5/2/2023 | Record Fee; To obtain records at Public Portal Alameda Superior Court on 04/22/23, Celeste Vita, paid to; First National Bank of Omaha | $12.00 |
| | **Total Disbursements** | **$12.00** |

**DISBURSEMENTS SUMMARY**

| Description | | Amount |
|---|---|---|
| Record Fee | | $12.00 |
| | **TOTAL** | **$12.00** |

Total Fees and Disbursements          $5,255.00
**TOTAL CURRENT CHARGES**          **$5,255.00**

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. No. 94-1555712

Farmers Insurance
Attn: Corey Brown
P.O. Box 268994
Oklahoma City, OK 73126-8994

July 26, 2023
Invoice 92424
Matter ID: FRM-1837
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mast
Claim No: 5005612565-1-2

For Services Rendered Through 6/30/2023

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 6/02/2023 | CBA | Attend hearings on plaintiff's three motions for an order compelling Union Bank, Wells Fargo, and Old North State Trust to comply with plaintiff's motion to obtain subpoenas to obtain client's banking records, via Zoom video conference. | 1.60 | $336.00 | 656 |
| 6/09/2023 | CBA | Receipt and review of the court's Order denying plaintiff's Motion for an Order Compelling Old North State Trust to Comply with Deposition Subpoena to obtain our client' bank records. | 0.20 | $42.00 | 657 |
| 6/09/2023 | CBA | Receipt and review of the court's Order denying plaintiff's Motion for an Order Compelling Union Bank to Comply with Deposition Subpoena to obtain our clients' bank records. | 0.20 | $42.00 | 658 |
| 6/23/2023 | CBA | Receipt and review of plaintiff's detailed Mandatory Settlement Conference Statement (187 pages). | 2.60 | $546.00 | 659 |
| 6/24/2023 | CBA | Draft email to carrier regarding plaintiff's Mandatory Settlement Conference Statement, plaintiff's demand, and need for defendants' settlement offer. | 0.10 | $21.00 | 660 |
| 6/24/2023 | CBA | Prepare defendants' Mandatory Settlement Conference Statement. | 3.60 | $756.00 | 661 |
| 6/26/2023 | CBA | Conference with carrier regarding Mandatory Settlement Conference, including discussion regarding injunctive relief, settlement offer, status of pleadings, Order to Show Cause issued | 0.50 | $105.00 | 662 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 93428
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| | | to plaintiff, and pending order on plaintiff's Motion for Reconsideration.<br>Judge claimed could not read the FAC yet struck complaint stated it did not comply | | | |
| 6/26/2023 | CBA | Draft email to carrier regarding Order to Show Cause Issued to plaintiff, and authority for settlement offer to plaintiff. | 0.10 | $21.00 | 663 |
| 6/26/2023 | CBA | Receipt and review of the court's Order denying plaintiff's Motion for Reconsideration. | 0.20 | $42.00 | 664 |
| 6/26/2023 | CBA | Draft email to carrier the court's Order denying plaintiff's Motion for Reconsideration, and issues regarding plaintiff's potential for appeal and judgment. | 0.30 | $63.00 | 665 |
| 6/26/2023 | CBA | Further preparation of Judgment to include recovery of attorney's fees and costs pursuant to motion.<br>admin recreation of Lunana Richardson bias and claims | 0.60 | $126.00 | 666 |
| 6/26/2023 | CBA | personal injury matter email insurer to waive costs and fees<br>Review of plaintiff's original Complaint and the twelve causes of action and evaluate ability to seek recovery of attorney's fees from plaintiff as to the HOA and property manager. | 0.60 | $126.00 | 667 |
| 6/27/2023 | CBA | Legal research regarding recovery of costs as prevailing party pursuant to order granting Motion for Summary Judgment. | 1.20 | $252.00 | 668 |
| 6/27/2023 | CBA | personal injury matter<br>Legal research regarding judgment to include an award of attorney's fees pursuant to motion as prevailing party under the<br>personal injury matter Davis-Sterling Act. | 1.80 | $378.00 | 669 |
| 6/27/2023 | CBA | Prepare for attendance at Mandatory Settlement Conference, including review of file. | 1.60 | $336.00 | 670 |
| 6/27/2023 | CBA | Draft email to carrier regarding seeking recovery of costs as prevailing party and motion for attorney's fees pursuant to California Civil Code. | 0.30 | $63.00 | 671 |
| 6/28/2023 | CBA | Review and reply to email from carrier regarding litigation costs in preparation of Mandatory Settlement Conference. | 0.10 | $21.00 | 672 |
| 6/28/2023 | CBA | Attend Mandatory Settlement Conference, via Zoom video conferencing. | 1.80 | $378.00 | 673 |

**TOTAL LEGAL SERVICES**    17.40    $3,654.00

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Christopher B. Allard | Partner | 17.40 | 210.00 | $3,654.00 |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 93428
Page 4

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| | TOTAL | 17.40 | | $3,654.00 |

**DISBURSEMENTS**

| Date | Description | Amount |
|------|-------------|--------|
| 6/5/2023 | Record Fee; To obtain proof of service for records at Public Portal Alameda County Court on 05/09/23, Celeste Vita, paid to; First National Bank of Omaha | $1.00 |
| 6/5/2023 | Record Fee; To obtain plaintiff's second motion compelling union back to comply for records at Public Portal Alameda County Court on 05/09/23, Celeste Vita, paid to; First National Bank of Omaha | $7.50 |
| 6/5/2023 | Record Fee; To obtain copy of substitution of attorney at Public Portal Alameda County Court on 05/09/23, Celeste Vita, paid to; First National Bank of Omaha | $3.00 |
| 6/5/2023 | Record Fee; To obtain copy of court's order regarding CMC at Public Portal Alameda County Court on 05/09/23, Celeste Vita, paid to; First National Bank of Omaha | $4.00 |
| 6/5/2023 | Record Fee; To obtain copy of court's order regarding hearing on motion at Public Portal Alameda County Court on 05/09/23, Celeste Vita, paid to; First National Bank of Omaha | $8.50 |

**Total Disbursements**    $24.00

**DISBURSEMENTS SUMMARY**

| Description | | Amount |
|-------------|--|--------|
| Record Fee | | $24.00 |
| | TOTAL | $24.00 |

| Total Fees and Disbursements | $3,678.00 |
|------------------------------|-----------|
| **TOTAL CURRENT CHARGES** | **$3,678.00** |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

August 21, 2023
Invoice 94062
Matter ID: FRM-1833
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Max
Claim No: 5005412466-1-3

For Services Rendered Through 7/31/2023

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 7/06/2023 | CBA | Prepare letter to judge regarding proposed Judgment, pursuant to court's order granting defendants Associa Northern California, Meadow Brook Village Association - Fremont, and Massingham Associates' Motion for Summary Judgment.<br>nudging court | 0.30 | $63.00 | 674 |
| 7/07/2023 | CBA | Receipt and review of email from plaintiff including review of attachment with partial exhibits to her First Amended Complaint (74 pages). | 0.70 | $147.00 | 675 |
| 7/13/2023 | CBA | Receipt and review of plaintiff's objection to order denying her motion for reconsideration, objection to defendants' proposed Judgment, and second motion for reconsideration. | 0.60 | $126.00 | 676 |
| 7/13/2023 | CBA | Receipt and review of plaintiff's objection to defendant's proposed judgment. | 0.30 | $63.00 | 677 |
| 7/24/2023 | CBA | ███████████████████ | 0.20 | $42.00 | 678 |
| John Gibson | | | | | |
| 7/24/2023 | CBA | Review and reply to email from carrier regarding file-endorsed Judgment in favor of defendants Associa Northern California, Meadow Brook Village Association - Fremont, and Massingham Associates, including a dismissal of these parties. | 0.20 | $42.00 | 679 |
| 7/24/2023 | CBA | Prepare Notice of Entry of Judgment. | 0.10 | $21.00 | 680 |

---

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 94062
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 7/28/2023 | CBA | Draft email to carrier regarding need for information in support of Memorandum of Costs. | 0.10 | $21.00 | 681 |
| 7/31/2023 | HCD | Review file in preparation of Memorandum of Costs summary and worksheet, including review of breakdown of costs; | 0.50 | $50.00 | 682 |
| 7/31/2023 | CBA | Receipt and review of order from court regarding service of Order to Show Cause to plaintiff regarding striking her First Amended Complaint. | 0.10 | $21.00 | 683 |
| | | no formal motions; judge claimed could not | | | |

**TOTAL LEGAL SERVICES**    3.10    $596.00

read instead of obtaining massive FAC from
Information technology department access to FAC - strikes FAC requiring plaintiff to file SAC - embezzlement only requests
emails from defense for judge to comply

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Christopher B. Allard | Partner | 2.60 | 210.00 | $546.00 |
| Heidi C. Ditmer | Paralegal | 0.50 | 100.00 | $50.00 |
| | TOTAL | 3.10 | | $596.00 |

**DISBURSEMENTS**

| Date | Description | Amount |
|------|-------------|--------|
| 7/27/2023 | Record Fee; To obtain court records at Public Portal Alameda County Court on 06/23/23, Llanso Vita, paid to; First National Bank of Omaha | $4.00 |
| | Total Disbursements | $4.00 |

**DISBURSEMENTS SUMMARY**

| Description | | Amount |
|-------------|--|--------|
| Record Fee | | $4.00 |
| | TOTAL | $4.00 |

| Total Fees and Disbursements | $600.00 |
|------------------------------|---------|
| **TOTAL CURRENT CHARGES** | **$600.00** $554.00 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Brauti
P.O. Box 268991
Oklahoma City, OK 73126-8994

September 7, 2023
Invoice 94389
Matter ID: FRM-1837
Christopher D. Afloni
Page 2

Re: Burnstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

For Services Rendered Through 8/31/2023

LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 8/01/2023 | HCD | Review numerous costs documents in preparation of draft Memorandum of Costs summary for attorney review before filing. | 1.50 | $150.00 | 684 |
| 8/09/2023 | HCD | Prepare draft of Memorandum of Costs summary and worksheet for attorney review. | 1.40 | $140.00 | 685 |
| 8/14/2023 | CBA | Further preparation of Memorandum of Costs summary, supporting worksheet, and exhibits. | 1.20 | $252.00 | 686 |
| 8/21/2023 | CBA | Receipt and review of plaintiff's Notice of Motion and Motion to Tax Costs, with exhibits | 0.40 | $84.00 | 687 |
| 8/23/2023 | CBA | Receipt and review of plaintiff's Partial Response to the Court's Order to Show Cause regarding striking of her First Amended Complaint (325 pages). | 3.40 | $714.00 | 689 |
| 8/25/2023 | CBA | Receipt and review of plaintiff's combined Motion for Reconsideration of order denying her motion for reconsideration, and motion to vacate order granting defendants' Motion for Summary Judgment, including review of exhibits (318 pages, partially illegible). | 3.20 | $672.00 | 690 |
| 8/31/2023 | CBA | Draft email to carrier regarding plaintiff's Motion to Tax Costs, Partial Response to the Court's Order to Show Cause regarding striking of her First Amended Complaint including references to | 0.50 | $105.00 | 691 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

November 23, 2022
Invoice  89428
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

### For Services Rendered Through 1/31/2019

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 12/04/2018<br>PIU 806129 | LR | Begin review and analysis of claim file documents from Farmers, including DFEH, DOJ and Alameda Superior Court Complaints | 4.20 | $735.00 | 1 |
| 12/04/2018<br>PIU806129 | LR | Telephone call to HOA's personal counsel at Berding Weil regarding DOJ Complaint | 0.20 | $35.00 | 2 |
| 12/04/2018<br>PIU806129 | LR | Telephone conference with HOA Board President Mike Durbin regarding DOJ Complaint and response to known claims | 1.00 | $175.00 | 3 |
| 12/04/2018<br>PIU806129 | LR | Telephone conference with Bob Maltz regarding various complaints filed by plaintiff and responses to the same | 0.50 | $87.50 | 4 |
| 12/05/2018<br>General | LR | Prepare Litigation Budget | 0.50 | $87.50 | 5 |
| 12/05/2018 | LR | Prepare Association of Attorney | 0.30 | $52.50 | 6 |
| 1/02/2019<br>201810-03850210 | LR | Prepare email to carrier, client and HOA's personal counsel regarding mediation of DFEH claims | 0.30 | $52.50 | 7 |
| 1/02/2019 | LR | Exchange multiple emails with plaintiff regarding depositions and Association of Attorney | 0.60 | $105.00 | 8 |
| 1/02/2019 | LR | Telephone call from HOA's personal counsel regarding placement of lien on plaintiff's property for failure to pay special assessment | 0.10 | $17.50 | 9 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice  89428 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page  3 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/02/2019 | LR | Prepare email to HOA's personal counsel regarding no objection to lien on plaintiff's property for failure to pay special assessment | 0.20 | $35.00 | 10 |
| 1/02/2019 | LR | Receipt and review of email from DFEH regarding plaintiffs' demand for DFEH claims | 0.20 | $35.00 | 11 |
| 1/10/2019 | LR | Receipt and review multiple emails between plaintiff and co-counsel regarding motion to set aside default | 0.40 | $70.00 | 12 |
| 1/17/2019 | LR | Telephone conference with carrier regarding upcoming mediation with DFEH | 0.30 | $52.50 | 13 |
| 1/17/2019 | LR | Exchange emails with DFEH regarding scope of mediation and attendees | 0.60 | $105.00 | 14 |
| 1/17/2019 | LR | Telephone call to insured regarding mediation with DFEH | 0.30 | $52.50 | 15 |
| 1/21/2019 | LR | Begin review and analysis of all complaints, available motions, CC&Rs, CC&Rs Rules and Guidelines, and Declarations from the Bernsteins | 4.80 | $840.00 | 16 |
| 1/22/2019 | LR | Further review of all complaints, available motions, CC&Rs, CC&Rs Rules and Guidelines, and Declarations from the Bernsteins and begin preparation of DFEH mediation brief | 5.60 | $980.00 | 17 |
| 1/22/2019 | LR | Telephone conference with DFEH mediator Elise Chu regarding reasons for canceling mediation | 0.40 | $70.00 | 18 |
| 1/22/2019 | LR | Exchange emails with carrier, client and personal counsel regarding reasons for DFEH canceling mediation | 0.30 | $52.50 | 19 |
| 1/28/2019 | LR | Prepare motion to compel plaintiffs' responses to Form Interrogatories, Request for Production of Documents and for sanctions, including notice, memorandum of points and authorities, supporting declaration and proposed order; | 5.10 | $892.50 | 20 |
| 1/31/2019 | LR | Prepare Motion to have defendants' Request for Admissions to plaintiff deemed admitted, including preparation of notice, MPA, supporting declaration and proposed order; | 3.20 | $560.00 | 21 |
| 1/31/2019 | LR | Receipt and review letter from plaintiff to court regarding withdrawal of motion for contempt against Cidology | 0.10 | $17.50 | 22 |
| 1/31/2019 | LR | Receipt and review letter from Cidology's counsel regarding meet and confer efforts with plaintiff related to deposition subpoena | 0.10 | $17.50 | 23 |

*handwritten annotations:* 201810-03850210; 2019907-067994411; Luanne lied repeatedly that did not cancel mediation

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

November 23, 2022
Invoice  89429
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

### For Services Rendered Through 6/28/2019

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 2/19/2019 | LR | Receipt and review MUFG Union Bank's opposition to plaintiff's motion for order compelling compliance with subpoena | 0.20 | $35.00 | 24 |
| 2/19/2019 LR 201810-03850210 2019907-067994411 | | Review and analyze portions of the over 50,000 pages of documents provided by co-counsel for purposes of preparing response to DFEH Complaint | 4.30 | $752.50 | 25 |
| 2/20/2019 LR 201810-03850210 2019907-067994411 | | Review and analysis of deposition testimony of Tammy Fritz and Sharon Massingham and other related documents, in preparation of finalizing responses to DFEH Complaint (281 pages) | 3.80 | $665.00 | 26 |
| 2/20/2019 | LR | Receipt and review Richard Fong's opposition to plaintiff's motion to compel attendance at deposition | 0.10 | $17.50 | 27 |
| 2/20/2019 | LR | Receipt and review plaintiff's recorded statement no such recording exists | 0.60 | $105.00 | 28 |
| 3/12/2019 LR 201810-03850210 | | Review and analyze voluminous documents from co-counsel relating to plaintiff's claims, including pleadings, correspondence, discovery and documents provided by plaintiff and the HOA, including HOA records | 7.20 | $1,260.00 | 29 |
| 3/18/2019 LR 201810-03850210 | | Review of file for purposes of Round Table with Farmers and prepare Memo with summary of case | 1.50 | $262.50 | 30 |
| 3/19/2019 LR 201810-03850210 | | Participate in Round Table with Farmers | 0.90 | $157.50 | 31 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 89429 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 3/29/2019 | LR | Prepare Ex Parte Application to advance hearing dates on motion to compel and motion to have request for admissions deemed admitted, included preparation of MPA, supporting declaration and proposed order; | 4.30 | $752.50 | 32 |
| 4/02/2019 | LR | Finalize Ex parte Application to advance hearings on motion to compel discovery responses and motion to have request for admissions deemed admitted | 0.30 | $52.50 | 33 |
| 4/02/2019 | LR | Prepare email to plaintiff regarding notice of intent to make ex parte application to advance hearings on motion to compel and motion to deem request for admissions admitted | 0.20 | $35.00 | 34 |
| 4/02/2019 | LR | Prepare email to plaintiff with ex parte papers | 0.20 | $35.00 | 35 |
| 4/05/2019 | LR | Telephone conference with Farmers regarding status of 3 different claims | 0.30 | $52.50 | 36 |
| 201810-03850210 GENERAL | | | | | |
| 4/08/2019 | LR | Attend ex parte hearing with Judge Herbert via Courtcall | 0.80 | $140.00 | 37 |
| 4/08/2019 | LR | Prepare email to plaintiff with third service of ex parte papers | 0.20 | $35.00 | 38 |
| 4/08/2019 | LR | Prepare email to co-counsel regarding court's continuance of ex parte hearing and order for service via email on both of plaintiff's email addresses | 0.30 | $52.50 | 39 |
| 4/10/2019 | LR | Receipt and review plaintiff's opposition to ex parte application to advance hearings on motion to compel and motion to deem request for admissions admitted | 0.70 | $122.50 | 40 |
| 4/11/2019 | LR | Attend ex parte hearings and Case Management Conference via Courtcall | 1.60 | $280.00 HG18897381 | 41 |
| 4/12/2019 | LR | Prepare lengthy email to carrier and client regarding court's order to stay action and continue trial date | 0.60 | $105.00 | 42 |
| 4/12/2019 | LR | Prepare email to carrier with suggested plan of action once stay is lifted     strategizing harassment on plaintiff medical leave | 0.30 | $52.50 | 43 |
| 2019907-067994411 | | | | | |
| 4/16/2019 | LR | Exchange emails with property management company regarding plaintiff's demand to heat the pool and install steps | 0.40 | $70.00 | 44 |
| 202107-067994411 | | | | | |
| 4/30/2019 | LR | Receipt and review Case Management Order from Court regarding continuance of trial and stay of proceedings | 0.20 | $35.00 | 45 |

Plaintiff on a court litigation stay no work to be performed - Plaintiff on litigation stay until 11/4/2020

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK 73126-8994

November 23, 2022
Invoice 89430
Matter ID: FRM-1837
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas

Claim No: 5005612246-1-2

**For Services Rendered Through 9/30/2019**

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 8/02/2019 | LR | Receipt and review email and letter from co-counsel and prepare email in response | 0.20 | $35.00 | 46 |
| 9/03/2019 | LR | Receipt and review Plaintiffs' Case Management Conference Statement | 0.20 | $35.00 | 47 |
| 9/03/2019 | LR | Receipt and review Plaintiff's Motion to Extend Stay | 0.40 | $70.00 | 48 |
| 9/03/2019 | LR | Exchange emails with co-counsel regarding coordinated opposition to plaintiff's motion to extend stay | 0.30 | $52.50 | 49 |
| 9/03/2019 | LR | Receipt and review plaintiff's motion for leave to file First Amended Complaint with exhibits, including review and analysis of plaintiff's proposed First Amended Complaint (229 pages) | 2.40 | $420.00 | 50 |
| 9/10/2019 | LR | | 1.10 | $192.50 | 51 |
| 9/16/2019 | LR | Prepare opposition to Plaintiff's motion to extend stay and for leave to file first amended complaint, including preparation of MPA and supporting declaration with exhibits; | 4.10 | $717.50 | 52 |
| 9/18/2019 | LR | Prepare Case Management Conference Statement | 0.50 | $87.50 | 53 |

*Handwritten annotations:* 2019907-067994411 (next to 8/02/2019); ADA (next to 9/03/2019 Motion to Extend Stay); ADA (near 9/03/2019); FRAUD - not filed until 2021; entry 143 filing 1 27 2021 motion for leave amend complaint; unredact produce entry (next to 9/10/2019)

Different case numbers, erroneous billings restraining order, John Gibson etc.

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| Farmers Insurance | | | Invoice 89430 |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 9/23/2019 RG19034687 | LR | Telephone conference with Mike Durbin regarding service of request for temporary restraining order | 0.90 | $157.50 | 54 |
| 9/23/2019 RG19034687 | LR | Prepare lengthy email to Farmers regarding plaintiff's motion to extend stay and service of request for temporary restraining order on Mike Durbin | 0.70 | $122.50 | 55 |
| 9/23/2019 RG19034687 | LR | Telephone conference with co-counsel regarding plaintiff's request for temporary restraining order | 0.30 | $52.50 | 56 |
| 9/23/2019 RG19034687 | LR | Telephone conference with Farmers regarding plaintiff's request for temporary restraining order | 0.40 | $70.00 | 57 |
| 9/23/2019 RG19034687 | LR | Receipt and review emails between co-counsel and Mike Durbin regarding plaintiff's request for temporary restraining order | 0.30 | $52.50 | 58 |
| 9/25/2019 | LR | Receipt and review Temporary Restraining Order papers and conduct research on required response | 2.80 | $490.00 | 59 |
| 9/25/2019 RG19034687 | LR | Exchange multiple emails with HOA's personal counsel regarding response to plaintiff's request for temporary restraining order | 0.60 | $105.00 | 60 |
| 9/25/2019 RG19034687 | LR | Receipt and review email from Farmers directing us to represent Mike Durbin at hearing on temporary restraining order | 0.10 | $17.50 | 61 |
| 9/25/2019 RG19034687 | LR | Prepare emails to Mike Durbin and HOA's personal counsel regarding representation at hearing on TRO and direction for Durbin to contact office | 0.30 | $52.50 | 62 |
| 9/30/2019 RG19034687 | LR | Exchange emails with Mike Durbin regarding temporary restraining order | 0.20 | $35.00 | 63 |
| 9/30/2019 RG19034687 | LR | Telephone conference with Mike Durbin for purposes of preparing response to plaintiff's request for temporary restraining order | 1.60 | $280.00 | 64 |
| 9/30/2019 RG19034687 | LR | Prepare Response to plaintiff's Request for Civil Harassment Restraining Order | 4.30 | $752.50 | 65 |
| 9/30/2019 RG19034687 RG19034687 | LR | Exchange additional emails with Mike Durbin, carrier and HOA's personal counsel regarding response to plaintiff's request for temporary restraining order | 0.50 | $87.50 | 66 |
| 9/30/2019 RG19034687 | LR | Research regarding title history and lien on Bernstein's property | 1.20 | $210.00 | 67 |
| | | **TOTAL LEGAL SERVICES** | **23.40** | **$4,095.00** | |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

November 23, 2022
Invoice  89431
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 12/19/2019**

Continuance only not held on this date wrong case number not this matter

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 10/01/2019 PIU 806129 Tenancy | LR | Receipt and review email from HOA regarding plaintiff's request for information and prepare responsive email with requirements for response under the Davis Stirling Act | 0.60 | $105.00 | 68 |
| 10/01/2019 RG19034687 | LR | Prepare for oral argument at hearing on plaintiff's request for Civil Harassment Restraining Order, including research on standards for granting of the same | 3.10 | $542.50 | 69 |
| 10/02/2019 RG19034687 | LR | Travel to and from Hayward for hearing on restraining order request against Mike Durbin (68 miles) | 2.80 | $245.00 | 70 |
| 10/02/2019 RG19034687 | LR | Attend hearing on plaintiff's request for Civil Harassment Restraining Order against Mike Durbin Fraud - hearing not held continued | 4.20 | $735.00 | 71 |
| 10/08/2019 ADA | DTW | Review of case materials and preparation of notes and arguments for use at the Court's hearing on Plaintiff's Motions to Extend the Stay of Litigation and for a Protective Order and our Motion to Compel; | 0.80 | $128.00 | 72 |
| 10/09/2019 ADA | DTW | Attend hearing on Plaintiff's request to extend the stay of the case; | 1.60 | $256.00 | 73 |
| 10/09/2019 ADA | DTW | Preparation of written summary and analysis of the occurrences at and information gained from the Court's hearing on Plaintiff's Motion to Extend the Stay of the case; | 0.40 | $64.00 | 74 |

Plaintiff on second stay litigation no work to be performed HG18897381

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | |
|---|---|
| Farmers Insurance | Invoice  89431 |
| Re: Bernstein v. Meadow Brook Village HOA | Page  3 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 10/31/2019 RG19034687 | LR | Exchange emails with Michael Durbin regarding changes to hearing on restraining order | 0.40 | $70.00 | 75 |
| 11/01/2019 RG19034687  RG19035648 RG19036528 RG19037125 | LR | Review of materials on court's docket regarding the multitude of restraining order motions filed by plaintiff   *4 not multitudes* | 0.40 | $70.00 | 76 |
| 11/06/2019 RG19034687 | LR | Receipt and review email from Michael Durbin regarding gall bladder surgery and inability to attend hearing on restraining order  **CONFIDENTIAL MEDICAL DISLCOSURE VIOLATION** | 0.10 | $17.50 | 77 |
| 11/06/2019 RG19034687 | LR | Exchange emails with court clerk regarding Michael Durbin's inability to attend hearing on restraining order | 0.30 | $52.50 | 78 |
| 11/06/2019 RG19034687 | LR | Prepare email to Michael Durbin regarding efforts to continue hearing on restraining order | 0.10 | $17.50 | 79 |
| 11/06/2019 RG19034687 | LR | Receipt and review email from Romula Zafra regarding request for copy of complaint for purposes of trying to apply for a loan with Mutual of Omaha | 0.10 | $17.50 | 80 |
| 11/06/2019 RG19034687 | LR | Prepare email to Farmers regarding Durbin's unavailability for hearing on restraining order | 0.20 | $35.00 | 81 |
| 11/07/2019 RG19034687 | LR | Travel to and from Hayward for hearing on plaintiff's Request for Civil Harassment Restraining Order (68 miles) | 2.70 | $236.25 | 82 |
| 11/07/2019 RG19034687 | LR | Attend hearing on plaintiff's request for Civil Harassment Restraining Order   *Luanne lied to court stated "knee" surgery reason open court as o* | 4.10 | $717.50 | 83 |
| 11/08/2019 RG19034687 | LR | Email to and from client regarding extension of temporary restraining order | 0.30 | $52.50 | 84 |
| 12/19/2019 RG19034687 | LR | ████████████████████ | ~~0.70~~ | ████ $~~122.5~~ | 85 |

*unredact produce entry*              **TOTAL LEGAL SERVICES**          **22.90**          **$3,484.25**

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Luanne Rutherford | Partner | 5.50 | 87.50 | $481.25 |
| Luanne Rutherford | Partner | 14.60 | 175.00 | $2,555.00 |
| Drew T. Williams | Associate | 2.80 | 160.00 | $448.00 |
| | **TOTAL** | **22.90** | | **$3,484.25** |

**Total Fees and Disbursements**              **$3,484.25**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

December 9, 2022
Invoice  89726
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re:Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 8/31/2020**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 1/06/2020  LR | | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.70 | $122.50 | 86 |
| unredact produce entry | | ▮▮▮▮▮▮▮▮▮▮ | | | |
| 1/06/2020   LR | | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 1.80 | $315.00 | 87 |
| unredact produce entry | | ▮▮▮▮▮▮▮▮▮ | | | |
| 1/06/2020  LR | | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.20 | $35.00 | 88 |
| unredact produce entry | | ▮▮▮▮▮▮▮▮ | | | |
| 1/14/2020  LR | | Exchange emails with client regarding hearing on plaintiffs' request for Civil Harassment Restraining Order | 0.30 | $52.50 | 89 |
| RG19034687 | | | | | |
| 1/16/2020  LR | | Receipt and review additional information from property management company regarding plaintiff's objection to cleaning of gutters | 1.70 | $297.50 | 90 |
| Tenancy | | | | | |
| 1/21/2020  LR | | Prepare for hearing on plaintiff's Request for Civil Harassment Restraining Order against Michael Durbin | 1.00 | $175.00 | 91 |
| RG19034687 | | | | | |
| 1/21/2020  LR | | Travel to and from Hayward for hearing on plaintiff's Request for Civil Harassment Restraining Order against Michael Durbin (68 miles) | 2.80 | $245.00 | 92 |
| RG19034687 | | | | | |
| 1/21/2020  LR | | Attend hearing on plaintiff's Request for Civil Harassment | 3.60 | $630.00 | 93 |
| RG19034687 | | | | | |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance                                                      Invoice 89726
Re: Bernstein v. Meadow Brook Village HOA                             Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| | | Restraining Order against Michael Durbin | | | |
| 1/23/2020 | LR | Draft email to Farmers regarding results of hearing on restraining order | 0.40 | $70.00 | 94 |
| 2/03/2020 | LR | Receipt and review Disassociation of Attorneys from Robert Maltz | 0.10 | $17.50 | 95 |
| 3/30/2020 | LR | ██████████████████████ | ~~0.20~~ | ~~$35.00~~ | 96 |
| 3/30/2020 | LR | ██████████████████████ | ~~0.20~~ | ~~$35.00~~ | 97 |
| 3/31/2020 | LR | ██████████████████████ | ~~0.40~~ | ████ | 98 |
| 4/14/2020 | LR | Draft email to carrier regarding continuance of Case Management Conference | 0.30 | $52.50 | 99 |
| 5/14/2020 | LR | Prepare updated Case Management Conference Statement | 0.50 | $87.50 | 100 |
| 5/28/2020 | LR | Exchange emails with Association members requiring information to refinance property | 0.40 | $70.00 | 101 |
| 6/04/2020 | LR | Exchange numerous emails with HOA's counsel regarding collection of over due assessments from plaintiff | 0.60 | $105.00 | 102 |
| 6/04/2020 | LR | Legal research regarding ownership of Bernstein property | 0.80 | $140.00 | 103 |
| 6/30/2020 | LR | Receipt and review multiple orders setting discovery motions, motion for protective order, and motion to compel compliance with subpoena | 0.40 | $70.00 | 104 |
| 7/01/2020 | LR | Exchange multiple emails with HOA's personal counsel regarding need for declarations to support claim of prejudice to HOA to extend stay in matter | 0.70 | $122.50 | 105 |
| 7/15/2020 | LR | Review and analysis of court docket and recent order related to discovery motions, and review of discovery propounded to date for purposes of determining further litigation strategies in effort to dispose of plaintiff's claims | 3.20 | $560.00 | 106 |
| 7/22/2020 | LR | ██████████████████████ | ~~0.30~~ | ~~$52.50~~ | 107 |

RG19034687

unredact produce entry

unredact produce entry

unredact produce entry

ADA vesco

seeking declaratiohs to prevent
stay medical of plaintiff see entry
Geraldine lies

unredact produce entry

Mike Durbin directing to evade service

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 89726 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 4 | |

| Date | Atty | Description   Directing Mike Durbin to evade service | Hours | Amount | |
|---|---|---|---|---|---|
| 8/19/2020 HG20068279 | LR | Receipt and review documents from Mike Durbin regarding plaintiff's filing of second request for restraining order | 0.30 | $52.50 | 108 |
| 8/20/2020 unredact produce entry | LR | ████████████████████ | 0.70 | $122.50 | 109 |
| 8/20/2020 | LR | Review of court's website regarding plaintiff's filing of additional requests for restraining order | 0.30 | $52.50 | 110 |
| 8/27/2020 | LR | Receipt and review multiple emails regarding Rosen's difficulty obtaining refinancing because of litigation   Rosen has own litigation | 0.20 | $35.00 | 111 |
| 8/28/2020 | LR | Telephone conference with Mike Durbin regarding plaintiff's new request for restraining order | 1.70 | $297.50 | 112 |
| 8/31/2020 | LR | Receipt and review emails from property management company regarding plaintiff's complaints that pool will not open   no mediation fraud | 0.20 | $35.00 | 113 |
| 8/31/2020 2019907-067994411 | LR | Prepare email to carrier and clients regarding mediation | 0.20 | $35.00 | 114 |
| 8/31/2020 2019907-067994411 | LR | Exchange emails with HOA President regarding mediation | 0.20 | $35.00 | 115 |
| 8/31/2020 unrelated case new | LR | Exchange emails with Katrina Nguyen regarding nature of lawsuit and Farmers retention for defense   a different client not my lawsuit | 0.20 | $35.00 | 116 |
| 8/31/2020 | LR | Review of court's docket to check for proof of service of moving papers regarding new request for Restraining Order | 0.20 | $35.00 | 117 |

HG20067974 ghost representation John Gibson   **TOTAL LEGAL SERVICES**   24.80   $4,095.00
2nd restraining order and
second restraining order Mike Durbin RG20068279 **LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 2.80 | 87.50 | $245.00 |
| Luanne Rutherford | Partner | 22.00 | 175.00 | $3,850.00 |
| | **TOTAL** | **24.80** | | **$4,095.00** |

| | |
|---|---|
| Total Fees and Disbursements | $4,095.00 |
| **TOTAL CURRENT CHARGES** | ~~$4,095.00~~ $3,307.50 |
| Balance Forward | $17,886.75 |
| **TOTAL AMOUNT DUE** | $21,981.75 |

**Open Invoices**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

December 9, 2022
Invoice  89727
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 11/30/2020**

this is again civil harassment hearing case number not this matter not enforcement of cc&r

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 9/01/2020 | LR | Review court's docket for proof of service of moving papers regarding new request for restraining order | 0.10 | $17.50 | 118 |
| 9/01/2020 | LR | Draft email to Mike Durbin regarding plaintiff's failure to serve moving papers and expectation for court to set a new hearing date | 0.30 | $52.50 | 119 |
| 9/07/2020 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 120 |
| 9/08/2020 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 121 |
| 10/01/2020 | LR | Draft email to Mike Durbin regarding new hearing date for TRO | 0.20 | $35.00 | 122 |
| 10/27/2020 | LR | Prepare Reply Brief to motion to compel responses to discovery | 0.80 | $140.00 | 123 |
| 10/27/2020 | LR | Prepare Reply Brief to Motion to Have Requests for Admission Deemed Admitted | 0.70 | $122.50 | 124 |
| 11/02/2020 | LR | Receipt and review of court's tentative ruling on Case Management Conference and discovery motions | 0.20 | $35.00 | 125 |
| 11/04/2020 | LR | Attend Case Management Conference via Bluejeans | 2.80 | $490.00 | 126 |

second restraining order Mike Durbin RG20068279

HG20067974 ghost representation John Gibson
2nd restraining order

HG20067974 ghost representation John Gibson 2nd restraining order

second restraining order Mike Durbin RG20068279

litigation stay lifted 11 4 2020

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 89727 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/04/2020 | LR | Receipt and review of notice from court regarding hearings on discovery motions | 0.20 | $35.00 | 127 |
| 11/05/2020 | LR | Receipt and review plaintiff's motion for protective order (219 pages)  *no protective order filed and served this time frame fraud* | 1.80 | $315.00 | 128 |
| 11/06/2020 | LR | Legal research regarding HOA's legal responsibilities for ADA accommodations | 5.60 | $980.00 | 129 |
| *ADA vesco* | | | | | |
| 11/06/2020 | LR | Further legal research regarding mandatory nature of statute related to deeming request for admissions admitted if responses not provided before the hearing | 1.80 | $315.00 | 130 |
| | | *hearing was not 4.9 hours bluejeans* | | | 131 |
| 11/09/2020 | LR | Attend lengthy hearings on defendants' motion to compel and motion to have requests for admission deemed admitted via Bluejeans | 4.90 | $857.50 | |
| 11/09/2020 | LR | Receipt and review Exhibits 1-43 from plaintiff in support of her opposition to the HOA's discovery motions | 1.50 | $262.50 | 132 |
| 11/10/2020 | LR | Research regarding pool expenses to heat in winter and dangers associated with high heat | 1.70 | $297.50 | 133 |
| *tenancy* | | | | | |
| 11/12/2020 | LR | Receipt and review Case Management Order | 0.20 | $35.00 | 134 |
| ~~11/12/2020~~ | ~~LR~~ | ~~Exchange emails with Mike Durbin regarding status of current TRO request and hearing on the same~~  *stricken but not redacted no hearing held on this date* | ~~0.30~~ | ~~$52.50~~ | 134 |
| 11/13/2020 | LR | Receipt and review plaintiff's Objections to orders on discovery motions | 0.40 | $70.00 | 135 |
| 11/13/2020 | LR | Prepare Notice of Entry of Order Granting motion to compel | 0.40 | $70.00 | 136 |
| 11/13/2020 | LR | Prepare Notice of Entry of Order regarding motion to have request for admissions deemed admitted | 0.40 | $70.00 | 137 |
| 11/13/2020 | LR | Receipt and review email from plaintiff regarding Notices of Entry of Orders on discovery motions | 0.10 | $17.50 | 138 |
| 11/25/2020 | LR | Receipt and review email from plaintiff regarding issues with Orders on the HOA's discovery motions | 0.30 | $52.50 | 139 |
| 11/25/2020 | LR | Receipt and review multiple emails from plaintiff to the court objecting to handling of the filing of her oppositions to the HOA's discovery motions | 0.20 | $35.00 | 140 |

Resume review here - cross references all dates and actions fraudulent padded billings

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90001
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 2/24/2021**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/26/2021 | LR | ███████████████████████ | ~~0.80~~ | ~~$140.00~~ | 141 |
| 1/26/2021 | LR | ███████████████████████ | ~~0.50~~ | ~~$87.50~~ | 142 |
| 1/27/2021 | LR | Receipt and review Plaintiff's Motion for Leave to Amend Complaint (94 pages) including review of plaintiff's proposed amended complaint (95 pages)    fraudulent entry 50 states motion for leave amended complaint filed in 2019 | 1.70 | $297.50 | 143 |
| 2/01/2021 | LR | Prepare defendants' Case Management Conference Statement | 0.40 | $70.00 | 144 |
| 2/01/2021 | LR | Exchange emails with current property management company regarding response to plaintiff's filing of motion for leave to amend complaint | 0.20 | $35.00 | 145 |
| 2/04/2021 | LR | Receipt and review plaintiff's motion for leave to file First Amended Complaint including review of proposed First Amended Complaint (443 pages) | 2.80 | $490.00 | 146 |
| 2/05/2021 | LR | Legal research regarding standard for permitting leave to amend complaint | 1.10 | $192.50 | 147 |
| 2/09/2021 | LR | Prepare opposition to plaintiff's motion for leave to file first | 6.70 | $1,172.50 | 148 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice  90001 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page  3 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | amended complaint | | | |
| 2/11/2021 LR unredact and produce entry | | ████████████████ | ~~0.20~~ | ~~$35.00~~ | 149 |
| 2/11/2021 | LR | Exchange emails with property management company regarding anticipated direction of case | 0.30 | $52.50 | 150 |
| 2/16/2021 | LR | Receipt and detailed review of plaintiff's responses to form interrogatories and request for admissions | 3.20 | $560.00 | 151 |
| 2/17/2021 | LR | Receipt and review plaintiff's reply in support of her motion for leave to file First Amended Complaint | 0.90 | $157.50 | 152 |
| 2/18/2021 | LR | ██████████████ | ~~0.20~~ | ~~$35.00~~ | 153 |
| 2/23/2021 | LR | Receipt and review tentative ruling on plaintiff's motion for leave to file First Amended Complaint and multiple emails from plaintiff regarding same | 0.50 | $87.50 | 154 |
| 2/23/2021 | LR | Review of moving papers and opposition to motion for leave to file First Amended Complaint for purposes of preparing for the oral argument at hearing | 0.70 | $122.50 | 155 |
| 2/24/2021 | LR | Attend lengthy hearing on plaintiff's motion for leave to file First Amended Complaint | 2.40 | $420.00 | 156 |
| 2/24/2021 | LR | Receipt and review numerous emails with numerous attachments from plaintiff in response to court's denial of her motion for leave to file First Amended Complaint | 2.10 | $367.50 | 157 |
| 2/24/2021 tenancy issue | LR | Receipt and review video from plaintiff regarding claim that gate is stuck open   no such email to Luanne this date | 0.30 | $52.50 | 158 |
| 2/24/2021 | LR | ████████████████ | ~~0.50~~ | ~~$87.50~~ | 159 |
| 2/24/2021 | LR | Prepare lengthy email to carrier and clients regarding results of motion for leave to file a First Amended Complaint and next steps | 0.60 | $105.00 | 160 |
| 2/24/2021 | LR | ████████████████ | ~~0.60~~ | ████ $105 | 161 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90002
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 4/15/2021**

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 2/25/2021 | LR | Exchange emails with counsel for MUFG Union Bank regarding objections to plaintiff's subpoena for the HOA's banking records | 0.20 | $35.00 | 162 |
| 2/25/2021 | LR | Exchange emails with property management company regarding request for information related to prior attempt at ADR | 0.30 | $52.50 | 163 |
| 2/25/2021 | LR | Receipt and review Doe Amendment to Complaint naming an additional 22 defendants | 0.20 | $35.00 | 164 |
| 2/25/2021 | LR | Participate in exchange of emails regarding the identity and roles of the numerous defendants named in Plaintiff's Doe Amendment | 1.90 | $332.50 | 165 |
| 2/26/2021 | LR | Legal research regarding grounds for motion for summary judgment on plaintiff's individual causes of action | 4.50 | $787.50 | 166 |
| 3/09/2021 | LR | Receipt and review Second Doe Amendment to Complaint | 0.10 | $17.50 | 167 |
| 3/10/2021 | LR | ██████████████████████ | 0.40 | $70.00 | 168 |
| 3/16/2021 | LR | Receipt and review Third Doe Amendment to Complaint | 0.10 | $17.50 | 169 |
| 3/16/2021 | LR | Prepare email to carrier and client regarding Third Doe Amendment to Complaint | 0.20 | $35.00 | 170 |

unredact produce entry

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 90002 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 3/22/2021 | LR | Exchange emails with property manager regarding second Doe Amendment to Complaint | 0.30 | $52.50 | 171 |
| 3/22/2021 | LR | Receipt and review packet from plaintiff purporting to serve Complaint for Doe defendants at our office | 0.20 | $35.00 | 172 |
| | | fraud courtesy copy affidavit of service demonstrates service | | | |
| 3/31/2021 | LR | ████████████████████████ | ~~0.30~~ | ~~$52.50~~ | 173 |
| 3/31/2021 | LR | ████████████████ | ~~0.10~~ | ~~$17.50~~ | 174 |
| 4/07/2021 | LR | Receipt and review Notice of Acknowledgment from plaintiff for newly added defendants | 0.10 | $17.50 | 175 |
| 4/07/2021 | LR | Prepare email to carrier regarding plaintiff's improper service of newly named defendants | 0.20 | $35.00 | 176 |
| 4/08/2021 | LR | Review and analyze voluminous documents from Robert Maltz regarding prior pleadings, correspondence and discovery (1,619 pages) | 5.30 | $927.50 | 177 |
| 201810-03850210 | | excessive and unrelated mostly blank pages provided | | | |
| 4/09/2021 | LR | Review and analyze documents from Robert Maltz regarding HOA vendor services and recorded statements (478 pages) | 4.10 | $717.50 | 178 |
| 201810-03850210 | | | | | |
| 4/15/2021 | LR | Review and analyze voluminous documents from Robert Maltz (pages 1-7,672) for purposes of identifying documents to support defendant's motion for summary judgment | 6.80 | $1,190.00 | 179 |
| 201810-03850210 | | | | | |
| 4/15/2021 | LR | Review and analyze plaintiff's Complaint for purposes of evaluating motion for summary judgment | 1.40 | $245.00 | 180 |
| | | **TOTAL LEGAL SERVICES** | **26.70** | **$4,672.50** | |

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Luanne Rutherford | Partner | 26.70 | 175.00 | $4,672.50 |
| | **TOTAL** | **26.70** | | **$4,672.50** |

| | | |
|---|---|---|
| Total Fees and Disbursements | $4,672.50 | |
| **TOTAL CURRENT CHARGES** | ~~$4,672.50~~ $4,532.50 | |
| Balance Forward | $13,947.50 | |
| **TOTAL AMOUNT DUE** | **$18,620.00** | |

**Open Invoices**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK. 73126-8994

January 6, 2023
Invoice 90003
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 4/30/2021**

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 4/16/2021 | LR | Further review and analysis of voluminous documents from Robert Maltz (pages 7,673-9,924) for purposes of identifying documents to support defendants' motion for summary judgment | 3.10 | $542.50 | 181 |
| 201810-03850210 | | excessive and mostly blank pages and unrelated documents produced by defs | | | |
| 4/19/2021 | LR | Further review and analysis of voluminous documents from Robert Maltz (pages 9,925-21,976) for purposes of identifying documents to support motion for summary judgment | 7.10 | $1,242.50 | 182 |
| 201810-03850210 | | | | | |
| 4/20/2021 | LR | Continue and complete review and analysis of voluminous documents from Robert Maltz (pages 21,977-30,988) for purposes of identifying documents to support motion for summary judgment | 6.70 | $1,172.50 | 183 |
| 201810-03850210 | | | | | |
| 4/21/2021 | LR | Legal research on elements of each of the twelve individual cause of action in plaintiff's complaint for purposes of preparing motion for summary judgment | 6.40 | $1,120.00 | 184 |
| 4/22/2021 | LR | Begin preparation of motion for summary judgment including preparation of with notice and factual background for memorandum of points and authorities | 3.20 | $560.00 | 185 |
| 4/22/2021 | LR | Prepare Notice of Motion and Motion for Summary Judgment | 1.10 | $192.50 | 186 |
| | | motion for summary judgment not filed until 08/10/2021      Fraud | | | |
| 4/22/2021 | LR | Receipt and review multiple emails from plaintiff requesting additional time to prepare opposition to motion for summary judgment      fraud no such email and no msj filed yet | 0.10 | $17.50 | 186 |

motion for summary judgment not filed until 08/10/2021; therefore I could not be requesting more time; my opposition filed 12/21/2021

no summary judgment motion prepared at this time

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | | |
|---|---|---|---|---|---|
| Farmers Insurance | | | | Invoice 90003 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 4/22/2021 | LR | Review of court's domain regarding plaintiff's intention to file motion for stay | 0.30 | $52.50 | 187 |
| 4/26/2021 | LR | Internet research and multiple telephone conferences with potential pool experts | 2.10 | $367.50 | 188 |
| tenancy | | | | | |
| 4/28/2021 | LR | Telephone conference with Andrew Morris regarding providing expert opinion on cost of outdoor heated pool maintenance | 0.70 | $122.50 | 189 |
| tenancy - no expert order approval | | | | | |
| 4/28/2021 | LR | Research regarding therapy pools in Bay Area and special requirements to maintain them | 1.10 | $192.50 | 190 |
| tenancy | | | | | |
| 4/29/2021 | LR | Telephone conference with Farmers regarding request to retain experts on ADA issues | 0.30 | $52.50 | 191 |
| tenancy | | | | | |
| 4/29/2021 | LR | Telephone conference with pool ADA expert Bob Holmer regarding necessary inspections, length of time needs and potential scope of Declaration to support summary judgment | 0.60 | $105.00 | 192 |
| tenancy | | | | | |
| 4/29/2021 | LR | Prepare email to carrier regarding requested scope of authority to retain experts related to motion for summary judgment | 0.40 | $70.00 | 193 |
| tenancy - no court order experts | | | | | |
| 4/29/2021 | LR | Telephone conference with HOA property manager Selina Bravo regarding inspection of pool and equipment | 0.40 | $70.00 | 194 |
| 4/29/2021 | LR | Telephone conference with pool manager regarding inspection of pool and equipment | 0.20 | $35.00 | 195 |
| tenancy | | | | | |
| 4/29/2021 | LR | Multiple telephone calls to potential experts for pool maintenance costs, conversion of pool to therapy pool, special equipment and chemicals needed for purposes of obtaining Declaration to support motion for summary judgment | 1.30 | $227.50 | 196 |
| tenancy | | | | | |
| 4/30/2021 | LR | Exchange emails with pool management company regarding access for visual inspections | 0.30 | $52.50 | 197 |
| tenancy | | | | | |
| | | **TOTAL LEGAL SERVICES** | **35.40** | **$6,195.00** | |

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 35.40 | 175.00 | $6,195.00 |
| | **TOTAL** | **35.40** | | **$6,195.00** |

**Total Fees and Disbursements**          **$6,195.00**

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90004
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 5/28/2021**

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 5/04/2021 tenancy | LR | Exchange emails with property manager and pool company regarding inspections of pool and equipment | 0.20 | $35.00 | 198 |
| 5/04/2021 tenancy | LR | Telephone calls to experts Morris and Holmer regarding scope of inspection of pools and equipment | 0.30 | $52.50 | 199 |
| 5/04/2021 not related to case | LR | Receipt and review email from property manager regarding property layout and access codes | 0.10 | $17.50 | 200 |
| 5/04/2021 tenancy | LR | Prepare email to experts Morris and Holmer regarding pool inspections, property layout and access codes | 0.20 | $35.00 | 201 |
| 5/05/2021 | LR | Further preparation of memorandum of points and authorities in support of motion for summary judgment | 5.10 | $892.50 | 202 |
| 5/07/2021 tenancy | LR | Participate in site visit of pools on property with experts | 3.10 | $542.50 | 203 |
| 5/10/2021 tenancy | LR | Telephone conference with expert Holmer regarding preliminary opinions from pool inspection and prepare email to same with pool permit | 1.00 | $175.00 | 204 |
| 5/12/2021 | LR | Prepare separate statement o undisputed material facts in support of motion for summary judgment | 4.20 | $735.00 | 205 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | Invoice 90004 |
|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/13/2021 | LR | Telephone conference with Susan Herndez regarding Declaration in support of motion for summary judgment | 1.40 | $245.00 | 206 |
| 5/13/2021 | LR | Prepare Declaration of Susan Hernandez in support of motion for summary judgment | 1.70 | $297.50 | 207 |
| 5/14/2021 | LR | Further preparation of separate statement of undisputed material facts in support of motion for summary judgment | 3.20 | $560.00 | 208 |
| 5/17/2021 susan served | LR | Prepare email to Susan Hernandez regarding Doe Amendment naming her as a defendant | 0.20 | $35.00 | 209 |
| 5/24/2021 tenancy | LR | Prepare Declaration of Robert Holmer in support of motion for summary judgment | 2.80 | $490.00 | 210 |
| 5/24/2021 tenancy no court order expert | LR | Telephone conference with Robert Holmer regarding Declaration in support of motion for summary judgment | 0.40 | $70.00 | 211 |
| 5/24/2021 | LR | Prepare email to carrier regarding progress toward filing motion for summary judgment | 0.20 | $35.00 | 212 |
| 5/24/2021 | LR | ██████████████████████████████ ████████████ | 0.20 | $35.00 | 213 |
| 5/25/2021 | LR | ██████████████████████████████ ██████████ | 0.30 | $52.50 | 214 |
| 5/28/2021 | LR | ██████████████████████████████ ████████ | 0.60 | $105.00 | 215 |
| 5/28/2021 | LR | Prepare Declaration of Geraldine Linares in support of opposition to plaintiff's motion to stay case. | 1.10 | $192.50 | 216 |
| 5/28/2021 ADA | LR | Receipt and review plaintiff's motion to stay case | 0.50 | $87.50 | 217 |
| 5/28/2021 | LR | Prepare Declaration of Andrew Morris in support of motion for summary judgment | 2.40 | $420.00 | 218 |
| | | **TOTAL LEGAL SERVICES** | **29.20** | **$5,110.00** | |

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 29.20 | 175.00 | $5,110.00 |
| | **TOTAL** | **29.20** | | **$5,110.00** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90005
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 7/27/2021**

---

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 6/03/2021 | LR | Prepare Case Management Conference Statement | 0.30 | $52.50 | 219 |
| 6/08/2021 | LR | Exchange emails with Susan Hernandez regarding pools at Association | 0.20 | $35.00 | 220 |
| 6/09/2021 | LR | Exchange emails with Geraldine Linares regarding Declaration in support of opposition to plaintiff's motion to stay case | 0.20 | $35.00 | 221 |
| 6/14/2021 LR 3:20-cv-02983-WHO | | Legal research regarding plaintiff's filing of action in US District Court and 9 applications for restraining orders | 0.70 | $122.50 | 222 |
| 6/14/2021 | LR | Prepare opposition to plaintiff's Motion to Stay | 4.20 | $735.00 | 223 |
| 6/14/2021 | LR | Exchange emails with Geraldine Linares regarding Declaration in support of Opposition to plaintiff's Motion for Stay | 0.20 | $35.00 | 224 |
| 6/14/2021 | LR | Exchange emails with all counsel regarding stipulation for good faith settlement release agreement    no such settlement release offer | 0.20 | $35.00 | 225 |
| 6/18/2021 | LR | Further preparation of Opposition to plaintiff's Motion to Stay | 0.80 | $140.00 | 226 |
| 6/21/2021 | LR | Exchange emails with Susan Hernandez regarding pool reopening and rules for use of the same | 0.30 | $52.50 | 227 |

not related to this case
tenancy

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | | Invoice 90005 |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 6/21/2021 | LR | Prepare email to Anthony Morris regarding Declaration in support of motion for summary judgment | 0.20 | $35.00 | 228 |
| 6/29/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.30~~ | ~~$52.50~~ | 229 |
| 6/29/2021 | LR | Legal research regarding HOA's responsibility for criminal activity by association members | 1.30 | $227.50 | 230 |
| 6/29/2021 | LR | Receipt and review plaintiff's Case Management Conference statement with exhbits | 0.20 | $35.00 | 231 |
| 6/30/2021 | LR | Receipt and review tentative ruling on plaintiff's motion to stay | 0.10 | $17.50 | 232 |
| 6/30/2021 | LR | Receipt and review email from plaintiff regarding intention to contest tentative ruling on motion to stay | 0.10 | $17.50 | 233 |
| 6/30/2021 | LR | Receipt and review multiple emails from court regarding new tentative ruling on motion to stay | 0.20 | $35.00 | 234 |
| 6/30/2021 | LR | Prepare email to carrier regarding status of motion for summary judgment | 0.10 | $17.50 | 235 |
| 6/30/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.20~~ | ~~$35.00~~ | 236 |
| 7/01/2021 | LR | Receipt and review new tentative ruling denying plaintiff's motion to stay case | 0.10 | $17.50 | 237 |
| 7/01/2021 | LR | Receipt and review email from plaintiff contesting tentative ruling denying her motion to stay case | 0.10 | $17.50 | 238 |
| 7/01/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.10~~ | ~~$17.50~~ | 239 |
| 7/01/2021 | LR | Prepare email to carrier regarding tentative ruling denying plaintiff's motion to stay and her attack on Judge Herbert | 0.30 | $52.50 | 240 |
| 7/01/2021 | LR | Receipt and review emails exchanged between plaintiff and court regarding court reporter for hearing on motion to stay | 0.20 | $35.00 | 241 |
| 7/01/2021 | LR | Receipt and review email from court with information on Shriver pilot project to provide free legal services for indigent parties in unlawful detainer actions and forward the same to the carrier | 0.10 | $17.50 | 242 |

John Gibson HUD
202109-14705609

ADA general

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | | |
|---|---|---|---|---|---|
| Farmers Insurance | | | | Invoice 90005 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 4 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 7/02/2021 | LR | Attend lengthy hearing on plaintiff's motion to stay case | 1.80 | $315.00 | 243 |
| 7/06/2021 | LR | Prepare proposed Order denying Motion to Stay | 0.30 | $52.50 | 244 |
| 7/06/2021 | LR | Prepare email to plaintiff regarding proposed order denying motion to stay | 0.20 | $35.00 | 245 |
| 7/07/2021 | LR | Receipt and review multiple orders from court setting hearings on plaintiff's motions to compel compliance with subpoenas and for protective order | 0.10 | $17.50 | 246 |
| 7/12/2021 | LR | Receipt and review of the court's Case Management Order regarding further Case Management Conference | 0.10 | $17.50 | 247 |
| 7/12/2021 | LR | Receipt and review of Order denying plaintiff's Motion to Stay | 0.10 | $17.50 | 248 |
| 7/13/2021 | LR | Prepare opposition to plaintiff's motion for protective order and injunctive relief | 2.70 | $472.50 | 249 |
| 7/13/2021 | LR | Prepare opposition to plaintiff's motion to compel compliance with subpoena to Union Bank | 1.80 | $315.00 | 250 |
| 7/13/2021 | LR | Prepare opposition to plaintiff's motion to compel deposition of Richard Fong | 2.40 | $420.00 | 251 |
| 7/13/2021 | LR | Prepare opposition to plaintiff's motion to compel compliance with subpoena to Wells Fargo | 1.10 | $192.50 | 252 |
| 7/13/2021 | LR | Exchange emails with property manager regarding denial of plaintiff's motion to stay | 0.20 | $35.00 | 253 |
| 7/21/2021 | LR | Exchange emails with Robert Holmer and revise his Declaration | 0.40 | $70.00 | 254 |
| 7/27/2021 | LR | Receipt and review plaintiff's motion to disqualify Judge Herbert | 0.50 | $87.50 | 255 |
| 7/27/2021 | LR | Prepare opposition to plaintiff's motion to disqualify Judge Herbert | 3.10 | $542.50 | 256 |

*Handwritten annotations:*
- no protective order (next to 7/13/2021, row 249)
- duplicate billing third party counsel (next to 7/13/2021, row 250)
- duplicate billing third party counsel (next to 7/13/2021, row 251)
- duplicate billing third party counsel (next to 7/13/2021, row 252)
- ADA admin not case - court responds not defense counsel (next to 7/27/2021, row 255)
- this is judge herbert court duplicate billing mcnamara (next to 7/27/2021, row 256)

| | | **TOTAL LEGAL SERVICES** | **25.50** | **$4,462.50** |
|---|---|---|---|---|

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|---|-------|-----------|--------|
| Luanne Rutherford | Partner | 25.50 | 175.00 | $4,462.50 |
| | **TOTAL** | **25.50** | | **$4,462.50** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90006
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 9/16/2021**

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 8/04/2021 | LR | Exchange emails with insured regarding continuance of hearings on plaintiff's multiple motions | 0.10 | $17.50 | 257 |
| 8/05/2021 | LR | Further preparation of separate statement of undisputed material facts in support of motion for summary judgment | 1.10 | $192.50 | 258 |
| 8/06/2021 | LR | Prepare Declaration of Luanne Rutherford in support of motion for summary judgment | 1.40 | $245.00 | 259 |
| 8/06/2021 | LR | Prepare request for Judicial Notice in support of motion for summary judgment | 0.70 | $122.50 | 260 |
| 8/06/2021 | LR | Prepare proposed order granting defendant's motion for summary judgment | 0.60 | $105.00 | 261 |
| 8/09/2021 | LR | Receive and review Fifth Doe Amendment to Complaint naming Linares as defendant | 0.10 | $17.50 | 262 |
| 8/09/2021 | LR | Prepare lengthy email to carrier and clients regarding fifth doe amendment to complaint, new date for motion for summary judgment hearing, hearings on plaintiff's discovery motions and status of Federal court action | 0.60 | $105.00 | 263 |
| 8/09/2021 | LR | Exchange emails with property manager regarding new Board President | 0.20 | $35.00 | 264 |

tenancy

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 90006 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 8/09/2021 | LR | Prepare email to Geraldine Linares regarding Fifth Doe Amendment to Complaint naming her as a defendant | 0.20 | $35.00 | 265 |
| 8/10/2021 | LR | Telephone conference with property manager, Selina Bravo and new Board president, Geraldine Linares regarding Doe Amendments to complaint | 0.70 | $122.50 | 266 |
| 8/10/2021 | LR | Exchange emails with property manager and Farmers regarding Geraldine Linares being named as a Doe defendant | 0.20 | $35.00 | 267 |
| 8/10/2021 | LR | ███████████████████████████ | 0.30 | $52.50 | 268 |
| 8/11/2021 | LR | Receipt and review of plaintiff's Request for Admissions and Form Interrogatories to HOA | 0.40 | $70.00 | 269 |
| 8/27/2021 | LR | Prepare HOA's responses to plaintiff's Request for Admissions | 2.40 | $420.00 | 270 |
| 8/27/2021 | LR | Prepare HOA's responses to plaintiffs Form Interrogatories, including form interrogatory 17.1 | 3.60 | $630.00 | 271 |
| 8/27/2021 | LR | Prepare email to insured regarding draft discovery responses, need for review and execution of verifications | 0.30 | $52.50 | 272 |
| 8/27/2021 | LR | Receipt and review Plaintiff's Request for Judicial Notice | 0.20 | $35.00 | 273 |
| 8/27/2021 | LR | Exchange emails with Susan Hernandez regarding plaintiff's attempts at service of summons and Complaint advising defendants to evade complaint service | 0.20 | $35.00 | 274 |
| 8/27/2021 | LR | Receipt and review emails from carrier to insured regarding service of Doe Amendments | 0.10 | $17.50 | 275 |
| 8/30/2021 | LR | Exchange emails with carrier regarding new Board President and service of Doe Amendment on Geraldine Linares advising new Board President msj | 0.20 | $35.00 | 276 |
| 8/30/2021 | LR | Receipt and review email from property manager regarding service of Complaint on Simmonson | 0.10 | $17.50 | 277 |
| 8/30/2021 | LR | Receipt and review email from property manager regarding service of summons and Complaint on Ritter | 0.10 | $17.50 | 278 |
| 8/31/2021 | LR | Receipt and review email from property manager regarding responses to discovery from plaintiff | 0.10 | $17.50 | 279 |
| 8/31/2021 | LR | ████████████████████████ | 0.20 | $35.00 | 280 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | |
|---|---|---|
| Farmers Insurance | | Invoice 90006 |
| Re: Bernstein v. Meadow Brook Village HOA | | Page 4 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| | | ████████████ | | | |
| 8/31/2021 | LR | ████████████████ | 0.60 | $105.00 | 281 |
| | | ████████████████ | | | |
| | | | | | 282 |
| 9/01/2021 | LR | Exchange emails with client regarding responses to discovery from plaintiff | 0.20 | $35.00 | |
| 9/03/2021 | LR | ██████████████ | 0.20 | $35.00 | 283 |
| 9/03/2021 | LR | ███████████████ | 0.10 | $17.50 | 284 |
| 9/03/2021 | LR | ███████████████ | 0.10 | $17.50 | 285 |
| 9/07/2021 | LR | ███████████████ | 0.20 | $35.00 | 286 |
| 9/07/2021 | LR | Prepare Objection to Plaintiff's Request for Judicial Notice | 2.80 | $490.00 | 287 |
| 202109-14705609 | | defense of John Gibson - John Gibson calls above | | | |
| 9/07/2021 | LR | Prepare email to client contact regarding discovery responses | 0.20 | $35.00 | 288 |
| 9/09/2021 | LR | Finalize HOA's responses to plaintiff's Request for Admissions and Form Interrogatories | 0.40 | $70.00 | 289 |
| 9/09/2021 | LR | Exchange emails with plaintiff regarding demand for meet and confer conference prior to filing motion to compel further responses | 0.30 | $52.50 | 290 |
| 9/09/2021 | LR | ████████████████ | 0.20 | $35.00 | 291 |
| 9/10/2021 | LR | ███████████████ | 0.30 | $52.50 | 292 |
| 9/10/2021 | LR | ████████████████ | 0.50 | $87.50 | 293 |
| 9/13/2021 | LR | ████████████████ | 0.40 | $70.00 | 294 |
| | | ██████ | | | |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 90006 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 5 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 9/13/2021 | LR | ████████████████████ | ~~0.30~~ | ~~$52.50~~ | 295 |
| 9/13/2021 | LR | Receipt and review Plaintiff's Third Motion to Recuse Judge Herbert | 0.30 | $52.50 | 296 |

fraud - no third motion to recuse judge filed

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 9/13/2021 | LR | Receipt and review Plaintiff's Sixth Doe Amendment to Complaint | 0.10 | $17.50 | 297 |
| 9/16/2021 | LR | ████████████████████ | ~~7.80~~  ?? | ~~$1,365.00~~ | 298 |

| | **TOTAL LEGAL SERVICES** | **29.10** | **$5,092.50** |
|---|---|---|---|

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Luanne Rutherford | Partner | 29.10 | 175.00 | $5,092.50 |
| | **TOTAL** | **29.10** | | **$5,092.50** |

| | |
|---|---|
| Total Fees and Disbursements | $5,092.50 |
| **TOTAL CURRENT CHARGES** | ~~$5,092.50~~ *$3,132.50* |
| Balance Forward | $34,387.50 |
| **TOTAL AMOUNT DUE** | $39,480.00 |

**Open Invoices**

| Invoice Date | Invoice Number | Original Amount | Payments and Credits | Balance |
|--------------|----------------|-----------------|----------------------|---------|
| 11/23/22 | 89428 | $5,127.50 | $52.50 | $5,075.00 |
| 12/09/22 | 89727 | $4,480.00 | $350.00 | $4,130.00 |
| 01/06/23 | 90001 | $4,742.50 | $0.00 | $4,742.50 |
| 01/06/23 | 90002 | $4,672.50 | $0.00 | $4,672.50 |
| 01/06/23 | 90003 | $6,195.00 | $0.00 | $6,195.00 |
| 01/06/23 | 90004 | $5,110.00 | $0.00 | $5,110.00 |
| 01/06/23 | 90005 | $4,462.50 | $0.00 | $4,462.50 |
| | | | | $34,387.50 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90007
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 10/20/2021**

---

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 9/27/2021 | LR | Prepare Motion to Strike on behalf of Ritter, Simons and Thakur including memorandum of points and authorities, supporting declaration and proposed order | 5.20 | $910.00 | 299 |
| 9/27/2021 | LR | Receipt and review plaintiff's revised subpoena to Wells Fargo and Union Bank | 0.10 | $17.50 | 300 |
| 9/27/2021 | LR | Receipt and review Notice of Limited Scope Representation (blank) | 0.10 | $17.50 | 301 |
| 9/27/2021 | LR | Receipt and review Plaintiff's Seventh Doe Amendment to the Complaint | 0.10 | $17.50 | 302 |
| 9/28/2021 | LR | Internet research to locate attorney possibly representing plaintiff and telephone call to law firm to discuss case | 1.20 | $210.00 | 303 |
| 9/28/2021 | LR | Prepare demurrer to plaintiff's complaint on behalf of Zafra | 1.30 | $227.50 | 304 |
| 9/28/2021 | LR | Prepare Motion to Strike punitive damages on behalf of Zafra | 0.70 | $122.50 | 305 |
| 10/01/2021 | LR | ███████████████████████ | ~~0.20~~ | ~~$35.00~~ | 306 |
| 10/01/2021 | LR | Prepare meet and confer letter to plaintiff regarding demurrer and | 1.20 | $210.00 | 307 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance<br>Re: Bernstein v. Meadow Brook Village HOA | | | | Invoice 90007<br>Page 3 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | motion to strike as to Elizabeth Hall | | | |
| 10/01/2021 | LR | Receipt and review Case Management Order | 0.10 | $17.50 | 308 |
| 10/01/2021 | LR | Telephone call to Farmers regarding service of Complaint on Elizabeth Hall in August and need to have default set aside | 0.10 | $17.50 | 309 |
| 10/01/2021 | LR | Legal research regarding standard for motion to set aside default | 1.10 | $192.50 | 310 |
| 10/01/2021 | LR | Exchange additional emails with Elizabeth Hall regarding date of service and request for entry of default | 0.40 | $70.00 | 311 |
| 10/01/2021 | LR | Receipt and review multiple emails from court and plaintiff regarding court's continuance of hearing dates on all motions | 0:20 | $35.00 | 312 |
| 10/01/2021 | LR | Receipt and review email from Lloyd Winter with Completed Notice of Limited Scope of Representation | 0.20 | $35.00 | 313 |
| 10/04/2021 | LR | Telephone conference with carrier regarding motion to set aside default against Elizabeth Hall, John Gibson issues, and other parties against whom requests for default were filed | 0.30 | $52.50 | 314 |
| 10/04/2021 | LR | Review of court's docket for names of parties with proof of service on file and request for default by plaintiff, as well as dates for hearings in the matter | 0.50 | $87.50 | 315 |
| 10/04/2021 | LR | Prepare email to property management company regarding service of current and/or former Board members and need for timely tender of defense | 0.60 | $105.00 | 316 |
| 10/04/2021 202109-06799411 | LR | Review and analyze documents from US District Court - Northern District in related case of Bernstein v. DFEH | 0.50 | $87.50 | 317 |
| 10/04/2021 202109-06799411 | LR | Prepare Response to plaintiff's DFEH complaint | 4.10 | $717.50 | 318 |
| 10/04/2021 | LR | Prepare email to property management company regarding Doe Amendments to Complaint | 0.20 | $35.00 | 319 |
| 10/04/2021 | LR | ███████████████████ | 0.20 | $35.00 | 320 |
| 10/07/2021 | LR | Review court docket for documents related to court's rejection of request for default of Elizabeth Hall | 0.40 | $70.00 | 321 |
| 10/07/2021 | LR | Prepare meet and confer letter to plaintiff regarding demurrer and motion to strike on behalf of Elizabeth Hall | 0.70 | $122.50 | 322 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | |
|---|---|---|---|
| Farmers Insurance | | Invoice 90007 | |
| Re: Bernstein v. Meadow Brook Village HOA | | Page 4 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| ~~10/08/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.20~~ | ~~$35.00~~ | 323 |
| ~~10/11/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.20~~ | ~~$35.00~~ | 324 |
| 10/11/2021 | LR | Prepare demurrer on behalf of Elizabeth Hall | 1.40 | $245.00 | 325 |
| 10/11/2021 | LR | Prepare motion to strike on behalf of Elizabeth Hall | 1.20 | $210.00 | 326 |
| 10/11/2021 | LR | Receipt and review email from plaintiff regarding objection to demurrer for Elizabeth Hall | 0.10 | $17.50 | 327 |
| 10/11/2021 | LR | Receipt and review plaintiff's Requests for Admission to Mark Simonson, Romulo Zafra and Leann Ritter, with multiple attachments | 0.60 | $105.00 | 328 |
| 10/11/2021 | LR | Receipt and review plaintiff's Requests for Admission to Aarti Thakur, with multiple attachments | 0.40 | $70.00 | 329 |
| ~~10/11/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.10~~ | ~~$17.50~~ | 330 |
| ~~10/11/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.10~~ | ~~$17.50~~ | 331 |
| ~~10/12/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.20~~ | ~~$35.00~~ | 332 |
| ~~10/12/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.20~~ | ~~$35.00~~ | 333 |
| ~~10/12/2021~~ | ~~LR~~ | ███████████████████████ | ~~0.30~~ | ~~$52.50~~ | 334 |
| 10/13/2021 | LR | Receipt and review email from plaintiff regarding notice of entry of default against Joey Morrison | 0.10 | $17.50 | 335 |
| 10/14/2021 | LR | Further preparation of demurrer and motion to strike on behalf of Elizabeth Hall | 1.80 | $315.00 | 336 |
| 10/14/2021 | LR | Receipt and review email from property manager regarding third party link to documents | 0.10 | $17.50 | 337 |
| 10/14/2021 | LR | Telephone conference with property manager, Selina Bravo, regarding response to second HUD complaint | 0.40 | $70.00 | 338 |

202109-06799411

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | Invoice 90007 |
|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | Page 5 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 10/15/2021 | LR | ██████████████████████ | ~~0.10~~ | ~~$17.50~~ | 339 |
| 10/18/2021 | LR | ████████████████████████ | ~~0.10~~ | ~~$17.50~~ | 340 |
| 10/18/2021 | LR | Exchange emails with Department of Fair Employment and Housing regarding response to complaint | 0.30 | $52.50 | 341 |
| 10/18/2021 | LR | ██████████████████ | ~~0.20~~ | ~~$35.00~~ | 342 |
| 10/19/2021 | LR | ████████████████████ | ~~0.20~~ | ~~$35.00~~ | 343 |
| 10/19/2021 | LR | ███████████████████ | ~~0.20~~ | ~~$35.00~~ | 344 |
| 10/20/2021 | LR | ███████████████████ | ~~0.50~~ | ~~$87.50~~ | 345 |

202109-06799411

| | TOTAL LEGAL SERVICES | 28.70 | $5,022.50 |
|---|---|---|---|

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 28.70 | 175.00 | $5,022.50 |
| | TOTAL | 28.70 | | $5,022.50 |

| | | |
|---|---|---|
| Total Fees and Disbursements | $5,022.50 | |
| TOTAL CURRENT CHARGES | ~~$5,022.50~~ *$4,497.50* | |
| Balance Forward | $39,480.00 | |
| TOTAL AMOUNT DUE | $44,502.50 | |

**Open Invoices**

| Invoice Date | Invoice Number | Original Amount | Payments and Credits | Balance |
|---|---|---|---|---|
| 11/23/22 | 89428 | $5,127.50 | $52.50 | $5,075.00 |
| 12/09/22 | 89727 | $4,480.00 | $350.00 | $4,130.00 |
| 01/06/23 | 90001 | $4,742.50 | $0.00 | $4,742.50 |
| 01/06/23 | 90002 | $4,672.50 | $0.00 | $4,672.50 |
| 01/06/23 | 90003 | $6,195.00 | $0.00 | $6,195.00 |
| 01/06/23 | 90004 | $5,110.00 | $0.00 | $5,110.00 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90008
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re:Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

### For Services Rendered Through 11/3/2021

### LEGAL SERVICES



| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 10/21/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.30 | $52.50 | 346 |
| 10/21/2021 | LR | Telephone conference with new adjuster regarding overview of case and parties to be defended | 0.80 | $140.00 | 347 |
| 10/21/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 348 |
| 10/22/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 349 |
| 10/22/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 350 |
| 10/22/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 351 |
| 10/22/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.20 | $35.00 | 352 |
| 10/22/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 353 |

202109-06799411
202109-14705609

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 90008 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 10/22/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 354 |
| 10/25/2021 | LR | Receipt and review subpoenas from plaintiff to Union Bank, Management Solutions, Condominium Financial Management, Wells Fargo Bank, Bay Area Property, and Saarman Construction | 0.40 | $70.00 | 355 |
| 10/27/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 0.30 | $52.50 | 356 |
| 10/27/2021 | LR | Exchange emails with property manager regarding subpoena to Condominium Financial Management | 0.20 | $35.00 | 357 |
| 10/28/2021 | LR | Exchange emails with property manager regarding subpoena to Bay Area Property Management | 0.20 | $35.00 | 358 |
| 10/29/2021 | LR | Prepare Objections to subpoenas from plaintiff to Union Bank, Management Solutions, Condominium Financial Management, Wells Fargo Bank, Bay Area Property, and Saarman Construction | 3.30 | $577.50 | 359 |
| 10/29/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 0.60 | $105.00 | 360 |
| 11/01/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 1.20 | $210.00 | 361 |
| 11/01/2021 | LR | Telephone call from Paul Olson at Farmers regarding status of plaintiff filing amended Complaint | 0.10 | $17.50 | 362 |
| 11/01/2021 | LR | fraud - no amended complaint filed ▮▮▮▮▮▮▮▮▮▮▮▮ | 3.10 | $542.50 | 363 |
| 11/01/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 364 |
| 11/01/2021 | LR | Exchange emails with carrier regarding plaintiff's second motion for leave to file amend complaint | 0.20 | $35.00 | 365 |
| 11/01/2021 | LR | fraud no motion for leave to file amended complaint ▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 366 |
| 11/01/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 0.40 | $70.00 | 367 |
| 11/01/2021 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | 1.70 | $297.50 | 368 |

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance                                          Invoice  90008
Re: Bernstein v. Meadow Brook Village HOA                  Page  4

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| | | ███████ | | | |
| 11/01/2021 | LR | ██████████████████████████████████ | 2.80 | $490.00 | 369 |
| 11/01/2021 | LR | ███████████████████████████████ | 0.80 | $140.00 | 370 |
| 11/01/2021 | LR | ███████████████████████████████ | 0.20 | $35.00 | 371 |
| 11/01/2021 | LR | ████████████████████████████████ | 1.60 | $280.00 | 372 |
| 11/01/2021 | LR | ████████████████████████████████ | 0.10 | $17.50 | 373 |
| 11/01/2021 | LR | ████████████████████████████████ | 2.10 | $367.50 | 374 |
| 11/01/2021 | LR | ██████████████████████████████ | 1.80 | $315.00 | 375 |
| 11/01/2021 | LR | ████████████████████████████████ | 0.10 | $17.50 | 376 |
| 11/02/2021 | LR | Exchange emails with plaintiff regarding service of documents on her attorney | 0.20 | $35.00 | 377 |
| 11/02/2021 | LR | ████████████████████████████████ | 0.10 | $17.50 | 378 |
| 11/02/2021 | LR | ███████████████████████████████ | 0.20 | $35.00 | 379 |
| 11/02/2021 | LR | ████████████████████████████████ | 0.30 | $52.50 | 380 |
| 11/02/2021 | LR | ████████████████████████████ | 0.20 | $35.00 | 381 |
| 11/02/2021 | LR | █████████████████████████████ | 0.50 | $87.50 | 382 |
| 11/02/2021 | LR | ██████████████████████████ | 0.40 | $70.00 | 383 |
| 11/02/2021 | LR | ████████████████████████████████ | 0.20 | $35.00 | 384 |

### McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| Farmers Insurance | Invoice 90008 |
|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | Page 5 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/02/2021 | LR | ███████████████████ | 1.60 | $280.00 | 385 |
| ~~11/02/2021~~ | ~~LR~~ | ██████████████████████ | 1.40 | $245.00 | 386 |
| 11/03/2021 | LR | ████████████████████ | 0.60 | $105.00 | 387 |
| 11/03/2021 | LR | Exchange emails with plaintiff again advising we are not agents for service of process for any of the Doe defendants | 0.30 | $52.50 | 388 |
| 11/03/2021 | LR | ███████████████████ | 0.50 | $87.50 | 389 |
| ~~11/03/2021~~ | ~~LR~~ | ████████████████████ | 0.10 | $17.50 | 390 |
| | | **TOTAL LEGAL SERVICES** | **29.90** | **$5,232.50** | |

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 29.90 | 175.00 | $5,232.50 |
| | **TOTAL** | **29.90** | | **$5,232.50** |

| Total Fees and Disbursements | $5,232.50 |
|---|---|
| **TOTAL CURRENT CHARGES** | ~~$5,232.50~~ $997.50 |
| Balance Forward | $44,502.50 |
| **TOTAL AMOUNT DUE** | **$49,735.00** |

### Open Invoices

| Invoice Date | Invoice Number | Original Amount | Payments and Credits | Balance |
|---|---|---|---|---|
| 11/23/22 | 89428 | $5,127.50 | $52.50 | $5,075.00 |
| 12/09/22 | 89727 | $4,480.00 | $350.00 | $4,130.00 |
| 01/06/23 | 90001 | $4,742.50 | $0.00 | $4,742.50 |
| 01/06/23 | 90002 | $4,672.50 | $0.00 | $4,672.50 |
| 01/06/23 | 90003 | $6,195.00 | $0.00 | $6,195.00 |
| 01/06/23 | 90004 | $5,110.00 | $0.00 | $5,110.00 |
| 01/06/23 | 90005 | $4,462.50 | $0.00 | $4,462.50 |
| 01/06/23 | 90006 | $5,092.50 | $0.00 | $5,092.50 |
| 01/06/23 | 90007 | $5,022.50 | $0.00 | $5,022.50 |
| | | | | **$44,502.50** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

January 6, 2023
Invoice  90009
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas

Claim No: 5005612246-1-2

**For Services Rendered Through 12/27/2021**

---

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| Eumi Lee assigned | | | | | |
| 11/04/2021 | LR | Receipt and review Judicial Reassignment | 0.10 | $17.50 | 391 |
| 11/04/2021 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 392 |
| ~~11/04/2021~~ | ~~LR~~ | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | ~~0.20~~ | ~~$35.00~~ | 393 |
| 11/04/2021 | LR | Receipt and review Plaintiff's List of Witnesses for hearing on third Motion to Recuse Judge Herbert | 0.10 | $17.50 | 394 |
| fraud no third motion filed motion to recuse judge herbert | | | | | |
| 11/04/2021 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | ~~0.50~~ | ~~$87.50~~ | 395 |
| 11/04/2021 | LR | Exchange emails with Bay Area Property regarding objections to subpoena | 0.20 | $35.00 | 396 |
| 11/04/2021 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | ~~0.30~~ | ~~$52.50~~ | 397 |
| ~~11/05/2021~~ | ~~LR~~ | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | ~~0.20~~ | ~~$35.00~~ | 398 |
| 11/05/2021 | LR | Receipt and review notice of taking deposition of various Board members | 0.20 | $35.00 | 399 |
| fraud no depositions of HOA board members prepared | | | | | |

### McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

Farmers Insurance                                                     Invoice 90009
Re: Bernstein v. Meadow Brook Village HOA                                    Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 11/05/2021 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 400 |
| 11/05/2021 LR | | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 401 |
| 11/05/2021 | LR | Telephone conference with Saarman Construction regarding subpoena from plaintiff | 0.30 | $52.50 | 402 |
| 11/08/2021 | LR | Receipt and review Eighth Amendment to Complaint naming Farmers as defendant | 0.10 | $17.50 | 403 |
| 11/08/2021 | LR | Prepare email to Farmer regarding 8th amendment to complaint naming Farmers as defendant | 0.10 | $17.50 | 404 |
| 11/08/2021 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 3.60 | $630.00 | 405 |
| 11/09/2021 LR | | ▓▓▓▓▓▓▓▓▓▓▓ | 1.10 | $192.50 | 406 |
| 11/11/2021 LR | | ▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 407 |
| 11/11/2021 | LR | Prepare Case Management Conference Statement | 0.40 | $70.00 | 408 |
| 11/12/2021 | LR | Review of court docket and email to Bay Area Property regarding service of Complaint | 0.20 | $35.00 | 409 |
| 11/12/2021 | LR | ▓▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 410 |
| 11/15/2021 LR | | ▓▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 411 |
| 11/15/2021 LR | | ▓▓▓▓▓▓▓▓▓▓▓▓ | 0.10 | $17.50 | 412 |
| 11/16/2021 LR | | ▓▓▓▓▓▓▓▓▓▓ | 0.20 | $35.00 | 413 |
| 11/16/2021 | LR | Receipt and review Plaintiff's Request for Judicial Notice | 0.30 | $52.50 | 414 |
| 11/18/2021 | LR | Receipt and review email from DFEH regarding interview with Bay Area Property personnel | 0.10 | $17.50 | 415 |

202109-06799411

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | |
|---|---|---|
| Farmers Insurance | Invoice 90009 | |
| Re: Bernstein v. Meadow Brook Village HOA | Page 4 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 11/18/2021<br>202109-06799411 | LR | Telephone call to Selina Bravo at Bay Area Property regarding DFEH's request for interview | 0.10 | $17.50 | 416 |
| 11/22/2021 | LR | Exchange emails with counsel for Farmers regarding Doe Amendment #8 to Complaint | 0.20 | $35.00 | 417 |
| 11/23/2021 | LR | Prepare Opposition to Plaintiff's Request for Judicial Notice | 3.40 | $595.00 | 418 |
| 11/29/2021 | LR | ██████████████████████████████ | 0.20 | $35.00 | 419 |
| 11/29/2021<br>202109-06799411 | LR | Exchange emails with DFEH regarding interview of Selina Bravo and Yvonne at Bay Area Properties | 0.20 | $35.00 | 420 |
| 11/29/2021<br>202109-06799411 | LR | Telephone conference with Selina Bravo at Bay Area Properties regarding DFEH's request for interview | 0.20 | $35.00 | 421 |
| 11/30/2021 | LR | Receipt and review Saarman Construction's objection to subpoena from plaintiff | 0.10 | $17.50 | 422 |
| 11/30/2021<br>202109-06799411 | LR | Prepare lengthy email to carrier with dates of all events, names of all clients and further anticipated activities | 0.60 | $105.00 | 423 |
| 12/01/2021 | LR | ████████████████████████████ | 4.20 | $735.00 | 424 |
| 12/01/2021 | LR | ████████████████████████ | 0.50 | $87.50 | 425 |
| 12/01/2021 | LR | ████████████████████████ | 1.80 | $315.00 | 426 |
| 12/01/2021 | LR | ██████████████████ | 0.30 | $52.50 | 427 |
| 12/01/2021 | LR | ████████████████████ | 0.40 | $70.00 | 428 |
| 12/01/2021<br>202109-06799411 | LR | Participate in interview with DFEH and personnel at Bay Area Property Management regarding Plaintiff's complaint of sexual harassment and threats from John Gibson | 1.10 | $192.50 | 429 |
| 12/02/2021 | LR | P████████████████████ | 0.30 | $52.50 | 430 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance<br>Re: Bernstein v. Meadow Brook Village HOA | | | Invoice 90009 | |
| | | | Page 5 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | ▉▉▉▉▉ | | | |
| 12/02/2021 | LR | ▉▉▉▉▉▉▉▉▉▉▉▉ | ~~0.30~~ | ~~$52.50~~ | 431 |
| ~~12/02/2021~~ | ~~LR~~ | ▉▉▉▉▉▉▉▉▉▉ | ~~0.20~~ | ~~$35.00~~ | 432 |
| ~~12/02/2021~~ | ~~LR~~ | ▉▉▉▉▉▉▉▉▉▉ | ~~0.20~~ | ~~$35.00~~ | 433 |
| leave mother's death emergency leave | | | | | |
| 12/03/2021 | LR | Exchange emails with court regarding continuance of December hearings   Gibson Oliver defaults | 0.30 | $52.50 | 434 |
| 12/07/2021 | LR | ▉▉▉▉▉▉▉▉▉ | ~~0.20~~ | ~~$35.00~~ | 435 |
| 12/07/2021 | LR | Prepare email to carrier regarding continuance of December hearings and interview by DFEH of property management employees | 0.20 | $35.00 | 436 |
| 202109-06799411 | | | | | |
| 12/07/2021 | LR | Receipt and review Order from court continuing December hearing dates | 0.10 | $17.50 | 437 |
| 12/07/2021 | LR | Receipt and review Farmers' Motion to Quash Service | 0.20 | $35.00 | 438 |
| 12/10/2021 | LR | ▉▉▉▉▉▉▉▉▉▉ | ~~0.10~~ | ~~$17.50~~ | 439 |
| ~~12/14/2021~~ | ~~LR~~ | ▉▉▉▉▉▉▉▉▉ | ~~0.30~~ | ~~$52.50~~ | 440 |
| 12/16/2021 | LR | Receipt and review Notice of Case Closure from DFEH | 0.10 | $17.50 | 441 |
| 202109-06799411 | | | | | |
| 12/17/2021 | LR | Prepare email to carrier and insureds regarding closure of DFEH claims due to lack of evidence | 0.20 | $35.00 | 442 |
| 202109-06799411 | | | | | |
| 12/21/2021 | LR | ▉▉▉▉▉▉▉▉▉▉ | ~~0.10~~ | ~~$17.50~~ | 443 |
| 12/27/2021 | LR | Receipt and review Plaintiff's Opposition to motion for summary judgment/adjudication including plaintiff's separate statement of undisputed facts and declaration with exhibits (336 pages) | 2.40 | $420.00 | 444 |
| 12/27/2021 | LR | Prepare Reply Brief to motion for summary judgment/adjudication, | 6.80 | $1,190.00 | 445 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

February 13, 2023
Invoice  90876
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re:Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas

Claim No: 5005612246-1-2

**For Services Rendered Through 4/30/2022**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/03/2022 | LR | Receipt and review Case Management Conference from specially appearing Dere Pamasaki | 0.10 | $17.50 | 446 |
| 1/04/2022 | LR | Exchange emails with Dere Yamasaki's counsel regarding defendants' motion for summary judgment and demurrers | 0.20 | $35.00 | 447 |
| 1/10/2022 | LR | ██████████████████████████ | 0.20 | $35.00 | 448 |
| 1/13/2022 | LR | ██████████████████████████ | 0.20 | $35.00 | 449 |
| 1/14/2022 | LR | ██████████████████████████ | 0.40 | $70.00 | 450 |
| 1/14/2022 | LR | Receipt and review email from plaintiff's limited scope attorney regarding hearing on defendants' motion for summary judgment | 0.10 | $17.50 | 451 |
| 1/14/2022 | LR | Telephone conference with counsel for Farmers regarding defendants' demurrer and issues related to plaintiffs failure to prosecute | 0.50 | $87.50 | 452 |
| 1/14/2022 | LR | Draft email to counsel for Farmers regarding defendants' demurrer, motion to strike and motion for summary judgment | 0.20 | $35.00 | 453 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | |
|---|---|
| Farmers Insurance | Invoice  90876 |
| Re: Bernstein v. Meadow Brook Village HOA | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 1/14/2022 | LR | ███████████████████████████████ ███████████████████████████████ ████ | ~~4.80~~ | ~~$840.00~~ | 454 |
| 1/18/2022 | LR | Receipt and review of Farmers second motion to quash service of summons | 0.20 | $35.00 | 455 |
| 1/19/2022 | LR | Receipt and review letter from counsel for Farmers regarding intention to seek ex parte hearing to advance hearing date for motion to quash service of summons | 0.10 | $17.50 | 456 |
| 1/19/2022 | LR | Draft email to Farmers' counsel regarding no objection to ex parte to advance hearing on motion to quash | 0.10 | $17.50 | 457 |
| 1/25/2022 | LR | Emails to and from court clerk regarding new hearing dates for demurrers, motions to strike, motion to set aside default and motion for summary judgment | 0.20 | $35.00 | 458 |
| 1/26/2022 | LR | ████████████████████████████ | ~~0.20~~ | ~~$35.00~~ | 459 |
| ~~1/27/2022~~ | ~~LR~~ | ████████████████████████ | ~~0.20~~ | ~~$35.00~~ | 460 |
| ~~2/07/2022~~ | ~~LR~~ | ████████████████████████ | ~~0.30~~ | ~~$52.50~~ | 461 |
| ~~2/08/2022~~ | ~~LR~~ | ████████████████████████ | ~~0.40~~ | ~~$70.00~~ | 462 |
| ~~2/09/2022~~ | ~~LR~~ | ████████████████████████ | ~~0.40~~ | ~~$70.00~~ | 463 |
| 2/09/2022 | LR | Telephone conference with experts regarding continued motion for summary judgment hearing date | 0.20 | $35.00 | 464 |
| 2/15/2022 | LR | Receipt and review multiple Orders from court regarding continuances of hearings on all motions on calendar | 0.30 | $52.50 | 465 |
| 2/16/2022 | LR | Draft email to property management company with update on new hearing dates | 0.30 | $52.50 | 466 |
| 2/17/2022 | LR | ████████████████████████ | ~~2.40~~ | ~~$420.00~~ | 467 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90876
Page 4

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| | | ▮▮▮▮▮▮▮▮▮▮▮▮▮ | | | |
| 2/17/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~1.20~~ | ~~$210.00~~ | 468 |
| ~~2/17/2022~~ | ~~LR~~ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.40~~ | ~~$70.00~~ | 469 |
| ~~2/17/2022~~ | ~~LR~~ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.40~~ | ~~$70.00~~ | 470 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion to compel regarding subpoena to Union Bank | 0.30 | $52.50 | 471 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion to compel regarding subpoena to Wells Fargo | 0.20 | $35.00 | 472 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion to compel regarding subpoena for deposition of Richard Fong | 0.20 | $35.00 | 473 |
| 2/17/2022 | LR | Further preparation of opposition to plaintiff's motion for protective order | 0.30 | $52.50 | 474 |
| 2/25/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~1.80~~ | ~~$315.00~~ | 475 |
| 3/04/2022 | LR | Appear (telephonically) for Case Management Conference and hearing on Farmer's Motion to Quash service of summons | 1.60 | $280.00 | 476 |
| 3/04/2022 | LR | Receipt and review court's additional tentative rulings on Farmer's motion to quash, plaintiff's motion for protective order and plaintiff's motion for order compelling compliance with subpoenas | 0.20 | $35.00 | 477 |
| 3/09/2022 | LR | Prepare Case Management Conference Statement | 0.40 | $70.00 | 478 |
| ~~3/11/2022~~ | ~~LR~~ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ~~2.70~~ | ~~$472.50~~ | 479 |
| 3/18/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.40~~ | ~~$70.00~~ | 480 |
| 3/18/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮ | ~~0.40~~ | | 481 |

*Plaintiff was injured on leave and no such hearing occurred*   *the hearing took place on 4/22 entry 494*

*Elizabeth Tigano Meadow bRook John Gibson sexual harassment case 09-23-3257-Tigano / Meadow Brook Village Association - Fremont 202307-21456631*

*Elizabeth Tigano Meadow bRook John Gibson sexual harassment case 09-23-3257-Tigano / Meadow Brook Village Association - Fremont 202307-21456631*

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | Invoice 90876 |
|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | Page 5 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 3/18/2022 | LR | ████████████████████████████████ | 0.50 | $87.50 | 482 |

Elizabeth Tigano Meadow Brook John Gibson sexual harassment case 09-23-3257-Tigano / Meadow Brook Village Association - Fremont 202307-21456631

| | | | | | |
|---|---|---|---|---|---|
| 3/18/2022 | LR | Exchange emails with carrier and client regarding court's decision to continue hearings on motions | 0.30 | $52.50 | 483 |

ADA medical leave

| | | | | | |
|---|---|---|---|---|---|
| 4/04/2022 | LR | Prepare Case Management Conference Statement | 0.40 | $70.00 | 484 |
| 4/08/2022 | LR | Receipt and review Supplemental Declaration of Tiffany Ng in opposition to Motion for Order Compelling Compliance with Subpoena by Union Bank | 0.20 | $35.00 | 485 |
| 4/11/2022 | LR | Receipt and review Order regarding hearing on motion for contempt | 0.10 | $17.50 | 486 |
| 4/11/2022 | LR | Receipt and review Plaintiff's Reply in support of motion to compel Union Bank's compliance with subpoena | 0.10 | $17.50 | 487 |
| 4/11/2022 | LR | Receipt and review Plaintiff's Reply to Motion to Compel Richard Fong's compliance with deposition subpoena | 0.20 | $35.00 | 488 |
| 4/11/2022 | LR | Receipt and review Plaintiff's Case Management Conference Statement with attachments | 0.20 | $35.00 | 489 |
| 4/13/2022 | LR | Telephone conference with counsel for Wells Fargo regarding plaintiff's motion to compel compliance with subpoena | 0.20 | $35.00 | 490 |
| 4/14/2022 | LR | ████████████████████████████████ | 0.20 | $35.00 | 491 |
| 4/14/2022 | LR | Telephone conference with counsel for Wells Fargo regarding plaintiff's motion to compel compliance with subpoena | 0.30 | $52.50 | 492 |
| 4/20/2022 | LR | Receipt and review Plaintiff's request for reasonable accommodation through ADA coordinator at Case Management Conference | 0.20 | $35.00 | 493 |
| 4/22/2022 | LR | Attend Case Management Conference and hearing on Farmers' Motion to Quash service, via remote video conferencing | 2.70 | $472.50 | 494 |

fraudulent previous billing entry 476 wherein Luanne stated attended this hearing and CMC

| | | | |
|---|---|---|---|
| **TOTAL LEGAL SERVICES** | **28.10** | **$4,917.50** | |

LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Luanne Rutherford | Partner | 28.10 | 175.00 | $4,917.50 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

February 13, 2023
Invoice  90877
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 6/30/2022**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 5/02/2022 | LR | ███████████████████████ ███████ | 0.60 | $105.00 | 495 |
| 5/02/2022 | LR | ███████████████████████ ████ | 1.80 | $315.00 | 496 |
| 5/02/2022 | LR | ███████████████████████ ██████████ | 1.50 | $262.50 | 497 |
| 5/04/2022 | LR | Receipt and review Notice of Entry of Order granting Farmers' Motion to Quash service | 0.10 | $17.50 | 498 |
| 5/04/2022 | LR | █████████████ | 0.50 | $87.50 | 499 |
| 5/04/2022 | LR | ███████████████████████ ████████ | 0.40 | $70.00 | 500 |
| 5/05/2022 | LR | ███████████████████████ ██ | 2.40 | $420.00 | 501 |
| 5/05/2022 | LR | ███████████████████ █████ | 1.20 | $210.00 | 502 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

Farmers Insurance
Re: Bernstein v. Meadow Brook Village HOA

Invoice 90877
Page 3

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 5/05/2022 | LR | Receipt and review court's tentative ruling on defendants' motion for summary judgment | 0.40 | $70.00 | 503 |
| 5/05/2022 | LR | Receipt and review email regarding plaintiff contesting tentative ruling on defendants' motion for summary judgment | 0.10 | $17.50 | 504 |
| 5/06/2022 | LR | Prepare for oral argument at hearing on defendants' motion for summary judgment including review of moving, opposition and reply papers and court's tentative ruling | 1.30 | $227.50 | 505 |
| 5/06/2022 | LR | Attend hearing on defendants' motion for summary judgment, via remote video conferencing | 1.20 | $210.00 | 506 |
| 5/06/2022 | LR | ███████████████████████████ | 0.40 | $70.00 | 507 |
| 5/10/2022 | LR | ███████████████████████████ | 0.10 | $17.50 | 508 |
| 5/11/2022 | LR | ███████████████████████████ | 0.20 | $35.00 | 509 |
| 5/11/2022 | LR | Notify court and plaintiff of intention to contest tentative ruling on demurrer granting leave to amend <br> no motion for leave to amend filed by plaintiff | 0.10 | $17.50 | 510 |
| 5/11/2022 | LR | Receipt and review Case Management Order setting trial | 0.10 | $17.50 | 511 |
| 5/12/2022 | LR | ███████████████████████████ | 1.40 | $245.00 | 512 |
| 5/12/2022 | LR | ███████████████████████████ | 0.70 | $122.50 | 513 |
| 5/13/2022 | LR | ███████████████████████████ | 0.80 | $140.00 | 514 |
| 5/13/2022 | LR | ███████████████████████████ | 1.80 | $315.00 | 515 |
| 5/13/2022 | LR | Receipt and review letters from plaintiff in support of her claim for continuance of hearings | 0.20 | $35.00 | 516 |

ADA vesco admin

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice  90877 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page  4 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/19/2022 | LR | Receipt and review order on defendants' motion for summary judgment | 0.20 | $35.00 | 517 |
| 5/19/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.10 | $17.50 | 518 |
| 5/19/2022 | LR | Prepare Judgment on motion for summary judgment | 0.50 | $87.50 | 519 |
| 5/19/2022 | LR | Draft email to plaintiff with proposed Judgment for approval | 0.20 | $35.00 | 520 |
| 5/19/2022 | LR | Draft lengthy email to carrier and clients regarding granting of motion for summary judgment, status of demurrers, trial date and further activity | 0.50 | $87.50 | 521 |
| 5/20/2022 | LR | Receipt and review email from carrier regarding agreement to waive attorney's fees and costs | 0.10 | $17.50 | 522 |
| 5/20/2022 | LR | Exchange emails with Farmers regarding Plaintiff's 8th Amendment to Complaint | 0.20 | $35.00 | 523 |
| 6/01/2022 | LR | Receipt and review court's tentative ruling on demurrer and send emails and message through eCourt of intent to contest tentative ruling | 0.30 | $52.50 | 524 |
| 6/02/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 0.30 | $52.50 | 525 |
| 6/03/2022 | LR | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | 3.20 | $560.00 | 526 |
| 6/09/2022 | LR | Exchange multiple emails with Farmers counsel regarding responses to form interrogatories and what insurance information was provided to plaintiff | 0.50 | $87.50 | 527 |
| 6/13/2022 | LR | Receipt and review of Farmers' Third Motion to Quash service of summons | 0.30 | $52.50 | 528 |
| 6/13/2022 | LR | Receipt and review email from plaintiff regarding Farmers' Motion to Quash service of summons | 0.10 | $17.50 | 529 |
| 6/20/2022 | LR | Prepare email to all insureds regarding court sustaining demurrers with leave to amend, denial of motions to strike punitive damages and need for plaintiff to file and serve First Amended Complaint | 0.40 | $70.00 | 530 |
| | | **TOTAL LEGAL SERVICES** | 24.20 | $4,235.00 | |

*(handwritten annotations:)*
no attorney fees and costs sought
Christopher Allard
fabricated entries recreation and submitted fees and costs despite insurer agreement to waive fees and costs in case
email agreement farmers to waive attorneys fees and costs
Luanne did not put attorney fees and costs in judgment submitted
All insured - I am also insured so this is to all the HOA community

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

February 13, 2023
Invoice  90878
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re:Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 1/31/2023**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 7/20/2022 | CBA | Receipt and review of Farmers Insurance Exchanges' notice of no opposition to its motion to quash service of summons and to dismiss for failure to timely serve summons. | 0.10 | $16.00 | 531 |
| 8/01/2022 | CBA | Receipt and review of the Court's order regarding plaintiff's leave to file a First Amended Complaint. | 0.20 | $32.00 | 532 |
| 8/05/2022 | CBA | Receipt and review of emails from plaintiff and the courtroom clerk regarding closed hearing on plaintiff's motion for reconsideration. | 0.20 | $32.00 | 533 |
| 8/10/2022 | CBA | Receipt and review of email from Court regarding hearing on plaintiff's Motion for Reconsideration of defendant's Motion for Summary Judgment, and deadline for plaintiff to file her First Amended Complaint. | 0.20 | $32.00 | 534 |
| 8/11/2022 | CBA | Telephone conference with client regarding case status including hearing on plaintiff's Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment and the deadline for plaintiff to file a First Amended Complaint. | 0.30 | $48.00 | 535 |
| 8/16/2022 | CBA | Receipt and review of Case Management Order regarding plaintiff's Motion for Reconsideration and deadline to file First Amended Complaint. | 0.20 | $32.00 | 536 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | Invoice 90878 |
| --- | --- |
| Re: Bernstein v. Meadow Brook Village HOA | Page 3 |

| Date | Atty | Description | Hours | Amount | |
| --- | --- | --- | --- | --- | --- |
| 9/08/2022 | ████████████████████████████ | | 0.50 | $87.50 | 537 |
| 9/14/2022 | CBA | Receipt and review of plaintiff's Motion for Reconsideration of the Court's Order granting defendants' Motion for Summary Judgment, including review of supporting Declaration of Mary Bernstein with exhibits, Affidavit of Marty Bernstein with exhibits, and proposed Order (155 pages). | 2.80 | $448.00 | 538 |
| 9/15/2022 | CBA | Review of the Court's Order on defendants' Motion for Summary Judgment including rulings on defendants' Request for Judicial Notice, evidentiary objections, other procedural issues, and request for hearing continuance, in preparation of drafting defendant's opposition to plaintiff's motion for reconsideration of order granting defendant's motion for summary judgment (16 pages). | 0.60 | $96.00 | 539 |
| 9/15/2022 | CBA | Review defendants' Motion for Summary Judgment, and plaintiff's opposition papers, and evaluate whether plaintiff has presented any new or different facts, circumstances, or law in support of her Motion for Reconsideration, in preparation of drafting defendants' Opposition to plaintiff's Motion for Reconsideration of Order granting defendants' Motion for Summary Judgment. | 2.40 | $384.00 | 540 |
| 9/23/2022 | CBA | Prepare defendants' Opposition to plaintiff's Motion for Reconsideration of Order granting defendants' Motion for Summary Judgment. | 3.20 | $512.00 | 541 |
| 9/29/2022 | CBA | Receipt and review of emails from plaintiff and the Court regarding plaintiff's request to continue the hearing on her Motion for Reconsideration and to extend deadline to file her First Amended Complaint, including her threat to file a complaint with the Department of Justice for an alleged ADA violation, including review of attached doctor's note. | 0.30 | $48.00 | 542 |
| 10/05/2022 | CBA | Review and reply to email from Court and plaintiff regarding the Court's order resetting hearing dates and filing deadlines pursuant to plaintiff's request. | 0.20 | $32.00 | 543 |
| 10/05/2022 | CBA | Receipt and review of Order from court regarding hearing on plaintiff's Motion for Reconsideration of order granting defendant's Motion for Summary Judgment, and deadline for plaintiff to file her First Amended Complaint. | 0.20 | $32.00 | 544 |
| 10/26/2022 | CBA | Draft email to carrier regarding case status including continuation of hearing on plaintiff's motion for reconsideration of the court's order granting defendants' Motion for Summary Judgment, and deadline to file her First Amended Complaint. | 0.20 | $32.00 | 545 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| Farmers Insurance | | | | Invoice 90878 |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 4 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 10/26/2022 | CBA | Draft email to client regarding continuation of hearing on plaintiff's motion for reconsideration of the court's order granting defendants' Motion for Summary Judgment, and deadline to file her First Amended Complaint. | 0.10 | $16.00 | 546 |
| 11/01/2022 | CBA | Telephone conference with counsel for Derc Yamasaki regarding case status and status of demurrer | 0.20 | $32.00 | 547 |
| 11/04/2022 ADMIN | CBA | Prepare hourly litigation budget. | 0.30 | $48.00 | 548 |
| 1/11/2023 | CBA | Receipt and review of email from plaintiff to court and ADA coordinator with request for reasonable acomodations and request for further continuance of hearing on plaintiff's Motion for Reconsideration of order granting defendants' Motion for Summary Judgment and deadline for plaintiff to file her First Amended Complaint, including review of attached medical records in support of her request (21 pages). | 0.60 | $105.00 | 549 |
| 1/12/2023 | CBA | Review and reply to email from client regarding hearing on plaintiff's Motion for Reconsideration of order granting defendants' Motion for Summary Judgment, deadline for plaintiff to file her First Amended Complaint, and plaintiff's request for reasonable acomodations with the court's ADA coordinator. | 0.20 | $35.00 | 550 |
| 1/12/2023 | CBA | Review and reply to email from court regarding plaintiff's request for reasonable acomodations with the court's ADA coordinator and objection to continuance of hearing on plaintiff's Motion for Reconsideration of order granting defendants' Motion for Summary Judgment and deadline for plaintiff to file her First Amended Complaint. | 0.20 | $35.00 | 551 |
| 1/12/2023 | CBA | Receipt and review of email from counsel for Farmers' Insurance Exchange regarding plaintiff's request for reasonable acomodations with the court's ADA coordinator for continuance of hearing on plaintiff's Motion for Reconsideration of order granting defendants' Motion for Summary Judgment and deadline for plaintiff to file her First Amended Complaint, and hearing on Farmers' Motion to Quash. | 0.10 | $17.50 | 552 |
| 1/18/2023 | CBA | Review and reply to email from court regarding the Judge's ruling on plaintiff's request for reasonable accommodations for continuance of hearing on plaintiff's Motion for Reconsideration of order granting defendants' Motion for Summary Judgment. | 0.10 | $17.50 | 553 |
| 1/18/2023 | CBA | Receipt and review of Judge' ruling on plaintiff's request for reasonable acomodations for continuance of hearing on plaintiff's | 0.20 | $35.00 | 554 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | |
|---|---|---|
| Farmers Insurance | | Invoice  90878 |
| Re: Bernstein v. Meadow Brook Village HOA | | Page  5 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | Motion for Reconsideration of order granting defendants' Motion for Summary Judgment. | | | |
| 1/18/2023 | CBA | Receipt and review of email from plaintiff to court regarding request for continuance of Case Management Conference to correspond with new hearing dates. | 0.10 | $17.50 | 555 |
| 1/26/2023 | CBA | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.10 | $17.50 | 556 557 |
| 1/26/2023 | CBA | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | 0.30 | $52.50 | |
| 1/30/2023 | CBA | Draft email to judge requesting revised order setting the deadline for plaintiff to file her First Amended Complaint, subsequent to the hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.20 | $35.00 | 558 |
| 1/30/2023 | CBA | Review and reply to email from carrier regarding court order continuing hearing on plaintiff's Motion for Reconsideration of order granting defendants' Motion for Summary Judgment, and issue regarding deadline for plaintiff to file her First Amended Complaint. | 0.20  FAC | $35.00 | 559 |

NO FORMAL MOTIONS REQUIRED SIMPLY REQUESTS/EMAILS TO JUDGE AS IN MOTION TO STRIKE COMPLAINT

court said its own volition and stated could not read FAC

| | | |
|---|---|---|
| **TOTAL LEGAL SERVICES** | **14.50** | **$2,362.00** |

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| ▓▓▓▓▓▓▓▓ | | | | |
| Christopher B. Allard | Partner | 11.70 | 160.00 | $1,872.00 |
| Christopher B. Allard | Partner | 2.30 | 175.00 | $402.50 |
| | **TOTAL** | **14.50** | | ~~$2,362.00~~ |

$2,204.50

### DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 10/4/2022 | Record Fee; To obtain records at Alameda County Court Public Portal on 09/21/22, Celeste Visa, paid to; First National Bank of Omaha | $1.00 |
| 11/8/2022 | Record Fee; To obtain copy of records at Public Portal Alameda County Superior Court on 09/27/22, Celeste Visa, paid to; First National Bank of Omaha | $4.00 |
| | **Total Disbursements** | **$5.00** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

April 13, 2023
Invoice  91778
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 3/31/2023**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 3/10/2023 | CBA | Receipt and review of plaintiff's Reply Brief in support of her Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment. | 0.40 | $70.00 | 560 |
| 3/10/2023 | CBA | Receipt and review of Declaration of Elizabeth Tigano in support of plaintiff's Reply Brief in support of her Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment. | 0.20 | $35.00 | 561 |
| 3/10/2023 | CBA | Receipt and review of Declaration of Mary Bernstein in support of her Reply Brief in support of her Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, including review of voluminous Exhibits 1-7 (630 pages). | 5.80 | $1,015.00 | 562 |
| 3/10/2023 | CBA | Receipt and review of nine emails from plaintiff regarding her Motion for Reconsideration, Motion to Disqualify, and exhibits. | 0.40 | $70.00 | 563 |
| 3/11/2023 | CBA | Receipt and review of Exhibits 8-10 attached to Declaration of Mary Bernstein in support of her Reply brief in support of her Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment (293 pages). | 3.10 | $542.50 | 564 |
| 3/13/2023 | CBA | Review and reply to emails from counsel for Farmers Insurance Exchange regarding plaintiff's First Amended Complaint and order granting plaintiff leave to file an amended complaint. | 0.20 | $35.00 | 565 |

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| | |
|---|---|
| Farmers Insurance | Invoice 91778 |
| Re: Bernstein v. Meadow Brook Village HOA | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 3/13/2023 | CBA | Receipt and review of plaintiff's Motion to Disqualify Opposing Counsel, including review of supporting declarations of plaintiff and Elizabeth Tigano. | 1.20 | $210.00 | 566 |
| 3/13/2023 | CBA | Receipt and review of plaintiff's Demand for Exchange of Expert Witness Information, and Disclosure of Expert Witness Information. | 0.40 | $70.00 | 567 |

Defendants never provided expert disclosure; court did not enforce defendants to do so either

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 3/13/2023 | CBA | Draft nine emails to plaintiff regarding her Reply Brief in support of her Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, Motion to Disqualify, and First Amended Complaint, including issues regarding lack of proper service, conflicting hearing dates, and identification of exhibits. | 0.40 | $70.00 | 568 |
| 3/14/2023 | CBA | Review and reply to emails from counsel for Farmers Insurance Exchange regarding plaintiff's First Amended Complaint, lack of proof of service and summons, and plaintiff's request to continue hearing dates. | 0.20 | $35.00 | 569 |
| 3/22/2023 | CBA | Receipt and review of court order regarding hearing on Farmers' Motion to Quash Service of Summons. | 0.10 | $17.50 | 570 |
| 3/28/2023 | CBA | Review and reply to email from counsel for Farmers Insurance Exchange regarding hearings on Farmers' Motion to Quash and plaintiff's Motion for Reconsideration. | 0.10 | $17.50 | 571 |
| 3/31/2023 | CBA | Prepare meet and confer letter to plaintiff regarding improper service of First Amended Complaint, including issues regarding incomplete First Amended Complaint and incorrect proof of service | 0.80 | $140.00 | 572 |

| | | Hours | Amount |
|---|---|-------|--------|
| **TOTAL LEGAL SERVICES** | | 13.30 | $2,327.50 |

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|------|---|-------|-----------|--------|
| Christopher B. Allard | Partner | 13.30 | 175.00 | $2,327.50 |
| | **TOTAL** | 13.30 | | $2,327.50 |

| | |
|---|---|
| Total Fees and Disbursements | $2,327.50 |
| **TOTAL CURRENT CHARGES** | $2,327.50 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

May 17, 2023
Invoice  92484
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas

Claim No: 5005612246-1-2

**For Services Rendered Through 4/30/2023**

---

## LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 4/07/2023 ADA ADMIN | CBA | Review and reply to email from plaintiff regarding ADA request for continuation of existing hearings. | 0.20 | $42.00 | 573 |
| 4/07/2023 ADA ADMin | CBA | Several emails to and from counsel for Farmers Insurance Exchange regarding plaintiff's ADA requests for further continuation of hearings on her Motion for Reconsideration and Motion to Disqualify Opposing Counsel, and Farmers' Motion to Quash service of summons. | 0.30 | $63.00 | 574 |
| 4/07/2023 NEW CASE tenancy | CBA | Review and reply to email from carrier regarding pre-trial round table and various new case updates regarding plaintiff's First Amended Complaint, and plaintiff's Motion for Reconsideration. | 0.30 | $63.00 | 575 |
| 4/07/2023 ADA | CBA | Prepare email to judge regarding plaintiff's request to ADA coordinator for further continuance of hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, request for Case Management Conference, lack of service of plaintiff's First Amended Complaint, and issue regarding the trial date. | 0.30 | $63.00 | 576 |

NO FORMAL MOTION FILING JUST EMAILS TO JUDGE WITH ISSUES. PRACTICING LAW?

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 4/08/2023 | CBA | Receipt and review of email from plaintiff regarding her request to the court for a continuance of the hearing on her Motion for Reconsideration. | 0.10 | $21.00 | 577 |
| 4/18/2023 | CBA | Receipt and review of defendant Farmers Insurance Exchanges' | 0.40 | $84.00 | 578 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 92484 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| | | reply brief in support of its Motion to Quash plaintiff's service of summons, including review of supporting declaration, and proposed order. | | | |
| 4/19/2023 | CBA | Review of the court's detailed order sustaining the demurrer of defendants Leanne Ritter, Aarti Thakur, and Mark Simonson with leave to amend as to the Complaint in its entirety, and analyze the court's rulings as to each of the twelve causes of action, in preparation of review of plaintiff's First Amended Complaint. | 0.40 | $84.00 | 579 |
| 4/19/2023 | CBA | Receipt and review of plaintiff's verified First Amended Complaint, including review and analysis of factual allegations and causes of action 1-4, and evaluate grounds for demurrer and motion to strike (pages 1-369). | 3.80 | $798.00 | 580 |
| 4/20/2023 | CBA | Further initial review of plaintiff's verified First Amended Complaint, including review and analysis of causes of action 5-26, and evaluate grounds for demurrer and motion to strike (pages 370-760). | 4.10 | $861.00 | 581 |
| 4/21/2023 | CBA | further initial review of plaintiff's verified First Amended Complaint, including review and analysis of causes of action 27-93, and evaluate grounds for demurrer and motion to strike (pages 761-1,288). | 5.40 | $1,134.00 | 582 |

NO FORMAL MOTION TO STRIKE OR DEMURRER FILED ONLY EMAILS TO COURT

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 4/24/2023 | CBA | Review and reply to email from client LeAnne Ritter regarding case status and plaintiff's First Amended Complaint. | 0.20 | $42.00 | 583 |
| 4/25/2023 | CBA | Receipt and review of email from judge regarding plaintiff's ADA request regarding hearing schedule. | 0.10 | $21.00 | 584 |
| 4/25/2023 | CBA | Further initial review of plaintiff's verified First Amended Complaint, including review and analysis of causes of action 94-124, and evaluate grounds for demurrer and motion to strike (pages 1,289-1,828). | 5.80 | $1,218.00 | 585 |
| 4/26/2023 | CBA | Receipt and review of email from plaintiff to court regarding Vesco hearing, hearings on Motion for Reconsideration, Motion to Quash, and Americans with Disabilities Act grievance complaint. | 0.20 | $42.00 | 586 |

ADA complaint?

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 4/26/2023 | CBA | Review and reply to email from counsel for Farmers Insurance Exchange regarding plaintiff's request to the court to set a Vesco hearing. | 0.10 | $21.00 | 587 |

ADA ADMin

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 4/26/2023 | CBA | Receipt and review of email from plaintiff regarding documentation in support of her request for Vesco hearing, | 0.20 | $42.00 | 588 |

ADA Admin

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 92484 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 4 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | including review of attached medical records from her doctor's regarding limitations for attendance at hearings. | | | |
| 4/26/2023 | CBA | Receipt and review of voluminous exhibits to plaintiff's First Amended Complaint (301 pages). | 3.20 | $672.00 | 589 |
| 4/27/2023 | CBA | Review and reply to email from judge regarding ruling on plaintiff's request for ADA accommodation and hearing on plaintiff's Motion for Reconsideration. | 0.10 | $21.00 | 590 |
| 4/27/2023 | CBA | Receipt and review of the Court's Tentative Ruling on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.30 | $63.00 | 591 |
| 4/27/2023 | CBA | Draft email to carrier regarding the Court's Tentative Ruling on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, plaintiff's request to the ADA coordinator regarding special accommodations, service of plaintiff's First Amended Complaint, and further handling. | 0.30 | $63.00 | 592 |
| 4/27/2023 | CBA | Review and reply to emails from counsel for Farmers Insurance Exchange regarding the Court's Tentative Ruling on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.20 | $42.00 | 593 |
| 4/27/2023 | CBA | Receipt and review of email from plaintiff regarding Vesco hearing including review of attached doctor's note.  ADMin Vesco | 0.20 | $42.00 | 594 |
| 4/27/2023 | CBA | Receipt and review of emails from plaintiff regarding notice of intent to appear and contest the court's tentative ruling denying plaintiff's Motion for Reconsideration, and issue regarding need for Vesco hearing to address hearing schedule.  ADMin vesco | 0.20 | $42.00 | 595 |
| 4/27/2023 | CBA | Prepare for oral argument at hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, including review of plaintiff's motion and reply brief, and supporting declarations and exhibits. | 2.10 | $441.00 | 596 |
| 4/27/2023 | CBA | Prepare Judgment in favor of defendants Associa Northern California, Meadow Brook Village Association - Fremont, and Massingham Associates, and dismissal with prejudice.  JUDGMENT | 0.60 | $126.00 | 597 |
| 4/27/2023 | CBA | Receipt and review of email from plaintiff regarding her sister's inability to testify as a witness at the hearing on plaintiff's Motion for Reconsideration, including review of attached supporting medical records of plaintiff's sister.  ADMIN | 0.30 | $63.00 | 598 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | | | | Invoice 92484 |
|---|---|---|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 5 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 4/27/2023 | CBA | Further review of voluminous exhibits to plaintiff's First Amended Complaint (470 pages). | 4.30 | $903.00 | 599 |
| 4/28/2023 ADMIN | CBA | Attend Vesco hearing regarding plaintiff's request for ADA acomodations, including discussions regarding hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment, via remote video conference. | 1.20 | $252.00 | 600 |
| 4/28/2023 ADmin vesco | CBA | Review and reply to email from carrier regarding Vesco hearing regarding plaintiff's request for ADA acomodations and hearing on plaintiff's Motion for Reconsideration of the order granting defendants' Motion for Summary Judgment. | 0.20 | $42.00 | 601 |
| 4/28/2023 | CBA | Continue and complete review of voluminous exhibits to plaintiff's First Amended Complaint (125 pages). | 1.10 | $231.00 | 602 |
| | | **TOTAL LEGAL SERVICES** | **36.20** | **$7,602.00** | |

**LEGAL SERVICES SUMMARY**

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Christopher B. Allard | Partner | 36.20 | 210.00 | $7,602.00 |
| | **TOTAL** | **36.20** | | **$7,602.00** |

| Total Fees and Disbursements | $7,602.00 |
|---|---|
| **TOTAL CURRENT CHARGES** | **$7,602.00** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

June 12, 2023
Invoice  92842
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 5/31/2023**

**LEGAL SERVICES**

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| 5/01/2023 | CBA | Receipt and review of Union Bank's Opposition to plaintiff's second motion for an order compelling compliance with subpoena to produce clients' banking records, including review of supporting declaration with exhibits. | 0.60 | $126.00 | 603 |
| 5/01/2023 | CBA | Prepare stipulation of the parties to extend deadline to file responsive pleading after order on plaintiff's Motion for Reconsideration, pursuant to judge's instruction. | 0.80 | $140.00 | 604 |
| 5/01/2023 | CBA | Receipt and review of emails from plaintiff regarding request for stipulation to continue Case Management Conference, including review of attached medical records and proposed stipulation. | 0.30 | $63.00 | 605 |
| 5/01/2023 | CBA | Review and reply to email from counsel for Union Bank regarding plaintiff's second motion for an order compelling compliance with subpoena to produce client's banking records, appearance at hearing, and request for plaintiff's underlying motion. | 0.20 | $42.00 | 606 |
| 5/01/2023 | CBA | Receipt and review of plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records, including review of supporting declaration and exhibits (287 pages). | 2.40 | $504.00 | 607 |
| 5/01/2023 | CBA | Receipt and review of email from plaintiff to Judge and ADA coordinator regarding request for Vesco hearing regarding | 0.40 | $84.00 | 608 |

Eumi Lee directed favorable stipulation to defendants to be prepared

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | |
|---|---|
| Farmers Insurance | Invoice 92842 |
| Re: Bernstein v. Meadow Brook Village HOA | Page 3 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| | | disability accommodations and request for continuance of Case Management Conference and hearing on plaintiff's Motion to Compel Union Bank's compliance with records subpoena, including review of attached supporting documentation from plaintiff. | | | |
| 5/01/2023 | CBA | Draft email to plaintiff, Judge and ADA coordinator with objections to plaintiff's request for disability accommodations and request for continuance of Case Management Conference. | 0.30 | $63.00 | 609 |
| 5/01/2023 | CBA | Prepare proposed order on stipulation of the parties to extend deadline to file responsive pleading after order on plaintiff's Motion for Reconsideration. | 0.30 | $63.00 | 610 |
| 5/02/2023 | CBA | Attend conference with carrier regarding case status including discussions regarding plaintiff's First Amended Complaint, Demurrer, Motion to Strike, Case Management Conference, expert witnesses, Mandatory Settlement Conference and Trial. | 0.80 | $168.00 | 611 |
| 5/02/2023 | CBA | Receipt and review of email from plaintiff to judge regarding request for continuance of Case Management Conference. | 0.10 | $21.00 | 612 |
| 5/02/2023 | CBA | Draft email to plaintiff regarding stipulation of the parties to extend deadline to file responsive pleading after order on plaintiff's Motion for Reconsideration. | 0.10 | $21.00 | 613 |
| 5/03/2023 | CBA | Review and reply to email from plaintiff regarding stipulation to extend deadline for defendants to file and serve responsive pleading to plaintiff's First Amended Complaint, including review of stipulation executed by plaintiff. | 0.20 | $42.00 | 614 |
| 5/04/2023 | CBA | Prepare for Case Management Conference, including review of file. | 0.30 | $63.00 | 615 |
| 5/04/2023 | CBA | Receipt and review of the court's Tentative Case Management Order. | 0.20 | $42.00 | 616 |
| 5/04/2023 | CBA | Receipt and review of the court's tentative ruling regarding plaintiff's motion for an order compelling Old North State Trust to comply with plaintiff's deposition subpoena. | 0.20 | $42.00 | 617 |
| 5/04/2023 | CBA | Receipt and review of the court's tentative ruling on Farmers' Insurance Exchanges' motion to quash service of summons and motion to dismiss. | 0.20 | $42.00 | 618 |

*Handwritten annotations:*

*(next to 5/01/2023 entry 609):* no formal objections just emails to judge

*(next to 5/01/2023 entry 610):* Eumi Lee pushed this stipulation on Plaintiff in hearing

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 92842 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 4 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/05/2023 | CBA | Prepare defendants' detailed Case Management Conference statement, including issues regarding the case not being at issue, no operative complaint, demurrer, motion to strike, request to vacate trial, and issue regarding plaintiff's lack of service of filings. | 0.80 | $168.00 | 619 |

no motions to vacate, strike just oral or emails to court which judge indulges always

| | | | | | |
|---|---|---|---|---|---|
| 5/05/2023 | CBA | Receipt and review of the Court's Order on plaintiff's Motion for Reconsideration and Vesco hearing. | 0.20 | $42.00 | 620 |
| 5/08/2023 | CBA | Receipt and review of the court's Case Management Order. | 0.20 | $42.00 | 621 |
| 5/08/2023 | CBA | Receipt and review of the court's order on Farmers Insurance Exchange's Motion to Quash Service of Summons, and to dismiss. | 0.20 | $42.00 | 622 |
| 5/08/2023 | CBA | Receipt and review of the court's order on plaintiff's Motion for Order to hold Old North State Trust in Contempt. | 0.10 | $21.00 | 623 |

Court determined for Old North State out of state subpoena - 3rd party did not need to appear embroilment

| | | | | | |
|---|---|---|---|---|---|
| 5/10/2023 | CBA | Receipt and review of emails from plaintiff to judge regarding notice of intent to appear and contest the court's tentative ruling on her Motion for Reconsideration. | 0.20 | $42.00 | 624 |
| 5/11/2023 | CBA | Receipt and review of the court's amended tentative ruling on plaintiff's Motion for Reconsideration. | 0.20 | $42.00 | 625 |

tentative rulings always favorable to defendants always

| | | | | | |
|---|---|---|---|---|---|
| 5/11/2023 | CBA | Prepare for oral argument at continued hearing on plaintiff's Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, including review and analysis of additional arguments and documents referenced by plaintiff in her notice of contesting the court's tentative ruling. | 1.40 | $294.00 | 626 |
| 5/12/2023 | CBA | Attend continued hearing on plaintiff's Motion for Reconsideration of the court's order granting defendants' Motion for Summary Judgment, via Zoom video conferencing. | 1.30 | $273.00 | 627 |
| 5/12/2023 | CBA | Prepare defendants' Opposition to plaintiff's Motion to Disqualify Opposing Counsel. | 2.40 | $504.00 | 628 |
| 5/12/2023 | CBA | Prepare declaration in support of defendants' Opposition to plaintiff's Motion to Disqualify Opposing Counsel. | 0.60 | $126.00 | 629 |
| 5/16/2023 | CBA | Prepare defendants' Demand for Exchange of Expert Witness Information. | 0.30 | $63.00 | 630 |
| 5/18/2023 | CBA | Receipt and review of the court's Tentative Ruling on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena. | 0.20 | $42.00 | 631 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | | Invoice 92842 |
| Re: Bernstein v. Meadow Brook Village HOA | | | | Page 5 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/18/2023 | CBA | Receipt and review of plaintiff's notice of intent to appear and contest the court's Tentative Ruling on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena. | 0.10 | $21.00 | 632 |
| 5/18/2023 | CBA | Prepare for oral argument at hearing on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records, including review of file, plaintiff's motion, and Union Banks' Opposition. | 0.40 | $84.00 | 633 |
| 5/19/2023 | CBA | Attend hearing on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records, via Zoom video conference. | 0.80 | $168.00 | 634 |

bank attorneys were there to argue case christopher did not need to attend

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/19/2023 | CBA | Prepare defendant's Amended Case Management Conference statement, pursuant to Case Management Order from court requesting to know whether case is at issue and as to which defendants, discovery status, status of Alternative Dispute Resolution, and readiness for Mandatory Settlement Conference and Trial. | 0.70 | $147.00 | 635 |
| 5/19/2023 | CBA | Prepare attachment to defendants' Case Management Conference statement, including detailed chart regarding the status of each of the thirty-eight defendants, responsive pleadings including demurrer and motion to strike, and pending motions, pursuant to judge's Order. | 0.80 | $168.00 | 636 |

Judge(s) assisting directing defense counsel repeatedly in case

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/19/2023 | CBA | Receipt and review of notice of continued hearing on plaintiff's second motion for an order compelling Union Bank's compliance with subpoena to produce clients' banking records. | 0.10 | $21.00 | 637 |
| 5/19/2023 | CBA | Receipt and review of Wells Fargo Bank's opposition to plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena, including review of supporting declaration with exhibits. | 0.60 | $126.00 | 638 |
| 5/19/2023 | CBA | Draft email to counsel for Wells Fargo Bank regarding plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena, and notice of intent to appear and oppose plaintiff's motion, which was not served upon our firm. | 0.10 | $21.00 | 639 |
| 5/20/2023 | CBA | Receipt and review of plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena. | 0.30 | $63.00 | 640 |
| 5/20/2023 | CBA | Review and reply to emails from counsel for Wells Fargo Bank regarding plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena, and similar motion | 0.20 | $42.00 | 641 |

all duplicative billings third party banks had counsel attending and preparation objections

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 92842 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 6 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| | | brought by plaintiff against Union Bank. | | | |
| 5/22/2023 | CBA | Telephone conference with counsel for Wells Fargo Bank regarding plaintiff's second motion for an order compelling Well Fargo Bank's compliance with subpoena for production of our client's banking records. | 0.40 | $84.00 | 642 |
| 5/24/2023 | CBA | Receipt and review of email from plaintiff to Judge preemptively contesting the court's ruling on her Motion to Disqualify Opposing Counsel, including review of attached doctor's note. | 0.20 | $42.00 | 643 |
| 5/25/2023 | CBA | Receipt and review of the court's tentative Case Management Order. | 0.20 | $42.00 | 644 |
| 5/25/2023 | CBA | Receipt and review of the court's tentative ruling on plaintiff's Motion to Disqualify Opposing Counsel. | 0.20 | $42.00 | 645 |
| Conflict defense counsel representing Kaiser, Plaintiff and family doctors medical providers | | | | | 646 |
| 5/25/2023 | CBA | Prepare for oral argument at hearing on plaintiff's Motion to Disqualify Opposing Counsel, including review of plaintiff's moving papers.    Defense counsel never disclosed entire case | 0.60 | $126.00 | |
| 5/25/2023 | CBA | Prepare for Case Management Conference in order to discuss numerous pending issues outlined by judge in her tentative ruling, including review of file. | 0.40 | $84.00 | 647 |
| | | ex parte to judge nudging to look at issues | | | |
| 5/25/2023 | CBA | Receipt and review of emails from plaintiff to Judge contesting the court's tentative ruling on her Motion to Disqualify Opposing Counsel, and tentative Case Management Order. | 0.20 | $42.00 | 648 |
| 5/26/2023 | CBA | Attend hearing on plaintiff's Motion to Disqualify Opposing Counsel, via Zoom video conferencing. | 1.10 | $231.00 | 649 |
| 5/26/2023 | CBA | Attend Case Management Conference, via Zoom video conferencing. | 0.60 | $126.00 | 650 |
| 5/26/2023 | CBA | Telephone conference with carrier regarding updates regarding hearing on plaintiff's motion to disqualify opposing counsel, and Case Management Conference including issue regarding vacated trial, Mandatory Settlement Conference, pending ruling on plaintiff Motion for Reconsideration, and anticipated Demurrer and Motion to Strike. | 0.30 | $63.00 | 651 |
| 5/26/2023 | CBA | Draft email to carrier regarding Mandatory Settlement Conference. | 0.10 | $21.00 | 652 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | Invoice 92842 |
|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | Page 7 |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 5/31/2023 | CBA | Receipt and review of the court's Tentative Ruling on plaintiff's motion for an order compelling Old North State Trust's compliance with subpoena. | 0.20 | $42.00 | 653 |
| 5/31/2023 | CBA | Receipt and review of detailed email from plaintiff contesting the court's Tentative Ruling on plaintiff's motion for an order compelling Old North State Trust's compliance with subpoena. | 0.30 | $63.00 | 654 |
| 5/31/2023 | CBA | Prepare for oral argument at hearing on plaintiff's motion for an order compelling Old North State Trust's compliance with subpoena to produce clients' banking records, and continued hearings on plaintiff's motions for an order compelling Union Bank and Wells Fargo's compliance with subpoena, including review of file. | 0.70 | $147.00 | 655 |

Judge refusal to order compliance discovery or enforce third parites and defendants vacating defaults

| | TOTAL LEGAL SERVICES | 25.10 | $5,243.00 |
|---|---|---|---|

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Christopher B. Allard | Partner | 0.80 | 175.00 | $140.00 |
| Christopher B. Allard | Partner | 24.30 | 210.00 | $5,103.00 |
| | TOTAL | 25.10 | | $5,243.00 |

### DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 5/2/2023 | Record Fee; To obtain records at Public Portal Alameda Superior Court on 04/22/23, Celeste Visa, paid to; First National Bank of Omaha | $12.00 |
| | Total Disbursements | $12.00 |

### DISBURSEMENTS SUMMARY

| Description | Amount |
|---|---|
| Record Fee | $12.00 |
| TOTAL | $12.00 |

| Total Fees and Disbursements | $5,255.00 |
|---|---|
| **TOTAL CURRENT CHARGES** | **$5,255.00** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

July 26, 2023
Invoice  93428
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 6/30/2023**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 6/02/2023 | CBA | Attend hearings on plaintiffs' three motions for an order compelling Union Bank, Wells Fargo, and Old North State Trust to comply with plaintiff's records subpoenas to obtain client's banking records, via Zoom video conference. | 1.60 | $336.00 | 656 |
| 6/09/2023 | CBA | Receipt and review of the court's Order denying plaintiffs' Motion for an Order Compelling Old North State Trust to Comply with Deposition Subpoena to obtain our clients' bank records. | 0.20 | $42.00 | 657 |
| 6/09/2023 | CBA | Receipt and review of the court's Order denying plaintiffs' Motion for an Order Compelling Union Bank to Comply with Deposition Subpoena to obtain our clients' bank records. | 0.20 | $42.00 | 658 |
| 6/23/2023 | CBA | Receipt and review of plaintiff's detailed Mandatory Settlement Conference Statement (187 pages). | 2.60 | $546.00 | 659 |
| 6/24/2023 | CBA | Draft email to carrier regarding plaintiff's Mandatory Settlement Conference Statement, plaintiff's demand, and need for defendants' settlement offer. | 0.10 | $21.00 | 660 |
| 6/24/2023 | CBA | Prepare defendants' Mandatory Settlement Conference statement. | 3.60 | $756.00 | 661 |
| 6/26/2023 | CBA | Conference with carrier regarding Mandatory Settlement Conference, including discussion regarding injunctive relief, settlement offer, status of pleadings, Order to Show Cause issued | 0.50 | $105.00 | 662 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| | | | | |
|---|---|---|---|---|
| Farmers Insurance | | | Invoice 93428 | |
| Re: Bernstein v. Meadow Brook Village HOA | | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|--|
| | | to plaintiff, and pending order on plaintiff's Motion for Reconsideration. | | | |
| | | Judge claimed could not read the FAC yet struck complaint stated it did not comply | | | |
| 6/26/2023 | CBA | Draft email to carrier regarding Order to Show Cause issued to plaintiff, and authority for settlement offer to plaintiff. | 0.10 | $21.00 | 663 |
| 6/26/2023 | CBA | Receipt and review of the court's Order denying plaintiff's Motion for Reconsideration. | 0.20 | $42.00 | 664 |
| 6/26/2023 | CBA | Draft email to carrier the court's Order denying plaintiff's Motion for Reconsideration, and issues regarding plaintiff's potential for appeal and judgment. | 0.30 | $63.00 | 665 |
| 6/26/2023 | CBA | Further preparation of Judgment to include recovery of attorney's fees and costs pursuant to motion. | 0.60 | $126.00 | 666 |
| | | admin recreation of Luanne Rutherford bills and costs        personal injury matter email insurer to waive costs and fees | | | |
| 6/26/2023 | CBA | Review of plaintiff's original Complaint and the twelve causes of action and evaluate ability to seek recovery of attorney's fees from plaintiff as to the HOA and property manager. | 0.60 | $126.00 | 667 |
| 6/27/2023 | CBA | Legal research regarding recovery of costs as prevailing party pursuant to order granting Motion for Summary Judgment. | 1.20 | $252.00 | 668 |
| | | personal injury matter | | | |
| 6/27/2023 | CBA | Legal research regarding judgment to include an award of attorney's fees pursuant to motion as prevailing party under the Davis-Sterling Act. | 1.80 | $378.00 | 669 |
| | | personal injury matter | | | |
| 6/27/2023 | CBA | Prepare for attendance at Mandatory Settlement Conference, including review of file. | 1.60 | $336.00 | 670 |
| 6/27/2023 | CBA | Draft email to carrier regarding seeking recovery of costs as prevailing party and motion for attorney's fees pursuant to California Civil Code. | 0.30 | $63.00 | 671 |
| 6/28/2023 | CBA | Review and reply to email from carrier regarding litigation costs in preparation of Mandatory Settlement Conference. | 0.10 | $21.00 | 672 |
| 6/28/2023 | CBA | Attend Mandatory Settlement Conference, via Zoom video conferencing. | 1.80 | $378.00 | 673 |

| | | **TOTAL LEGAL SERVICES** | **17.40** | **$3,654.00** |
|--|--|--|--|--|

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|------|--|-------|-----------|--------|
| Christopher B. Allard | Partner | 17.40 | 210.00 | $3,654.00 |

**McNamara, Ambacher, Wheeler, Hirsig & Gray LLP**

| Farmers Insurance | Invoice 93428 |
|---|---|
| Re: Bernstein v. Meadow Brook Village HOA | Page 4 |

| Name | Hours | Rate/Hour | Amount |
|---|---|---|---|
| TOTAL | 17.40 | | $3,654.00 |

## DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 6/5/2023 | Record Fee; To obtain proof of service for records at Public Portal Alameda County Court on 05/02/23, Celeste Visa, paid to; First National Bank of Omaha | $1.00 |
| 6/5/2023 | Record Fee; To obtain plaintiff's second motion compelling union bank to comply for records at Public Portal Alameda County Court on 05/02/23, Celeste Visa, paid to; First National Bank of Omaha | $7.50 |
| 6/5/2023 | Record Fee; To obtain copy of substitution of attorney at Public Portal Alameda County Court on 05/09/23, Celeste Visa, paid to; First National Bank of Omaha | $3.00 |
| 6/5/2023 | Record Fee; To obtain copy of court's order regarding CMC at Public Portal Alameda County Court on 05/09/23, Celeste Visa, paid to; First National Bank of Omaha | $4.00 |
| 6/5/2023 | Record Fee; To obtain copy of court's order regarding hearing on motion at Public Portal Alameda County Court on 05/09/23, Celeste Visa, paid to; First National Bank of Omaha | $8.50 |
| | **Total Disbursements** | **$24.00** |

## DISBURSEMENTS SUMMARY

| Description | Amount |
|---|---|
| Record Fee | $24.00 |
| TOTAL | $24.00 |

| Total Fees and Disbursements | $3,678.00 |
|---|---|
| **TOTAL CURRENT CHARGES** | **$3,678.00** |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

August 21, 2023
Invoice  94062
Matter ID: FRM-1837
Christopher B. Allard
Page  2

Re: Bernstein v. Meadow Brook Village HOA

Insured: Meadow Brook HOA and Association Northern California and Mas

Claim No: 5005612246-1-2

**For Services Rendered Through 7/31/2023**

### LEGAL SERVICES

| Date | Atty | Description | Hours | Amount | |
|------|------|-------------|-------|--------|---|
| 7/06/2023 *nudging court* | CBA | Prepare letter to judge regarding proposed Judgment, pursuant to court's order granting defendants Associa Northern California, Meadow Brook Village Association - Fremont, and Massingham Associates' Motion for Summary Judgment. | 0.30 | $63.00 | 674 |
| 7/07/2023 | CBA | Receipt and review of email from plaintiff including review of attachment with partial exhibits to her First Amended Complaint (74 pages). | 0.70 | $147.00 | 675 |
| 7/13/2023 | CBA | Receipt and review of plaintiff's objection to order denying her motion for reconsideration, objection to defendants' proposed judgment, and second motion for reconsideration. | 0.60 | $126.00 | 676 |
| 7/13/2023 | CBA | Receipt and review of plaintiff's objections to defendant's proposed judgment. | 0.30 | $63.00 | 677 |
| 7/24/2023 | CBA | ██████████████████ *John Gibson* ██████ | 0.20 | $42.00 | 678 |
| 7/28/2023 | CBA | Review and rely to email from carrier regarding file-endorsed Judgment in favor of defendants Associa Northern California, Meadow Brook Village Association - Fremont, and Massingham Associates, including a dismissal of these parties. | 0.20 | $42.00 | 679 |
| 7/28/2023 | CBA | Prepare Notice of Entry of Judgment. | 0.10 | $21.00 | 680 |

## McNamara, Ambacher, Wheeler, Hirsig & Gray LLP

| | | | |
|---|---|---|---|
| Farmers Insurance | | Invoice 94062 | |
| Re: Bernstein v. Meadow Brook Village HOA | | Page 3 | |

| Date | Atty | Description | Hours | Amount | |
|---|---|---|---|---|---|
| 7/28/2023 | CBA | Draft email to carrier regarding need for information in support of Memorandum of Costs. | 0.10 | $21.00 | 681 |
| 7/31/2023 | HCD | Review file in preparation of Memorandum of Costs summary and worksheet, including review of breakdown of costs; | 0.50 | $50.00 | 682 |
| 7/31/2023 | CBA | Receipt and review of order from court regarding renotice of Order to Show Cause to plaintiff regarding striking her First Amended Complaint. | 0.10 | $21.00 | 683 |

no formal motions; judge claimed could not read instead of obtaining massive FAC from Information technology department access to FAC - strikes FAC requiring plaintiff to file SAC - embroilment only requests emails from defense for judge to comply

| | TOTAL LEGAL SERVICES | 3.10 | $596.00 |
|---|---|---|---|

### LEGAL SERVICES SUMMARY

| Name | | Hours | Rate/Hour | Amount |
|---|---|---|---|---|
| Christopher B. Allard | Partner | 2.60 | 210.00 | $546.00 |
| Heidi C. Dittmer | Paralegal | 0.50 | 100.00 | $50.00 |
| | TOTAL | 3.10 | | $596.00 |

### DISBURSEMENTS

| Date | Description | Amount |
|---|---|---|
| 7/7/2023 | Record Fee; To obtain court records at Public Portal Alameda County Court on 06/23/23, Lhamo Visa, paid to; First National Bank of Omaha | $4.00 |
| | Total Disbursements | $4.00 |

### DISBURSEMENTS SUMMARY

| Description | Amount |
|---|---|
| Record Fee | $4.00 |
| TOTAL | $4.00 |

| | | |
|---|---|---|
| Total Fees and Disbursements | $600.00 | |
| TOTAL CURRENT CHARGES | $600.00 | $554.00 |

McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
Attorneys at Law
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523

(925) 939-5330
FED. ID. NO. 94-1555712

Farmers Insurance
Attn: Corey Braun
P.O. Box 268994
Oklahoma City, OK  73126-8994

September 7, 2023
Invoice 94389
Matter ID: FRM-1837
Christopher B. Allard
Page 2

Re: Bernstein v. Meadow Brook Village HOA
Insured: Meadow Brook HOA and Association Northern California and Mas
Claim No: 5005612246-1-2

**For Services Rendered Through 8/31/2023**

**LEGAL SERVICES**

| <u>Date</u> | <u>Atty</u> | <u>Description</u> | <u>Hours</u> | <u>Amount</u> | |
|---|---|---|---|---|---|
| 8/01/2023 | HCD | Review numerous costs documents in preparation of draft Memorandum of Costs summary for attorney review before filing. | 1.50 | $150.00 | 684 |
| 8/09/2023 | HCD | Prepare draft of Memorandum of Costs summary and worksheet for attorney review. | 1.40 | $140.00 | 685 |
| 8/14/2023 | CBA | Further preparation of Memorandum of Costs summary, supporting worksheet, and exhibits. | 1.20 | $252.00 | 686 |
| 8/23/2023 | CBA | Receipt and review of plaintiff's Notice of Motion and Motion to Tax Costs, with exhibits. | 0.40 | $84.00 | 687 |
| 8/23/2023 | CBA | Receipt and review of plaintiff's Partial Response to the Court's Order to Show Cause regarding striking of her First Amended Complaint (325 pages). | 3.40 | $714.00 | 689 |
| 8/25/2023 | CBA | Receipt and review of plaintiff's combined Motion for Reconsideration of order denying her motion for reconsideration, and motion to vacate order granting defendants' Motion for Summary Judgment, including review of exhibits (348 pages, partially illegible). | 3.20 | $672.00 | 690 |
| 8/31/2023 | CBA | Draft email to carrier regarding plaintiff's Motion to Tax Costs, Partial Response to the Court's Order to Show Cause regarding striking of her First Amended Complaint including references to | 0.50 | $105.00 | 691 |

Exhibit **F**

**7 Be still before the Lord**

   **and wait patiently for him;**

**do not fret when people succeed in**
**their ways,**

   **when they carry out their wicked**
**schemes.**

**8 Refrain from anger and turn from**
**wrath;**

   **do not fret—it leads only to evil.**

**9 For those who are evil will be**
**destroyed,**

   **but those who hope in the Lord will**
**inherit the land.**

















EXHIBIT G

The Beast out of the Earth

11 Then I saw a second beast, coming out of the earth. It had two horns like a lamb, but it spoke like a dragon. 12 It exercised all the authority of the first beast on its behalf, and made the earth and its inhabitants worship the first beast, whose fatal wound had been healed. 13 And it performed great signs, even causing fire to come down from heaven to the earth in full view of the people. 14 Because of the signs it was given power to perform on behalf of the first beast, it deceived the inhabitants of the earth. It ordered them to set up an image in honor of the beast who was wounded by the sword and yet lived. 15 The second beast was given power to give breath to the image of the first beast, so that the image could speak and cause all who refused to worship the image to be killed. 16 It also forced all people, great and small, rich and poor, free and slave, to receive a mark on their right hands or on their foreheads, 17 so that they could not buy or sell unless they had the mark, which is the name of the beast or the number of its name.

18 This calls for wisdom. Let the person who has insight calculate the number of the beast, for it is the number of a man.[e] That number is 666.

**MARY BERNSTEIN, MSAJS**
3416 Deerwood Terrace, #113
Fremont, CA  94536
Email: mbernsteinpurple@hotmail.com
(510) 938-6280
Plaintiff Pro Se

ENDORSED
FILED
ALAMEDA COUNTY

DEC 15 2022

CLERK OF THE SUPERIOR COURT
By ___ K. Ghee ___ Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ALAMEDA

MARY BERNSTEIN,

    Plaintiff,

    vs.

ASSOCIA NORTHERN CALIFORNIA, a California Corporation MEADOW BROOK VILLAGE ASSOCIATION, a California Corporation, MASSINGHAM & ASSOCIATES, a California Corporation; JOHN DOE 1-50; MARY ROE 1-50; XYZ CORP 1-50; ABC LLC 1-50; The names of the "John Doe 1-50" "Mary Roe 1-50", "XYZ Corp, 1-50", and "ABC LLC, 1-50", defendants being fictitious, and unknown to the Plaintiff, Amy DeJesus, William Schneider, Rohit Varicatt. Michael Durbin, Vipul Ramani, Virendra Dhavale, Romulo Zafra, Ashok Agarwal, Charlie West, Estate of Charlie West, Estate of Charlie West Laurie Sheaffer, Jill Buono, Sharon Daly, Linda Kramer, Marv Fryman, Susan Condio-Hernandez, Jeffrey Lowery, Belinda Hollingsworth, LeAnne Ritter, Lee Molignoni, Laurie Sheaffer, Elizabeth (Liz) Hall, Warren Hollingsworth, Jerry Cosentino, COMMON INTEREST MANAGEMENT HOLDINGS LLC, a limited liability company, John Gibson, Mona Oliver, Derc Yamasaki, Joaquin Rivera, Warwick Hoyle, Jacob Rivera, Che Saeturn Tanjoco, Chandan Sheath, Dawn Aquilina, Mark Simonson, Gurnoor Judge, Tilak D. Hodge, Geraldine

Case No.   HG18897381

**DISABLED PLAINTIFF MARY BERNSTEIN'S FIRST AMENDED COMPLAINT**



**JURY TRIAL DEMANDED (JURY FEES PAID)**



Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 1 -

1
2
3
4
5

Linares, CONDOMINIUM FINANCIAL
MANAGEMENT, INC., FARMERS
INSURANCE EXCHANGE, a California
Interinsurance Exchange; Richard A. Fong,
Jr., Bay Area Property Services, Inc., BJ
Management Solutions, COMMON
INTEREST MANAGEMENT HOLDINGS
LLC dba Common Interest Management
Services, Daisy Zafra et al.,

6
7

        Defendants.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Oceanside California Mary and baby brother Frankie in the homeless shelter playpen. Frankie Oceanside California 1980-1982.



Age 13 raising little brother Frankie



Age 17 raising disabled little sister Beth with Mother

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 2 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Beloved Disabled Late Mother hospitalized that Farmers Insurance and Meadow Brook HOA Defendants prevented me from seeing a final time 2021 opposing stay of proceedings terminally ill Mother Volatile complex wherein she could not be here with me due to breach of fiduciary duty by mulltiple defendants**



Beloved Late Mother 2021 HOA President Geraldine Linares President misrepresentations concerning stay, financing prevention of stay to assist Mother Disabled Sister Elizabeth lives here traumatized hospitalized

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 3 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Elrond Bernstein cat; John terminally ill and deceased cat the late Gimley Bernstein**



**Mary Bernstein Meadow Brook Courtyard 2008**



**Pastor Lee-Jong Rak Baby Box disabled babies South Korea**



<u>**PRELIMINARY ALLEGATIONS**</u>

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 4 -

1.   The Subject Property is condominium development known as Meadow Brook Village located in Fremont, California and governed by HOA Meadow Brook Village Association—Fremont. I obtained my unit in the community in February 2006. At that time, I was provided with the CC&Rs and Bylaws, which contractually govern me and Defendants. None of the CC&Rs, Bylaws, disclosure statements, or other documents provided at purchase or governing the community advise that the pool(s) will only be available and/or heated during certain parts of the year. Nor did Defendants or any of their representatives advise me of this fact.  As a result of this lawsuit, the HOA Board has subjected me to constant harassment and created a hostile environment. This hostility climaxed in vehicular vandalism as well as hate mail delivered to my doorstep by anonymous mail demanding I drop my lawsuit. A Police report Number 180718411 has been filed and signed approved by William Gourley Badge Number 13531. By exercising my rights to investigate the lack of funding and outrageous assessments levied against hard working residential and investment property owners, I have endured constant harassment. As set forth in this complaint, Plaintiff alleges several actions by Defendants that constitute various causes of action. Discovery is continuing and Plaintiff reserves the right to assert additional facts as may be appropriate to support causes of action at trial. Despite the HOA Board's knowledge of my disability status, abuse attempts at manipulation when I am at the pool or step outside my home have escalated. The irony is that the previous board, and this new board members had filed lawsuits as well but seem to believe that they wield power over myself and that I must defer to them as to this lawsuit.[1] Since complaint filed additional emotional distress has been endured:

- Board members, residents constantly pestering me at pool or anywhere to dismiss complaint
- Hate mail anonymous calling me names, pressuring me to dismiss complaint
- Vehicular vandalism

---

[1]  1 Peter 3:12

12 For the eyes of the Lord are over the righteous, and his ears are open unto their prayers: but the face of the Lord is against them that do evil.  https://www.youtube.com/watch?v=Anso_90zjoo

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 5 -

- HOA Board stating at general sessions that I am the one holding up the repairs despite the fact that there were 10 other litigants that filed actions.

2. On November 9, 2022 we learnt that Meadow Brook Village Association through one of its property managers Condominium Financial Management helped automatically $39,895.18 payment from our account without our permission to pay for Emergency Assessment that we are disputing in addition to the regular assessment. A hold was placed on our account as a result causing us great distress. This is an example of the overreach this HOA Board and property management firms continually engage in. 2022 Board Members Defendant Geraldine Linares, Defendant Meadow Brook Village Association Agent Anup Soni, Defendant Romulo Zafra, Defendant Sharon Daly and Defendant Meadow Brook Village Association Agent Sjith Sivankutty **Exhibit D**. I receive social security; my husband is disabled and we could not access funds. The liberties that this HOA Board has taken is unfathomable. I am writing this First Amended Complaint while undergoing illness respiratory problems and other complications. This is difficult to do concentration wise while ill as well as due to my other conditions. This is a fight for our home as we have endured such horrors the past several years in this condominium development located in Fremont California known as Meadow Brook Village. The neglect is the worst that the City of Fremont has ever witnessed Leonard Powell has stated. There are no comparable properties in the City of Fremont which have ever been found in violation safety hazards to this extent stated Leonard Powell. This is not a criminal case wherein it must be beyond a reasonable doubt; this is a civil matter such thing as circumstantial evidence. Preponderance of the evidence is one type of evidentiary standard used in a burden of proof analysis. Under the preponderance standard, the burden of proof is met when the party with the burden convinces the fact finder that there is a greater than 50% chance that the claim is true. **This is the burden of proof in a civil trial.**

3. This is a horrific story involving abject cruelty of an unscrupulous Meadow Brook Village Association – Fremont HOA, multiple Property Managers and a Swiss owned

insurance company, Farmers.[2]  This complaint will expose certain group of homeowners

that attempted to buffalo another group of homeowners that Meadow Brook was out of

funds.[3]  This account of past and current events entails equity theft, vulture investing,

failure to allocate funds, incompetence, failure to protect safety and welfare of the public

and members of the community by the very individuals that were to protect interests of

trusting homeowners. I have been marginalized in HOA community due to disabilities

suffering alienation and isolation at the hands of the HOA. The story will unfold in the

following pages, the characters, the setting, the *plot*, the title and is continually unfolding

concerning a hostile takeover by a rogue group anonymously referring to themselves as

"A Certain Group of Homeowners." The Second Opinion publication boasts of over 100

participants signatures.  This petition spoken of **Individual defendants listed in this**

**Complaint Plaintiff believes on information and belief that these are some of the**

**individuals in this Certain Group of Homeowners** since 2018 filing, Mary Bernstein,

a disabled owner and caregiver of ill family members is the Plaintiff in this action.

Plaintiff has endured ious abuses for nearly five years as well as her family and guests.[4]

As a result, Plaintiff is a cautionary tale concerning condominium ownership and has

simultaneously had to author the horrors herewith and in book *"How to Survive As a*

*Disabled Person in an Abusive HOA"* endured by disabled persons in a quasi-

government known as an HOA.   The unbearable mental and physical anguish will be

illustrated in this comprehensive first amended complaint.  Judge Eumi Lee stated that

she wants to see each and every date, time and linkage to defendants.  Plaintiff's expert

witnesses will be testifying at the jury trial concerning the impact that these experiences

---

[2]  https://spartacuslawfirm.com/2022/07/12/the-10-worst-insurance-companies-in-america/ July 2022 Spartacus Law Firm
The 10 Worst Insurance Companies in America

[3]  The expression "to buffalo" soon became part of the speech of the American west. It meant to make someone helpless, to trick
them. In the early nineteen hundreds, a story about attacks on white settlers moving into Indian territory explained, "The
Sioux had the wagon-train surrounded and the soldiers buffaloed."
[4]  Therefore I will boast all the more gladly of my weaknesses, so that the power of Christ may rest upon me.
https://www.youtube.com/watch?v=nNrad8hzWoM  "They have greatly oppressed me from my youth," Psalm 129
let Israel say;  2 "they have greatly oppressed me from my youth,   but they have not gained the victory over me. 3 Plowmen
have plowed my back    and made their furrows long.  4 But the Lord is righteous;    he has cut me free from the cords of
the wicked."

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 7 -

has had on health mental and physical, egg skull theory.  My precious Mother and I

denied the right to see each other a final time due to the violence, threats here in this

complex and the opposing of medical emergency stay to go to her a final time testifying

July 2021 – this Court denied dying woman on oxygen waiting to plea for her eldest

daughter leave – Younger daughter was hospitalized in Arizona Mother terrified alone.

**My late Mother Anna Smith-FoglEtance I was <u>not</u> able to see again before her death**

**due to the actions of Defendants notably Farmers Insurance Exchange counsel in**

**this matter; she suffered terribly and could not believe the abject cruelty that I was**

**enduring.**  My mother was a single Mother with schizophrenia, bipolar, hearing issues,

the only parent I ever knew as my disabled father had left.  We are to honor our parents

irregardless of their limitations, disabilities.  Our Gods have feet of clay; they are only

human and not to be blamed for all of life's issues.  I had disabled parents and I myself

am disabled; it is not punishable by death.[5]  My Father much older than my mother

disabled WWII veteran PTSD.[6]  My Mother despite her physical and psychiatric

challenges raised three children, myself the eldest.  I may not have had or known a

biological Father during my lifetime protecting me; but I have had my entire life a

Heavenly Father, triune God (God the Father, God the Son and God the Holy Spirit) that

to this day is protecting, guiding me, saving me, counseling me.  If it had not been for the

Lord, I would have never gotten through this amended complaint and this entire process.

*We shared a special bond as there was a time that it was only her and I.*  Video footage,

---

[5] <u>Exodus 20:12</u>

Honor your father and mother, so that your days may be long in the land that the LORD your God is giving you.

[6] Post-traumatic stress disorder (PTSD) results after experiencing or witnessing a terrifying event which later leads to mental health problems. This disorder has always existed but has only been recognized as a psychological disorder within the past forty years. Before receiving its official diagnosis in 1980, when it was published in the third edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-III).] Post-traumatic stress disorder was more commonly known as soldier's heart, irritable heart, or shell shock. Shell shock and war neuroses were coined during World War I when symptoms began to be more commonly recognized among many of the soldiers that had experienced similar traumas. By World War II, these symptoms were identified as combat stress reaction or battle fatigue. In the first edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-I), post-traumatic stress disorder was called gross stress reaction which was explained as prolonged stress due to a traumatic event. Upon further study of this disorder in World War II veterans, psychologists realized that their symptoms were long-lasting and went beyond an anxiety disorder. Thus, through the effects of World War II, post-traumatic stress disorder was eventually recognized as an official disorder in 1980.

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 8 -

1   911 calls, witness testimony, photos will demonstrate, evidence the sheer torment that has

2   occurred at the hands of Defendants corporate and the acrimonious and divisive *"Certain*

3   *Group of Homeowners."* Chamberlain Towers, Surfside Florida documentary wherein

4   tower collapsed 100+ deaths resulting I will be appearing in concerning neglect Meadow

5   Brook Village Association – Fremont and agents has caused HOA Board members

6   failures.

7   All of these entities below have worked together in the past or are currently working together as

8   the agents, assigns, or representatives of Meadow Brook Village Association – Fremont for the

9   parameter of time listed. Each action or deficiency alleged in my complaint was conducted by

10  one or more of the defendants at the direction or ratification of the others. **Currently there are**

11  **three current property management firms managing the Meadow Brook Village**

12  **Association property:  Condominium Financial Management, Bay Area Property Services**

13  **and Bay West Property Management.**[7]  **Exhibit III.**  Meadow Brook disclosed in email

14  agenda for Decmember 6 2022 agenda Executive meeting discloses just one alone Bay Area

15  West Property Management year to date spent by Meadow Brook Village is $727,451.63. There

16  are currently 3 Property Management Associations simultaneously managing Meadow Brook

17  which is wasteful and excessive.  Bay West Property Management Colin Lynch is the

18

19  [7]  Exhibit III.  Email PG&E loans taken out Plaintiff had no knowledge learnt in email 10 18 2022 from Meadow Brook and Bay
    Area Property Services refusal to hold live in person general sessions Plaintiff not transparent board incompetent inability to
20  allocate funds continual breach of fiduciary duty
    (one of the reasons why court ordered needed compelling third parties Old North State Trust, Wells Fargo, Union Bank financial
    bank records needed) Court order refiling of Union Bank, Wells Fargo contempt orders; Plaintiff just learnt of additional
21  financial institution Old North State Trust while preparing this First Amended Complaint
    Email 12 6 2022
22  MBV Executive Meeting
    Item b. Bay West disclosure Property Management $727,451.63. There are currently 3 Property Management Associations
23  simultaneously managing Meadow Brook which is wasteful and excessive: Condominium Financial Management, Bay West
    Property Management and Bay Area Property Services.
24  h. remark by HOA Board Association's counsel:
    "Typically, we explain the "negligence standard" by saying that, even though the Association is responsible for
25  maintenance, repair and replacement of Common Area, it does not necessarily follow that the Association is responsible for
    damage to Units resulting from leaks stemming from that Common Area. The HOA made timely needed repairs in order to
26  mitigate leaks. The Association exercised "reasonable care" and is not responsible for damage to a Unit even if
    the damage was caused by a Common Area component. This damage could be covered by the owner/ resident's
    personal policy.
27  In an effort to show good faith and avoid future claims, management recommends reimbursing ½ the
    owners deductible (NTE$500) with confidentiality/ settlement agreement. Management can utilize the
28  template provided in prior cases and additional bill for administrative time."

    Flamingo Hilton Homeowner Association we are a member of and have been for many years demonstrating competency

    Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 9 -

Construction Manager for the repairs and is not a defendant in this matter. For that reason, I have named all these corporate entity Defendants jointly and severally and identified:

- Common Interest agent for HOA MeadowBrook
- Bay Area Properties agent for HOA MeadowBrook
- BJ Management Solutions agent for HOA MeadowBrook
- Condominium Financial Management agent for HOA MeadowBrook
- Associa agent for HOA Meadow Brook
- Massingham agent for HOA Meadow Brook

| Defendant Property Managers timeline | | | |
|---|---|---|---|
| Property Management Firm | Agents | Start | Terminated |
| Massingham | Tammy Fritz | 2002 | 2014 |
| Associa | Tammy Fritz | 2014 | January 2018 |
| Common Interest Management Services | Beth Ramirez Marissa Hunter Crystal Manoiki | February 2018 | June 2019 |
| BJ Management Solutions | Cindy Murphy Lew Wade | July 2019 | November 2019 |
| Bay Area Property Services Tenancy, Management aspects only | Selina Bravo Yvonne Ly | December 2019 | |
| Condominium Financial Management Financial aspects only | Brian Nelson | April 2019 | |

1664.

1665. Bay West Property Management Colin Lynch is the Construction Manager for the repairs due to the neglect and is not a defendant in this matter.

1666.

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 10 -

| Bay West Property Management Construction aspects only | Colin Lynch | March 2019 | |

1667.

1668. NOW ADDITIONALLY LOANS FOR PG&E OPERATING COSTS UNDERTAKEN 2022

1669. I have seen ships managed better in a storm. The level of incompetence/corruption is astonishing.[8] Meadow Brook Village HOA Board has the audacity and states through counsel that they are not responsible for common area damage to units.[9] Exhibit III. Another example overreach Meadow Brook Village attempting to seize our entire bank account for their needs through Condominium Financial Management. Meadow Brook Village Association – Fremont has not had live in person general sessions since 2019 despite COVID 19 pandemic listed. Zoom remote hearings held sporadically at 7 pm which is too late for Plaintiff to attend due to medications taken. To Plaintiff's alarm, PG&E loans taken out Plaintiff had no knowledge learnt in email 10 17 2022 canceling virtual meeting from Meadow Brook and Bay Area Property Services refusal to hold live in person general sessions Plaintiff not transparent board incompetent inability to allocate funds continual breach of fiduciary duty. Exhibit III. Plaintiff has been kept in the dark regarding all these new additional loans undertaken by Meadow Brook Village Association – Fremont. Breach of Fiduciary duty continually.

4. This is not a willy-nilly, frivolous case, but a case involving horrific housing crisis in a homeowner condominium development potentially causing homelessness for Mary

---

[8] On November 9, 2022 we learnt that Meadow Brook Village Association through one of its property managers Condominium Financial Management helped automatically $39,895.18 payment from our account without our permission to pay for Emergency Assessment that we are disputing in addition to the regular assessment. A hold was placed on our account as a result causing us great distress. 2022

[9] Email agenda December 6 2022 executive session h. remark by HOA Board Association's counsel: "Typically, we explain the "negligence standard" by saying that, even though the Association is responsible for maintenance, repair and replacement of Common Area, it does not necessarily follow that the Association is responsible for damage to Units resulting from leaks stemming from that Common Area. The HOA made timely needed repairs in order to mitigate leaks. The Association exercised "reasonable care" and is not responsible for damage to a Unit even if the damage was caused by a Common Area component. This damage could be covered by the owner/ resident's personal policy. In an effort to show good faith and avoid future claims, management recommends reimbursing ½ the owners deductible (NTE$500) with confidentiality/ settlement agreement. Management can utilize the template provided in prior cases and additional bill for administrative time."

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 11 -

1   Bernstein and her disabled family. Harassment for which they have never missed

2   payments in performance of contract monthly assessments for maintenance of the

3   common development.  This is essentially an Apartment Complex given the rentals

4   appear to be about 76% as opposed to owner occupied.  It appears that the objective is to

5   rid Meadow Brook Village Association – Fremont of the individual owners and convert

6   to Apartment Complex.  Refinancing is impossible due to the d listing with the FHA by

7   Meadow Brook Village Association – Fremont withdraw of application Federal Housing

8   Authority on February 20, 2018. Exhibit EE.  Plaintiff has been blamed, defamed

9   slandered for difficulties refinancing when this withdrawal in effect prior to the filing of

10  this litigation.  The property is unwarrantable. [10]  Plaintiff is including clauses for

11  exemplary punitive damages in this lawsuit as well as the PLD-PI-001(6) attachment for

12  Exemplary Damages Attachment as Plaintiff is a non attorney, disabled and uncertain if

13  the forms need to be attached in lieu or in tandem with exemplary clause in this pleading.

14  Reasonable accommodations are to be made for disabled litigations who are non

15  attorneys.

16  5.   Plaintiff is informed and believes, and therefore alleges that the common areas of the

17       subject property including but not limited to Meadow Brook Village Association CCR

18       ARTICLE I DEFINTIONS Section 8, "Common Area" shall mean all portions of the

19       Project except the Units and, without limiting the generality of the foregoing, specifically

20       including all structural projections within a Unit which are required for the support of a

21       Condominium Building, gas, water, waste pipes, all sewers, all ducts, chutes, conduits,

22  [10] https://www.youtube.com/watch?v=K8IJwUOuXOw

23  Approval Guidelines https://fhaloans.guide/learn/what-are-fha-approved-condominiums
    Condos already on the FHA-approved list are certified to meet all the requirements below. For a property to be added or re-
    certified it generally must meet the following requirements:

24  • Project must include 2 or more units
    • FHA concentration—the percentage of units financed with FHA Loans—must be below 50% (FHA Concentration may

25    be higher in some cases due to fall-out or other HUD exceptions)
    • Less than 25% of property is used as commercial space

26  • No more than 10% of properties can be owned by a single investor (Except for unsold units owned by the builder)
    • No more than 15% of homeowners can be more than 60 days delinquent on HOA fees

27  • Property must meet state requirements for insurance coverage against flooding and other disasters.
    • Condominium's financials must be review and be above board

28  • At least 50% of units must be owner-occupied
    • Meet the HUD Housing Quality Standards

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 12 -

1    wires and other utility installations of the structures wherever located (except the outlets
2    thereof when located within the Units), the land upon which the structures are located, the
3    air space above these structures, all bearing walls, columns, floors, the roof, the slab
4    foundations, common stairways, window glass and the like.  Common Area shall
5    specifically exclude all garage door opening systems and all air conditioning units
6    notwithstanding that the foregoing are located in the Common Area.

7    6.   Plaintiff is informed and believes, and therefore alleges the HOA Board determines
8         monthly regular assessments according to Meadow Brook Village Association CCR
9         ARTICLE I DEFINTIONS 3 "Assessments": The following meanings shall be given to
10        the Assessments hereinafter defined:  ARTICLE I DEFINTIONS" Regular Assessment"
11        shall mean the amount which is to be paid by each Member to the Association for
12        Common Expenses.  The HOA Board members elected financially sole responsibility to
13        determine the amount of regular assessments to impose on the community and the
14        responsibility to allocate funds.

15   7.   Emergency Assessment levied February 16, 2018. An astronomical Emergency
16        Assessment did not need to be levied against the homeowners to rectify the damage,
17        repair and reconstruction.  The repairs could have been done over time increasing
18        monthly regular assessments as opposed to breaking individuals financially and
19        exhausting their credit with lump sum multiple loans, assessments.  It has been years and
20        years and there are still significant repairs to be made.  It was years before any
21        construction, repair began taking place by Saarman.  In fact, the repairs here to an
22        existing structure are taking longer than construction implementing new developments
23        such as Montecito 37342 Sequoia Road Fremont California which was completed in 18
24        months.  It is interesting that the only eyesore in the entire district here is Meadow Brook
25        Village Condominiums which is atrocious looking from the outside driving by in traffic.
26        Apartment such as Sycamore Commons, Creekside Village that were built the same time
27        period as Meadow Brook were maintained even without reserve funds.  The conditions
28        are deplorable at Meadow Brook Village despite the constant flow of funds monthly

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 13 -

received and in addition multiple loans for operating costs, repairs, endless future assessments. The individuals making these decisions are either incompetent, corrupt or both.

8. The so called "emergency repairs" in email April 12 2019 from Meadow Brook over a year later states the "Prototype" Repair Project is about to start. Homeowners made to believe urgent that was to begin immediately. Hidden Agendas. To date, these emergency repairs are not completed.

9. In January 2001 Karen Klein an investment property owner filed a lawsuit in San Mateo Case No. CIV420339 for BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, NEGLIGENCE, FRAUD-INTENTIONAL MISREPRESENTATION,

1670. FRAUD-NEGLIGENT MISREPRESENTATION, FRAUD- NONDISCLOSURE OF KNOWN FACTS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, NEGLIGENT INTERFERENCE WITH PROSPECTIVE

1671. ECONOMIC ADVANTAGE against EDGEWATER ISLE HOMEOWNERS

1672. ASSOCIATION, PELICAN MANAGEMENT GROUP, and DOES 1-25.

Homeowner used her unit for rental income. Because of an upcoming construction project, Edgewater Isle Homeowners Association repeatedly told homeowner not to rent that unit during a specified timeframe. Homeowner wrote the Association and received limited information return. Homeowner went to Board meetings and again did not receive absolute answers. Construction dates kept slipping and as a result, homeowner's unit was vacant for over one year, depriving homeowner of rental income.

1673.

1674. Homeowner's suit was settled for an intial sum of at least $20,000 plus monthly payments of $1,200 for over one year to homeowner and two other owners. The HOA's insurance carrier paid the first $20,000, and the remaining monthly payments were paid directly by Edgewater Isle North Homeowners Association.

1675.

1676. Ultimately, this owner's condo was demolished and rebuilt. Demolition began nearly 2 years after the lawsuit was filed.https://edgewaterisle.com/lawsuits/breach-of-contract/

10. In fact in August 18 2021 we attempted to obtain loan and were denied by Fannie Mae and were denied due to the property unwarrantability. Andrew Shimizu of AmeriSave was assisting us and aware of this litigation. Andrew Shimizu advised that loan was denied because of unwarrantability and outstanding structural defects which have not been completed. Our Condo team confirmed that your loan is declined by FNMA in their system Project ID: 20544601 Project/Phase Name: Meadow Brook Village/Other Comments: Entire – 07/2121 **Litigation dismissed, however structural defects have not been completed meaning there are health and safety issues that remain. Fannie Mae will not approve Meadow Brook property loans due to its horrific conditions. The currrent HOA Presdient Geraldine Linares bore false witness stating that my liitgation denied her refinancing in declaration opposition to my medical stay. My Mother terminally ill passed away as a result of this misrepresentation to the Court and denial to travel to Arizona without me seeing her again after pandemic. FHA and Fannie Mae will not approve any lending for this property until 100% repairs made. Likelihood Freddie Mac would return the same decision. I spoke to representative at Freddie Mac and they do not contain a list concerning rejections but representative stated more than likely would be rejected for the same reason unwarrantable uninhabitable property.**

11. Inspections are to be held for loan approval federal funding mortgage loan companies Fannie Mae, Freddie Mac. Meet the HUD Housing Quality Standards Without these protections, there would be families living in unacceptably poor housing conditions. In the case of government insured loans, like FHA Loans, the Federal Housing Administration has an additional incentive of protecting their own investment. The FHA must ensure that the property is in good condition because the home is collateral

on the loan. If the homeowner defaults the lender will have to cease the home and sell it to cover the costs of the loan.  The property is listed as unwarrantable and on these lists flagged.

12. The HOA through its board violates corporation code Section 8330 refusal to provide membership list to Plaintiff when requested numerous times.[11]  Selective inclusivism exhibited by the MeadowBrook Village Condominium Development, ultimately discrimination practices. The Bernstein Family has owned the subject property since July 6, 1988.  John L. Bernstein Jr. purchased July 6 1988 from William Pestana the unit in MeadowBrook Village.  This constituted contract this purchase of property in HOA of which CC&Rs govern.  John L. Bernstein III began paying assessments with his father John L. Bernstein Jr. since 1988 purchase of property; Mary Bernstein began assisting with assessment payments April 1992 John L. Bernstein III, my husband and I, Mary Bernstein assisting John L. Bernstein Jr.  As a result of payments made, John L. Bernstein III and his father John L. Bernstein, Jr. co owners March 24 1995 quitclaim deed.  In February 2006, John L. Bernstein III and Mary Bernstein purchased from John L. Bernstein Jr. the unit and began residing.  Title held as community property March 16, 2006 executed Grant Deed 2006129946 recorded April 4 2006 Alameda County Recorder.  On September 13, 2012 John L. Bernstein, IV son was added to title quitclaim deed recorded September 14 2012 Alameda County Recorder 2012301729 joint tenancy right of survivorship.

---

- [11] California Corporations Code Section 8330. Inspection of Membership List. (a) Subject to Sections 8331 and 8332, and unless the corporation provides a reasonable alternative pursuant to subdivision (c), a member may do either or both of the following as permitted by subdivision (b): (1) Inspect and copy the record of all the members' names, addresses and voting rights, at reasonable times, upon five business days' prior written demand upon the corporation which demand shall state the purpose for which the inspection rights are requested; or
- (2) Obtain from the secretary of the corporation, upon written demand and tender of a reasonable charge, a list of the names, addresses and voting rights of those members entitled to vote for the election of directors, as of the most recent record date for which it has been compiled or as of a date specified by the member subsequent to the date of demand. The demand shall state the purpose for which the list is requested. The membership list shall be made available on or before the later of ten business days after the demand is received or after the date specified therein as the date as of which the list is to be compiled.
- https://www.youtube.com/watch?v=kJIZBoCB5Ls

13. I have been a member with good standing in Hilton homeowners association have never missed a payment since 1996. These assessments are paid annually and there has never been a lawsuit or liens filed against members in the Hilton community for repairs. There is a board, budgets and allocations made for the property. Board meetings have been held the entire time by offices five volunteer members that are owners. These are regular people that have managed responsibly the investment property for owners over a substantially larger portfolio national and international properties. We pay annual homeowners maintenance fees and have not needed ever any special assessments. Exhibit III. There are budgets, allocations, renovations and maintenance of the properties. Clearly with Meadow Brook Village Association that does not have the expenses of restaurants, employees as that of hospitality industry the only explanation for lack of funds is embezzlement or mismanagement or both. It is absolutely disgraceful the level of incompetence or corruption by the fiduciaries involved with this property.[12] Either way it is gross misconduct. Further, no evidence financial has been produced by Wells Fargo Bank, Union Bank, Old North State Trust and any other concealed accounts that Plaintiff is unaware of evidencing the financial state warranting multiple special, emergency assessments. This is critical and is necessary discovery. Plaintiff has the disadvantage of preparing this amended complaint without these financial records that have been sought by Wells Fargo Bank and Union Bank multiple times ignored; Plaintiff only learnt recently while preparing amended complaint of additional financial institution Old North State Trust. It is unclear how many other accounts nationally or internationally containing Meadow Brook homeowner funds. Depositions by Associa and Massingham Tammy Fritz and Sharon Massingham conducted stated that Meadow Brook Village Association – Fremont has never been out of funds.

14. Mary Bernstein and family moved from San Francisco, California to MeadowBrook Village condominiums in 1994 after traumatic vehicular injury to young son and Plaintiff

---

[12] Exhibit III.    As of December 31, 2019, Hilton Grand Vacations Club has 55 properties with 8,916 rooms in 5 countries and territories, all franchised. Dealing in timeshares, Hilton Grand Vacations Company, LLC develops, manages, markets, and operates a system of brand-name vacation club ownership resorts. https://www.youtube.com/watch?v=B-h1s5jHjZo

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 17 -

in San Francisco on way to daycare. Intense injuries were suffered by both. The pools ideal to rehabilitate in Fremont for Mother 28 with extensive leg injuries impact of vehicle in crosswalk and infant son 16 months old.

15. Deferred consequences large balloon payments due from homeowners when family has been paying assessments for property maintenance since 1988 is a hard sell. How is it that the Bernstein Family is liable for the property's condition when paying forward in assessments for this very prevention? How is Mary Bernstein responsible for the neglect, failure to allocate or any other actions by HOA Board members, property managers when Mary Bernstein never served in any capacity on any HOA Board? Mary Bernstein and her family did nothing to incur damages and like the Chamberlain Towers Surfside Florida neglect by HOA Board, the MeadowBrook HOA Board through extreme neglect created this situation for the property. This is a case involving severe mental anguish imposed on a disabled homeowner that has never missed a payment and endured horrific trauma, stress for exercising constitutional right filing this case in 2018 in an effort to coerce and under duress for her to dismiss case. In the case at hand, homeowner Mary Bernstein sues the Defendant Offiers and Directors of MeadowBrook Village Homeowner Association – Fremont, property management firms, insurance company and certain HOA members for emotional distress (a group of homeowners unidentified initially creating a narrative second opinion to achieve a specific objective hostile takeover of the development from other homeowners), negligence, violations of their duty of loyalty, breach of contract to Mary Bernstein Meadow Brook Village Homeowner Association Fremont member for the misappropriation and misuse of homeowners' association funds, which resulted in the lost of approximately more than $19 million dollars to date. This resulted in an inflated emergency assessment for neglect levied on some homeowners. A false left right paradigm concerning an alleged new HOA Board and old HOA Board illegal election campaign of disinformation. An

insurance company that did not pay for construction rather imposed harassment on Mary Bernstein an indirect client of Farmers as covered under master policy. [13]

16. The attorney general of California directs homeowners to file complaints against homeowners HOA outside the scope of its authority:

- The Davis-Stirling Common Interest Development Act (California Civil Code section 4000 et seq.)
- The HOA's rules, commonly referred to as Covenants, Conditions and Restrictions (CC&Rs)
- Services and amenities or maintenance issues
- Property management companies
- Accountability for common interest assets, i.e., landscaping, pools and clubhouses
- Parking and the towing of vehicles
- Dues, assessments and citations
- Costs related to written document production requests, such as copying or redaction fees
- Foreclosure proceedings
- Poor management, misappropriation or negligent handling of corporate assets.

This is exactly what has been done concerning the litigation at hand herewith. All of these issues are present and subject of this litigation as well as additional causes of action property managers, agents, insurance company and HOA.

The Attorney General will intervene on the following violations many of which have occurred and are still occurring by Defendant Meadow Brook Village Association – Fremont:

| Corporation Code | Violation |
|---|---|
| Corp. Code, Section 7510(b) | Failure to hold a regular meeting of the members. |
| Corp. Code, Section 7510(e) | Failure to hold special meeting after demand by 5 percent or more of members. |
| Corp. Code, Section 7511 | Failure to provide notice of a meeting to members. |
| Corp. Code, Section 7511(a) | Failure to provide timely notice of meeting to members. |
| Corp. Code, Section 7512 | Transacting business not otherwise authorized in the bylaws at a meeting of members with less than a quorum. |

---

[13] Matthew 10:32 Whosoever therefore shall confess me before men, him will I confess also before my Father which is in Heaven. *Christ Our Advocate* 1 John 2:1 2 My little children, I am writing these things to you so that you may not sin. But if anyone does sin, we have an advocate with the Father, Jesus Christ the righteous. https://www.youtube.com/watch?v=K8IJwUOuXQw  https://www.youtube.com/watch?v=PGhLe4FW8Wg

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 19 -

| Corp. Code, Sections 7513 | Failure to provide members with properly conformed written ballot or proxy as authorized in bylaws. |
| Corp. Code, Sections 7514 | Failure to provide members with properly conformed written ballot or proxy as authorized in bylaws. |
| Corp. Code, Section 7520 | Failure of mutual benefit corporation to provide for reasonable means of nominating and electing persons as directors. |
| Corp. Code, Section 7615 | Failure to abide by its bylaws authorizing cumulative voting for directors. |
| Corp. Code, Section 8215 | Falsification of or tampering with association reports or records. |
| Corp. Code, Section 8320 | Failure to keep books and records, minutes of proceedings, or list of members. |
| Corp. Code, Section 8321 | Failure to prepare an annual report. |
| Corp. Code, Section 8321(a) | Failure to provide annual report to member upon written request. |
| Corp. Code, Section 8330(1) | Failure to allow inspection and copying of names and addresses of members upon written request. |
| Corp. Code, Section 8330(2) | Failure to send member list of names and addresses of members upon written request. |
| Corp. Code, Section 8333 | Failure to allow inspection of books and records. |
| Corp. Code, Section 8334 | Failure to allow director to inspect and/or copy books, records, and documents of the corporation. |

## JURISDICTION AND VENUE

17. This is an action asserting violations of California State Law.  Plaintiff is a homeowner who brings this action as a result of Defendants' unlawful conduct concerning an assessment levied against Plaintiff and her property located a 3416 Deerwood Terrace, #113, Fremont, California  94536 (the "Property").  Moreover venue is proper in this Court because a substantial part of the events giving rise to the claims herein occurred in the City of Fremont, County of Alameda.  Venue is therefore proper in Alameda County.

## RELATION BACK AMENDMENTS AMENDED COMPLAINT

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 20 -

**18.** I as a homeowner in Meadow Brook began enduring extreme harassment from the HOA community reaching its Apex during pandemic after filing preliminary complaint in 2018 and enduring to the present which will be evidenced at trial in this matter video footage, witness testimony, declaration, petitions for civil harassment for protection of my family and guests.  Privileges had been denied for the pool prior to the filing of the complaint by HOA Board and refusal to address leakage pipes in unit by property management.  Honig v. Financial Corp. of America (1992) 6 Cal. App. 4th 960 [7 Cal. Rptr. 2d 922]. In Honig a savings and loan executive [27 Cal. App. 4th 203] filed a complaint while still employed by the institution. He alleged a "campaign of harassment, threats, humiliation, debasement and intimidation" in retaliation for his objection to being forced to misrepresent the nature of the certificates of deposit he was selling. The executive feared his discharge was imminent and filed suit as a "preventative measure." (6 Cal.App.4th at p. 963.) More than two and one-half years after the original complaint was filed, the savings and loan filed a summary judgment motion. The executive opposed the motion and filed his own motion to amend the complaint to include additional paragraphs relating to the events leading up to the discharge. Further, the proposed complaint added a cause of action for defamation "based upon spreading to others the reason for the discharge." (6 Cal.App.4th at pp. 965-966.) The trial court refused to allow the amendments to the complaint and granted the summary judgment motion.

19. The appellate court held it was an abuse of discretion to refuse the request to amend the complaint. It concluded that the facts in both the original and amended complaints "all related to [the executive's] discharge" and therefore came within the same general set of facts test which California courts use to determine whether amendments relate back to an earlier complaint. (6 Cal.App.4th at pp. 965-967.) fn. 5 The Honig court reasoned that the proposed amendments were a "continuation of the events asserted in the initial pleading." They "finished telling the story begun in the original complaint." (Id. at p. 966.)

20. The Honig court went on to state that all the injuries in the proposed complaint-including those asserted in the defamation cause of action-were to be "expected" from a wrongful

discharge. The court said, "It is expected that fired employees may have difficulty in obtaining new employment and that allegations surrounding their discharge may be spread to [27 Cal. App. 4th 204] others. When an employer discharges an employee it is not unusual for the employer to defend the termination by reasserting the stated reasons for it." Hence even the defamation cause of action related back to the original complaint. (6 Cal.App.4th at p. 967.) Essentially the court said that if an employer terminates someone, the employer can "expect" to be sued for defamation. (Ibid.) to others the reason for discharge."(6 Cal.App.4th at pp. 965-966). The trial court refused to allow the amendments to the complaint and granted the summary judgment motion. The appellate court held it was an abuse of discretion to refuse the request to amend the complaint. It concluded that the facts in both the original and amended complaints.

21. The same wrongful act can lead to different injuries, so new manifestations of the consequences of one wrongful act may arise after a complaint has been filed and properly relate back to the original. Lamont v. Wolfe (1983) 142 Cal. App. 3d 375 [190 Cal. Rptr. 874] illustrates this particular twist. A medical malpractice suit was filed by a patient for her own [27 Cal. App. 4th 210] injuries and by her husband, for loss of consortium. The patient died, and the husband moved to amend the complaint to allege a cause of action for wrongful death-but only after more than a year had elapsed since the death. After a demurrer based on the statute of limitations was sustained, the appellate court reversed. The defendants argued that it was illogical to apply the relation back doctrine because the cause of action for wrongful death did not exist at the time of the original complaint. The Court of Appeal rejected the point-but not because it is possible to sue for wrongful acts not yet committed. Rather, the husband was still seeking "recovery for essentially the same loss." (Id. at p. 381, italics added.) The wrongful death action was just a "different name" for the original loss of consortium action. (Id. at p. 382.)

22. A case **allowing a claim based on an act which had not yet happened at the time of the original complaint** is Bendix Corp. v. City of Los Angeles (1984) 150 Cal. App. 3d 921 [198 Cal. Rptr. 370]. Bendix grew out of a city tax dispute over gross receipts from

federal contracts beginning in the late 1950's and which involved at least 50 other
similarly situated contractor-taxpayers. The contractors had initiated their own actions
against the city to collect overpaid taxes or were the object of actions by the city to
collect underpaid taxes. Certain of "these pending matters" (as the Bendix court described
them, 150 Cal.App.3d at p. 924) were consolidated and "prosecuted to final decision as a
test case." Bendix's claims did not constitute the test case, though Bendix agreed with the
city to be bound by the results of the test case. It was not until 1977 that the test case was
finally decided, resolving the dispute in favor of the contractors. (See ITT Gilfillan, Inc.
v. City of Los Angeles (1977) 72 Cal. App. 3d 421 [140 Cal. Rptr. 193] [ITT Gilfillan I].)

23. For nearly two decades while the federal receipts dispute simmered, Bendix's "custom"
was to file claims for refunds which the city would "routinely" deny, and then Bendix
would routinely file a complaint within six months of the denial as required by the
Government Code. (Bendix Corp. v. City of Los Angeles, supra, 150 Cal.App.3d at pp.
924 & 927.) However, in 1976 and 1977, as the decision in the test case became
imminent, Bendix concluded it would be futile to file further formal complaints, and so
neglected to do so until after six months since the respective denials, i.e., until after the
statute had run on the claims. After the test case came down, the trial court allowed
Bendix to file a supplemental and amended complaint consolidating its numerous
previous complaints, and the issue arose as to whether that complaint should be deemed
to relate back to the first complaint, filed back in 1965.

24. The Bendix court first established that it was free to disagree with an opinion arising out
of subsequent litigation in the test case, ITT Gilfillan, [27 Cal. App. 4th 211] Inc. v. City
of Los Angeles (1982) 136 Cal. App. 3d 581 [185 Cal. Rptr. 484] [ITT Gilfillan II],
which had held, under almost identical circumstances, that there should be no relation
back. (See Bendix, supra, 150 Cal.App.3d at p. 925.) Most of the Bendix Corp. v. City of
Los Angeles opinion's substantive discussion then consisted of a long quotation (with
bracket insertions to make it apply to the case at hand) from a Ninth Circuit case, William
Inglis, etc. v. ITT Continental Baking Co. (9th Cir.1981) 668 F.2d 1014, 1057-1058, the

gravamen of which was that when there is no prejudice and the supplemental complaint merely restates allegations in the initial pleading and further alleges " 'only that the claimed violations had continued,' " the relation back rule should apply. (See Bendix, supra, 150 Cal.App.3d at p. 926, quoting William Inglis, etc. v. ITT Continental Baking Co., supra, 668 F.2d at pp. 1057-1058.) **The court dealt with the logical conundrum of allowing a pleading alleging new events to relate back to one filed prior to those events by stating that the new events were merely " 'a continuation of the old cause of action.' "**

## MARY BERNSTEIN'S TESTIMONY

25. I am the Plaintiff in this case Mary Bernstein. I am a child sexual assault and child abuse survivor, disabled senior citizen, non attorney litigant and the caregiver for a disabled sister, a terminally ill husband and a senior disabled cat. I have been disabled for several years. I previously worked as an advocate in federal agencies and worked in the courts, private sector. I receive social security disability, I can no longer work, as I am permanently disabled. Only through the Lord's grace am I able to keep putting one foot in front of the other each day during this stressful housing litigation.[14]

26. I have disabilities ADHD, Bipolar, PTSD. I have mobility issues resulting from accident with my infant son in 1994 in stroller struck by vehicle in crosswalk nearly killing us both. I sustained injuries resulting in our move to Meadow Brook Village Fremont in 1994 for pool to rehabilitate. We rented unit for period of time 3663 Oakwood Terrace, #214 Fremont California 94536. Father in law John L. Bernstein II that owned unit 3416 Deerwood Terrace, #113, Fremont, CA 94536 assisted in realtor. Father in law John L. Bernstein II was then able to assist in transporting Mary Bernstein and younger son John L. Bernstein IV for multiple appointments Kaiser.

27. Plaintiff Bernstein from 2015-2017 was healing not receiving psychiatric care until hospitalization July 20-21 2017 due to the intense stress occurring HOA, financial

---

[14] Romans 10:5-11 If you confess with your mouth that Jesus is Lord and believe in your heart that God raised him from the dead, you will be saved. For it is with your heart that you believe and are justified, and it is with your mouth that you profess your faith and are saved.

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 24 -

matters.  Plaintiff Bernstein suffered intense setback from emotional recovery PTSD
HOA and has been receiving continual psychiatric care increased medications since July
2017.  Conditions exacerbated by abuses by HOA retaliation, harassment and denial of
privileges the Bernstein family endures despite payments.  Swimming medically
prescribed aquatic therapy to manage symptoms which Plaintiff has been denied for
years.

28. A mentally disabled Complainant forced to conduct depositions, document reviews,
investigations coordinate with multiple agencies, multiple attorney services without rest
for nearly a year to the point of another medical, physical breakdown in her housing
community. Fearful to leave her home, fearful to stay in it as continually accessible to
harassment and abuses. Remaining animals forced to remain indoors to avoid cruelty to
animals inflicted on them as retaliation.

29. Americans with Disabilities Act in the United States, U.S. Department of Justice

30. Alameda County as found in violation by the United States Department of Justice,
lawsuits housing mentally ill mentioned

31. Disabled individuals in the United States protected by ADA.  Many countries cultures
view disabled persons as repugnant such as in South Korea.  Pastor has created a Baby
Box in Asia for young women to deliver their infants that they do not want to this Pastor,
many of which are disabled infants.  https://www.liveaction.org/news/south-korean-
pastor-babybox-honored-donation/  Pastor Lee Jong-Rak South Korea in a video
discusses how people from continent Asia view disabled persons as repugnant.[15]  In the

---

[15] The Baby Box. A way for unwanted children to be deposited without harm. Lee Jong-Rak has been taking in
unwanted, disabled children since 2009. He lives in Seoul, South Korea with his wife, his son, staff and
deposited babies. Lee Jong-Rak has been saving children that have been deposited that would have died if they
were left on the streets. He has a huge heart to care for children and cares abut every child that has been in his
home.

Pastor Lee Jong-Rak's son was born with disabilities and they lived in a hospital for 14 years. One day a baby
was abandoned on his doorstep. The baby would have died if it was left in the cold any longer. He designed the
baby box so that it connects to his home. When a baby was deposited it rang a bell to alarm Lee, his wife or a
staff member that a baby had arrived. It has been in use ever since 2009 and is the only baby drop off box in
South Korea.

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 25 -

United States, we have the Americans with Disablities Act, Title II and other laws
protection for disabled persons.  Alameda County was found in violation by the U.S.
Department of Justice for allowing and injuring disabled persons.  Justice Department
Finds that Alameda County, California, Violates the Americans with Disabilities Act and
the U.S. Constitution.  There are several federal district court cases Northern District of
California U.S. District Court pending concerning Alameda County disabled.
https://www.justice.gov/opa/pr/justice-department-finds-alameda-county-california-
violates-americans-disabilities-act-and-us.

32. U.S. Department of Veterans Affairs National Center for PTSD
https://www.ptsd.va.gov/understand_tx/written_exposure_therapy.asp states When you
have PTSD, it's common to feel that the traumatic experience you went through is too
difficult or stressful to manage.  You likely avoid reminders (like people or situations)
from the event, feeling a sense of danger.

33. National Institute of Mental Health
https://www.nimh.nih.gov/health/publications/bipolar-disorder Bipolar Disorder states

---

Brian Ivie directed a documentary about how Lee Jong-Rak has helped hundreds of lives and how he continues to do so (The Drop Box). In South Korea hundreds of children are abandoned on the streets and left for dead every year. Ever since the baby box was created fewer children have been abandoned. Pastor Lee Jong-Rak takes care of all of the children that have come in and often puts then in an orphanage or takes care of them in his home. He has taken care of more than 600 babies since he started the baby box.

Although it might seem happy there are people that don't support his idea. The director of K.U.M.F.A ( Korean Unwed Mother Family Association ), Kyoung-Hwa Mok, doesn't support the baby box idea. He said that the baby was encouraging mothers to abandon their children. The Korean government wasn't very supportive of his idea about the baby box and also thought it encouraged abandonment and asked him to shut it down. Lee Jong-Rak said, "There is no reason for the baby box to exist if the government takes care of the children's safety, and making them happy." He also said, "If people say the baby box is illegal, then we can make it legal. There is nothing illegal about saving a baby's life." Pastor Lee Jong-Rak thinks that he should continue to do what he thinks is right and I do too.

Pastor Lee Jong-Rak is a man we don't usually remember but for the children that he has helped, even when they weren't wanted, the handicapped, mentally disabled, and deformed. He has helped 600 children feel wanted. To make a child happy is a good deed but if you can save them and make them feel wanted, you are a hero to them and plenty of other people. I think Lee Jong-Rak is a hero because he is saving hundreds of lives every year and that isn't something many people do, and Lee didn't have to do it but he still did.

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 26 -

Bipolar disorder is a chronic or episodic (which means occurring occasionally and at irregular intervals) mental disorder. It can cause unusual, often extreme and fluctuating changes in mood, energy, activity, and concentration or focus.

34. Very Well Mind https://www.verywellmind.com/writing-and-adhd-20821 https://www.verywellmind.com/improving-reading-comprehension-in-students-with-adhd-20813 Writing and Comprehension difficulties for children and adults with ADHD. Keeping track of multiple concepts at once and continuously self-monitoring to make sure what they are reading makes sense can be incredibly difficult for a student with impaired working memory (often a problem for children with ADHD). Children and adults with ADHD write a different way. Reasonable accommodations to be made by courts for individuals with disabilities, particularly communication disabilities both state and federal courts. https://www.verywellmind.com/adhd-and-reading-comprehension-20806.

35. I am not a professional attorney. I have retained professional attorneys and *even they* have not performed well enough for this Court, Departments 20 and 512 respectively, *which is curious*. This Court constantly has ridiculed me for not having an attorney and even when I have had attorneys, rulings have never been in my favor. Therefore, as a disabled person required to attempt to comply with restrictions by Dept. 512 that I do not completely understand in a reduced amount of time, this is extremely stressful. Disabled persons are to be given latitude in court as to provide equal access to the Courts ADA reasonable accommodations. Dept. 512 denied motion for summary judgment despite disputed facts, 137 page pleading drafted by attorneys stating that she did not know why it took so long when in fact she had granted emergency continuances fully aware of reasoning why limited scope attorneys were arguing months later due to mother's death, injury. Dept. 512 also chastised plaintiff for not conducting discovery during emergency leaves when motion for summary judgment stated discovery would be continuing.

1677. "Two Wings of the Same Bird, Two Sides of the Same Coin"[16] "THE OLD AND NEW 'BOARDs"

1678. SERIES OF HOA BOARD MEMBERS LITIGATION FALSE LEFT RIGHT PARADIGM DECEPTIVE ELECTION 2018 CAMPAIGN OF DISINFORMATION CONTROLLED OPPOSITION FRENEMIES NEW VS. OLD BOARD

36. Fall Winter 2016/2017 with absolutely no notice both pools were closed denying privilege  In April 2006 Plaintiff Mary Bernstein, her husband John L. Bernstein III, and son John L. Bernstein, IV assumed mortgage and deed transfer of property from Father in law John L. Bernstein II.  Plaintiff was provided with CCRs and was not advised by the Meadow Brook Homeowners Association or Massingham/Associa that the advertised pools would only be heated 5 months out of the year or that one of the pools BBQ club areas would be closed for seven months out of the year.  Plaintiff Mary Bernstein suffers from multiple health and psychological conditions: arthritis, plantar facitis, sciatica, IBS, ulcers, post traumatic stress disorder, ADHD, Bipolar 1, depression.  We have pets that

---

[16]  The purpose of the recall of the HOA 2017 Board movement was allegedly criticizing the old Board for mistakes.  Charlie West (on the HOA Board longer than anyone and therefore culpable for this housing crisis) was longtime member behind the lawsuit for this "new Board. 171.   On **May 24, 2018** a request for dismissal settlement of the entire action filed with the Court by (**long term 18+ years HOA Board President/Member Charlie West**) HOA Board Member Charlie West, Anh-Truc Dang, Carmen Solis, Rosemary Ashley and Amy DeJesus filed filed a litigation against Meadow Brook Village Association – Fremont Unlimited Civil Alameda County Superior Court Case No. RG18889399.  172.   On **June 20, 2018** a request for dismissal settlement of the entire action filed with the Court by (**long term 14 years+ HA Board President/Member Susan Condio Hernandez**) HOA Board Members Susan Condio Hernandez, Aarti Thakur, Elizabeth Hall, Joe Brody (Morrison), Linda Newman filed a litigation against Meadow Brook Village Association – Fremont Unlimited Civil Alameda County Superior Court Case No. RG18898829. After new Board elected in 2018, evidencing merely puppets for the old HOA Board the emergency assessment did not disappear and in fact the new Board was even more draconian practices.  The property management selected remained the same Common Interest for significant time.
." Metaphor meaning matters appearing unrelated are actually closely related.  Controlled opposition is a mind control technique and works hand in hand with the divide & conquer strategy.  To create division the manipulator will present the victims with the illusion of choice.  If there is only one path available, a person will sense the control behind it and resist.
It seems like old times.... Former HOA Board President Susan Condio Hernandez that denied pool to me in 2017 and long term HOA member that the 2018 "certain group of homeowners" election campaign to remove in 2018 is now, once again, serving capacity on the HOA Board again demonstrating the collusion/false left right paradigm.  In addition, old HOA Board members Belinda Hollingsworth and Sharon Daly are also serving in capacity of the HOA Board. Susan Condio Hernandez is now on the Pool Committee and water conservation which is one of the bases for this Complaint filed initially.  The same old trumpet players. MEADOW BROOK VILLAGE HOMEOWNERS ASSOCIATION BOARD OF DIRECTORS MEETING AGENDA Tuesday, September 20, 2022 – 7:00PM Join Zoom Meeting V. COMMITTEES 1. Water Conservation Committee: Chairperson: Tiffany C., **Committee Member: Susan H.** 2. Landscape Committee: Chairperson: **Sharon D., Co-Chairperson: Belinda H** 3. Construction Committee: Chairman: Sajith S. 4. **Architectural Review Committee: Chairman: Mark S**, Committee Member: Nimesh K. **5. Pool Committee: Chairperson: Susan Hernandez**

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 28 -

will be impacted my comfort cats, service animals. We were provided with keys including the mailbox and pool.

37. On March 28 2017 Executive Minutes Addendum states that a reserve transfer cannot be made by Elizabeth Hall Exhibits W and JJ. CIDology $10,000 to seek a loan for $4 million.[17] Meadow Brook items for discussion reference due to reserves since 2013. Exhibit

38. Plaintiff began hearing from neighbors John Gibson and Mona Oliver when going to retrieve her Mail in April or May 2017 that there was going to be some sort of charge that the City of Fremont had condemned the property. Mona Oliver later signed a declaration she had me prepare a declaration about Richard Fong that she had researched and found a conflict of interest. Mona Oliver I did not know that well other than seeing her feed cats constantly along with John Gibson had previously advised me that she was an attorney, had been to law school and also worked as a paralegal recently. I later learnt on LinkedIn that she has worked as a secretary with no listing of work as a paralegal or an attorney. Exhibit    . I suspect that this is a misrepresentation overstating credentials as it is odd that someone would complete law school and never work as an attorney. There is no California state bar listing for a Mona Oliver. There is no listing of Mona Oliver for Washington state bar either.

39. On May 17, 2017 Board of Directors meeting held elected to shred 49 boxes curiously to save $196.00. Motion immediately heard to shred 49 boxes. The Board of Directors present for this motion making this decision Gerolamo Cosentino, Susan Condio Hernandez, Elizabeth Hall and Aarti Thakur. Tammy Fritz Associa present. Exhibit

40. In June 2017 CIDology began an assessment (prior to this information was provided about a 3 month parameter of time of which 100 persons or so would be on the property daily conducting an assessment.) On September 22, 2017 a check in the amount of $117,400.25 Banco Popular Acct#: 6811239208;Amount :$117,400.25,;Item#

---

[17] Elizabeth Hall Breach of Fiduciary Duty 2017 minutes out of funds served on board several years 2013, 2015-2017, partial 2018 shredding documents 8 But you will receive power when the Holy Spirit comes on you; and you will be my witnesses in Jerusalem, and in all Judea and Samaria, and to the ends of the earth."

:100002;Posting Dt:9/25/2017;Tran Code :481;RT# :063112605;Seq# :7230522930 was paid to CIDology by Meadow Brook Village Association - Fremont. A loan in the amount of $4,048,306.00 was obtained secretly by Meadow Brook Village Association – Fremont from Popular Bank New York Puerto Rico. This loan obtained prior to any City of Fremont notice and involvement.  The retention of CIDology was obtained prior to June 2017.  Richard Fong and CIDology assisted in loan undertaking prior to City of Fremont involvement.  City of Fremont was not Susan Condio Hernandez Commitment Letter accepted July 7 2017 and other then **HOA Board members Joseph Morrison, Elizabeth Hall, Aarti Thakur, Gerolamo Cosentino** without knowledge or disclosure to homeowner Plaintiff Mary Bernstein and some other community members.  Another payment only 14 days later made to CIDology on October 9 2017 by Meadow Brook Village Association – Fremont in  Acct#: 6811239208;Amount :$385,836.45,;Item# :100006;Posting Dt:10/11/2017;Tran Code :481;RT# :063112605;Seq# :7231900000. Exhibit  .  Loan payments from Old North State Trust account.   Old North State Trust Account LLC with offices in North Carolina. Popular bank loan obtained East Coast. Why not California banks?  Popular Bank Carribbean and Latin America.  It is interesting that bank, trust company would be selected so far away from MeadowBrook Village situated in Fremont, California.

41. In the summer of 2017 the pool during the five months that it "was open" was not fully heated and uncomfortable temperature except on exceedingly scorching days.  The pool attendant advised that it was not allowed to go beyond a certain point ostensibly to save monies.  Plaintiff believes it was 70 degrees only 10 degrees warmer than non heated status tenants endured most of the year.  Previous years the pools were heated to a comfortable 80 degrees during the five month parameter of window of time of use the Board determines roughly April, May sometime to October, November always fluctuating.  Sometimes this would be early May and sometimes it would be late April again inconsistent tenants anticipating when this "privilege" would be given to them for

the Summer. In suspense, tenants would have to dip their toes in water and investigate - like the inconsistent pool hours, padlocks on sometimes, padlocks off other times.

42. Despite no delinquency of her account, Plaintiff did not enjoy privileges afforded for paying home association dues year round and still does not to date. The pool was locked this morning again at 8:53 am on March 7, 2018 despite sign to the contrary posted pool hours 8 am to 10 pm. Plaintiff has sciatica and walking to the pool only to find that it is not open, prohibited is devastating. I have a pool key but not a "padlock key" which some others possess. The pool is double locked not only the gate key but then "padlocked" so that we cannot get in. I have requested one of these padlock keys since I am the only one that I know of that actually uses the pool, hot tub every day if I am allowed yet repeatedly have been told we cannot do that. I have asked them to remove the padlock since we all have keys to the pool. Again, I was told that they cannot do that. This has caused me several times on occasion to become so incensed on telephone calls to them causing PTSD breakdowns. February 12, February 14 these dates not opened as well this and continually last summer, forcing me to telephone property management Associa/Massingham, forcing me to become upset begging for the pool to be open. Sometimes it would be opened later, sometimes it would not be as if they enjoy this game with me.

43. The Associa management would say someone there can let you in in about an hour or so but they are not there right now. Some residents apparently receive a padlock key to access the pool whenever they like but others do not. I would be expected in pain to periodically keep going to the pool checking, wondering if it would be open or not. This would in turn cause pain sciatica and aggravate my PTSD, ADHD conditions. Plaintiff and owners whether residential or investment should be entitled to recovery of monetary dues/damages for denial of use of the common interest club, barbeque and pool areas for 7 months out of the year. Despite the large number of tenants heating only one hot tub and keeping one pool open. The pool is 50 degrees to cold to swim in while the hot tub 110 degrees to hot. Susan Hernandez pestering me constantly says would I like some of

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 31 -

her old bathing suits.  Driving and chasing me down when I was walking with my laundry cart asking me if I still care to swim.  Telling me about her Country Club Club Sport she belongs to swim.  Telling me that if people want to swim they need to join a club.  My IBS, ulcers are hurting right now writing this pleading.  Selfie stick Cidology.

44. This is not a matter of not enough funding for Meadow Brook but mismanagement of funding.  Where does it say in the CC&Rs that the pool hours are to be closed on Mondays, or 8 am - 10 pm.  There are quite a few swimmers here that want to swim year round like myself.  The weather here is not so cold that water freezes into ice and therefore pool should be maintained heated year round.  Many people like to swim before work and therefore 6 am - 10 pm is more ideal hours for the early birds and the night owls.  Where does it state in the CC&Rs that the pool is to be padlocked in addition to locked?  All owners, tenants possess a key to gate but only a chosen few have this padlock key.

45. On July 24 2017 CIDology sent a letter to homeowner Athala Cevallos advising of emergency escape stairway structural damage.  The City of Fremont produced this letter in response to subpoena.  Exhibit LL. [18]

46. On August 8, 2017MeadowBrook Village Homeowner Athala Cevallos contacted the City of Fremont to complain about the hazardous condition of the emergency escape stairway and requested an inspection of the property.  Exhibis LL,t MM .

47. The above complaint to the City of Fremont was the only complaint about MeadowBrook Village Association – Fremont the City of Fremont had ever received statement by Tanu Jagtup Code Enforcement.

48. During the deposition of Athala Cevallos on October 25, 2018 Athala Cevallos stated that election bribery if elected President, lawsuit would be dismissed Amy DeJesus blackmail.  Amy DeJesus elected President remained President for two months.  Michael

---

[18]  Athala Cevallos deposition pp. 35-36 states that she has never received this letter and did not provide to the City of Fremont. This was part of subpoenaed production of records.  Whether or not this is in fact true or not is to be determined at trial; however this is what she has stated under oath.

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 32 -

Durbin President thereafter. Campaign of disinformation, deceit. Athala Cevallos
deposition pp 14 lines 1-15 .

1    Were you aware of this particular dismissal and

1679.    2    case?

1680.    3    A.  I went to a meeting one time, and I understand

1681.    4    that there was somebody that apparently was going to be

1682.    5    part of the new Board; that was involved in suing, uh,

1683.    6    somebody there, the association.

1684.    7    But it was my understanding, on what they said

1685.    8    there, is that she will withdraw either if the group wins

1686.    9    the... the... the new homeowner association, would you

1687.    10    call that, the presidency and everything.

1688.    11    Q.  If she got that position.

1689.    12    A.  If the new people, that they were coming in, the

1690.    13    Board --

1691.    14    Q.  That she would dismiss --

1692.    15    A.  If they will win, then she will dismiss it.

49. During the deposition of Athala Cevallos on October 25 2018 Exhibit MM, Athala
Cevallos discussed the scheme of Amy DeJesus plot for the litigation Charlie West, to get
new HOA Board President once elected Amy DeJesus would resign in a few months.
This deceitful plan hatched election based on deceit, bogus election promises and
campaign of disinformation and fraud.

50. During the video deposition of Tammy Fritz October 17, 2018 Exhibit WWW laughing at
the mention of Meadow Brook Village out of funds, unable to make reserves stated never
out of funds as Meadow Brook Village HOA Board members and certain group of
homeowners have stated.  Tammy explained that investments were made constantly with
reserve funds by Meadow Brook. Tammy Fritz explained accounts constantly opened
and closed. Tammy Frtiz also stated that she was unaware how much pool cost to heat

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 33 -

monthly. If Tammy Fritz did not know the property manager for 20 years, Susan Condio Hernandez could not have possibly known as Tammy Frtiz handled this account and payments for Meadow Brook Village. Tammy Fritz laughing continuously about Meadow Brook Village during video deposition as displayed in screenshots Exhibit KKK.

51. During the video deposition of Sharon Massingham November 28, 2018 Exhibit LLL and Exhibit VVV, Sharon Massingham said it was not customary for HOAs to shred documents. Sharon Massingham continuously laughing during deposition about Meadow Brook Village Association. Farmers Insurance refused to produce any third party HOA Board members that were served for deposition and were served by subpoena: Charlie West, Susan Condio Hernandez, Joey Morrison Brody, Aarti Thakur, Elizabeth Hall.

52. Sometime after December 5, 2017, (this is the last date referenced on this particular document ) https://goo.gl/FwdQ9v an anonymous authored undated document "MEADOWBROOK VILLAGE HOA SECOND OPINION was circulated to the HOA Community. Exhibits O & S. The identities of these individuals and the memorandum is vague and ambiguous deliberately. Curiously, the document references an attorney unnamed and that they had to go to an attorney because they could not obtain information, documents, in person meetings. The memorandum speaks about the then current HOA Board and the recall. This memorandum was placed at the doors by a "certain group of homeowners" as they identify themselves in such a cowardly way as opposed to listing identities. Frenemies strange bedfellows. **Even though these candidates petitioning for old board to be removed, once "New Board" elected – members from the 2017 were still very much involved from the sidelines that created this mess for instance Aarti Thakur former Treasurer Board 2017 secretive loan obtained debacle leading to alleged out of funds Emergency Assessment. This Treasurer participating Construction Committee, Landscape Committees. Treasurer participating in Board capacity on several committees immediately**

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 34 -

1      **thereafter.  June 27 2019 BJ Management Solutions email lists offices HOA Board**

2      **Members Directors & Sub-committees.** [19]

3  53. On March 19, 2018 Plaintiff filed initial complaint and tro against MeadowBrook Village

4      Association.  Hindsight is always 20/20 and discovery unearthed information that I did

5      not previously possess when filing initial complaint.  I hope that no other disabled

6      homeowner in an HOA ever has to endure the trauma that my family, my guests and

7

[19]

8  Board of Directors
   Mike Durbin, President
   Vipul Ramani, Vice-President

9  Virendra Dhavale, Secretary
   Romulo Zafra, Treasurer

10 Ashok Agarwal, Director

11 MBV Committees:
   Architecture:

12 Chair: Mark Simonson
   Member: Oscar Saldanha

13 Board Liaison: Mike Durbin
   Landscape:

   Chair: Linda Newman

14 Members: Sharon Daly, **Aarti Thakur,**
   Lorraine Aquino, Harman Judge,

15 Renata Causic, Daisy Zafra,
   Adviser: Judith Schneider

16 Board Liaison: Ashok Agarwal
   Outreach & Communications:

17 Co-chairs: Dawn Aquilina &
   Venkatesh Chari

18 Members: Rowena Frick, Pablo Diaz,
   Neeraj Dubey, Liping Lu, Vidya

19 Board Liaison: Mike Durbin
   Planning:

   Chair & Board Liaison: Romulo Zafra

20 Members: Judith Schneider,
   Venkatesh Chari, Neeraj Dubey,

21 Jenny Suh, Chandra Raju, Assim
   Gupta

22 Governance:
   Members: Belinda & Warren

   Hollingsworth, Linda Newman, Tanya

23 Harris, Naseem Meer, Daisy Zafra
   Board Liaison: Viru Dhavale

24 Construction:
   Co-chairs: **Aarti Thakur** & Bill

25 Schneider
   Members: Anand Prasad R,

26 Harman Judge
   Board Liaison: Vipul Ramani

27 Newsletter Contributors:
   Linda Newman, **Aarti Thakur,**

   Rohit Varicatt, Colin Lynch,

28 Daisy Zafra 38 Peter replied, "Repent and be baptized, every one of you, in the name of Jesus Christ for the forgiveness of your
   sins. And you will receive the gift of the Holy Spirit.

Disabled Plaintiff Mary Bernstein's First Amended Complaint  12 15 2022- 35 -

myself have had to endure for merely questioning why we owed funds when we had been paying assessments since 1988 ostensibly for the maintenance of this very property.

54. On May 12, 2018 Plaintiff served on Defendants Associa, Massingham and MeadowBrook PLAINTIFFS' NOTICE OF SERVICE OF FIRST SET OF SPECIALLY PREPARED INTERROGATORIES, REQUEST FOR ADMISSIONS AND REQUEST FOR PRODUCTION TO DEFENDANT. Farmers Insurance responded with the names of the officers, directors. **(Exhibits U,V).** The following interrogatories propounded included the following interrogatories: 3. What are the names and addresses of the Board Members from 1982 through the present? List names and years in office.

1693.4. List the financial institutions for the various accounts and their account numbers from 1982 through the present. According to the CC&Rs there were to be 3 accounts at least to have been maintained. Capital Improvement (Section 5 CCR pg. 11-12, Reconstruction (Section 6 CCR pg 12) and Regular Account. Provide me with the name of the financial institution and the account numbers for the various accounts.

1694.5. According to the Davis Sterling Act a reserve study was to be conducted every three years concerning the property. Please list every year that a reserve study was conducted. Study Required. All associations, regardless of size, are required to prepare a reserve study (Civ. Code §5550), unless the total replacement costs are less than 50% of the gross budget of the association, excluding the association's reserve account for that period. (Civ. Code §5550(a).) Provide the names and addresses of the reserve company that conducted each reserve study.

55. On June 12 2018 Farmers Insurance, MeadowBrook, Massingham Associa responded to FIRST SET OF SPECIALLY PREPARED INTERROGATORIES, REQUEST FOR ADMISSIONS AND REQUEST FOR PRODUCTION TO DEFENDANT **(Exhibits U,V).** Interrogatory response number 3 response provided by Farmers Insurance and defendants provided the following response:

1695. The 2018-2020 Board of Directors members: Amy DeJesus William Schneider, Rohit Varicatt, Michael Durbin, Vipul Ramani. Virenda Dhavale

used in a burden of proof analysis. Under the preponderance standard, the burden of proof is met when the party with the burden convinces the fact finder that there is a greater than 50% chance that the claim is true. This is the burden of proof in a civil trial.

And (c) I, the undersigned plaintiff, declare under the penalty of perjury that the foregoing is true and correct and was executed in Alameda County, Fremont, California by Plaintiff Mary Bernstein this 12th day of December, 2022..

_____ **MARY  BERNSTEIN**

### JURY DEMAND

**Plaintiff demands a jury trial as I did in initial filing of this lawsuit.** Preponderance of the evidence is one type of evidentiary standard used in a burden of proof analysis. Under the preponderance standard, the burden of proof is met when the party with the burden convinces the fact finder that there is a greater than 50% chance that the claim is true. This is the burden of proof in a civil trial.

**DATED** this 12th day of December, 2022.

_____ **MARY  BERNSTEIN**

Disabled Plaintiff Mary Bernstein's First Amended Complaint 12 15 2022- 1828 -

EXHIBIT H

## The Exodus

[31] During the night Pharaoh summoned Moses and Aaron and said, "Up! Leave my people, you and the Israelites! Go, worship the Lord as you have requested. [32] Take your flocks and herds, as you have said, and go. And also bless me."

[33] The Egyptians urged the people to hurry and leave the country. "For otherwise," they said, "we will all die!" [34] So the people took their dough before the yeast was added, and carried it on their shoulders in kneading troughs wrapped in clothing. [35] The Israelites did as Moses instructed and asked the Egyptians for articles of silver and gold and for clothing. [36] The Lord had made the Egyptians favorably disposed toward the people, and they gave them what they asked for; so they plundered the Egyptians.



20685287

**MARY BERNSTEIN**
3416 Deerwood Terrace, #113
Fremont, CA  94536
Email: mhelenbernstein@yahoo.com
(510) 938-6280
Plaintiff Pro Se

FILED
ALAMEDA COUNTY

MAR 1 0 2018

CLERK OF THE SUPERIOR COURT
By _____ Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ALAMEDA

MARY BERNSTEIN,

    Plaintiff,

    vs.

ASSOCIA NORTHERN CALIFORNIA, a
California Corporation MEADOW BROOK
VILLAGE ASSOCIATION - FREMONT, a
California Corporation, MASSINGHAM &
ASSOCIATES, a California Corporation
JOHN DOE 1-50; MARY ROE 1-50; XYZ
CORP 1-50; ABC LLC 1-50; The names of
the "John Doe 1-50" "Mary Roe 1-50", "XYZ
Corp, 1-50", and "ABC LLC, 1-50",
defendants being fictitious, and unknown to
the Plaintiff,

    Defendants.

Case No.  HG18897381

COMPLAINT FOR

1. **FRAUD**
2. **BREACH OF FIDUCIARY DUTY;**
3. **BREACH OF CONTRACT**
4. **BREACH OF THE IMPLIED
   COVENANT OF GOOD FAITH
   AND FAIR DEALING**
5. **INTENTIONAL INFLICTION OF
   EMOTIONAL DISTRESS**
6. **NEGLIGENT INFLICTION OF
   EMOTIONAL DISTRESS**
7. **INTENTIONAL
   MISREPRESENTATION**
8. **NEGLIGENT
   MISREPRESENTATION**
9. **BREACH OF CC&Rs AND
   BYLAWS**
10. Violation of **UNRUH CIVIL
    RIGHTS ACT**
11. Violation of
    **CALIFORNIA DISABLED
    PERSONS ACT**
12. **INJUNCTIVE RELIEF
    EMERGENCY ASSESSMENT
    IMMINENT THREAT APRIL 2
    2018 AND DECLARATORY
    RELIEF**

**JURY TRIAL DEMANDED**

Complaint

- 1 -

Plaintiff Mary Bernstein brings this Complaint for Fraud, Breach of Fiduciary Duty, etc. against, ASSOCIA NORTHERN CALIFORNIA, a California corporation; MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, a California corporation; MASSINGHAM & ASSOCIATES, INC., a California corporation; JOHN DOES 1-50; MARY ROES 1-50; XYZ CORPORATIONS 1-100; The names of the "John Doe 1-50" "Mary Roe 1-50", "XYZ Corp, 1-50", and "ABC LLC, 1-50", defendants being fictitious, and unknown to the Plaintiff ("Defendants") and states the following:

1. Plaintiff Mary Bernstein, her husband John L. Bernstein, III and son John L. Bernstein, IV are owners of unit 113, 3416 Deerwood Terrace, Fremont California.  Plaintiff is and was at all times herein an individual residing in the County of Alameda.

2. Plaintiff Mary Bernstein is disabled and suffers from physical and psychological conditions. Post traumatic stress disorder, ADHD and other conditions.  Plaintiff seeks reasonable accommodations during these proceedings as a disabled person and in compliance with the Americans of Disabilities Act, California, Disabled Persons Act,

3. Defendant Meadow Brook Village Association - Fremont is a California Corporation registered with the California Secretary of State Entity No. C1160572 on October 21, 1982 organized and existing under the laws of the State of California with its principal place of business in the County of Alameda.  The statutory agent listed is Associa Northern California.  Associa statutory agent is CT Corporation.

4. Defendant Massingham & Associates Management, Inc. is a California Corporation registered with the California Secretary of State Entity No. C1706476 on May 8, 1992 organized and existing under the laws of the State of California with its principal place of business in California. The statutory agent is CT Corporation.

5. Defendant Associa Northern California, Inc. is a California Corporation registered with the California Secretary of State Entity No. C3685234 on June 12, 2014 organized and existing under the laws of the State of California with its principal place of business in California.  The statutory agent is CT Corporation.

Complaint

- 2 -

6.  I am writing this March 7, 2018 this will take me some time to write because I am disabled. It is 8:53 am and I wanted to engage in stress relief for my condition PTSD, ADHD and the pool is padlocked again. There are workmen waiting to get in the area as well. I have attached photo on their paperwork on the bush waiting to get in. The denial of privileges despite always paying dues is ridiculous. I am and may be the only one that utilizes the hot tub, the Defendants know that I am disabled through many calls to open pool that this is part of management for my conditions. Yet constantly these privileges are denied or I am forced to become upset calling them, begging them to open the pool for my use which I am paying for consistently. This is aggravating and is counterproductive. Retaliating against me for enforcing your rights. 28 C.F.R. § 36.206. 28 C.F.R. § 36.201(a); 28 C.F.R. § 36.202(b); 28 C.F.R. § 36.203 It is not stress management but stress making. Intstead of calming the pool treatment it incenses the conditions more to have to call and interact with personalities because I am deprived and denied of something I am forced to pay for with no recourse. [Timedate stamp photo Metro PCS]. Plaintiff and other homeowners, renters of investment properties have been denied privileges for some time despite payment of homeowners dues. The pools are heated only 7 months out of the year but this is not disclosed to people buying property – an omission which is a misrepresentation. The reason Plaintiff has always been advised is the same "poor mouthing excuse" that it is so expensive. Despite $522.18 per month x 466 units after all these years – it is the same mantra over and over again.

7.  Plaintiff is informed and believes that each defendant, including the fictitious defendants, was the agent or employee of the named defendants, and acted within the scope and authority capacity of that entity agency.

## FACTS

8.  I receive social security disability benefits for a reason and can no longer work for a reason because I decompensate in stressful situations and cannot engage in substantial gainful activity. Instead of a tranquil residential area, the homeowners have been thrust into a hostile environment constantly having ownership rights to common areas

Complaint

- 3 -

1  withheld, harassment concerning interior decorations from the HOA while they have

2  admittedly in their documents abdicated their fiduciary duty by neglecting the more

3  important issues – the maintenance of the property.  Engaging in micro managing,

4  harassment of non board members by HOA board members as their personal fiefdom

5  and a degree of deference lingers.

6  9.  This has become an association ran on autocratic grounds as opposed to community

7  of equal owners; the ringleader President Susan Hernandez has harassed myself and

8  others treating us as peasants subjected to her whims.  I am not supposed to be

9  involved in stressful matters at this time and my home is no longer a sanctuary as the

10  turmoil that is occurring in this civil war of neighbors.  I am a pro se litigant, disabled

11  and cobbling these facts together as best as my conditions allow.  Leniency is to be

12  provided as well as reasonable accommodations for the disabled by the Courts.  I

13  have an attorney that will be assisting throughout this case bundled rights/limited

14  scope representation.  This is not meant to be meandering but it is the best that I can

15  articulate with ADHD, PTSD and bipolar 1, anxiety, depression and anti social

16  conditions.  I have filed MC 410 form for reasonable accommodations with this

17  Court.  I am prescribed medications as well as swimming, exercise for management

18  of my conditions.

19  10.  Meadow Brook Village Association – Fremont C1160572 a Domestic Nonprofit

20  Corporation was established on October 21, 1982.  A Nonprofit corporation is a

21  special type of corporation that has been organized to meet specific tax-exempt

22  purposes. To qualify for Nonprofit status, your corporation must be formed to benefit:

23  (1) the public, (2) a specific group of individuals, or (3) the membership of the

24  Nonprofit.  The association was formed to manage common interest development

25  under the Davis-Sterling Act as attested to on annual Statement of Information filed

26  with the California Secretary of State.  The corporate office and managing agent are

27  listed as Associa, 1341 W. RobinHood Drive, Suite B7, Stockton, California 95207.

28

Complaint

11. In February 2006 Plaintiff Mary Bernstein, her husband John L. Bernstein III, and son John L. Bernstein, IV assumed mortgage and deed transfer of property from Father in law John L. Bernstein II.  Plaintiff was provided with CCRs and was not advised by the Meadow Brook Homeowners Association or Massingham/Associa that the advertised pools would only be heated 5 months out of the year or that one of the pools BBQ club areas would be closed for seven months out of the year.  Plaintiff Mary Bernstein suffers from multiple health and psychological conditions: arthritis, plantar facitis, sciatica, IBS, ulcers, post traumatic stress disorder, ADHD, Bipolar 1, depression.  We have pets that will be impacted my comfort cats, service animals.  We were provided with keys including the mailbox and pool.

12. In the summer of 2017 the pool during the five months that it "was open" was not fully heated and uncomfortable temperature except on exceedingly scorching days.  The pool attendant advised that it was not allowed to go beyond a certain point ostensibly to save monies. Plaintiff believes it was 70 degrees only 10 degrees warmer than non heated status tenants endured most of the year.  Previous years the pools were heated to a comfortable 80 degrees during the five month parameter of window of time of use the Board determines roughly April, May sometime to October, November always fluctuating.  Sometimes this would be early May and sometimes it would be late April again inconsistent tenants anticipating when this "privilege" would be given to them for the Summer.  In suspense, tenants would have to dip their toes in water and investigate – like the inconsistent pool hours, padlocks on sometimes, padlocks off other times.

13. Despite no delinquency of her account, Plaintiff did not enjoy privileges afforded for paying home association dues year round and still does not to date.  The pool was locked this morning again at 8:53 am on March 7, 2018 despite sign to the contrary posted pool hours 8 am to 10 pm.  Plaintiff has sciatica and walking to the pool only to find that it is not open, prohibited is devastating.  I have a pool key but not a "padlock key" which some others possess. The pool is double locked not only the gate key but then "padlocked" so that we cannot get in.  I have requested one of these padlock keys since I am the only one that I know of that actually uses the pool, hot tub every day if I am allowed yet repeatedly have been told we cannot do that.

Complaint

1  I have asked them to remove the padlock since we all have keys to the pool.  Again, I was told
2  that they cannot do that.  This has caused me several times on occasion to become so incensed
3  on telephone calls to them causing PTSD breakdowns.  February 12, February 14 these dates
4  not opened as well this and continually last summer, forcing me to telephone property
5  management Associa/Massingham, forcing me to become upset begging for the pool to be open.
6  Sometimes it would be opened later, sometimes it would not be as if they enjoy this game with
7  me.

8      14. The Associa management would say someone there can let you in in about an hour or
9  so but they are not there right now. Some residents apparently receive a padlock key to access
10  the pool whenever they like but others do not.  I would be expected in pain to periodically keep
11  going to the pool checking, wondering if it would be open or not.  This would in turn cause pain
12  sciatica and aggravate my PTSD, ADHD conditions.   Plaintiff and owners whether residential
13  or investment should be entitled to recovery of monetary dues/damages for denial of use of the
14  common interest club, barbeque and pool areas for 7 months out of the year.  Despite the large
15  number of tenants heating only one hot tub and keeping one pool open.  The pool is 50 degrees
16  to cold to swim in while the hot tub 110 degrees to hot. Susan Hernandez pestering me
17  constantly says would I like some of her old bathing suits.  Driving and chasing me down when
18  I was walking with my laundry cart asking me if I still care to swim.  Telling me about her
19  Country Club Club Sport she belongs to swim.  Telling me that if people want to swim they
20  need to join a club.  My IBS, ulcers are hurting right now writing this pleading.  Selfie stick
21  Cidology.

22      15. This is not a matter of not enough funding for Meadow Brook but mismanagement of
23  funding.  Where does it say in the CC&Rs that the pool hours are to be closed on Mondays, or 8
24  am – 10 pm.  There are quite a few swimmers here that want to swim year round like myself.
25  The weather here is not so cold that water freezes into ice and therefore pool should be
26  maintained heated year round.  Many people like to swim before work and therefore 6 am – 10
27  pm is more ideal hours for the early birds and the night owls.  Where does it state in the CC&Rs
28

Complaint

- 6 -

that the pool is to be padlocked in addition to locked? All owners, tenants possess a key to gate but only a chosen few have this padlock key.

16. The people, the homeowners not on the Meadow Brook board have been shut out from meetings, voting in what appears to be a dictatorship, cabal postings of meetings at the pool for call in to be canceled, removed held offsite at the Associa offices for intimidation, posturing. Susan Hernandez the President, the ringleader has bullied countless tenants, workers and myself as a Queen in an ivory tower despite the fact that she lives amongst the village people as well and not in a castle high above us.

17. The pipes and constant plumbing issues in the complex. Above All Plumbing I think is the name of the plumber that has constantly been called or is on site due to pipes not replaced for years causing issues to owners. Insurance does not cover neglect which is what the HOA engaged as described in the Emergency Assessment stating that they did not tend to and cut corners. This is not the fault of the homeowners that relied on fiduciary duty of the five members in charge as well as the competence of the property management firms involved. Discovery will reveal all property managers and HOA board members throughout the years. Susan Hernandez has been the President consistently for many years as far back as I can remember. The years 2006 – 2011 she was on the board in various roles and then resurfaced in 2014 on the board and in subsequent years to present as President. The accountability and responsibility lies with the President according to the CCR, Bylaws and California law, Business & Professions Code, Davis-Sterling Act. This woman has repeatedly advised me to join health clubs despite the fact that there are two pools here that I pay for to utilize and am deprived from so doing.

18. These are some of the examples of deprivation of ownership rights, negligence occurring:

- Roofing repair plastic cover as opposed to fixing leakage.
- Infestation of insects, rodents.
- Deprivation of rights to utilize as we desire our personal area decorate, cultural shoes asian, uniform interior decorating imposed white, beige drapes.

Complaint

- 7 -

- Flickering lights in carports for years, walkway lamps left blown out for years only now are they fixing.
- Withholding of ballots, materials annual disclosures. We did not receive any ballot in the mail for the special assessment. I do not remember seeing any CCR, bylaws and had to request from Associa. We have not received annual disclosures for years had to request from Associa.
- Dead birds left for months.

There seems to be a hostility, spite occurring to the homeowners not part of the board that is increasing. This is overt as opposed to covert hostility.

19. On January 24 2018 we went to vote and 2/3rds voted against Special Assessment. At first the attorney said that they would not know the results that night but everyone insisted and ballots were counted. The attorney Richard Fong master of ceremony was very nasty to all of us and stated that we had been breaking the street light fixtures. There is now a new attorney for Meadow Brook. **Exhibit 5.**The lights that had been out for several years they are claiming. Richard Fong said that security cameras are installed to watch us. This is very destabilizing to my condition and I am fearful walking outside some of the time believing that I am being watched now at the pool at everywhere. This has caused me to go out of my house for walks less now. We were told to look for the emergency assessment due April 1 but had no idea what this amount was going to be. It was a very nasty, contentious situation. The board, their attorney against the Village people, us. https://cidology.com/w/meadowbrook/

20. None of the homeowners in Meadow Brook have done anything wrong but faithfully pay our dues and mortgages trusting maintenance issues have been complied with every two years by law. We are treated as criminals, institutionalized patients in an asylum that have no say, no recourse but be at the mercy of these rulers. This is extremely hard to write this complaint and supporting papers with my conditions. I have been suffering harassment, retaliation as a disabled person and this will in all

Complaint

- 8 -

likelihood increase by these Defendants now that I am filing this lawsuit.  Mental impairment PTSD, ADHD, Bipolar 1.

21. Defamation and harassment of five litigants that filed lawsuit and I can probably expect the same.  Orange signs all over the complex calling out the five Plaintiffs in order to deflect from Defendants negligence, mismanagement signs stating "CAN'T SELL? CAN'T REFI? – IT'S THE FAULT OF AMY DEJESUS, CARMEN SOLIS, ANH-TRUC DANG, CHARLIE WEST, ROSEMARY ASHLEY AND THEIR FRIVOLOUS LAWSUIT and DO NOT ELECT AMY DEJESUS TO MBV BOARD OF DIRECTORS inciting potential violence, hostility towards certain owners.  This is a further attempt from this HOA to terrorize, mind control tenants, owners.  I am not political and have no interest in serving on board.  What I expected is those that do serve to be competent and not oppressive.  This situation is outrageous and fault of the MEADOW BROOK and property management firms.  The Board of MEADOW BROOK has authority to obtain, retain and fire property management firms so ultimately they are responsible.

22. This is not a five star hotel this complex.  $163,000 - $238,000 a month in the past two years alone is enough to maintain the properties adequately – the amount of dues owners have been paying.  Millions of dollars and the decry underfunded?  The pool costs is not astronomical as they have said according to their accounting.  I would not stay at hotels that advertise pools but do not allow guests to utilize that would be misrepresentation. https://www.youtube.com/watch?v=4uaViiP1Big

23. Such discriminatory, unlawful contradictory language contained within the CC&Rs, Bylaws that non homeowners, renters or guests cannot use the pool.  On the other hand, stating that no more than four guests at pool allowed.  Guests not allowed to utilize pool without owner present.  Parking restricted for guests.  **Exhibit 1, Exhibit 2.**

24. The CCR, Bylaws disclosures advising that we may not have plants in vases other than the colors they choose white or beige pots, drapes certain colors – dictatorial interior and exterior areas while they ignore our investments.  **Exhibit 3-4 Budget Disclosures 2015/2016.**

Complaint

- 9 -

Cidology taking pictures and reporting us if we had decorations on our front area. Children's bikes, shoes (some cultures take shoes off outside that live here), chairs or toy areas. I decorated with toys for children outside my door so that they would have somewhere to play and the toys calmed my PTSD condition.

25. Page 12 of the CCRs, Capital Improvement Assessments may be levied in addition to regular assessment not to exceed 5% in a year. **Exhibit 1.**

26. Page 13 of the CCRs Reconstruction directing funds Destruction of Improvements shall be collected and deposited in a separate bank account to be held in trust for such purposes. **Exhibit 1.**

27. Page 21 "Covenant of Assessments" implies two way street regular an capital. **Exhibit 1.**

28. Page 59 Nonliability of Officials Section in CCRs Meadow Brook Village. **Exhibit 1.** Laws have changed since 1982 in California. HOA Officials can be sued for emotional distress. In California, *Boswell v. The Retreat Community Association* is an example. The legal outcome is that a California appellate court reversed a trial court. The part that's most interesting to boards everywhere is that **the appellate court's ruling means residents are permitted to sue a board for intentional infliction of emotional distress after a board president appears to have waged a vendetta against residents.**

**<u>A GROWING TREND, EPIDEMIC HOAS DEFRAUDING, EMBEZZLING</u>**
**<u>FUNDING OCCURRING THROUGHOUT NATION</u>**

29. In recent years there appear to have been similar situations wherein homeowners have had to commence litigation proceedings against HOA's in various states levying assessments due. Florida, Arizona and California the following paragraphs discuss these cases wherein relief was granted to the homeowner.

30. In **Florida**, Appellate Court Allows Owner to Seek Injunctive Relief and Reverses Award of Attorney's Fees and Costs. In Mitchell v. Beach Club of Hallandale Condominium Association, Inc., 17 So.3d 1265 (Fla. 4th DCA 2009), the Fourth District Court of Appeal ruled that a condominium owner has the right to proceed with a lawsuit aimed at preventing the

Complaint

- 10 -

association from collecting a special assessment. The association levied an assessment for close to $1.3 million and sought to collect $4,194 from each unit owner. One of the unit owners objected to the process and filed a lawsuit to prevent the association from collecting the assessment. The association's attorney filed a motion to dismiss the case and ultimately convinced the trial court to rule in its favor. The trial court later awarded the association attorney's fees and costs as the 'prevailing party' in the lawsuit. The appellate court totally disagreed and reversed the trial court ruling. It found:

> 1.     Mandatory non-binding arbitration pursuant to Section 718.1255, Florida Statutes was not necessary, as the statute itself excludes any disputes relating to the imposition or collection of an assessment;
> 2.     The Court had jurisdiction to address the claim even though the amount of the assessment against this particular owner was less than $5,000, since the owner sought injunctive relief, not any monetary relief; and
> 3.     Injunctive relief was appropriate to prevent or to challenge a violation of the Condominium Act pursuant to Section 718.303, Florida Statutes.

We did not receive any ballot in the mail for the special assessment.

31. In **Arizona** Phoenix Landmark condo owners fight $15,000-plus HOA assessments — and win. Danielle Sutton banded together with a handful of other Landmark condo owners angry and confused about the unexpected $5 million charge. https://www.azcentral.com/story/news/local/arizona-investigations/2017/11/13/phoenix-landmark-condo-owners-win-fight-15000-hoa-assessments/830512001/

32. They all thought fixes to the high rise's air-conditioning system already had been paid for and were almost done, using about $6 million received in a construction-defect lawsuit settlement in 2013. http://www.wbir.com/article/news/nation-now/phoenix-condo-owners-fight-15000-plus-hoa-assessments-and-win/465-5ff553a4-5b72-4db6-99d3-346eeacd9271. The HOA assessment for a new HVAC system would have cost each of them at least $15,000 per

Complaint

- 11 -

condo. Many other owners in the 236-condo high-rise said the same thing as Hardaway: They could not afford the assessment, and it could cost them their home.[1]

33. A **California** man successfully halted a foreclosure sale on his property using the newly minted California Homeowner Bill of Rights to obtain a court injunction against foreclosing party: Bank of America.  California Homeowner Bill of Rights (HBOR) Blocks Bank of America's Foreclosure.

34. For simply obtaining the HBOR injunction, the homeowner's attorney is seeking $20,255 in legal fees and costs – a compensation request that is permissible under HBOR since the legislation allots borrowers reasonable attorneys fees and expenses for successfully obtaining an injunction.

35. This is one of the first legal disputes to show the real strength of HBOR and it's effectiveness in stalling proceedings and increasing expenses for servicers that are accused of violating one of the provisions of HBOR. https://www.jdsupra.com/legalnews/memorandum-and-order-granting-plaintiff-90618/.  "Senate Bill 818 will restore the rights, the safeguards, which have helped thousands of people keep their homes," said Beall, who serves as the chairman of the Transportation and Housing Committee. "We do not want people to lose these rights, which had existed for the past five years.  "The need for the Homeowner's Bill of Rights is especially critical because so many families hit by wildfires in Northern and Southern California will be coping with financial setbacks as they seek to rebuild their homes." http://sd15.senate.ca.gov/news/2018-01-03-beall-acts-restore-homeowners-bill-rights.

---

[1] 1.    Phoenix condo owners fight $15,000-plus HOA assessments — and win
Phoenix condo owners fight hefty HOA assessments — and win
http://radiolawtalk.com/blog/landmark-towers-hoa-assessment/
ISSUES (Summarize both sides argument, both perspectives. You can use bullet points):
For Plaintiffs, Causes of Action include (also see attached complaint):
Breach of Contract.
Violation of Arizona statute on HOA assessments. R.S. sect. 33-1255.
Permanent Injunction.
Breach of Fiduciary Duty.
Defendants: Claim work still needs to be done to fix air conditioner, either way.
https://www.azcentral.com/videos/news/local/arizona-investigations/2017/11/10/phoenix-condo-owners-fight-against-hoa/107544766/
http://radiolawtalk.com/blog/landmark-towers-hoa-assessment/
https://law.justia.com/codes/arizona/2014/title-33/section-33-1255/

Complaint

- 12 -

36. Susan Condio-Hernandez the President of the Board constantly harassing wrote about me in newsletter a year ago or so she said me saving a possum in pool. I do not like attention drawn to me and this was mortifying. Taunting me in January 2018 while walking with my laundry cart I use as a walker at times for my back she drives up to me and inquires do you still go to the pool? I said I try to when it is open. She smirked and stated again that she belongs to health club Club Sport. In February 2018 offered to give me some of her bathing suits. Calling out to me at the pool from her deck. Susan is one of those in charge of opening the pool but leaves it locked at times. When I have begged to have the pool heated or open year round, I have been told that if people want a pool year round they need to join a private country club like she belongs. Constantly she has cried poor mouth that they cannot afford to maintain to pools yet they are maintained year round and treated but not kept open denying tenants access to the club area, barbecue, hot tubs and sauna. Children have been told that they cannot skateboard or play in areas. My children are grown but this would have been devastating if my sons were young still. Acrimony and division have become weapons in the hands of the HOA towards the non board member owners.

37. Associa employee John Caffall Community Director in January 2018 I think hung up on me when I was having PTSD meltdown about pool as it was not open at 11:30 am. Even when I have given ample time and I am sure that the pool must be open only to find out that it is still padlocked. I was in pain and furious. I called back maybe 9 times. I demanded to know who his Boss was and that persons Boss was informed it was Geoffrey Browne Vice President and Kelly Zybell, Senior Vice President. I left messages and received no callbacks whatsoever.

38. In August 2017 on one of the peak high temperature days I telephoned upset speaking to someone a Chris perhaps that I am in menopause and my conditions I desperately need to calm down and cool off in the pool begging them to open. This went on continually during large part of summer heat not opened including holidays pool not opened. For the initial week the pool was opened Spring 2017 the pool was heated to 80 degrees but the pool attendant advised when it was cold the next week that he was not allowed to turn up. This went down to 70 degrees or so.

Complaint

- 13 -

39. Cidology on premises cameras looking into people's windows with extensions for June – September 2017 massive amounts of people intrusions. Multiple lawsuits, legal disputes against Cidology.[2] **Exhibit 7.** A play area I set up in my front door area porch for little children to play and to comfort my PTSD with a dollhouse and other toys was demanded to be removed. Little children were told that they could not play on the grass area near the field. My children are grown now but what are the families with little children supposed to do no pool open, not allowed play outside, skateboarding? Accounting and auditing for all the years must be provided to review.

## NATURE OF THE ACTION

40. Collusion by the Meadow Brook Village HOA and property management firm strategy, plot to take properties from owners due to unreasonably high assessments imposed. Harassment of owners that have filed lawsuits to attempt to save their homes. Emails circulating blaming litigants for inability to sell, refinance. Signposts blaming five litigants deflection from HOA Board advising not to vote for Amy DeJesus and blaming the five litigants for inability to sell, refinance. The HOA Board with upcoming Board Member voting are the only ones with motive to do such actions. Disabled Plaintiff Mary Bernstein believes the HOA will also lynch her and she will see her name all over these boards soon as well and emails targeting her, her disabilities.

41. Defendant's refusal to provide any access to pool area, heated pool for medical purposes, ownership rights refusal to accommodate despite multiple requests by disabled Plaintiff violates California's Unruh Civil Rights Act, Civil Code §51 et seq.

---

[2]  1 Shorebird Homeowners Association
2 Diversified Personnel
3 Emery Bay Village Homeowners
4 Western Oaks Village
5 Del Mar Pacific
6 MeadowBrook
7 Admirality
8 Pinnacle

Complaint

- 14 -

1   (the "Unruh Act") and the California Disabled Persons Act, California Civil Code §54

2   et seq. (the "CDPA").

3

4   ## JURISDICTION

5   **42.** This is an action for declaratory and injunctive relief and statutory damages under

the Unruh Civil Rights Act, Cal. Civ. Code §§51 et seq, and for declaratory relief and statutory

6   damages under the CDPA, Cal. Civ. Code §§54 et seq. This Court has jurisdiction over the

7   claims alleged herein pursuant to Cal. Civ. Code, §§51, 52, Cal. Civ. Code §54.3.

8

9   ## VENUE

10  **43.** Venue is proper in Alameda County under California Code of Civil Procedure

11  §395.5 because liability arises in Alameda County. Defendant has been and is committing the

12  acts alleged herein in Alameda County, has been and is violating the rights of persons with

13  disabilities in Alameda County, and has been and is causing injury to persons with disabilities

14  in Alameda County.

15  ## FIRST CAUSE OF ACTION

16  ### (Fraud & Embezzlement)

17  44. Plaintiff incorporates by reference and realleges all allegations set forth in the

18      preceding paragraphs.

19  45. Collusion by the Meadow Brook Village HOA and property management firms

20      Associa/Massingham strategy, plot to take properties from owners due to

21      unreasonably high assessments imposed.

22  46. The Bylaws state that tenants are to enjoy full use of their residence. No forefeiture

23      of rights with the exception of this criteria: judgment, arbitration decision, failure to

        pay assessments; foreclosure or sale under a power of sale page 6 of the Bylaws. Of

24      course with a $33,262 "emergency assessment" due within a matter of weeks when

25      learning of it if an injunction is not imposed halting the enforcement and collection of

26      these monies – the oppression will increase. A thorough analysis must be conducted

27      regarding the accounting, auditing of monies collected in the past. The impression is

28      that fraud, embezzlement extortion occurring. There is no area in CC&Rs regarding

Complaint

- 15 -

emergency assessment provisions.  A special assessment provision which was voted against.  The pool, barbeque area, club area and other privileges associated with the common interest.  I have only discovered this in reading the bylaws.  However, tenants have been denied use of the bbq area, club area and pool areas for the majority of each year seven plus months.  There are two pool areas because this is a large development.  There are two areas to accommodate the needs of the 466 families and guests.  We were not advised in a package or when we moved in that we would not enjoy the full benefit and privileges when we moved in for a majority of the year.  This was not conveyed to us when purchasing our condominium.

47. Bylaws, Section 2 page 6.  Was this always the case from the inception that owners could only utilize amenities at the discretion of the board or a percentage of the time?  Or were these rights eroded over time along with the maintenance, care and upkeep of the property?  Where does it say anywhere that the pool will only be maintained during certain seasons for use in the CC&Rs or Bylaws?  The monthly fees continue to skyrocket yet owners receive less and less value for their fees.

48. Defendants have suppressed and concealed certain material facts.  A combination of factors makes them a tempting and lucrative target for embezzlers: relatively large sums of money; lax standards and enforcement; and part-time volunteer boards in charge of accounting and control.  https://www.allpropertymanagement.com/blog/2017/03/06/embezzlement-detection-and-prevention/.  Criminals like Bernard Madoff and other so-called "white collar" lawbreakers have made headlines recently with their financial double-dealings, but unfortunately, fiscal mismanagement and fraud also happen in co-op and condo communities. The scale is much different obviously, but an apartment is a major investment, and residents of a building trust their board members and managing agents to uphold their fiduciary responsibilities and be good custodians of that investment.  https://cooperator.com/article/fraud-detection-for-co-ops-and-condos/full.  One such shady area involves quid pro quo situations. In return for sending business their way, a person involved with a building's operations might get something like cash or services from a contractor as a kickback. Such a scheme might involve a property manager overpaying a contractor with building funds, then being

Complaint

- 16 -

given cash by the contractor in exchange for the inflated payment, or having a new deck put on their house in repayment. "The biggest schemes you encounter are when someone is in cahoots with contractors and getting kickbacks," says Gerald Marsden, a partner with Manhattan-based accounting firm Eisner and Lubin LLP. "The other [scheme] is when someone is writing 'play' checks to themselves."[3]

http://www.hoacorruption.com/will-the-investigations-continue--into-hoa-fraud.
https://www.hoaleader.com/public/552.cfm.

49. Because by law the HOA cannot raise assessments more than 20% percent they have come up with an outrageous balloon sum one of many to follow to extort monies from the homeowners.[4]

50. The State of California Department of Justice Attorney General office has discretionary authority to intervene on behalf of nonprofit corporations[5] and the local

---

[3] http://www.wsbtv.com/news/local/chamblee-man-allegedly-stole-50000-homeowners-asso/137186441

https://www.kppm.com/rules-and-expectations-of-managers-and-hoa-boards-of-directors/

[4] 5600. (a) Except as provided in Section 5605, the association shall levy regular and special assessments sufficient to perform its obligations under the governing documents and this act.
   (b) An association shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied.

5605. (a) Annual increases in regular assessments for any fiscal year shall not be imposed unless the board has complied with paragraphs (1), (2), (4), (5), (6), (7), and (8) of subdivision (b) of Section 5300 with respect to that fiscal year, or has obtained the approval of a majority of a quorum of members, pursuant to Section 4070, at a member meeting or election.
   (b) Notwithstanding more restrictive limitations placed on the board by the governing documents, the board may not impose a regular assessment that is more than 20 percent greater than the regular assessment for the association's preceding fiscal year or impose special assessments which in the aggregate exceed 5 percent of the budgeted gross expenses of the association for that fiscal year without the approval of a majority of a quorum of members, pursuant to Section 4070, at a member meeting or election.
   (c) For the purposes of this section, "quorum" means more than 50 percent of the members.

[5]

Under Corporations Code section 8216, the office of attorney general has discretionary authority to intervene on behalf of nonprofit, mutual benefit corporation homeowners denied certain specified rights. Standing is limited to "a member, director or officer" of an association, who can submit complaints that fall under four areas of compliance. They are:

1. Failing to provide notice and hold regular board meetings and comply with special meeting requirements. (Corporations Code sections 7510 - 7512.)

2. Failing to abide by quorum requirements; transacting unauthorized business at meetings; failing to provide ballots and proxies to owners and a means of nominating and electing directors, and failing to recognize bylaws that mandate cumulative voting. (Corporations Code sections 7512 - 7615.)

Complaint

- 17 -

1  police[6] can be involved if fraud is suspected.  We have had thefts over the years of

2  vehicles due to lack of security and one has to wonder if this also attributed to the

3  HOA board as they are trying to engage in thievery of the non board member owners.

4  <u>**SECOND CAUSE OF ACTION**</u>

5  **(Breach of Fiduciary Duty against BERNSTEIN)**

6  51. Plaintiff incorporates by reference and reallege all allegations set forth in the

7  preceding paragraphs.

8  52. Defendants owe a fiduciary duty to plaintiff.

9  53. Defendant MEADOW BROOK VILLAGE ASSOCIATION – FREMONT is a

10  nonprofit domestic corporation.

11  54. Defendant MASSINGHAM & ASSOCIATES is a domestic stock corporation and

12  former property management firm for MEADOW BROOK VILLAGE

13  ASSOCIATION – FREMONT.

14  55. Defendant ASSOCIA NORTHERN CALIFORNIA is a domestic stock corporation

15  and property management firm for MEADOW BROOK VILLAGE ASSOCIATION

16  – FREMONT.

17  56. Defendant MEADOW BROOK VILLAGE ASSOCIATION – FREMONT has been

18  operating contrary to the interests of the collective homeowners it appears for some

19  time now as well as the property management corporations.

20  57. MEADOW BROOK VILLAGE ASSOCIATION – FREMONT was at all times

21  herein the Homeowners Association and controlled all aspects of decision making for

22  the homeowners within the common interest development.

3. Failing to maintain books, records, minutes, annual reports and a list of members names and addresses — and to allow homeowners to inspect those items. Failing to allow a director his or her absolute right to inspect or copy any association books, records and documents. (Corporations Code sections 8320 - 8334.)

4. And finally, falsifying or tampering with association reports or records. (Corporations Code section 8215.)

[6]  If you suspect criminal activity, such as fraud, theft or embezzlement on the part of the board of directors or individual officers, the proper avenue for redress is to file a report with the police or Sheriff's Department in the area where the crime occurred.

Complaint

- 18 -

58. Defendant MASSINGHAM & ASSOCIATES was the property management firm for MEADOW BROOK VILLAGE ASSOCIATION – Fremont in 2014 and prepared the annual budget disclosure statement for year beginning January 1, 2015 and ending December 31, 2015.  Plaintiff is not certain how many years MASSINGHAM & ASSOCIATES served as the property manager for MEADOW BROOK VILLAGE ASSOCIATION – FREMONT but based on information and belief recalls materials received reflecting this name as far back as 2006 with coupon books for dues. Discovery will reveal how long this Defendant was retained as property manager and other property management firms if any involved.

59. Defendant ASSOCIA NORTHERN CALIFORNI has been the property management firm since 2015 through the present.

60. As a property owner in MEADOW BROOK VILLAGE ASSOCIATION – FREMONT management firm for MEADOW BROOK VILLAGE ASSOCIATION – Fremont in 2015 and prepared the annual budget disclosure statement for year beginning January 1, 2016 and ending December 31, 2016.  ASSOCIA is the property management firm to date and listed on the EMERGENCY ASSESSMENT 2018 Emergency Repair Plan Information Packet.  It is unclear if the name simply changed MASSINGHAM & ASSOCIATES to ASSOCIA NORTHERN CALIFORNIA, if these are different entities, complex relationship.  Plaintiff is serving all with complaint, lawsuit through different statutory agents listed affiliated with each Defendant.

61. As the President of the MEADOW BROOK VILLAGE ASSOCIATION – FREMONT Susan Hernandez and MEADOW BROOK VILLAGE ASSOCIATION – FREMONT owed a fiduciary duty to disabled homeowner Mary Bernstein to act at all times with the utmost care, honesty, undivided loyalty and fidelity with all business dealings with Mary Bernstein.  Public accommodations for the disabled included.

62. Susan Hernandez, MEADOW BROOK VILLAGE ASSOCIATION  FREMONT, MASSINGHAM & ASSOCIATES, INC. and ASSOCIA NORTHERN CALIFORNIA breached their fiduciary duty to Plaintiff Bernstein by the acts of misfeasance and malfeasance described herein, including but not limited to those acts

Complaint

- 19 -

of self-dealing that were designed to deprive Mary Bernstein of her ownership rights in MEADOW BROOK VILLAGE HOMEOWNERS ASSOCIATION – FREMONT and the fraudulent assignment of unreasonable assessments, fees have been assigned to unsuspecting homeowner Mary Bernstein within the common interest.

63. Defendant MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont owed and owes presently a fiduciary to Plaintiff.

64. Defendant MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont failed to act as a reasonably careful agent would have under the same circumstances.

65. Defendant MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont failure to act as a reasonable careful agent was in bad faith, oppressive, willful, wanton, and malicious thereby entitling Plaintiff to an award of punitive damages. The President of the MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont was well aware of Plaintiff Mary Bernstein's disabilities as well as MASSINGHAM & ASSOCIATES, INC. and ASSOCIA NORTHERN CALIFORNIA and ignored her complaints, pleas solely for the purpose of discrimination and/or retaliation against Plaintiff.

66. MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont actions were intentional, willful, and wanton and indirect discrimination retaliation failure to accommodate disabled under federal and state laws. In addition, the HOA's sanctions against Plaintiff Mary Bernstein of unreasonable assessments, fees, charges when in fact Plaintiff has been denied homeowner rights for years has imposed an unreasonable risk of harm and continues to impose in the continuing wrongful conduct that led to Plaintiff Mary Bernstein's damages.

67. As a result of Defendant's breaches of their fiduciary duty, Plaintiff has been damaged in actual damages an amount of at least $33,262 currently assigned but more emergency assessments in unknown, undisclosed amounts at this time are threatened to be assigned over the course of the next several years in addition to monthly assessments. This is unethical no one in particular disabled can live in this suspended animation of stress for unknown parameter of time with constant threats, intimidation, oppression, domination and manipulation. Plaintiff cannot even rest in her own home

Complaint

- 20 -

1   peacefully or enjoy the common interest despite up to date payments by oppressive

2   defendants padlocking prohibiting use of common areas.  Defendants conduct has

3   been detrimental and a contributing factor to Plaintiff's mental and physical health.

68. As a proximate result of MEADOW BROOK VILLAGE HOMEOWNERS

4   ASSOCIATION FREMONT, MASSINGHAM & ASSOCIATES, INC. and

5   ASSOCIA NORTHERN CALIFORNIA, Mary Bernstein has been harmed as alleged

6   herein in an amount of excess $3 million dollars, in an amount to be proved at trial.

7

8

9   **THIRD CAUSE OF ACTION**

10   **(Breach of Contract)**

11  69. Plaintiff incorporates by reference and reallege all allegations set forth in the

12   preceding paragraphs.

13  70. Plaintiff alleges that on or about February 2006 an agreement was entered into

14   between MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION –

15   Fremont and Mary Bernstein.  Plaintiff Mary Bernstein signed loan documents and

16   entered into common interest development.  In consideration of defendants'

17   representations, agreements and promises, plaintiff paid for and obtained a common

18   interest property provided by MEADOW BROOK VILLAGE HOMEOWNERS

19   ASSOCATION – Fremont.

20  71. On or about February 2017, Defendants MEADOW BROOK VILLAGE

21   HOMEOWNERS ASSOCATION – Fremont breached that agreement by placing

22   padlocks on the pool areas depriving Plaintiff of the use and enjoyment of the pool

23   area.  On or about May 2017 Defendants MEADOW BROOK VILLAGE ·

24   HOMEOWNERS ASSOCATION – Fremont breached that agreement by failing to

25   heat pool during the summer as promised to comfortable temperature claiming it was

26   too expensive.  Nowhere in the documents did it state that pool privileges would be

27   seasonal or restrictive.  Defendant MEADOW BROOK VILLAGE HOMEOWNERS

28   ASSOCATION – Fremont present to date continuously fails to unlock pool with

Complaint

- 21 -

padlock despite all owners in possession of a gate key depriving enjoyment and privilege of homeowners.

72. Plaintiff performed all of her obligations by paying for monthly assessment dues for enjoyment of common interests and maintenance fees of the property.

73. Plaintiff has performed all of those obligations to defendant except as to those obligations plaintiff was prevented or excused from performing. Plaintiff has paid monthly dues to date never being late. Plaintiff suffered damages legally (proximately) caused by defendants breach of the agreement. Plaintiff has not been able to utilize for the benefits promised by the defendants. Plaintiff health mental and physical has declined due to no longer receiving benefit. Plaintiff incurred additional medical costs due to increased psychotherapy appointments and medical appointments due to denial of and failure to receive promised benefit. Further physical exercise is part of medical treatment plan Plaintiff currently prescribed. The Defendants have been made aware of this fact for over a year yet continually padlock, fail to remove or in the alternative provide Plaintiff with padlock key for her convenience.

## FOURTH CAUSE OF ACTION

### (Breach Of The Implied Covenant Of Good Faith And Fair Dealing)

74. Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs.

75. Plaintiff alleges that on or about February 2006 an agreement was entered into between the parties. The essential terms of the agreement are as follows:

Monthly assessment payments for maintenance of property and use of common interest areas including pool area

76. In consideration of defendants' representations, agreements and promises, plaintiff paid for and obtained common interest ownership rights.

77. On or about November 2016, Defendants breached that agreement by completely closing the pool area for the winter not reopening until Spring 2017. Different hours, different seasons randomly denying plaintiff use of the heated pool by not heating it to the level that it had been to previous years, closure of the pool,

Complaint

- 22 -

failure to open pool area consistently. The CC&Rs, bylaws, disclosure statements or loan documents do not state the pool is a seasonal privilege or that the pool is to be unheated.

78. Defendants' representations and promises were not modified or agreed to by plaintiff. Plaintiff has paid monthly assessments for years yet has been denied full access to the facilities. Plaintiff performed all of her obligations by paying for ownership rights and use of facilities. The only facilities listed are the pool area.

79. Plaintiff has performed all of those obligations to defendant.

80. Plaintiff suffered damages legally (proximately) caused by defendants breach of the agreement. The pool area is the only facilities listed and plaintiff has been denied these privileges on a regular, consistent basis. The loss of promised use of pool area facility has inconvenienced Plaintiff and increased her PTSD, depression symptoms as of no longer receiving benefit. Plaintiff has suffered extreme depression due to pool closure, lack of heating the pool anytime of the year now. The additional stress wherein Plaintiff has paid for maintenance and privileges for pool for years but now hit with excessive emergency assessment through no fault of her own has caused extensive damage and increased medical issues.

## FIFTH CAUSE OF ACTION

### (Intentional Infliction Of Emotional Distress)

81. Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs. Plaintiff alleges that Defendants was the legal and proximate cause of damages to Plaintiff. By the following acts or omissions to act, Defendants intentionally caused the damage to Plaintiff on multiple dates 2017-Present at MeadowBrook occurred.

82. As a result of Defendants agents misrepresentations that pool facilities are too expensive to maintain and that Plaintiff should join a country club, Plaintiff has suffered depression. As a result, Plaintiff incurred loss of enjoyment of benefits. I have physical and emotional consequences result of conduct of Defendant employees and agents. The entire ownership process at Meadow Brook devalued leaving me in a position with no ownership benefits and immense debt emergency assessment in the

Complaint

- 23 -

amount of $33,262 and more emergency assessments forthcoming. . I have physical and emotional consequences as a result of conduct of Defendants.

## SIXTH CAUSE OF ACTION

### (Negligent Infliction Of Emotional Distress)

83. Plaintiff incorporates by reference and realleges all allegations set forth in the preceding paragraphs. Plaintiff alleges that Defendants was the legal and proximate cause of damages to Plaintiff. By the following acts or omissions to act, Defendants intentionally caused the damage to Plaintiff on multiple dates 2017-Present at MeadowBrook occurred.

84. As a result of Defendants agents misrepresentations that pool facilities are too expensive to maintain and that Plaintiff should join a country club, Plaintiff has suffered depression. As a result, Plaintiff incurred loss of enjoyment of benefits. I have physical and emotional consequences result of conduct of Defendant employees and agents. The entire ownership process at Meadow Brook devalued leaving me in a position with no ownership benefits and immense debt emergency assessment in the amount of $33,262 and more emergency assessments forthcoming. . I have physical and emotional consequences as a result of conduct of Defendants.

## SEVENTH CAUSE OF ACTION

### (Intentional Misrepresentation)

85. Plaintiff incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

86. Defendants stated in the emergency assessment that the reserves have been underfunded for years, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations. The acts pled were intended to and did deceive Plaintiff and the rationale for the fraud was their desire to obtain payment for unreasonable assessments and not provide Plaintiff with the benefits represented. The President Susan Hernandez stated that they could not afford to heat the pool. The President

Complaint

- 24 -

Susan Hernandez stated that if people wanted to use the pool year round they needed to join a country club. President Susan Hernandez caused the pool area to be closed entirely for 3 months during 2016-2017 winter. Plaintiff believed that it was contained in the CC&Rs that the pools one of them constantly closed in the winter and not heated fully. Review of the CC&Rs which Plaintiff did not possess or see recently does not reflect any such agreement. Defendants stated in the emergency assessment that the reserves have been underfunded for years, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations. The acts pled were intended to and did deceive Plaintiff and the rationale for the fraud was their desire to obtain payment for unreasonable assessments and not provide Plaintiff with the benefits represented.

### EIGHTH CAUSE OF ACTION

### (Negligent Misrepresentation)

87.    Plaintiff incorporates by reference and realleges all allegations set forth in the preceding paragraphs.

88. The President Susan Hernandez stated that they could not afford to heat the pool. The President Susan Hernandez stated that if people wanted to use the pool year round they needed to join a country club. President Susan Hernandez caused the pool area to be closed entirely for 3 months during 2016-2017 winter. Plaintiff believed that it was contained in the CC&Rs that the pools one of them constantly closed in the winter and not heated fully. Review of the CC&Rs which Plaintiff did not possess or see recently does not reflect any such agreement. Defendants stated in the emergency assessment that the reserves have been underfunded for years, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations. The acts pled were intended to and did deceive Plaintiff and the rationale for the fraud was their desire to obtain payment for unreasonable assessments and not provide Plaintiff with the benefits represented.

### NINTH CAUSE OF ACTION

Complaint

- 25 -

**(BREACH OF CC&Rs AND BYLAWS)**

89. Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs.

90. Defendant Meadow Brook Village Homeowners Association – Fremont is governed by the Declaration of Covenants, Condition and Restriction (CC&Rs), recorded Document Series No, 82-170985 Alameda CountyRecorder - Fremont recorded November 9, 1982 the Bylaws of Meadow Brook Village Homeowners Association adopted November 3, 1982.

91. Defendant Meadow Brook Village Homeowners' Association – Fremont has breached the Meadow Brook Declaration of Covenants, Condition and Restriction (CC&Rs) and Bylaws, and the law generally, by causing a forfeiture and or abridgement of owner's right to the full use and enjoyment of the residence and common areas despite no judgment of a court of competent jurisdiction, arbitration decision, failure to pay assessments; foreclosure or sale under a power of sale page 6 of the Bylaws.

92. Defendant Meadow Brook Village Homeowners' Association – Fremont has breached the Meadow Brook Declaration of Covenants, Condition and Restriction (CC&Rs) and Bylaws, and the law generally, by attempting to circumvent maximum annual 20% increase in assessments through a "preliminary" $33,262 "emergency assessment" to be followed by unknown additional "emergency assessments" with no end in sight. The Assessment Article III CC&R section page 11 contains no emergency assessment provision only a special assessment which was rejected by vote 2/3 majority. There are five types of assessments listed pages 12-13 regular, special, capital improvement assessments, reconstruction and uniform assessments. The HOA Board cannot simply create out of thin air requirements and provisions which have not been amended or adopted.

93. As a result of this aggravation, acrimony and division Plaintiff has been damaged by Defendant HOA Meadow Brook failure to abide enforce by the CC&Rs and Bylaws, in an amount preliminary $33,262 levied against Plaintiff with anticipated further amounts to be levied, in addition to her attorneys fees pursuant to CC&Rs and the Davis-Sterling Act.

Complaint

- 26 -

94. By this Complaint, Plaintiff seeks to enforce the CC&Rs and Bylaws of the Meadow Brook HOA.

## TENTH CAUSE OF ACTION

### (Violation of Cal. Civ. Code §51 UNRUH CIVIL RIGHTS ACT)

95.  Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs.

96.  The Unruh Act, Cal. Civ. Code §51, guarantees all people within the jurisdiction of California, no matter what their disabilities, the full and equal accommodations, advantages, facilities, privileges and services of all business establishments of any kind whatsoever.

97.  The Plaintiff Mary Bernstein is a person with disabilities under Cal. Civ. Code §51.

98.  Meadow Brook Village Association – Fremont, Associa Northern California and Massingham & Associates, Inc. are business establishments within the meaning of Cal. Civ. Code §51, *et seq.*

99.  Meadow Brook Village Homeowners Association – Fremont offers people within the jurisdiction of California ownership rights in the common interest development.

100.  Despite being placed on notice that the lack of accommodation for use of the pool area hot tub and heated pool excludes disabled plaintiff of medical treatment and relaxation much of the benefits that she pays for monthly through association dues, that plaintiff cannot afford nor does she desire to join a country club to swim when the common interest development offers two swimming pools in the comfort of her complex that she pays for, Defendants Meadow Brook Village Homeowners Association, Associa Northern California previously Massingham & Associates, Inc. property management firm continue to deny these privileges and accommodations despite Plaintiff never delinquent to date with dues by padlocking, inconsistent pool openings.  Plaintiff in pain walks to the pool only to find the majority of the time the pool closed, forced to call the property manager wherein stress level aggravated episodic.  A clause in the CC&R discriminatory languages stating that nonresident owners, those that rent are not entitled to pool.

101.  Annual budget disclosure ending December 2015 page 34 lists pool key and page 35 non-resident homeowners may not use pool? A pool id card was never furnished to us.  There is no mention of seasonal operation of pools, nor was there when we signed loan documents any

Complaint

- 27 -

representation about inaccessibility to these areas. There is no mention of heating only partially throughout the year or one pool open only. There is no hours listed as it was assumed the pool access would be at our leisure whenever we elected as the common interest is open 24hours residents live here.

102. Because of Defendants refusal to accommodate, provide Plaintiff with benefits that she pays for, Plaintiff has been denied full and equal access to ownership benefits. This denial has caused plaintiff's stress level and anger levels to escalate as there is no decompression available through pool meditation and recreation, have not been provided services that are provided to other owners that have access to padlock keys who are not disabled, and/or have been provided privileges that are inferior to the privileges provided to other non disabled owners. Plaintiff gets up very early and wants to utilize the pool at 6 am as Plaintiff goes to bed very early. These violations are ongoing. Plaintiff has not utilized the pool in ages due to aggravation of having to telephone all the time. Defendants' failure to and refusal to correct the barriers to full and equal access to the pool area, heated pool and reasonably heated hot tubs not scorching for Plaintiff constitutes intentional discrimination.

103. Defendants actions were and are in violation of the Unruh Act.

104. Plaintiff is thus entitled to injunctive relief remedying the discrimination pursuant to Cal. Civ. Code §52.

105. Plaintiff is also entitled to statutory damages under Cal. Civ. Code §52.

106. Cal. Civ. Code §52 further entitles Plaintiff to reasonable attorneys fees and costs. Plaintiff has retained a limited scope representation attorney.

## ELEVENTH CAUSE OF ACTION
### (Violation of Cal. Civ. Code §54 DISABLED PERSONS ACT)

107. Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs.

108. The California Disabled Persons Act, Cal. Civ. Code §54 and 54.1 guarantees people with disabilities full and free use of all public places and full and equal access to all places to which the public is invited.

Complaint

- 28 -

109.   Defendants are violation the rights of disabled Plaintiff Mary Bernstein to full and equal access to public places by denying full and equal access to the pool area year round and consistently during the posted hours.

110.   Meadow Brook Common Interest Development constitutes a "public place" within the meaning of the CDPA, Cal. Civ. Code §54.1.  By failing to provide access to the pool, the areas of Meadow Brook Village Homeowners Association – Fremont that offer common interest ownership rights are inaccessible to disabled Plaintiff Mary Bernstein.

111.   The actions of Meadow Brook Village Homeowners Association – Fremont, Associa Northern California and Massingham & Associates, Inc. previously were and are in violation of the CDPA.  The Defendants have been given notice continuously by Plaintiff concerning her disabilities and request for accommodations to no avail constituting discrimination.

112.   Plaintiff is thus entitled to statutory minimum damages for each offense, and for declaratory relief under Cal. Civ. Code §54.3.

113.   Cal. Civ. Code §52 further entitles Plaintiff to reasonable attorneys fees and costs. Plaintiff has retained a limited scope representation attorney.

### TWELFTH CAUSE OF ACTION

**(INJUNCTIVE RELIEF DECLARATORY RELIEF**
**Code Civ. Proc. §1060 )**

114.   Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs.

115.   PRELIMINARY INJUNCTION TO PREVENT THE ENFORCEMENT, COLLECTION OF THE EMERGENCY ASSESSMENT DUE APRIL 2 2018 and subsequent emergency assessments levied during the pendency of this trial.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment against defendants, and each of them, for:
   a. Injunctive Relief against President of MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont Susan Hernandez further harassment of Plaintiff;
   b. Declaratory Relief, Injunctive Relief against enforcement, collection against levied emergency assessment due April 2 2018 unlawful and voted against by 2/3 majority homeowners in the amount of $33,262.00 and threatened unknown future "emergency assessments, special assessments" based on fraud,

Complaint

- 29 -

malfeasance, misfeasance wherein homeowners paid reliance upon maintenance during the course of the trial;

c.  Injunctive relief concerning the deprivation of rights of pool area access, heated pools and hot tubs both pools open for enjoyment of full access ownership rights daily 6 a.m to 10 p.m. restitution damages for the period of time Plaintiff denied; padlocks to be removed so as not to deny ownership rights of homeowners privileges and benefits they are paying for year round

d.  For compensatory damages according to proof at the time of trial;

e.  For general damages according to proof at the time of trial;

f.  For punitive damages according to proof;

g.  For rescission of homestead exemption waiver CCRwith MEADOW BROOK VILLAGE HOMEOWNERS ASSOCATION – Fremont as a null and void contract based on fraud;

h.  For legal interest on said sums; and

i.  For such other and further relief as the Court deems just and proper against all Defendants.

**JURY DEMAND**

**DATED** this 19th day of March, 2018.

M. HELEN BERNSTEIN

Complaint

- 30 -

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖  10
20685286

# SUMMONS
## (CITACION JUDICIAL)

(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Assoc'z Northern Calfornlz
meadow Brook Village Association
fremont

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Mary Bernstein

FILED
ALAMEDA COUNTY

MAR 19 2018

CLERK OF THE SUPERIOR COURT
By. _____ Deputy

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda<br><br>24405 Amador Street, Hayward Hall of Justice<br>Hayward, CA 94544 | CASE NUMBER:<br>*(Número del Caso):*<br>**HG18897381** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mary Bernstein, 3416 Deerwood Terrace, #113, Fremont, CA 94536

| DATE:<br>*(Fecha)* MAR 19 2018 | Chad Finke Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify):

    under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
    ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
    ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
    ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | HG18897381 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

massingham + Associates

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**



20685284

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Mary Bernstein<br>3416 Deerwood Terrace, #113, Fremont, CA 94536<br><br>TELEPHONE NO.: 510 938 6280       FAX NO.:<br>ATTORNEY FOR *(Name):* | FOR COURT USE ONLY<br><br>**FILED**<br>ALAMEDA COUNTY<br><br>MAR 19 2010<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda County Superior Court
STREET ADDRESS: 24405 Amador Street, Hayward Hall of Justice
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA  94544
BRANCH NAME:

CASE NAME:
Bernstein v. Associa Northern California, et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>HG18897381 |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation**<br>**(Cal. Rules of Court, rules 3.400–3.403)** |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46)<br>**Other PI/PD/WD (Personal Injury/Property**<br>**Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☑ Other PI/PD/WD (23)<br>**Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35)<br>**Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37)<br>**Real Property**<br>☐ Eminent domain/Inverse<br>   condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26)<br>**Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02)<br>☐ Other judicial review (39) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30)<br>☐ Insurance coverage claims arising from the<br>   above listed provisionally complex case<br>   types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |

2. This case ☑ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties          d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel     e. ☐ Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve                 in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence              f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 19, 2018

_____                              _____
(TYPE OR PRINT NAME)                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

EXHIBIT I

John 17 is the seventeenth chapter of the Gospel of John in the New Testament of the Christian Bible. It portrays a prayer of Jesus Christ addressed to his Father, placed in context immediately before his betrayal and crucifixion, the events which the gospel often refers to as his glorification1. The chapter is a profound display of Jesus' love and concern for His followers, providing encouragement for believers in the unity He desires for us and in His intercession on our behalf

Jesus Prays to Be Glorified

17 After Jesus said this, he looked toward heaven and prayed:

"Father, the hour has come. Glorify your Son, that your Son may glorify you. 2 For you granted him authority over all people that he might give eternal life to all those you have given him. 3 Now this is eternal life: that they know you, the only true God, and Jesus Christ, whom you have sent. 4 I have brought you glory on earth by finishing the work you gave me to do. 5 And now, Father, glorify me in your presence with the glory I had with you before the world began.



23039165

1  **MARY BERNSTEIN, MSAJS**
2  3416 Deerwood Terrace, #113
   Fremont, CA  94536
3  (510) 938-6280
   Email: mbernsteinpurple@hotmail.com
4  Plaintiff Pro Se

5  **SUPERIOR COURT OF CALIFORNIA**

6              **COUNTY OF ALAMEDA**

FILED
ALAMEDA COUNTY

JUL 23 2021

CLERK OF THE SUPERIOR COURT
By _____

7  MARY BERNSTEIN,                          Case No.   HG18897381

8          Plaintiffs,                      **DECLARATION OF ANNA SMITH-
                                            FOGLTANCE IN SUPPORT OF**
9      vs.                                  **REQUEST FOR CHANGE OF JUDGE,
                                            PEREMPTORY CHALLENGE,**
10                                          **CHALLENGE FOR CAUSE
                                            REASONABLE ACCOMMODATIONS**
11  ASSOCIA NORTHERN CALIFORNIA, a
    California Corporation MEADOW BROOK      [Refusal Judge Herbert to provide
12  VILLAGE ASSOCIATION, a California        reservation number – advised by clerk to
    Corporation, MASSINGHAM &               submit motion]
13  ASSOCIATES, a California Corporation;
    JOHN DOE 1-50; MARY ROE 1-50; XYZ
14  CORP 1-50; ABC LLC 1-50; The names of
    the "John Doe 1-50" "Mary Roe 1-50", "XYZ
15  Corp, 1-50", and "ABC LLC, 1-50",
    defendants being fictitious, and unknown to
16  the Plaintiff, Amy DeJesus, William
    Schneider, Rohit Varicatt. Michael Durbin,
17  Vipul Ramani, Virendra Dhavale, Romulo
    Zafra, Ashok Agarwal, Charlie West, Laurie
18  Sheaffer, Jill Buono, Sharon Daly, Linda
    Kramer, Marv Eryman, Susan Condio-
19  Hernandez, Jeffrey Lowery, Belinda
    Hollingsworth, LeAnne Ritter, Lee Molignoni,
20  Laurie Sheaffer, Elizabeth (Liz) Hall, Warren
    Hollingsworth, Jerry Cosentino, COMMON
21  INTEREST MANAGEMENT HOLDINGS
    LLC, a limited liability company, John
22  Gibson, Mona Oliver, Derc Yamasaki,
    Joaquin Rivera, Warwick Hoyle, Jacob
23  Rivera, Che Saeturn Tanjoco,  Chandan
    Sheath, Dawn Aquilina, Mark Simonson,
24  Gurnoor Judge,  Chai Min Loke,

25

26

27

28  DECLARATION OF ANNA SMITH-FOGLTANCE IN SUPPORT OF REQUEST FOR
    CHANGE OF JUDGE, PEREMPTORY CHALLENGE, CHALLENGE FOR CAUSE
    REASONABLE ACCOMMODATIONS

- 1 -

1    Defendants.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    DECLARATION OF ANNA SMITH-FOGLTANCE IN SUPPORT OF REQUEST FOR
CHANGE OF JUDGE, PEREMPTORY CHALLENGE, CHALLENGE FOR CAUSE
REASONABLE ACCOMMODATIONS

Declaration Anna Smith-Fogltance

My name is Anna Smith-Fogltance and I am the mother of Plaintiff Mary Ballard Bernstein. If called as a witness I can testify as to the following facts that occurred during a motion for stay hearing on July 2 2021 and declare as follows:

1. I am bedridden with congestive heart failure on oxygen.
2. I worked when younger in law firms in Washington DC, have some familiarity with legal process in courts, Judge to be neutral. My Father worked in the Pentagon; my mother in academia; my sister an accountant. I do not appreciate being treated as a second class citizen.
3. My disabled eldest daughter Mary Ballard Bernstein has been literally fighting for her life for the past 3 ½ years in court matter Bernstein v. Associa enduring prejudice from the judge assigned Paul Herbert which I personally observed on July 2 2021 as well as physical threats to her person in the HOA Community.
4. On July 2 2021 I was on a conference call bluejean hearing for a motion to stay with my daughter Mary Ballard Bernstein 9:00 am. Mary has submitted multiple reasonable accommodations to the court as well as doctors notes regarding her medical conditions ADHD, PTSD, Bipolar and physical matters Irritable Bowel Syndrome to this Judge as well as her doctors. My younger daughter Elizabeth Tigano that is now diagnosed with PTSD and hospitalized also submitted reasonable accommodations to be patient, no waiting. I was to witness as well as other witnesses for Mary that were on the line.
5. The Judge Paul Herbert came on stating that there were many matters on the calendar and that he would be taking the Bernstein case in 15 minutes. Instead, the Judge then stated furious that anyone making noises would go last and he suspected Bernstein. I am on oxygen, bedridden with congestive heart failure. This was extremely upsetting to me to be talked to as an elderly, disabled person.
6. Many many matters were called.
7. Carlos Jato I believe the attorney in matter called Perez v. Jechi was providing a legal citation, I accidentally coughed and the judge responded irrationally stating oh jesus or jeez someone coughed and I did not get the citation. Carlos Jato was disputing a legal conclusion and stated 6 federal judges decision was different than Paul Herbert.
8. Stephen Kent Rose attorney brought up a case he planned on appealing and the judge appeared to be almost threatening intimidating this man as the judge had worked in the court of appeals. I have never witnessed a judge posture in such a way to an attorney.
9. These were all men that were arguing and the judge was for the most part respectful to all of them providing them with a lot of time back and forth arguing.
10. The Judge took my daughter's dead case last afterward of which that demeanor to all of us on the phone four women was aggressive hostility. Presumably this was because of the coughing.
11. The court stenographer was having difficulty as well as the judge with equipment. I stated my name and they could not understand. I stated several times spelling it and explained that I did not have any teeth. I wear dentures when I eat but I am bedridden and do not wear in bed. I was extremely tired by this point after waiting so long to testify and disappointed that we were not taken in 15 minutes as he stated he would do.

12. The Judge several times encouraged us all to hang up and dial up on other lines. I have no idea as an older person how to work technological matters. My daughter makes phone calls for me, dials them assisting me.

13. We had to secure restraining orders in Arizona and the Judges were extremely kind helpful. The judges dial up the person obtaining the restraining order rather than long waits online wherein no one can use bathroom. The court prints out completes all restraining orders for the public after preliminary information provided online. This is a streamlined process. There are live hearings in Arizona not audio calls.

14. The judge was so hateful, critical abrupt to women all of us again pushing a continuance.

15. My daughter wanted the conclusion of the matter as she has been unable to sleep for weeks due to stress from this case.

16. My daughter Mary Ballard Bernstein is so nervous, physically sick before each court appearance and attempts to present her matter to the best of her ability. Mary also emailed to the Judge she stated several pieces of evidence.

17. Judge Paul Herbert consistently interrupted Mary, angrily corrected her multiple times saying that she was on a tangent, ranting that he was denying the stay.

18. The Judge was courteous to these attorneys but exhibited baised, prejudicial behavior towards my disabled daughter not letting her state her case. The judge would not look at the emails that she sent, blamed her for additional delays to the stay which was a world pandemic, refused to appoint counsel to her as well.

19. The Judge stated that he would not need our testimony and would not allow any witness testimony.

20. I was completely appalled at this behavior. I am in another state Arion

21. I am disabled physically but I still have my faculties. The public expects judges to be respectful, neutral and not abusive. I am writing this declaration for complaint I am filing for this judge behavior towards me as a witness coughing and in support of my daughters motion to recuse judge.

Anna Smith Fogltance

7 -8- 2021



23039164

1   **MARY BERNSTEIN, MSAJS**
    3416 Deerwood Terrace, #113
2   Fremont, CA 94536
    (510) 938-6280
3   Email: mbernsteinpurple@hotmail.com
    Plaintiff Pro Se
4

**FILED**
**ALAMEDA COUNTY**

JUL 23 2021

5   **SUPERIOR COURT OF CALIFORNIA**

CLERK OF THE SUPERIOR COURT
By _____ Deputy

6               **COUNTY OF ALAMEDA**

7   MARY BERNSTEIN,                        Case No.   HG18897381

8          Plaintiffs,                     **DECLARATION OF JACQUELINE V.**
                                           **ILLERA IN SUPPORT OF REQUEST**
9      vs.                                 **FOR CHANGE OF JUDGE,**
                                           **PEREMPTORY CHALLENGE,**
10                                         **CHALLENGE FOR CAUSE**
11  ASSOCIA NORTHERN CALIFORNIA, a         **REASONABLE ACCOMMODATIONS**
    California Corporation MEADOW BROOK
12  VILLAGE ASSOCIATION, a California      **[Refusal Judge Herbert to provide**
    Corporation, MASSINGHAM &              **reservation number – advised by clerk to**
13  ASSOCIATES, a California Corporation;   **submit motion]**
    JOHN DOE 1-50; MARY ROE 1-50; XYZ
14  CORP 1-50; ABC LLC 1-50; The names of
    the "John Doe 1-50" "Mary Roe 1-50", "XYZ
15  Corp, 1-50", and "ABC LLC, 1-50",
    defendants being fictitious, and unknown to
16  the Plaintiff, Amy DeJesus, William
17  Schneider, Rohit Varicatt. Michael Durbin,
    Vipul Ramani, Virendra Dhavale, Romulo
18  Zafra, Ashok Agarwal, Charlie West, Laurie
    Sheaffer, Jill Buono, Sharon Daly, Linda
19  Kramer, Marv Eryman, Susan Condio-
    Hernandez, Jeffrey Lowery, Belinda
20  Hollingsworth, LeAnne Ritter, Lee Molignoni,
21  Laurie Sheaffer, Elizabeth (Liz) Hall, Warren
    Hollingsworth, Jerry Cosentino, COMMON
22  INTEREST MANAGEMENT HOLDINGS
    LLC, a limited liability company, John
23  Gibson, Mona Oliver, Derc Yamasaki,
24  Joaquin Rivera, Warwick Hoyle, Jacob
    Rivera, Che Saeturn Tanjoco, Chandan
25  Sheath, Dawn Aquilina, Mark Simonson,
    Gurnoor Judge, Chai Min Loke,
26

27

28  DECLARATION OF JACQUELINE V. ILLERA IN SUPPORT OF REQUEST FOR
    CHANGE OF JUDGE, PEREMPTORY CHALLENGE, CHALLENGE FOR CAUSE
    REASONABLE ACCOMMODATIONS

- 1 -

1

Defendants.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JACQUELINE V. ILLERA IN SUPPORT OF REQUEST FOR
CHANGE OF JUDGE, PEREMPTORY CHALLENGE, CHALLENGE FOR CAUSE
REASONABLE ACCOMMODATIONS

- 2 -

Declaration Jaqueline V. Illera in Support of Motion of a New Judge

My name is Jacqueline V. Illera and I am knowledgeable about mistreatment Mary Bernstein has been enduring with the Alameda County Superior Court Paul Herbert. I Jacqueline V. Illera declare as follows:

I attended blue jeans hearing on July 2 2021 Bernstein v. Associa as a witness.

I attended February 24 2021 hearing as a witness Bernstein v. Associa.

I am a naturalized citizen from the Phillipines have been here many years. I am an occupational therapist and a published children's author. I want to complain about the behavior conduct towards myself as a witness as well as the experience I had before Judge Paul Herbert. I have been a witness on multiple restraining order hearings concerning retaliation for filing a civil complaint against the HOA that she lives in. Mary has been going through corporate mobbing unbearable I have endured with her in HOA Community assaulted myself there with her there when her car stalled was towed by Triple AAA. I was in my red Mercedes when the harassment began my first time ever at Meadow Brook. We were surrounded by large crowds. Joaquin Rivera restraining order granted, John Gibson restraining order granted. Michael Durbin second civil harassment hearing pending. I was testifying February 24 2021 in support of Mary amending her complaint naming these individuals and the HOA that sponsors this harassment of a member of the HOA community. This was a despicable place. Mary's disabled sister Elizabeth Tigano has also endured harassment at the hands of the HOA, has witnessed abuses of Mary and likewise was testifying February 24 2021 for Mary to amend complaint new causes of action and name Doe Defendants. Mary is a functioning, caring adult despite all she has endured and continually is enduring. I have experienced it there at Meadow Brook Village condominiums. I have testified all last year and this year at civil harassment hearings. I am occupational therapist am aware of physical. Mary is disabled physically from accident her infant and her nearly killed in cross walk while walking in cross walk to daycare. Mary is extremely bright suffers from PTSD was a legal professional for many years.

These people defame Mary saying she is psychotic, institutionalized her whole life. Mary encounters this ill treatment on a daily basis as does her disabled sister that is on calls with her subjected also to the abuses. John Gibson directed a group of people at us July 10, 2020 circled around us in car admitted they were upset about lawsuit. Mary provided medical records to defense counsel and these residents are aware of private medical records provided in discovery.

July 2 2021 hearing

I attended hearing remote was a witness to the dismissive attitude from the beginning. Mary's mother bedridden, who is prescribed oxygen with congestive heart failure also a witness. The judge began by scolding everyone on the calendar that date stating if anyone makes any noises, ruffling papers they will go last. The other individuals were all attorneys on the line; we were all non attorneys. Some noise immediately made and judge stated I hear noises and I think it is Bernstein. We are not on video call but audio. We were treated as children and made to go last despite Mary's reasonable accommodations disability and her mother's. Mary made it known that she had witnesses including her mother oxygen congestive heart failure. During one of the other hearings Mary's mother coughed and the Judge scolded as he said he did not get the citation from the attorney because someone coughed. This kind of abuse to elderly, sick people is extremely offensive and insensitive. After 45 minutes or so we were

finally called and Judge began fussing at us for noise when no one was making noise.  We made our appearances Mary's mother stated that she did not have any teeth her dentures were not in.  The judge began suggesting we all hang up discouraging us.  The judge suggested that everyone could hang up and dial back in he did not know why we could not.  I am not familiar with bluejeans system; I am in Los Angele and we have live hearings.  Mary's mother is not able to dial in log in, medicated passwords with technology as she is nearly 80 years old and incapacitated.  The judge refused to let any of us testify, continually dismissive to Mary saying she was ranting, tangent as he has done previously which further destabilizes Mary a handicapped woman unable to argue her points.  This treatment was not exhibited to any of the other cases with attorneys.  Judge Herbert very polite to the defense attorney on the matter.


February 24 2021 hearing

Paul Herbert was indifferent to all three of us on remote call hearing to begin stating that he was going to talk really slow and spoke to all three of us in front of others as if we possessed cognitive impairment. Mary stated that she wanted myself and Elizabeth Tigano to testify in support of motion for leave to amend complaint.  The Judge fought this vehemently from the very beginning any witnesses or evidence Mary was trying to produce.  Mary asked if he wanted to see the video that I filmed demonstrating the large crowd harassment he refused.  I had not even gotten a few words out in testimony several times and the insurance defense attorney Luanne Rutherford began objecting.  The Judge kept interrupting before I could say anything.  The defense cousel requested all objections for the end.  The judge then agreed to her motion to strike from the oral argument which was completely biased, one sided all of this behavior.  It is clear this Judge partiality and that he will not agree to anything Mary needs.  This Judge consistently blocking Mary from making her point.  This Judge claims that he could not understand an extremely well written motion for leave and amended complaint by a woman that was in the legal field her entire career with a master of science degree.


Mary needs a new judge as this Judge Herbert biased, prejudiced to her,


July 7, 2021

Jacqueline V. Illera



**Pima County Sheriff's Department**
**Civil Enforcement Unit**

32 N. Stone Avenue, 16th Floor  Tucson, AZ 85701-1409
Attention: DT-LSB16-205
Phone 520-351-6000  Facsimile 520-351-4333
www.pimasheriff.org

CHRIS NANOS
Sheriff

Keeping the Peace and Serving the Community Since 1865

## *Notice of Completed Service*

**Date:** 9/8/2021

**To:**   Anna SmithFogltance
2439 N. Ritchey Blvd
Tucson          AZ          85716

**Case:**   C20212317

**Process Number:**     21-001559

**Regarding:**

SMITHFOGLTANCE, ANNA

**vs.**

TUCKER, MARK

The service for the above mentioned case is completed and considered closed.  The following are fees concerning your case.

**Fees:**

| | | |
|---|---|---|
| 5/24/2021 | Mileage charge | $16.80 |

**Total Fees:**     $16.80

**Payments:**

**Balance Due:**     $16.80

IF YOUR PAPERS HAVE BEEN SERVED YOUR BALANCE IS DUE UPON RECEIPT OF THIS NOTICE

If your papers are unserved additional attempts may be made and additional charges may accrue.  No payment is due at this time.

If your papers remain unserved the total balance will be due at the expiration of your Injunction, one year from its issue date.

Payments can be made to the Sheriff's Department by mail in the form of personal check from a local bank, cashier's check, business check or money order (please do not mail cash).  Please note your Process number from this form on your check and mail to the address noted above.

You may also pay in person by check, money order or debit card at the Civil Enforcement Unit Customer Service window.  Or you may pay using a debit card by phone. If you have any questions please contact the Sheriff's Civil Enforcement Unit at (520) 351-6000.

Thank you for your attention to this matter.



# PIMA COUNTY SHERIFF'S DEPARTMENT

*Chris Nanos, Sheriff*

Civil Enforcement Unit, 32 North Stone Avenue, 16th Floor, Tucson, Arizona  85701-1409

Phone: (520) 351-6000   ●   Fax: (520) 351-4333   ●   www.pimasheriff.org

---

Dear                                                                    Process number: 21-001559

The Pima County Sheriff's Department's Civil Enforcement Unit processes over 5,000 service requests each year.  We hope that you are satisfied with the service recently provided.  The following survey will assist us in determining the level of service provided and your satisfaction with the personnel who provided those services.  This survey is solely for the purpose of evaluating services provided by the Civil Enforcement Unit.  We would appreciate a few minutes of your time in completing the survey below; any identifying information will be kept confidential.    We strive for world class service but realize there is always room for improvement.

**Type of service provided:**

☒ Protection Order / Injunction Against Harassment          ☐ Civil Papers          ☐ Writs          ☐ Taxes
☐ Other: _____

**Please rate the following from 1 (needs improvement) to 5 (excellent):**

**INITIAL CONTACT WITH CIVIL ENFORCEMENT UNIT STAFF**

| | | | | | | |
|---|---|---|---|---|---|---|
| Did they treat you with respect? | *Not at all* | ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | *Always* |
| Were they polite and professional? | *Not at all* | ☐ 1 | ☐ 2 | ☐ 3 | ☐ 4 | ☐ 5 | *Always* |

**SERVICE PROVIDED**

Are you satisfied with the service of document(s)?          *Not at all*   ☐ 1   ☐ 2   ☐ 3   ☐ 4   ☐ 5   *Very*

**FOLLOW-UP SERVICE**

Please rate any follow-up contact (phone, mail, email) with staff.          *Poor*   ☐ 1   ☐ 2   ☐ 3   ☐ 4   ☐ 5   *Excellent*

**OVERALL**

Was staff knowledgeable about the process and procedures?          *Not at all*   ☐ 1   ☐ 2   ☐ 3   ☐ 4   ☐ 5   *Very*
How satisfied are you with our service overall?          *Not at all*   ☐ 1   ☐ 2   ☐ 3   ☐ 4   ☐ 5   *Very*

**Additional comments and/or suggestions**:  (Personal information – name / phone number / e-mail – is optional.)

Thank you for taking the time to complete this survey and helping us to improve our customer service.

Sincerely,

*Lt. Juan Navarro*

Lieutenant Juan Navarro
Government Security & Civil Enforcement Section

---

**Please return this completed form to our office either via email or U.S. mail.**

**U.S. Mail:**
Pima County Sheriff's Department
Civil Enforcement Unit
32 N. Stone Avenue, 16th Floor
Tucson, AZ  85701-1409  DT-LSB16-205

[ Submit via Email ]

*Keeping the Peace Since 1865*                                                    Rev. 06/2021



**Fw: Please contact me concerning elderly mother**

AOL/Inbox

**Mary Helen Bernstein MSAJS**
From:
mbernsteinpurple@hotmail.com
To: mary bernstein

Sat, Oct 5 at 9:41 AM

From: M. Helen Bernstein MS APC CLA
Sent: Wednesday, February 3, 2021 5:05 AM
To: help@pcoa.org <help@pcoa.org>
Cc: etigano@mail.pima.edu <etigano@mail.pima.edu>
Subject: Please contact me concerning elderly mother

We need some assistance for her by Pima County Council on aging. My disabled younger sister needs assistance with the care it is simply too much for her.

Reply, Reply All or Forward

All Courts in Arizona/NCIC#/DPS# Address, City, AZ Zip Telephone Number

| Plaintiff   ☐ Employer-Plaintiff if Workplace Injunction | Defendant | Case No. |
|---|---|---|
| **Elizabeth G Tigano** | **Mission Vista** | |
| ☐ On behalf of minor/person in need of protection named: | Defendant's address **2455 N Dodge Blvd Tucson, AZ 85716** | PETITION for: ☐ Order of Protection ☑ Injunction Against Harassment ☐ Workplace Injunction |
| Agent's name (if Workplace Injunction) | Defendant's phone **I Don't Know** | |

## This is **NOT** a court order.

This petition contains Plaintiff's allegations and requests. To see what the court has ordered, see "Order" form.

*DIRECTIONS: Please read the Plaintiff's Guide Sheet before filling out this form.*

1. Defendant/Plaintiff Relationship *(or relationship between Defendant and minor/person in need of protection)*

☐ Married (past or present)
☐ Live/lived together as intimate partners
☐ Romantic/sexual (past or present)
☐ Parent of child in common
☐ One party is pregnant by the other

☐ Related as parent, grandparent, child, grandchild, brother, sister (or in-law/step)
☐ Live/lived together but not as intimate partners
☐ Dating (but not romantic or sexual)
☑ Other: **Neighbors across the street Mission Vista Apartments**

2. ☐ Defendant and I have a pending action involving maternity, paternity, annulment, legal separation, dissolution, custody, parenting time, or support in _____ County Superior Court, Case # .

3. Name of court, if any, in which any other protective order related to this conduct has been filed.

4. Tell the judge what happened and why you need this order. PRINT both the dates and a brief description of what happened. If there is a contested hearing, a judge can consider only what you write here.
   *NOTE: Defendant will receive a copy of this petition when the order is served.*

| Approval date | (Do not write on back or in the margin. Attach additional paper if necessary.) |
|---|---|
| 05/06/2021 | This is an ongoing situation of hate crimes, harassment and stalking I am enduring. In April 2020 C20-2983JSC Tigano v. HUD, et al. a federal complaint filed, subpoena served and the management does nothing despite this case to prevent residents, their children from taunting, harassing, assaulting me daily. I have to take paratransit and do chores. Complaint excerpts: 68. In July 2004, Mission Vista Apartments the harassment began. TMM Family Services Tucson owned these apartments that were constructed in this neighborhood in 1999 or 200_. These apartments were owned by and was a the main purpose of TMM Family Services Tucson to serve at-risk children and families; act as a catalyst for positive change; engage congregations of all kinds to expand community outreach; and develop new and create research for quality ministry. To this date, Apartment Finders, Rent Café and its own website advertises that it takes HUD vouchers and other subsidiary payments. Journals logs of Plaintiff Tigano and illustrations attached depict occurrences and individuals identified as known located in Mission Vista Apartments that engage in a continual pattern of harassment. "Constantly watching, surveying me, threatening me, defaming me, stalking following me to the store, harassing me, are jeers about my weight, my clothing, accusing me of being prostitute, pretentious, aloof." "Tresspassing on property, prowling, tipping over chairs, threatening with assault." "They say that they hate me so much they just want me to kill myself." "Two males have shaven heads of Mexican descent I believe 8 or 9 years." Teenager white male 12 long shorts on bike light brown fat ass, retard several times." Baggy shirts, baggy blue jean. Long hair female 16 they will shoot me where I stand." Larger groups standing on the property Mission Vista groups of older teens, young adults. I was sleeping 2018 on the couch and punched the kitchen window ring doorbell. I saw people running away but it was dark. I am a loser, not very bright. 70. Plaintiff Tigano states they call me a Jessup/Jessop constantly. The urban dictionary slang word defition. Jessup 1. (n.) A town in NE/Eastern Pensylvania (NEPA)-- near Scranton, Carbondale, and relatively close to Wilkes Barre. A town where the people get creepily involved with 'holidays' that involve getting sloshed and carrying weird-looking statues of saints that nobody's heard of up and down hills. The only other place in the world to hold SAN UBALDO DAY aside from Gubbio, Italy. A town where nobody uses proper grammar, and everyone talks like they're retarded.. " "Lets go to da Jessup ta pick up dem der Ubaldo Statues." https://www.urbandictionary.com/define.php?term=Jessup Jessop 1. An individual who cares not for relationships beyond the realm of the sexual, these people sleep with many partners not caring about anything save for the moment. Ex 1. 2. An individual that just cannot turn it libido off 3. Promiscuous man/ woman 4. Someone with the desire to engage in human sexual behavior at a level high enough to be considered clinically significant. A pervert ed or dirty Didn't go home alone again last night. What a jessop! Lee is tearing it up on the dance floor again, he won't leave those poor girls alone. He's such a filthy jessop!" https://www.urbandictionary.com/define.php?term=Jessop "They say they want to rape me the older males." "They say go home to the mental hospital that that is my home." Plaintiff Tigano did not even know what the slang terminology meant as this is a younger generation dialogue This evidences to doctors and family that they encounters she is enduring causing secondary trauma. 71. Plaintiff Tigano filed a HUD complaint as a disabled person, protected class on August 22 2019 (Exhibit U) for quid pro quo and was immediately dismissed by Paul Smith HUD Region IX August 27 2019 (August 27 2019) 6 days later without contacting Plaintiff Tigano, any acknowledgement, attempt at investigation. (Exhibits U and V). For years Elizabeth Tigano has been taunted, ridiculed as a handicapped person when coming and going to her home as well as while inside the home pestered incessantly by tweens, teens and young adults from low income housing Section 8 voucher Mission Vista Apartments. In 2011 neighbor threw a six week old cat at Plaintiff Bernstein's head killed cracking the skull of the kitten Suzanne . Exhausting measures letter writing, emails, phone calls requesting intervention by responsible parties to speak to the management of Mission Vista to investigate what children, individuals were doing these nuisance, harassment behaviors and put an end to the suffering of Plaintiff Tigano. Plaintiff Tigano learnt of the 81 FR 63054 Hostile Environment and Quid Pro Quo rule put into effect in 2016 and sought relief from HUD based on protected person status. Mission Vista Partners contacted Tucson Unified School District contacted December 11 2019 |
| *required* | |
| *required* | |
| *required* | |
| *required* | |
| *required* | |
| *required* | |
| *required* | |
| *required* | |
| *required* | |

5. The following persons should also be on this order. They should be protected because Defendant is a danger to them:

Anna Smith Fogltance                Birthdate: 05/__/194_

NOT AN OFFICIAL COURT DOCUMENT



6. Defendant <u>should be ordered to stay away from these locations at all times</u>, even when I am not present.
   NOTE: Do not list confidential addresses here.

   ☑ Residence     (confidential)

   ☐ Work         AZ

   ☐ School       AZ

   ☐ Other        AZ

   ☐ Business
   Name/Address (if
   workplace injunction)

7.   i. ☐ Defendant owns or carries a firearm or other weapons.
     ii. ☑ Defendant should be ordered NOT to possess firearms while this order is in effect because of the risk of harm to me or other protected persons.

8. ☐ Defendant should be ordered to stay away from any animal that is owned, possessed, leased, kept or held by me, Defendant, or a minor child living in either my household or Defendant's household.

Other requests:
9.

The residents to refrain from harassing me, intimidating me calling me names. 68. In July 2004, Mission Vista Apartments the harassment began. TMM Family Services Tucson owned these apartments that were constructed in this neighborhood in 1999 or 2000. These apartments were owned by and was a the main purpose of TMM Family Services Tucson to serve at risk children and families; act as a catalyst for positive change; engage congregations of all kinds to expand community outreach; and develop

Under penalty of perjury, I swear or affirm the above statements are true to the best of my knowledge. I request an order or an injunction granting relief as allowed by law.

/s/ Tigard, Elizabeth

Plaintiff                                    Attest: _____

                                             Judicial Officer/Clerk/Notary          Date

Effective: 1/1/2020                          Adopted by Administrative Directive 2019-10







**The Coronavirus Crisis**

# How We'll Know When The COVID-19 Crisis Is Over

JULY 10, 2021 · 8:04 AM ET

 Laurel Wamsley



People relax at the Georgetown Waterfront Park on Monday in Washington, D.C. While pandemic restrictions have been lifted for much of the U.S., the delta variant of the coronavirus is hospitalizing thousands of people in the U.S. who have so far not gotten vaccinated.
*Tasos Katopodis/Getty Images*

In many ways, American life is returning to normalcy: Masks are no longer required in many locations, schools and universities are slated to reopen and the days of social distancing have begun to fade as concerts and sporting events bring spectators back.

The U.S. is now averaging 154 deaths a day from COVID-19 — a tiny fraction compared with the coronavirus pandemic's peak — and some safety measures and restrictions are still in place. Late pandemic American life hasn't quite returned to the status quo, but it feels much closer to normal than it did six months ago.

Sponsor Message

But while we may long for authorities to give an all-clear and say the pandemic is history, the crisis isn't over, in the U.S. or abroad.

The question of *when* the crisis will be over is a layered one — with different answers from local, national and global perspectives.

## There are no set-in-stone metrics for when it's over

The U.S. declared the coronavirus a public health emergency in January 2020.

After many months in which the U.S. led the world in coronavirus cases, the virus is now under much better control due to wide availability of COVID-19 vaccines.

That federal emergency status is still in effect — it has been renewed several times, most recently in April. It can be extended by the secretary of health and human services for as long as the emergency is deemed to exist.



Health care workers, first responders and essential workers are honored for their service during the COVID-19 pandemic at the Hometown Heroes ticker tape parade in Manhattan on Wednesday.
*Newsday LLC/Newsday via Getty Images*

It's not clear whether the Centers for Disease Control and Prevention will issue any sort of all-clear. The CDC did not respond to NPR on the matter.

Ali Mokdad, an epidemiologist at the University of Washington, hopes that the CDC will eventually give Americans that go-ahead sign. He previously served in numerous roles over nearly 20 years at the CDC.

When the time comes, Mokdad tells NPR, "it's very important for our own CDC ... to say, 'We're out of danger right now. We should move on with our lives.' "

Sponsor Message

He says there aren't set-in-stone metrics to determine when a pandemic is over because such situations are dynamic and change so fast. And the coronavirus itself is evolving too.

"When you look at the genetic makeup and sequencing of the virus ... and how it has been changing, there's still a lot of room for it to mutate. It's not at the end of the mutation cycle that it can do. So that virus could still carry a lot of surprises," he says.



The Foo Fighters reopened Madison Square Garden last month in New York City. The concert, with all attendees vaccinated, was the first in a New York arena to be held at full capacity since March 2020.
*Kevin Mazur/Getty Images for FF*

## How a pandemic officially ends

The World Health Organization declared COVID-19 a pandemic on March 11 of last year — the same day that life began to change dramatically in much of the United States.

So when the virus eventually is under control, will the WHO declare the pandemic over?

Basically, yes.

When the worldwide spread of COVID-19 stops, it will no longer be considered a pandemic. "In general, if the worldwide spread of a disease is brought under control to a localized area, we can say that it is no longer a pandemic but, instead, an epidemic," the WHO told NPR.

But it emphasized that the characterization of the outbreak as a *pandemic* has no formal meaning under international law.

 **THE CORONAVIRUS CRISIS**
**March 11, 2020: The Day Everything Changed**

What *does* have a formal meaning is a "public health emergency of international concern" — a status assigned to COVID-19 at the end of January 2020. That's the highest level of health alarm under international law.

The WHO convenes an international committee every three months to determine if an outbreak should still be considered such a global health emergency. When it's over, the WHO says it's over. That's what it did last summer regarding an Ebola outbreak in Africa.

But it will most likely be a while before that happens with COVID-19.

As WHO Director-General Tedros Adhanom Ghebreyesus frequently states: "None of us will be safe until everyone is safe."

Sponsor Message

**The U.S. is not out of the woods yet**

The delta variant has spread just as fast through the U.S. as epidemiologists feared it would. It now accounts for more than half the cases in the U.S. and far more than that in certain states.



**CORONAVIRUS UPDATES**

**Delta Is Now The Dominant Coronavirus Variant In The U.S.**

Lynn Goldman, an epidemiologist and the dean of the school of public health at George Washington University, says the U.S. has certain things working for it — and some against it.

The good news is we've shown the ability to lower rates of transmission and deaths from the virus. And of course, Americans have widespread access to COVID-19 vaccines.

The bad news is there's resistance to the two main ways to prevent transmission — getting vaccinated and wearing a mask.



**SHOTS - HEALTH NEWS**

**Where Are The Newest COVID Hot Spots? Mostly Places With Low Vaccination Rates**

"And unfortunately, those two attributes tend to coincide within the same people and within the same population subgroups," Goldman says. In other words, many of the same people who don't want to get a vaccine also don't want to wear a mask.

As a result, Goldman says, we're likely to see continued transmission of the virus in the U.S., concentrated in the areas with lowest rates of vaccination.

The current vaccines are highly effective against COVID-19, including the delta variant. That means vastly different outcomes for those who are vaccinated and those who aren't. Last month, for example, 92 people died of COVID-19 in Maryland. All of them were unvaccinated.

## Local numbers can tell you more than state or national ones



Graduates participate in a University of Southern California commencement ceremony at the Los Angeles Memorial Coliseum in May.
*Al Seib/Los Angeles Times via Getty Images*

The most precise indicators of progress or problems are very local.

National and even state-level metrics for infection or vaccination rates can be misleading, Mokdad says. A state's overall vaccination rate can disguise much lower numbers in certain pockets that remain highly vulnerable to outbreaks.

Low vaccination rates make it easier for fast-spreading variants to take hold.

Sponsor Message

While there are many ways to track progress (or not) in controlling the virus, Mokdad says one especially useful metric is hospitalizations.

"There is no way to make a mistake or underreport hospitalization for COVID-19, because everybody who goes to a hospital right now is being tested for COVID-19," says Mokdad.



**SHOTS - HEALTH NEWS**
**How Is The COVID-19 Vaccination Campaign Going In Your State?**

That's in contrast to the number of cases, which can go uncounted because of a lack of testing, and the number of deaths, which can spike weeks behind other indicators when an outbreak hits.



Accompanied by his family, a student gets vaccinated at a pop-up COVID-19 vaccination clinic on Tuesday in Winnetka, Calif.
*Mario Tama/Getty Images*

### The coronavirus will likely spike again this winter

Even though U.S. cases are very much down from their peak, unvaccinated people will continue to die from COVID-19 until we successfully control transmission.

Experts say the next big challenge will come this winter. Another wave is expected as people move inside during colder months. There will likely be some outbreaks as students go back to school — children under 12 are not yet eligible for the vaccines.

How dangerous the virus continues to be will depend on vaccination levels of the population and the lethality of the variant that's circulating when winter comes. How quickly a state or local government is willing to go back into restrictive measures — like wearing masks indoors — will play a role too.

"For the short term, it will be seasonal, like what we see with the flu, simply because we don't have enough vaccine to vaccinate everybody in the world," Mokdad says.

If we do the right things, like increasing production of the vaccine, he says, it's possible we eventually won't have to worry about COVID-19 anymore.

### What the end of the crisis might look like in the U.S.

Goldman sees two possible scenarios for the U.S. in the near future.

One is that the virus evolves to more readily evade the vaccines that have been administered.

Sponsor Message

If that happens, she says, "then we'll have to go into a whole other round of revaccinating everybody." Drugmakers are already working on booster shots in case they become necessary.

On the other hand, that might not happen, and the current vaccines will continue to be highly effective.

In that case, Goldman believes that within the next several months, "we'll see *near* elimination of the pandemic, certainly in the United States and Europe, other wealthy countries, Japan, Taiwan," while efforts will continue to immunize people in the rest of the world.

It's very likely, Goldman says, that even when we can say the pandemic is over, transmission will continue in parts of the U.S. that have low rates of vaccination.

But one thing is clear: No matter what happens, the effects of the pandemic — including long COVID, mental health issues and economic fallout — won't end when the official emergency does.

### Clarification

**July 12, 2021**

An earlier version of this story said the national emergency for COVID-19 that was declared on March 13, 2020, has been renewed several times. In fact, it is the *public health* emergency that was declared in January 2020 that has been renewed several times.

coronavirus    covid-19



# Sign up for NPR's Up First newsletter.

The news you need to start your day. Nothing more, never less.

| Email address | SUBSCRIBE |
|---|---|

<u>See more subscription options</u>

By subscribing, you acknowledge and agree to NPR's Terms of Use and Privacy Policy.
NPR may share your name and email address with your NPR station. See Details.

## More Stories From NPR



**CORONAVIRUS UPDATES**

## CDC cuts the recommended isolation and quarantine periods for coronavirus infections



**THE CORONAVIRUS CRISIS**

## These numbers show just how impactful the latest COVID-19 surge is



**SHOTS - HEALTH NEWS**

## With omicron, you need a mask that means business



CONSIDER THIS FROM NPR

## Are We Ready for Another COVID Surge?



SHOTS - HEALTH NEWS

## Omicron boosters: Do I need one, and if so, when?



SHOTS - HEALTH NEWS

## Summer boosters for people under 50 shelved in favor of updated boosters in the fall

## Popular on NPR.org



LAW

**The Menendez brothers' murder case is getting a fresh look. Here's why**



NATIONAL

**A coal power plant demolition serves as a poignant historical moment for the Navajo**



TREATMENTS

**A controversial but effective treatment for meth addiction gains ground**



BUSINESS

**23andMe is on the brink. What happens to all its DNA data?**



MIDDLE EAST CRISIS — EXPLAINED

**Satellite images show dozens of Iranian missiles struck near Israeli air base**



NATIONAL

**The historic Biltmore Estate, an Asheville icon, works to recover from Helene damage**

## NPR Editors' Picks



U.S. ELECTIONS EXPLAINED

**Can someone find out who you voted for? No. Here is what you should know**



ANIMALS

**Why Massachusetts loves Nibi the beaver and is fighting to keep her out of the wild**



SIMON SAYS

**Opinion: Political texts are pinging off the rails**



How We'll Know When The COVID-19 Crisis Is Over : NPR

POP CULTURE HAPPY HOUR

## This horror genre is scary as folk – and perfect October viewing



POLITICS

## Trump is returning to Butler, the site of the 1st assassination attempt against him



LIFE KIT

## The tricky etiquette of parenting in public

### The Coronavirus Crisis

READ & LISTEN

**Home**

**News**

**Culture**

**Music**

CONNECT

**Newsletters**

**Facebook**

**Instagram**

**Press**

**Podcasts & Shows**

**Public Editor**

**Corrections**

**Contact & Help**

ABOUT NPR

GET INVOLVED

**Overview**

**Support Public Radio**

**Diversity**

**Sponsor NPR**

**NPR Network**

**NPR Careers**

**Accessibility**

**NPR Shop**

**Ethics**

**NPR Events**

**Finances**

**NPR Extra**

terms of use

privacy

your privacy choices

text only

© 2024 npr

EXHIBIT J

Jesus Prays for His Disciples

6 "I have revealed you[a] to those whom you gave me out of the world. They were yours; you gave them to me and they have obeyed your word. 7 Now they know that everything you have given me comes from you. 8 For I gave them the words you gave me and they accepted them. They knew with certainty that I came from you, and they believed that you sent me. 9 I pray for them. I am not praying for the world, but for those you have given me, for they are yours. 10 All I have is yours, and all you have is mine. And glory has come to me through them. 11 I will remain in the world no longer, but they are still in the world, and I am coming to you. Holy Father, protect them by the power of[b] your name, the name you gave me, so that they may be one as we are one. 12 While I was with them, I protected them and kept them safe by[c] that name you gave me. None has been lost except the one doomed to destruction so that Scripture would be fulfilled.

13 "I am coming to you now, but I say these things while I am still in the world, so that they may have the full measure of my joy within them. 14 I have given them your word and the world has hated them, for they are not of the world any more than I am of the world. 15 My prayer is not that you take them out of the world but that you protect them from the evil one. 16 They are not of the world, even as I am not of it. 17 Sanctify them by[d] the truth; your word is truth. 18 As you sent me into the world, I have sent them into the world. 19 For them I sanctify myself, that they too may be truly sanctified.

1  **MARY HELEN BERNSTEIN, MSAJS**
   **3416 Deerwood Terrace, #113**
2  **Fremont, CA  94536**
   **Email:** mbernsteinpurple@hotmail.com
3  **(510) 938-6280**
   **Plaintiff Pro Se**
4

5              **SUPERIOR COURT OF CALIFORNIA**

6              **COUNTY OF ALAMEDA**

7
   MARY HELEN BERNSTEIN,                    Case No.   HG18897381
8
           Plaintiff,                       **DECLARATION OF MARY**
9                                           **BERNSTEIN IN SUPPORT OF**
           vs.                              **MOTION TO STRIKE TAX COSTS**
10                                          **OPPOSITION TO MOTION FOR**
   ASSOCIA NORTHERN CALIFORNIA, et          **ATTORNEY FEES AND**
11  al.,                                    **OBJECTION TO** MEMORANDUM
                                            OF COSTS **ASSOCIA NORTHERN**
12         Defendants.                      **CALIFORNIA, MASSINGHAM,**
                                            **MEADOW BROOK VILLAGE**
13                                          **ASSOCIATION – FREMONT AND**
                                            **IN SUPPORT OF REPLY IN**
14                                          **SUPPORT OF MOTION TO STRIKE**
                                            **TAX COSTS** [1]
15
16                                          Date: April 2, 2024
                                            Time: 2:30 pm
17                                          Dept.: 517

18
19
20
21
22
23
24
25
26
27  _____
    [1] *So do not fear, for I am with you;*
28  *    do not be dismayed, for I am your God.*
    *I will strengthen you and help you;    I will uphold you with my righteous right hand.* **Isaiah 41:10**
    DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
    OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
    BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

                              - 1 -



Oceanside California Mary and baby brother Frankie in the homeless shelter playpen. Frankie Oceanside California 1980-1982.



This Week on the Bible Bus

I, Mary Bernstein, declare:

1. I am the plaintiff in this matter. I am familiar with all of the pleadings and documents filed in this case as well as discovery. His blood redeems us. There was a price against us that we could not pay, but the blood of Jesus redeemed us. 1 Peter 1:18-19 says, "Forasmuch as ye know that ye were not redeemed with corruptible things.... But with the precious blood of Christ, as of a lamb without blemish and without spot." His blood brings us into fellowship with God.

2. Attached as Exhibit A is a true and correct copy of Judgment against retained attonrey Kevin Horan for reimbursement of retainer Alameda County Superior Court $10,120.00 executed by Chad Finke September 30, 2019. This attorney is no longer allowed to practice complaint filed with State Bar of California. Notice to Consumers.

3. Attached as Exhibit B Notice of Motion Motion for Order Striking and Reducing Costs filed by Plaintiff Mary Bernstein August 18, 2023 with attachments

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

4.  Attacued as Exhibit C Court Order January 31 21024 Keith Fong prohibition of filings until Case Management Confernece held.  No filings allowed in matter until Case Management Conference held in case. Threat of sanctions or striking.  Order of Recusal, Case Reassignent.

5.  Attached as Exhibit D Ruling on Submitted matter Eumi Lee 5 16 2022.

6.  Attached as Exhibit E Judgment Eumi Lee proposed submitted by Defendants Plaintiff take nothing from Defendants language.

7.  Attached as Exhibit F Limited Scope Kevin Horan disbarred attorney filed March 28 2018.

8.  Attached as Exhibit G Notice of Intent to Appear by Telephone March 22 2018 Mary Bernstein.

9.  Attached as Exhbiit H Notice of Intent to Appear by Telephone April 3 2018 Kevin Horan.

10. Attached as Exhibit I Acknolwedgement of Satnfaction of Judgment Kevin Horan Conservatorship January 17, 2020..

11. Attached as Exhibit J Noice of Entry of Judgment malpractice re Kevin Horan disbarred attorney.Tamiza Hockenhull 8 29 2019

12. Attached as Exhbiit K Complaint Preliminary dfisbatred attonrey Kevin Horan representation filed March 19 2018

13. Attached as Exhibit L Redacted combined cases bills McNamara Farmers legal invoices subject of Corporate Entities Defendants Associa Northernn California, Massingham & Meadow Brook.  HOA is one corporate defendant Davis Sterling; Associa/Massingham are property managers not CCR Davis Sterling.

14. On April 25 2024 Table of collection 12 separate attempts totalling exceeding amount attempt to obtain 11 times more the amount $63,9405.84 plus atorneys fees and costs.
    Is this being done to any other homeowners or are they attempting to more than double bill
    12
    bill




DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 3 -

15. The firm of Harsuyker, Stratman & Williams Abrego flied an Answer on behaf of Meadow Brook Village Association – Fremont and Notice of Association of Counsel on April 26, 2018. Richard A. Fong, Jr. had been the attorney for the defendants and substituted out May 24, 2018. Harsuyker, Stratman & Williams Abrego filed an an answer additionally on behalf of Associa Noarther California on May 7, 2018. An Amemded Answer was filed without leave and untimely on June 4, 2018 additionally answered on bhealf of Massighman and Associates. Robert Maltz was representing these dedendants. Default was entered on behalf of Massigham &Assocates at Plaintiff;s request on June 15, 2018.

16. McNamara, Ney, Beatty, Slattery, Burgess & Ambacher Association of Attrneys filed 12 11 2018. McNamara, Ney, Beatty, Slattery, Burgess & Ambacher Luanne Rutherford requested copies of pleadings in this matter in an email on 1 2 2019 and began represstning various Defendants in multiple matters of mine HUD, DFEH, Department of Justice and therafter civil harassment orders 1 2 2019. Memrandum of Costs filed lists various attorney services First Legal legal research and Pacific Coast prepatrtion of filings. There are no dates for blocked batched listings of filings prepared. This appears to be duplicative entries with attorney time. Plaintiff only learnt of these additional firms when receving Memorndum of Costs.

17. Fraudulent, mespresentation billings for instance 1.2 telephone call to limited scope attornes whidh never occurred, motion for lavee to amend opposition which was not done until 2 years later, entries attributed to mutipe matters not relevaant to this summary judgment. Billings listed for entire case as opposed to solely summary judgment costs and fees.

18. No depositions were used in summary judgment motion. There were omly 3 taken and they were of a homeowner and two proerty management firm employees. The subject matter of the depoaitrion was not related at all to the summary judmgent motion or enforcement of cc&rs. The Decclaration of Luanne Rutherford August 6 2021 does not utilize any of therse exhibits or refer to portions of depostion testimony.

19. I only saw invoices for the **first time March 20 2024 filed by McNamra in opposition to motion to tax strike cssts I filed.** Therefore I coiuld file no declaration or challenge invoices as it was simply a chart with no dates and amonts, I am a non attorney and used the form to file to contest the costs memorandum.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 4 -

UNTIMELY FILED DISCUSS IN THIS, REPLY AND OPPOSITION DATE CALCULATOR
THIS IS IMPERATIVE THAT I HAVE TIME TO DO THOROUGH ANALYSIS AND
PREPARATION FOR THE HOA SEEKING NOT ONLY UNJUST EMERGENCY
ASSESSMENT $39,000+ BUT NOW COSTS IN THE AMOUNT OF $19,262.00 AND
ATTORNEY FEES IN THE AMOUNT OF $88,134.75 PERSONAL INJURY MATTER
THIS COURT CONSTANT PREDETERMINED OUTCOME TO DENY ALL MOTIONS
RELIEF TO PLAINTIFF, DEPT 517 NOW RESTRICTING ALL MOTION FILINGS WITHOUT
LEAVE TO PLAINTIFF; HOWEVER ALLOWANCE OF MOTIONS TO BE FILED BY
DEFENDANTS  3 5 2024 SCATHING ORDER FOR SANCTIONS AND RESTRICTIONS THIS
JUDGE HAS A HUSBAND MANY YEARS CHRIS SCOTT, I HAVE A HUSBAND OF MANY
YEARS TERMINALLY ILL THAT WE ARE FACING HOMELESSSNESS DUE TO
PREDATORY DISPLACEMENT BY HOA PERSONAL INJURY ACTION.  I WOULD THINK
THAT KEITH FONG WOULD WANT TO PROTECT HIS HUSBAND IF FACING SUCH A
SITUATION HOMELESSNESS IN ILL HEALTH AS WELL DURING FINAL PERIOD OF
LIFE.

- BILLINGS FRAUDULENT COSTS NO DATES SIMPLY A SPREADSHEET  THIRD
  PARTY ATTORNEY NOT EVEN A MCNAMARA EMPLOYEE LISTED
- On a court ordered stay wherein no work by any parties to be done on this matter until stay
  lifted April 11 2019 – November 2020.
- Billing entries from separate matters that are not related to HG18897381, Defendants
  atttempt to lump in with this judgment.
- Not certain if some of these entries even relate to this matter for example: 2 20 2019 "receipt
  and review Plaintiff's recorded statement." No such recorded statement exists in this matter.

Plaintiff has had to request fee waivers to continue in case desperately trying to save home against
predatory displacement this -- this HOA has attempted to render us homeless, coerce out since 2018
aggressive this Court has permitted   disabled family that has never missed a payment this HOA
atttemptign to bankrupt us from the beginning

Because a homeowner questions illegal emergency assessment with no proof out of funds, unable to
make reserves, deponents stating Meadow Brook never out of funds, refusal of HOA to avail bank
records to demonstrate

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

Davis Sterling HOA not created for this type of abuses with no recourse, no representation abuses violations of disabled

## $11,828 IN FILING FEES??? FRAUD

| Filing (Efiling fax filing costs not authorized only filing fees) | Filing Fee (Filing Fees $60 with the exception of MSJ) | Pay To | Invoice # |
|---|---|---|---|
| Filing - Answer to Complaint; Notice of Asociation | $616.71 | PACIFIC COAST LEGAL | 483470 |
| Filing - Sub of atty | $30.00 | PACIFIC COAST LEGAL SERVICES, INC | 484508 |
| Filing - Motion to Quash | $541.75 | PACIFIC COAST LEGAL SERVICES, INC | 486261 |
| Filing - notice to set aside default | $120.58 | PACIFIC COAST LEGAL SERVICES, INC | 488077 |
| Filing - opp, dec | $84.72 | PACIFIC COAST LEGAL SERVICES, INC | 490401 |
| Filing - Supp dec to P's mnotion to compel | $75.00 | PACIFIC COAST LEGAL SERVICES, INC | 490473 |
| Filing - Disassoc of atty | $45.00 | PACIFIC COAST LEGAL SERVICES, INC | 504337 |
| Filing - Notice of entry of judgment | $47.70 | PACIFIC COAST LEGAL SERVICES, INC | 514354 |
| Filing - D's opp to P's M leave to amend the complaint | $47.70 | PACIFIC COAST LEGAL | 517216 |
| Filing - Reply x2 | $37.33 | FIRST LEGAL NETWORK LLC | 20173044/ 7757157 |
| Filing - oppostion to Motion to Stay Case | $58.33 | FIRST LEGAL NETWORK LLC | 10410123 |
| Filing - Motion for Summary Judgement | $424.03 | FIRST LEGAL NETWORK LLC | 10422345 |
| Filing - Opp to Protective Order | $35.00 | FIRST LEGAL NETWORK LLC | 10426015 |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 6 -

| Filing - Advance Fees | $1,476.98 | FIRST LEGAL NETWORK LLC | 10434779 |
|---|---|---|---|
| Filing - Motion to Strike | $125.82 | FIRST LEGAL NETWORK LLC | 10434781 |
| Filing - Advance fees | $666.99 | FIRST LEGAL NETWORK LLC | 10434782 |
| Filing - 10 Docs | $361.38 | FIRST LEGAL NETWORK LLC | 10447372 |
| Filing - Motion to Strike - Fees Advanced | $467.00 | FIRST LEGAL NETWORK LLC | 10450811 |
| Filing - Fees Advanced - MSA/DEC/PO/POS/MPA | $1,377.15 | FIRST LEGAL NETWORK LLC | 10450809 |
| Filing - Objection to Plaintiff's request | $32.95 | FIRST LEGAL NETWORK LLC | hjj10450813 |
| Filing - Dec of Lunanne Rutherford | $909.95 | FIRST LEGAL NETWORK LLC | 10454760 |
| Filing - D's Notice of Nonopposition | $32.95 | FIRST LEGAL NETWORK LLC | 10454761 |

| Filing - D's Notice of Nonopposition | $32.95 | FIRST LEGAL NETWORK LLC | 10454762 |
|---|---|---|---|
| Filing MSJ reply brief | $123.50 | FIRST LEGAL NETWORK LLC | 10458470 |
| Filing - electronic submission | $39.95 | FIRST LEGAL NETWORK LLC | 10458469 |
| Filing - Fees Advanced - Memorandum of Points and Authorities | $986.15 | FIRST LEGAL NETWORK LLC | 10466546 |
| Filing - Oppostion to Disqualify Judge | $63.14 | FIRST LEGAL NETWORK LLC | 10418066 |
| Filing - Demurrer with MTS | $6.75 | FIRST LEGAL NETWORK LLC | 10477851 |
| Filing - oppostion | $40.45 | FIRST LEGAL NETWORK LLC | 10477852 |
| Filing - D's Notice of Nonopposition | $40.45 | FIRST LEGAL NETWORK LLC | 10477850 |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 7 -

| Filing - Case management statement | $40.45 | FIRST LEGAL NETWORK LLC | 10482670 |
|---|---|---|---|
| Filing - MTS - Fees advanced | $540.65 | FIRST LEGAL NETWORK LLC | 10482658 |
| Filing - D's Notice of Nonopposition | $31.95 | FIRST LEGAL NETWORK LLC | 10487787 |
| Filing - Notice of Change of Firm Name | $23.20 | FIRST LEGAL NETWORK LLC | 10487799 |
| Filing - D's Notice of Nonopposition | $40.45 | FIRST LEGAL NETWORK LLC | 10487793 |
| Filing - Case management statement | $40.45 | FIRST LEGAL NETWORK LLC | 10493027 |
| Filing - Demurrer with MTS - Fees Advanced | $165.65 | FIRST LEGAL NETWORK LLC | 10506276 |
| Filing - Reply Briefs | $31.95 | FIRST LEGAL NETWORK LLC | 10511416 |
| Filing - MTS - Fees advanced | $542.65 | FIRST LEGAL NETWORK LLC | 10515918 |
| Filing - D's Reply Brief in Support | $31.95 | FIRST LEGAL NETWORK LLC | 10515917 |
| Filing - MTS - Fees advanced | $90.25 | FIRST LEGAL NETWORK LLC | 20273542 |
| Filing - Stip of the parties to Extend - Fees advanced | $901.95 | FIRST LEGAL NETWORK LLC | 20273541 |
| Filing - stip - order | $42.70 | FIRST LEGAL NETWORK LLC | 20273543 |
| Filing - Oppsition Dec | $110.75 | FIRST LEGAL NETWORK LLC | 20275488 |
| Filing - Amended CMC Statement | $90.25 | FIRST LEGAL NETWORK LLC | 20275493 |

| Filing - D's Opposition to P | $31.95 | FIRST LEGAL NETWORK LLC | 20275487 |
|---|---|---|---|
| Filing - CM Statement | $61.90 | FIRST LEGAL NETWORK LLC | 20275492 |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 8 -

| Filing - Dec of Andrew S. Elliott | $31.95 | FIRST LEGAL NETWORK LLC | 20276065 |
|---|---|---|---|
| Filing - Opp; Dec | $28.80 | FIRST LEGAL NETWORK LLC | 20276066 |

TOTAL:                                    $11,828.21

# DECLARATION IN SUPPORT OF REPLY MOTION TO STRIKE COSTS



Plaintiff has not filed anything in this case due to medical leave and scathing threats from this Department 517 denial reasonable accommodations.  See Order above not allowed to file anythying without leave of court.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 9 -



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>



## MEMORANDUM OF POINTS AND AUTHORITIES

Jesus blood redeems us. There was a price against us that we could not pay, but the blood of Jesus redeemed us. 1 Peter 1:18-19 says, "Forasmuch as ye know that ye were not redeemed with corruptible things.... But with the precious blood of Christ, as of a lamb without blemish and

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 11 -

1   without spot." His blood brings us into fellowship with God. The blood of Jesus, his sacrifice for
2   me protects me in all situations. The blood of Jesus has kept me going in this housing crisis all that
    he has done for me. I am standing on his word. The Lord is what has provided sustenance and
3   protection to me during this horrific time as a disabled woman in court fighting against concentrated
4   power in an HOA determined to steal home from homeowner that has never missed a payment.[2]
    Plaintiff Mary Bernstein will and hereby does move, once again in this Reply pursuant to rule
5   3.1700(b) of the California Rules of Court, for an order striking Defendants ASSOCIA
    NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT,
6   AND MASSINGHAM & ASSOCIATES' Corporate Entity Defendants ("CED") Memorandum of
    Costs dated August 14, 2023, or in the alternative, for an order taxing costs.
7   CED's costs memorandum is untimely because it was not filed and served within the
8   mandatory time period established by rule 3.1700(a) of the Rules of Court. CED's have therefore
    waived any right to recover costs, and the <u>Court should strike the Memorandum in its entirety</u>. If
9   the Court declines to strike the Memorandum in its entirety, the Court should nevertheless
    tax several categories of costs that are specifically excluded by Code of Civil Procedure ("CCP")
10  section 1033.5(b). The Court should also tax several other categories of costs that CED seek on
11  the ground that such costs were not reasonably necessary to the conduct of the litigation—at
    most they merely served CED's convenience—and therefore are not recoverable, and/or that the

12
13  [2]  What can wash away my sin?
    Nothing but the blood of Jesus;
    What can make me whole again?
    Nothing but the blood of Jesus.
14  Refrain:
    Oh! precious is the flow
15  That makes me white as snow;
    No other fount I know,
16  Nothing but the blood of Jesus.
    For my pardon, this I see,
17  Nothing but the blood of Jesus;
    For my cleansing this my plea,
18  Nothing but the blood of Jesus.
    Nothing can for sin atone,
19  Nothing but the blood of Jesus;
    Naught of good that I have done,
    Nothing but the blood of Jesus.
20  This is all my hope and peace,
    Nothing but the blood of Jesus;
21  This is all my righteousness,
    Nothing but the blood of Jesus.
22  Now by this I'll overcome—
    Nothing but the blood of Jesus;
23  Now by this I'll reach my home—
    Nothing but the blood of Jesus.
24  Glory! Glory! This I sing—
    Nothing but the blood of Jesus,
    All my praise for this I bring—
25  Nothing but the blood of Jesus.

26  *Psalm 118:6*
    *The Lord is on my side; I will not fear. What can man do to me?*
27
    *Psalm 108:13*
28  *With God we shall do valiantly; it is he who will tread down our foes.*
    DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
    OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
    BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 12 -

1  costs are claimed in an unreasonable amount.  Specifically, the following costs should be
   stricken:
2  a. Item 1g Excessive and Misrepresented/Fraudulent Filing Fees – Efiling/fax filing fees are not
   recoverable through third party vendor - $11,828. There are no dates rather bundled, fraudulent
3  misrepresentation filing fees.  California motion fees $60.00 for standard motion fees.  There is
   no fee for substitution of non opposition attorney filing. Glumped together "10 documents" could
4  be any case whatsoever.  The boilerplate line item entries for filing costs
5  are insufficient to establish that any and every portion of such costs was reasonably
   necessary to the conduct of the litigation and/or reasonable in amount under CCP section §§
6  1033.5(c) (2), (c ) (3) (c ) (4 ) (c) (5)    Not reasonably necessary to the conduct of the litigation
   and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3) (c ) (4 ) (c) (5). [3]
7

8  [3]  Outrageous fraudulent costs discrepancies:
   Filing - Supp dec to P's mnotion to compel $75.00 PACIFIC COAST LEGAL SERVICES, INC
9  Filing - Disassoc of atty $45.00 PACIFIC COAST LEGAL SERVICES, INC
   Filing - Notice of entry of judgment $47.70 PACIFIC COAST LEGAL SERVICES, INC
   Filing - D's opp to P's M leave to amend the
10 complaint $47.70 PACIFIC COAST LEGAL SERVICES, INC
   Filing - Reply x2 $37.33 FIRST LEGAL NETWORK LLC
11 Filing - opposition to Motion to Stay Case $58.33 FIRST LEGAL NETWORK LLC
   Filing - Motion for Summary Judgement $424.03 FIRST LEGAL NETWORK LLC
12 Filing - Opp to Protective Order $35.00 FIRST LEGAL NETWORK LLC
   Filing - Advance Fees $1,476.98 FIRST LEGAL NETWORK LLC
13 Filing - Motion to Strike $125.82 FIRST LEGAL NETWORK LLC
   Filing - Advance fees $666.99 FIRST LEGAL NETWORK LLC
   **Filing - 10 Docs $361.38 FIRST LEGAL NETWORK LLC**
14 Filing - Motion to Strike - Fees Advanced $467.00 FIRST LEGAL NETWORK LLC
   Filing - Fees Advanced - MSA/DEC/PO/POS/MPA $1,377.15 FIRST LEGAL NETWORK LLC
15 Filing - Objection to Plaintiff's request $32.95 FIRST LEGAL NETWORK LLC
   Filing - Dec of Lunanne Rutherford $909.95 FIRST LEGAL NETWORK LLC
16 Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC
   Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC
17 Filing MSJ reply brief $123.50 FIRST LEGAL NETWORK LLC
   Filing - electronic submission $39.95 FIRST LEGAL NETWORK LLC
18 Filing - Fees Advanced - Memorandum of Points
   and Authorities $986.15 FIRST LEGAL NETWORK LLC
19 Filing - Opposition to Disqualify Judge $63.14 FIRST LEGAL NETWORK LLC
   Filing - Demurrer with MTS $6.75 FIRST LEGAL NETWORK LLC
   Filing - opposition $40.45 FIRST LEGAL NETWORK LLC
20 Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC
   Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC
21 Filing - MTS - Fees advanced $540.65 FIRST LEGAL NETWORK LLC
   Filing - D's Notice of Nonopposition $31.95 FIRST LEGAL NETWORK LLC
22 Filing - Notice of Change of Firm Name $23.20 FIRST LEGAL NETWORK LLC
   Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC
23 Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC
   Filing - Demurrer with MTS - Fees Advanced $165.65 FIRST LEGAL NETWORK LLC
24 Filing - Reply Briefs $31.95 FIRST LEGAL NETWORK LLC
   Filing - MTS - Fees advanced $542.65 FIRST LEGAL NETWORK LLC
25 Filing - D's Reply Brief in Support $31.95 FIRST LEGAL NETWORK LLC
   Filing - MTS - Fees advanced $90.25 FIRST LEGAL NETWORK LLC
26 Filing - Stip of the parties to Extend - Fees advanced $901.95 FIRST LEGAL NETWORK LLC
   Filing - stip - order $42.70 FIRST LEGAL NETWORK LLC
27 Filing - Oppsition Dec $110.75 FIRST LEGAL NETWORK LLC
   Filing - Amended CMC Statement $90.25 FIRST LEGAL NETWORK LLC
   Filing - D's Opposition to P $31.95 FIRST LEGAL NETWORK LLC
28 Filing    CM Statement $61.90 FIRST LEGAL NETWORK LLC
   DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
   OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
   BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 13 -

- Court attempting to rubber stamp Eumi Lee; Keith Fong despite exclusions and discrepancies
- Court ordered Electronic service was ordered by Paul Herbert – due to not receiving copies of documents claimed
- No invoices were provided dates, itemized when submitted simply vague list in bundles questionable.  Fraudulent Andrew Elliot third party not an attorney with McNamara. Elaborate Discrepancies third party e filing, fax filing costs not recoverable as there is not a provision.  Motion fees are $60.00; initial pleading $435.00 and motion for summary judgment $500.00.  There are no filing fees for substitutions of attorney; withdrawal of attorneys, Case Management Conference Statements filed, oppositions or replies. Misrepresentations fraudulent billings, inconsistent amounts.  Ghost filings not filed on dates.  Will be reporting to State Bar of California attempts to exploit disabled grandmother on social security disability attempting to save home, senior non attorney

b. Item11Bates Model - $685.  Not court ordered.  Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(a) (13), (c ) (2).

c. Item 4 Deposition Transcripts Non HOA Deponents - $1484.  Costs related to transcripts not ordered by the Court are excluded by statute (see §1033.5(b) (5).  Not court ordered Transcripts.[4]

d. Item 16 Expert Fees - $5265.  The boilerplate line item entries for expert costs are insufficient to establish that any and every portion of such costs was reasonably necessary to the conduct of the litigation and/or reasonable in amount.  Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3). These expert fees were not court ordered.[5]  Not court ordered Experts.

This Reply is based upon: (1) this Reply and the Motion to Strike Tax Costs (2) the accompanying Memorandum of Points and Authorities; (3) the accompanying Declarations of Mary Bernstein and Elizabeth Tigano; and (4) any other evidence and argument as may be presented at or before the hearing on this Motion.

## I.   INTRODUCTION

CED's memorandum of costs -was untimely filed and should therefore be stricken or denied in its entirety. Rule 3.1700 of the Rules of Court provides that memoranda of costs must be filed and served "within 15 days after the date of service of the notice of entry of judgment ... by the clerk." Unless CED were to bring and prevail upon a motion for relief from the 15-day deadline based upon some "mistake, inadvertence, surprise, or excusable neglect" to excuse their untimely filing (Code Civ. Proc., 473, subd. (b)), the Court should decline to award them any of their

---

Filing     Dec of Andrew S. Elliott $31.95 FIRST LEGAL NETWORK LLC          Not McNamara lawyer third party fraud McNamara – attesting to bills and costs  states he is the attorney, agent or party who claims these costs.  See signature 8 14 2023 on Memorandum of Costs – no dates etc

Filing      Opp; Dec $28.80 FIRST LEGAL NETWORK LLC

[4]  Non Court Ordered Transcripts
Athala Cevallos  $371
Sharon Massingham $510
Tammy Fritz $603

[5]  Non Court Ordered Experts

Expert    Expert Fee
R. Blackseth Interests           Inc. $627.00
H2 Engineers        Inc. $4637.50

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 14 -

requested costs on account of their failure to comply with the mandatory time limit prescribed by rule 3.1700.  Even if CED were to belatedly bring such a motion for relief, and even if the Court were to grant it—and the Plaintiff is not aware of any valid basis on which the Court could do so—the Court should nevertheless substantially tax plaintiffs' request for $19,262 in costs, for two main reasons.

First, CED are seeking to recover costs that are specifically prohibited under California law, including efiling and fraudulent filing fee charges, expert fees, bates stamping, and charges for transcripts not ordered by the Court. (See Code Civ. Proc., S 1033.5, subd. (b).)

Second, CED demand payment for costs that were not "reasonably necessary to the con- duct of the litigation" and were instead "merely convenient or beneficial to its preparation." (Code Civ. Proc., 1033.5, subd. @)(2).)  CED produced Bates Nos. 2374, 3519 blank pages numerous blank pages provided in productions as well as completely irrelevant materials.

Third, multiple litigation stays instituted wherein work was not to be performed.

A reminder that Meadow Brook Village HOA is one Defendant of CED and therefore only at most entitled to 1/3 of any amount sought.   Meadow Brook Village HOA seeks to recover for all of CED, among many other things, more than $685 for bates without court order; Deposition Transcripts Non HOA Deponents - $1484 not court ordered excluded by statute, over $11,828 in "filing" charges, including for an attorney that is third party for union bank subpoena not with Farmers or McNamara and of which no filing who never made a single appearance in Court or at any deposition, as well as approximately.  Dec of Andrew S. Elliott $31.95 FIRST LEGAL NETWORK LLC Not McNamara lawyer third party fraud McNamara – attesting to bills and costs states he is the attorney, agent or party who claims these costs.  See signature 8 14 2023 on Memorandum of Costs – no dates etc.  Christopher Allard was not the attorney of record and not working on matter and cannot attest what occurred or what did not occur.  A paralegal cobbled together billing from unknown sources.

In addition, expert fees $5265 account for large amount of Meadow Brook Village's claimed costs, but because not court ordered not entitled.  Meadow Brook Village, CED have provided no documentation to support those requests (or any other requests), Plaintiff cannot assess whether such expenses were necessary to the conduct of the litigation, or reasonable. This reply is voluminous because Plaintiff had none of these materials at the time of filing within statutory period motion to strike.  Defendants CED Meadow Brook only with opposition finally provided after the fact itemized potentially fabricated documents substantial request.

In sum, the Court should strike CED Meadow Brook Village' Memorandum in its entirety as untimely.  In addition the failure to provide documents until filing opposition to Plaintiff motion to strike costs after questioning validity and whether or not fabricated by vendors, CED Meadow Brooks.   But even if plaintiffs had timely filed their Memorandum, the Court should nevertheless substantially tax their requested costs as follows:

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 15 -

| Cost | Item # | Amount Claimed | Amount to Strike Eliminate | Basis for Objection |
|------|--------|----------------|----------------------------|---------------------|
| Filing Fees | 1g | $11,828 | $11,828 | Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3) (c ) (4 ) (c) (5)<br><br>Court attempting to rubber stamp Eumi Lee; Keith Fong despite exclusions and discrepancies<br><br>Court ordered Electronic service Paul Herbert No invoices were provided dates, itemized when submitted simply vague list in bundles questionable. Fraudulent Andrew Elliot third party not an attorney with McNamara. Elaborate Discrepancies third party e filing, fax filing costs not recoverable as there is not a provision.  Motion fees are $60.00; initial pleading $435.00 and motion for summary judgment $500.00.  There are no filing fees for substitutions of attorney; withdrawal of attorneys, Case Management Conference Statements filed, oppositions or replies.  Misrepresentations fraudulent billings, inconsistent amounts. Ghost filings not filed on dates.  Will be reporting to State Bar of California attempts to exploit disabled grandmother on social security disability attempting to save home, senior non attorney. |
| Bates Model | 11 | $685 | | Not court ordered. Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(a) (13), (c ) (2) |
| Deposition Transcripts Non HOA | 4 | $1484 | | Excluded by statute (see §1033.5(b) (5) Not court ordered Transcripts |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 16 -

| Deponents | | | | |
|---|---|---|---|---|
| Expert | 16 | $5265 | | Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3)  Not court ordered Experts |
| TOTAL TO TAX | | $19,262.00 | $19,262.00 | |

Non Court Ordered Experts
Expert  Expert Fee
R. Blackseth Interests   Inc. $627.00
H2 Engineers   Inc. $4637.50

Non Court Ordered Transcripts
Athala Cevallos  $371
Sharon Massingham $510
Tammy Fritz $603

**MEDICAL STAYS WORK NOT TO BE PERFORMED**

| Tolling trial date 5 years | Days excluded | Source | Dept |
|---|---|---|---|
| Medical Leave April 11 2019 – November 4 2020  (1st leave April 11 2019 – October 2019 Order extend) 2nd Leave (October 2019 – November 2020 Order lifting leave November 4 2020) during Pandemic | 574 days | Court Order | 20 |
| Emergency Leave Mother Death 12 6 2021  - February 26 2022 | **83 days** | Court Order | 512 |
| **Emergency Leave Injury Facial February 26 2022 – April** | **62 days** | VESCO hearing Order | 512 |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 17 -

| 2022 | | | |
|---|---|---|---|
| COVID Long Covid Leave July 2022 – January 23 2023 | 192 days | VESCO Court Orders | 512 |
| | Total 911 days | | |
| March 19 2018 – March 19 2023 | Five Years | 1826 days | |
| Add 911 days to March 19 2023 | | | |
| Difference | Result: Monday, final | | |
| February 21 2024 – September 2 2024 COVID Long COVID | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

## II. BACKGROUND

Defendants ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES' Corporate Entity Defendants ("CED") seek to recover over $19,262.00 in costs from Mary Bernstein Plaintif, an unrepresented litigant on social security disability fighting for her home. Summary judgment was granted in favor of some of the Defendants in this action, three corporate entity defendants Massingham, Meadow Brook and Associa ("defendants"); however case is not over and scheduled for trial January 2025.CED also seeks attorneys' fees of $88,134.75. under Civil Code section 5975 (c). Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants. Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judgment. New counsel submitted a new Judgment entered July 17, 2023. Notice of entry of Judgment served July 28, 2023. Defendants then subsequently filed on **August 14, 2023** untimely memorandum of costs in the amount of $19,262.00. This was **17 days** later. **California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first.** Plaintiff filed August 18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts. Plaintiff had no information, dates or what to dispute other than vague amount placed there. Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case. Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for another attorney that incurred these costs in the case. Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate. There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand. Motion for attorney fees iin the amount of $88,134.75 September 26, 2023. Plaintiff filed motion to strke tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

CED attetmpts to obtain reimbursement of costs under Cal. Code Civ. Proc. § 1032 et seq, including expenses that were not actually incurred by CED, and/or are not expressly allowed by §1032 et seq, and/or are not allowed as discretionary costs under § 1033.5.

For example, CED seeks costs for improper filings, efiling costs, deposition costs not incurred by CED, research, bates stamping, non court ordered transcripts, non court order expert fees, associated with other cases, other attorneys, among others that were clearly incurred as a convenience or benefit to the conduct of the litigation rather than reasonably necessary costs.

CED has failed to meet its burden in showing both in its Memorandum of Costs

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 19 -

("MOC") and in its Opposition that many of these costs are allowable, and if they are allowable or discretionary, that the amounts it seeks are reasonable and necessary. In its Opposition CED attempts to justify its unreasonable and unnecessary costs, but instead expressly supports Plaintiff Mary Bernstein's contentions that it voluntarily assumed costs including but not limited to counsels' bates stamping, legal research, non court ordered expert witness fees, non court ordered transcript fees, and third-party costs for its own convenience and/or benefit in preparation. Plaintiff on social security disablilty respectfully requests that this Court grant its motion to tax and reduce to zero $0 CED's MOC in addition to any such costs the Court deems appropriate to tax given that CED has not adequately specified, or adequately explained the discrepancies in, costs and descriptions associated with filing costs, Therefore, Plaintiff's motion to tax and reduce all of the $19,262 to $0 awarded of the total amount sought should be granted. In addition, Declaration of Andrew Elliott an attorney not even affiliated with McNamara but an attorney at Severson representing third parties. CED have attempted to bankrupt and take Plaintiff and her family's home since the beginning exploiting vulnerabilities of disabled and elderly homeowners. Below listing California Statewide filing fees are not excessive amounts attempted to be reimbursed fraudulent. Initial answer or complaint $435.00; motions $60.00; $500 motion for summary judgment; no filing fee substitution of attorneys listed anywhere on fee schedule. Published here chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.courts.ca.gov/documents/Statewide-Civil-Fee-Schedule-eff-01012023.pdf  https://www.courts.ca.gov/7646.htm

III. STANDARD OF REVIEW

California law recognizes three types of litigation costs: (1) allowable; (2) disallowable; and (3) discretionary. Code Civ. Proc. § 1033.5, subds. (a), (b), (c)(4). For allowable and discretionary costs to be recoverable, they must be both "reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in amount." Code Civ. Proc. § 1033.5 (c)(2-3). If specifically allowable under section 1033.5, the party challenging the costs has the burden of showing that the costs sought are not reasonable or necessary. However, if the costs not specifically allowable are objected to, then the burden of proof lies with the requesting party to demonstrate that the costs were necessary and reasonable. Ladas v. Cal. State Automobile Assn. (1993) 19 Cal.App.4th 761, 774. Whether a cost is reasonable is a question of fact. Lubetzky v. Friedman (1991) 228 Cal.App.3d 35, 39. CED submitted its MOC and Plaintiff Mary Bernstein respectfully requests that the Court tax CED's costs as set forth below.

chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.courts.ca.gov/documents/Statewide-Civil-Fee-Schedule-eff-01012023.pdf  https://www.courts.ca.gov/7646.htm

California Court Statewide Civil Fee Schedule

INITIAL FILING FEES IN CIVIL CASES

Answer or other first paper filed by each party other than plaintiff (amount over $25,000) (including unlawful detainer) GC 70612, 70602.5, 70602.6 $ 435*

Motion for summary judgment or for summary adjudication  GC 70617(d) $ 500

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 20 -



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>



UNTIMELY CALCULATE DATES

MATTER IS NOT CONCLUDED HAS NOT HAD TRIAL

DID NOT HAVE INVOICES ERRONEIOUS WHEN MEMO COSTS FILED

JUST LISTED WITH NO DATES, NO DOCUMENTATION, BUNDLED

Plaintiffs saw invoices for the first time with opposition as these were not filed with memorandum of costs terhrefore plaintiff a non attorney is addressing these costs now in this comprehensive reply

NOW WITH OPPOSITION INVOICES DRUMMED UP

COSTS NOT ALLOWED

IV.ARGUMENT

   A.  MeadowBrook the HOA, CED have waived their right to recover any costs

The Court should strike Meadow Brook Village CED Memorandum of Costs in its entirety because Meadow Brook Village

failed to file and serve it within the mandatory 15-day deadline established by rule 3.1700(a) of the Rules of Court.

   Rule 3.1700's 15-day deadline is "mandatory." (Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co, (1990) 223 Cal.App.3d 924, 929.) And the consequence of missing the deadline is waiver of the right to recover any costs.

Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants. Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judgment.  New counsel submitted a new Judgment entered July 17, 2023.  Notice of entry of Judgment served July 28, 2023.  Defendants then subsequently filed on August 14, 2023 untimely memorandum of costs in the amount of $19,262.00.  This was 17 days later.  California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

dismissal, or within 180 days after entry of judgment, whichever is first. Plaintiff filed August 18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts. Plaintiff had no information, dates or what to dispute other than vague amount placed there. Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case. Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for another attorney that incurred these costs in the case. Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate. There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand. Motion for attorney fees iin the amount of $88,134.75 September 26, 2023. Plaintiff filed motion to strke tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

I]fthe one party fails, within the time prescribed to file and serve his memorandum of costs, then he is to be conclusively deemed to have waived the costs, if any, accruing in his favor.'" (Davis Lumber Co. v. Hubbell (1955) 137 Cal.App.2d 148, 150.) Following this rule, courts enforce rule 3.1700's mandatory time limit and strike memoranda that are un-timely served. (E.g., Sanabria v. Embrey (2001) 92 Cal.App.4th 422, 425—426 [error to award costs where memorandum was not filed within 15 days after service of notice of entry of dismissal].) The Court should do so here. Meadow Brook CED seemingly recognized their own untimely filing, so they then attempted to cure it by submitting documentation with their opposition to Plaintiffs motion to strike costs. As a matter of symmetry and basic fairness, the Court should apply the rules here strictly and find that plaintiffs' untimely costs memorandum has waived their right to recover costs.

B. MeadowBrook the HOA, CED may not recover certain categories of costs that are expressly precluded by section 1033.5(b).

If the Court does not strike Meadow Brook Village, CED's Memorandum and deny costs entirely due to the un-timeliness, the Court should nevertheless tax the entire amount of several categories of costs that California law expressly bars plaintiffs from recovering.

"It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an au-thorizing statute, no costs can be recovered." (Garcia v. Hyster Co. (1994) 28 Cal.App.4th 724, 732.)

The authorizing statutes in this case are Code of Civil Procedure section 1033.5, which applies to civil actions generally, and section 14030 of the Elections Code, which applies to C VRA cases. Section 1033.5 lists certain allowable costs (in subdivision (a)) and certain excluded costs (in subdivision (b)); it also gives the trial court discretion (in subdivision (c)(4)) to allow or deny any other costs that are not specifically enumerated in either subdivision (a) or subdivision (b). (El Do-

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

rado Meat Co. v. Yosemite Meat & Locker Serv., Inc. (2007) 150 Cal.App.4th 612, 616; Sci. Applica-tions Int'l Corp. v. Superior Court (1995) 39 Cal.App.4th 1095, 1103.) Although section 1033.5(b)(1) provides that "[flees of experts not ordered by the court" "are not allowable as costs," section 14030 of the Elections Code expressly provides otherwise, making recoverable "litigation expenses including, but not limited to, expert witness fees and expenses as part of the costs." Elections Code section 14030 does not otherwise "expressly authorize[]" the recovery of any costs that are "not allowable'S under subdivision (b) of section 1033.5.

Here, plaintiffs seek to recover costs that fall into several prohibited categories: (i) "bates numbering efiling expenses (this court did not have efiling until October 2022"- motion fees are standard only $60.00 with the exception of $435.00 initial filing fee and motion for summary judgment $500); (ii) expert fees not ordered by the court"; and (iii) "Transcripts not ordered by the court." (Code Civ. Proc., 1033.5, subd. ' '[B]ecause the right to costs is governed strictly by statute, a court has no discretion to award costs not statutorily authorized." (Ladas, supra, 19 Cal.App.4th at p. 774, citation and italics omitted [collecting cases].)  Costs associated with obtaining transcripts that are not ordered by the court are not recoverable. (Code. Civ. Proc., 1033.5, subd. (b)(5).)  Meadow Brook Village is entitled to recover a lesser amount for "[c]ourt reporter fees as established by statute" (Code Civ. Proc., 1033.5, subd. which are "an entirely different expense" from transcripts.

*C.  The Court should tax costs that are not reasonable in amount and/or not reasonably necessary to the litigation.*

Even if a cost is potentially allowable under section 1033.5, it does not become automatically recoverable in whatever amount a prevailing party demands. To the contrary, there are two addi-tional limitations on any request for cosib, which serve to protect against a prevailing party's abusive demands for unnecessary costs.

First, "[a]llowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (Code Civ. Proc., S 1033.5, subd (c)(2); see Charton v. Harkey (2016) 247 Cal.App.4th 730, 743.) Second, "[a]llowable costs shall be reasonable in amount." (Code Civ. Proc., S 1033.5, subd. (c)(3); see In re Ins; Installment Fee Cases (2012) 211 Cal.App.4th 1395, 1431, fn. 24.) The Court thus must disallow any costs (even those "allowable as a matter of right") that are not "reasonably necessary" and must also reduce the amount of any allowed costs to that which is "reasonable." (Perko 's Enters., Inc. v. RRNS Enters. (1992) 4 Cal.App.4th 238, 244—245.)

C. The Court should strike all costs as this matter personal injury not enforcment of governing documents

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 24 -

The Court should strike all costs as this matter personal injury not enforcement of governing documents as exhibited in civil cover sheet for filing and are not recoverable that are not reasonable in amount and/or not reasonably necessary to the litigation.  Breach of contract one aspect of complaint.  Plaintiff had limited scope attorney that was not eligible for practicing law, plaintiff a disabled litigant not an attorney at the time of the filing of the preliminary complaint.  This attorney can no longer practice law is in a hospice and State Bar victims compensation fund.  Plaintff won a small claims trial in this matter in this Court in 2019 for reimbursement of retainer.  Exhibit A to Declaration of Mary Bernstein,

   D.  MeadowBrook the HOA, CED must substantiate more than $5,000 in expert fees
CED Meadow Brook Village must provide documentation to support their request for more than $5,000 in expert fees.  With only a single line entry listing an amount for each expert (Mem. at Attachment 16), Plaintiff cannot say with any certainty whether Meadow Brook CED are requesting reasonable or unreasonable amounts, or whether the charges at issue were necessary to the conduct of the litigation. Once objected to, the party claiming expert fees must "produce[] sufficient documentation" enabling the "determin[ation of] the necessity" of expert fees including a declaration from counsel "as well as [ ] the paid invoices themselves." (Jones, supra, 63 Cal.App.4th at pp. 1266-1268; see also Levy v. Toyota Motor Sales (1992) 4 Cal.App.4th 807, 816 [affirming trial court's taxation of costs where claiming party "offered no substantiation of the challenged charges in response to [the] objections" raised in motion to tax].)

V. CONCLUSION

For these reasons, the Court should grant the Plaintiff's Motion to Strike Plaintiffs' Memorandum of Costs, as set forth in the table in the above for disabled, elderly social security litigant that filed personal injury matter not enforcement of governing documents with aid of limited attorney not qualified to practice law.  State Bar rendered this attorney ineligible and this Court awarded retainer based on malpractice and ineffective assistance of attorney at small claims trial award Exhibit A Declaration of Mary Bernstein in support of reply motion to strike costs.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

# DECLARATION IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES

## **INTRODUCTION**

This is an action for personal injury damages (emotional distress, violation of Civil Code Section 51 Unruh and Civil Code Section 54 California Disabled Persons Act)[6] arising from this 57 year old severely disabled grandmother plaintiff, Mrs. Mary Bernstein, enduring mental anguish having been denied rights discrimination harassed in the Meadow Brook Village common interest development, in violation of the laws of the State of California, Civil Code Sections 51 and 54 and the rules and regulations of the Meadow Brook Village Homeowner's Association.  Plaintiff was initially harassed by longtime HOA President Susan Condio-Hernandez and then additionally by newly elected HOA President Michael Durbin, a man with a criminal past including false imprisonment of a woman in which restraining order.  Plaintiff is still enduring injuries to date hyperstimulation[7] as a result of the ongoing stress in this housing community and this litigation.

Summary judgment was granted in favor of some of the Defendants in this action, **three** corporate entity defendants Massingham, Meadow Brook and Associa ("defendants"); however case is not over and scheduled for trial January 2025. Defendants now seek attorneys' fees of $88,134.75. under Civil Code section 5975 (c).  Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants.  Proposed judgment and executed did not contain fees or costs amount. Judgment entered July 17, 2023.  Defendants then subsequently filed untimely memorandum of costs in the amount of $19,262.00 August 18 2023 and motion for attorney fees iin the amount of $88,134.75 September 26, 2023.

---

[6] Civil Cover sheet filed March 19, 2018 classification Tort Other PI/PD/WD (23) and online ePortal Category: Other Personal Injury/Property Damage/Wrongful Death

[7] Hyperstimulation anxiety happens when your stress response is kicked into high gear without being given a chance to come back down. Along with feeling an increased heart rate and other signs commonly associated with stress and anxiety, many people will also feel the effects in their muscles.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

**ARGUMENT**

**I.  PLAINTIFF'S ACTION IS NOT AN ACTION "TO ENFORCE" AN
"EQUITABLE SERVITUDE," AND THEREFORE NO ATTORNEY'S FEES
ARE AWARDABLE UNDER CC SECTION 5975 (c)**

Plaintiffs action for personal injury damages, based in part on CC&Rs as contractual

obligations," is not the equivalent of an action in equity "to enforce" the CC&Rs as "equitable

servitudes." The former is an action at law, the latter an action in equity."[8]

Civil Code Section 5975 (c) limits "prevailing party" attorney fees to "any action specified in

subdivision (a) to enforce the governing documents." Subdivision (a) specifies that CC&Rs are

"enforceable equitable servitudes."

Plaintiff's preliminary complaint did not seek enforcement in equity.  Plaintiff sought monetary,

compensatory, general, restitution and punitive damages for personal injury in prayer for relief.

Plaintiff is a non attorney and cobbled together preliminary complaint to the best of her ability as

a disabled and traumatized person.  Plaintiff retained limited scope attorneys to assist with

opposition to motion for summary judgment.  During Vesco hearing Judge Eumi Lee knew

plaintiff intended to file amended complaint and stated during Vesco hearing April 22 2022 that

she intended to allow Plaintiff to file amended complaint.  Eumi Lee knew the intention of

Plaintiff in CMC Statement as well as during Vesco hearing that Plaintiff would be amending

complaint.  Defendants had filed multiple demurrers and motions to strike. "Enforcement"

---

[8]  As stated repeatedly throughout this litigation in plaintiff's memoranda, CC&Rs may be
interpreted as contracts. See Frances T. v. Village Green Owners Assoc. (1986) 42 Cal.3d 490, $12-513, 229 CR 456, 469
["Here, plaintiff's contract with defendants consists of the CCERs and the bylaws contained in the grant deed for plaintiff's
condominium."], Diamond Bar Develop. Corp. v. Superior Court (1976 ) 60 CA3d 330, 333-334, 131 CR 458, 460.
"Plaintiff's reference to CC&Rs as "equitable servitudes" in memoranda during this litigation is descriptive of one aspect of
CC&Rs. Plaintiff also described the CC&Rs as contractual. These descriptive references do not turn this injury case at law
into an equity action.
Not every case referencing CC&Rs is an action "to enforce an equitable servitude." Frances T. v. Village Green Owners Assoc.
(1986) 42 Cal.3d 490, 513, 229 CR 456, was a personal injury case for a criminal attack in plaintiff's unit. It was not an
action to "enforce" an equitable servitude.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 27 -

requires an injunction or mandate. No injunction or mandate was sought by plaintiff. As stated

by Witkin: *]. [Sec.493] Nature and Effect of Equitable Servitude."

" [E]quity will sometimes enforce the obligation against the successors of the covenantor, by an

injunction against breach. The burden of the covenant thus becomes an 'equitable easement' or

servitude in the land of the covenantor." 4 Witkin, Summary of Law (9" ed. 1990), Real

Property, Sec. 493 p. 670."[9]

Witkin cites *Nahrstedt v. Lakeside Village Condominium Association* (1994) 8 C.4th 361,

33 CR2d 63, *Nahrstedt* states in pertinent part:

"Under the law of equitable servitudes, ***courts may enforce a promise about the use of land***

even though the person who made the promise has transferred the land to another. [Citation.] The

underlying idea is that a landowner's promise to ***refrain from particular conduct*** pertaining to

land creates in the beneficiary of that promise an 'equitable interest in the land of the promisor.'

[Citations] a grantee or purchaser with notice that the premises are bound by a covenant "'will be

restrained from violating it." The doctrine is ***useful chiefly to enforce uniform building***

***restrictions*** under a general plan for an entire tract of land or for a subdivision." (Emphasis

added.) 8 Cal 4th at 379, 33 CR2d at 73.[10]

Plaintiff retained limited scope attorney Kevin Horan to assist with preliminary injunction and

complaint.  This attorney was not to be practicing law unbeknownst to Plaintiff.  California State

Bar victims compensation fund.  Plaintiff, a consumer and handicapped vulnerable was

---

[9]  "Although an injunction is defined by statute (C.C.P. 525, supra, Sec. 280) as a writ or order prohibiting, rather than
compelling action, it has long been settled that a court with equitable jurisdiction may grant a mandatory injunction." 6
Witkin, Procedure (4" ed. 1997), Sec. 282, p. 225. "An injunction is an order or decree of a court either preventing
(prohibitory injunction) or compelling (mandatory injunction) an act." 6 Witkin, Procedure (4" ed, 1997), Sec. 276 p. 219.

[10]  *See e.g., Cabrini Villas Homeowners Association v. Haghverdian (2003) 111 Cal. App.4th 683, 4 CR 3d 192 (granted
injunction ordering removal of air conditioner).
DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 28 -

victimized by member of the bar Kevin Horan. A smalls claim trial held Plaintiff awarded

retainer; State Bar disciplinary Kevin Horan no longer practice law. Kevin Horan nursing home.

Plaintiff sought relief from collection of emergency lump sum payment levied at her due within a

matter of weeks $33,262.00 and threatened unknown future "emergency assessments, special

assessments" based on fraud malfeasance, misfeasance. Plaintiff did not seek any equity orders

of enforcement referenced in governing documents and 2) monetary damages for the harassment,

mental anguish and restitution damages denial of rights of pool. Plaintiff is not an attorney and

cannot be faulted as a disabled person with communication disabilities for language legal jargon

and lack of assistance by limited scope attorney mentally unfit. There is no mention of pool in

governing documents in CC&Rs or Bylaws. Plaintiff sought reasonable accommodations which

is a matter of law Civil Code sections 51 and 54. Examples of such enforcement orders would

include, without limitation: (1) removal of the HOA Board President from the Board, (2)

ordering the association to perform some specific maintenance. Plaintiff sought prevention of

collection of an illegal emergency special assessment that was voted against by majority of

members, reasonable accommodations and monetary damages for personal injury.

Reported cases regarding attorney's fees under Section 5975 (c) or known as Section 1354 (f) are

all equity actions seeking injunctive relief or mandate relating to the Association's governing

documents. They concern such matters as the type and size of fences, the type and color of

exterior siding, and voting rights.[11] They are not personal injury cases for monetary damages.[12]

They are not reasonable accommodation denials.

---

[11] See Rancho Santa Fe Ass'n v. Dolan-King (2004) 8 Cal.Rptr.3d 614, 115 Cal.App. 4% 28, rehearing denied, review filed [to enforce covenant as applied to fences], Parrott v. Mooring Townhomes Ass'n, Inc., (2003) 6 Cal.Rptr.3d 116, 112 Cal. App. 4" 873, review denied [to enforce covenant as applied to exterior siding], Kaplan v. Fairway Oaks Homeowners Ass'n (2002) 120 Cal Rptr.2d 158, 98 Cal.App. 4" 715, as modified ["to enforce the member's proxy and cumulative voting rights under the bylaws" (98 CA4th at 720)], review denied, Heather Farms Homeowners Assn. vy. Rohinson (1994) 26 Cal Rptr.2d 758, 21 Cal. App.4™ 1568, rehearing denied, review denied (to enforce rules relating to modifications to units).

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

[12] See Frances T. v. Village Green Owners Assoc. (1986) 42 Cal.3d 490, 513, 229 CR 456, 469 (Personal injury case with reference to CC&Rs) and White v. Cox (1971) 17 CA3d 824, 95 CR 259 (Personal injury case with reference to association's duty to maintain common areas under the condominium plan. The plan is noted to be an equitable servitude), 17 CA3d 828-829, 95 CR 259, 261-262). [T]he Association is, for all practical purposes, the Project's "landlord." And traditional tort principles impose on landlords, no less than on homeowner associations that function as a landlord in maintaining the common areas of a large condominium complex, a duty to exercise due care for the residents' safety in those areas under their control. *** As concluded above, the Association and the Project's residents also stand in a common law relationship, similar to that of landlord and tenant, that requires the landlord to exercise reasonable care in protecting tenants from criminal activity. *** 9 .. the Association owed a duty to plaintiff to protect her from the foreseeable criminal acts of others. (Frances T. v. Village Green.) Foreseeable Acts. Even when there is a special relationship between the parties, a duty to take affirmative action to control the wrongful acts of a third party will be imposed where such conduct can be reasonably anticipated. The scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. In circumstances where the burden of preventing future harm is great, greater foreseeability is required; where the burden is relatively low, a lesser degree of foreseeability may be required. (Wentworth v. Sierra North Village HOA; internal cites and quotes deleted.) Landlords also have a duty to protect tenants from both non-tenants and other tenants where the vulnerable tenant has obtained a restraining order or has a copy of a police report stating that they are the victim of domestic violence, sexual assault, or stalking. CAL. CIV. CODE §§ 1941.5 – 1941.6. In California a landlord is required to provide a safe living environment for the tenants and the law has been established under the California Civil Code. The failure of a landlord to provide such conditions can lead to violation of the law and impose civil and, at times, even criminal liability upon the landlord.

Abba Father

God the Father, God the Son and God the Holy Spirit

Amos main point: God is going to punish the northern Jewish nation of Israel for a long list of sins -- especially for exploiting the poor and selling justice to the highest-bidding briber. Amos 2:6-7

6 Thus saith the LORD; For three transgressions of Israel, and for four, I will not turn away the punishment thereof; because they sold the righteous for silver, and the poor for a pair of shoes;

7 That pant after the dust of the earth on the head of the poor, and turn aside the way of the meek: and a man and his father will go in unto the same maid, to profane my holy name:

Revelation 9

King James Version

9 And the fifth angel sounded, and I saw a star fall from heaven unto the earth: and to him was given the key of the bottomless pit.

2 And he opened the bottomless pit; and there arose a smoke out of the pit, as the smoke of a great furnace; and the sun and the air were darkened by reason of the smoke of the pit.

3 And there came out of the smoke locusts upon the earth: and unto them was given power, as the scorpions of the earth have power.

4 And it was commanded them that they should not hurt the grass of the earth, neither any green thing, neither any tree; but only those men which have not the seal of God in their foreheads.

5 And to them it was given that they should not kill them, but that they should be tormented five months: and their torment was as the torment of a scorpion, when he striketh a man.

6 And in those days shall men seek death, and shall not find it; and shall desire to die, and death shall flee from them.

7 And the shapes of the locusts were like unto horses prepared unto battle; and on their heads were as it were crowns like gold, and their faces were as the faces of men.

8 And they had hair as the hair of women, and their teeth were as the teeth of lions.

9 And they had breastplates, as it were breastplates of iron; and the sound of their wings was as the sound of chariots of many horses running to battle.

10 And they had tails like unto scorpions, and there were stings in their tails: and their power was to hurt men five months.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 30 -

No case awarding attorney fees under Section 5975 (a) or known as Section 1354 previously has been an action for personal injury damages. Such a case is not an "action specified in subdivision (a)" of Section 5975, Personal injury cases are nowhere mentioned.

Defendants seek a broad expansion of Section 5975 (c ) that has no precedent. Section 5975 (c), by its reference only to actions specified in subdivision (a), is not global authority to award fees in all cases that may involve interpretation of CC&Rs.

This case is not concluded, additional individual defendants remain which were agents of the Defendants. The individual defendants must be treated separately in analyzing their statutory claims to attorney's fees, although they are represented by the same law firm. Not all causes of action relate to all three defendants. They do not stand in the same shoes. The property management firms do not have governing documents Plaintiff. Individual defendants have variable causes primarily related to personal injury.

11 And they had a king over them, which is the angel of the bottomless pit, whose name in the Hebrew tongue is Abaddon, but in the Greek tongue hath his name Apollyon.

12 One woe is past; and, behold, there come two woes more hereafter.

13 And the sixth angel sounded, and I heard a voice from the four horns of the golden altar which is before God,

14 Saying to the sixth angel which had the trumpet, Loose the four angels which are bound in the great river Euphrates.

15 And the four angels were loosed, which were prepared for an hour, and a day, and a month, and a year, for to slay the third part of men.

16 And the number of the army of the horsemen were two hundred thousand thousand: and I heard the number of them.

17 And thus I saw the horses in the vision, and them that sat on them, having breastplates of fire, and of jacinth, and brimstone: and the heads of the horses were as the heads of lions; and out of their mouths issued fire and smoke and brimstone.

18 By these three was the third part of men killed, by the fire, and by the smoke, and by the brimstone, which issued out of their mouths.

19 For their power is in their mouth, and in their tails: for their tails were like unto serpents, and had heads, and with them they do hurt.

20 And the rest of the men which were not killed by these plagues yet repented not of the works of their hands, that they should not worship devils, and idols of gold, and silver, and brass, and stone, and of wood: which neither can see, nor hear, nor walk:

21 Neither repented they of their murders, nor of their sorceries, nor of their fornication, nor of their thefts.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 31 -

There is a second amended complaint that is operative with multiple additional defendants. During this matter mcnamara firm has represented non board members, board members and lumped all in together as well as with multiple separate cases agencies and court.   Judge Eumi Lee directed Plaintiff to file amended complaint with all causes of action, all defendants in Order.  Eumi Lee directed Plaintiff to retain all causes of action in preparation of amended complaint prior to the filing of amended complaint and prior to the motion for summary judgment hearing.

If one is going to base this motion for <u>attorney fees based on an erroneous preliminary complaint</u> for personal injury as stated in cover sheet below filed in 2018 with an attorney that has been disbarred limited scope reliance and a handicapped senior citizen, then that would be erroneous.



This same case in which attorney Kevin Horan discovered not qualified abandoned Mary Bernstein Plaintiff in matter and was mentally not able all along.  State bar compensation victims

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

rights fund and plaintiff tried and won small claims matter for non assistance improper assistance in matter RS19027257 Bernstein VS Horan Small Claims (Small Claims).  Judgement below.  If it had not been for the Lord Jesus, Plaintiff would never have been able to proceed in this matter even up until this date.  Attorney Kevin Horan impaired during this entire time unbeknownst to Plaintiff.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION -- FREMONT AND REPLY MOTION TO STRIKE COSTS

- 33 -



**RS19027257** Bernstein VS Horan

**Small Claims** (Small Claims)

08/29/2019     Judgment Entered favor of Plaintiff

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

The cause of action directly against Meadow brook ninth cause of action breach of cc&R ninth,

12th prevention of enforcement of illegal emergency assessment and third breach of contract.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 35 -

The causes of action against the Homeowner's Association (jointly with Associa Northern California, Massingham and are the seconde (fiduciary duty), fourth (implied covenant), fifth (intentional emotional distress), Sixth (Negligence emotional distress), seventh (intentional misrepresnation Susan Condio Hernandez, (eighth . tenth eleventh disabled None of these seek enforcement of any CC&R as an equitable servitude nor do they require interpretation or application of any CC&R. 1. FRAUD

2. BREACH OF FIDUCIARY DUTY

3. BREACH OF CONTRACT

4. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH  AND FAIR DEALING

5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

6. NEGLIGENCE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

7. INTENTIONAL MISREPRESENTATION

8. NEGLIGENT MISREPRESENTATION

9. BREACH OF CC&Rs AND BYLAWS

10. Violation of UNRUH CIVIL RIGHTS ACT

11. Violation of CALIFORNIA DISABLED PERSONS ACT

12. INJUNCTIVE RELIEF

They are standard, common law causes of action. Consequently, *there is no basis to argue* that Section 5975 (c) **applies to award attorney's fees to the Homeowner's Association.**[13]

---

[13]  Assuming arguendo that this court finds that MeadowBrook is entitled to attorneys fees and the Association is not, there must be an apportionment of the fees claimed by the defense attorneys, since they would not be entitled to fees for work performed on behalf of the Association. Cassim v. Allstate Insurance Co, (2004) 33 C4th 780, 16 CR3d 374.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

# Charlie West Susan Hernandez Amy DeJesus case preliminary injunction lost no attorneys fees sought – disparity treatment

EUMI LEE KEITH FONG exhibit discrimination towards Plaintiff did not have motion to strike FAC filed by defendants heavy lifting admittedly did not read struck attempted to push through costs and attorney fees without allowing plaintiff to oppose and without hearing ada violations and ethics

Both attempted to not allow Plaintiff adequate time to oppose and attempted to rubber stamp outrageous fraudulent memorandum of costs and attorney fees to a elderly woman on social security disability

Likewise, as to those same causes of action, there is no basis for defendant Meadow Brook

Village to claim attorney's fees other than stretch cause of action 3. Breach of contract and 9.

Breach of CC&Rs and Bylaws. Plaintiff is seeking damages not for Defendant Meadow Brook

Village or others to do something or not do something.  This is a jury trial for a jury to decide

damages and if injuries caused.  Plaintiff is not an attorney and had an unqualified, mentally ill

attorney that should not have been practicing law advising at the time of the filing of the

complaint.  This attorney is still in hospice care.  Plaintiff a disabled senior citizen a consumer

was victimized.  State Compensation fund.  Meadow Brook did not seek attorneys fees for other

lawsuits seeking injunction that was not granted.  For instance, the frivolous litigation to institute

a "New Board" filed by longtime HOA Board member Charlie West Alameda County Superior

Court RG18889399 January 22 2018 futile attempt at TRO, preliminary injunction all merely

theater for homeowners not part of the certain group but pawns in the eyes of these "certain

group of homeowners."  This group sought receivership as would the Susan Condio lawsuit

members lawsuit filed March 28 2018 Alameda County Superior Court RG18898829.  This was

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 37 -

an elaborate deception and part of the emotional distress pulled on traumatized, unsuspecting homeowner Plaintiff.

The other remaining causes of action are not relative to CCR. Many agents listed individually and trial scheduled for this matter January 2025. This matter is not concluded. These all seek personal injury damages. Although causes of action they may be based, in part, on the governing documents, none are equity actions "to enforce" the governing documents as "equitable servitudes." No mandate or injunctive relief is sought. . Nothing is to be compelled; nothing is to be prohibited. Plaintiff seeks monetary damages for personal injury.

Seeking a judicial interpretation of the CC&Rs in the course of litigation is not, in and of itself, "enforcement" of anything. One must go a step further, seeking to mandate or prohibit some action, in order for the suit to be "enforcement."

Since none of the causes are equity actions "to enforce the governing documents," attorney's fees are not awardable to Meadow Brook. The fact that plaintiff's legal arguments include an argument based on "interpreting" provisions of the governing documents does not turn the injury claim into an action "to enforce an equitable servitude." Injunctive relief and mandate are the classic actions "to enforce' and there are no such requests here.

Awarding attorney's fees in actions for personal injury damages is out of the mainstream of American law. The "American Rule" — hornbook law — is that each party bears their own legal fees. This court should not find a contrary intention for Civil Code Sections 5975 (a) and (c) without a clear, unambiguous declaration that the usual rule is being abrogated. Nothing in the statutory scheme of common interest developments shows any legislative intent to put personal injury cases under the rubric of Section 5975 (a) and (c).

If personal injury cases are included under Section 5975 (c), the right to attorney's fees would

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

- 38 -

be reciprocal — any personal injury case decided in plaintiff's favor, and based in part on a duty found in CC&Rs or rules and regulations, would require that defendants pay plaintiff's fees." [14]One may be confident that the legislature had no such intent. If this court rules in favor of either defendant, the defendants' insurance carrier may ultimately regret its position down the road as new cases come down the pike with requests for attorney's fees.

The legislative intent was surely to include only those cases involving traditional "enforcement" of the governing documents, i.¢., by injunctions and writs of mandate, as reflected in the cases cited in footnote 6. The code was meant to cover those cases where the Association would be out-of-pocket for attorneys fees in defending frivolous claims from homeowners disgruntled with the Association for certain rules and regulations relating to such matters as paint colors, garbage disposal, deck constructions, paint colors, and so forth.

Section 5975 (c) was not intended to reimburse the Association's insurance cartier for defending a personal injury action. [15]

Plaintiff worked for private law firms and is familiar with billing padding, boilerplate documents, administrative tasks, billing procedures.

> **Not doing what is within their jurisdiction either**
> **Outside jurisdiction remember Jeffrey brand stated we talk and advise each other 11 2019 Paul Herbert conferring with other judges not assigned; jenna Whitman not assigned dictating what to file; helping defedants**
> **Keith fong not allowing motion filing without leave**
> **Elizabeth Riles unreasonable retaliatory for complaint denial witnesses evidence**
> **Susan Lew holding court as formal matter (cited for not having formal declaration for witness testifying, rebuked for reasonable accommodations,**

---

[14] Cases of personal injury against a homeowner's association are often based on failure to maintain the premises in safe condition. This duty for the common areas is usually expressed in the governing documents. If such cases fall under the attorneys fees provision of Section 5975 (c), it is surprising that no such case awarding fees under Section 5975 (c) appears in the reported decisions.

[15] Defendants did not seek attorneys' fees in the prayer for relief in their answers, motion for summary judgment, nor did their memorandum of costs contain such a request.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

criticizing for legal citations non attorney – small claims and civil harassment are informal matters for the laiety) denial witnesses evidence
Elizabeth Tigano and Mary Bernstein reputations affected by frivolous civil harassment orders imposed by John Gibson and constant threats of new filings of retraining orders, restricting disabled persons movements
https://www.justice.gov/opa/pr/justice-department-finds-alameda-county-california-violates-americans-disabilities-act-and-us

**Justice Department Finds that Alameda County, California, Violates the Americans with Disabilities Act and the U.S. Constitution**

https://www.theroot.com/did-the-exclusion-of-black-and-jewish-jurors-impact-doz-1851443340

**Did The Exclusion of Black and Jewish Jurors Impact Dozens of Death Penalty Cases?**

https://www.latimes.com/california/story/2024-04-23/federal-judge-orders-alameda-county-to-review-death-penalty-cases

Federal judge orders Alameda County to review death penalty cases

worry that the fix is in, so to speak.

Impartiality is crucial for judges, and all judges, including those at the trial court level, must adhere to a higher standard. They should disclose any potential or real conflicts of interest and maintain their impartiality.
They should exhibit judicial temperament
https://www.ebar.com/story.php?ch=News&sc=News&id=330805
Editorial: Judicial candidate Fickes has a serious lapse in judgment

https://www.psychologytoday.com/us/blog/empathy-and-relationships/201704/injustice-the-hands-judges-and-justices
Injustice at the Hands of Judges and Justices
Judge Jed Rakoff discusses the injustice caused by judicial bias.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 40 -

"Why mediation isn't more widely used is beyond my comprehension, as is the fact that people would want to use retired judges with no little or no mediation training to "mediate", so they can get people to reach similar injustices through agreements reached in what is really "soft-arbitration." This is particularly true with regard to family law, where the research is very clear." Paul Herbert (misrepresentation length of settlement judge experience) and Jeffrey Brand ADR and JAMS

**https://law.stackexchange.com/questions/18900/jurors-not-allowed-to-talk-to-each-other-during-the-trial**

**https://btlaw.com/insights/publications/2018/dont-feel-pressured-to-settle-a-case-that-you-dont-want-to-settle**

**United States Federal Judicial Misconduct**

**The Judicial Conduct and Disability Act of 1980(link is external) ("Act"), 28 U.S.C. §§ 351–364, and the Rules for Judicial-Conduct and Judicial-Disability Proceedings ("Rules") (pdf), as amended on March 12, 2019, govern this complaint process. You will likely want to consult the Act and the Rules before filing a complaint. Please visit the website of the appropriate court office, as described in the Rules and in question 3, to determine whether local rules apply and to obtain a complaint form.**
**https://www.uscourts.gov/judges-judgeships/judicial-conduct-disability/faqs-filing-judicial-conduct-or-disability-complaint**

**Who can I complain about?**
> **You may file a complaint about a federal judge who you have reason to believe has committed misconduct or has a disability that interferes with the performance of their judicial duties. A federal judge includes a judge of a United States district court, a judge of a United States court of appeals (including the Court of Appeals for the Federal Circuit), a judge of a United States bankruptcy court, a United States magistrate judge, a judge of the Court of Federal Claims, and a judge of the Court of International Trade.**

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 41 -



**The judicial council may take other action, such as requesting the special committee conduct an additional investigation.**

Federal judges appointed under Article III of the U.S. Constitution (e.g., circuit and district judges) hold office for life pending good behavior. Only Congress can remove an Article III judge from office. If the judicial council finds an Article III judge's conduct may warrant impeachment, it must refer that finding to the Judicial Conference. On referral, the Judicial Conference will determine whether to certify the matter to Congress, which will then decide whether to initiate impeachment proceedings.

Judicial Conference Committee on Judicial Conduct and Disability
Attn: Office of the General Counsel
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, D.C. 20544

https://www.legalmatch.com/law-library/article/judicial-misconduct.html
Legal Match describes judicial misconduct

What is Judicial Misconduct?

The definition of judicial misconduct is a serious deviation from the accepted practices of a judge in the judicial profession. *Misconduct is defined as conduct which is prejudicial to the effective and expeditious administration of the business of the courts.*

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

The rules regarding official judicial misconduct also include rules concerning a judge's *disability, which may be a temporary or permanent condition which renders the judge unable to discharge the duties of their judicial office. 28 USC §§ 351 − 364* provides that any individual may complain about a federal judge whom they believe has committed judicial misconduct.

**What are Some Types of Judicial Misconduct?**
A judicial misconduct case begins when an individual files a complaint regarding the conduct of a judge. Examples of conduct which may constitute judicial misconduct may include when the judge:

- Uses their office to obtain special treatment for relatives or friends;
- Accepts bribes, gifts, or other personal favors which are related to their office;
- Engages in improper ex parte communication with a party or counsel for one side of a case;
- Engages in partisan political activity or makes an inappropriately partisan statement;
- Solicits funds for organizations;
- Violates rules or standards which pertain to restrictions on outside income or knowingly violates a requirement for financial disclosure;
- **Engages in offensive, abusive, or unwanted sexual conduct, which includes sexual harassment or sexual assault;**
- **Treats attorneys, litigants, judicial employees, or other individuals in a demonstrably hostile and egregious manner;**
- Creates a hostile work environment for judicial employees;
- **Intentionally discriminates based on one of more of the following:**
- **Race;**
- Color;
- Sex;
- Gender;
- Gender entity;
- Pregnancy;
- **Sexual orientation;**
- **Religion;**
- National origin;
- Age; or
- **Disability;**
- **Retaliates against individuals who participate in the judicial conduct and disability complaint process or report or disclose judicial misconduct or disability, which may include:**
  - Complainants;
  - Witnesses;
  - Judicial employees; or
  - Other individuals;

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- **Refuses to cooperate in an investigation of a judicial conduct or disability complaint or the enforcement of a decision under the Rules without good cause; or**
- **Fails to call to the attention of the relevant district chief judge or circuit chief judge any reliable information which is reasonably likely to constitute judicial misconduct or disability.**

This list does not constitute **all of the possible grounds for a complaint**. An individual is not permitted to use the complaint process to obtain an automatic disqualification of a judge which is presiding over a case.

Additionally, the process cannot be used to challenge the correctness of the judge's decision in a case. A judicial decision which is unfavorable to an individual does not, by itself, establish misconduct or a disability.

**How Can Judges Break the Law Inside the Courtroom?**
There are certain ways in which a judge may abuse the law they are supposed to uphold. This may include if a judge ignores the law in court. It may also include if a judge:

- **Lies under oath – It is important to note that a judge is always under oath in the courtroom;**
- Cites invalid laws or precedents – This may be hard to catch if an individual is not prepared to discuss these topics;
- Ignores certain laws or precedents – This is uncommon because a judge typically cannot ignore a law without explaining their reasoning. In this case, the judge would have to break two rules.
- Can I Ask a Judge to Recuse Himself if I Believe He Is Biased?

An individual may request a judge to recuse themselves if there is a conflict of interest. A recusal, also called a judicial disqualification, is a request for a judge presiding over a case to remove themselves from that case so a new judge can be chosen.

A recusal is requested by a motion, which the presiding judge may sustain or dismiss. Because of this, the motion should include substantial evidence showing the judicial conflict of interest. If the judge improperly dismisses the motion, the issue may be appealed after the conclusion of the trial.

Title 28 of the Judicial Code, or the United States Code, provides the standards for judicial recusal or disqualification. A judge is required to recuse themselves in any proceeding in which it would be reasonable to question their impartiality.

**Both state and federal laws** *provide that judges are required to recuse themselves if grounds exist to do so. A judge may be subject to punishment for not recusing themselves, depending on the circumstances.*

Examples of situations in which a conflict of interest may exist where a judge should likely recuse themselves include:

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 44 -

**A personal connection to a party in a case;**
Personal knowledge of the facts of a case;
**A familial relationship to one of the attorneys;** and
A financial interest in the outcome of the case.
Any party to the case, including the plaintiff or the defendant, may make the motion to request the judge recuse themselves from the case. There is not likely to be a penalty if the judge accidentally does not recuse themself, such as in cases where the judge is not aware that proper grounds for recusal exist. However, if proper grounds for recusal did exist, and the judge was aware, there may be penalties levied against the judge for not doing so.

What are Some Examples of Judicial Misconduct?
A specific example of a judge breaking the law involved a Catoosa County Magistrate Judge in Georgia. This judge engaged in several behaviors which were considered misconduct, including:

Smoking marijuana at least once a week;
Using the office to advance the personal interests of a family member, specifically a sister-in-law;
Inappropriately pointing a firearm at other individuals in the courthouse; and
Providing the identity of a confidential informant on a television show.
There are a limited number of examples such as these because, thankfully, they are rare.
However, there are likely many instances of misconduct that go unreported because individuals are unaware that the behavior constitutes judicial misconduct or they fear the complaint process.

How Can I Prove Judicial Misconduct?
Judicial misconduct may be difficult to prove if an individual does not know all of the rules. Having a basic familiarity with these rules may help prove judicial misconduct because the individual will be aware of what conduct to look for.

It is also important to review the examples listed above. This will help an individual be aware of conduct which is considered judicial misconduct. Other helpful actions may include:

Taking note of everything possible in writing;
Requesting a court reporter;
Bringing other court watchers to any hearings; and
Having as many issues on paper as possible.
When Can I Complain About Judicial Misconduct?
Any individual is permitted to complain about a federal judge pursuant to 28 USC §§ 351 – 364 if that judge:

Engaged in conduct that is damaging to the effective administration of a court; or
Becomes unable to discharge their duties because of a mental or physical disability.
As noted above, an individual does not have the right to complain about judicial misconduct if a wrong or poor decision is made by a federal judge. The remedy in this situation is the right to appeal.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 45 -

How Does a Judicial Misconduct Complaint Work?

The judicial misconduct complaint process follows a step-by-step procedure. The steps include:

The individual bringing the complaint must obtain a pre-established form used for complaints regarding judicial misconduct from the clerk of the court;

The complaint is then filed with the clerk of the court and provided to the Chief Judge in that district;

The Chief Judge reviews the complaint to determine if it requires further investigation or should be dismissed;

If the Chief Judge determines that an investigation is necessary, they will appoint a special committee to investigate it;

The special committee will then investigate the claim and take the findings of their investigation and submit a report to the pre-established Judicial Council in the district; and

Lastly, the Judicial Council will make a decision regarding the steps that should be taken to remedy the judicial misconduct.

Do I Need an Attorney to File a Judicial Misconduct Complaint?

Yes, it is very important to have the assistance of a government lawyer if you believe judicial misconduct has occurred. Your attorney can guide you through each step of the complaint process, explain the relevant issues, and help you defend your complaint.

Judicial Commission of California

https://cjp.ca.gov/ The California Commission on Judicial Performance states:

The Commission on Judicial Performance, established in 1960, is the independent state agency responsible for investigating complaints of judicial misconduct and judicial incapacity and for disciplining judges, pursuant to article VI, section 18 of the **California Constitution**.

The commission's mandate is to protect the public, enforce rigorous standards of judicial conduct and maintain public confidence in the integrity and independence of the judicial system. While the majority of California's judges are committed to maintaining the high standards expected of the judiciary, an effective method of disciplining judges who engage in misconduct is essential to the functioning of our judicial system. Commission proceedings provide a fair and appropriate mechanism to preserve the integrity of the judicial process.

The commission's jurisdiction includes all judges of California's superior courts and the justices of the Court of Appeal and Supreme Court. The commission also has jurisdiction over former judges for conduct prior to retirement or resignation. Additionally, the commission shares authority with the superior courts for the oversight of court commissioners and referees. The Director-Chief Counsel of the commission is designated as the Supreme Court's investigator for complaints involving the judges of the State Bar Court. The commission does not have authority over federal judges, judges pro tem or private judges. In addition to its disciplinary function, the commission is responsible for handling judges' applications for disability retirement.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 46 -

The commission's authority is limited to investigating allegations of judicial misconduct and, if warranted, imposing discipline. Judicial misconduct usually involves conduct in conflict with the standards set forth in the **Code of Judicial Ethics**. The commission cannot change a decision made by any judicial officer; this is a function of the state's appellate courts. After investigation, and in some cases a public hearing, the commission may impose sanctions ranging from confidential discipline to removal from office.

Anyone may submit a complaint to the commission. See **Filing a Complaint** and **Overview of Commission Proceedings**.

LAST UPDATED: **07/16/24**.

OVERVIEW OF THE COMPLAINT PROCESS THE AUTHORITY OF THE COMMISSION ON JUDICIAL PERFORMANCE The Commission on Judicial Performance is the independent state agency responsible for investigating complaints of judicial misconduct and judicial incapacity and for disciplining judges (pursuant to article VI, section 18 of the California Constitution). Its jurisdiction includes all active California judges. The commission also has authority to impose certain discipline on former judges, and the commission has shared authority with local courts over court commissioners and referees. In addition, the Director-Chief Counsel of the commission is designated as the Supreme Court's investigator for complaints involving State Bar Court judges. The commission does not have authority over temporary judges (also called judges pro tem) or private judges. In addition to its disciplinary functions, the commission is responsible for handling judges' applications for disability retirement. This section describes the commission's handling and disposition of complaints involving judges. The rules and procedures for complaints involving commissioners and referees, and statistics concerning those matters for 2023, are discussed in Section V, Subordinate Judicial Officers. HOW MATTERS ARE BROUGHT BEFORE THE COMMISSION Anyone may make a complaint to the commission. Complaints must be in writing (see complaint form in Appendix 3). The commission also considers complaints made anonymously and matters it learns of in other ways, such as from news articles or from information received in the course of a commission investigation. JUDICIAL MISCONDUCT The commission's authority is limited to investigating alleged judicial misconduct and, if warranted, imposing discipline. Judicial misconduct usually involves conduct in conflict with the standards set forth in the Code of Judicial Ethics (see Appendix 2). Examples of judicial misconduct include intemperate courtroom conduct (such as yelling, rudeness, or profanity), improper communication with only one of the parties in a case, failure to disqualify in cases in which the judge has or appears to have a financial or personal interest in the outcome, delay in performing judicial duties, and public comment about a pending case. Judicial misconduct also may involve improper off-the-bench conduct such as substance abuse, using court resources for personal business, or misuse of the judicial title.

Judges do engage in discrimination and other misconduct or there would not be cases such as these:

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>



## Pending Cases – Press Releases & Documents

**COLE, Emily J. Los Angeles County Superior Court**
- 05/29/24 [ Press Release ]. Commission Issues Severe Public Censure of Judge Emily J. Cole.
  See [ DISCIPLINE ].

**GRIEGO, Thomas J. Los Angeles County Superior Court**
- 07/11/24 [ Press Release ]. Commission Issues Public Admonishment of Judge Thomas J. Griego.
  See [ DISCIPLINE ].

**HARRIS, Wendy M. Riverside County Superior Court**
- 08/29/23 [ Press Release ]. Commission Issues Public Admonishment of Commissioner Wendy M. Harris. See [ DISCIPLINE ].

**HEALY, Daniel J. Solano County Superior Court**
- 05/23/24 [ Press Release ]. Commission Issues Public Admonishment of Judge Daniel J. Healy.
  See [ DISCIPLINE ].

### Featured Links
- **Pending Cases - Press Releases & Documents**
- **Case Statistics**
- **Public Discipline & Decisions**
- **Private Discipline**
- **Overview of Commission Proceedings**
- **Filing a Complaint**
- **FAQ's**
- **Mandate & Legislative History**
- **Legal Authority**
- **Gift Limit - CCP § 170.9**
- **Videos**
- **Committee to Review**

**HEALY, Timothy S. Calaveras County Superior Court**
- 07/16/24 [ Press Release ]. Commission Issues Public Admonishment of Judge Timothy S. Healy.
  See [ DISCIPLINE ].

**HUNT, Derek W. Orange County Superior Court**
- 08/31/23 [ Press Release ]. Commission Issues Decision and Order Imposing Public Admonishment on Former
  Judge Derek W. Hunt. See [ DECISION ].

**JACOBS, Lillian Vega Los Angeles County Superior Court**
- 06/29/23 [ Press Release ]. Commission Issues Public Admonishment of Judge Lillian Vega Jacobs. See [ DISCIPLINE ].

**KREIS, Gregory J. Humboldt County Superior Court**
- 05/28/24 [ Press Release ]. Commission Issues Decision and Order Imposing Public Censure and Bar Pursuant
  to Stipulation on Judge Gregory J. Kreis. See [ DECISION ].
- 02/07/24 [ Press Release ]. Commission Institutes formal proceedings concerning Judge Gregory J. Kreis. See [
  NOTICE ][ ANSWER ][ FIRST AMENDED NOTICE ][ ANSWER TO FIRST AMENDED NOTICE ].

**MALLERY, Tony R. Lassen County Superior Court**
- 05/02/24 [ Press Release ]. Commission Issues Decision and Order Removing Judge Tony R. Mallery from
  Office. See [ DECISION ].
- 01/30/24 [ Press Release ]. Commission Issues notice of oral argument. See [ NOTICE ].
- 04/27/23 [ Press Release ]. Commission announces hearing update.
- 04/10/23 [ Press Release ]. Commission announces hearing rescheduled.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>



The public is also allowed to file civil lawsuits against judges.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 49 -

https://www.ttb.org/programs/the-5-year-study

**RG19034687 BERNSTEIN MARY 9/11/2019**
**Bernstein VS Durbin**
**CH-100 Request for Orders to Stop Harassment (Civil**
**Harassment)**
**RG19035648 BERNSTEIN MARY 9/19/2019**
**Bernstein VS Gibson**
**CH-100 Request for Orders to Stop Harassment (Civil**
**Harassment)**
**RG19036528 BERNSTEIN MARY 9/25/2019**
**Bernstein VS Hernandez**
**CH-100 Request for Orders to Stop Harassment (Civil**
**Harassment)**
**RG19037125 BERNSTEIN MARY 9/30/2019**
**Bernstein VS Simonson**
**CH-100 Request for Orders to Stop Harassment (Civil**
**Harassment)**

Civil Harassment Petition filed

Case Number: RG20057366

Title: Bernstein VS Rivera

Case Type: Civil

Complaint Type: CH-100 Request for Orders to

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 50 -

Stop Harassment (Civil Harassment)

Case Number: HG20057369

Title: Bernstein VS Rivera

Case Type: Civil

Complaint Type: CH-100 Request for Orders to

Stop Harassment (Civil Harassment)

ATTORNEY TIME RECORDS CHALLENGED

Case Number: HG20067974

Title: Bernstein VS Gibson

Case Type: Civil

Case Number: HG20068279

Title: Bernstein VS Durbin

Case Type: Civil

Jacky restraining order

John Gibson restraining order

Gibson Third  08 HG

Mona Oliver  13 HG

03/08/2022

HG21110708

Bernstein VS Oliver

Civil Harassment

05/19/2022

Yes

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 51 -

03/08/2022

Bernstein VS Gibson

Civil Harassment

05/19/2022

No

04/05/2022

HG20068279

Bernstein VS Durbin

Civil Harassment

06/02/2022

**21CV000668** GIBSON vs BERNSTEIN

**Civil Unlimited** (Civil Harassment)

Filed: 10/21/2021 Disposed: 05/19/2022 Court Finding - (Granted)


23CV031593 GIBSON vs TIGANO

Civil Unlimited (Civil Harassment)    Hayward Hall of Justice / DEPT 519 - HON. Mark Fickes

Filed: 04/24/2023

**HG20068279 Bernstein VS Durbin**

**DFEH DFEH CASE NUMBER: 201810-03850210**

**HUD MATTERS case numbers HUD CASE NUMBER: 09-19-4260-8**

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW</u>
<u>BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

**DOJ matter case number CALIFORNIA DEPARTMENT OF JUSTICE**

**CASE NO. PIU 806129**

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS



Luanne Rutherford claimed reviewed plainitff motion for leave to file first amended complaint on September 3 2019, and claimed to prepare opposition to motion for leave to file first amended compaint on September 16 2019 for 4.10 hours.  This is fraudulent for Plaintiff on medical leave until November 2020 and complete stay in effect.  The motion for leave to file amended compaint which was not prepared and filed until January 28 2021. Again, Plaintiff was on medical leave until November 4 2020. The only documents to be prepared during stay were the renewed motion to extend stay by plainitff filed September 11 2019 and case management statement filed by plaintiff September 11 2019.  The purpose was for October 11 2019 CMC scheduled by Paul Herbert in April 2019 to revisit and determine if stay lifted or if renewed.  Luanne Rutherford claimed to prepare and file opposition to motion for leave to file first amended Complete stay Apri 2019 - October 2019 First stay 6 months - no legal work to be peformed and no filngs by plaintiff or defense see court docket below - padding bills lying on bills fraud

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

misrepreentation.  __This is one of many fraudlent,__
__erroneous cases applied to, phantom billings__ that
disabled Plaintiff has burden identifying.  Scratched
out billing entries that defendants McNamara must avail
to Plaintiff.  Judges Eumi Lee and Keith Fong attempted
to grant fraudulent billings withou Plainitff
opportunity to oppose and without hearing in attempt to
bankrupt disabled plainitff and predatory displacement
entire family.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 55 -



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION -- FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 57 -



Motion to amend complaint filed January 28 2021 by Plaintiff Rutherford prepred and filed opposition to motion for leave to amend complaint years later February 9 2021. This type of fraudulent, duplicative billing Plaintiff is reporting to the state bar of California McNamara firm state bar compaint Luanne Rutherford and Christopher Allard.after stay lifted. Ethics violations. Judges Eumi Lee and Keith Fong attempting to suppress and issue judgment of such fraudulent billings on disabled senior citizen in effort to bankrupt plaintiff. Plaintiff filed the HG18897381 case personal injury mental anguish suffering in housing crisis. Plaintiff is on social security and retaliatory judges denial reasonable accommodations and attempt to make plainitff and her family disabled homeless. Predatory displacement.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

Di



McNamara law firm directing HOA members to harass evade service contributing to abuses of

Mary Bernstein and Elizabeth Tigano Luanne Rutherford – directing John Gibson to file

restraining order HUD complaint filed for harassment August 2021 husband stroke emergency

room Plaintiff destabilized August 23 2021 John Gibson driving over guns in vehicle right when

plaintiff pulled into carport parking right in front of unit #113 terrorizing – John Gibson had

criminal felony charges for pulling gun on delivery driver in February 2021 on probation.

Plaintiff was aware of gun ownership and violence. John Gibson taunting taking pictures of

Plaintiff terrorizing in front of unit. Plaintiff thought she was going to be shot and killed on the

spot. 21CR003653 People of the State of California v. John Gibson case number Alameda

County Superior Court. Judges Eumi Lee and Keith Fong aware of John Gibson case in

Alameda County Superior Court criminal matter.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

1   HUD matter counseling non client John Gibson below.   Luanne Rutherford counseling members

2   of HOA for years abuses Mary Bernstein demonstrated in billings discussion strategies inciting

3   harassment against disabled senior citizen and famiily.



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 61 -



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION -- FREMONT AND REPLY MOTION TO STRIKE COSTS



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 65 -



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION -- FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

John Gibson served November 5 2021 Luanne communication service of process complaint – john Gibson had been evading service of complaint for weeks – was called to Alameda County Sheriff to come and pick up

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 67 -



Concealing 2 25 2022 Eumi Lee Eliabeth Tigano mary bernstein appearance

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS



DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

Only one entry on billings redacted 2 25 2022 fabricated erroneous billings for entire case – misrepresentations fabrications by both Luanne Rutherford and Christopher Allard for billing in case abuse of discretion judges eumi lee and keith fong denial extensions attempt by Fong to thrwart filing of opposition to motion for attorney fees, reply costs memorandum and to make decision ruling under submission without hearing corruption abuses of discretion abuse of

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

1    disabled plaintiff and witness elizabeth tigano  court allowing abuses by defendants and defense
2    counsel disparity treatment



Once Luanne Rutherford no longer with firm none of the "redacted" entries any longer
demonstration John Gibson advisory harassment and others in case which will be proven at trial
and in federal case which judges have allowed

|  | Date | Challenge | Case Number(s)/ Agency/non HG1889738 1 matter | Hours | Description |
|---|---|---|---|---|---|
| 1. | 12/4/201 8 | This is not ONLY billing for HG18897381 this case and not eligible – would need to be apportioned | HUD/Depar tment Fair Housing/D OJ | 4.2 | Beginreview andanalysisof claimfile documentsfrom Farmers, includingDFEH,DOJ andAlamedaSuperiorCounCompl aints |
| 2. | 12/4/201 8 | This is not this HG18897381 case | DOJ | .20 | Telephonecall to HOA's personalcounselat Berding Weil regarding DOJ Complaint |
| 3. | 12/4/201 8 | This is not this HG18897381 case | DOJ | 1.0 | Telephone conference with HOA Board President Mike Durbin regardingDOJ Complaintandresponseto known claims |
| 4. | 12/4/201 8 | This is not this HG18897381 case |  | .5 | Telephoneconferencewith BobMaltzregardingvarious |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | specified | | | complaints filed by plaintiff and response to the same |
|---|---|---|---|---|---|
| 5. | 12/5/2018 | Administrative - This is not billing for HG18897381 this case and not eligible – would need to be apportioned | Admin | .5 | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | 1/2/2019 | This is not this HG18897381 case | HUD DFEH | .2 | |
| 11. | 1/2/2019 | This is not this HG18897381 case | HUD DFEH | .2 | |
| 12. | | | | | |
| 13. | 1/17/2019 | This is not this HG18897381 case | HUD DFEH | .30 | Telephone conference with carrier regarding upcoming mediation with DFEH |
| 14. | 1/17/2019 | This is not this HG18897381 case | HUD DFEH | .30 | Exchange emails with DFEH regarding scope of mediation and attendees |
| 15. | 1/17/2019 | This is not this HG18897381 case | HUD DFEH | .30 | Telephone call to insured regarding mediation with DFEH (Luanne canceled mediation) ELISE CHU |
| 16. | 1/21/2019 | This is not this HG18897381 case | HUD DFEH | 4.80 | Begin review and analysis of all complaints, available motions, CC&Rs, CC&Rs Rules and Guidelines, and Declarations from the Bernsteins |
| 17. | 1/22/2019 | This is not this HG18897381 case | HUD DFEH | 5.6 | Further review of all complaints, available motions, CC&Rs, CC&Rs Rules and Guidelines, and Declarations from the Bernsteins and begin preparation of DFEH mediation brief |
| 18. | 1/22/2019 | This is not this HG18897381 case | HUD DFEH | .40 | Telephone conference with DFEH mediator Elise Chu regarding reasons for canceling mediation |
| 19. | 1/22/2019 | This is not this HG18897381 case | HUD DFEH | .30 | Exchange emails with DFEH regarding scope of mediation and attendees |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | | |
|---|---|---|---|---|---|
| 20. | | | | | |
| 21. | | | | | November 2022 strange entry on date) recreated billings out of thin air |
| 22. | | | | | |
| 23. | | | | | |
| 24. | | | | | |
| 25. | | This is not this HG18897381 case (documents were not provided relative to this matter; unrelatd to task) mostly consisting of blank pages and unrelated response to discovery 52 pickup, Plaintiff has the binders | HUD DFEH | 4.3 | Review and analyze portions of the over 50,000 pages of documentsprovidedby co-counselfor purposesof preparing responseto DFEH Complaint fraud |
| 26. | | This is not this HG18897381 case (deposition review not related to mediation | HUD DFEH | 3.8 | Review andanalysisof depositiontestimonyof Tammy Fritz and SharonMassinghamandotherrelate ddocuments,in preparation of finalizingresponsesto DFEH Complaint(281 pages) fraud |
| 27. | | | | | |
| 28. | 2/20/20 19 | This is not this HG18897381 case No such recorded statement in this matter on this | Not certain if this is even applicabl | .6 | Receipt and review plaintiffs recorded statement Fraud Plaintiff on emergency leave in Arizona for Mother's Death – not even in area |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION -- FREMONT AND REPLY MOTION TO STRIKE COSTS

|  |  | date | e to any  matters |  |  |
|---|---|---|---|---|---|
| 29. | 3/12/2019 | There are multiple cases – this is not relable to this matter solely | | 7.2 | Review and analyze voluminous documents from co-counsel relatingto plaintiffs claims,includingpleadings,corresp ondence, discoveryanddocumentsprovidedb y plaintiff andthe HOA, including HOA records  fraud billing padding  lumping |
| 30. | 3/18/2019 | There are multiple cases – this is not relable to this matter solely  HUD DFEH DOJ | | 1.5 | Review of file for purposesof Round Table with Farmers and prepare Memo with summary of case  fraud billing padding |
| 31. | 3/19/2019 | There are multiple cases – this is not relable to this matter solely  HUD DFEH DOJ | | .9 | Participate in Round Table with Farmers  Hours |
| 32. | | | | | |
| 33. | | | | | |
| 34. | | | | | |
| 35. | | | | | |
| 36. | | There are multiple | | .3 | Telephoneconferencewith Farmersregardingstatusof 3 different |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | | |
|---|---|---|---|---|---|
| | | cases – this is not relable to this matter solely HUD DFEH DOJ | | | claims |
| 37. | | | | | |
| 38. | | | | | |
| 39. | | | | | |
| 40. | | | | | |
| 04/11/2019 | Court ordered stay no legal work | COURT ORDERED STAY | | | |
| 04/12/2019 | Court ordered stay no legal work | COURT ORDERED STAY | .6 | | Prepare lengthy email to carrier and client regarding court's order to stay action and continue trial date |
| 04/12/2019 | Court ordered stay no legal work | COURT ORDERED STAY | .3 | | Intense harassment begins by HOA and HOA Board Mike Durbin Joaquin John Gibson tactics community Prepare email to carrier with suggested plan of action once stay is lifted |
| | Court ordered stay no legal work Tenancy issues not | | | .4 | Exchange emails with property management company regarding |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 75 -

| | | | | |
|---|---|---|---|---|
| | related to this case number | | | plaintiffs demand to heat the pool and install steps |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| 9/3/2019 | Court ordered stay no legal work | | 2.4 | No motion for leave to file first amended complaint filed until 2021 – Luanne lies on billing fraud |
| 9/10/2019 | Court ordered stay no legal work | Gibson Durbin restraining orders | | Gibson billing not counsel for this man but continually interacting |
| 9/16/2019 | Court ordered stay no legal work | | 4.10 | **Prepare opposition to Plaintiffs motion to extend stay and for leave to file first amended complaint, including preparation of MPA and supporting declaration with exhibits;** No motion for leave to file first amended complaint filed until 2021 – Luanne lies on billing fraud |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

| | | Court ordered stay no legal work | | |
|---|---|---|---|---|
| 1 | | Court ordered stay no legal work | | |
| 2 | | Court ordered stay no legal work | | |
| 3 | | Court ordered stay no legal work | | |
| 4 | | Court ordered stay no legal work | | |
| 5 | | Court ordered stay no legal work | | |
| 6 | | Court ordered stay no legal work | | |
| 7 | | Court ordered stay no legal work | | |
| 8 | | Court ordered stay no legal work | | |
| 9 | | Court ordered stay no legal work | | |
| 10 | | Court ordered stay no legal work | | |
| 11 | | Court ordered stay no legal work | | |
| 12 | | Court ordered stay no legal work | | |
| 13 | | Court ordered stay no legal work | | |
| 14 | | Court ordered stay no legal work | | |
| 15 | | Court ordered stay no legal work | | |
| 16 | | Court ordered stay no legal work | | |
| 17 | | Court ordered stay no legal work | | |
| 18 | | Court ordered stay no legal work | | |
| 19 | | Court ordered stay no legal work | | |
| 20 | | Court ordered stay no legal work | | |
| 21 | | Court ordered stay no legal work | | |
| 22 | | Court ordered stay no legal work | | |
| 23 | | Court ordered stay no legal work | | |
| 24 | | Court ordered stay no legal work | | |
| 25 | | Court ordered stay no legal work | | |
| 26 | | Court ordered stay no legal work | | |
| 27 | | Court ordered stay no legal work | | |

28

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 77 -

| | | | |
|---|---|---|---|
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |
| Court ordered stay no legal work | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | Court ordered stay no legal work | | | |
|---|---|---|---|---|
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|---|---|---|---|---|
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Not this case RG19034687 Bernstein VS Durbin | | | Review court's docket for proof of service of moving papers regarding new request for restraining order |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| 41. | | | | |
| 42. | | | | |
| 43. | | | | |
| 44. | | | | |
| 45. | | | | |
| 46. | | | | |
| 47. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

| | | | | | |
|---|---|---|---|---|---|
| 48. | | | | | |
| 49. | | | | | |
| 50. | | | | | |
| 51. | | | | | |
| 52. | | | | | |
| 53. | | | | | |
| 54. | | | | | |
| 55. | | | | | |
| 56. | | | | | |
| 57. | | | | | |
| 58. | | | | | |
| 59. | | | | | |
| 60. | | | | | |
| 61. | | | | | |
| 62. | | | | | |
| 63. | | | | | |
| 64. | | | | | |
| 65. | | | | | |
| 66. | | | | | |
| 67. | | | | | |
| 68. | | | | | |
| 69. | | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|---|---|---|---|---|
| 70. | | | | |
| 71. | | | | |
| 72. | | | | |
| 73. | | | | |
| 74. | | | | |
| 75. | | | | |
| 76. | | | | |
| 77. | | | | |
| 78. | | | | |
| 79. | | | | |
| 80. | | | | |
| 81. | | | | |
| 82. | | | | |
| 83. | | | | |
| 84. | | | | |
| 85. | | | | |
| 86. | | | | |
| 87. | | | | |
| 88. | | | | |
| 89. | | | | |
| 90. | | | | |
| 91. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | | |
|---|---|---|---|---|---|
| 92. | | | | | |
| 93. | | | | | |
| 94. | | | | | |
| 95. | | | | | |
| 96. | | | | | |
| 97. | | | | | |
| 98. | | | | | |
| 99. | | | | | |
| 100. | | | | | |
| 101. | | | | | |
| 102. | | | | | |
| 103. | | | | | |
| 104. | | | | | |
| 105. | | | | | |
| 106. | | | | | |
| 107. | | | | | |
| 108. | | | | | |
| 109. | | | | | |
| 110. | | | | | |
| 111. | | | | | |
| 112. | | | | | |
| 113. | | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | | |
|---|---|---|---|---|---|
| 114. | | | | | |
| 115. | | | | | |
| 116. | | | | | |
| 117. | | | | | |
| 118. | | | | | |
| 119. | | | | | |
| 120. | | | | | |
| 121. | | | | | |
| 122. | | | | | |
| 123. | | | | | |
| 124. | | | | | |
| 125. | | | | | |
| 126. | | | | | |
| 127. | | | | | |
| 128. | | | | | |
| 129. | | | | | |
| 130. | | | | | |
| 131. | | | | | |
| 132. | | | | | |
| 133. | | | | | |
| 134. | | | | | |
| 135. | | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|---|---|---|---|---|
| 136. | | | | |
| 137. | | | | |
| 138. | | | | |
| 139. | | | | |
| 140. | | | | |
| 141. | | | | |
| 142. | | | | |
| 143. | | | | |
| 144. | | | | |
| 145. | | | | |
| 146. | | | | |
| 147. | | | | |
| 148. | | | | |
| 149. | | | | |
| 150. | | | | |
| 151. | | | | |
| 152. | | | | |
| 153. | | | | |
| 154. | | | | |
| 155. | | | | |
| 156. | | | | |
| 157. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|---|---|---|---|---|
| 158. | | | | |
| 159. | | | | |
| 160. | | | | |
| 161. | | | | |
| 162. | | | | |
| 163. | | | | |
| 164. | | | | |
| 165. | | | | |
| 166. | | | | |
| 167. | | | | |
| 168. | | | | |
| 169. | | | | |
| 170. | | | | |
| 171. | | | | |
| 172. | | | | |
| 173. | | | | |
| 174. | | | | |
| 175. | | | | |
| 176. | | | | |
| 177. | | | | |
| 178. | | | | |
| 179. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| 180. | | | | |
|------|--|--|--|--|
| 181. | | | | |
| 182. | | | | |
| 183. | | | | |
| 184. | | | | |
| 185. | | | | |
| 186. | | | | |
| 187. | | | | |
| 188. | | | | |
| 189. | | | | |
| 190. | | | | |
| 191. | | | | |
| 192. | | | | |
| 193. | | | | |
| 194. | | | | |
| 195. | | | | |
| 196. | | | | |
| 197. | | | | |
| 198. | | | | |
| 199. | | | | |
| 200. | | | | |
| 201. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | | |
|---|---|---|---|---|---|
| 202. | | | | | |
| 203. | | | | | |
| 204. | | | | | |
| 205. | | | | | |
| 206. | | | | | |
| 207. | | | | | |
| 208. | | | | | |
| 209. | | | | | |
| 210. | | | | | |
| 211. | | | | | |
| 212. | | | | | |
| 213. | | | | | |
| 214. | | | | | |
| 215. | | | | | |
| 216. | | | | | |
| 217. | | | | | |
| 218. | | | | | |
| 219. | | | | | |
| 220. | | | | | |
| 221. | | | | | |
| 222. | | | | | |
| 223. | | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|---|---|---|---|---|
| 224. | | | | |
| 225. | | | | |
| 226. | | | | |
| 227. | | | | |
| 228. | | | | |
| 229. | | | | |
| 230. | | | | |
| 231. | | | | |
| 232. | | | | |
| 233. | | | | |
| 234. | | | | |
| 235. | | | | |
| 236. | | | | |
| 237. | | | | |
| 238. | | | | |
| 239. | | | | |
| 240. | | | | |
| 241. | | | | |
| 242. | | | | |
| 243. | | | | |
| 244. | | | | |
| 245. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 89 -

| | | | | | |
|---|---|---|---|---|---|
| 246. | | | | | |
| 247. | | | | | |
| 248. | | | | | |
| 249. | | | | | |
| 250. | | | | | |
| 251. | | | | | |
| 252. | | | | | |
| 253. | | | | | |
| 254. | | | | | |
| 255. | | | | | |
| 256. | | | | | |
| 257. | | | | | |
| 258. | | | | | |
| 259. | | | | | |
| 260. | | | | | |
| 261. | | | | | |
| 262. | | | | | |
| 263. | | | | | |
| 264. | | | | | |
| 265. | | | | | |
| 266. | | | | | |
| 267. | | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | 268. | | | | |
|---|---|---|---|---|---|
| | 269. | | | | |
| | 270. | | | | |
| | 271. | | | | |
| | 272. | | | | |
| | 273. | | | | |
| | 274. | | | | |
| | 275. | | | | |
| | 276. | | | | |
| | 277. | | | | |
| | 278. | | | | |
| | 279. | | | | |
| | 280. | | | | |
| | 281. | | | | |
| | 282. | | | | |
| | 283. | | | | |
| | 284. | | | | |
| | 285. | | | | |
| | 286. | | | | |
| | 287. | | | | |
| | 288. | | | | |
| | 289. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| 290. | | | | |
|------|--|--|--|--|
| 291. | | | | |
| 292. | | | | |
| 293. | | | | |
| 294. | | | | |
| 295. | | | | |
| 296. | | | | |
| 297. | | | | |
| 298. | | | | |
| 299. | | | | |
| 300. | | | | |
| 301. | | | | |
| 302. | | | | |
| 303. | | | | |
| 304. | | | | |
| 305. | | | | |
| 306. | | | | |
| 307. | | | | |
| 308. | | | | |
| 309. | | | | |
| 310. | | | | |
| 311. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|------|--|--|--|--|
| 312. | | | | |
| 313. | | | | |
| 314. | | | | |
| 315. | | | | |
| 316. | | | | |
| 317. | | | | |
| 318. | | | | |
| 319. | | | | |
| 320. | | | | |
| 321. | | | | |
| 322. | | | | |
| 323. | | | | |
| 324. | | | | |
| 325. | | | | |
| 326. | | | | |
| 327. | | | | |
| 328. | | | | |
| 329. | | | | |
| 330. | | | | |
| 331. | | | | |
| 332. | | | | |
| 333. | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO <u>MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS</u>

| | | | | | |
|---|---|---|---|---|---|
| 334. | | | | | |
| 335. | | | | | |
| 336. | | | | | |
| 337. | | | | | |
| 338. | | | | | |
| 339. | | | | | |
| 340. | Court ordered stay no legal work | | | | |
| 341. | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |
| | Court ordered stay no legal work | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | |
|---|---|---|---|
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |
| | Court ordered stay no legal work | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | | | | |
|---|---|---|---|---|
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| | Court ordered stay no legal work | | | |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 97 -

| 1 | | | | |
|---|---|---|---|---|
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | Court ordered stay no legal work | | | |
| 20 | Court ordered stay no legal work | | | |
| 21 | Court ordered stay no legal work | | | |
| 22 | Court ordered stay no legal work | | | |
| 23 | Court ordered stay no legal work | | | |
| 24 | Court ordered stay no legal work | | | |
| 25 | Court ordered stay no legal work | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 98 -

| | | | | |
|---|---|---|---|---|
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |
| | Court ordered stay no legal work | | | |

MEMORANDUM OF COSTS CHALLENGED  UNTIMELY

NOT RELATED TO CC&R ENFORCEMENT ANY OF IT

PLAINTIFF INDIGENT WITH FEE WAIVERS SSDI

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

1   NO PREVAILING PARTY CASE IS NOT CONCLUDED AGENTS HOA BOARD

2   MEMBERS INVOLVED DEFENDANTS IN MATTER INCONCLUSIVE

3   Memorandum of Costs (Worksheet)

4   **Attachment 1g**

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| Filing | Filing Fee | Pay To |
|--------|-----------|--------|
| Filing | Answer to Complaint; Notice of Asociation $616.71 PACIFIC COAST LEGAL SERVICES, INC | |
| Filing | Sub of atty $30.00 PACIFIC COAST LEGAL SERVICES, INC | |
| Filing | Motion to Quash $541.75 PACIFIC COAST LEGAL SERVICES, INC | |
| Filing | notice to set aside default $120.58 PACIFIC COAST LEGAL SERVICES, INC | |
| Filing | opp, dec $84.72 PACIFIC COAST LEGAL SERVICES, INC | |

Filing - Supp dec to P's mnotion to compel $75.00 PACIFIC COAST LEGAL SERVICES, INC

Filing - Disassoc of atty $45.00 PACIFIC COAST LEGAL SERVICES, INC

Filing - Notice of entry of judgment $47.70 PACIFIC COAST LEGAL SERVICES, INC

Filing - D's opp to P's M leave to amend the complaint $47.70 PACIFIC COAST LEGAL SERVICES, INC

Filing - Reply x2 $37.33 FIRST LEGAL NETWORK LLC

Filing - opposition to Motion to Stay Case $58.33 FIRST LEGAL NETWORK LLC

Filing - Motion for Summary Judgement $424.03 FIRST LEGAL NETWORK LLC

Filing - Opp to Protective Order $35.00 FIRST LEGAL NETWORK LLC

Filing - Advance Fees $1,476.98 FIRST LEGAL NETWORK LLC

Filing - Motion to Strike $125.82 FIRST LEGAL NETWORK LLC

Filing - Advance fees $666.99 FIRST LEGAL NETWORK LLC

Filing - 10 Docs $361.38 FIRST LEGAL NETWORK LLC

Filing - Motion to Strike - Fees Advanced $467.00 FIRST LEGAL NETWORK LLC

Filing - Fees Advanced - MSA/DEC/PO/POS/MPA $1,377.15 FIRST LEGAL NETWORK LLC

Filing - Objection to Plaintiff's request $32.95 FIRST LEGAL NETWORK LLC

Filing - Dec of Lunanne Rutherford $909.95 FIRST LEGAL NETWORK LLC

Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC

Filing MSJ reply brief $123.50 FIRST LEGAL NETWORK LLC

Filing - electronic submission $39.95 FIRST LEGAL NETWORK LLC

Filing - Fees Advanced - Memorandum of Points and Authorities $986.15 FIRST LEGAL NETWORK LLC

Filing - Opposition to Disqualify Judge $63.14 FIRST LEGAL NETWORK LLC

Filing - Demurrer with MTS $6.75 FIRST LEGAL NETWORK LLC

Filing - oppostion $40.45 FIRST LEGAL NETWORK LLC

Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC

Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC

Filing - MTS - Fees advanced $540.65 FIRST LEGAL NETWORK LLC

Filing - D's Notice of Nonopposition $31.95 FIRST LEGAL NETWORK LLC

Filing - Notice of Change of Firm Name $23.20 FIRST LEGAL NETWORK LLC

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC
Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC
Filing - Demurrer with MTS - Fees Advanced $165.65 FIRST LEGAL NETWORK LLC
Filing - Reply Briefs $31.95 FIRST LEGAL NETWORK LLC
Filing - MTS - Fees advanced $542.65 FIRST LEGAL NETWORK LLC
Filing - D's Reply Brief in Support $31.95 FIRST LEGAL NETWORK LLC
Filing - MTS - Fees advanced $90.25 FIRST LEGAL NETWORK LLC
Filing - Stip of the parties to Extend - Fees advanced $901.95 FIRST LEGAL NETWORK LLC
Filing - stip - order $42.70 FIRST LEGAL NETWORK LLC

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

Filing - Oppsition Dec $110.75 FIRST LEGAL NETWORK LLC
Filing - Amended CMC Statement $90.25 FIRST LEGAL NETWORK LLC
Filing - D's Opposition to P $31.95 FIRST LEGAL NETWORK LLC

| Filing | CM Statement $61.90 FIRST LEGAL NETWORK LLC | |
|---|---|---|
| Filing | Dec of Andrew S. Elliott $31.95 FIRST LEGAL NETWORK LLC | Not McNamara lawyer third party fraud McNamara – attesting to bills and costs states he is the attorney, agent or party who claims these costs. See signature 8 14 2023 on Memorandum of Costs – no dates etc |
| Filing | Opp; Dec $28.80 FIRST LEGAL NETWORK LLC | |

**TOTAL: $11,828.21**

Memorandum of Costs (Worksheet)
**Attachment 16**

| Expert | Expert Fee |
|---|---|
| R. Blackseth Interests | Inc. $627.00 |
| H2 Engineers | Inc. $4637.50 |
| | |

**TOTAL: $5,264.50**

| Tolling trial date 5 years | Days excluded | Source | Dept |
|---|---|---|---|
| Medical Leave April 11 2019 – November 4 2020  (1st leave April 11 2019 – October 2019 Order extend) | 574 days | Court Order | 20 |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 103 -

| | | | |
|---|---|---|---|
| 2nd Leave (October 2019 – November 2020 Order lifting leave November 4 2020) during Pandemic | | | |
| Emergency Leave Mother Death 12 6 2021  - February 26 2022 | **83 days** | Court Order | 512 |
| **Emergency Leave Injury Facial February 26 2022 – April 2022** | **62 days** | VESCO hearing Order | 512 |
| COVID Long Covid Leave July 2022 – January 23 2023 | 192 days | VESCO Court Orders | 512 |
| | Total 911 days | | |
| March 19 2018 – March 19 2023 | Five Years | **1826 days** | |
| Add 911 days to March 19 2023 | | | |

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

| Difference | Result: Monday, final September 15, 2025 Within five years trial | | |
|---|---|---|---|
| February 21 2024 – April 2 2024 COVID Long COVID | | | |

## CONCLUSION FOR ARGUMENT 1

Each defendant's claim to attorney's fees must be considered separately. Plaintiff's complaint is a personal injury action stated under various legal theories in separate causes of action. Not all apply to each defendant.

According to Legal Match hosted at https://www.legalmatch.com/law-library/article/equitable-servitudes.html Equitable Servitude is defined as:

> What Is an Equitable Servitude?
> Equitable servitude is a concept in property law that restricts the use of property in a manner that benefits another property, and it is enforceable in equity. These restrictions, typically outlined in the form of contracts or agreements, are designed to ensure that the property is used or developed in a way consistent with the interests and intentions of the parties involved.

> 1. What Are Some Examples of an Equitable Servitude?

Some common examples of equitable servitudes include:

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 105 -

2. **Restrictions on building height or architectural style:** A property owner may be required to maintain a certain building height or adhere to a specific architectural style to preserve the aesthetic value of a neighborhood.

3. **Prohibitions on commercial use:** In some residential communities, an equitable servitude may prevent property owners from conducting commercial activities on their property to maintain the residential character of the area.

4. **Maintenance requirements:** A property owner may be required to maintain certain common areas, such as landscaping or shared facilities, as part of an equitable servitude within a homeowners' association.

5. **Environmental restrictions:** An equitable servitude may restrict certain activities, such as tree removal or alteration of natural features, to protect the environment or preserve the natural beauty of the area.

Equitable servitudes are similar to underlined real covenants in that both involve agreements that restrict the use of property and run with the land, meaning they bind future owners of the property.

## Equitable Servitude

An equitable servitude is a **restriction on property use** that is enforceable in equity. This case does not involve any restriction on property use.

**Defendants in case HG18897381 fraudulent billings submitted, costs without invoices as well as the case not involving equitiable servitude for reimbursement of attorney fees.**

Equitable servitudes may apply to both residential and commercial properties, and they often address issues such as land use, building restrictions, and maintenance responsibilities. **Plaintiff did not breach any maintenance responsibilities for unit, no restrict any use by defendants.**

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 106 -

None of the causes as to any defendants is an equity action to enforce the CC&Rs or

Association rules as "equitable servitudes," No relief by way of injunction or mandate is

requested as against any defendant. Section 5975 (c) was not intended to apply to **personal**

**injury** actions. Consequently, the provisions for attorney's fees under Civil Code Section 5975

(c ) do not apply. Defendants' motion should be denied as to each defendant.

## II. REDUCTION OF ATTORNEY'S FEES BY APPORTIONMENT

There are individual defendants that served on the HOA Board and individual non-board

members in this matter.  Assuming arguendo that the court finds that one or all three defendants

are entitled to attorney's fees, there remain issues of apportionment:

1. If only one corporate defendant is entitled to an attorney's fees award, then the fees claimed by

defense counsel, who represented the three corporate defendants jointly, must be apportioned

between the defendants. **Counsel cannot recover attorney's fees for that portion of the work**

**pertaining to the defendant who is not entitled to a fee award.  Likewise, counsel**

**representing individual HOA members in this action is not entitled to a fee award.  Many**

**entries in the invoices submitted are not applicable to this HG18897381 matter in which**

**judgment.  Further, some actions involved Plaintiff sister that is not a homeowner and not**

**a party to this action.  Plaintiff's sister has had and has separate actions against**

**defendants.  The billing time is applicable to agency matters HUD, Attorney General,**

**California Department of Fair Housing, individual restraining orders etc.  This judgment,**

**matter did not encompass every matter for the past several years.  The award if any would**

**be applicable only to this action.**

For example, if only Meadow Brook Association is entitled to attorney's fees, and 33% of the

work was on behalf of Associa and 33% on behalf of Massigham, then the fee claim must be

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

reduced by 66%.   No contract existed or CCRm between Associa Northern California, Massigham or individual HOA community defendants and Plaintiff.  Therefore, fee award equitiable services not applicable to these parties. If the work was on behalf of individual defendants, the fee claim must be even further. For example, non represented John Gibson an individual defendant and others.  Many billing entries redacted; if defendants make the argument for fees, defendants are required to avail this redacted billing entries for Plaintiff to address.  2. If the court finds that attommey's fees are awardable under some, but not all, of the causes of action, then the work must be apportioned and the fees reduced accordingly.

Defendants have failed to provide any information **regarding apportionment** in their moving papers. **Without such apportionment, the fees on their face are excessive and the request must be denied.**

Defendants claim that was a flat fee until October 2022 and then now on an hourly fee.[16] It is clear that billing entries were recreated as Plaintiff will show in oral argument phantom dates and work that was clearly never done.  In addition, Plaintiff's limited scope attorneys will testify that no such telephone conference ever occurred between Lloyd Winter and Luanne Rutherford or Christopher Allard which Christopher Allard attests to that all of these entries are true invoices and billing entries.  A state bar complaint is being filed against Luanne Rutherford and Christopher Allard for fraud.

In this case, defendants Massignahm, Associa Northern California, individual HOA community defendants and defendant Meadow Brook Association were all are still all represented by the

---

[16] Defendants were initially represented by in-house counsel Robert Maltz, Esq. of Hartsuyker, Stratman, Williams-Abrego. In December 2018, Luanne Rutherford, Esq. of McNamara, Ambacher, Wheeler, Hirsig & Gray substituted in as counsel of record. In July 2022, Christopher B. Allard of McNamara, Ambacher, Wheeler, Hirsig & Gray took over as counsel of record for defendants. In October 2022, this matter was converted from a flat fee case to an hourly case. [Allard Decl., ¶7] MPA pg. 8, ¶2.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

same attorneys. The demurrers and the summary judgment motion filed on their behalf were

joint documents. All costs incurred, other than the filing fees for the answers, were jointly

incurred.  Deposition attorney time and costs were incurred jointly. Court appearance fees were

incurred jointly. Legal research and drafting time was incurred jointly.

On its face, then, **not all of the attorney time, and therefore fees, can be claimed to have been**

**incurred on behalf of one or the other.**

These issues are similar to those in *Cassim v. Allstate Ins. Co*, (2004) 33 Cal.4th 780, 16

CR2d 374, considering apportionment of attorneys fees between a contract cause of action and a

tort cause of action. The plaintiff **was entitled only to fees incurred in the contract matter**. As

stated in *Cassim*:

"The fees recoverable, however, may not exceed the amount attributable to
the attorney's efforts to obtain the rejected payment due on the insurance contract.
Fees attributable to obtaining any portion of the plaintiff's award which exceeds the
amount due under the policy are not recoverable.'"' 33 Cal.4th at 807, 16 CR3d at 393,
quoting from Brandt v. Superior Court (1985) 37 Cal.3d 813 at 819, 210 CR 211.
"To determine the percentage of the legal fees attributable to the contract
recovery, the trial court should determine the total number of hours an attorney spent
on the case and then determine how many hours were spent working exclusively on
the contract recovery. Hours spent working on issues jointly related to both the tort
and contract recovery should be apportioned, with some hours assigned to the contract and
some to the tort." 33 Cal.4th at 812,16 CR3d at 397.

The party who claims the attorney's fees has the burden of proof on apportionment when fees

**have been incurred jointly with one not entitled to fees.** See Cassim, supra, 33 Cal.4th at

813,16 CR3d at 398 0.16. See also Fennessy v. DeLeww-Cather Corp. 218 CA3d 1192, 1196,

267 CR 772, 774:

**("[I]t was undisputed that all defendants were represented by the same counsel,** who

took depositions and performed other tasks that benefitted all defendants. Once

[plaintiff] questioned [defendant's] entitlement to costs incurred by the six

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

defendants nothing more needed to be or could have been added by additional

declarations or affidavits [from plaintiff]." 218 CA3d at 1196, 267 CR at 774)

### III. REDUCTION OF FEES BECAUSE OF DUPLICATIVE WORK BY ATTORNEYS NOT OF RECORD

As stated in Mix v. Tumanjan Development Corp. (2002) 102 CA 4" 1318, 1324, 126 CR2d 267, 272:

"Tt is not unusual for a litigant to be represented by more than one attorney.

For example, a litigant may be represented by both privately retained counsel and in house

counsel. [Cases cited.] In those cases, a litigant entitled to an attorney fee

award may recover attorney fees for both private counsel and in-house counsel,

**provided the legal services are not unnecessarily duplicative."** (Emphasis added).

Only reasonable attorneys' fees are awardable. The fees requested here are unreasonable,

and duplicative, for the reasons set forth below.

The firms of Hartsuyker, Stratman & Williams-Abrego now Law Offices of Scott C Stratman

and McNamara, Ney, Beatty, Slattery, Borges & Ambacher LLP now McNamara, Ambacher,

Wheeler, et al. have been paid already by Farmers Insurance under insurance policy insurance

defense and now seek double billing, duplicative payment of legal services.  Christopher Bernard

Allard #264842,  Robert Mark Maltz #143078 and Luanne Rutherford #153336 firms seek

further enrichment in an attempt to predatorily displace and bankrupt disabled plaintiff.  In

addition, Meadow Brook HOA has attempted to block, thwart any attempts to refinance to pay

amounts by holding up, refusing to provide documentation to lenders in dispute during the

summer of 2024 to insure displacement and homelessness of a disabled family.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

Robert Malz initially the attorney and then Luanne Rutherford added.  An invoice memorandum

of costs Anderw Elliott Andrew Spencer Elliott #254757 for preparation  reference for third

party attorney Severson listed not even with either law firm demonstrating attempt to throw each

and every billing and stick to this matter.  On its face it seems an unreasonable that defenddants

attempt to impose unrelated costs and bills for this personal injury case." [17]

The summary judgment motion was prepared by Luanne Rutherford. Christopher Allard did not

work on the motion for summary judgment at all.  The unfortunate

part of him coming into the case so "late in the game" is that, unlike defense counsel Mr. Allard

is in no position to attest to what fees and costs were incurred as he has had no familiarity with

the facts, the legal issues, the depositions, the interrogatories, and the demutters.  Therefore,

recreating the billings and attesting to their authenticity a declaration on behalf of another

attorney that is no longer with the firm is fraudulent, misrepresenting and deceitful.

Had Mr. Allard prepared the motions, appeared at court hearings, he would be in a position to

attest to the time and preparation.  A declaration is a statement under oath to the truth.  The court

will note that the demurrers prepared by Luanne Rutherford contain most, if not all, of the same

arguments and case law ultimately finding their way into the summary judgment motion

prepared by Luanne Rutherford boilerplate changing names only billings.

---

[17] There is only one plaintiff. There were 3 depositions no meadow brook hoa depositions and defense counsel

refused to provide for depositions despite all of the third parties served with subpoenas.  The Court did not

enforce subpoena deposition compliance.  None of the depositions were referenced in Defendants motion for

summary judgment.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 111 -

There has been considerable duplicative work for the defense. The law is clear that attorney's fees are not awardable for duplicative work or unnecessary work; that only reasonable fees are recoverable.

## IV. DISCRETION TO DETERMINE NO PREVAILING PARTY FOR PURPOSES OF ATTORNEY'S FEE AWARD.

**Fair Housing Rights.  People do not elect to purchase a property in an HOA with varying terms and conditions, no tenancy rights, no protection.  This would be enslavement and bondage.  To be subjected to abuses, denial of accommodations, outrageous assessments imposed at whim, intimidation, domimination and manipulation, abuses, exploitation, social isolation and alienation**

Finally, the court has discretion in equity to determine that for purposes of attorney's fees there is no "prevailing party." As stated in Kytasty v, Godwin (1980) 102 CA3d 762, 162 CR 556:

"The judgment as well as this opinion must be considered good news and bad news to each of the parties, and in good conscience we cannot say attorneys' fees should be awarded to either for the trial or for this appeal." 102 CA3d at 774, 162 CR at 563.

In this case, if one considers the actual impact of this court's ruling to the individual homeowners of the complex, rather than the insurance carrier, the decision surely is mixed. It may actually be viewed as detrimental to the Homeowners' Association in the long run.

The end result of the court's decision, urged upon the court by insurance defense counsel, is that the homeowners have less protection from tenant's acts and omissions than otherwise would be the case. A landlord homeowner (absentee who rents out his unit) is not liable for his tenants acts or omissions in the common areas, despite the language of the CC&Rs stating that

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

the homeowter shall be "fully responsible" for the acts or omissions of his tenant in the common areas.

There appears to be a conflict of interest between defendants Associa, Massingham individual defendants HOA community and the Meadow Brook Homeowners' Association. If defendants Associa, Massingham, individual hoa community defendants and the Meadow m Brook Homeowner's Association were not insured by the same cartier and were not represented by the same defense counsel, one may reasonably conclude their positions would have been different.

The Meadow Brook Homeowner's Association would likely have cross-complained against Associa, Massingham concerning issues pointing fingers.  Likewise individual defendants in the community so harassing Plaintiff had to obtain restraining orders and file complaintis with HUD, Cal Dfeh.  Meadow Brook for instance was so unhappy with Associa that it retained a different property manager, Common Interest just prior to the filing of this Complaint.  On another note, one would believe that a homeowners association in a different scenario other than Meadow Broook whould have sided with a disabled plaintiff and her family on the argument that for instance John Gibson, Mona Oliver and others liable. There is no logical reason that the Association would want to permit Mona Oliver or any other homeowner to have irresponsible tenants, who are irresponsible and engage in violence and harassing conduct of the disabled. The only reason the argument was made by insurance defense counsel is that it benefits the insurance carrier in this particular case.

On the basis of the foregoing, this court may exercise its discretion and determine that there is both "good news" and "bad news" to cach of the actual parties in the case (not the carrier) and,

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 113 -

**on that basis, find in the court's discretion that for the purposes of an award of attorneys'**

**fees, there is no "prevailing party."** Aytasty v. Godwin (1980) 102 CA3d 762, 162 CR 556.

## V. DISHONEST FALSIFIED, FRAUD, BOGUS ATTORNEY BILLING INFLATED; COSTS NOT AUTHORIZED, ATTORNEYS AT ANOTHER FIRM CLAIMED – DOCUMENTS NEVER PREPARED AND FILED; DOCUMENTS CLAIMED TO BE FILED TWO YEARS PRIOR TO FILING, BLOCKED BATCHED UNDATED COSTS EXCESSIVE UNAUTHORIZED EXPERT WITNESS OTHER COSTS TO LEAD TO LITIGATION

State Bar complaints underway against Christopher B. Allard and Luanne Rutherford, fraud Claims of speaking with limited scopes attorneys at length when no such telephone conference ever occurred – there are many examples of fraudulent mistaken billing in invoices. Plaintiff limited scope attorneys confirmed no such telephonic conference occurred between defense counsel and limited scope attorneys retained by plaintiff for opposition o motion for summary judgment.

## V. MULTIPLE CASES RESTRAINING ORDER, HUD CASES NOT QUALIFIED APPLICABLE FOR THIS CLAIM FOR ATTORNEY'S FEES; OTHER DEFENDANTS INDIVIDUAL NOT QUALIFIED TO BE CLAIMED UNDER THESE THREE CORPORATE ENTTITY DFENDANTS

Multiple cases bundled into these motion for atroney fees as exhibited by invoices provided, padded – State Bar Complaint filed for fraud and exploitation oif disabled litigation take advantage

- Several HUD DFEH matters
- John Gibson restraining order
- Michael Durbin restraining order
- Susan Hernandez restraining order
- Mark Simonsen restraining order
- DOJ

- Emails to community to seek "declarations" against disabled Plaintiff inciting harassment on premises in billing entries

## CONCLUSION

Based on all of the foregoing, defendants' motion for attorneys' fees and costs should be denied since

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

1   this lawsuit was not "to enforce" an "equitable servitude" as those terms are used in Civil Code

2   Sec.

3   5975,

    Alternatively, said fees should be apportioned and reduced. If attorney's fees are to be

4   awarded, plaintiffsubmits that $4500 would be a reasonable sum for the summary Judgment

5   motion.

6   Added to the claim of Mr. Peterson for $3500, total fees should not exceed $8000.

7   If one apportions the attorneys' work 50/50 between the two defendants, then if the court

8   finds that only one is entitled to attorneys' fees, that sum should be $4000.

9

10

11

12

13   _____ **MARY  BERNSTEIN**

14   **https://www.tcd.ie/library/early-irish-mss/how-the-four-evangelists-became-**

15   **gospel-writers-and-acquired-their-**

16   **symbols/#:~:text=In%20his%20Commentary%20on%20the,and%20John**
     **%20is%20the%20Eagle.**

17

18

19   Numerous accounts of Christ's life were written in the centuries following his death, yet

20   only four became accepted as canonical, or authentic, by the institution of the Christian
     Church. [1] These Gospels were identified first by the second century Gallic Bishop

21   Irenaeus.[2]

     Nature confirmed that the number four was appropriate because, as Irenaeus observed,

22   the Earth had four zones where people lived and there were also four winds. Irenaeus

23   thus identified the Evangelists, Matthew, Mark, Luke and John, as the four pillars of the
     Church, the four authors of the true Gospels.

24

25

26

27

28   DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
     OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
     BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

                                    - 115 -

Irenaeus went on to compare the Evangelists with the mystical creatures who appeared at the beginning of John's vision of the apocalypse.  The book of Revelation (4.7) records that surrounding Christ's throne in heaven were beings that resembled a man, a lion, a calf, and an eagle (fig. 1).  John's 'living creatures' were in turn a reference to the four cherubim holding aloft the throne of God in the vision of the Old Testament prophet Ezekiel (1.4-11). The beings in Ezekiel's vision had the features of all four creatures and four wings each as well.

**Abba Father**

**The word of God infuses me with faith, hope and strength which is getting me through this horrific situation.**

**Psalm 34**[a][b]

**Of David. When he pretended to be insane before Abimelek, who drove him away, and he left.**

[1] I will extol the LORD at all times;
  his praise will always be on my lips.
[2] I will glory in the LORD;
  let the afflicted hear and rejoice.
[3] Glorify the LORD with me;
  let us exalt his name together.
[4] I sought the LORD, and he answered me;
  he delivered me from all my fears.
[5] Those who look to him are radiant;
  their faces are never covered with shame.
[6] This poor man called, and the LORD heard him;
  he saved him out of all his troubles.
[7] The angel of the LORD encamps around those who fear him,
  and he delivers them.
[8] Taste and see that the LORD is good;
  blessed is the one who takes refuge in him.
[9] Fear the LORD, you his holy people,
  for those who fear him lack nothing.
[10] The lions may grow weak and hungry,
  but those who seek the LORD lack no good thing.
[11] Come, my children, listen to me;
  I will teach you the fear of the LORD.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

¹² Whoever of you loves life
  and desires to see many good days,
¹³ keep your tongue from evil
  and your lips from telling lies.
¹⁴ Turn from evil and do good;
  seek peace and pursue it.
¹⁵ The eyes of the LORD are on the righteous,
  and his ears are attentive to their cry;
¹⁶ but the face of the LORD is against those who do evil,
  to blot out their name from the earth.
¹⁷ The righteous cry out, and the LORD hears them;
  he delivers them from all their troubles.
¹⁸ The LORD is close to the brokenhearted
  and saves those who are crushed in spirit.
¹⁹ The righteous person may have many troubles,
  but the LORD delivers him from them all;
²⁰ he protects all his bones,
  not one of them will be broken.
²¹ Evil will slay the wicked;
  the foes of the righteous will be condemned.
²² The LORD will rescue his servants;
  no one who takes refuge in him will be condemned.

**129** Many a time have they afflicted me from my youth, may Israel now say:

² Many a time have they afflicted me from my youth: yet they have not prevailed against me.

³ The plowers plowed upon my back: they made long their furrows.

⁴ The LORD is righteous: he hath cut asunder the cords of the wicked.

⁵ Let them all be confounded and turned back that hate Zion.

⁶ Let them be as the grass upon the housetops, which withereth afore it groweth up:

⁷ Wherewith the mower filleth not his hand; nor he that bindeth sheaves his bosom.

⁸ Neither do they which go by say, The blessing of the LORD be upon you: we bless you in the name of the LORD.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

Isaiah 40

New International Version

**Comfort for God's People**

**40** Comfort, comfort my people,
  says your God.
[2] Speak tenderly to Jerusalem,
  and proclaim to her
that her hard service has been completed,
  that her sin has been paid for,
that she has received from the LORD's hand
  double for all her sins.
[3] A voice of one calling:
"In the wilderness prepare
  the way for the LORD[a];
make straight in the desert
  a highway for our God.[b]
[4] Every valley shall be raised up,
  every mountain and hill made low;
the rough ground shall become level,
  the rugged places a plain.
[5] And the glory of the LORD will be revealed,
  and all people will see it together.
For the mouth of the LORD has spoken."
[6] A voice says, "Cry out."
  And I said, "What shall I cry?"
"All people are like grass,
  and all their faithfulness is like the flowers of the field.
[7] The grass withers and the flowers fall,
  because the breath of the LORD blows on them.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 118 -

Surely the people are grass.

[8] The grass withers and the flowers fall,

but the word of our God endures forever."

[9] You who bring good news to Zion,

go up on a high mountain.

You who bring good news to Jerusalem,[d]

lift up your voice with a shout,

lift it up, do not be afraid;

say to the towns of Judah,

"Here is your God!"

[10] See, the Sovereign LORD comes with power,

and he rules with a mighty arm.

See, his reward is with him,

and his recompense accompanies him.

[11] He tends his flock like a shepherd:

He gathers the lambs in his arms

and carries them close to his heart;

he gently leads those that have young.

[12] Who has measured the waters in the hollow of his hand,

or with the breadth of his hand marked off the heavens?

Who has held the dust of the earth in a basket,

or weighed the mountains on the scales

and the hills in a balance?

[13] Who can fathom the Spirit[e] of the LORD,

or instruct the LORD as his counselor?

[14] Whom did the LORD consult to enlighten him,

and who taught him the right way?

Who was it that taught him knowledge,

or showed him the path of understanding?

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

[15] Surely the nations are like a drop in a bucket;

  they are regarded as dust on the scales;

  he weighs the islands as though they were fine dust.

[16] Lebanon is not sufficient for altar fires,

  nor its animals enough for burnt offerings.

[17] Before him all the nations are as nothing;

  they are regarded by him as worthless

  and less than nothing.

[18] With whom, then, will you compare God?

  To what image will you liken him?

[19] As for an idol, a metalworker casts it,

  and a goldsmith overlays it with gold

  and fashions silver chains for it.

[20] A person too poor to present such an offering

  selects wood that will not rot;

they look for a skilled worker

  to set up an idol that will not topple.

[21] Do you not know?

  Have you not heard?

Has it not been told you from the beginning?

  Have you not understood since the earth was founded?

[22] He sits enthroned above the circle of the earth,

  and its people are like grasshoppers.

He stretches out the heavens like a canopy,

  and spreads them out like a tent to live in.

[23] He brings princes to naught

  and reduces the rulers of this world to nothing.

[24] No sooner are they planted,

  no sooner are they sown,

  no sooner do they take root in the ground,

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

than he blows on them and they wither,
  and a whirlwind sweeps them away like chaff.
25 "To whom will you compare me?
  Or who is my equal?" says the Holy One.
26 Lift up your eyes and look to the heavens:
  Who created all these?
He who brings out the starry host one by one
  and calls forth each of them by name.
Because of his great power and mighty strength,
  not one of them is missing.
27 Why do you complain, Jacob?
  Why do you say, Israel,
"My way is hidden from the LORD;
  my cause is disregarded by my God"?
28 Do you not know?
  Have you not heard?
The LORD is the everlasting God,
  the Creator of the ends of the earth.
He will not grow tired or weary,
  and his understanding no one can fathom.
29 He gives strength to the weary
  and increases the power of the weak.
30 Even youths grow tired and weary,
  and young men stumble and fall;
31 but those who hope in the LORD
  will renew their strength.
They will soar on wings like eagles;
  they will run and not grow weary,
  they will walk and not be faint.

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND
OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW
BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

**Footnotes**

    a.   Isaiah 40:3 Or *A voice of one calling in the wilderness: / "Prepare the way for the LORD*

    b.   Isaiah 40:3 Hebrew; Septuagint *make straight the paths of our God*

    c.   Isaiah 40:9 Or *Zion, bringer of good news, / go up on a high mountain. / Jerusalem, bringer of good news*

    d.   Isaiah 40:13 Or *mind*

# Revelation 9
# New International Version

**9** The fifth angel sounded his trumpet, and I saw a star that had fallen from the sky to the earth. The star was given the key to the shaft of the Abyss. [2] When he opened the Abyss, smoke rose from it like the smoke from a gigantic furnace. The sun and sky were darkened by the smoke from the Abyss. [3] And out of the smoke locusts came down on the earth and were given power like that of scorpions of the earth. [4] They were told not to harm the grass of the earth or any plant or tree, but only those people who did not have the seal of God on their foreheads. [5] They were not allowed to kill them but only to torture them for five months. And the agony they suffered was like that of the sting of a scorpion when it strikes. [6] During those days people will seek death but will not find it; they will long to die, but death will elude them.

[7] The locusts looked like horses prepared for battle. On their heads they wore something like crowns of gold, and their faces resembled human faces. [8] Their hair was like women's hair, and their teeth were like lions' teeth. [9] They had breastplates like breastplates of iron, and the sound of their wings was like the thundering of many horses and chariots rushing into battle. [10] They had tails with stingers, like scorpions, and in their tails they had power to torment people for five months. [11] They had as king over them the angel of the Abyss, whose name in Hebrew is Abaddon and in Greek is Apollyon (that is, Destroyer).

[12] The first woe is past; two other woes are yet to come.

[13] The sixth angel sounded his trumpet, and I heard a voice coming from the four horns of the golden altar that is before God. [14] It said to the sixth angel who had the trumpet, "Release the

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

four angels who are bound at the great river Euphrates." [15] And the four angels who had been kept ready for this very hour and day and month and year were released to kill a third of mankind. [16] The number of the mounted troops was twice ten thousand times ten thousand. I heard their number.

[17] The horses and riders I saw in my vision looked like this: Their breastplates were fiery red, dark blue, and yellow as sulfur. The heads of the horses resembled the heads of lions, and out of their mouths came fire, smoke and sulfur. [18] A third of mankind was killed by the three plagues of fire, smoke and sulfur that came out of their mouths. [19] The power of the horses was in their mouths and in their tails; for their tails were like snakes, having heads with which they inflict injury.

[20] The rest of mankind who were not killed by these plagues still did not repent of the work of their hands; they did not stop worshiping demons, and idols of gold, silver, bronze, stone and wood—idols that cannot see or hear or walk. [21] Nor did they repent of their murders, their magic arts, their sexual immorality or their thefts.

Executed on August 12, 2024, at Fremont, California.

_____  **MARY BERNSTEIN**

DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

1
2
3
4

**MARY BERNSTEIN**
**3416 Deerwood Terrace, #113**
**Fremont, CA  94536**
**Email:  mbernsteinpurple@hotmail.com**
**(510) 938-6280**
**Plaintiff Pro Se**

5

6

### SUPERIOR COURT OF CALIFORNIA

7

### COUNTY OF ALAMEDA

8
9

MARY BERNSTEIN,

10

     Plaintiffs,

11

     vs.

12

ASSOCIA NORTHERN CALIFORNIA, et

13

al.,

14

     Defendants.

15
16
17
18
19
20
21
22

Case No.   HG18897381

**DECLARATION OF ELIZABETH**
**TIGANO IN SUPPORT OF**
**OPPOSITION TO MOTION FOR**
**ATTORNEY FEES DEFENDANTS**
**ASSOCIA NORTHERN CALIFORNIA,**
**MEADOW BROOK VILLAGE**
**ASSOCIATION - FREMONT, AND**
**MASSINGHAM & ASSOCIATES'**
**MOTION**
**FOR ATTORNEY'S FEES AND REPLY**
**PLAINTIFF'S MOTION TO STRIKE**
**TAX COSTS**[1]

**DATE:**
**TIME:**
**DEPT:**
**JUDGE: Keith Wong**

23
24
25
26
27
28

[1] *So do not fear, for I am with you;*
  *do not be dismayed, for I am your God.*
*I will strengthen you and help you;*

  *I will uphold you with my righteous right hand.* Isaiah 41:10

- 1 – DECLARATION OF ELIZABETH TIGANO IN SUPPORT OF Opposition to Motion for Attorney Fees



Oceanside California Mary and baby brother Frankie in the homeless shelter playpen. Frankie Oceanside California 1980-1982.



I, Elizabeth Tigano, declare:

- His blood redeems us. There was a price against us that we could not pay, but the blood of Jesus redeemed us. 1 Peter 1:18-19 says, "Forasmuch as ye know that ye were not redeemed with corruptible things.... But with the precious blood of Christ, as of a lamb without blemish and without spot." His blood brings us into fellowship with God.

1. I am a witness in this action.

2. I have personal knowledge of the facts stated below. I am competent to testify to these facts and will do so in court if called as a witness.

- 2 – DECLARATION OF ELIZABETH TIGANO IN SUPPORT OF Opposition to Motion for Attorney Fees

3. I reside at 3416 Deerwood Terrace #113 Fremont California 94536 since 2022 after my mother died.  This is a terrible dysfunctional place.

4. I am a resident tenant here and am entitled to use the premises and entitled to enjoyment.  My safety and welfare is to be protected here.  My family members have are also constantly traumatized by this John Gibson.

5. The HOA now trying to make us bankrupt destroy us when we are on social security paying to stay here is criminal.  We cannot even go out with harassment.  The attorneys and the HOA now trhying to get attorney fees because we filed a complaint to prevent being homeless is absurd. These are horrific things we are going through in this Court And in this place.  The attorney fees and costs should not be allowed because we filed to try top save our house for important reasons. This is not a frivolous case but safety and welfare

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 27o , 2024 at Fremont, California.

*Elizabeth C Tigano*

**ELIZABETH TIGANO**

- 3 –  DECLARATION OF ELIZABETH TIGANO IN SUPPORT OF Opposition to Motion for Attorney Fees

EXHIBIT K

Jesus Prays for All Believers

20 "My prayer is not for them alone. I pray also for those who will believe in me through their message, 21 that all of them may be one, Father, just as you are in me and I am in you. May they also be in us so that the world may believe that you have sent me. 22 I have given them the glory that you gave me, that they may be one as we are one— 23 I in them and you in me—so that they may be brought to complete unity. Then the world will know that you sent me and have loved them even as you have loved me.

24 "Father, I want those you have given me to be with me where I am, and to see my glory, the glory you have given me because you loved me before the creation of the world.

25 "Righteous Father, though the world does not know you, I know you, and they know that you have sent me. 26 I have made you[e] known to them, and will continue to make you known in order that the love you have for me may be in them and that I myself may be in them."

**MARY HELEN BERNSTEIN, MSAJS**
**3416 Deerwood Terrace, #113**
**Fremont, CA  94536**
**Email:** mbernsteinpurople@hotmail.com
**(510) 938-6280**
**Plaintiff Pro Se**

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| MARY HELEN BERNSTEIN, | Case No.   HG18897381 |
| Plaintiff, | **PLAINTIFF MARY BERNSTEIN'S REPLY** IN SUPPORT OF MOTION |
| vs. | TO STRIKE TAX COSTS AGAINST DEFENDANTS |
| ASSOCIA NORTHERN CALIFORNIA, et al., | ASSOCIA NORTHERN CALIFORNIA, |
| Defendants. | MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES' MEMORANDUM OF COSTS[1] |
| | Date: April 2, 2024 |
| | Time: 2:30 pm |
| | Dept.: 517 |

---

[1] *So do not fear, for I am with you;*
   *do not be dismayed, for I am your God.*
*I will strengthen you and help you;*
   *I will uphold you with my righteous right hand.*  Isaiah 41:10

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS



Oceanside California Mary and baby brother Frankie in the homeless shelter playpen. Frankie Oceanside California 1980-1982.

TABLE OF CONTENTS

    I.   INTRODUCTION

    II.  STANDARD OF REVIEW

TABLE OF AUTHRORITIES

Chaaban v. Wet Seal, Inc.

(2012)

203 Cal.App.4th 49 ............ ............... .....

Charton v. Harkey (2016)

247 Cal.App.4th 730 ......................

Davis Lumber Co. v. Hubbell (1955)

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

137 Cal.App.2d 148 ...............................

El Dorado Meat Co. v. Yosemite Meat & Locker Serv., .1nc.

150 Cal.App.4th ... ..

Fries v. Rite Aid Corp. (2009)

173 Cal.App.4th 182 ..... .....

Garcia v. Hyster Co. (1994)

28 Cal.App.4th 724 ........................

Gorman v. Tassajara Dev. Corp. (2009)

178 44

Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co.

223 Cal.App.3d 924 .

In re Ins. Installment Fee Cases (2012)

211 Cal.App.4th 1395 ..... ........

Jones v. Dumrichob (1998)

63 Cal.App.4th 1258

Ladas v. California State Auto. Ass 'n (1993)

(2007)

(1990)

..8

..............5

. 8, 13

. .....7, 9, 10, 12

19 Cal.App.4th 761

Levy v. Toyota Motor Sales (1992)

4 Cal.App.4th 807 .....

Perko 's Enters., Inc. v. RRNS Enters.

4 Cal.App.4th 238 .....................

Ripley v. Pappadopoulos (1994)

(1992)

23 Cal.App.4th 1616 ......... ... ...

Sanabria v. Embrey (2001)

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

1  92 Cal.App.4th 422 ..... ......................
2  Sci. Applications Int'l Corp. v. Superior Court (1995)
   39 Cal.App.4th 1095 ....................................
3  Seever v. Copley Press, Inc.
4  (2006)
5  141 Cal.App.4th .
6  Statutes
7  Code Civ. Proc.,
8  Code Civ. Proc.,
9  Code Civ. Proc.,
10 Code Civ. Proc.,
11 Code Civ. Proc.,
12 Code Civ. Proc.,
13 Code Civ. Proc.,
14 Code Civ. Proc.,
15 Code Civ. Proc.,
16 Code Civ. Proc.,
17 Rules
18 Rules of Court,
19 Rules of Court,
20 ss 1013 ..................... ..
21 1033.50) ..
22 .. ....1, 3, 9, 10, 12
23 rule 3.1700 .......
   rule 3.1700 , ..
24
25
26
27
28

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 4 -



SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Hayward Hall of Justice

Mary Bernstein
                Plaintiff/Petitioner(s)
        vs.
Associa Northern California et
al
                Defendant/Respondent
(s)

No.   HG16897381

Date:   03/05/2024
Time:   2:30 PM
Dept:   517
Judge:   Keith Fong

ORDER re: Hearing on Motion for
Attorney Fees filed by
Associa Northern
California (Defendant) +;
Case Management
Conference; Hearing on
Motion to Tax Costs filed
by Mary Bernstein
(Plaintiff) filed by Associa
Northern California
(Defendant); Meadow
Brook Village Association -
Fremont (Defendant);
Hassingham & Associates
(Defendant) on
09/26/2023

Plaintiff has not filed anything in this case due to medical leave and scathing threats from this Department 517 denial reasonable accommodations. See Order above not allowed to file anythying without leave of court.

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 5 -



REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS



## MEMORANDUM OF POINTS AND AUTHORITIES

Jesus blood redeems us. There was a price against us we could not pay, but the blood of Jesus redeemed us. 1 Peter 1:18-19 says, "Forasmuch as ye know that ye were not redeemed with corruptible things.... But with the precious blood of Christ, as of a lamb without blemish and without spot." His blood brings us into fellowship with God.  The blood of Jesus, his sacrifice for

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

me protects me in all situations.  The blood of Jesus has kept me going in this housing crisis all that he has done for me.  I am standing on his word. The Lord is what has provided sustenance and protection to me during this horrific time as a disabled woman in court fighting against concentrated power in an HOA determined to steal home from homeowner that has never missed a payment.[2]

Plaintiff Mary Bernstein will and hereby does move, once again in this Reply pursuant to rule 3.1700(b) of the California Rules of Court, for an order striking Defendants ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES' Corporate Entity Defendants ("CED") Memorandum of Costs dated August 14, 2023, or in the alternative, for an order taxing costs.

CED's costs memorandum is untimely because it was not filed and served within the mandatory time period established by rule 3.1700(a) of the Rules of Court. CED's have therefore waived any right to recover costs, and the <u>Court should strike the Memorandum in its entirety</u>.  If the Court declines to strike the Memorandum in its entirety, the Court should nevertheless tax several categories of costs that are specifically excluded by Code of Civil Procedure ("CCP") section 1033.5(b). The Court should also tax several other categories of costs that CED seek on the ground that such costs were not reasonably necessary to the conduct of the litigation—at most they merely served CED's convenience—and therefore are not recoverable, and/or that the costs are claimed in an unreasonable amount.  Specifically, the following costs should be stricken:

---

[2]  What can wash away my sin?
Nothing but the blood of Jesus;
What can make me whole again?
Nothing but the blood of Jesus.
Refrain:
Oh! precious is the flow
That makes me white as snow;
No other fount I know,
Nothing but the blood of Jesus.
For my pardon, this I see,
Nothing but the blood of Jesus;
For my cleansing this my plea,
Nothing but the blood of Jesus.
Nothing can for sin atone,
Nothing but the blood of Jesus;
Naught of good that I have done,
Nothing but the blood of Jesus.
This is all my hope and peace,
Nothing but the blood of Jesus;
This is all my righteousness,
Nothing but the blood of Jesus.
Now by this I'll overcome—
Nothing but the blood of Jesus;
Now by this I'll reach my home—
Nothing but the blood of Jesus.
Glory! Glory! This I sing—
Nothing but the blood of Jesus,
All my praise for this I bring—
Nothing but the blood of Jesus.

*Psalm 118:6*
*The Lord is on my side; I will not fear. What can man do to me?*

*Psalm 108:13*
*With God we shall do valiantly; it is he who will tread down our foes.*

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 8 -

a. Item 1g Excessive and Misrepresented/Fraudulent Filing Fees -- Efiling/fax filing fees are not recoverable through third party vendor - $11,828. There are no dates rather bundled, fraudulent misrepresentation filing fees.  California motion fees $60.00 for standard motion fees.  There is no fee for substitution of non opposition attorney filing. Glumped together "10 documents" could be any case whatsoever.  The boilerplate line item entries for filing costs are insufficient to establish that any and every portion of such costs was reasonably necessary to the conduct of the litigation and/or reasonable in amount under CCP section §§ 1033.5(c) (2), (c ) (3) (c ) (4 ) (c) (5)     Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3) (c ) (4 ) (c) (5). [3]

---

[3]  Outrageous fraudulent costs discrepancies:
Filing - Supp dec to P's mnotion to compel $75.00 PACIFIC COAST LEGAL SERVICES, INC
Filing - Disassoc of atty $45.00 PACIFIC COAST LEGAL SERVICES, INC
Filing - Notice of entry of judgment $47.70 PACIFIC COAST LEGAL SERVICES, INC
Filing - D's opp to P's M leave to amend the
complaint $47.70 PACIFIC COAST LEGAL SERVICES, INC
Filing - Reply x2 $37.33 FIRST LEGAL NETWORK LLC
Filing - opposition to Motion to Stay Case $58.33 FIRST LEGAL NETWORK LLC
Filing - Motion for Summary Judgement $424.03 FIRST LEGAL NETWORK LLC
Filing - Opp to Protective Order $35.00 FIRST LEGAL NETWORK LLC
Filing - Advance Fees $1,476.98 FIRST LEGAL NETWORK LLC
Filing - Motion to Strike $125.82 FIRST LEGAL NETWORK LLC
Filing - Advance fees $666.99 FIRST LEGAL NETWORK LLC
**Filing - 10 Docs $361.38 FIRST LEGAL NETWORK LLC**
Filing - Motion to Strike - Fees Advanced $467.00 FIRST LEGAL NETWORK LLC
Filing - Fees Advanced - MSA/DEC/PO/POS/MPA $1,377.15 FIRST LEGAL NETWORK LLC
Filing - Objection to Plaintiff's request $32.95 FIRST LEGAL NETWORK LLC
Filing - Dec of Lunanne Rutherford $909.95 FIRST LEGAL NETWORK LLC
Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC
Filing - D's Notice of Nonopposition $32.95 FIRST LEGAL NETWORK LLC
Filing MSJ reply brief $123.50 FIRST LEGAL NETWORK LLC
Filing - electronic submission $39.95 FIRST LEGAL NETWORK LLC
Filing - Fees Advanced - Memorandum of Points
and Authorities $986.15 FIRST LEGAL NETWORK LLC
Filing - Opposition to Disqualify Judge $63.14 FIRST LEGAL NETWORK LLC
Filing - Demurrer with MTS $6.75 FIRST LEGAL NETWORK LLC
Filing - opposition $40.45 FIRST LEGAL NETWORK LLC
Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC
Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC
Filing - MTS - Fees advanced $540.65 FIRST LEGAL NETWORK LLC
Filing - D's Notice of Nonopposition $31.95 FIRST LEGAL NETWORK LLC
Filing - Notice of Change of Firm Name $23.20 FIRST LEGAL NETWORK LLC
Filing - D's Notice of Nonopposition $40.45 FIRST LEGAL NETWORK LLC
Filing - Case management statement $40.45 FIRST LEGAL NETWORK LLC
Filing - Demurrer with MTS - Fees Advanced $165.65 FIRST LEGAL NETWORK LLC
Filing - Reply Briefs $31.95 FIRST LEGAL NETWORK LLC
Filing - MTS - Fees advanced $542.65 FIRST LEGAL NETWORK LLC
Filing - D's Reply Brief in Support $31.95 FIRST LEGAL NETWORK LLC
Filing - MTS - Fees advanced $90.25 FIRST LEGAL NETWORK LLC
Filing - Stip of the parties to Extend - Fees advanced $901.95 FIRST LEGAL NETWORK LLC
Filing - stip - order $42.70 FIRST LEGAL NETWORK LLC
Filing - Oppsition Dec $110.75 FIRST LEGAL NETWORK LLC
Filing - Amended CMC Statement $90.25 FIRST LEGAL NETWORK LLC
Filing - D's Opposition to P $31.95 FIRST LEGAL NETWORK LLC
Filing   CM Statement $61.90 FIRST LEGAL NETWORK LLC
**Filing     Dec of Andrew S. Elliott $31.95 FIRST LEGAL NETWORK LLC**        **Not McNamara lawyer third party fraud McNamara -- attesting to bills and costs  states he is the attorney, agent or party who claims these costs.  See signature 8 14 2023 on Memorandum of Costs -- no dates etc**

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 9 -

- Court attempting to rubber stamp Eumi Lee; Keith Fong despite exclusions and discrepancies
- Court ordered Electronic service was ordered by Paul Herbert -- due to not receiving copies of documents claimed
- No invoices were provided dates, itemized when submitted simply vague list in bundles questionable. Fraudulent Andrew Elliot third party not an attorney with McNamara. Elaborate Discrepancies third party e filing, fax filing costs not recoverable as there is not a provision. Motion fees are $60.00; initial pleading $435.00 and motion for summary judgment $500.00. There are no filing fees for substitutions of attorney; withdrawal of attorneys, Case Management Conference Statements filed, oppositions or replies. Misrepresentations fraudulent billings, inconsistent amounts. Ghost filings not filed on dates. Will be reporting to State Bar of California attempts to exploit disabled grandmother on social security disability attempting to save home, senior non attorney

b. Item11Bates Model - $685. Not court ordered. Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(a) (13), (c ) (2).

c. Item 4 Deposition Transcripts Non HOA Deponents - $1484. Costs related to transcripts not ordered by the Court are excluded by statute (see §1033.5(b) (5). Not court ordered Transcripts.[4]

d. Item 16 Expert Fees - $5265. The boilerplate line item entries for expert costs are insufficient to establish that any and every portion of such costs was reasonably necessary to the conduct of the litigation and/or reasonable in amount. Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3). These expert fees were not court ordered.[5]   Not court ordered Experts.

This Reply is based upon: (1) this Reply and the Motion to Strike Tax Costs (2) the accompanying Memorandum of Points and Authorities; (3) the accompanying Declarations of Mary Bernstein and Elizabeth Tigano; and (4) any other evidence and argument as may be presented at or before the hearing on this Motion.

## I.   INTRODUCTION

CED's memorandum of costs -was untimely filed and should therefore be stricken or denied in its entirety. Rule 3.1700 of the Rules of Court provides that memoranda of costs must be filed and served "within 15 days after the date of service of the notice of entry of judgment ... by the clerk." Unless CED were to bring and prevail upon a motion for relief from the 15-day deadline based upon some "mistake, inadvertence, surprise, or excusable neglect" to excuse their untimely filing (Code Civ. Proc., 473, subd. (b)), the Court should decline to award them any of their requested costs on account of their failure to comply with the mandatory time limit prescribed by rule 3.1700. Even if CED were to belatedly bring such a motion for relief, and even if the Court were to grant it—and the Plaintiff is not aware of any valid basis on which the Court could do so— the Court should nevertheless substantially tax plaintiffs' request for $19,262 in costs, for two main

---

Filing    Opp; Dec $28.80 FIRST LEGAL NETWORK LLC
[4] Non Court Ordered Transcripts
Athala Cevallos  $371
Sharon Massingham $510
Tammy Fritz $603
[5] Non Court Ordered Experts
Expert    Expert Fee
R. Blackseth Interests    Inc. $627.00
H2 Engineers    Inc. $4637.50
REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

reasons.

First, CED are seeking to recover costs that are specifically prohibited under California law, including efiling and fraudulent filing fee charges, expert fees, bates stamping, and charges for transcripts not ordered by the Court. (See Code Civ. Proc., S 1033.5, subd. (b).)

Second, CED demand payment for costs that were not "reasonably necessary to the conduct of the litigation" and were instead "merely convenient or beneficial to its preparation." (Code Civ. Proc., 1033.5, subd. @)(2).) CED produced Bates Nos. 2374, 3519 blank pages numerous blank pages provided in productions as well as completely irrelevant materials.

Third, multiple litigation stays instituted wherein work was not to be performed.

A reminder that Meadow Brook Village HOA is one Defendant of CED and therefore only at most entitled to 1/3 of any amount sought.  Meadow Brook Village HOA seeks to recover for all of CED, among many other things, more than $685 for bates without court order; Deposition Transcripts Non HOA Deponents - $1484 not court ordered excluded by statute, over $11,828 in "filing" charges, including for an attorney that is third party for union bank subpoena not with Farmers or McNamara and of which no filing who never made a single appearance in Court or at any deposition, as well as approximately.  Dec of Andrew S. Elliott $31.95 FIRST LEGAL NETWORK LLC Not McNamara lawyer third party fraud McNamara -- attesting to bills and costs states he is the attorney, agent or party who claims these costs.  See signature 8 14 2023 on Memorandum of Costs -- no dates etc.  Christopher Allard was not the attorney of record and not working on matter and cannot attest what occurred or what did not occur.  A paralegal cobbled together billing from unknown sources.

In addition, expert fees $5265 account for large amount of Meadow Brook Village's claimed costs, but because not court ordered not entitled.  Meadow Brook Village, CED have provided no documentation to support those requests (or any other requests), Plaintiff cannot assess whether such expenses were necessary to the conduct of the litigation, or reasonable. This reply is voluminous because Plaintiff had none of these materials at the time of filing within statutory period motion to strike.  Defendants CED Meadow Brook only with opposition finally provided after the fact itemized potentially fabricated documents substantial request.

In sum, the Court should strike CED Meadow Brook Village' Memorandum in its entirety as untimely.  In addition the failure to provide documents until filing opposition to Plaintiff motion to strike costs after questioning validity and whether or not fabricated by vendors, CED Meadow Brooks.   But even if plaintiffs had timely filed their Memorandum, the Court should nevertheless substantially tax their requested costs as follows:

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 11 -

| Cost | Item # | Amount Claimed | Amount to Strike Eliminate | Basis for Objection |
|------|--------|----------------|---------------------------|---------------------|
| Filing Fees | 1g | $11,828 | $11,828 | Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3) (c ) (4 ) (c) (5)<br><br>Court attempting to rubber stamp Eumi Lee; Keith Fong despite exclusions and discrepancies<br><br>Court ordered Electronic service Paul Herbert<br>No invoices were provided dates, itemized when submitted simply vague list in bundles questionable. Fraudulent Andrew Elliot third party not an attorney with McNamara. Elaborate Discrepancies third party e filing, fax filing costs not recoverable as there is not a provision.  Motion fees are $60.00; initial pleading $435.00 and motion for summary judgment $500.00.  There are no filing fees for substitutions of attorney; withdrawal of attorneys, Case Management Conference Statements filed, oppositions or replies.  Misrepresentations fraudulent billings, inconsistent amounts. Ghost filings not filed on dates.  Will be reporting to State Bar of California attempts to exploit disabled grandmother on social security disability attempting to save home, senior non attorney. |
| Bates Model | 11 | $685 | | Not court ordered.<br>Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(a) (13), (c ) (2) |
| Deposition Transcripts Non HOA Deponents | 4 | $1484 | | Excluded by statute (see §1033.5(b) (5) Not court ordered Transcripts |

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 12 -

| Expert | 16 | $5265 | | Not reasonably necessary to the conduct of the litigation and not helpful to trier of fact (see §§ 1033.5(c) (2), (c ) (3)  Not court ordered Experts |
|---|---|---|---|---|
| **TOTAL TO TAX** | | $19,262.00 | $19,262.00 | |

Non Court Ordered Experts
Expert  Expert Fee
R. Blackseth Interests   Inc. $627.00
H2 Engineers   Inc. $4637.50

Non Court Ordered Transcripts
Athala Cevallos  $371
Sharon Massingham $510
Tammy Fritz $603

**MEDICAL STAYS WORK NOT TO BE PERFORMED**

| Tolling trial date 5 years | Days excluded | Source | Dept |
|---|---|---|---|
| | | Court Order | 20 |
| Medical Leave April 11 2019 – November 4 2020 (1st leave April 11 2019 – October 2019 Order extend) 2nd Leave (October 2019 – November 2020 Order lifting leave November 4 2020) during Pandemic | 574 days | | |
| Emergency Leave Mother Death 12 6 2021 - February 26 2022 | **83 days** | Court Order | 512 |
| | | VESCO hearing Order | 512 |
| **Emergency Leave Injury Facial February 26 2022 – April 2022** | **62 days** | | |

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

| | | | |
|---|---|---|---|
| COVID Long Covid Leave July 2022 – January 23 2023 | 192 days | VESCO Court Orders | 512 |
| | Total 911 days | | |
| March 19 2018 – March 19 2023 | Five Years  1826 days | | |
| Add 911 days to March 19 2023 | | | |
| Difference | **Result: Monday, final** | | |
| February 21 2024 – September 2 2024 COVID Long COVID | | | |

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 14 -

## II. BACKGROUND

Defendants ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES' Corporate Entity Defendants ("CED") seek to recover over $19,262.00 in costs from Mary Bernstein Plainitf, an unrepresented litigant on social security disability fighting for her home. Summary judgment was granted in favor of some of the Defendants in this action, three corporate entity defendants Massingham, Meadow Brook and Associa ("defendants"); however case is not over and scheduled for trial January 2025.CED also seeks attorneys' fees of $88,134.75. under Civil Code section 5975 (c). Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants. Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judgment. New counsel submitted a new Judgment entered July 17, 2023. Notice of entry of Judgment served July 28, 2023. Defendants then subsequently filed on **August 14, 2023** untimely memorandum of costs in the amount of $19,262.00. This was **17 days** later. **California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first.** Plaintiff filed August 18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts. Plaintiff had no information, dates or what to dispute other than vague amount placed there. Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case. Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for another attorney that incurred these costs in the case. Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate. There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand. Motion for attorney fees iin the amount of $88,134.75 September 26, 2023. Plaintiff filed motion to strke tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

CED attetmpts to obtain reimbursement of costs under Cal. Code Civ. Proc. § 1032 et seq, including expenses that were not actually incurred by CED, and/or are not expressly allowed by §1032 et seq, and/or are not allowed as discretionary costs under § 1033.5.

For example, CED seeks costs for improper filings, efiling costs, deposition costs not incurred by CED, research, bates stamping, non court ordered transcripts, non court order expert fees, associated with other cases, other attorneys, among others that were clearly incurred as a convenience or benefit to the conduct of the litigation rather than reasonably necessary costs.

CED has failed to meet its burden in showing both in its Memorandum of Costs ("MOC") and in its Opposition that many of these costs are allowable, and if they are allowable or discretionary, that the amounts it seeks are reasonable and necessary. In its Opposition CED attempts to justify its unreasonable and unnecessary costs, but instead expressly supports

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

1   Plaintiff Mary Bernstein's contentions that it voluntarily assumed costs including but not limited to

2   counsels' bates stamping, legal research, non court ordered expert witness fees, non court ordered
transcript fees, and third-party costs for its own convenience and/or benefit in

3   preparation.  Plaintiff on social security disability respectfully requests that this Court grant its
motion to tax and reduce to zero $0 CED's MOC in addition to any such costs the Court deems

4   appropriate to tax given that CED has not adequately specified, or adequately explained the
discrepancies in, costs and descriptions associated with filing costs, Therefore, Plaintiff's motion to

5   tax and reduce all of the $19,262 to $0 awarded of the total amount sought should be granted.  In
addition, Declaration of Andrew Elliott an attorney not even affiliated with McNamara but an

6   attorney at Severson representing third parties.  CED have attempted to bankrupt and take Plaintiff

7   and her family's home since the beginning exploiting vulnerabilities of disabled and elderly
homeowners.  Below listing California Statewide filing fees are not excessive amounts attempted to

8   be reimbursed fraudulent.  Initial answer or complaint $435.00; motions $60.00; $500 motion for
summary judgment; no filing fee substitution of attorneys listed anywhere on fee schedule.

9   Published here chrome-

10  extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.courts.ca.gov/documents/Statewide-
Civil-Fee-Schedule-eff-01012023.pdf  https://www.courts.ca.gov/7646.htm

11  III. STANDARD OF REVIEW

12  California law recognizes three types of litigation costs: (1) allowable; (2) disallowable;
and (3) discretionary. Code Civ. Proc. § 1033.5, subds. (a), (b), (c)(4). For allowable and

13  discretionary costs to be recoverable, they must be both "reasonably necessary to the conduct of
the litigation rather than merely convenient or beneficial to its preparation" and "reasonable in

14  amount." Code Civ. Proc. § 1033.5 (c)(2-3). If specifically allowable under section 1033.5, the
party challenging the costs has the burden of showing that the costs sought are not reasonable or

15  necessary. However, if the costs not specifically allowable are objected to, then the burden of

16  proof lies with the requesting party to demonstrate that the costs were necessary and reasonable.
Ladas v. Cal. State Automobile Assn. (1993) 19 Cal.App.4th 761, 774. Whether a cost is

17  reasonable is a question of fact. Lubetzky v. Friedman (1991) 228 Cal.App.3d 35, 39. CED

18  submitted its MOC and Plaintiff Mary Bernstein respectfully requests that the Court tax CED's
costs as set forth below.

19

20  chrome-
extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.courts.ca.gov/documents/Statewide-
Civil-Fee-Schedule-eff-01012023.pdf  https://www.courts.ca.gov/7646.htm

21  California Court Statewide Civil Fee Schedule

22  INITIAL FILING FEES IN CIVIL CASES

23  Answer or other first paper filed by each party other than plaintiff (amount over $25,000) (including
unlawful detainer)  GC 70612, 70602.5, 70602.6 $ 435*

24  Motion for summary judgment or for summary adjudication  GC 70617(d) $ 500

25

26

27

28

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS



REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS



UNTIMELY CALCULATE DATES

MATTER IS NOT CONCLUDED HAS NOT HAD TRIAL

DID NOT HAVE INVOICES ERRONEIOUS WHEN MEMO COSTS FILED

JUST LISTED WITH NO DATES, NO DOCUMENTATION, BUNDLED

Plaintiffs saw invoices for the first time with opposition as these were not filed with memorandum of costs terhrefore plaintiff a non attorney is addressing these costs now in this comprehensive reply

NOW WITH OPPOSITION INVOICES DRUMMED UP

COSTS NOT ALLOWED

IV.ARGUMENT

    A.  MeadowBrook the HOA, CED have waived their right to recover any costs

The Court should strike Meadow Brook Village CED Memorandum of Costs in its entirety because Meadow Brook Village

failed to file and serve it within the mandatory 15-day deadline established by rule 3.1700(a) of the Rules of Court.

    Rule 3.1700's 15-day deadline is "mandatory." (Hydratec, Inc. v. Sun Valley 260 Orchard & Vineyard Co, (1990) 223 Cal.App.3d 924, 929.) And the consequence of missing the deadline is waiver of the right to recover any costs.

Plaintiff filed an objection to proposed judgment on July 12 2023 submittted by Defendants. Initial proposed judgment in 2022 and executed did not contain fees or costs amount. Plaintiff filed motion for reconsideration of that judgment.  New counsel submitted a new Judgment entered July 17, 2023.  Notice of entry of Judgment served July 28, 2023.  Defendants then subsequently filed on August 14, 2023 untimely memorandum of costs in the amount of $19,262.00.  This was 17 days later.  California Rules of Court Rule 3.1700 A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 or the date of service of written notice of entry of judgment or dismissal, or within 180 days after entry of judgment, whichever is first.  Plaintiff filed August

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

18 2023 motion to strike costs form as there were no invoices attached or dates simply vague lists and amounts. Plaintiff had no information, dates or what to dispute other than vague amount placed there. Further, California Rules of Court Rule 3.1700 states the memorandum of costs must be verified by a statement of the party, attorney, or agent that to the best of his or her knowledge the items of cost are correct and were necessarily incurred in the case. Luanne Rutherford is the attorney that worked on the matters with the law firm; Christopher Allard did not work on this matter for dates in question and therefore cannot engage in conjecture for another attorney that incurred these costs in the case. Further, costs have disingenuously be allocated to the cost memotrandum and attorneys motion for fees from several other cases which Plaintiff will demonstrate. There are several restraining order matters, Department of Public Safety Attorney General, California Department of Fair Employment and Housing matters, California Civil Rights matters, and U.S. Department of Housing and Urban Development matters of which are not this HG 18897381 Alameda County Superior Court matter at hand. Motion for attorney fees iin the amount of $88,134.75 September 26, 2023. Plaintiff filed motion to strke tax costs form as there were no invoices just a list ready to be rubber stamped by Judges Eumi Lee and granted without hearing by Judge Keith Fong bankrupting disabled senior citizen.

I]fthe one party fails, within the time prescribed to file and serve his memorandum of costs, then he is to be conclusively deemed to have waived the costs, if any, accruing in his favor.'" (Davis Lumber Co. v. Hubbell (1955) 137 Cal.App.2d 148, 150.) Following this rule, courts enforce rule 3.1700's mandatory time limit and strike memoranda that are un-timely served. (E.g., Sanabria v. Embrey (2001) 92 Cal.App.4th 422, 425—426 [error to award costs where memorandum was not filed within 15 days after service of notice of entry of dismissal].) The Court should do so here. Meadow Brook CED seemingly recognized their own untimely filing, so they then attempted to cure it by submitting documentation with their opposition to Plaintiffs motion to strike costs. As a matter of symmetry and basic fairness, the Court should apply the rules here strictly and find that plaintiffs' untimely costs memorandum has waived their right to recover costs.

B. MeadowBrook the HOA, CED may not recover certain categories of costs that are expressly precluded by section 1033.5(b).

If the Court does not strike Meadow Brook Village, CED's Memorandum and deny costs entirely due to the un-timeliness, the Court should nevertheless tax the entire amount of several categories of costs that California law expressly bars plaintiffs from recovering.

"It is axiomatic that the right to recover costs is purely statutory, and, in the absence of an au-thorizing statute, no costs can be recovered." (Garcia v. Hyster Co. (1994) 28 Cal.App.4th 724, 732.)

The authorizing statutes in this case are Code of Civil Procedure section 1033.5, which applies to civil actions generally, and section 14030 of the Elections Code, which applies to C VRA cases. Section 1033.5 lists certain allowable costs (in subdivision (a)) and certain excluded costs (in subdivision (b)); it also gives the trial court discretion (in subdivision (c)(4)) to allow or deny any other costs that are not specifically enumerated in either subdivision (a) or subdivision (b). (El Do-rado Meat Co. v. Yosemite Meat & Locker Serv., Inc. (2007) 150 Cal.App.4th 612, 616; Sci. Applica-tions Int'l Corp. v. Superior Court (1995) 39 Cal.App.4th 1095, 1103.) Although section 1033.5(b)(1) provides that "[flees of experts not ordered by the court" "are not allowable as costs,"

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

section 14030 of the Elections Code expressly provides otherwise, making recoverable "litigation expenses including, but not limited to, expert witness fees and expenses as part of the costs." Elections Code section 14030 does not otherwise "expressly authorize[]" the recovery of any costs that are "not allowable'S under subdivision (b) of section 1033.5.

Here, plaintiffs seek to recover costs that fall into several prohibited categories: (i) "bates numbering efiling expenses (this court did not have efiling until October 2022"- motion fees are standard only $60.00 with the exception of $435.00 initial filing fee and motion for summary judgment $500); (ii) expert fees not ordered by the court"; and (iii) "Transcripts not ordered by the court." (Code Civ. Proc., 1033.5, subd.

' '[B]ecause the right to costs is governed strictly by statute, a court has no discretion to award costs not statutorily authorized." (Ladas, supra, 19 Cal.App.4th at p. 774, citation and italics omitted [collecting cases].) Costs associated with obtaining transcripts that are not ordered by the court are not recoverable. (Code. Civ. Proc., 1033.5, subd. (b)(5).) Meadow Brook Village is entitled to recover a lesser amount for "[c]ourt reporter fees as established by statute" (Code Civ. Proc., 1033.5, subd. which are "an entirely different expense" from transcripts.

   *C. The Court should tax costs that are not reasonable in amount and/or not reasonably necessary to the litigation.*

Even if a cost is potentially allowable under section 1033.5, it does not become automatically recoverable in whatever amount a prevailing party demands. To the contrary, there are two additional limitations on any request for cosib, which serve to protect against a prevailing party's abusive demands for unnecessary costs.

First, "[a]llowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation." (Code Civ. Proc., S 1033.5, subd (c)(2); see Charton v. Harkey (2016) 247 Cal.App.4th 730, 743.) Second, "[a]llowable costs shall be reasonable in amount." (Code Civ. Proc., S 1033.5, subd. (c)(3); see In re Ins; Installment Fee Cases (2012) 211 Cal.App.4th 1395, 1431, fn. 24.) The Court thus must disallow any costs (even those "allowable as a matter of right") that are not "reasonably necessary" and must also reduce the amount of any allowed costs to that which is "reasonable." (Perko 's Enters., Inc. v. RRNS Enters. (1992) 4 Cal.App.4th 238, 244—245.)

C. The Court should strike all costs as this matter personal injury not enforcment of governing documents
The Court should strike all costs as this matter personal injury not enforcment of governing documents as exhibited in civil cover sheet for filing and are not recoverable that are not reasonable in amount and/or not reasonably necessary to the litigation.  Breach of contract one aspect of complaint.  Plaintiff had limited scope attorney that was not eligible for practicing law, plaintiff a disabled litigant not an attorney at the time of the filing of the preliminary complaint.  This attorney

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

can no longer practice law is in a hospice and State Bar victims compensation fund.  Plaintff won a small claims trial in this matter in this Court in 2019 for reimbursement of retainer.  Exhibit A to Declaration of Mary Bernstein,

　　　D.  MeadowBrook the HOA, CED must substantiate more than $5,000 in expert fees CED Meadow Brook Village must provide documentation to support their request for more than $5,000 in expert fees.  With only a single line entry listing an amount for each expert (Mem. at Attachment 16), Plaintiff cannot say with any certainty whether Meadow Brook CED are requesting reasonable or unreasonable amounts, or whether the charges at issue were necessary to the conduct of the litigation. Once objected to, the party claiming expert fees must "produce[] sufficient documentation" enabling the "determin[ation of] the necessity" of expert fees including a declaration from counsel "as well as [ ] the paid invoices themselves." (Jones, supra, 63 Cal.App.4th at pp. 1266-1268; see also Levy v. Toyota Motor Sales (1992) 4 Cal.App.4th 807, 816 [affirming trial court's taxation of costs where claiming party "offered no substantiation of the challenged charges in response to [the] objections" raised in motion to tax].)

V. CONCLUSION

For these reasons, the Court should grant the Plaintiff's Motion to Strike Plaintiffs' Memorandum

of Costs, as set forth in the table in the above for disabled, elderly social security litigant that

filed personal injury matter not enforcement of governing documents with aid of limited attorney

not qualified to practice law.  State Bar rendered this attorney ineligible and this Court awarded

retainer based on malpractice and ineffective assistance of attorney at small claims trial award

Exhibit A Declaration of Mary Bernstein in support of reply motion to strike costs.

DATED: September 3 2024

_____ **MARY  BERNSTEIN**

PROOF OF SERVICE

On September 1, 2023, I served the following document(s) by email:

| ATTORNEY |
| --- |
| Christopher Allard |
| Email: christopher.allard@mcnamaralaw.com |

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 21 -

I declare under penalty of perjury that the foregoing is correct.

Executed on September 1, 2023, at Fremont, California.

_____**MARY BERNSTEIN**

PROOF OF SERVICE

On November 10, 2023, I served the following document(s) by email :

| ATTORNEY | ATTORNEY FOR DEFENDANT |
|---|---|
| Christopher Allard<br><br>Email: christopher.allard@mcnamaralaw.com | Aarti Thakur<br>Ashkok Agaral<br>Associa Northern California<br>Bay Area Property Services, Inc<br>Belinda Hollingsworth<br>BJ Management Solutions<br>Chandan Sheath<br>Charlie West<br>Estate of Charlie West<br>COMMON INTEREST MANAGEMENT SERVICES, INC<br>Daisy Zafra<br>Derc Yamasaki<br>Elizabeth Hall<br>Geraldine Linares<br>Jeffrey Lowery<br>Jerry Cosentino<br>Jill Buono<br>Joseph Morrison Brody<br>Laurie Sheaffer |

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 22 -

| | |
|---|---|
| | LeAnne Ritter |
| | Lee Molignoni |
| | Linda Kramer |
| | Mark Simonson |
| | Marv Fryman |
| | Massingham & Associates |
| | Meadow Brook |
| | Mike Durbin |
| | Rohit Varicatt |
| | Romulo Zafra |
| | Sharon Daly |
| | Susan Condio-Hernandez |
| | Tilak D. Hodge |
| | Vipul Ramani |
| | Virenda Dhavale |
| | William Schneider |

I declare under penalty of perjury that the foregoing is correct.

Executed on November 10, 2023, at Fremont, California

**MARY  BERNSTEIN**

REPLY IN SUPPORT OF PLAINTIFFS MOTION TO STRKE TAX COSTS

- 23 -

ATTORNEY OR PARTY WITHOUT ATTORNEY *(name and Address):*   TELEPHONE NO.: (510) 938-8280
MARY BERNSTEIN, MSAJS
3416 Deerwood Terrace, #113
Fremont, CA  94536
Email: mbernsteinpurple@hotmail.com
ATTORNEY FOR *(Name):*

FOR COURT USE ONLY

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

**FILED**
**ALAMEDA COUNTY**

AUG 28 2023

CLERK OF THE SUPERIOR COURT
By_____
                                          Deputy

PLAINTIFF/PETITIONER:   Mary Bernstein

DEFENDANT/RESPONDENT: Associa, et al,

| | |
|---|---|
| **NOTICE OF MOTION / MOTION FOR ORDER STRIKING AND/OR REDUCING COSTS (TAXING COSTS) [C.R.C. Rule 3.1700(b)]** | CASE NUMBER: HG18897381<br><br>Reservation Number<br>647344049157 |

Hearing Date: Mar 1 2024   Time: 9:00 a   Courtroom: 512
Filing Date of Original Complaint or Petition in this Case:_____

1. My/our name(s) is/are ___Mary Bernstein___.

2. I/we am/are the ☒ Plaintiff(s)/Petitioner(s)   ☐ Defendant(s)/Respondent(s).

3. I/we am/are asking the court for an order striking and/or reducing costs requested by the other side in the
☐ Request to Enter Default   ☒ post judgment Memorandum of Costs dated __8/14/2023_____ and
served ☐ in person   ☒ by email on *(date of service)*   __8/14/2023_____ in this case.

4. ☐ I/we request that the court strike the following items from the ☐ Request to Enter Default ☐ post
judgment Memorandum of Costs:  ALL

   ☒ Item number(s) __1-16_____ for ☒ attorneys' fees ☒ deposition costs ☒ expert witness fees
   ☒ filing fees ☒ other *(describe):*_____

5. The reason for striking these cost items are:

   ☒ there was no contract or statute that provided for attorneys' fees.

   ☐ the deposition was unnecessary because _____

   _____

   ☒ the expert witness fees cannot be recovered in this case because I made a written offer to settle under
Code of Civil Procedure section 998 which the other side refused, and the other side did not get a better award.

   ☐ the lawsuit could have been brought in small claims court but was not (See CCP §1033(b)(1)).

   ☐ the plaintiff failed to inform the defendant in writing that a lawsuit would be filed and that the lawsuit
could result in defendant having to pay court costs and/or attorneys' fees (See CCP §1033(b)(2)).

   ☐ other *(describe)*_____

6. ☐ In the alternative, if the court does not strike the cost items,   ☐ I/we request that the court reduce
the following items from the ☐ Request to Enter Default ☒ post judgment Memorandum of Costs:

   ☒ Item number(s) ____1-16_____ be reduced from $_____ to $__0_____,

respectively.   ☐ other
*(describe)*

| Bernstein v. Associa. et al.<br>Short Title | | HG18897381<br>Case Number |
| --- | --- | --- |

5. The reason for reducing these cost items are:

☐ this case was for collection of money or unlawful detainer, the judgment was by default, and the attorneys' fees are more than the amount allowed in Rule 21.01 of the Ventura Rules of Court.

☐ the attorneys' fees are more than the amount the plaintiff asked for in the complaint.

☒ the expert witness *(name of expert)* ___ R. Blackseth Interests, Inc./ H2 Engineers, Inc. was not appointed by the court and his/her fees are above the allowed per diem and mileage fees and should not be charged as an item of cost in this case.

☒ other *(describe):* ___ Plaintiff has a fee waiver is on social security and should not be penalized for bringing litigation personal injury for causes of action byh HOA trying to take home away

## DECLARATION

I/we, ___ Mary Bernstein ___, state as follows:

6. I/we am/are the ☒ Plaintiff(s)/Petitioner(s)  ☐ Defendant(s)/Respondent(s) in this case.

7. On or about *(date)* ___ 8/14/2023 ___ I/we received a copy of the ☐ Request to Enter Default

☒ post judgment Memorandum of Costs  ☐ other *(explain):* _____

☒ A true copy of this document with its proof of service is attached to this motion as Exhibit "A."

8. ☒ It has been less than ☐15 days since I was personally served  ☐20 days since I was served by mail OR

☐ The reason I could not file this motion within 15/20 days is because: _____

9. ☒ This lawsuit is based on ☐ an account  ☐ promissory note ☐ contract  other*(describe)* _____ personal injury _____ that did not include language for reimbursement of attorneys' fees.

10. ☐ I/we allowed a default judgment in this case based on the $_____ amount the plaintiff/petitioner requested in the complaint for ☐ attorneys' fees  ☐ other costs.

11. ☐ The ☐ attorneys' fees  ☐ other costs awarded to plaintiff/petitioner are $_____ more than the amount requested in the complaint.

12. ☒ I/we never received a written offer to compromise (settlement offer) under Code of Civil Procedure section 998 OR the other side got a less favorable judgment than the offer I/we received.

13. ☒ I/we served an offer to compromise under Code of Civil Procedure section 998 before the winning party incurred the costs I/we are asking be stricken or reduced, and the judgment awarded in this case was less favorable to the opposing side than the offer I/we made.

☒ A true copy of the CCP section 998 offer to compromise is attached as Exhibit "B."

14. ☐ I/we never received a written notice that the plaintiff would file suit and seek costs and attorneys' fees as required by Code of Civil Procedure section 1033.5(a)(2).

I/we declare, under penalty of perjury under California State law, that the above information is true and correct.

Date: ___ 8/15/2___ ___ Mary Berstein

_(print your name)_         _( signature)_

Date:_____      _____      _____
                   _(print your name)_           _(signature)_

**Attachments** offer letter review memorandum of costs rate sheet from pacific and first legal
**$35.75** direct able first legal and $20 Pacific Coast Legal efilng not astronomical amounts

No motion for fees has been made only memorandum of cost filed
Retaliation for filing lawsuit by defense counsel .
This is a personal injury suit as stated at the filing on civil cover sheet attorneys fees not awarded
Bernstein VS Associa Northern California
Case Number: HG17xxxxx Case Type: Civil Unlimited Category: Other Personal Injury/PropertyDamage/Wrongful Death

Alameda Court did not have efilings until October 2021

Defense Farmers insurance policy that I pay for master policy assessments.
They are not out of cash not attempting to make a profit.
McNamara, Ambacher, Hassip and Gray LLP has and is compensated by Farmers Insurance for legal defense tendered
on behalf of Mission Village Association –Fremont. Mary Bernstein pays towards this master policy.  **This Farmers
insurance policy** is covered part and part of the liability insurance.
**_Policy in effect at the time of the events occurring prior to this complaint: Farmers Insurance Exchange, Farmers Insurance
Policy No. 605752854 XX XX  Pap Issued December 19, 2017 Effective 2/15/18 Agents Number 97-55-397 Premium $76,686.00
Renewal entire present coverage 2/15/18-2/15/19. Claim No. 500-561-2246._**

PROOF OF SERVICE
On August 18, 2023, I served the following document(s) by email :

NOTICE OF MOTION / MOTION FOR ORDER **STRIKING** AND/OR **REDUCING**
COSTS

1

| ATTORNEY | DEFENDANT |
|---|---|
| **Christopher Allard** | Aarti Thakur |
| **Email:** | Ashkok Aggral |
| christopher.allard@lewisbrisbois.com | Associa Northern California |
| | Bay Area property Services, Inc |
| | Belinda Hollingsworth |
| | BJ Management Solutions |
| | Chandar Sheath |
| | Charlie West |
| | Estate of Charlie West |
| | COMMON INTEREST MANAGEMENT |
| | SERVICES  INC |
| | Daisy Zhou |
| | Dere Yamasaki |
| | [illegible] |
| | Geraldo Linares |
| | Jeffrey Lowrey |
| | Jesus Pno |
| | [illegible] |

                                        ison Brody
                                        ffer

                                        ni

                                        on

                                        & Associates
                                        k

                                        o-Hernandez
                                        e

                                        ale
                                        ider

I declare under penalty of perjury that the       orrect.

Executed on August 18, 2023, at Fremont,

                                                                    **MARY**

                    STEIN

, on

MC-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Christopher B. Allard (SBN 264842)
FIRM NAME: McNamara, Ambacher, Wheeler, Hirsig & Gray
STREET ADDRESS: 3480 Buskirk Ave #250
CITY: Pleasant Hill   STATE: CA   ZIP CODE: 94523
TELEPHONE NO.: (925)939-5330   FAX NO.:
E-MAIL ADDRESS: christopher.allard@mcnamaralaw.com
ATTORNEY FOR (name): Associa Northern California et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: Hayward Hall of Justice

PLAINTIFF: Mary Bernstein
DEFENDANT: Associa Northern California, et al.

| MEMORANDUM OF COSTS (SUMMARY) | CASE NUMBER: HG18897381 |
|---|---|

The following costs are requested:

| | | | TOTALS |
|---|---|---|---|
| 1. | Filing and motion fees | $ | 11,828 |
| 2. | Jury fees | $ | |
| 3. | Jury food and lodging | $ | |
| 4. | Deposition costs | $ | 1,484 |
| 5. | Service of process | $ | |
| 6. | Attachment expenses | $ | |
| 7. | Surety bond premiums | $ | |
| 8. | Witness fees | $ | |
| 9. | Court-ordered transcripts | $ | |
| 10. | Attorney fees (enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required) | $ | |
| 11. | Court reporter fees as established by statute | $ | |
| 12. | Models, enlargements, and photocopies of exhibits | $ | 685 |
| 13. | Interpreter fees | $ | |
| 14. | Fees for electronic filing or service | $ | |
| 15. | Fees for hosting electronic documents | $ | |
| 16. | Other | $ | 5,265 |

| TOTAL COSTS | $ | 19,262 |
|---|---|---|

I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

Date: August 14, 2023

Christopher B. Allard
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF DECLARANT)

(Proof of service on reverse)

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
MC-010 [Rev. September 1, 2017]

MEMORANDUM OF COSTS (SUMMARY)

Code of Civil Procedure,
§§ 1032, 1033.5

CEB® | Essential
ceb.com | Forms™

MC-011

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Bernstein v. Meadow Brook Village HOA | HG18897381 |

## MEMORANDUM OF COSTS (WORKSHEET)

**1. Filing and motion fees**

| | Paper filed | | Filing fee |
|---|---|---|---|
| a. | See Attachment 1g | $ | 11,828 |
| b. | | $ | |
| c. | | $ | |
| d. | | $ | |
| e. | | $ | |
| f. | | $ | |

g. [X] Information about additional filing and motion fees is contained in Attachment 1g.

TOTAL  1.  $    11,828

**2. Jury fees**

| | Date | | Fee & mileage |
|---|---|---|---|
| a. | | $ | |
| b. | | $ | |
| c. | | $ | |
| d. | | $ | |

e. [ ] Information about additional jury fees is contained in Attachment 2e.

TOTAL  2.  $    0

3. [ ] Juror food: $ _____ and lodging: $ _____     TOTAL  3.  $    0

**4. [X] Deposition costs**

| | Name of deponent | Taking | Transcribing | Travel | Videotaping | Subtotals |
|---|---|---|---|---|---|---|
| a. | Athala Aevallos | $ | $   371 | $ | $ | $   371 |
| b. | S. Massingham | $ | $   510 | $ | $ | $   510 |
| c. | T. Fritz | $ | $   603 | $ | $ | $   603 |
| d. | | $ | $ | $ | $ | $   0 |

e. [ ] Information about additional deposition costs is contained in Attachment 4e.

TOTAL  4.  $    1,484

Form Approved for Optional Use
Judicial Council of California
MC-011 [Rev. September 1, 2017]
CEB Essential Forms
ceb.com

MEMORANDUM OF COSTS (WORKSHEET)

CBA

Code of Civil Procedure,
§§ 1032, 1033.5

MC-011

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Bernstein v. Meadow Brook Village HOA | HG18897381 |

**5. Service of process**

| | Name of person served | Public officer | Registered process | Publication | Other (specify) |
|---|---|---|---|---|---|
| a. | _____ $____ | $____ | $____ | $____ | _____ |
| b. | _____ $____ | $____ | $____ | $____ | _____ |
| c. | _____ $____ | $____ | $____ | $____ | _____ |

d. ☐ Information about additional costs for service of process is contained in Attachment 5d.

TOTAL 5.  $ | 0

**6. Attachment expenses (specify):**          6.  $ |

**7. Surety bond premiums (itemize bonds and amounts):**          7.  $ |

**8. a. Ordinary witness fees**

| | Name of witness | Daily fee | Mileage | Total |
|---|---|---|---|---|
| (1) | _____ ___ days at ___ $/day ___ miles at ___ ¢/mile: | | | $  0 |
| (2) | _____ ___ days at ___ $/day ___ miles at ___ ¢/mile: | | | $  0 |
| (3) | _____ ___ days at ___ $/day ___ miles at ___ ¢/mile: | | | $  0 |
| (4) | _____ ___ days at ___ $/day ___ miles at ___ ¢/mile: | | | $  0 |
| (5) | _____ ___ days at ___ $/day ___ miles at ___ ¢/mile: | | | $  0 |

(6) ☐ Information about additional ordinary witness fees is contained in Attachment 8b(6).

SUBTOTAL 8a. $ | 0

(Continued on next page)

MC-011

| SHORT TITLE | CASE NUMBER: |
|---|---|
| Bernstein v. Meadow Brook Village HOA | HG18897381 |

8. b. **Expert fees** *(per Code of Civil Procedure section 998)*

Name of witness                                    Fee

(1) _____ _____ hours at $ _____ /hr     $ _____ 0
(2) _____ _____ hours at $ _____ /hr     $ _____ 0
(3) _____ _____ hours at $ _____ /hr     $ _____ 0
(4) _____ _____ hours at $ _____ /hr     $ _____ 0
(5) ☐ Information about additional expert fees is contained in Attachment 8b(5).

SUBTOTAL 8b.     $ _____ 0

c. **Court-ordered expert fees**

Name of witness                                    Fee

(1) _____ _____ hours at $ _____ /hr     $ _____ 0
(2) _____ _____ hours at $ _____ /hr     $ _____ 0
(3) ☐ Information about additional court-ordered expert fees is contained in Attachment 8c(3).

SUBTOTAL 8c.     $ _____ 0
TOTAL (8a, 8b, & 8c)  8.     $ _____ 0

9. **Court-ordered transcripts** *(specify):*     9.     $ _____

10. **Attorney fees** *(enter here if contractual or statutory fees are fixed without necessity of a court determination; otherwise a noticed motion is required):*     10.     $ _____

11. **Models, enlargements, and photocopies of exhibits** *(specify):*     11.     $ _____ 685
    Bates Stamping of Exhibits

12. **Court reporter fees** *(as established by statute)*
    a. *(Name of reporter):* _____ Fees: $ _____
    b. *(Name of reporter):* _____ Fees: $ _____ TOTAL 12.     $ _____ 0
    c. ☐ Information about additional court-reporter fees is contained in Attachment 12c.

13. **Interpreter fees**
    a. Fees of a certified or registered interpreter for the deposition of a party or witness
       *(Name of interpreter):* _____ Fees: $ _____
       *(Name of interpreter):* _____ Fees: $ _____
    b. Fees for a qualified court interpreter authorized by the court for an indigent
       person represented by a qualified legal services project or a pro bono attorney
       *(Name of interpreter):* _____ Fees: $ _____
       *(Name of interpreter):* _____ Fees: $ _____ TOTAL 13.     $ _____ 0
    c. ☐ Information about additional court-reporter fees is contained in Attachment 13c.

14. **Fees for electronic filing or service of documents through an electronic filing service provider**
    (enter here if required or ordered by the court):     14.     $ _____

15. **Fees for hosting electronic documents through an electronic filing service provider** (enter here
    if required or ordered by the court):     15.     $ _____

16. **Other** *(specify):* Expert fees - See Attachment 16     16.     $ _____ 5,265

| TOTAL COSTS | $ 19,262 |
|---|---|

*(Additional information may be supplied on the reverse)*

CEB Essential Forms
ceb.com

CBA

Memorandum of Costs (Worksheet)
Attachment 1g

| Filing | Filing Fee | Pay To |
|---|---|---|
| Filing - Answer to Complaint; Notice of Asociation | $616.71 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Sub of atty | $30.00 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Motion to Quash | $541.75 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - notice to set aside default | $120.58 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - opp, dec | $84.72 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Supp dec to P's mnotion to compel | $75.00 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Disassoc of atty | $45.00 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Notice of entry of judgment | -$47.70 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - D's opp to P's M leave to amend the complaint | $47.70 | PACIFIC COAST LEGAL SERVICES, INC |
| Filing - Reply x2 | $37.33 | FIRST LEGAL NETWORK LLC |
| Filing - oppostion to Motion to Stay Case | $58.33 | FIRST LEGAL NETWORK LLC |
| Filing - Motion for Summary Judgement | $424.03 | FIRST LEGAL NETWORK LLC |
| Filing - Opp to Protective Order | $35.00 | FIRST LEGAL NETWORK LLC |
| Filing - Advance Fees | $1,476.98 | FIRST LEGAL NETWORK LLC |
| Filing - Motion to Strike | $125.82 | FIRST LEGAL NETWORK LLC |
| Filing - Advance fees | $666.99 | FIRST LEGAL NETWORK LLC |
| Filing - 10 Docs | $361.38 | FIRST LEGAL NETWORK LLC |
| Filing - Motion to Strike - Fees Advanced | $467.00 | FIRST LEGAL NETWORK LLC |
| Filing - Fees Advanced - MSA/DEC/PO/POS/MPA | $1,377.15 | FIRST LEGAL NETWORK LLC |
| Filing - Objection to Plaintiff's request | $32.95 | FIRST LEGAL NETWORK LLC |
| Filing - Dec of Lunanne Rutherford | $909.95 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $32.95 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $32.95 | FIRST LEGAL NETWORK LLC |
| Filing MSJ reply brief | $123.50 | FIRST LEGAL NETWORK LLC |
| Filing - electronic submission | $39.95 | FIRST LEGAL NETWORK LLC |
| Filing - Fees Advanced - Memorandum of Points and Authorities | $986.15 | FIRST LEGAL NETWORK LLC |
| Filing - Oppostion to Disqualify Judge | $63.14 | FIRST LEGAL NETWORK LLC |
| Filing - Demurrer with MTS | $6.75 | FIRST LEGAL NETWORK LLC |
| Filing - oppostion | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - Case management statement | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - MTS - Fees advanced | $540.65 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - Notice of Change of Firm Name | $23.20 | FIRST LEGAL NETWORK LLC |
| Filing - D's Notice of Nonopposition | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - Case management statement | $40.45 | FIRST LEGAL NETWORK LLC |
| Filing - Demurrer with MTS - Fees Advanced | $165.65 | FIRST LEGAL NETWORK LLC |
| Filing - Reply Briefs | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - MTS - Fees advanced | $542.65 | FIRST LEGAL NETWORK LLC |
| Filing - D's Reply Brief In Support | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - MTS - Fees advanced | $90.25 | FIRST LEGAL NETWORK LLC |

1

**Memorandum of Costs (Worksheet)**
**Attachment 1g**

| | | |
|---|---|---|
| Filing - Stip of the parties to Extend - Fees advanced | $901.95 | FIRST LEGAL NETWORK LLC |
| Filing - stip - order | $42.70 | FIRST LEGAL NETWORK LLC |
| Filing - Oppsition Dec | $110.75 | FIRST LEGAL NETWORK LLC |
| Filing - Amended CMC Statement | $90.25 | FIRST LEGAL NETWORK LLC |
| Filing - D's Opposition to P | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - CM Statement | $61.90 | FIRST LEGAL NETWORK LLC |
| Filing - Dec of Andrew S. Elliott | $31.95 | FIRST LEGAL NETWORK LLC |
| Filing - Opp; Dec | $28.80 | FIRST LEGAL NETWORK LLC |

TOTAL:                              $11,828.21

2

**Memorandum of Costs (Worksheet)**
**Attachment 16**

| Expert | Expert Fee |
|---|---|
| R. Blackseth Interests, Inc. | $627.00 |
| H2 Engineers, Inc. | $4,637.50 |
| TOTAL: | $5,264.50 |

CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action.

My electronic notification address is:  deborah.sanchez@mcnamaralaw.com.

On this date, I electronically served the foregoing

**DEFENDANTS ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES'S MEMORANDUM OF COSTS (SUMMARY) AND MEMORANDUM OF COSTS (WORKSHEET)**

based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Plaintiff in Pro Per:

Ms. Mary Bernstein
3416 Deerwood Terrace, #113
Fremont, CA 94536

Phone: 510-938-6280
E-mail: mhelenbernstein@yahoo.com
E-mail: mbernsteinpurple@hotmail.com

Richard Fong, Jr.
Fong & Pong APC
2161 Harbor Bay Parkway
Alameda, CA 94502

Phone: 510-748-6800
Email: rfong@fonglaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 14, 2023 at Pleasant Hill, California.

_____
Deborah Sanchez

McNAMARA, AMBACHER WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

CIV-090

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Mary Bernstein<br>3416 Deerwood Terrace #113<br>Fremont, CA 94536<br><br>TELEPHONE NO.: 5109386280    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Alameda**
STREET ADDRESS:
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland CA 94612
BRANCH NAME:

PLAINTIFF: Mary Bernstein

DEFENDANT: Associa Northern California, et al.

| ☑ OFFER TO COMPROMISE AND<br>☐ ACCEPTANCE UNDER CODE OF CIVIL PROCEDURE SECTION 998 | CASE NUMBER:<br>HG18897381 |
|---|---|

Note: This form is designed to be used only in civil actions involving a single plaintiff and a single defendant, where the offer and acceptance involves a money judgment. The court will file this offer to compromise and the acceptance only if accompanied by a judgment prepared for the court's signature and entry of judgment.

### OFFER TO COMPROMISE

1. Plaintiff (name): Mary Bernstein                          offers to have judgment entered under Code of Civil Procedure section 998 in favor of the plaintiff and against (name of the defendant):
   Meadow Brook Village Association - Fremont, Massingham & Associates/Associa Northern California
2. The judgment is to be (check and complete a or b)
   a. ☐  in the amount of $ 3,000,000
      (1) ☑  Each party shall bear its own costs and fees.
      (2) ☐  Including costs under Code of Civil Procedure section 1032 and attorney's fees.
      (3) ☐  Plus costs under Code of Civil Procedure section 1032.
      (4) ☐  Plus costs under Code of Civil Procedure section 1032 and attorney's fees in the amount of $
      (5) ☐  Plus costs under Code of Civil Procedure section 1032 and attorney's fees allowed by law as determined by the court.
   b. ☑  as follows (describe the terms and conditions of the judgment):
      by 5:00 pm January 24 2019
      ☑  Continued in attachment 2b.

Date: January 22 2019

Mary Bernstein
(NAME OF PARTY OR ATTORNEY FOR PARTY MAKING OFFER)                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY MAKING OFFER)

### ACCEPTANCE OF OFFER

3. Defendant (name):                                      hereby accepts the offer for the
   judgment stated in items 1 and 2 above.

Date:

_____                _____
(NAME OF PARTY OR ATTORNEY FOR PARTY ACCEPTING OFFER)        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY ACCEPTING OFFER)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
CIV-090 [New January 1, 2008]

**OFFER TO COMPROMISE AND ACCEPTANCE
UNDER CODE OF CIVIL PROCEDURE SECTION 998**

Code of Civil Procedure, § 998
www.courtinfo.ca.gov

### ATTACHMENT 2B
### REVISED DEMAND LIST INCORPORATING ALL ACTIONS
### BERNSTEIN VS. MEADOW BROOK VILLAGE HOA – FREMONT
DFEH CASE NUMBER: 201810-03850210
HUD CASE NUMBER: 09-19-4260-8
ALAMEDA COUNTY SUPERIOR COURT CASE NO. HG18897381
CALIFORNIA DEPARTMENT OF JUSTICE CASE NO: PIU 806129

Economic demands

$3,000,000

Non Economic demands

1. No retaliation by residents, HOA Board during the remainder of Bernstein domicile in Meadow Brook. The Bernstein family is private and does not want further intrusive actions, behaviors directed towards them in their residence.
2. Reasonable accommodations roof to be honored immediately insomuch as heating pool. Year round permits. Winter heated 90 degrees. Summer 80 degrees.

1

1

**PROOF OF SERVICE BY MAIL**

2      On January 22, 2019, I served the following document(s):

3      MEDIATION BRIEF; 998 OFFER TO COMPROMISE

4      On January 24, 2019 via email and U.S. Mail,

5

6      Robert Mark Maltz #143078
       License Status: Active
7      Address: Stratman, Patterson & Hunter, 505 14th St, Ste 400, Oakland, CA 94612-1913
       County: Alameda County
8      Phone Number: (510) 457-3457
       Fax Number: (510) 238-8968
9      Email: robert.maltz@farmersinsurance.com

10
       Luanne Rutherford #153336
11     License Status: Active
       Address: McNamara, Ney, Beatty, et al, 3480 Buskirk Ave, Ste 250, Pleasant Hill, CA
12     94523-7310
       County: Contra Costa County
13     Phone Number: (925) 939-5330
       Fax Number: (925) 939-0203
14     Email: luanne.rutherford@mcnamaralaw.com

15
       Andrea Leah O'Toole #232653
16     License Status: Active
       Address: Berding & Weil LLP, 2175 N California Blvd Ste 500, Walnut Creek, CA 94596
17     County: Contra Costa County
       Phone Number: (925) 838-2090
18     Fax Number: Not Available
       Email: aotoole@berding-weil.com
19
20     by placing a copy in a sealed envelope and serving the document(s) to the above address.

21     I declare under penalty of perjury that the foregoing is correct.

22     Executed on January 22, 2019, at Fremont, California.

23     _____

24     MARY BERNSTEIN

25

26

27

28

 **Superior Court of Alameda County Public Portal**

# Make a Reservation

### Bernstein VS Associa Northern California

Case Number: HG18897381   Case Type: Civil Unlimited   Category: Other Personal Injury/Property Damage/Wrongful Death
Date Filed: 2018-03-19   Location: Hayward Hall of Justice - Department 512

## Reservation

| | |
|---|---|
| Case Name: | Case Number: |
| Bernstein VS Associa Northern California | HG18897381 |
| Type: | Status: |
| Motion to Tax Costs | RESERVED |
| Filing Party: | Location: |
| Mary Bernstein (Plaintiff) | Hayward Hall of Justice - Department 512 |
| Date/Time: | Number of Motions: |
| 03/01/2024 9:00 AM | 1 |
| Reservation ID: | Confirmation Code: |
| 647344049157 | CR-FGR8I5WFG3RF2OXRI |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion to Tax Costs  *** Fees Exempted by Fee Waiver *** | 0.00 | 1 | 0.00 |
| Court Technology Fee  *** Fees Exempted by Fee Waiver *** | 1.00 | 1 | 0.00 |
| TOTAL | | | $0.00 |

## Payment

| | |
|---|---|
| Amount: | Type: |
| $0.00 | FEE_WAIVER |
| Account Number: | Authorization: |
| n/a | n/a |
| Payment Date: | |
| 1969-12-31 | |

🖶 Print Receipt     ✦ Reserve Another Hearing     👤 View My Reservations

Terms of Service

Contact Us
About this Site

Copyright © Journal Technologies, USA. All rights reserved.

8/15/23, 1:46 PM                                                Alameda Superior Court eFiling

Your One Stop Shop For Litigation Support Services! (800) 987-5003    **Sign-Up Today**



The Superior Court of Alameda County has gone live with Electronic Filing (eFiling) on October 12, 2021. Alameda Superior Court pursuant to agreement to Local Rule 3.27 the civil division is implementing mandatory electronic filing (e-filing) for attorneys and providing the option of e-filing to self-represented litigants. Attorneys may elect to begin e-filing as of the following dates:

- Unlimited Civil: January 1, 2022
- Limited Civil: January 1, 2022
- Civil Complex: January 1, 2022
- Unlawful Detainers: January 1, 2022
- Small Claims: January 1, 2022

Take advantage of our all in one litigation support system that allows users to file, serve, manage, and retrieve case files throughout California.

## Create Your Account Here

share:

Search                                                                        🔍

## Recent Posts

All-In-One Litigation Support

The Significance of Cybersecurity in Litigation

Concierge Filing Services

Does San Bernardino Superior Court Accept eFiling?

What Makes a Good Process Server?

## Archives

Select Month ⌄

**LEGAL DOCUMENT SERVER, INC**

Legal Document Server (LDS) is a full-service Litigation Support provider.

**Get In Touch**

7162 Beverly Boulevard, 508 Los Angeles, CA 90036

(800) 687-5003

Support@LegalDocumentServer.com

**Quick Links**

About

Services

How It Works

Pricing

Contact Us

News

Disclaimer

Careers

Referral Program

Privacy policy

Terms of Service

**Recent Posts**

All-In-One Litigation Support
August 14, 2023

The Significance of Cybersecurity In Litigation
June 20, 2023

Concierge Filing Services
April 4, 2023

© 2022 Legal Document Server All rights reserved



**FIRSTLEGAL**
COURT & PROCESS

File your documents quickly and accurately.

# SAN FRANCISCO EAST BAY
## RATE CARD

## SERVICES STARTING AT:

**EPRODUCTS:**

| | |
|---|---|
| **EFILING – DIRECT** | $9.50 |
| **EFILING – CONCIERGE** | $35.75 |
| **ERECORDING – CONCIERGE** | $35.75 |
| **ESERVICE** | $1.50 / per entity ($15.00 max) |

| | |
|---|---|
| **PDF FILING** | $39.25 |
| **SERVICE OF PROCESS** | $83.75 / first 15 pages |
| **COURTESY COPY** | $33.00 / first 25 pages |
| **RESEARCH** | $31.75 |

## ADDITIONAL INFORMATION

**EFILING** — $43.75 concierge rush surcharge when required within 2 hrs or after 5 p.m. | $74.50 immediate/special surcharge when required within 1 hr, before 8 a.m., or on weekends | $0.50 per page for additional courtesy copies | additional concierge transaction envelopes $9.50 | rates do not include transaction fees

**PDF FILING** — Email your filings to First Legal | 15 pages included in base charge; $1.40 per page thereafter

**SERVICE OF PROCESS** — First 15 pages included in base charge; $1.40 per page thereafter | unlimited attempts for 3-day service type in California

**RESEARCH** — Wait time of $0.80 per minute | research fees charged per hour

*ADDITIONAL FEES MAY APPLY*

**CONTACT US!**
www.firstlegal.com | 800.889.0111

**FIRSTLEGAL**
COURT & PROCESS
CONFIDENTIAL | 2023



**PACIFIC COAST**
LEGAL SERVICES

Home > Pricing

# Pricing

Service

| TYPE OF SERVICE: | ROUTINE | DAY | DEMAND |
|---|---|---|---|
| SAN JOSE AREA | $75.00 | $90.00 & up | $110.00 & up |
| SANTA CLARA COUNTY | $80.00 | $96.00 & up | $115.00 & up |
| OUT OF SANTA CLARA COUNTY | $90.00 | $105.00 & up | $125.00 & up |

Outside of California.................    $100 & up (call for accurate pricing)

Area surcharge (rural / mountainous areas)............  $10.00 & up

Mailing Declaration (when substitute service is effected)...........  $10.00 & up

Stakeout (1 hour minimum then billed by ½ hr)............................ $55.00 / hour & up
(usually a 2hr. minimum)

Infield Locate................................................................. $25.00

File Proof of Service........................................................ $15.00 & up

Notarize Proof of Service................................................. $15.00

Additional Entities (Served same time / address).................... $25.00 & up

Additional attempts within same day.................................... $25.00 & up

Routine Service: Once an order has been placed it is entered in our work log. Once the paper work is received it is assigned to one of our registered process servers. First attempt is usually made within 72 hours. Allow us 5 days before inquiring on an update or proof of service. If your deadline is limited, try our Rush Service.

Rush / Same Day Service: Once we receive your paper work it is immediately entered and will be attempted the same day it is received and once daily there after.

**note** *Deadline for Same Day Service is 2:00pm PST*

On Demand Service: Our last line of defense for our clients. Once your order is received, we enter it in our work log and service is attempted within one hour.

*\*\*note\**

Note: S

Deadlines and pricing are subject to change without notice.

Every Service of Process is limited to 5 attempts before additional fees are incurred.

Court Filing – California

Standard First 25 Pages Santa Clara County........................... $ 35.00

Electronic Filing ...........................................................$20 & up

Each page after 25.............................................. $0.25 ea.

Area surcharge.............................................................. $10 & up

One Demand fee............................................................ $20.00 & up

Courtesy Copy.............................................................. $10.00

Photocopies..................................................................... $0.25 ea.

Exhibit tabs & document preparation.................................. $2 & up

Fee advance..................................................................... 5%-10%

Court Filing- Nationwide.................................................... Call for pricing

Monthly retainer – documents are either picked up by 11:00am and filed same day or picked up late in the afternoon and filed next day – $100.00 & up

Document Retrieval:

     Document Retrieval/ Court Research................................ same as court filing fees above

Extensive court / research time............................... $45.00 / hour

     Area Surcharge.......................................................... $10 – $45

     Certification Fee.......................................................... Actual Cost

     Copies........................................................................ Actual Cost

     Fee Advance.............................................................. 5%-10% – $2.00 min.

Notary Services:

     Mobile Notary............................................................ $25.00 & up

     Area Surcharge.......................................................... $20.00 & up

     On Demand................................................................ $30.00 & up

Skip tracing:

     Locate an Individual................................................... $49 & up
     Locate Business/Principal of business........................ $49 & up

     Real Property- California............................................. $55.00

     Real Property- Nationwide.......................................... $55.00

\* All prices subject to change without notice

## About Us

Pacific Coast Legal Services is an
attorney service company providing
litigation support services to attorneys,
insurance companies and corporations.
We specialize in reliable and rush
service. We can handle your needs
nationwide.

## Contact Us



**About Us**      **Privacy Policy**
**Terms of Service**      **Legacy E-Filing**

Pacific Coast Legal. All rights reserved © 2021
website developed and maintained by MMediaWeb

# EXHIBIT L

- Revelation 3:10 KJV: Because thou hast kept the word of my patience, I also will keep thee from the hour of temptation, which shall come upon all the world, to try them that dwell upon the earth.

12 And because lawlessness will abound, the love of many will grow cold. 13 But he who endures to the end shall be saved. 14 And this gospel of the kingdom will be preached in all the world as a witness to all the nations, and then the end will come.

    A.  Do not fret because of those who are evil
        or be envious of those who do wrong;
        2 for like the grass they will soon wither,
        like green plants they will soon die away.
    B.  3 Trust in the Lord and do good;
        dwell in the land and enjoy safe pasture.
        4 Take delight in the Lord,
        and he will give you the desires of your heart.
    C.  5 Commit your way to the Lord;
        trust in him and he will do this:
        6 He will make your righteous reward shine like the dawn,
        your vindication like the noonday sun.
    D.  39 The salvation of the righteous comes from the Lord;
        he is their stronghold in time of trouble.
        40 The Lord helps them and delivers them;
        he delivers them from the wicked and saves them,
        because they take refuge in him.

21-CR-003653
CDM
Clerks Docket and Minutes
1851281

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
**CLERKS DOCKET AND MINUTES**

Docket: 21-CR-003653

| | |
|---|---|
| 1. WT: Active      PO:      Dept. 712 | Court Date & Time: 06/02/2021 - 9:00 AM |
| 2. Docket Name: GIBSON, JOHN JOSEPH | CEN: 1367431 |
| 3. HG Type: Recall Bench Warrant | PFN: AOX854 |
| HG Comments: Counsel requested add on | / *FTRA 5·28·21 D712 ARR* |
| 4. CHARGES:      5 charge(s) | BAC: |

001: PC25850(a)-F: CARRYING A LOADED FIREARM ON ONE'S PERSON IN A CITY
001-E01: PC25850(c)(6)-F: SPECIAL ALLEGATION-LOADED FIREARM ?UNREGISTERED (Enhancement)
002: PC25400(a)(1)-F: CARRYING CONCEALED FIREARM WITHIN VEHICLE
002-E01: PC25400(c)(6)-F: SPECIAL ALLEGATION-CONCEALED FIREARM WITH AMMUNITION (Enhancement)
003: PC417(a)(2)(A)-M: BRANDISHING A FIREARM IN PUBLIC (Firearms Relinquishment)

5. Bail: $50,000.00      Bond Status / Amount:

Time Waiver:

## PROCEEDING

6. Judicial Officer: Hing, Stuart      ☐Video   Dep. DA: *Brooke Perkins*   ☑Video
7. Dep Clerk: Li, Jin      ☐Video   Def. Atty: *Thomas Knudsen*   ☑Video
8. Reporter: Pandolfo, Lisa      ☑Video   Other: *(Tead)*   ☐Video

**DEFENDANT:** ☐Video
☐Present ☐In Custody *DEFTIC* ☐Pro Per ☑Not Present ☐Excused ☑977 on file ☐Failed to Appear *DEFTA*
☐Interpreter *INTR:*_____ present ☐Certified ☐Sworn Language Interpreted:_____
☐Duly Arraigned *ARR* ☐Advised as to Constitutional Rights ☐Advisement of Rights Filed
☐Waives Formal Arraignment *FAW*
Defendant / Attorney Served ☐ *COPY OF* Complaint / Information / Indictment / Petition

Protective Order (PC 136.2) *CPO:* ☐Issued   ☐Modified   ☐Terminated *CPOT*   ☐Served   ☐Do Not Harass
☐Stay Away from:_____ ☐at least ___ yards
☐Referred to Public Defender *PDREF* ☐PD Files Conflict *DCI* ☐Financially Ineligible ☐PD Appointed ☐Private Atty Apptd *enters*
☐Waiver of Rights and Plea Form Filed *PLF*   ☐Plea Withdrawn   ☐Change of Plea   ☐Plea in Absentia
☐Plea Entered: Not Guilty / Guilty / No Contest   ☐Convicted Guilty / No Contest as to Count(s)_____
Plea to a lesser included/reasonably related offense: ☐Guilty / No Contest of Count(s)_____
To the charge of:_____

Clauses: ☑Denied   ☐Admitted _____ ☐Dismissed _____ ☐Stricken Sentencing Purposes Only
Priors: ☐Denied   ☐Admitted _____ ☐Dismissed _____ ☐Stricken Sentencing Purposes Only
Referred to: ☐Probation-F *REFP* ☐Probation-M *RPM* ☐Re-Referred to Probation *REFP* ☐Financial Hearing Officer *REFFHO*

Time Waived *TW:*   ☐Trial   ☐Sentence   ☐Preliminary Exam 10 and 60 days   ☐Preliminary Exam 10 day only *TW10*
No Time Waiver *NTW:* ☐Trial, due:_____ ☐Sentence   ☐Time Waiver Withdrawn *TWWD*
☐Preliminary Exam 10 days *NTWPX10* due:_____ ☐Preliminary Exam 60 days *NTWPX60* due:_____

Bail: ☐Bail Set at $_____ *BS* ☐BF Set Aside *BFSA* ☐Reinstated *BREI* ☐Exonerated *BBEX*
☐Forfeited In Open Court While Court Was in Session *BBFF* ☐Summary Judgment Entered *SJE*
☐Deft OR'd *ROR*   ☐Cruz Waiver *CRUZ*   ☐Released this Action Only *RTA*   ☐Deft Remanded *REMC*

Warrant: ☐Bench Warrant Issued $_____ *BWI* ☐Warrant Maintained *WM*   ☑Warrant Recalled *WRC*
☐Bench Warrant Held *BWH* $_____ ☐BW Withdrawn *BWW* ☐OR Revoked *OREV* ☐No Cite Release ☐Night Service

Page 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
**CLERKS DOCKET AND MINUTES**

Docket Name:  GIBSON, JOHN JOSEPH                    Docket: 21-CR-003653

☐Petition / Motion by _____ for/to _____ ☐Granted ☐Denied ☐Withdrawn

Probation: ☐Court *CP* ☐Formal *FP*   Granted for _____ years / months   ☐See attached conditions   ☐Denied *PRD*
Prob. Violation: ☐Revoked *PRREV*   ☐Summarily Revoked *PSR*   ☐Denies Violation   ☐Admits Violation *APV*
☐Matter Submitted   ☐Hrg Waived   ☐Found in Violation *FPV*   ☐Not Found *NPV*   ☐Reinstated *PRREI*
☐Continue Same Terms & Conditions   ☐Modified   ☐Extended to _____ *EXTP*   ☐Terminated *PRTERM*

Community Supervision:   ☐Revoked *CSREV*   ☐Denies Violation   ☐Admits Violation
☐Matter Submitted   ☐Hrg Waived   ☐Found in Violation   ☐Not Found *NPV*
☐Restored and Modified *CSRM*   ☐Restored Same Terms & Conditions *CSRSTC*   ☐Terminated *CSTERM*

Parole Supervision:   ☐Revoked *PREV*   ☐Denies Violation   ☐Admits Violation
☐Matter Submitted   ☐Hrg Waived   ☐Found in Violation   ☐Not Found *NPV*
☐Restored & Modified *PREM*   ☐Restored Same Terms & Conditions *PSTC*   ☐Terminated *PST*

Mandatory Supervision:   ☐Revoked *MSRV*   ☐Denies Violation   ☐Admits Violation
☐Matter Submitted   ☐Hrg Waived   ☐Found in Violation   ☐Not Found *NPV*
☐Restored & Modified *MSRS*   ☐Restored Same Terms & Conditions *MSSTC*   ☐Terminated *MST*

Firearms Relinquishment:  ☐ Compliant *FAC*  ☐ Non-Compliant *NFAC*

☐Doubt Declared *1368D*   ☐Criminal Proceedings Suspended *CPS*   ☐Criminal Proceedings Reinstated *CPREI*

☐Burks Waiver *BKW*

_____
_____
_____
_____
_____
_____

**Future Hearings:**

Continued:  ☐Office to Send Notice   ☐Deft to be Booked *FIDEN*
Date_8·26·21____Time_915___Dept_U2___Proc_PTH____
Date_____Time_____Dept_____Proc_____
Date_____Time_____Dept_____Proc_____
Date_____Time_____Dept_____Proc_____

Page 2



**CITY OF Fremont**

*Police Department*
2000 Stevenson Blvd., P.O. Box 5007, Fremont, CA 94537 -5007
(510) 790-6800 *ph* | www.fremontpolice.org

Arresting Agency: CA00105

**FREMONT POLICE DEPARTMENT**
County of Alameda, State of California

Agreement to Appear in Court
Penal Code Section 853.6

FILED
ALAMEDA COUNTY
March 18, 2021
CLERK OF THE SUPERIOR COURT

BY___*vpons*_____

Name:   GIBSON,JOHN JOSEPH

PFN:   AOX854

CEN: 1367431

Address: 3416 DEERWOOD TR #314

Phone:

FREMONT, CA 94536

[X] East County Hall of Justice       5151 Gleason Drive, Dublin, CA 94568

Phone: 925 227-6700

Court Appearance on Friday, May 28, 2021 at 0900

Without admitting guilt, I promise to appear at the time and place directed above.

Signature _____

Court Information:

Warrant Number:
Agency Holding Warrant: .

Charge(s):
Section: PC417(A)(2)        LEI: 1367431

If I fail to appear and am apprehended outside the State of California, I hereby waive all proceedings and documents necessary for my extradition from the state of my apprehension to the State of California, and hereby consent to be returned to the State of California in the custody of and by any peace officer from the State of California

I understand that a judge may at any time require bail to be posted and rescind my release on my own recognizance.

This agreement is executed pursuant to the provisions of Section 827.1 and/or 836.6 Penal Code of the State of California, Section 853.6, Penal Code, California. Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever: The person arrested was arrested for a misdeameanor and has signed an agreement to appear in court or before a magistrate at a place and time designated as provided in this code.

Section 853.7, Penal Code, California. Failure to obey written promise to appear. Any person who willfully violates his written promise to appear in court is guilty of a misdeameanor, regardless of the disposition of the charge upon which he was originally arrested.

By: _____

Sunday, February 28, 2021         5:10:28PM

Report Number: 210228018




## County of Alameda

### Request for Out of Custody Complaint
### Declaration of Probable Cause

| Arrestee/Suspect | DOB | Sex | PFN | |
|---|---|---|---|---|
| JOHN GIBSON | 04/25/1956 | M | AOX854 | |

| Race | CDL | Agency Report # |
|---|---|---|
| WHITE | N2614837 CA | 210228018 |

| Arresting Agency | Declarant | Agency Phone | Agency Fax |
|---|---|---|---|
| FREMONT PD (CA0010500) | Malina Sam | (510) 790-6722 | |

| Arrest Date | Arrest Time | Arrest Location |
|---|---|---|
| | | 2000 MOWRY AV FREMONT CA |

| Holds | Arrestee Home Address |
|---|---|
| | 3416 DEERWOOD TR , ##314 FREMONT CA |

| Charges/Violations |
|---|
| PC 417(A)(2) M(1 Counts) |

USE THIS SUMMARY FOR CHARGING

NOTIFICATION:

On 02/28/21, at about 1500 hours, I, Ofc. M. Gilfoy, was wearing a full police uniform and driving a marked patrol vehicle. I was dispatched to a brandishing a firearm investigation on Bridgewood Terrace. FPD Dispatch relayed that the victim, Christopher McCallster, was delivering InstaCart and the suspect, John Gibson, pulled a gun on him because he wanted Christopher to move his vehicle.

STATEMENTS:

Victim- Christopher McCallster

Upon arrival at the Meadow Brook Apartments, I met with Christopher and he told me the following in essence:

He works for InstaCart and he just finished his delivery. He was walking back to his vehicle when he heard his horn honking. The suspect, John Gibson, was honking Christopher's vehicle's horn through the open driver's side window. John said, "Move your fucking car, Nigger". John pulled a gun from his trunk, pointed it at Christopher, and asked, "Do you want to die today?" John replied, "You caught the right one, go ahead and shoot me." John went to the passenger, later identified as Mona Oliver, in John's vehicle, and spoke to her. John came back to Christopher, pointed the gun at him again and said, "Move your fucking car." Christopher replied, "You can move it perfectly fine." John went back to his car and left the area.

Christopher can identify John if he saw him again. John was a white male adult last seen wearing a blue cap and jeans, 5'10"-5'11" tall and about 150-175 pounds. The gun was a black semi-automatic pistol. The passenger in John's vehicle looked like an Asian woman with a mask. Christopher wished to pursue prosecution of John Gibson for brandishing a firearm at him.

Suspect- John Gibson

I contacted John in the WTH ER parking lot. I read him his Miranda Rights form my department issued card and I asked him if he understood. John replied, "Yes", and told me the following in essence:

His wife, Mona Oliver, was at the Union City Mall and was bit by a dog at the Starbucks. He was trying to get her to the hospital, but there was a car in the way. John honked the horn on the car and Christopher came over. John told Christopher he needed to move, so John could get to the hospital. Christopher said, "Fuck you, Fuck you" and came towards John. John pulled his gun out of the trunk, pointed it at Christopher, and told him to get back. When asked if he called Christopher an N-word, John replied that he said, "Get the fuck out of the driveway, Nigger." He only pointed the gun at Christopher once.

I asked him to clarify when he used the N-word. John told me Christopher was walking up on him and John said, "Get the fuck back, Get back Nigger". Christopher also said, "Fuck you, White motherfucker" at some point in the argument.

John pointed the gun at Christopher because he felt scared, threatened, and feared for his and his wife's life. The magazine was not in the gun per John. He had the gun because of the crime in Fremont. They were going to Target after the hospital, so he brought the gun.

Person #1- Mona Oliver:

Mona was in the WTH ER to be treated for the dog bite. She told me the following in essence:

She was at the Union Landing Starbucks and a dog bit her when she tried to pet it. She came home and John was kind of upset. They went to their car and a truck was blocking them. John told her he showed him, (Christopher), the gun. Mona never saw the gun. She thought Christopher had an attitude. She heard John call him a Nigger and heard Christopher say, "Go ahead and shoot me." John sometimes carries a gun in the car.

Refer to WatchGuard video for my contacts in their entirety.

IN-FIELD LINE UP:

Cover units located John at the Washington Township Hospital, WTH, Emergency Room, ER, parking lot.

I read Christopher the in-field line up admonishment from my department issued card. Christopher replied that he understood the admonishment. I transported Christopher to the WTH ER parking lot. Christopher saw John and stated, "It's definitely him". I provided Christopher with the report number and my card and he was transported back to his vehicle.

ARREST AND BOOKING:

I arrested John Gibson for PC417(a)(2)(A)- brandishing a firearm in public and transported him to the FPD Jail for booking.

EVIDENCE:

Excerpt from Ofc. O'Neal's report:

Notification:

On Sunday, 02/28/2021, at approximately 1500 hours I (D. O'Neal #14281) was dispatched to 3*** Bridgewood Terr. on the report of a hand gun being brandished. While enroute FPD dispatch notified me that the male with the handgun was at Washington Hospital.

Firearm:

Upon arrival I observed a male, later identified as John Gibson standing outside his vehicle with Ofc. Haugh and Ofc. Wilson. I heard Ofc. Wilson ask Gibson if the firearm was in his vehicle and Gibson said it was. Ofc. Wilson asked Gibson if we could retrieve it and Gibson said we could. I located a black Springfield XD (SN: XD629596) handgun and a magazine with ten bullets inside of it. The gun and magazine were inside of a brown jacket in the trunk. I took a digital photograph of the gun and collected it. I later gave possession of the gun, magazine, and ten bullets to Ofc. Gilfoy. Refer to his original report for further details. I later uploaded the photograph into the CIMAGE digital evidence system.

Nothing further from this officer.

Ofc. O'Neal completed the property receipt, John signed it, and I provided John with a copy.

I booked the firearm, magazine, and 10 .45cal. rounds into evidence at FPD.

John texted me a picture he took of Christopher and Christopher's vehicle. I booked the picture into CIMAGE.

ATTACHMENTS:

I placed the property receipt into attachments.

DISPOSITION:

I recommend this case be forwarded to the DDA for review and charging of John Gibson for PC417(a)(2)(A)- Brandishing a firearm in public.

CC:DDA

---

I declare under penalty of perjury that the above information was obtained through official police channels and is contained in the above-mentioned police report. Executed in the County of Alameda, State of California. Identity and signature of declarant verified by CRIMS.

Date: 03/02/2021 13:57:08          Declarant: Malina Sam          Badge: 15118

---

Reviewed and approved.

Date: 03/03/2021 08:45:20                 Supervisor: Jason Franchi                 Badge: 11190

Document #: PCD659542

Dept No.        712
05/28/2021

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

PEOPLE OF THE STATE OF CALIFORNIA

v.

**JOHN JOSEPH GIBSON**

Defendant(s)

NO. 21-CR-003653

COMPLAINT

PFN:AOX854          CEN:1367431

F I L E D
ALAMEDA COUNTY
3/18/2021 2:28:18 PM
CLERK OF THE SUPERIOR COURT
BY        McYou
Signed: 3/18/2021 03:53 PM
DEPUTY

The undersigned, being sworn says, on information and belief, that JOHN JOSEPH GIBSON did, in the County of Alameda, on or about **February 28, 2021**, commit a FELONY, to wit: CARRYING A LOADED FIREARM ON ONE'S PERSON IN A CITY, a violation of section 25850(a) of the PENAL CODE of California, in that said defendant(s) did unlawfully carry a loaded firearm within a vehicle while in a public place and on a public street in an incorporated city, to wit, Fremont, CA.

### SPECIAL ALLEGATION-LOADED FIREARM –UNREGISTERED AS TO DEFENDANT JOHN JOSEPH GIBSON

It is further alleged, pursuant to section 25850(c)(6), that the defendant was not listed with the Department of Justice as the registered owner of the pistol, revolver, and other firearm capable of being concealed upon the person.

### NOTICE PROVISION-RE STATE PRISON ELIGIBILITY AS TO DEFENDANT JOHN JOSEPH GIBSON

The defendant is hereby notified that the above felony offense is not governed by Penal Code section 1170(h) and that an executed sentence for the offenses herein charged shall be served in the state prison pursuant to Penal Code section 1170.1(a).

### SECOND COUNT

The undersigned further deposes and says on information and belief, that said JOHN JOSEPH GIBSON did, in the County of Alameda, on or about **February 28, 2021**, commit a FELONY, to wit: CARRYING CONCEALED FIREARM WITHIN VEHICLE, a violation of section 25400(a)(1) of the PENAL CODE of California, in that said defendant(s) did unlawfully carry concealed within a vehicle under said defendant's control a pistol, revolver and firearm capable of being concealed upon the person.

### SPECIAL ALLEGATION-CONCEALED FIREARM WITH AMMUNITION AS TO DEFENDANT JOHN JOSEPH GIBSON

It is further alleged pursuant to section 25400(c)(6) that the firearm was loaded and that the defendant was not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner.

### NOTICE PROVISION-RE STATE PRISON ELIGIBILITY AS TO DEFENDANT JOHN JOSEPH GIBSON

The defendant is hereby notified that the above felony offense is not governed by Penal Code section 1170(h) and that an executed sentence for the offenses herein charged shall be served in the state prison pursuant to Penal Code section 1170.1(a).

## THIRD COUNT

The undersigned further deposes and says on information and belief, that said JOHN JOSEPH GIBSON did, in the County of Alameda, on or about **February 28, 2021**, commit a MISDEMEANOR, to wit: BRANDISHING A FIREARM IN PUBLIC, a violation of section 417(a)(2)(A) of the PENAL CODE of California, in that said defendant(s) did unlawfully in the presence of another person, to wit, Christopher McCalister, draw and exhibit a firearm in a rude, angry, and threatening manner. It is further alleged that, pursuant to Penal Code section 1203.095 and 417, there a presumptive minimal jail/probation period applies to this charge.

---

Pursuant to Penal Code Section 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by Penal Code Section 1054.3.

Subscribed and sworn to before me,                    This document was filed electronically in
Thursday, March 18, 2021                              compliance with Penal Code section 959.1

SCOTT SWISHER                                         FPD 210228018
DEPUTY DISTRICT ATTORNEY
State Bar #121271
Alameda County, California



21-CR-003653
COM
Clerks Docket and Minutes
1851281

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
**CLERKS DOCKET AND MINUTES**

| | | | |
|---|---|---|---|
| 1. WT: Active | PO: | Dept. 712 | Court Date & Time: 06/02/2021 - 9:00 AM |
| 2. Docket Name: GIBSON, JOHN JOSEPH | | CEN: 1367431 | |
| 3. HG Type: Recall Bench Warrant | | PFN: AOX854 | Docket: 21-CR-003653 |

HG Comments: Counsel requested add on / *FTA 5.28.21 D712 ARR*     Probation:

**4. CHARGES:**     5 charge(s)     BAC:

001: PC25850(a)-F: CARRYING A LOADED FIREARM IN ONE'S PERSON IN A CITY
001-E01: PC25850(c)(6)-F: SPECIAL ALLEGATION-LOADED FIREARM ?UNREGISTERED (Enhancement)
002: PC25400(a)(1)-F: CARRYING CONCEALED FIREARM WITHIN VEHICLE
002-E01: PC25400(c)(6)-F: SPECIAL ALLEGATION-CONCEALED FIREARM WITH AMMUNITION (Enhancement)
003: PC417(a)(2)(A)-M: BRANDISHING A FIREARM IN PUBLIC (Firearms Relinquishment)

**5. Bail:** $50,000.00     **Bond Status / Amount:**

**Time Waiver:**

**PROCEEDING**

| | | | |
|---|---|---|---|
| 6. Judicial Officer: Hing, Stuart | ☑Video | Dep. DA: *Brooke Perkins* | ☑Video |
| 7. Dep Clerk: Li, Jin | ☐Video | Def. Atty: *Thomas Knutsen* | ☑Video |
| 8. Reporter: Pandolfo, Lisa | ☑Video | Other: *(tead?)* | ☐Video |

**DEFENDANT:** ☐Video
☐Present ☐In Custody *DEFTIC* ☐Pro Per ☑Not Present ☐Excused ☑977 on file ☐Failed to Appear *DEFTA*
☐Interpreter *INTR:*_____ present ☐Certified ☐Sworn Language interpreted:_____
☐Duly Arraigned *ARR* ☐Advised as to Constitutional Rights ☐Advisement of Rights Filed
                    ☑Waives Formal Arraignment *FAW*
Defendant / Attorney Served ☑ *COPY OF* ☑Complaint / Information / Indictment / Petition

**Protective Order (PC 136.2)** *CPO:* ☐Issued ☐Modified ☐Terminated *CPOT* ☐Served ☐Do Not Harass
☐Stay Away from:_____ ☐at least_____ yards
☐Referred to Public Defender *PDREF* ☐PD Files Conflict *DCI* ☐Financially Ineligible ☐PD Appointed ☑Private Atty Apptd *enters*
☐Waiver of Rights and Plea Form Filed *PLF* ☐Plea Withdrawn ☐Change of Plea ☐Plea In Absentia
☐Plea Entered: ☑Not Guilty / Guilty / No Contest ☐Convicted Guilty / No Contest as to Count(s)_____
Plea to a lesser included/reasonably related offense: ☐Guilty / No Contest of Count(s)_____
To the charge of:_____

**Clauses:** ☑Denied ☐Admitted_____ ☐Dismissed_____ ☐Stricken Sentencing Purposes Only
**Priors:** ☑Denied ☐Admitted_____ ☐Dismissed_____ ☐Stricken Sentencing Purposes Only
Referred to: ☐Probation-F *REFP* ☐Probation-M *RPM* ☐Re-Referred to Probation *REFP* ☐Financial Hearing Officer *REFFHO*

**Time Waived** *TW:* ☐Trial ☐Sentence ☑Preliminary Exam 10 and 60 days ☐Preliminary Exam 10 day only *TW10*
**No Time Waiver** *NTW:* ☐Trial, due:_____ ☐Sentence ☐Time Waiver Withdrawn *TWWD*
    ☐Preliminary Exam 10 days *NTWPX10* due:_____ ☐Preliminary Exam 60 days *NTWPX60* due:_____

**Bail:** ☐Bail Set at $_____ *BS* ☐BF Set Aside *BFSA* ☐Reinstated *BREI* ☐Exonerated *BBEX*
☐Forfeited in Open Court While Court Was in Session *BBFF* ☐Summary Judgment Entered *SJE*
☐Deft OR'd *ROR* ☐Cruz Waiver *CRUZ* ☐Released this Action Only *RTA* ☐Deft Remanded *REMC*

**Warrant:** ☐Bench Warrant Issued $_____ *BWI* ☐Warrant Maintained *WM* ☑Warrant Recalled *WRC*
☐Bench Warrant Held *BWH* $_____ ☐BW Withdrawn *BWW* ☐OR Revoked *OREV* ☐No Cite Release ☐Night Service

Page 1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
**CLERKS DOCKET AND MINUTES**

Docket Name: GIBSON, JOHN JOSEPH                                    Docket: 21-CR-003653

☐Petition / Motion by _____ for/to _____ ☐Granted ☐Denied ☐Withdrawn

**Probation:** ☐Court *CP* ☐Formal *FP*  Granted for _____ years / months ☐See attached conditions ☐Denied *PRD*
**Prob. Violation:** ☐Revoked *PRREV* ☐Summarily Revoked *PSR* ☐Denies Violation ☐Admits Violation *APV*
☐Matter Submitted ☐Hrg Waived ☐Found in Violation *FPV* ☐Not Found *NPV* ☐Reinstated *PRREI*
☐Continue Same Terms & Conditions ☐Modified ☐Extended to _____ *EXTP* ☐Terminated *PRTERM*

**Community Supervision:** ☐Revoked *CSREV* ☐Denies Violation ☐Admits Violation
☐Matter Submitted ☐Hrg Waived ☐Found in Violation ☐Not Found *NPV*
☐Restored and Modified *CSRM* ☐Restored Same Terms & Conditions *CSRSTC* ☐Terminated *CSTERM*

**Parole Supervision:** ☐Revoked *PREV* ☐Denies Violation ☐Admits Violation
☐Matter Submitted ☐Hrg Waived ☐Found in Violation ☐Not Found *NPV*
☐Restored & Modified *PREM* ☐Restored Same Terms & Conditions *PSTC* ☐Terminated *PST*

**Mandatory Supervision:** ☐Revoked *MSRV* ☐Denies Violation ☐Admits Violation
☐Matter Submitted ☐Hrg Waived ☐Found in Violation ☐Not Found *NPV*
☐Restored & Modified *MSRS* ☐Restored Same Terms & Conditions *MSSTC* ☐Terminated *MST*

**Firearms Relinquishment:** ☐ Compliant *FAC* ☐ Non-Compliant *NFAC*

☐Doubt Declared *1368D* ☐Criminal Proceedings Suspended *CPS* ☐Criminal Proceedings Reinstated *CPREI*

☐Burks Waiver *BKW*

_____
_____
_____
_____
_____
_____

**Future Hearings:**




Continued: ☐Office to Send Notice   ☐Deft to be Booked *FIDEN*
Date 8·26·21 ___ Time 9U5 ___ Dept U2 ___ Proc PTH ___
Date_____ Time_____ Dept_____ Proc_____
Date_____ Time_____ Dept_____ Proc_____
Date_____ Time_____ Dept_____ Proc_____

 **Superior Court of Alameda County Public Portal**

**21CV000668** GIBSON vs BERNSTEIN

**Civil Unlimited** (Civil Harassment)

Hayward Hall of Justice / DEPT 519 -
HON. Mark Fickes

Filed: 10/21/2021 Disposed: 05/19/2022
Court Finding - (Granted)

Document Download

Pay Fees

Case Summary

Register of Actions    Participants    Related Cases (3)

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 10/21/2021 | Petition Civil Harassment<br>Filed by: John Gibson (Petitioner) | Document | |
| 10/21/2021 | Case assigned to Hon. Tamiza Hockenhull in Department 519 Hayward Hall of Justice | Assignment | |
| 10/21/2021 | CH-110 Temporary Restraining Order (Civil Harassment)<br>Pending in WQ by: | Document | |
| 10/22/2021 | Civil Harassment Restraining Order Hearing scheduled for 12/09/2021 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 10/22/2021 | Updated -- CH-110 Temporary Restraining Order (Civil Harassment):<br>Status Date changed from 10/21/2021 to 10/22/2021<br>Result: Granted<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 11/12/2021 | CH-200 Proof of Personal Service (Civil Harassment)<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent)<br>Service Type: Personal | Document | |
| 12/06/2021 | Notice of Case Rescheduling or Relocation<br>Filed by: Clerk | Document | |
| 12/06/2021 | CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 12/06/2021 | Pursuant to the request of plaintiff, Civil Harassment Restraining Order Hearing scheduled for 12/09/2021 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Court's Motion was rescheduled to 02/22/2022 09:00 AM | Event | |
| 01/31/2022 | Declaration Of Marilyn J. Fogltance in Support of Mary Bernstein<br>Filed by: Mary Bernstein (Respondent) | Document | |
| 01/31/2022 | Declaration of Frank K. Tigano In Support of Mary Bernstein<br>Filed by: Mary Bernstein (Respondent) | Document | |
| 02/09/2022 | CH-120 Response to Request for Civil Harassment Restraining Orders<br>Filed by: Mary Bernstein (Respondent) | Document | |
| 02/09/2022 | Declaration of Elizabeth G. Tigano<br>Filed by: Mary Bernstein (Respondent) | Document | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 02/09/2022 | CH-250 Proof of Service of Response By Mail (Civil Harassment)<br>Filed by: Mary Bernstein (Respondent)<br>As to: John Gibson (Petitioner) | Document | |
| 02/14/2022 | CH-115 Request to Continue Court Hearing<br>Filed by: John Gibson (Petitioner)<br>As to: John Gibson (Petitioner) | Document | |
| 02/14/2022 | Updated -- CH-115 Request to Continue Court Hearing:<br>As To Parties changed from John Gibson (Petitioner) to John Gibson (Petitioner) | Document | |
| 02/15/2022 | Updated -- CH-116 Order on Request to Continue Hearing:<br>Status Date changed from 02/15/2022 to 02/15/2022<br>Result: Request to Continue Granted with TRO<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 02/15/2022 | CH-116 Order on Request to Continue Hearing<br>Pending in WQ by: | Document | |
| 02/17/2022 | On the Court's own motion, Civil Harassment Restraining Order Hearing scheduled for 02/22/2022 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Court's Motion was rescheduled to 03/22/2022 09:00 AM | Event | |
| 02/28/2022 | CH-200 Proof of Personal Service (Civil Harassment)<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent)<br>Service Type: Personal | Document | |
| 03/08/2022 | Case numbers 21CV000668, HG21110708 are related; case number HG21110708 is the lead case. | Case | |
| 03/08/2022 | Case numbers 21CV000668, HG21110713 are related; case number 21CV000668 is the lead case. | Case | |
| 03/08/2022 | CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 03/08/2022 | Minute Order (Court Order) | Minute Order | |
| 03/08/2022 | Civil Harassment Restraining Order Hearing scheduled for 03/22/2022 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Court's Motion was rescheduled to 04/28/2022 09:00 AM | Event | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 04/05/2022 | Case numbers HG20068279, 21CV000668 are related; case number HG20068279 is the lead case. | Case | |
| 04/13/2022 | Case reassigned to Hayward Hall of Justice in Department 519 - Hon. Bentrish Satarzadeh<br>Reason: Other | Assignment | |
| 04/27/2022 | CH-115 Request to Continue Court Hearing<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 04/27/2022 | Updated -- CH-115 Request to Continue Court Hearing:<br>As To Parties changed from Mary Bernstein (Respondent) to Mary Bernstein (Respondent) | Document | |
| 04/27/2022 | Updated -- CH-116 Order on Request to Continue Hearing:<br>Status Date changed from 04/27/2022 to 04/27/2022<br>Result: Request to Continue Granted with TRO<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 04/27/2022 | Amended CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 04/27/2022 | Amended CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 04/27/2022 | CH-116 Order on Request to Continue Hearing<br>Pending in WQ by: | Document | |
| 04/27/2022 | Civil Harassment Restraining Order Hearing scheduled for 04/28/2022 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Court's Motion was rescheduled to 06/09/2022 09:00 AM | Event | |
| 04/28/2022 | Civil Harassment Restraining Order Hearing scheduled for 06/09/2022 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Court's Motion was rescheduled to 05/19/2022 09:00 AM | Event | |
| 04/29/2022 | Correspondence Re: Objections to Postponement<br>Filed by: Mary Bernstein (Respondent) | Document | |
| 05/04/2022 | Proof of Personal Service<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent)<br>Service Cost Waived: No | Document | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 05/17/2022 | Proof of Personal Service<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent)<br>Service Date: 05/02/2022<br>Service Cost: 0.00<br>Service Cost Waived: Yes | Document | |
| 05/19/2022 | CH-130 Restraining Order After Hearing (Civil Harassment)<br>Issued and Filed by: Clerk | Document | |
| 05/19/2022 | Certificate of Mailing for [CH-130 Restraining Order After Hearing (Civil Harassment)]<br>Issued by: Clerk | Document | |
| 05/19/2022 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |
| 05/19/2022 | Civil Harassment Restraining Order Hearing scheduled for 05/19/2022 at 09:00 AM in Hayward Hall of Justice at Department 519 updated:<br>Result Date to 05/19/2022<br>Result Type to Held | Event | |
| 04/24/2023 | CH-700 Request to Renew Restraining Order<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 04/24/2023 | Case reassigned to Hayward Hall of Justice in Department 519 - Hon. Elizabeth Riles<br>Reason: Other | Assignment | |
| 04/24/2023 | Civil Harassment Restraining Order Hearing scheduled for 05/16/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 04/25/2023 | CH-710 Notice of Hearing to Renew Restraining Order<br>Pending in WQ by: | Document | |
| 04/26/2023 | Updated -- CH-710 Notice of Hearing to Renew Restraining Order:<br>Status Date changed from 04/25/2023 to 04/26/2023<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 05/15/2023 | Affidavit of Unsuccessful Service<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 05/16/2023 | CH-710 Notice of Hearing to Renew Restraining Order<br>Issued and Filed by: Clerk | Document | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 05/16/2023 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |
| 05/16/2023 | Civil Harassment Restraining Order Hearing scheduled for 05/16/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 06/07/2023 | Civil Harassment Restraining Order Hearing scheduled for 06/07/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 06/07/2023 | CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 06/07/2023 | Civil Harassment Restraining Order Hearing scheduled for 07/05/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 06/07/2023 | Amended CH-710 Notice of Hearing to Renew Restraining Order<br>Issued and Filed by: Clerk | Document | |
| 06/07/2023 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |
| 06/07/2023 | Civil Harassment Restraining Order Hearing scheduled for 06/07/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 Held - Continued was rescheduled to 07/05/2023 09:00 AM | Event | |
| 06/14/2023 | Application for Order for Alternative Service of Civil Harassment Temporary Restraining Order CCP Sec. 527.6(m)(2)<br>Filed by: John Gibson (Petitioner)<br>Type: Without Hearing | Document | |
| 06/14/2023 | Updated -- Application for Order for Alternative Service of Civil Harassment Temporary Restraining Order CCP Sec. 527.6(m)(2):<br>Result: Granted<br>Result Date: 06/14/2023 | Document | |
| 06/21/2023 | Order Re: Application for Alternative Service of Civil Harassment<br>Filed by: Clerk | Document | |
| 07/03/2023 | Proof of Service by Substituted Service<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent)<br>Proof of Mailing Date: 06/21/2023<br>Service Cost: 120.00<br>Service Cost Waived: No | Document | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 07/03/2023 | Proof of Service by Mail<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent)<br>After Substituted Service of Summons and Complaint?: No | Document | |
| 07/03/2023 | Declaration of Mailing<br>Filed by: John Gibson (Petitioner) | Document | |
| 07/05/2023 | CH-730 Order to Renew Civil Harassment Restraining Order<br>Issued and Filed by: Clerk | Document | |
| 07/05/2023 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |
| 07/05/2023 | Civil Harassment Restraining Order Hearing scheduled for 07/05/2023 at 09:00 AM in Hayward Hall of Justice at HHJ / Department 519 updated:<br>Result Date to 07/05/2023<br>Result Type to Held | Event | |
| 07/12/2023 | CH-600 Request to Modify/Terminate Civil Harassment Restraining Order<br>Filed by: Mary Bernstein (Respondent)<br>As to: John Gibson (Petitioner) | Document | |
| 07/12/2023 | CH-610 Notice of Hearing on Request to Modify/Terminate Civil Harrassment Restraining Order<br>Filed by: Mary Bernstein (Respondent)<br>As to: John Gibson (Petitioner) | Document | |
| 07/17/2023 | Civil Harassment Restraining Order Hearing Notice of Hearing on Request to Terminate CH Restraining Order scheduled for 08/03/2023 at 09:00 AM in Hayward Hall of Justice at HHJ / Department 519 | Event | |
| 07/17/2023 | Updated -- CH-610 Notice of Hearing on Request to Modify/Terminate Civil Harrassment Restraining Order:<br>Status Date changed from 07/12/2023 to 07/17/2023 | Document | |
| 07/26/2023 | Proof of Service of CH-600, CH-610, CH-620<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 07/31/2023 | Proof of Personal Service<br>Filed by: Mary Bernstein (Respondent)<br>As to: John Gibson (Petitioner)<br>Service Cost Waived: No | Document | |
| 08/03/2023 | Minute Order (Civil Harassment Restraining Order Hearing Notice of Hearing ...) | Minute Order | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 08/03/2023 | Order re: Civil Harassment Restraining Order Hearing Notice of Hearing on Request to Terminate CH Restraining Order<br>Signed and Filed by: Clerk | Document | |
| 08/10/2023 | Civil Harassment Restraining Order Hearing Notice of Hearing on Request to Terminate CH Restraining Order scheduled for 08/03/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 updated:<br>Result Date to 08/03/2023<br>Result Type to Held | Event | |
| 04/11/2024 | CH-700 Request to Renew Restraining Order<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 04/11/2024 | CH-710 Notice of Hearing to Renew Restraining Order<br>Received from: John Gibson (Petitioner) | Document | |
| 04/11/2024 | Civil Harassment Restraining Order Hearing scheduled for 05/08/2024 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 04/11/2024 | Updated -- CH-710 Notice of Hearing to Renew Restraining Order:<br>Status Date changed from 04/11/2024 to 04/11/2024<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 04/11/2024 | CH-710 Notice of Hearing to Renew Restraining Order<br>Pending in WQ by: | Document | |
| 05/06/2024 | CH-715 Request to Reschedule Hearing to Renew Restraining Order<br>Filed by: John Gibson (Petitioner) | Document | |
| 05/06/2024 | CH-716 Order to Reschedule Hearing to Renew Restraining Order (CLETS)<br>Received from: John Gibson (Petitioner) | Document | |
| 05/06/2024 | Declaration Evidence<br>Filed by: John Gibson (Petitioner) | Document | |
| 05/06/2024 | Affidavit of Unsuccessful Service<br>Filed by: John Gibson (Petitioner) | Document | |
| 05/06/2024 | CH-716 Order to Reschedule Hearing to Renew Restraining Order (CLETS)<br>Pending in WQ by: | Document | |

| Date | Message | Category | Download |
|---|---|---|---|
| 05/07/2024 | Updated -- CH-716 Order to Reschedule Hearing to Renew Restraining Order (CLETS):<br>Status Date changed from 05/06/2024 to 05/07/2024<br>Result: Granted<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 05/07/2024 | Civil Harassment Restraining Order Hearing scheduled for 05/08/2024 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Party's Motion was rescheduled to 05/29/2024 09:00 AM | Event | |
| 05/28/2024 | CH-715 Request to Reschedule Hearing to Renew Restraining Order<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 05/28/2024 | CH-716 Order to Reschedule Hearing to Renew Restraining Order (CLETS)<br>Received from: John Gibson (Petitioner) | Document | |
| 05/28/2024 | Updated -- CH-716 Order to Reschedule Hearing to Renew Restraining Order (CLETS):<br>Status Date changed from 05/28/2024 to 05/28/2024<br>Result: Granted<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 05/28/2024 | CH-716 Order to Reschedule Hearing to Renew Restraining Order (CLETS)<br>Pending in WQ by: | Document | |
| 05/28/2024 | Civil Harassment Restraining Order Hearing scheduled for 05/29/2024 at 09:00 AM in Hayward Hall of Justice at Department 519 Not Held - Continued - Party's Motion was rescheduled to 06/18/2024 09:00 AM | Event | |
| 05/29/2024 | Ex Parte Application Application for Order for Alternative Service of Civil Harassment Temporary Restraining Order CCP Sec. 527.6(m)(2)<br>Filed by: John Gibson (Petitioner)<br>Type: Without Hearing | Document | |
| 05/29/2024 | Order Alternate Service<br>Received from: John Gibson (Petitioner) | Document | |
| 05/29/2024 | Updated -- Ex Parte Application Application for Order for Alternative Service of Civil Harassment Temporary Restraining Order CCP Sec. 527.6(m)(2):<br>Result: Denied<br>Result Date: 05/29/2024 | Document | |
| 05/29/2024 | Order Alternate Service<br>Signed and Filed by: John Gibson (Petitioner) | Document | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 06/13/2024 | CH-200 Proof of Personal Service (Civil Harassment)<br>Filed by: John Gibson (Petitioner)<br>As to: Mary Bernstein (Respondent) | Document | |
| 06/18/2024 | CH-730 Order to Renew Civil Harassment Restraining Order<br>Issued and Filed by: Clerk | Document | |
| 06/18/2024 | Minute Order (Civil Harassment Restraining Order Hearing filed by John Gibs...) | Minute Order | |
| 06/18/2024 | Civil Harassment Restraining Order Hearing scheduled for 06/18/2024 at 09:00 AM in Hayward Hall of Justice at Department 519 updated:<br>Result Date to 06/18/2024<br>Result Type to Held | Event | |

Terms of Service

Contact Us
About this Site

Copyright © Journal Technologies, USA. All rights reserved.

 **Superior Court of Alameda County Public Portal**

**23CV031593** GIBSON vs TIGANO
**Civil Unlimited** (Civil Harassment)   Hayward Hall of Justice / DEPT 519 - HON. Mark Fickes

Filed: 04/24/2023

Document Download

Case Summary

Register of Actions        Participants

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 04/24/2023 | CH-100 Request for Civil Harassment Restraining Order<br>Filed by: John J. Gibson (Petitioner)<br>As to: Elizabeth G. Tigano (Respondent) | Document | |
| 04/24/2023 | Case assigned to Hon. Elizabeth Riles in Department 519 Hayward Hall of Justice | Assignment | |
| 04/24/2023 | Civil Harassment Restraining Order Hearing scheduled for 05/16/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 04/24/2023 | Updated -- CH-110 Temporary Restraining Order (Civil Harassment):<br>Status Date changed from 04/24/2023 to 04/24/2023<br>Result: Granted<br>Status changed from Pending in WQ to Issued and Filed | Document | |
| 04/24/2023 | CH-110 Temporary Restraining Order (Civil Harassment)<br>Pending in WQ by: | Document | |
| 04/25/2023 | Amended CH-110 Temporary Restraining Order (Civil Harassment)<br>Issued and Filed by: Clerk | Document | |
| 05/15/2023 | Affidavit of Unsuccessful Service<br>Filed by: John J. Gibson (Petitioner)<br>As to: Elizabeth G. Tigano (Respondent) | Document | |
| 05/16/2023 | CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 05/16/2023 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |
| 05/16/2023 | Civil Harassment Restraining Order Hearing scheduled for 05/16/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 06/07/2023 | Civil Harassment Restraining Order Hearing scheduled for 06/07/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 06/07/2023 | CH-116 Order on Request to Continue Hearing<br>Issued and Filed by: Clerk | Document | |
| 06/07/2023 | Civil Harassment Restraining Order Hearing scheduled for 07/05/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 | Event | |
| 06/07/2023 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 06/07/2023 | Civil Harassment Restraining Order Hearing scheduled for 06/07/2023 at 09:00 AM in Hayward Hall of Justice at Department 519 Held - Continued was rescheduled to 07/05/2023 09:00 AM | Event | |
| 06/14/2023 | Ex Parte Application Application for Order for Alternative Service of Civil Harassment<br>Filed by: John J. Gibson (Petitioner)<br>As to: Elizabeth G. Tigano (Respondent)<br>Type: With Hearing | Document | |
| 06/14/2023 | Updated -- Ex Parte Application Application for Order for Alternative Service of Civil Harassment:<br>Result: Granted<br>Result Date: 06/14/2023 | Document | |
| 06/21/2023 | Order Re: Application for Alternative Service of Civil Harassment<br>Filed by: Clerk | Document | |
| 07/03/2023 | Proof of Service by Substituted Service<br>Filed by: John J. Gibson (Petitioner)<br>As to: Elizabeth G. Tigano (Respondent)<br>Proof of Mailing Date: 06/21/2023<br>Service Cost: 120.00<br>Service Cost Waived: No | Document | |
| 07/03/2023 | Proof of Service by Mail<br>Filed by: John J. Gibson (Petitioner)<br>As to: Elizabeth G. Tigano (Respondent)<br>After Substituted Service of Summons and Complaint?: No | Document | |
| 07/03/2023 | Declaration of Mailing<br>Filed by: John J. Gibson (Petitioner) | Document | |
| 07/05/2023 | CH-730 Order to Renew Civil Harassment Restraining Order<br>Issued and Filed by: Clerk | Document | |
| 07/05/2023 | Minute Order (Civil Harassment Restraining Order Hearing) | Minute Order | |
| 07/05/2023 | Civil Harassment Restraining Order Hearing scheduled for 07/05/2023 at 09:00 AM in Hayward Hall of Justice at HHJ / Department 519 updated:<br>Result Date to 07/05/2023<br>Result Type to Held | Event | |

<u>Terms of Service</u>

<u>Contact Us</u>

<u>About this Site</u>

Copyright © Journal Technologies, USA. All rights reserved.

EXHIBIT M

**23** The Lord is my shepherd; I shall not want.

[2] He maketh me to lie down in green pastures: he leadeth me beside the still waters.

[3] He restoreth my soul: he leadeth me in the paths of righteousness for his name's sake.

[4] Yea, though I walk through the valley of the shadow of death, I will fear no evil: for thou art with me; thy rod and thy staff they comfort me.

[5] Thou preparest a table before me in the presence of mine enemies: thou anointest my head with oil; my cup runneth over.

[6] Surely goodness and mercy shall follow me all the days of my life: and I will dwell in the house of the Lord for ever.



**DIGITAL FILM ARTS & ANIMATION**

Elizabeth Tigano
*Student Digital Film Arts & Animation*
*Associate of Applied Science*
Pima Community College
2439 N. Richey Blvd.
Tucson Arizona 85716

January 8 2021

Declaration Elizabeth Tigano re: Luanne Rutheford State Bar Complaint

- We felt so small  we felt so undermined not able to see the faces the remarks we felt completely overpowered
- My sister on 11 4 2020 said about Luanne Rutherford attacking the disabled not going to tolerate, that she is not attacking Luanne about issues, the judge said nothing

My sister said at the CMC on 11 4 2020 she is not going to stand for abuse against the disabled any longer her or witnesses.  Luanne Rutherford papers mock always pointing out mary disabilities.  I am disabled and I do not want to be cut down by this attorney.  I am a disabled student and I have rights to be treated with respect as a witness.  I am a person and not some sort of a freak simply because I have endured traumas and have disorders as a result of others behaviors.  Emotional disorders does not mean that you are inhuman or subhuman.  I attend college work with disabled counselors and they treat me with respect, they demand teachers and students treat me with respect.  I am not on trial.  My sister is not on trial.  We did nothing wrong and we will not tolerate being criminalized for disabilities.  We will not tolerate heckling, criticsm, sneering and jeering at how we present testimony and evidence.  Smirking, rolling eyes or other disrespect is not to be tolerated.  It is surprising that it comes from a "professional attorney" woman that is so much older than we are.  We expect civility in a formal courtroom setting and in legal writings.  I am a mother, a responsible person and I have overcome many obstacles.  I do not deserve to be discredited because of my disabilities by an attorney that has an issue with disabled people.

*Elizabeth G. Tigano*



**Jaqueline Illera**
**Occupational Therapist**
**Children's Book Author** *Do Re Me ET for Fun*
**15934 Sunburst Street**
**North Hills, CA 91343**
**916 545 0095**
**Email: japple444@outlook.com**

Declaration Jaqueline Illera Occupational Therapist Children's Book Author

Luanne Rutherford State Bar Complaint

My name is Jaqueline V. Illera and I am knowledgeable about mistreatment Mary Bernstein has been enduring. Mary has been going through corporate mobbing unbearable I have endured with her in HOA Community assaulted myself there with her. Home sales judge assisting them in transcript I read FHA guiding these insurance defense counsel.

I am a naturalized citizen have been in court and the judge is not supposed to assist a side but is to act as referee. I am a naturalized American. I do not deserve to be discredited because I am a foreigner and naturalized citizen. I am a published author and occupational therapist.

Mary is a functioning, caring adult despite all she has endured and continually is enduring. Proof Luanne is consulting all homeowners on individual matters against Mary and directing their behavior to gaslight Mary as a tactic based on circumstantial evidence. Reasonable basis to believe that this attorney is directing this behavior. Luanne not retained in other matters yet footprints, hand prints all over the standard, similar responses. Non attorneys, uneducated using legal language in emails. I am occupational therapist am aware of physical. Mary is disabled physically from accident her infant and her nearly killed in cross walk while walking in cross walk to daycare. Mary is extremely bright suffers from PTSD was a legal professional for many years.

Home sale real estate the exact same language used in Mona Oliver, Derc Yamasak John Gibson Warwick Hoyle say same thing that Luanne said in 10 9 2019 transcript opposition to extend stay demonstrating that Luanne is counseling them all against Mary. These people defame Mary saying she is psychotic, institutionalized her whole life. John Gibson directed a group of people at us July 10, 2020 circled around us in car admitted they were upset about lawsuit. Mary provided medical records to defense counsel and these residents are aware of private medical records provided in discovery.

January 8 2021

# EXHIBIT N

E.  [7] Be still before the Lord
     and wait patiently for him;
    do not fret when people succeed in their ways,
     when they carry out their wicked schemes.

F.  [8] Refrain from anger and turn from wrath;
     do not fret—it leads only to evil.
    [9] For those who are evil will be destroyed,
     but those who hope in the Lord will inherit the land.

G.  [10] A little while, and the wicked will be no more;
     though you look for them, they will not be found.
    [11] But the meek will inherit the land
     and enjoy peace and prosperity.

H.  [12] The wicked plot against the righteous
     and gnash their teeth at them;
    [13] but the Lord laughs at the wicked,
     for he knows their day is coming.

I.  [14] The wicked draw the sword
     and bend the bow
    to bring down the poor and needy,
     to slay those whose ways are upright.
    [15] But their swords will pierce their own hearts,
     and their bows will be broken.

J.  [16] Better the little that the righteous have
     than the wealth of many wicked;
    [17] for the power of the wicked will be broken,
     but the Lord upholds the righteous.

K.  [18] The blameless spend their days under the Lord's care,
     and their inheritance will endure forever.
    [19] In times of disaster they will not wither;
     in days of famine they will enjoy plenty.

L.  [20] But the wicked will perish:
    Though the Lord's enemies are like the flowers of the field,
     they will be consumed, they will go up in smoke.

M.  [21] The wicked borrow and do not repay,
     but the righteous give generously;
    [22] those the Lord blesses will inherit the land,
     but those he curses will be destroyed.

**240751204**

| ATTORNEY OR PARTY WITHOUT ATTORNEY                STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|
| NAME: Jody Winter #249592/Jennifer Panicker #258656/Sean Fredin #315513 | |
| FIRM NAME: LloydWinter, P.C. | **FILED** |
| STREET ADDRESS: 1724 Broadway St., #6 | **ALAMEDA COUNTY** |
| CITY: Fresno              STATE: CA     ZIP CODE: 93721 | |
| TELEPHONE NO: (559) 233-3636        FAX NO: (559) 385-2000 | **SEP 2 4 2021** |
| E-MAIL ADDRESS: jwinter@lloydwinterlaw.com/jpanicker@lloydwinterlaw.com | |
| ATTORNEY FOR (name): Plaintiff Mary Bernstein | CLERK OF THE SUPERIOR COURT |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 2233 Shoreline Drive
MAILING ADDRESS: 2233 Shoreline Drive
CITY AND ZIP CODE: Alameda 94501
BRANCH NAME: Civil Unlimited

By _____ Deputy

| PLAINTIFF: Mary Bernstein | |
| DEFENDANT: Associa Northern California et al. (See attachment one) | |
| OTHER: Third Party MUFG Union Bank, N.A. | CASE NUMBER: HG18897381 |

| NOTICE OF LIMITED SCOPE REPRESENTATION | JUDGE: Paul D. Herbert |
|---|---|
| ☐ Amended | DEPT.: 20 |

**[Note: This form is for use in civil cases other than family law. For family law cases, use form FL-950.]**

1. Attorney (name): LloydWinter, P.C.
   and party (name): Mary Bernstein
   who is the ☒ petitioner/plaintiff   ☐ respondent/defendant   ☐ other (describe):
   have an agreement that the attorney will provide limited scope representation in this case to the party.

2. The attorney will represent the party
   a. ☒ at the hearing on (date): October 29, 2021
      ☒ and at any continuance of that hearing
      ☐ until submission of the order after hearing
   b. ☐ at the trial on (date):
      ☐ and at any continuance of that trial
      ☐ until judgment
   c. ☒ other (specify nature and duration of representation):
      The attorney will file an Opposition to Defendants Associa Northern California, Meadow Brook Village Association --
      Fremont and Massingham & Associates' Motion for Summary Judgment and supporting documents on behalf of Mary
      Bernstein.

3. By signing this form, the party agrees to sign *Substitution of Attorney–Civil* (form MC-050) at the completion of the representation
   described above.

SEP 2 4 REC'D

Page 1 of 3

Form Adopted for Mandatory Use
Judicial Council of California
CIV-150 [Rev. September 1, 2016]     **NOTICE OF LIMITED SCOPE REPRESENTATION**     Cal. Rules of Court, rule 3.35
www.courts.ca.gov

CIV-150

| | |
|---|---|
| PLAINTIFF: Mary Bernstein<br>DEFENDANT: Associa Northern California et al. (See attachment one)<br>OTHER: Third Party MUFG Union Bank, N.A. | CASE NUMBER:<br>HG18897381 |

4. During the limited scope representation, parties and the court must serve papers on both the attorney named above and directly on the party. (Cal. Rules of Court, rule 3.36.) The party's name and address for purpose of service are as follows:

Name: Mary Bernstein

Address *(for the purpose of service):*

3416 Deerwood Terrace #113
Fremont, CA 94536

Telephone: (510) 938-6280

Fax: none

This notice accurately states all current matters and issues on which the attorney has agreed to serve as an attorney for the party in this case. The information provided on this form is not intended to state all of the terms and conditions of the agreement between the party and the attorney for limited scope representation.

Date: September 14 , 2021

Mary Bernstein
_____
(TYPE OR PRINT NAME OF PARTY)

▶ _____
(SIGNATURE OF PARTY)

Date: September 17 , 2021

Jennifer J. Panicker
_____
(TYPE OR PRINT NAME OF ATTORNEY)

▶ _____
(SIGNATURE OF ATTORNEY)

**NOTICE OF LIMITED SCOPE REPRESENTATION**

CIV-150

| | |
|---|---|
| PLAINTIFF: Mary Bernstein<br>DEFENDANT: Associa Northern California et al. (See attachment one)<br>OTHER: Third Party MUFG Union Bank, N.A. | CASE NUMBER:<br>HG18897351 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL

1. I am at least 18 years old and not a party to this action. I am a resident of or employed in the county where the mailing took place, and my residence or business address is (specify):

   1724 Broadway Street, Suite #6
   Fresno, CA 93721

2. I served copies of the Notice of Limited Scope Representation (form CIV-150) by enclosing each of them in a sealed envelope with first-class postage fully prepaid and (check one):

   a. ☐  deposited the sealed envelopes with the United States Postal Service.

   b. ☒  placed the sealed envelopes for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. Copies of the Notice of Limited Scope Representation (form CIV-150) were mailed:

   a. on (date):  September 17, 2021

   b. from (city and state):  Fresno, CA

4. The envelopes were addressed and mailed as follows:

   a. Name of person served:
      Luanne Rutherford, Esq.
      Street address:  3480 Buskirk Ave, #250
      City:  Pleasant Hill
      State and zip code:  CA  94523

   c. Name of person served:
      Street address:
      City:
      State and zip code:

   b. Name of person served:
      Street address:
      City:
      State and zip code:

   d. Name of person served:
      Street address:
      City:
      State and zip code:

   ☐  Names and addresses of additional persons served are attached. (You may use form POS-030(P).)

I declare under penalty of perjury under the laws of the State of California that the foregoing and all attachments are  true and correct.

Date:  September 17, 2021

Donna M. Henrikson
(TYPE OR PRINT NAME OF DECLARANT)

▶ *Donna M. Henrikson*
(SIGNATURE OF DECLARANT)

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mary Bernstein v. Associa Northern California et al. | HG18897381 |

ATTACHMENT (Number): ONE

(This Attachment may be used with any Judicial Council form.)

Defendant ABC LLC 1: COMMON ITEREST MANAGEMENT HOLDINGS LLC
Defendant AGARWAL, ASHOK
Defendant AQUILINA, DAWN
Defendant BUONO, JILL
Defendant CONDIO-HERNANDEZ, SUSAN
Defendant COSENTINO, JERRY
Defendant COUNTY OF ALAMEDA
Defendant DALY, SHARON
Defendant DEJESUS, AMY
Defendant DHAVALE, VIRENDRA
Defendant DURBIN, MICHAEL
Defendant ERYMAN, MARY
Defendant GIBSON, JOHN
Defendant HALL, ELIZABETH (LIZ)
Defendant HOLLINGSWORTH, BELINDA
Defendant HOLLINGSWORTH, WARREN
Defendant HOYLE, WARWICK
Defendant JUDGE, GURNOOR
Defendant KRAMER, LINDA
Defendant LINARES, GERALDINE
Defendant LOKE, CHAI MIN
Defendant LOWERY, JEFFREY
Defendant MASSINGHAM & ASSOCIATES
Defendant MEADOW BROOK VILLAGE ASSOCIATION - FREMONT
Defendant MOLIGNONI, LEE
Defendant MORRISON, JOEY
Defendant OLIVER, MONA
Defendant RAMANI, VIPUL
Defendant RITTER, LEANNE
Defendant RIVERA, JACOB
Defendant RIVERA, JOAQUIN
Defendant SCHNEIDER, WILLIAM
Defendant SHEAFFER, LAURIE
Defendant SHEATH, CHANDAN
Defendant SIMONSON, MARK
Defendant STATE OF CALIFORNIA
Defendant TANJOCO, CHE SAETURN
Defendant THAKUR, AARTI
Defendant VARICATT, ROHIT
Defendant WEST, CHARLIE

(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)

Page 4 of 4

(Add pages as required)

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

ATTACHMENT
to Judicial Council Form

www.courtinfo.ca.gov

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

| | |
|---|---|
| Mary Bernstein<br>Plaintiff/Petitioner(s)<br>vs.<br>Associa Northern California et al<br>Defendant/Respondent(s) | No.     HG18897381<br><br>Date:    05/16/2022<br>Time:    8:36 AM<br>Dept:    512<br>Judge:   Eumi Lee<br><br>ORDER re: Ruling on Submitted Matter |

The Court, having taken the matter under submission on 05/06/2022, now rules as follows: The motion of defendants Associa Northern California, Meadow Brook Village Association – Fremont, and Massingham Associates ("Defendants") move for summary judgment is GRANTED, as set forth below.

REQUEST FOR JUDICIAL NOTICE

Defendants' request for judicial notice of the Declaration of Covenants, Conditions and Restrictions for Meadow Brook Village - Fremont, recorded in Alameda County Clerk-Recorder's Office on November 9, 1982, and the November 9, 2020 order regarding Defendants' motion to deem requests admitted, is GRANTED. (Evid.C.§§452(d), 452(h).) [The Court notes that the November 9, 2020 order submitted by Defendants as Exhibit 6 denied rather than granted that motion, but ordered Plaintiff to provide verified, code-compliant responses to Defendants' requests for admissions by February 11, 2021, to be reviewed by the Court for compliance at a later Case Management Conference.]

EVIDENTIARY OBJECTIONS

Plaintiff's responsive separate statement asserts objections to nearly all of Defendants' evidence, but Plaintiff has not filed evidentiary objections that comply in form or content with the requirements of CRC 3.1354, so the Court is unable to rule on them.

Defendants' reply to the statement of additional facts filed by Plaintiff in support of her opposition contends that many of the facts are irrelevant and/or inadmissible. However, Defendants have not filed evidentiary objections that comply in form or content with CRC 3.1354, so the Court is unable to rule on them.

OTHER PROCEDURAL ISSUES

Plaintiff's request to deny the motion on the ground that Defendants' separate statement fails to comply with CRC 3.1350 is denied.

At the hearing on this motion, Plaintiff argued that any deficiencies in Defendants' separate statement were cause for denial of the motion, citing Parkview Villas Assn., Inc. v. State Farm

---

ORDER re: Ruling on Submitted Matter                                          Page 1 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Fire & Casualty Co. (2005) 133 Cal.App.4th 1197 (trial court erred in granting summary judgment based on plaintiff's submission of defective separate statement). Defendants' separate statement substantially complies with the requirements of the CRC. Plaintiff was able to oppose the motion on its merits and was also able to respond to Defendants' 23-page separate statement with a 137-page responsive separate statement, which included 153 additional facts as applied to each of Plaintiff's twelve causes of action. Plaintiff was afforded due process on this motion.

None of the disputed or additional facts were cited in the brief, which refers only to portions of Plaintiff's declaration. Nevertheless, the Court reviewed and considered the parties' briefs, separate statements, and evidence, and concludes that Plaintiff's opposition failed to raise a triable issue of material fact on any issue raised by the moving papers.

### CONTINUANCE UNDER CCP §437c(h)

At the hearing, Plaintiff moved orally for further discovery under CCP section 437c(h). In support of this request, Plaintiff cited the last paragraph of her opposition brief, which states that where discovery is not complete, "summary judgment is not appropriate absent clear and uncontroverted legal bases that would preclude the plaintiff from recovering on any legal theory at trial." (Plaintiff's Memorandum of Points and Authorities, p.11.)

This request is untimely. Defendants filed this motion on August 10, 2021. The hearing was continued by the Court from October 28, to January 7, 2022, and again to May 6, 2022. In December 2021, Plaintiff retained counsel to prepare her opposition papers, which do not request a continuance or submit an affidavit stating that facts "essential to justify opposition may exist but cannot, for reasons stated, be presented." (CCP §437c(h).) Plaintiff's declaration states that she has not completed discovery (see Bernstein Decl., par.14), but she fails to explain why the outstanding discovery is "essential" to the opposition, or has not been completed in light of the fact that this case has been pending since March 19, 2018.

"[I]t is not sufficient under the statute merely to indicate further discovery or investigation is contemplated. The statute makes it a condition that the party moving for a continuance show 'facts essential to justify opposition may exist.' " (Bahl v. Bank of America (2001) 89 Cal.App.4th 389, 397.) The purpose of the affidavit is "to inform the court of outstanding discovery which is necessary to resist the summary judgment motion." (Ibid.) Absent such an affidavit or explanation, the Court does not find good cause to continue the hearing pursuant to section 437c(h).

### LEGAL STANDARD ON SUMMARY JUDGMENT

A moving party defendant has met its burden of showing that a cause of action has no merit if the party has shown that one or more elements cannot be established, or that there is a complete defense to the cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or a defense thereto. (CCP §437c(p)(1).) The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (CCP §437c(c); DeCastro West Chodorow & Burns, Inc. v. Superior Court (1996) 47 Cal.App.4th 410, 422.)

---

ORDER re: Ruling on Submitted Matter

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

A defendant moving for summary judgment on the ground that the plaintiff does not possess, and cannot reasonably obtain, needed evidence, must support the motion with evidence, including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice" must or may "be taken." (CCP §437c, subd. (b).) (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 855.)

DISCUSSION

Plaintiff's complaint, filed on March 19, 2018, concerns property located at 3416 Deerwood Terrace, Unit 113, in Fremont. The unit is part of a condominium complex that includes two pools for use by the HOA members. Plaintiff alleges that Defendants made misrepresentations to her regarding the pool to induce her to purchase the unit; failed to provide a heated pool year-round; and restricted her access to the pools, which violated her rights as a disabled person and diminished her ownership value. She also alleges Defendants imposed an illegal Emergency Assessment on the members in November 2017, which breached the HOA's obligations under the Covenants, Conditions and Restrictions ("CC&Rs"). Plaintiff alleges that she experienced harassment, discrimination, and retaliation based on her disabilities.

The operative complaint contains twelve causes of action: (1) fraud and embezzlement, (2) breach of fiduciary duty, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) intentional infliction of emotional distress, (6) negligent infliction of emotional distress, (7) intentional misrepresentation, (8) negligent misrepresentation, (9) breach of the CC&Rs and bylaws, (10) violation of the Unruh Civil Rights Act (Civ.C.§51 et seq.), (11) violations of the California Disabled Persons Act (Civ.C.§54 et seq.), and (12) injunctive and declaratory relief. Defendants move for summary judgment, or in the alternative, summary adjudication as to each cause of action.

A. Fraud and Embezzlement (Issue One - First Cause of Action)

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (Lazar v. Superior Ct. (1996) 12 Cal.4th 631, 638.) In California, fraud must be pled specifically; general and conclusory allegations do not suffice. "This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" (Id. at 645.) "A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must "'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (Id.) Embezzlement is a criminal offense defined as "the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen.C.§503.)

Plaintiff's first cause of action for "fraud and embezzlement" alleges Defendants colluded to take property from owners by imposing unreasonably high assessments, failed to advise Plaintiff when she moved into the property that she would not enjoy the full benefit and privileges for a

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
Hayward Hall of Justice

majority of the year, and "suppressed and concealed certain material facts." (Complaint, par.45-48.)

Defendants argue that Plaintiff has failed to properly plead a cause of action for fraud, and has failed to identify any evidence in support of this claim. Plaintiff's allegations fail to satisfy the heightened pleading standard for fraud because Plaintiff omits facts showing when, where, or by whom the alleged statements were made. Despite the deficiencies in the complaint, the Court considers the allegations in the opposition.

Plaintiff's opposition to this motion fails to create any triable issues of material fact as to the fraud claim. Plaintiff contends that Defendants represented that the members' vote on the

Emergency Assessment would be binding, but then ignored the results of the vote (Bernstein Decl., par.6, 36, 38, 39); that Defendants concealed material information about pool access when she purchased the home (Id., par.19-26); that at some point Defendants lied about the reason for not offering greater pool access (Id., par.1, 25); that at some point Defendants told Plaintiff that someone would come to open the pool, intending to induce her to wait, when they knew no one would come (Id., par.28); and that Defendants reported at some point that the special assessment was necessary due to wear and tear or tenant damage, when this was not true (Id., par.35).

The above allegations in Plaintiff's declaration are the sole evidence offered in support of these arguments. Plaintiff provides no basis for her personal knowledge surrounding the Board's approval of the Emergency Assessment in November 2017. In addition, the Board was authorized under Civil Code section 5610(b) to approve an Emergency Assessment as a matter of law without member approval in an "emergency situation." Under the statute, an "emergency situation" includes "[a]n extraordinary expense necessary to repair or maintain the common interest development or any part of it for which the association is responsible where a threat to personal safety on the property is discovered." (Civ.C.§5610(b).) Thus, a later vote to approve or disapprove the 2017 Emergency Assessment has no clear legal effect on the legality of the Assessment, nor does Plaintiff identify any evidence supporting her apparent contention that there was no "emergency situation" necessitating an Emergency Assessment in 2017.

Plaintiff's statements about needing pool access and Defendants' alleged material concealment to induce her to purchase the property do not create a triable issue of fact as to fraud. The complaint alleges that Plaintiff acquired title from her father-in-law, not that she purchased the property from the Defendants. (See Complaint, par.11.) Plaintiff's declaration does not establish that Defendants knew that there would be limited pool access at the time Plaintiff acquired title to the property in 2006. Plaintiff's contention that the pools cannot be made available year-round or properly heated due to cost are "not true," and that the damage giving rise to the Emergency Assessment was the result of "Defendants' negligent property maintenance," are unsupported by any foundation or evidence.

None of the cited portions of Plaintiff's declaration concern embezzlement.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

At the hearing, Plaintiff argued that the 2018 Notice and Order of Abatement creates an "inference" that triable issues exist as to the first, second, and ninth causes of action because it demonstrated Defendants' failure to manage and maintain the HOA, based on the Health and Safety Code violations, and demonstrated mismanagement of the HOA dues. This argument is an entirely different theory for Plaintiff's claims for fraud, breach of fiduciary duty, and breach of the CC&Rs and bylaws than what is alleged in the Complaint. When pressed, Plaintiff's counsel cited to paragraphs 17, 18, and 22 of the Complaint, which allege some maintenance problems (par.17, 18) and reference the HOA dues amounts paid by members (par.22), but fail to tie these allegations to the above claims.

In connection with this argument, Plaintiff also cited paragraphs 33 to 35 of her declaration, which state conclusorily and with no evidentiary basis, that "Defendants have mismanaged funding and are mismanaging the pools to the harm and detriment of residents, including me" (Bernstein Decl., par.33); that "[t]he premises are negligently maintained and damaged due to the inaction and behavior of the defendants' representatives, including but not limited to Susan Hernandez, and citing examples like inadequate roof repairs, rodent infestation, and other maintenance issues (Id., par.34); and that "Defendants have negligently maintained the property in violation of the law, Bylaws, and CC&Rs and have thereby caused the damage noted int his complaint and in the city's notice regarding the dilapidated and uninhabitable state of the community" (Id., par.35). These statements are allegations, and not evidence. Plaintiff has not raised a triable issue of material fact as to these claims by citing these paragraphs in her declaration.

Defendants are entitled to summary judgment on the first cause of action.

B. Breach of Fiduciary Duty (Second Cause of Action)

Plaintiff's second cause of action appears to allege that Defendants breached a fiduciary duty to Plaintiff by engaging in self-dealing and imposing "unreasonable assessments" on her. (Complaint, par.62.)

Defendants argue there is no evidence of self-dealing or breach, but to the extent this claim is based on the imposition of the Emergency Assessment in 2017, it was authorized to do so under Civil Code section 5610(b), following the City of Fremont's issuance of a Notice and Order to Abate Nuisance on September 18, 2017.

Plaintiff argues that the Emergency Assessment was "egregious and not eligible for the Civil

---

ORDER re: Ruling on Submitted Matter                                    Page 5 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Code section 5610(b) exception," and that this is a factual issue for the jury. Plaintiff offers no evidence for this contention in paragraphs 38 and 39 of her declaration, the sole evidentiary support cited for this argument. Paragraph 38 states that the residents opposed an Emergency Assessment in January 2018, but Defendants imposed it anyway, and contends that the assessment "violates the CC&Rs, Bylaws, and the applicable law" and is "extreme and excessive." Paragraph 39 accuses Defendants of "passing off their fine/monetary liability for their negligent maintenance of the property to innocent homeowners like myself." These statements are conclusory and lack foundation, and fail to raise a triable issue of disputed fact as

to whether Defendants breached a fiduciary duty to Plaintiff by imposing an Emergency Assessment under Civil Code section 5610.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

The Court incorporates the above analysis regarding the Plaintiff's argument at the hearing that the 2018 Notice and Order of Abatement creates an "inference" that triable issues exist as to the first, second, and ninth causes of action.

Defendants are entitled to summary judgment on the second cause of action.

C. Breach of Contract (Third Cause of Action)

Plaintiff's third cause of action alleges that in February 2006, Plaintiff entered into an unidentified agreement with the HOA, and that Defendants breached that agreement in February 2017 by placing padlocks around the pool areas, and by failing in May 2017 to heat the pool during the summer. (Complaint, par.70-71.)

Defendants argue that Plaintiff has never produced the alleged agreement, and that her discovery responses fail to identify any evidence in support of this claim.

In opposition, Plaintiff argues the parties are bound by the CC&Rs, and that Defendants have "breached their obligation by failing to follow protocol for levying the special assessment, failing to maintain the pool heated and available, failing to permit Plaintiff enjoyment of her home, failing to maintain the premises, failing to properly notice or conduct meetings, and failing to send annual reports or allow document inspection." In support of this argument, Plaintiff cites paragraphs 6, 8, 19-26, 28, 35, 36, 38, 42, and 43 of her declaration, and certain provisions of

---

ORDER re: Ruling on Submitted Matter                                    Page 6 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Exhibit 5 (Bylaws) and Exhibit 6 (CC&Rs) thereto.

The complaint frames the issues in the case and for purposes of summary judgment. (Hutton v. Fidelity National Title Company (2013) 213 Cal.App.4th 486, 493.) The complaint does not allege what the alleged "agreement" is. Furthermore, the opposition papers significantly broaden the allegations in the complaint regarding this cause of action to encompass not only issues related to pool access, but also procedural, notice, and voting requirements under the CC&Rs and/or the Bylaws. The portions of Plaintiff's declaration cited in support of these new

contentions exceed the scope of the allegations in the complaint, and the portions of the declaration that do pertain to pool access (par. 19-26) fail to create a triable issue of material fact regarding breach of contract, because it is not clear what agreement was allegedly breached by placing padlocks around the pool areas or failing to heat the pool.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the third cause of action.

D. Breach of Implied Covenant of Good Faith and Fair Dealing (Fourth Cause of Action)

A breach of the implied covenant of good faith and fair dealing "involves something beyond breach of the contractual duty itself." (Careau & Co. v. Sec. Pac. Bus. Credit, Inc. (1990) 222 Cal.App.3d 1371, 1394.) "[A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." (Id. at 1395.)

Plaintiff's fourth cause of action alleges that in February 2006, Plaintiff entered into an agreement with the HOA, the essential terms of which are "Monthly Assessment payments for maintenance of property and use of common interest areas including pool area." (Complaint, par.75.) The complaint alleges Defendants breached that agreement in November 2016 by completely closing the pool area for winter and not reopening until Spring 2017, by not

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

adequately heating the pool, and by closing the pool and failing to open the pool area consistently. (Id., par.77.) The complaint alleges, "The CC&Rs, bylaws, disclosure statements or loan documents do not state the pool is a seasonal privilege or that the pool is to be unheated." (Id.)

Defendants argue the complaint fails to state a claim for breach of the implied covenant because it simply re-states the Plaintiff's breach of contract claim, and otherwise argues that Plaintiff has not produced any evidence to support the claim.

In her opposition brief, Plaintiff states conclusorily that "Defendants acted with malice in failing to perform their contractual obligations, with the intent to retaliate against and harm Plaintiff." In support of this allegation, Plaintiff cites paragraphs 8-10, 20, 25, 28, 29, 30, 37-39, and 47 of her declaration.

Plaintiff has failed to identify any triable issue of fact as to her breach of contract claim, and her conclusory statement regarding malice similarly fails to establish any triable issue as to whether Defendants intentionally refused to discharge some contractual duty that deprived Plaintiff of the benefit of that contract.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the fourth cause of action.

E. Intentional Infliction of Emotional Distress ("IIED") (Fifth Cause of Action)

"A cause of action for IIED requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress." (Crouch v. Trinity Christian Ctr. of Santa Ana, Inc. (2019) 39 Cal.App.5th 995, 1007.) A defendant's conduct is considered to be outrageous if "it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." (Id. (internal quotations omitted).) To find liability, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Id.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Plaintiff's fifth cause of action alleges, "[a]s a result of Defendants agents [sic] misrepresentations that pool facilities are too expensive to maintain and that Plaintiff should join a country club, Plaintiff has suffered depression. As a result, Plaintiff incurred loss of enjoyment of benefits. I have physical and emotional consequences result of [sic] conduct of Defendant employees and agents. The entire ownership process at Meadow Brook devalued [sic] leaving me in a position with no ownership benefits and immense debt emergency assessment in the

amount of $33,262 and more emergency assessments forthcoming. I have physical and emotional consequences as a result of conduct of Defendants." (Complaint, par.82.)

Defendants argue that the alleged conduct and the additional actions described in Plaintiff's discovery responses fail to rise to the level of "extreme and outrageous" necessary to prove this claim.

Plaintiff's opposition expands the allegations to include additional conduct such as retaliation and discrimination, denial of access to the pool despite knowing she is disabled and suffers physical pain, and knowing concealment of information regarding the Emergency Assessment, and argues this is a jury question.

In support of the allegations in the opposition, Plaintiff cites paragraphs 6, 19-26, 28-30, 40, 47, 48, and 51 of her own declaration. These portions of her declaration contain allegations and unsupported legal conclusions, including assertions that the HOA did not give notice of the Emergency Assessment in accordance with the law, that Defendants intentionally concealed facts regarding the pool at the time she purchased the unit, that Defendants refused to give her a padlock key to access the pool "to harm and retaliate against me," that Defendants' behavior "is so extreme that it exceeds all bounds of that usually tolerated in a civilized community," and other statements that do not reflect extreme and outrageous conduct by Defendants, such as that Richard Fong told her that there were security cameras installed on the premises. These portions of Plaintiff's declaration do not raise a triable issue of fact as to the IIED claim.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the fifth cause of action.

F. Negligent Infliction of Emotional Distress ("NIED") (Sixth Cause of Action)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

A claim for NIED is not an independent tort, but a claim for negligence, to which the "traditional elements of duty, breach of duty, causation, and damages apply." (Eriksson v. Nunnink (2015) 233 Cal.App.4th 708, 729.) In considering the existence of a duty towards the plaintiff, the court considers factors such as "the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (Id.)

Plaintiff's sixth cause of action contains allegations identical to the IIED claim.

Defendants argue the complaint fails to state a claim for NIED because it does not allege a clear duty or breach, that no duty exists by an HOA to its members to prevent the infliction of emotional distress, and that Plaintiff has failed to produce any evidence to support this claim.

Plaintiff argues Defendants owe her a fiduciary duty as an HOA member (see Golden Eagle Land Investment, LP v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 425 ("Generally, fiduciary duties owed by a homeowners association to its members are limited to those arising from its governing documents and relevant statutory requirements")), but cites no other legal authority in support of the existence of a general duty owed by an HOA to its members, and no evidence that would raise a triable issue of fact with respect to any of the elements of a negligence claim.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the sixth cause of action.

G. Intentional Misrepresentation (Seventh Cause of Action)

As noted above, the elements of a claim for fraud based on intentional misrepresentation are (a) a misrepresentation, (b) knowledge of falsity, (c) the intent to defraud, (d) justifiable reliance, and (e) resulting damage. (Lazar v. Superior Ct., supra, 12 Cal.4th at 638.) In California, fraud must be pled specifically, which "necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" (Id. at 645.)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
Hayward Hall of Justice

The seventh cause of action alleges that Defendants "stated in the emergency assessment that the reserves have been underfunded for years," that she acted in justifiable reliance on that representation, that the statement was intended to and did deceive Plaintiff, and that the "rationale for the fraud was their desire to obtain payment for unreasonable assessments and not provide Plaintiff with the benefits represented." (Complaint, par.86.) The complaint also alleges numerous statements and actions by HOA board member Susan Hernandez regarding the pool. (Id.)

Defendants argue the complaint fails to state a claim for fraud based on intentional misrepresentation because it does not allege that Defendants knew the representation was false or how Plaintiff was harmed. Defendants also argue that Plaintiff's discovery responses provide no evidence to support this claim.

The complaint frames the issues in the case and for purposes of summary judgment. (Hutton v. Fidelity National Title Company (2013) 213 Cal.App.4th 486, 493.) The opposition papers significantly broaden the allegations in the complaint regarding this cause of action.

Nevertheless, as with the first cause of action for fraud, Plaintiff's opposition fails to create any triable issues of material fact as to the claim for intentional misrepresentation. Plaintiff again argues, citing the same portions of her own declaration as evidence, that Defendants represented that the members' vote on the Emergency Assessment would be binding, but ignored the results of a vote on the issue (Bernstein Decl., par.6, 36, 38, 39); that Defendants concealed material information about pool access when she purchased the home (Id., par.19-26); that at some point Defendants lied about the reason for not offering greater pool access (Id., par.1, 25); that at some point Defendants have told Plaintiff that someone would come to open the pool, intending to induce her to wait, when they knew no one would come (Id., par.28); and that Defendants reported at some point in time that the special assessment was necessary due to wear and tear or tenant damage, when this was not true (Id., par.35). Plaintiff also argues that Richard Fong's "claims about recording residents," if untrue, also constitutes an intentional misrepresentation (Id., par.40.)

The same analysis set forth above with respect to the first cause of action for fraud applies to the seventh cause of action.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. Plaintiff fully disputes Material Fact No. 46, which contends Susan Hernandez did not make the alleged statements, but the cited portions of Plaintiff's declaration (par.7 and 8) state conclusorily that Hernandez knew the statements were not true, and that the pool was closed in the winter "due to retaliation and poor money management by Defendants," but provide no factual support for these assertions. In response to certain facts, Plaintiff cites to the complaint, or paragraphs 12-14 of her own declaration, which state that she was unable to

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the seventh cause of action.

H. Negligent Misrepresentation (Eighth Cause of Action)

"The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' While there is some conflict in the case law discussing the precise degree of particularity required in the pleading of a claim for negligent misrepresentation, there is a consensus that the causal elements, particularly the allegations of reliance, must be specifically pleaded. (Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc. (2009) 171 Cal.App.4th 35, 50 (internal citation omitted).)

The eighth cause of action alleges that "Susan Hernandez stated they could not afford to heat the pool," "that if people wanted to use the pool year round they needed to join a country club," and that Hernandez "caused the pool area to be closed entirely for 3 months during 2016-2017 winter." (Complaint, par.88.) Plaintiff alleges she "believed that it was contained in the CC&Rs that the pools one of them constantly closed in the winter and not heated fully," though she also alleges, "[r]eview of the CC&Rs which Plaintiff did not possess or see recently does not reflect any such agreement." (Id.) Plaintiff also alleges, "Defendants stated in the emergency assessment that the reserves have been underfunded for years." (Id.)

Defendants argue the complaint fails to state a claim for negligent misrepresentation because it does not allege that Hernandez made a false statement without reasonable ground for believing it to be true with the intent to induce reliance or that Plaintiff suffered any damage. Defendants also argue Plaintiff has not in fact suffered any harm because she did not pay the Emergency Assessment. Defendants argue that Plaintiff's discovery responses provide no evidence to support this claim.

In opposition, Plaintiff states that "Defendants made multiple misrepresentations to Plaintiff" (citing paragraphs 7, 21, 28, and 40 of Plaintiff's declaration), and states conclusorily that Defendants have not meet their burden on this issue, and that there are "several material facts in" dispute that should be presented to the trier of fact."

The cited portions of Plaintiff's declarations contain conclusions and unsupported assertions, and otherwise fail to raise a triable issue as to whether Hernandez or any other person made untrue statements without reasonable grounds to believe they were true, with the intent to induce Plaintiff's reliance.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the

---

ORDER re: Ruling on Submitted Matter                                    Page 12 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. Plaintiff again disputes Material Fact No. 46, which contends Susan

Hernandez did not make the alleged statements, but the cited portions of Plaintiff's declaration (par.7 and 8) state conclusorily that Hernandez knew the statements were not true, and that the pool was closed in the winter "due to retaliation and poor money management by Defendants," but provide no foundation for these assertions. In response to certain facts, Plaintiff cites to the complaint, or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the eighth cause of action.

I. Breach of CC&Rs and Bylaws (Ninth Cause of Action)

The ninth cause of action alleges that Defendants breached the CC&Rs and Bylaws "by causing a forfeiture and or abridgement of owner's right to the full use and enjoyment of the residence and common areas despite no judgment of a court of competent jurisdiction, arbitration decision, failure to pay assessments; foreclosure or sale under a power of sale page 6 of the Bylaws," and "by attempting to circumvent maximum annual 20% increase in assessments through a 'preliminary' $33,262 'emergency assessment' to be followed by unknown additional 'emergency assessments' with no end in sight." (Complaint, par.91-92.)

Defendants argue Plaintiff has failed to identify any provision of the CC&Rs that was breached by the HOA, and has produced no evidence to support this claim.

The complaint frames the issues in the case and for purposes of summary judgment. (Hutton v. Fidelity National Title Company (2013) 213 Cal.App.4th 486, 493.)

The opposition papers significantly broadens the allegations in the complaint regarding this cause of action by arguing that "Defendants have breached their obligation by failing to follow protocol for levying the special assessment, failing to maintain the pool heated and available, failing to permit Plaintiff enjoyment of her home, failing to maintain the premises, failing to properly notice or conduct meetings, and failing to send annual reports or allow document inspection." In support of this argument, Plaintiff cites paragraphs 6, 8, 19-26, 28, 35, 36, 38, 42, 43 of her declaration, and Exhibits 5 (Bylaws) and 6 (CC&Rs) thereto.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

objecting to its contents. In response to certain facts, Plaintiff cites to the complaint, or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

As discussed above, although Article III of the CC&Rs sets forth the procedures and purposes for levying regular assessments, special assessments, capital improvement assessments, reconstruction assessments, and uniform assessments on HOA members, the HOA was also authorized as a matter of law to approve an Emergency Assessment without member approval in an "emergency situation," which includes "[a]n extraordinary expense necessary to repair or maintain the common interest development or any part of it for which the association is responsible where a threat to personal safety on the property is discovered." (Civ.C.§5610(b).) Plaintiff identifies no evidence supporting her apparent contention that the HOA was required to follow the protocols in the CC&Rs when it levied the Emergency Assessment in 2017.

The Court incorporates the above analysis regarding the Plaintiff's argument at the hearing that the 2018 Notice and Order of Abatement creates an "inference" that triable issues exist as to the first, second, and ninth causes of action.

Defendants are entitled to summary judgment on the ninth cause of action.

J. Violation of Civil Code section 51 (Unruh Civil Rights Act) (Tenth Cause of Action) and Civil Code section 54 (California Disabled Persons Act) (Eleventh Cause of Action)

The Unruh Civil Rights Act is a public accommodation statute that was designed to prevent discrimination by covered entities, including business establishments. Civil Code section 51(b) states, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

The tenth cause of action for violation of the Unruh Act alleges that Plaintiff is a person with a disability, that moving party Defendants are business establishments within the meaning of the Unruh Act, and that despite being on notice that "the lack of accommodation for use of the pool area hot tub and heated pool excludes disabled plaintiff of medical treatment and relaxation much of the benefits that she pays for monthly through association dues," Plaintiff "has been denied full and equal access to ownership benefits," which have caused Plaintiff to suffer harm, in violation of the Unruh Act. (Complaint, par.97-102.)

"Under applicable provisions of the Disabled Persons Act (Civ.Code, § 54 et seq.), "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." (Civ.Code, § 54.1, subd. (a)(1), see also § 54, subd. (a) ["Individuals with disabilities or medical conditions have the same right as the general public to the full and

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

free use of the streets, highways, sidewalks, walkways, public buildings, ... public facilities, and other public places"].)" (Carolyn v. Orange Park Cmty. Assn. (2009) 177 Cal.App.4th 1090, 1098.)

The eleventh cause of action for violation of the California Disabled Persons Act ("CDPA") alleges that Defendants violated Plaintiff's rights by denying her full and equal access to the pool area year around, and consistently during posted hours. (Complaint, par. 109.)

"Purely residential areas of a common interest development are not public accommodations." (Carolyn v. Orange Park Cmty. Assn., supra, 177 Cal.App.4th at 1099 (citing Coronado v. Cobblestone Village Community Rentals, LP (2008) 163 Cal.App.4th 831 (disapproved on other grounds in Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 678).) In Carolyn, the Fourth District Court of Appeal held that recreational trails maintained by the Orange Park Community Association, a homeowners' association and common interest development, also failed to qualify as "public accommodation" within the meaning of the California Disabled Persons Act or the Unruh Act. (Id. at 1104.) The Court stated that although recreational common areas within common interest developments can be classified as public accommodations in appropriate circumstances," they were not appropriately classified as such in that case because the association "actively excluded the general public from using the trails." (Id.)

Article XII of the CC&Rs ("Rights of Enjoyment") states, in relevant part: "Every Member shall have a nonexclusive easement for use and enjoyment in and to the Common Area and such right shall be appurtenant to and shall pass with the interest required to be an Owner to every Residence, subject to all of the easements, covenants, conditions, restrictions and other provisions contained in this Declaration, including without limitation, the following provisions: (a) The right of the Association to limit the number of guests of Members, and to limit the use of the recreation facilities, if any, on the Common Area by persons not in possession of a Residence, but owing a portion for the interest in a residence required for membership." (Rutherford Decl., Exh.2, Article XII, Section 1.)

The Court infers from this language that common areas within the HOA property are subject to the right of the HOA to exclude the general public.

Plaintiff argues that whether the community at issue here is the type of residential facility excluded from the coverage of the Unruh Act and the CDPA is a question of fact to be determined by the jury. The opposition cites no evidence to create a disputed issue of fact about whether the HOA pools are public accommodations subject to the Act.

Defendants are entitled to summary judgment on the tenth and eleventh causes of action.

K. Injunctive Relief / Declaratory Relief (Twelfth Cause of Action)

The twelfth cause of action for injunctive relief/declaratory relief states only, "PRELIMINARY INJUNCTION TO PREVENT THE ENFORCEMENT, COLLECTION OF THE EMERGENCY ASSESSMENT DUE APRIL 2, 2018 and subsequent emergency assessments levied during the pendency of this trial." (Complaint, par.115.)

---

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
Hayward Hall of Justice

"Injunctive and declaratory relief are equitable remedies, not causes of action." (Faunce v. Cate (2013) 222 Cal.App.4th 166, 173.) To qualify for declaratory relief, a party must demonstrate that the action presents two essential elements: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the parties' rights or obligations. (Wilson & Wilson v. City Council of Redwood City (2011) 191 Cal.App.4th 1559, 1582.)

Plaintiff argues in the opposition brief that the assessment "was egregious and not eligible for the Civil Code section 5610(b) exception," and cites paragraphs 38 and 39 of her declaration. These portions of her declaration assert that the assessment was extreme and excessive, and improperly levied. These are allegations and conclusions that do not create a triable issue of fact under the CC&Rs. In her responsive separate statement, she disputes that the Emergency Assessment was lawfully imposed under section 5610(b) by citing paragraph 6 of her own declaration, which states conclusorily that the Emergency Assessment packet was not properly approved by the Board, and "was not prepared, approved, or noticed in accordance with the requirements of the law." This statement is unsupported by any foundation or evidence, and fails to create a triable issue of fact on this claim.

To the extent the complaint may be construed to allege an actual controversy between the parties regarding their respective rights and obligations under the CC&Rs, and the Plaintiff's right to injunctive relief in some respect, there appears to be no evidence indicating the existence of a triable issue of material fact with respect to Plaintiff's right to a declaratory judgment or injunctive relief with respect to the CC&Rs.

Defendants are entitled to summary judgment on the twelfth cause of action.

Defendants Associa Northern California, Meadow Brook Village Association – Fremont, and Massingham Associates' motion for summary judgment is GRANTED. Defendants are to prepare a proposed judgment and file it within 30 days of this Order, emailing a courtesy copy in Word to dept512@alameda.courts.ca.gov.

Clerk is directed to serve endorsed-filed copies of this order, with proof of service, to counsel and to self-represented parties of record by mail.

Dated: 05/16/2022

*Euml Lee / Judge*

---

9/21/24, 1:34 PM                                    Mail - Mary Helen Bernstein MSAJS - Outlook

⣿⣿   **Outlook**                    🔍 Search

☰   **Home**   **View**   **Help**

✉ New mail ⌄   🗑 Delete ⌄   🗄 Archive   🚩 Report ⌄   🧹 Sweep   📁 Move to ⌄   ↩   ⌄

› **Favorites**                          ✕   ‹   ›

⌄ **Folders**                            **Bernstein v. Associa**                              ⌄

📥 Inbox                    **40046**
🗂 Junk Email                  **73**     M   You                                          📎
✏ Drafts                      **227**        i do not understand her wanting me t...      Sun 5/22/2022 9:27 AM
▷ Sent Items
🕐 Snoozed
🗑 Deleted Items                          M   You                                          📎
🗄 Archive                                   ????                                         Sun 5/22/2022 9:16 AM
🗒 Notes
📂 architecture upstairs select
📂 assessment payment history            LR  **Luanne**  ↩ Reply   ↩ Reply all   → Forward   🔲   › •••
📂 CFM customer assessments mail             To: You; mhelenbernstein@yahoo.com            Thu 5/19/2022 2:42 PM
📂 Conversation History
📂 deed john mary                        ⓘ You forwarded this message on Fri 2/9/2024 9:18 AM
📂 Joaquin Rivera 7 15 2020
📂 John Gibson 2nd 1 19 2021
📂 live chat alameda self help                📄 2022-05-16 Order re Ruling on Su...   ⌄
📂 meadowbrook portal login                     1 MB
📂 Mike Durbin 2nd restraining or...
📂 Paul Herbert complaint pande...       2 attachments (1 MB)   ⬗ Save all to OneDrive
📂 scanned photos mom house
    Create new folder                    ⬇ Download all
📂 Search Folders
                                         Dear Ms. Bernstein:
› **Groups**
                                                 Attached please find the proposed Judgment
                                         with attached Order in the above entitled matter,
                                         relative to the order granting Associa Northern
                                         California, Meadow Brook Village Association –
                                         Fremont and Massingham Associates' motion for
                                         summary judgment. This proposed Judgement is being
                                         provided pursuant to California Rules of Court, Rule
                                         3.1312. Accordingly, please provide your response in
                                         accordance with that Rule of Court by signing and
                                         returning it approved as to form, or providing a
                                         compliant response.

                                         Luanne Rutherford
                                         Partner

                                         ◣ McNamara, Ambacher, Wheeler,

https://outlook.live.com/mail/0/inbox/id/AQQkADAwATZiZmYAZC1jMTEAZC0yMGUyLTAwAi0wMAoAEADDUR3Ibz5GgZMIX9ajtxRM                1/1

1   CHRISTOPHER B. ALLARD (State Bar No. 264842)
    christopher.allard@mcnamaralaw.com
2   McNAMARA, AMBACHER, WHEELER,
    HIRSIG & GRAY LLP
3   3480 Buskirk Avenue, Suite 250
    Pleasant Hill, CA 94523
4   Telephone: (925) 939-5330
    Facsimile: (925) 939-0203
5
    Attorneys for Defendants
6   ASSOCIA NORTHERN CALIFORNIA, a California
    Corporation; MEADOW BROOK VILLAGE ASSOCIATION -
7   FREMONT, a California Corporation; MASSINGHAM &
    ASSOCIATES, a California Corporation; LEANNE RITTER;
8   AARTI THAKUR; MARK SIMONSON; ROMULO ZAFRA;
    ELIZABETH HALL; GERALDINE LINARES; CHARLIE
9   WEST; BELINDA HOLLINGSWORTH; JOSEPH (JOEY)
    MORRISON; VIPUL RAMANI; DAISY ZAFRA; GURNOOR
10  JUDGE; LAURA SHEAFFER; JILL BUONO; DERC
    YAMASAKI; CHANDAN SHETH; MICHAEL DURBIN
11

**FILED**
Superior Court of California
County of Alameda

07/17/2023

Clad Flxe), Executive Office / Clerk of the Court

By: _____ Deputy
       K. Ortega

12              SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

13                          CIVIL - UNLIMITED JURISDICTION

14

15  MARY BERNSTEIN,                          Case No. HG18897381

16              Plaintiff,                    ASSIGNED FOR ALL PURPOSES TO THE
                                              HON. EUMI LEE, DEPT. 512
17      vs.
                                              [PROPOSED] JUDGMENT IN FAVOR OF
18  ASSOCIA NORTHERN CALIFORNIA, et           ASSOCIA NORTHERN CALIFORNIA,
    al.,                                      MEADOW BROOK VILLAGE
19                                            ASSOCIATION - FREMONT, AND
                Defendants.                   MASSINGHAM & ASSOCIATES;
20                                            DISMISSAL WITH PREJUDICE

21
                                              Complaint Filed: 3/19/2018
22

23         On May 16, 2022, the Honorable Eumi Lee, Judge of the Superior Court, issued an order

24  granting the motion for summary judgment by defendants Associa Northern California, Meadow

25  Brook Village Association – Fremont, and Massingham Associates ("Defendants") under Section

26  437c of the Code of Civil Procedure.  A copy of the Order is attached hereto as Exhibit A.  In

27  accordance with that order,

28         IT IS ORDERED, ADJUDGED, AND DECREED that:

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

1  1. Judgment is entered in favor of defendants Associa Northern California, Meadow

2 Brook Village Association – Fremont, and Massingham Associates, and against plaintiff Mary

3 Bernstein, and Mary Bernstein shall take nothing from these Defendants by her Complaint. As

4 prevailing parties, Defendants are entitled to recover their costs from plaintiff pursuant to cost bill

5 authorized by Code of Civil Procedure §§ 1032 and 1033.5, and attorney's fees pursuant to

6 ~~motion.~~ *Defendants may file noticed motion re attorney's fees if there is a permissible basis of recovery.*

7  2. Defendants Associa Northern California, Meadow Brook Village Association –

8 Fremont, and Massingham Associates are dismissed from this action with prejudice.

Dated: *7/17/2024*

Hon. Eumi Lee
Judge of the Superior Court

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

2

[PROPOSED] JUDGMENT IN FAVOR OF ASSOCIA NORTHERN CALIFORNIA, MEADOW BROOK VILLAGE
ASSOCIATION - FREMONT, AND MASSINGHAM & ASSOCIATES; DISMISSAL WITH PREJUDICE

# EXHIBIT A

(                 (

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

| | |
|---|---|
| Mary Bernstein<br>Plaintiff/Petitioner(s)<br>vs.<br>Associa Northern California et al<br>Defendant/Respondent(s) | No.   HG18897381<br><br>Date:  05/16/2022<br>Time:  8:36 AM<br>Dept:  512<br>Judge: Eumi Lee<br><br>ORDER re: Ruling on Submitted Matter |

The Court, having taken the matter under submission on 05/06/2022, now rules as follows: The motion of defendants Associa Northern California, Meadow Brook Village Association – Fremont, and Massingham Associates ("Defendants") move for summary judgment is GRANTED, as set forth below.

REQUEST FOR JUDICIAL NOTICE

Defendants' request for judicial notice of the Declaration of Covenants, Conditions and Restrictions for Meadow Brook Village - Fremont, recorded in Alameda County Clerk-Recorder's Office on November 9, 1982, and the November 9, 2020 order regarding Defendants' motion to deem requests admitted, is GRANTED. (Evid.C.§§452(d), 452(h).) [The Court notes that the November 9, 2020 order submitted by Defendants as Exhibit 6 denied rather than granted that motion, but ordered Plaintiff to provide verified, code-compliant responses to Defendants' requests for admissions by February 11, 2021, to be reviewed by the Court for compliance at a later Case Management Conference.]

EVIDENTIARY OBJECTIONS

Plaintiff's responsive separate statement asserts objections to nearly all of Defendants' evidence, but Plaintiff has not filed evidentiary objections that comply in form or content with the requirements of CRC 3.1354, so the Court is unable to rule on them.

Defendants' reply to the statement of additional facts filed by Plaintiff in support of her opposition contends that many of the facts are irrelevant and/or inadmissible. However, Defendants have not filed evidentiary objections that comply in form or content with CRC 3.1354, so the Court is unable to rule on them.

OTHER PROCEDURAL ISSUES

Plaintiff's request to deny the motion on the ground that Defendants' separate statement fails to comply with CRC 3.1350 is denied.

At the hearing on this motion, Plaintiff argued that any deficiencies in Defendants' separate statement were cause for denial of the motion, citing Parkview Villas Assn., Inc. v. State Farm

---

ORDER re: Ruling on Submitted Matter                             Page 1 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Fire & Casualty Co. (2005) 133 Cal.App.4th 1197 (trial court erred in granting summary judgment based on plaintiff's submission of defective separate statement). Defendants' separate statement substantially complies with the requirements of the CRC. Plaintiff was able to oppose the motion on its merits and was also able to respond to Defendants' 23-page separate statement with a 137-page responsive separate statement, which included 153 additional facts as applied to each of Plaintiff's twelve causes of action. Plaintiff was afforded due process on this motion.

None of the disputed or additional facts were cited in the brief, which refers only to portions of Plaintiff's declaration. Nevertheless, the Court reviewed and considered the parties' briefs, separate statements, and evidence, and concludes that Plaintiff's opposition failed to raise a triable issue of material fact on any issue raised by the moving papers.

### CONTINUANCE UNDER CCP §437c(h)

At the hearing, Plaintiff moved orally for further discovery under CCP section 437c(h). In support of this request, Plaintiff cited the last paragraph of her opposition brief, which states that where discovery is not complete, "summary judgment is not appropriate absent clear and uncontroverted legal bases that would preclude the plaintiff from recovering on any legal theory at trial." (Plaintiff's Memorandum of Points and Authorities, p.11.)

This request is untimely. Defendants filed this motion on August 10, 2021. The hearing was continued by the Court from October 28, to January 7, 2022, and again to May 6, 2022. In December 2021, Plaintiff retained counsel to prepare her opposition papers, which do not request a continuance or submit an affidavit stating that facts "essential to justify opposition may exist but cannot, for reasons stated, be presented." (CCP §437c(h).) Plaintiff's declaration states that she has not completed discovery (see Bernstein Decl., par.14), but she fails to explain why the outstanding discovery is "essential" to the opposition, or has not been completed in light of the fact that this case has been pending since March 19, 2018.

"[I]t is not sufficient under the statute merely to indicate further discovery or investigation is contemplated. The statute makes it a condition that the party moving for a continuance show 'facts essential to justify opposition may exist.' " (Bahl v. Bank of America (2001) 89 Cal.App.4th 389, 397.) The purpose of the affidavit is "to inform the court of outstanding discovery which is necessary to resist the summary judgment motion." (Ibid.) Absent such an affidavit or explanation, the Court does not find good cause to continue the hearing pursuant to section 437c(h).

### LEGAL STANDARD ON SUMMARY JUDGMENT

A moving party defendant has met its burden of showing that a cause of action has no merit if the party has shown that one or more elements cannot be established, or that there is a complete defense to the cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or a defense thereto. (CCP §437c(p)(1).) The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (CCP §437c(c); DeCastro West Chodorow & Burns, Inc. v. Superior Court (1996) 47 Cal.App.4th 410, 422.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

'A defendant moving for summary judgment on the ground that the plaintiff does not possess, and cannot reasonably obtain, needed evidence, must support the motion with evidence, including "affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice" must or may "be taken." (CCP §437c, subd. (b).) (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 855.)

DISCUSSION

Plaintiff's complaint, filed on March 19, 2018, concerns property located at 3416 Deerwood Terrace, Unit 113, in Fremont. The unit is part of a condominium complex that includes two pools for use by the HOA members. Plaintiff alleges that Defendants made misrepresentations to her regarding the pool to induce her to purchase the unit; failed to provide a heated pool year-round; and restricted her access to the pools, which violated her rights as a disabled person and diminished her ownership value. She also alleges Defendants imposed an illegal Emergency Assessment on the members in November 2017, which breached the HOA's obligations under the Covenants, Conditions and Restrictions ("CC&Rs"). Plaintiff alleges that she experienced harassment, discrimination, and retaliation based on her disabilities.

The operative complaint contains twelve causes of action: (1) fraud and embezzlement, (2) breach of fiduciary duty, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) intentional infliction of emotional distress, (6) negligent infliction of emotional distress, (7) intentional misrepresentation, (8) negligent misrepresentation, (9) breach of the CC&Rs and bylaws, (10) violation of the Unruh Civil Rights Act (Civ.C.§51 et seq.), (11) violations of the California Disabled Persons Act (Civ.C.§54 et seq.), and (12) injunctive and declaratory relief. Defendants move for summary judgment, or in the alternative, summary adjudication as to each cause of action.

A. Fraud and Embezzlement (Issue One - First Cause of Action)

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (Lazar v. Superior Ct. (1996) 12 Cal.4th 631, 638.) In California, fraud must be pled specifically; general and conclusory allegations do not suffice. "This particularity requirement necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" (Id. at 645.) "A plaintiff's burden in asserting a fraud claim against a corporate employer is even greater. In such a case, the plaintiff must "'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (Id.) Embezzlement is a criminal offense defined as "the fraudulent appropriation of property by a person to whom it has been intrusted." (Pen.C.§503.)

Plaintiff's first cause of action for "fraud and embezzlement" alleges Defendants colluded to take property from owners by imposing unreasonably high assessments, failed to advise Plaintiff when she moved into the property that she would not enjoy the full benefit and privileges for a

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

majority of the year, and "suppressed and concealed certain material facts." (Complaint, par.45-48.)

Defendants argue that Plaintiff has failed to properly plead a cause of action for fraud, and has failed to identify any evidence in support of this claim. Plaintiff's allegations fail to satisfy the heightened pleading standard for fraud because Plaintiff omits facts showing when, where, or by whom the alleged statements were made. Despite the deficiencies in the complaint, the Court considers the allegations in the opposition.

Plaintiff's opposition to this motion fails to create any triable issues of material fact as to the fraud claim. Plaintiff contends that Defendants represented that the members' vote on the

Emergency Assessment would be binding, but then ignored the results of the vote (Bernstein Decl., par.6, 36, 38, 39); that Defendants concealed material information about pool access when she purchased the home (Id., par.19-26); that at some point Defendants lied about the reason for not offering greater pool access (Id., par.1, 25); that at some point Defendants told Plaintiff that someone would come to open the pool, intending to induce her to wait, when they knew no one would come (Id., par.28); and that Defendants reported at some point that the special assessment was necessary due to wear and tear or tenant damage, when this was not true (Id., par.35).

The above allegations in Plaintiff's declaration are the sole evidence offered in support of these arguments. Plaintiff provides no basis for her personal knowledge surrounding the Board's approval of the Emergency Assessment in November 2017. In addition, the Board was authorized under Civil Code section 5610(b) to approve an Emergency Assessment as a matter of law without member approval in an "emergency situation." Under the statute, an "emergency situation" includes "[a]n extraordinary expense necessary to repair or maintain the common interest development or any part of it for which the association is responsible where a threat to personal safety on the property is discovered." (Civ.C.§5610(b).) Thus, a later vote to approve or disapprove the 2017 Emergency Assessment has no clear legal effect on the legality of the Assessment, nor does Plaintiff identify any evidence supporting her apparent contention that there was no "emergency situation" necessitating an Emergency Assessment in 2017.

Plaintiff's statements about needing pool access and Defendants' alleged material concealment to induce her to purchase the property do not create a triable issue of fact as to fraud. The complaint alleges that Plaintiff acquired title from her father-in-law, not that she purchased the property from the Defendants. (See Complaint, par.11.) Plaintiff's declaration does not establish that Defendants knew that there would be limited pool access at the time Plaintiff acquired title to the property in 2006. Plaintiff's contention that the pools cannot be made available year-round or properly heated due to cost are "not true," and that the damage giving rise to the Emergency Assessment was the result of "Defendants' negligent property maintenance," are unsupported by any foundation or evidence.

None of the cited portions of Plaintiff's declaration concern embezzlement.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the

ORDER re: Ruling on Submitted Matter                                      Page 4 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

At the hearing, Plaintiff argued that the 2018 Notice and Order of Abatement creates an "inference" that triable issues exist as to the first, second, and ninth causes of action because it demonstrated Defendants' failure to manage and maintain the HOA, based on the Health and Safety Code violations, and demonstrated mismanagement of the HOA dues. This argument is an entirely different theory for Plaintiff's claims for fraud, breach of fiduciary duty, and breach of the CC&Rs and bylaws than what is alleged in the Complaint. When pressed, Plaintiff's counsel cited to paragraphs 17, 18, and 22 of the Complaint, which allege some maintenance problems (par.17, 18) and reference the HOA dues amounts paid by members (par.22), but fail to tie these allegations to the above claims.

In connection with this argument, Plaintiff also cited paragraphs 33 to 35 of her declaration, which state conclusorily and with no evidentiary basis, that "Defendants have mismanaged funding and are mismanaging the pools to the harm and detriment of residents, including me" (Bernstein Decl., par.33); that "[t]he premises are negligently maintained and damaged due to the inaction and behavior of the defendants' representatives, including but not limited to Susan Hernandez, and citing examples like inadequate roof repairs, rodent infestation, and other maintenance issues (Id., par.34); and that "Defendants have negligently maintained the property in violation of the law, Bylaws, and CC&Rs and have thereby caused the damage noted int his complaint and in the city's notice regarding the dilapidated and uninhabitable state of the community" (Id., par.35). These statements are allegations, and not evidence. Plaintiff has not raised a triable issue of material fact as to these claims by citing these paragraphs in her declaration.

Defendants are entitled to summary judgment on the first cause of action.

B. Breach of Fiduciary Duty (Second Cause of Action)

Plaintiff's second cause of action appears to allege that Defendants breached a fiduciary duty to Plaintiff by engaging in self-dealing and imposing "unreasonable assessments" on her. (Complaint, par.62.)

Defendants argue there is no evidence of self-dealing or breach, but to the extent this claim is based on the imposition of the Emergency Assessment in 2017, it was authorized to do so under Civil Code section 5610(b), following the City of Fremont's issuance of a Notice and Order to Abate Nuisance on September 18, 2017.

Plaintiff argues that the Emergency Assessment was "egregious and not eligible for the Civil

(               (

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Code section 5610(b) exception," and that this is a factual issue for the jury. Plaintiff offers no evidence for this contention in paragraphs 38 and 39 of her declaration, the sole evidentiary support cited for this argument. Paragraph 38 states that the residents opposed an Emergency Assessment in January 2018, but Defendants imposed it anyway, and contends that the assessment "violates the CC&Rs, Bylaws, and the applicable law" and is "extreme and excessive." Paragraph 39 accuses Defendants of "passing off their fine/monetary liability for their negligent maintenance of the property to innocent homeowners like myself." These statements are conclusory and lack foundation, and fail to raise a triable issue of disputed fact as

to whether Defendants breached a fiduciary duty to Plaintiff by imposing an Emergency Assessment under Civil Code section 5610.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

The Court incorporates the above analysis regarding the Plaintiff's argument at the hearing that the 2018 Notice and Order of Abatement creates an "inference" that triable issues exist as to the first, second, and ninth causes of action.

Defendants are entitled to summary judgment on the second cause of action.

C. Breach of Contract (Third Cause of Action)

Plaintiff's third cause of action alleges that in February 2006, Plaintiff entered into an unidentified agreement with the HOA, and that Defendants breached that agreement in February 2017 by placing padlocks around the pool areas, and by failing in May 2017 to heat the pool during the summer. (Complaint, par.70-71.)

Defendants argue that Plaintiff has never produced the alleged agreement, and that her discovery responses fail to identify any evidence in support of this claim.

In opposition, Plaintiff argues the parties are bound by the CC&Rs, and that Defendants have "breached their obligation by failing to follow protocol for levying the special assessment, failing to maintain the pool heated and available, failing to permit Plaintiff enjoyment of her home, failing to maintain the premises, failing to properly notice or conduct meetings, and failing to send annual reports or allow document inspection." In support of this argument, Plaintiff cites paragraphs 6, 8, 19-26, 28, 35, 36, 38, 42, and 43 of her declaration, and certain provisions of

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

Exhibit 5 (Bylaws) and Exhibit 6 (CC&Rs) thereto.

The complaint frames the issues in the case and for purposes of summary judgment. (Hutton v. Fidelity National Title Company (2013) 213 Cal.App.4th 486, 493.) The complaint does not allege what the alleged "agreement" is. Furthermore, the opposition papers significantly broaden the allegations in the complaint regarding this cause of action to encompass not only issues related to pool access, but also procedural, notice, and voting requirements under the CC&Rs and/or the Bylaws. The portions of Plaintiff's declaration cited in support of these new contentions exceed the scope of the allegations in the complaint, and the portions of the declaration that do pertain to pool access (par.19-26) fail to create a triable issue of material fact regarding breach of contract, because it is not clear what agreement was allegedly breached by placing padlocks around the pool areas or failing to heat the pool.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the third cause of action.

D. Breach of Implied Covenant of Good Faith and Fair Dealing (Fourth Cause of Action)

A breach of the implied covenant of good faith and fair dealing "involves something beyond breach of the contractual duty itself." (Careau & Co. v. Sec. Pac. Bus. Credit, Inc. (1990) 222 Cal.App.3d 1371, 1394.) "[A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a case by case basis and will depend on the contractual purposes and reasonably justified expectations of the parties." (Id. at 1395.)

Plaintiff's fourth cause of action alleges that in February 2006, Plaintiff entered into an agreement with the HOA, the essential terms of which are "Monthly Assessment payments for maintenance of property and use of common interest areas including pool area." (Complaint, par.75.) The complaint alleges Defendants breached that agreement in November 2016 by completely closing the pool area for winter and not reopening until Spring 2017, by not

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

adequately heating the pool, and by closing the pool and failing to open the pool area consistently. (Id., par.77.) The complaint alleges, "The CC&Rs, bylaws, disclosure statements or loan documents do not state the pool is a seasonal privilege or that the pool is to be unheated." (Id.)

Defendants argue the complaint fails to state a claim for breach of the implied covenant because it simply re-states the Plaintiff's breach of contract claim, and otherwise argues that Plaintiff has not produced any evidence to support the claim.

In her opposition brief, Plaintiff states conclusorily that "Defendants acted with malice in failing to perform their contractual obligations, with the intent to retaliate against and harm Plaintiff." In support of this allegation, Plaintiff cites paragraphs 8-10, 20, 25, 28, 29, 30, 37-39, and 47 of her declaration.

Plaintiff has failed to identify any triable issue of fact as to her breach of contract claim, and her conclusory statement regarding malice similarly fails to establish any triable issue as to whether Defendants intentionally refused to discharge some contractual duty that deprived Plaintiff of the benefit of that contract.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the fourth cause of action.

E. Intentional Infliction of Emotional Distress ("IIED") (Fifth Cause of Action)

"A cause of action for IIED requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the severe emotional distress." (Crouch v. Trinity Christian Ctr. of Santa Ana, Inc. (2019) 39 Cal.App.5th 995, 1007.) A defendant's conduct is considered to be outrageous if "it is so extreme as to exceed all bounds of that usually tolerated in a civilized community." (Id. (internal quotations omitted).) To find liability, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Id.)

---

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Hayward Hall of Justice

Plaintiff's fifth cause of action alleges, "[a]s a result of Defendants agents [sic] misrepresentations that pool facilities are too expensive to maintain and that Plaintiff should join a country club, Plaintiff has suffered depression. As a result, Plaintiff incurred loss of enjoyment of benefits. I have physical and emotional consequences result of [sic] conduct of Defendant employees and agents. The entire ownership process at Meadow Brook devalued [sic] leaving me in a position with no ownership benefits and immense debt emergency assessment in the

amount of $33,262 and more emergency assessments forthcoming. I have physical and emotional consequences as a result of conduct of Defendants." (Complaint, par.82.)

Defendants argue that the alleged conduct and the additional actions described in Plaintiff's discovery responses fail to rise to the level of "extreme and outrageous" necessary to prove this claim.

Plaintiff's opposition expands the allegations to include additional conduct such as retaliation and discrimination, denial of access to the pool despite knowing she is disabled and suffers physical pain, and knowing concealment of information regarding the Emergency Assessment, and argues this is a jury question.

In support of the allegations in the opposition, Plaintiff cites paragraphs 6, 19-26, 28-30, 40, 47, 48, and 51 of her own declaration. These portions of her declaration contain allegations and unsupported legal conclusions, including assertions that the HOA did not give notice of the Emergency Assessment in accordance with the law, that Defendants intentionally concealed facts regarding the pool at the time she purchased the unit, that Defendants refused to give her a padlock key to access the pool "to harm and retaliate against me," that Defendants' behavior "is so extreme that it exceeds all bounds of that usually tolerated in a civilized community," and other statements that do not reflect extreme and outrageous conduct by Defendants, such as that Richard Fong told her that there were security cameras installed on the premises. These portions of Plaintiff's declaration do not raise a triable issue of fact as to the IIED claim.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the fifth cause of action.

F. Negligent Infliction of Emotional Distress ("NIED") (Sixth Cause of Action)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

A claim for NIED is not an independent tort, but a claim for negligence, to which the "traditional elements of duty, breach of duty, causation, and damages apply." (Eriksson v. Nunnink (2015) 233 Cal.App.4th 708, 729.) In considering the existence of a duty towards the plaintiff, the court considers factors such as "the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing

future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (Id.)

Plaintiff's sixth cause of action contains allegations identical to the IIED claim.

Defendants argue the complaint fails to state a claim for NIED because it does not allege a clear duty or breach, that no duty exists by an HOA to its members to prevent the infliction of emotional distress, and that Plaintiff has failed to produce any evidence to support this claim.

Plaintiff argues Defendants owe her a fiduciary duty as an HOA member (see Golden Eagle Land Investment, LP v. Rancho Santa Fe Assn. (2018) 19 Cal.App.5th 399, 425 ("Generally, fiduciary duties owed by a homeowners association to its members are limited to those arising from its governing documents and relevant statutory requirements")), but cites no other legal authority in support of the existence of a general duty owed by an HOA to its members, and no evidence that would raise a triable issue of fact with respect to any of the elements of a negligence claim.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. In response to certain facts, Plaintiff cites to the complaint or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the sixth cause of action.

G. Intentional Misrepresentation (Seventh Cause of Action)

As noted above, the elements of a claim for fraud based on intentional misrepresentation are (a) a misrepresentation, (b) knowledge of falsity, (c) the intent to defraud, (d) justifiable reliance, and (e) resulting damage. (Lazar v. Superior Ct., supra, 12 Cal.4th at 638.) In California, fraud must be pled specifically, which "necessitates pleading facts which 'show how, when, where, to whom, and by what means the representations were tendered.'" (Id. at 645.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Hayward Hall of Justice

The seventh cause of action alleges that Defendants "stated in the emergency assessment that the reserves have been underfunded for years," that she acted in justifiable reliance on that representation, that the statement was intended to and did deceive Plaintiff, and that the "rationale for the fraud was their desire to obtain payment for unreasonable assessments and not provide Plaintiff with the benefits represented." (Complaint, par.86.) The complaint also alleges numerous statements and actions by HOA board member Susan Hernandez regarding the pool. (Id.)

Defendants argue the complaint fails to state a claim for fraud based on intentional misrepresentation because it does not allege that Defendants knew the representation was false or how Plaintiff was harmed. Defendants also argue that Plaintiff's discovery responses provide no evidence to support this claim.

The complaint frames the issues in the case and for purposes of summary judgment. (Hutton v. Fidelity National Title Company (2013) 213 Cal.App.4th 486, 493.) The opposition papers significantly broaden the allegations in the complaint regarding this cause of action.

Nevertheless, as with the first cause of action for fraud, Plaintiff's opposition fails to create any triable issues of material fact as to the claim for intentional misrepresentation. Plaintiff again argues, citing the same portions of her own declaration as evidence, that Defendants represented that the members' vote on the Emergency Assessment would be binding, but ignored the results of a vote on the issue (Bernstein Decl., par.6, 36, 38, 39); that Defendants concealed material information about pool access when she purchased the home (Id., par.19-26); that at some point Defendants lied about the reason for not offering greater pool access (Id., par.1, 25); that at some point Defendants have told Plaintiff that someone would come to open the pool, intending to induce her to wait, when they knew no one would come (Id., par.28); and that Defendants reported at some point in time that the special assessment was necessary due to wear and tear or tenant damage, when this was not true (Id., par.35). Plaintiff also argues that Richard Fong's "claims about recording residents," if untrue, also constitutes an intentional misrepresentation (Id., par.40.)

The same analysis set forth above with respect to the first cause of action for fraud applies to the seventh cause of action.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. Plaintiff fully disputes Material Fact No. 46, which contends Susan Hernandez did not make the alleged statements, but the cited portions of Plaintiff's declaration (par.7 and 8) state conclusorily that Hernandez knew the statements were not true, and that the pool was closed in the winter "due to retaliation and poor money management by Defendants," but provide no factual support for these assertions. In response to certain facts, Plaintiff cites to the complaint, or paragraphs 12-14 of her own declaration, which state that she was unable to

( (

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Hayward Hall of Justice

fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the seventh cause of action.

H. Negligent Misrepresentation (Eighth Cause of Action)

"The elements of negligent misrepresentation are '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.' While there is some conflict in the case law discussing the precise degree of particularity required in the pleading of a claim for negligent misrepresentation, there is a consensus that the causal elements, particularly the allegations of reliance, must be specifically pleaded. (Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc. (2009) 171 Cal.App.4th 35, 50 (internal citation omitted).)

The eighth cause of action alleges that "Susan Hernandez stated they could not afford to heat the pool," "that if people wanted to use the pool year round they needed to join a country club," and that Hernandez "caused the pool area to be closed entirely for 3 months during 2016-2017 winter." (Complaint, par.88.) Plaintiff alleges she "believed that it was contained in the CC&Rs that the pools one of them constantly closed in the winter and not heated fully," though she also alleges, "[r]eview of the CC&Rs which Plaintiff did not possess or see recently does not reflect any such agreement." (Id.) Plaintiff also alleges, "Defendants stated in the emergency assessment that the reserves have been underfunded for years." (Id.)

Defendants argue the complaint fails to state a claim for negligent misrepresentation because it does not allege that Hernandez made a false statement without reasonable ground for believing it to be true with the intent to induce reliance or that Plaintiff suffered any damage. Defendants also argue Plaintiff has not in fact suffered any harm because she did not pay the Emergency Assessment. Defendants argue that Plaintiff's discovery responses provide no evidence to support this claim.

In opposition, Plaintiff states that "Defendants made multiple misrepresentations to Plaintiff" (citing paragraphs 7, 21, 28, and 40 of Plaintiff's declaration), and states conclusorily that Defendants have not meet their burden on this issue, and that there are "several material facts in dispute that should be presented to the trier of fact."

The cited portions of Plaintiff's declarations contain conclusions and unsupported assertions, and otherwise fail to raise a triable issue as to whether Hernandez or any other person made untrue statements without reasonable grounds to believe they were true, with the intent to induce Plaintiff's reliance.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the

ORDER re: Ruling on Submitted Matter                                          Page 12 of 16

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not objecting to its contents. Plaintiff again disputes Material Fact No. 46, which contends Susan

Hernandez did not make the alleged statements, but the cited portions of Plaintiff's declaration (par.7 and 8) state conclusorily that Hernandez knew the statements were not true, and that the pool was closed in the winter "due to retaliation and poor money management by Defendants," but provide no foundation for these assertions. In response to certain facts, Plaintiff cites to the complaint, or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

Defendants are entitled to summary judgment on the eighth cause of action.

I. Breach of CC&Rs and Bylaws (Ninth Cause of Action)

The ninth cause of action alleges that Defendants breached the CC&Rs and Bylaws "by causing a forfeiture and or abridgement of owner's right to the full use and enjoyment of the residence and common areas despite no judgment of a court of competent jurisdiction, arbitration decision, failure to pay assessments; foreclosure or sale under a power of sale page 6 of the Bylaws," and "by attempting to circumvent maximum annual 20% increase in assessments through a 'preliminary' $33,262 'emergency assessment' to be followed by unknown additional 'emergency assessments' with no end in sight." (Complaint, par.91-92.)

Defendants argue Plaintiff has failed to identify any provision of the CC&Rs that was breached by the HOA, and has produced no evidence to support this claim.

The complaint frames the issues in the case and for purposes of summary judgment. (Hutton v. Fidelity National Title Company (2013) 213 Cal.App.4th 486, 493.)

The opposition papers significantly broadens the allegations in the complaint regarding this cause of action by arguing that "Defendants have breached their obligation by failing to follow protocol for levying the special assessment, failing to maintain the pool heated and available, failing to permit Plaintiff enjoyment of her home, failing to maintain the premises, failing to properly notice or conduct meetings, and failing to send annual reports or allow document inspection." In support of this argument, Plaintiff cites paragraphs 6, 8, 19-26, 28, 35, 36, 38, 42, 43 of her declaration, and Exhibits 5 (Bylaws) and 6 (CC&Rs) thereto.

Defendants' separate statement identifies Plaintiff's deficient discovery responses in support of their argument that Plaintiff lacks evidence for her claims. Plaintiff's responsive separate statement partially disputes many of the material acts identified in support of this issue, but the disputes appear to be based on incomplete evidentiary objections (see the Court's preliminary statement regarding evidentiary objections), the formatting of the separate statement, or "disputing" a fact on the ground that the documentary evidence "speaks for itself," but not

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

objecting to its contents. In response to certain facts, Plaintiff cites to the complaint, or paragraphs 12-14 of her own declaration, which state that she was unable to fully respond to discovery, and has not completed discovery herself. She cites generally to her own discovery responses, but fails to identify any disputed issues of fact raised by them.

Plaintiff's responses in the separate statement do not create triable issues of fact.

As discussed above, although Article III of the CC&Rs sets forth the procedures and purposes for levying regular assessments, special assessments, capital improvement assessments, reconstruction assessments, and uniform assessments on HOA members, the HOA was also authorized as a matter of law to approve an Emergency Assessment without member approval in an "emergency situation," which includes "[a]n extraordinary expense necessary to repair or maintain the common interest development or any part of it for which the association is responsible where a threat to personal safety on the property is discovered." (Civ.C.,§5610(b).) Plaintiff identifies no evidence supporting her apparent contention that the HOA was required to follow the protocols in the CC&Rs when it levied the Emergency Assessment in 2017.

The Court incorporates the above analysis regarding the Plaintiff's argument at the hearing that the 2018 Notice and Order of Abatement creates an "inference" that triable issues exist as to the first, second, and ninth causes of action.

Defendants are entitled to summary judgment on the ninth cause of action.

J. Violation of Civil Code section 51 (Unruh Civil Rights Act) (Tenth Cause of Action) and Civil Code section 54 (California Disabled Persons Act) (Eleventh Cause of Action)

The Unruh Civil Rights Act is a public accommodation statute that was designed to prevent discrimination by covered entities, including business establishments. Civil Code section 51(b) states, "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

The tenth cause of action for violation of the Unruh Act alleges that Plaintiff is a person with a disability, that moving party Defendants are business establishments within the meaning of the Unruh Act, and that despite being on notice that "the lack of accommodation for use of the pool area hot tub and heated pool excludes disabled plaintiff of medical treatment and relaxation much of the benefits that she pays for monthly through association dues," Plaintiff "has been denied full and equal access to ownership benefits," which have caused Plaintiff to suffer harm, in violation of the Unruh Act. (Complaint, par.97-102.)

"Under applicable provisions of the Disabled Persons Act (Civ.Code, § 54 et seq.), "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to ... places of public accommodation, amusement, or resort, and other places to which the general public is invited...." (Civ.Code, § 54.1, subd. (a)(1), see also § 54, subd. (a) ["Individuals with disabilities or medical conditions have the same right as the general public to the full and

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

free use of the streets, highways, sidewalks, walkways, public buildings, ... public facilities, and other public places"].)" (Carolyn v. Orange Park Cmty. Assn. (2009) 177 Cal.App.4th 1090, 1098.)

The eleventh cause of action for violation of the California Disabled Persons Act ("CDPA") alleges that Defendants violated Plaintiff's rights by denying her full and equal access to the pool area year around, and consistently during posted hours. (Complaint, par. 109.)

"Purely residential areas of a common interest development are not public accommodations." (Carolyn v. Orange Park Cmty. Assn., supra, 177 Cal.App.4th at 1099 (citing Coronado v. Cobblestone Village Community Rentals, LP (2008) 163 Cal.App.4th 831 (disapproved on other grounds in Munson v. Del Taco, Inc. (2009) 46 Cal.4th 661, 678).) In Carolyn, the Fourth District Court of Appeal held that recreational trails maintained by the Orange Park Community Association, a homeowners' association and common interest development, also failed to qualify as "public accommodation" within the meaning of the California Disabled Persons Act or the Unruh Act. (Id. at 1104.) The Court stated that although recreational common areas within common interest developments can be classified as public accommodations in appropriate circumstances," they were not appropriately classified as such in that case because the association "actively excluded the general public from using the trails." (Id.)

Article XII of the CC&Rs ("Rights of Enjoyment") states, in relevant part: "Every Member shall have a nonexclusive easement for use and enjoyment in and to the Common Area and such right shall be appurtenant to and shall pass with the interest required to be an Owner to every Residence, subject to all of the easements, covenants, conditions, restrictions and other provisions contained in this Declaration, including without limitation, the following provisions: (a) The right of the Association to limit the number of guests of Members, and to limit the use of the recreation facilities, if any, on the Common Area by persons not in possession of a Residence, but owing a portion for the interest in a residence required for membership." (Rutherford Decl., Exh.2, Article XII, Section 1.)

The Court infers from this language that common areas within the HOA property are subject to the right of the HOA to exclude the general public.

Plaintiff argues that whether the community at issue here is the type of residential facility excluded from the coverage of the Unruh Act and the CDPA is a question of fact to be determined by the jury. The opposition cites no evidence to create a disputed issue of fact about whether the HOA pools are public accommodations subject to the Act.

Defendants are entitled to summary judgment on the tenth and eleventh causes of action.

K. Injunctive Relief / Declaratory Relief (Twelfth Cause of Action)

The twelfth cause of action for injunctive relief/declaratory relief states only, "PRELIMINARY INJUNCTION TO PREVENT THE ENFORCEMENT, COLLECTION OF THE EMERGENCY ASSESSMENT DUE APRIL 2, 2018 and subsequent emergency assessments levied during the pendency of this trial." (Complaint, par.115.)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

"Injunctive and declaratory relief are equitable remedies, not causes of action." (Faunce v. Cate (2013) 222 Cal.App.4th 166, 173.) To qualify for declaratory relief, a party must demonstrate that the action presents two essential elements: "(1) a proper subject of declaratory relief, and (2)

an actual controversy involving justiciable questions relating to the parties' rights or obligations." (Wilson & Wilson v. City Council of Redwood City (2011) 191 Cal.App.4th 1559, 1582.)

Plaintiff argues in the opposition brief that the assessment "was egregious and not eligible for the Civil Code section 5610(b) exception," and cites paragraphs 38 and 39 of her declaration. These portions of her declaration assert that the assessment was extreme and excessive, and improperly levied. These are allegations and conclusions that do not create a triable issue of fact under the CC&Rs. In her responsive separate statement, she disputes that the Emergency Assessment was lawfully imposed under section 5610(b) by citing paragraph 6 of her own declaration, which states conclusorily that the Emergency Assessment packet was not properly approved by the Board, and "was not prepared, approved, or noticed in accordance with the requirements of the law." This statement is unsupported by any foundation or evidence, and fails to create a triable issue of fact on this claim.

To the extent the complaint may be construed to allege an actual controversy between the parties regarding their respective rights and obligations under the CC&Rs, and the Plaintiff's right to injunctive relief in some respect, there appears to be no evidence indicating the existence of a triable issue of material fact with respect to Plaintiff's right to a declaratory judgment or injunctive relief with respect to the CC&Rs.

Defendants are entitled to summary judgment on the twelfth cause of action.

Defendants Associa Northern California, Meadow Brook Village Association -- Fremont, and Massingham Associates' motion for summary judgment is GRANTED. Defendants are to prepare a proposed judgment and file it within 30 days of this Order, emailing a courtesy copy in Word to dept512@alameda.courts.ca.gov.

Clerk is directed to serve endorsed-filed copies of this order, with proof of service, to counsel and to self-represented parties of record by mail.

Dated: 05/16/2022

*Euml Lee / Judge*

# EXHIBIT O

<sup></sup>23 The Lord makes firm the steps
   of the one who delights in him;
24 though he may stumble, he will not fall,
   for the Lord upholds him with his hand.

N.  25 I was young and now I am old,
     yet I have never seen the righteous forsaken
     or their children begging bread.
    26 They are always generous and lend freely;
     their children will be a blessing.[b]

O.  27 Turn from evil and do good;
     then you will dwell in the land forever.
    28 For the Lord loves the just
     and will not forsake his faithful ones.

P.  Wrongdoers will be completely destroyed[c];
     the offspring of the wicked will perish.
    29 The righteous will inherit the land
     and dwell in it forever.

Q.  30 The mouths of the righteous utter wisdom,
     and their tongues speak what is just.
    31 The law of their God is in their hearts;
     their feet do not slip.

R.  32 The wicked lie in wait for the righteous,
     intent on putting them to death;
    33 but the Lord will not leave them in the power of the wicked
     or let them be condemned when brought to trial.

S.  34 Hope in the Lord
     and keep his way.
     He will exalt you to inherit the land;
     when the wicked are destroyed, you will see it.

T.  35 I have seen a wicked and ruthless man
     flourishing like a luxuriant native tree,
    36 but he soon passed away and was no more;
     though I looked for him, he could not be found.

U.  37 Consider the blameless, observe the upright;
     a future awaits those who seek peace.[d]
    38 But all sinners will be destroyed;
     there will be no future[e] for the wicked.

V.

1   LUANNE RUTHERFORD (State Bar No. 153336)
    luanne.rutherford@mcnamaralaw.com
2   MCNAMARA, NEY, BEATTY, SLATTERY,
    BORGES & AMBACHER LLP
3   3480 Buskirk Avenue, Suite 250
    Pleasant Hill, CA 94523
4   Telephone: (925) 939-5330
    Facsimile: (925) 939-0203
5
6   Robert M. Maltz, Esq.
    robert.maltz@farmersinsurance.com
7   Hartsuyker, Stratman & Williams-Abrego
    P.O. Box 258829
8   Oklahoma City, OK 73125-8829
    Telephone: 510-457-3440
9   Facsimile: 510-238-8968

10  Attorneys for Defendants
    ASSOCIA NORTHERN CALIFORNIA, a California
11  Corporation, MEADOW BROOK VILLAGE ASSOCIATION -
    FREMONT, a California Corporation, and MASSINGHAM &
12  ASSOCIATES, a California Corporation

13              SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

14                       CIVIL - UNLIMITED JURISDICTION

15

16   MARY BERNSTEIN,                          Case No. HG18897381

17              Plaintiff,                    ASSIGNED FOR ALL PURPOSES TO HON.
                                              PAUL D. HERBERT, DEPT. 20
18        vs.
                                              **DECLARATION OF LUANNE**
19   ASSOCIA NORTHERN CALIFORNIA, a           **RUTHERFORD IN SUPPORT OF EX**
     California Corporation MEADOW            **PARTE APPLICATION TO ADVANCE**
20   BROOK VILLAGE ASSOCIATION -              **HEARING DATES ON MOTION TO**
     FREMONT, a California Corporation,       **COMPEL RESPONSES AND MOTION TO**
21   MASSINGHAM & ASSOCIATES, a               **HAVE REQUESTS FOR ADMISSION BE**
     California Corporation JOHN DOE 1-50;    **DEEMED ADMITTED**
22   MARY ROE 1-50; XYZ CORP 1-50; ABC
     LLC 1-50; The names of the "John Doe 1-  Date:  April 8, 2019
23   50" "Mary Roe 1-50", "XYZ Corp, 1-50",   Time:  10:00 a.m.
     and "ABC LLC, 1-50", defendants being    Dept:  20
24   fictitious, and unknown to the Plaintiff, Trial Date:    10/15/2019
                                              Action Filed: 3/19/2018
25              Defendants.

26

27

28

I, Luanne Rutherford, declare:

1.     I am an attorney at law licensed to practice in the State of California.  I am a partner at the law firm of McNamara, Ney, Beatty, Slattery, Borges & Ambacher LLP, attorneys of record for Defendants Associa Northern California, Meadow Brook Village Association – Fremont and Massingham & Associates in the above-captioned matter.  I have personal knowledge of the facts stated herein and could competently testify thereto if called as a witness.

2.     Trial in this matter is set for October 15, 2019.  A Mandatory Settlement Conference is set for September 13, 2019.  Discovery closes in this matter as of September 13, 2019.

3.     On August, 1, 218, the HOA served Ms. Bernstein with Form Interrogatories, Set One, and Request for Production of Documents, Set One via U.S. Mail.  Pursuant to Code of Civil Procedure sections 2030.260 and 2031.260, verified responses to said discovery requests were due on or before September 4, 2018. As of the date of the herein motion, despite having served Ms. Bernstein with the herein mentioned motion, Ms. Bernstein still has not provided any responses to the discovery.

4.     On October 22, 2018, the HOA served Mary Bernstein with Form Interrogatories, Set Two, and Requests for Admission, Set One.  Pursuant to Code of Civil Procedure sections 2030.260, verified responses to the discovery were due on or before November 26, 2018. As of the date of the herein motion, Ms. Bernstein has not provided any responses to Form Interrogatories, Set Two or to Request for Admission, Set One.

5.     On February 6, 2019, the HOA filed a Motion to Compel Discovery Responses and a Motion to Have Requests for Admission Be Deemed Admitted.

6.     The court initially set the hearings for these motion on May 2, 2019.

7.     Thereafter, the court continued the hearings to August 29, 2019.

8.     The HOA intends to file a motion for summary judgment in this matter.

9.     Defendants will be prejudiced if the hearings on their discovery motions are not advanced to an earlier date.

10.     Ms. Bernstein's Motion for Protective Order and Motion Compelling Compliance with Subpoena are set for May 14, 2019 at 3:30 p.m. in Department 20 of the herein Court.

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

DEC ISO EX PARTE APPLICATION TO ADVANCE HEARING DATES

1    11.    Ms. Bernstein is in propia persona.

2    12.    On April 2, 2019 at 9:11 p.m., I notified Ms. Bernstein via email that I would present

3    this Court with an Ex Parte Application to Advance the Hearing Dates on Defendants Motion to

4    Compel Discovery Responses and Motion to Have Requests for Admission Deemed Admitted in

5    Department 20 of the Alameda County Superior Court, on April 4, 2019 at 3:30 p.m. Attached to

6    that email was a copy of the Defendants' Ex Parte papers that will be filed with the court. A copy

7    of said email is attached hereto as Exhibit A.

8    13.    Thereafter, the court moved the Ex Parte Hearing to April 8, 2019 at 10:00 a.m. in

9    Department 20 of the Alameda County Superior Court. All parties and counsel, including Ms.

10   Bernstein, were included on the email from the clerk in Department 20. A copy of the clerk's email

11   is attached hereto as Exhibit B.

12   14.    As of the time of completing this Declaration, I have not received a response from

13   Ms. Bernstein.

14       I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th

15   day of April, 2019, at Pleasant Hill, California.

16

17   _Luanne Rutherford_

18

19

20   K:\FRM\1837 - Bernstein v. Meadowbrook\Motions\Ex Parte to Advance Hrgs Dates\Declaration.docx

21

22

23

24

25

26

27

28

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

3

CERTIFICATE OF SERVICE VIA E-MAIL

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action. My electronic notification address is: laura.selling@mcnamaralaw.com.

On this date, I electronically served the foregoing **DECLARATION OF LUANNE RUTHERFORD IN SUPPORT OF EX PARTE APPLICATION TO ADVANCE HEARING DATES ON MOTION TO COMPEL RESPONSES AND MOTION TO HAVE REQUESTS FOR ADMISSION BE DEEMED ADMITTED** based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Plaintiff in Pro Per:**

Ms. Mary Bernstein
3416 Deerwood Terrace, #113
Fremont, CA 94536

Phone: 510-938-6280
E-Mail: mhelenbernstein@yahoo.com

**Attorneys for Defs. ASSOCIA NORTHERN CALIFORNIA, a California Corporation, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, a California Corporation, and MASSINGHAM & ASSOCIATES, a California Corporation:**

Robert M. Maltz, Esq.
Hartsuyker, Stratman & Williams-Abrego
P.O. Box 258829
Oklahoma City, OK 73125-8829

Phone: 510-457-3440
Fax: 510-238-8968
E-Mail: robert.maltz@farmersinsurance.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 4, 2019 at Pleasant Hill, California.

Laura Selling

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

PROOF OF SERVICE BY MAIL (C.C.P. §§ 1013a, 2015.5)

I hereby declare that I am a citizen of the United States, am over the age of eighteen years, and not a party to the within action; my business address is 3480 Buskirk Avenue, Suite 250, Pleasant Hill, CA 94523.

On this date, I served the foregoing **DECLARATION OF LUANNE RUTHERFORD IN SUPPORT OF EX PARTE APPLICATION TO ADVANCE HEARING DATES ON MOTION TO COMPEL RESPONSES AND MOTION TO HAVE REQUESTS FOR ADMISSION BE DEEMED ADMITTED** on the parties in said action, by placing a true copy thereof enclosed in a sealed envelope addressed as listed below for mailing. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid, in the United States Post Office mail box at Pleasant Hill, California, addressed as follows:

**Plaintiff in Pro Per:**

Ms. Mary Bernstein
3416 Deerwood Terrace, #113
Fremont, CA 94536

Phone: 510-938-6280
E-Mail: mhelenbernstein@yahoo.com

**Attorneys for Defs. ASSOCIA NORTHERN CALIFORNIA, a California Corporation, MEADOW BROOK VILLAGE ASSOCIATION - FREMONT, a California Corporation, and MASSINGHAM & ASSOCIATES, a California Corporation:**

Robert M. Maltz, Esq.
Hartsuyker, Stratman & Williams-Abrego
P.O. Box 258829
Oklahoma City, OK 73125-8829

Phone: 510-457-3440
Fax: 510-238-8968
E-Mail: robert.maltz@farmersinsurance.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 4, 2019 at Pleasant Hill, California.

_____
Laura Selling

McNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

**Laura Selling**

| | |
|---|---|
| **From:** | Luanne Rutherford |
| **Sent:** | Tuesday, April 2, 2019 9:11 AM |
| **To:** | Mary HelenBernstein |
| **Cc:** | Robert Maltz |
| **Subject:** | Bernstein v. Associa Northern California |

Dear Ms. Bernstein:

This email will serve to provide you with notice that we will be seeking an ex parte order to advance the hearing dates on defendants' Motion to Compel Discovery Responses and Motion to Have Requests for Admission to be Deemed Admitted. The Ex Parte hearing will be on April 4, 2019 at 3:30 pm in Department 20 of the Alameda County Superior Court.

We will provide you with a copy of our ex parte papers as soon as they are ready.

Please advise if you intend to oppose the ex parte application.

Very truly,
**Luanne Rutherford**
**Partner**



3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
925.939.5330
925.939.0203 Fax
www.mcnamaralaw.com

vCard

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

1

**EXHIBIT** "A"

**Luanne Rutherford**

| | |
|---|---|
| **From:** | Dept. 20, Superior Court <dept20@alameda.courts.ca.gov> |
| **Sent:** | Wednesday, April 03, 2019 9:42 AM |
| **To:** | Laura Selling |
| **Cc:** | mhelenbernstein@yahoo.com; robert.maltz@farmersinsurance.com; Luanne Rutherford |
| **Subject:** | Re: BERNSTEIN v. ASSOCIA NORTHERN CALIFORNIA; Case No. HG18897381 |

Counsel and Ms. Bernstein,

The ex parte set for 04/08/19 at 03:30 p.m. has been moved from 3:30 p.m. to 04/08/19 at 10:00 a.m. to accommodate Ms. Bernstein's previously submitted ADA request. Please file the originals at the filing clerk's office and send a hard courtesy copy to Dept. 20 before the hearing. Also ensure that the clerk's office routes the application to Judge Herbert's work queue. No reservation numbers are given for ex partes.

Judge Herbert has also set a CMC on 04/08/19 at 10:00 a.m. ( Notices have been mailed out today). Case Management Statement are not required for this upcoming CMC.

Counsel and Ms. Bernstein are welcome to appear by court call.


Reshma Mishra
Courtroom Clerk II
Clerk to the Honorable Judge Paul D. Herbert
Superior Court of California, County of Alameda
Department 20
Administration Building (4th Floor)
1221 Oak Street
Oakland, CA  94612
Department email : dept20@alameda.courts.ca.gov
Alameda County Superior Court website : www.alameda.courts.ca.gov
DOMAIN web: https://publicrecords.alameda.courts.ca.gov/prs

PLEASE NOTE:
~Effective June 4, 2012, the court will not provide a court reporter for law and motion hearings, or any other hearing or trial, in civil and probate departments. See amended Local Rule 3.95 for details.


***Email is the preferred method of communicating with court staff in Department 20, particularly for scheduling of law and motion, ex parte application, and case management events. Telephone communications are possible, but use of email will greatly facilitate a prompt response to your inquiries.
***Paper courtesy copies of all documents filed must be delivered directly to Department 20 or dropped off in the drop box provided outside Department 20 as close to the time of filing as practicable.


Exhibit "B"

**From:** Laura Selling <Laura.Selling@McNamaraLaw.com>
**Sent:** Tuesday, April 2, 2019 4:00 PM
**To:** Dept. 20, Superior Court
**Cc:** mhelenbernstein@yahoo.com; robert.maltz@farmersinsurance.com; Luanne Rutherford
**Subject:** RE: BERNSTEIN v. ASSOCIA NORTHERN CALIFORNIA; Case No. HG18897381

Please schedule the ex parte for 4/8/19 at 3:30 p.m.  Thank you.

Laura Selling
Secretary to Paul B. Walsh and Luanne Rutherford
McNamara, Ney, Beatty, Slattery, Borges & Ambacher LLP

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**From:** Dept. 20, Superior Court [mailto:dept20@alameda.courts.ca.gov]
**Sent:** Tuesday, April 2, 2019 3:43 PM
**To:** Laura Selling <Laura.Selling@McNamaraLaw.com>
**Cc:** mhelenbernstein@yahoo.com; robert.maltz@farmersinsurance.com; Luanne Rutherford
<Luanne.Rutherford@McNamaraLaw.com>
**Subject:** Re: BERNSTEIN v. ASSOCIA NORTHERN CALIFORNIA; Case No. HG18897381

04/04/19 is not available, the first available date for an ex parte is 04/08/19 at 3:30 p.m. Please confirm date
and time.

Reshma Mishra
Courtroom Clerk II
Clerk to the Honorable Judge Paul D. Herbert
Superior Court of California, County of Alameda
Department 20
Administration Building (4th Floor)
1221 Oak Street
Oakland, CA  94612
Department email : dept20@alameda.courts.ca.gov
Alameda County Superior Court website : www.alameda.courts.ca.gov
DOMAIN web: https://publicrecords.alameda.courts.ca.gov/prs

PLEASE NOTE:
~Effective June 4, 2012, the court will not provide a court reporter for law and motion hearings, or any other
hearing or trial, in civil and probate departments. See amended Local Rule 3.95 for details.

***Email is the preferred method of communicating with court staff in Department 20, particularly for
scheduling of law and motion, ex parte application, and case management events. Telephone communications
are possible, but use of email will greatly facilitate a prompt response to your inquiries.
***Paper courtesy copies of all documents filed must be delivered directly to Department 20 or dropped off in
the drop box provided outside Department 20 as close to the time of filing as practicable.

**From:** Laura Selling <Laura.Selling@McNamaraLaw.com>
**Sent:** Tuesday, April 2, 2019 9:16:21 AM
**To:** Dept. 20, Superior Court
**Cc:** mhelenbernstein@yahoo.com; robert.maltz@farmersinsurance.com; Luanne Rutherford
**Subject:** BERNSTEIN v. ASSOCIA NORTHERN CALIFORNIA; Case No. HG18897381

Good morning:

    On April 4, 2019 at 3:30 p.m. in Dept. 20, Luanne Rutherford will be appearing ex parte for an order to advance the hearing date on Meadow Brooks' Motion to Compel and Motion to Deem Request for Admissions Deemed Admitted.

**Laura Selling**
**Secretary to Paul B. Walsh and Luanne Rutherford**

McNamara, Ney, Beatty, Slattery,
Borges & Ambacher LLP

3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
925.939.5330
925.939.0203 Fax
www.mcnamaralaw.com

vCard

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

## EXHIBIT P

Jesus Predicts the Destruction of the Temple

The Signs of the Times and the End of the Age

**3** Now as He sat on the Mount of Olives, the disciples came to Him privately, saying, "Tell us, when will these things be? And what *will be* the sign of Your coming, and of the end of the age?"

**4** And Jesus answered and said to them: "Take heed that no one deceives you. **5** For many will come in My name, saying, 'I am the Christ,' and will deceive many. **6** And you will hear of wars and rumors of wars. See that you are not troubled; for ᵂᵃll *these things* must come to pass, but the end is not yet. **7** For nation will rise against nation, and kingdom against kingdom. And there will be famines, ᵂpestilences, and earthquakes in various places. **8** All these *are* the beginning of sorrows.

**9** "Then they will deliver you up to tribulation and kill you, and you will be hated by all nations for My name's sake. **10** And then many will be offended, will betray one another, and will hate one another. **11** Then many false prophets will rise up and deceive many. **12** And because lawlessness will abound, the love of many will grow cold. **13** But he who endures to the end shall be saved. **14** And this gospel of the kingdom will be preached in all the world as a witness to all the nations, and then the end will come.

    A.  **39** The salvation of the righteous comes from the Lord;
          he is their stronghold in time of trouble.
      **40** The Lord helps them and delivers them;
          he delivers them from the wicked and saves them,
          because they take refuge in him.

In the Matter Of:

MARY BERSTEIN vs ASSOCIA NORTHERN CALIFORNIA, et al.,

BERNSTEIN HEARING

*October 09, 2019*

**Court Reporters, Videography, Trial Preparation**

**Videoconference Center**

**Oakland ✦ San Francisco ✦ San Jose**

**Sacramento ✦ Irvine ✦ Los Angeles**

**877.451.1580**

**www.aikenwelch.com**



1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                        COUNTY OF ALAMEDA

3

4    MARY BERNSTEIN,

5              Plaintiff,

6         vs.                              Case No. HG18897381

7    ASSOCIA NORTHERN CALIFORNIA,
     et al.,

8

9              Defendants.
     _____/

10

11

12

13

14            Reporter's Transcript of Proceedings

15              Wednesday, October 9, 2019

16

17

18            1221 Oak Street, Department 20

19                  Oakland, California

20

21

22

23

24       Reported By:  Sheila Pham, CSR No. 13293

25

**Page 2**

```
 1                APPEARANCES OF COUNSEL
 2
 3   For Plaintiff In Pro Per:
 4        MARY BERNSTEIN
          3416 Deerwood Terrace, #113
 5        Fremont, CA 94536
          (510) 938-6280
 6        mbernsteinpurple@hotmail.com
 7
     For Defendants:
 8
          MCNAMARA, DODGE, NEY, BEATTY, SLATTERY, BORGES
 9        & AMBACHER
          BY: DREW WILLIAMS, ESQ. (via CourtCall)
10        3480 Buskirk Avenue, Suite 250
          Pleasant Hill, CA 94523
11        (925) 939-5330
          drew.williams@mcnamaralaw.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 3**

```
 1        Oakland, California, Wednesday, October 9, 2019
 2                  10:06 a.m. - 11:12 a.m.
 3
 4        THE COURT:  Good morning, Ms. Bernstein.
 5        MS. BERNSTEIN:  Good morning, sir.
 6        THE COURT:  Let me call the matter to order.
 7   Calling Bernstein versus Associa Northern California,
 8   A-S-S-O-C-I-A Northern California.
 9        Ms. Bernstein, if you could please state your
10   name for the record.
11        MS. BERNSTEIN:  This is Mary Bernstein, the
12   plaintiff in the matter.
13        THE COURT:  Thank you, ma'am.
14        And could I have appearance from defense
15   counsel.
16        MR. WILLIAMS:  Yes, Your Honor.  This is Drew
17   Williams appearing for attorney of record, Luanne
18   Rutherford, on behalf of defendants.
19        THE COURT:  Thank you, Counsel.
20        So, Ms. Bernstein, did you have a chance to
21   look at the Court's tentative ruling in this matter?
22        MS. BERNSTEIN:  Uh-huh.  I did, yes.  Yes.  I'm
23   sorry.
24        THE COURT:  Thank you, ma'am.  As I mentioned
25   in my tentative ruling, I'm inclined to grant the
```

**Page 4**

```
 1   request for a further stay of the action, but I am
 2   trying to get a better understanding of what period of
 3   time would be appropriate under the circumstances, and
 4   what you think is going to change, you know, X number of
 5   months in the future.
 6        MS. BERNSTEIN:  Okay.  First of all, I gave --
 7   I'm sorry, I forget the name, Reshma or Nishra.  I can't
 8   remember.  Okay?  It's one or the other, the first and
 9   last name.
10        THE CLERK:  That's fine.
11        MS. BERNSTEIN:  This is for you to follow along
12   with me.
13        THE COURT:  Yes, ma'am.
14        MS. BERNSTEIN:  One of the first items there, I
15   e-mailed a lot of stuff that you probably couldn't go
16   through all of it, which is the confidential
17   declaration, what we did, and this is all part of it I'm
18   going to walk you through, but I'm not going to orotate
19   (sic) because it's between you and I, okay, but I'm
20   going to point you to it.  Okay?
21        THE COURT:  I just want you to slow down for
22   our court reporter.
23        MS. BERNSTEIN:  Yes.  Okay.  Sorry.
24        I'm sorry.  If I'm going too fast, let me know
25   too.  Okay?  Thanks.
```

**Page 5**

```
 1        One of the documents you have there is a letter
 2   from my doctor, and you've got two of them that said
 3   this is critical for six months, okay, because of the
 4   aggravation.  And I want to get a lot on this record
 5   about what I went through because I tried to not have to
 6   come back in here again.  I gave the other side lots of
 7   time without coming in because I felt like that was
 8   their strategy, I'm sorry.  And I might need a lot of
 9   breaks.  This is going to be very emotional, just so you
10   know.  Okay?  So if I get too wound up in about 15
11   minutes, I might need to take a break.  I'm perspiring
12   and I'm really stressed.
13        THE COURT:  Let me just say this:  We've got
14   plenty of time.
15        MS. BERNSTEIN:  Thank you.
16        THE COURT:  There's no rush.
17        MS. BERNSTEIN:  It's my conditions.
18        THE COURT:  I understand.  Because we're trying
19   to make a record and because the court reporter needs us
20   to speak slowly so she can get it all down, it's
21   particularly important for you to breathe and take the
22   time you need so that we can get a good record.  All
23   right, ma'am?
24        MS. BERNSTEIN:  Right.  Okay.  So where was I?
25   Okay.  My doctor -- my main therapist gave two letters,
```

1  one that talked about the stay for your matter for six
2  months.  That was e-mailed in which you may or may not
3  have a copy of.  But you have that there and I've got it
4  in the binder for you as well as one she just did the
5  other day.  Because as a result of the stress and what
6  was going on there, I had to file four restraining order
7  requests.  So I've had to -- because these people would
8  not leave me alone.  Okay?
9          So she's also -- I'm sorry, he because I have a
10 doctor that is a psychiatrist, a woman.  He, Shai, the
11 male, said that there are no proceedings for me for six
12 months.  And I'm going to proceed to tell you what has
13 occurred during this time and how I've been driven -- my
14 doctors -- am I going okay?  My doctors have almost
15 decided to put me in Crisis Residential because the
16 harassment to get me to drop this case has been so
17 severe.  Although, they didn't file written motions,
18 they did everything in their power to torment me there.
19         And I'm going to proceed to tell you what that
20 is.  I have had to go to Senators' offices.  I've had to
21 -- the HUD complaint was already in place so that they
22 would stop.  They didn't.  I pleaded to HUD to help me.
23 They said that that wasn't something that they could do.
24 Okay?  That wasn't within the scope of their power to
25 tell them to stop doing this.  So again, I was told by

1  law enforcement and the Senators to get restraining
2  orders, which I had to, okay, because it was so intense.
3        Okay.  So let's begin.  Can you locate, with
4  the couple of documents that I gave you, you'll see some
5  pictures of people.  I'm going to paint the picture for
6  you.  I need to catch my breath.  There should be a
7  letter there, I think, from the doctor, Shai.  If not,
8  I've got -- I thought I put it there.  Do you see one?
9        THE COURT:  Just a moment.  Yes.
10       MS. BERNSTEIN:  Okay.  And it should be dated,
11 like, a couple of days ago.
12       THE COURT:  Yes.  This was dated October the
13 7th.
14       MS. BERNSTEIN:  Yes.  That's the one that says
15 because the TROs are only held in the afternoons and
16 because of my medication, I don't have the presence of
17 mind in the afternoons, we cannot have those.  But the
18 restraining orders, we still want in place for my peace
19 of mind.
20         I'm dry mouth from all of the medication, but
21 I'm going to attempt to do this.  And this is a lot of
22 stuff to talk about.  Okay?  I'm going to switch to my
23 reading glasses.
24         There are some pictures of some African people
25 that you see there.  I'm going to go back in time a few

1  years ago to my diagnosis -- or my designation of the
2  permanent disability, okay, and tell you a little bit
3  about my life.  Okay?
4          I had a very traumatic childhood, multiple
5  assaults as a child, and couldn't go to school or
6  anything because of such emotional problems, the ADHD.
7  And probably had PTSD even as a child, but they didn't
8  diagnose me until later with that.
9          So I was a teenage mother and I got married.  I
10 had a career in the legal field for many years and went
11 on to get a master's degree despite all of my
12 disabilities.  I lived a very decent life, okay, despite
13 all of the obstacles.
14         And about 2015, I reentered -- I started having
15 problems, first of all, with the census.  Let me go back
16 to that.  And I apologize.  It's going to be like a
17 labyrinth because of everything that I have going on and
18 my conditions.
19         Luanne Rutherford, I want to address that.
20 That was a very dramatic hearing I went through just the
21 other day, okay, in case I'm going around in different
22 places.  This is the Michael Durbin (phonetic) guy.
23 This man, I didn't know very well, but he's now the
24 president on the board.  Okay?  I didn't know him very
25 well, but I was a supervisor on the census.

1          And when they started having all of these
2  problems with the property, I had not been in any kind
3  of therapy or anything for a couple of years because I
4  was maintaining it.  And the pictures of the black
5  people, what my therapist then at the time, Dr. Traci
6  Barisciano, had me do was -- because I was so used to
7  being very busy in the legal field and from being a
8  paralegal, then I went on to represent people in social
9  security hearings as an advocate, a representative, and
10 get them awarded social security as well as before the
11 Labor Board.  Okay?  But I started deteriorating
12 probably just from the stress of life and such at that
13 point.  2010 was when I had done the census and I met
14 the Michael Durbin guy.  We were only on the project for
15 a short time that I was directly over him.  He seemed
16 nice enough, so I didn't really know him.
17         When he got appointed on this board recently,
18 he came -- he was outside my door at the carport, and I
19 didn't think anything of it.
20         And I said, "Hello."
21         And he said, "Hi."
22         And I said, "I know that you're new on the
23 board, I guess."  And he was the treasurer then, I
24 think, or secretary, or some position.
25         And he said, "Yes."

Page 10

1           I said, "This is terrible what's going on here
2  in our condominiums."
3           And he said, "Yes."  And he said, "To be
4  honest, I just got on the board so I could find out
5  what's going on."
6           And so I thought, "Okay, well, there's an
7  ally."
8           Because there seemed to be a division.  There
9  was an old board, and then a group of people filed a
10 complaint to have this petition to recall the Board
11 which presumably ostensibly seemed like it was for a new
12 board to get rid of these huge emergency assessments,
13 number one, and investigate what happened.
14          So we believed that.  Okay?  And we went
15 through a hearing on January 24th, and people were very
16 angry.  This was leading up to this for months of the
17 preceding year where I ended up having to go back into
18 therapy because I was doing this activism, doing letters
19 for these people to keep my mind occupied so I wouldn't
20 go stir crazy in my room because now I'm on the disabled
21 status.  Right?
22          And so it was fine.  I was doing the swimming
23 when I could when the pool wasn't locked.  That was
24 something that I was frustrated by because there was no
25 reason that the locks were on it.  I had to fight to get

Page 11

1  my own key for it.  So some people had their own keys
2  and -- besides the main key that we had.
3           So there was all of these power struggles that
4  had been going on.  And again, with a homeowners board,
5  it's not like I defer to you, it's big "you," little
6  "I," that you are my boss.  We are all homeowners, but
7  they've elected to be a volunteer in that capacity.
8           But that doesn't mean that I'm beholden to you,
9  that I have to defer to you, that you're my Pharaoh,
10 that I'm your subject, that I can't move without
11 permission.  It means that you just elected to be a
12 fiduciary, to look out for all of the interests of
13 everyone.  Okay?  Not that you're to be power-hungry,
14 power-placed, and then give privileges to some people,
15 create a divisive and acrimonious situation that's so
16 frustrating for everybody to live in.  And furthermore,
17 there's supposed to be some voting, not that you're just
18 going to tell us how this is going to be, like the ruler
19 and the ruled like we're subjects.  This is very
20 frightening.
21          And so on the appearance level, it seemed like,
22 okay, this was -- this was the case that, okay, well, we
23 want the old board gone.  The new board, they say
24 they're going to help us.  And most of us, we don't want
25 to be bothered with it, okay, so we voted for them.  And

Page 12

1  so this Mike Durbin was on that.
2           And as I learned later on, then I found out the
3  "new board" or people that filed this petition, it was
4  actually a splintered version of the old board created
5  to create, like, a distraction or a controlled
6  opposition.  Okay?  So Charlie West had been on it
7  18 years.  It was really on this new petition.  And then
8  another woman that created -- that was -- the one that
9  tormented me that was the board, and her minions were on
10 that one, Susan Candell (phonetic).  Okay?
11          So they pretended it was two opposing things.
12 Again, until you're delving into it, you don't notice
13 this on the surface.  Okay?  So I didn't notice it until
14 I got into the discovery and depositions and learned of
15 it.
16          But Susan had been on the board for 14 years
17 and Charlie West had been on 18 years.  So they had a
18 responsibility and accountability because these people
19 were on it for a very long time.  Not people that were
20 just like revolving doors, like chess pieces for a year
21 here and a year there.  I don't blame them.  They didn't
22 know.  But for these two, their lies and culpability --
23 I'm sorry.
24          Back to Michael Durbin.  So, anyway, that's the
25 frame of mind.  So, again, I felt relieved because we

Page 13

1  were all at this hearing.  I had actually been
2  hospitalized July 20th because I knew this thing was
3  coming --
4           THE COURT:  July 20th of this year?
5           MS. BERNSTEIN:  No, 2017, before this
6  January 24th hearing for this special assessment.  They
7  wanted it to be more than the 33.  They wanted it
8  doubled for 70 grand.  So we were fighting against that.
9  We really didn't want any of it, okay, but that's what
10 it ended up being.
11          But none of us wanted to pay it because we
12 didn't feel we were obligated to.  We never had missed
13 our own payments.  It caused tremendous stress.  There's
14 different nationalities in there that don't completely
15 even understand, there's elderly, the disabled, there's
16 families, people that just moved in for a month or two
17 or bought now were obligated to pay 33 grand, or
18 potentially 70 grand.  So people were very upset.  They
19 didn't know what they were even walking into.
20          So, again, I was -- he made it appear that he
21 was -- that this new board and that he, in particular,
22 because there was a rapport because he knew me, he said
23 something that didn't really register, is that -- he
24 said, "If I had known it was you, I would have been over
25 to your house in a minute."  He said, "Give me a hug."

Page 14

1      And it didn't even register.  I mean, I did
2  that knowingly because I was molested as a child.
3  There's a grooming where you automatically almost do
4  this.  You're almost automatically sucked into this
5  stuff.  Okay?
6      And so I just didn't even think about it or
7  what the remark was.  But I had told him, "Yes, there's
8  a Richard Fong," and there was confusion.  You heard
9  that hearing back then.  They claimed that they didn't
10  know that he was on the board, but then I located stuff
11  that shows that they were deceiving me, that they knew
12  he was on it.  They were behind this.  And so this is
13  what went on.
14      So at that January 24th hearing, and I'm going
15  back before then with the hospitalization.  The June --
16  July 20th of 2017.  I guess it had been about a month of
17  a hundred people on the property that were doing this
18  analysis for the property.  They had told us that it had
19  been condemned by the City of Fremont.
20      And so we were all frightened by this.  Okay?
21  We were frightened.  We didn't know what was going on,
22  but they were telling us, we've got to do whatever it
23  takes or we're all going to lose our homes.  And we were
24  terrified.
25      I was in my house and doing the pool.  The pool

Page 15

1  was locked half the time.  I was going through
2  menopause.  I was going through a lot of stuff.  And I
3  was trying to get a loan from my master's degree
4  discharged because I could no longer work.  That was
5  going to be in jeopardy if it wasn't signed off on by
6  the doctors that I had.  It had taken me three years of
7  fighting that with the government, and if it wasn't done
8  within a certain month of time, then I was going to have
9  to start all over again, which is very frustrating.
10      So I had contacted my doctors and they had
11  dropped the ball.  And I had stated that this is enough
12  to drive anybody to suicide.  Okay?  So they
13  thought that -- you know, that I was going to commit
14  suicide or something because I was driven to that point.
15  And lo and behold, with all of the stress and
16  everything, I got taken to John George for a couple of
17  days for an observation.  Because with all of the
18  stimuli, they had cameras looking in our windows, all of
19  the people, all of the noises, the fear because I was a
20  child that had been abused, my mother neglected me, all
21  of this, I'm going through a secondary trauma with all
22  of this right now.
23      And then I had to reenter the treatment again,
24  okay, and it just escalated from there.  Okay?  So then
25  I had to get -- I'm very angry at my doctors for calling

Page 16

1  on that, and I've got new doctors now.  I've gotten some
2  females ones.  I went to male doctors, okay, because of
3  that.  Because I said, "I didn't say I was going to
4  commit suicide, but I could understand, I guess, why you
5  felt that way, you know."  And they have to do it as a
6  precaution.
7      And so we heard a little bit here and there,
8  and I never really socialized much with any of the
9  neighbors.  There was a man named John Gibson that I've
10  got a restraining order against that just would come
11  talk to us about cats or would gossip about everything.
12  But we were not buddy-buddy with anybody.  We were a
13  private family.
14      I'm going to have you start turning in the big
15  notebook now so I can guide you through some of those,
16  okay, the story about how I moved there too.  Okay?
17  You'll see pictures to the left.  That's my eldest son
18  and his children, okay, my grandchildren, which I want
19  protected.  And the picture -- the top one is my son who
20  is now 26 that lives with us.  The abrasions are on his
21  face because we were in a very traumatic accident in San
22  Francisco which caused us --
23      THE COURT:  Which tab are you looking at?
24      MS. BERNSTEIN:  I'm looking at the top one
25  right now.  Do you see that one?

Page 17

1      THE COURT:  Yes.
2      MS. BERNSTEIN:  We moved to this condominium
3  development because my father-in-law lived there and
4  because we went through two very, very traumatic
5  experiences within each other.  Okay?  We had gone
6  through that.  The child and I were nearly killed in a
7  pedestrian-vehicle accident.  Him right there, he's
8  recovering.  He's got abrasions on his face.  Okay?
9      And if you turn to the next page, you'll see
10  that as well.  We were at Scott and Bush Street on the
11  way to the daycare when a car drove right into us, and
12  it threw me 15 feet.  That's where I sustained all of
13  the injuries to the leg.
14      And we thought that he was killed on the scene,
15  the child.  Okay?  He was in a stroller that flipped
16  over.  Okay?  And I didn't even feel the injuries from
17  my leg because it was so traumatic.  I was 27 then, and
18  I was in the legal field.  I was in shock.
19      So my husband came and got the child, and then
20  I went back down to my litigation job for about an hour,
21  did a statement with my then boss, Harvey Elam.  He
22  helped me get an attorney, Lori Fisher, that died during
23  representation for me.  But I couldn't focus and I was
24  on disability for a while.  Okay?
25      So the next night -- if you turn the page,

Page 18

1  you'll see the child also walking in the hallway in the
2  big white book.  Okay?
3          THE COURT:  Just a moment.
4          MR. BERNSTEIN:  You see him?
5          THE COURT:  Yes.
6          MS. BERNSTEIN:  That's on railroad slats.
7  Okay?
8          THE COURT:  Yes, ma'am.
9          MS. BERNSTEIN:  You turn the next page, that
10  building that we were in, there was an explosion that
11  blew out our windows and nearly killed us the second
12  night.  Okay?  June 1st, we were hit by the car.
13  June 2nd, this killed three people across the street and
14  blew out our windows.  Okay?  So we were highly
15  traumatized.
16          And the next page talks about my husband giving
17  the interview in this article.  I had just taken, I
18  think, a pain pill and I was on my feet all night with
19  the child, and we were evacuated until 2:00 in the
20  morning.  It says, "Mystery Blast Kills Three in SF."
21  This was highly traumatic.
22          And so I told my husband, "We can't live with
23  here with children."  I had my older son as well from
24  the previous marriage that would come out with me at
25  times.  And I said, "We can't live here.  This is highly

Page 19

1  traumatic."
2          So he called his father-in-law that was a
3  retired engineer at Stanford that says, "I'm going to
4  look right away for a realtor.  It would be beneficial
5  for you to live here with the children than" -- you
6  know, "out of the busy city and in Meadowbrook."
7          And we'd visited there before, so we liked it.
8  It had two pools.  And they had told me because of my
9  injuries, I'm going to have very bad osteoarthritis in
10  age and that the only way to prevent that is to keep it
11  going.  Okay?
12          So I'm going to get to some more of the
13  exhibits.  The next page you'll see is my child and I in
14  the pool there.  And now we're going to get to the
15  listing of the exhibit numbers.  Okay?  And I'm going to
16  have to put on my other glasses for that.
17          The Mike Durbin guy that changed on me right
18  after that, I'm going back to when we were talking about
19  when he was outside my door, which now I realize that
20  that wasn't just by chance.  That he was there probably
21  waiting for me to talk to me, but to make it appear as
22  it was just happenstance.  So I was thrilled because I
23  thought, well, we were going to have a team of people
24  working on this.  Okay?
25          So I said, "Yes.  I've got this case.  We can

Page 20

1  all work together on it.  You know, we don't need to be
2  conquered by somebody that's telling us we have to pay
3  all of these huge amounts when we've done nothing.
4  We've seen no evidence that they even are out of money.
5  So, you know, how can we be expected to pay this?"
6          And then the next day, the tune changed.  I
7  could still walk then.  I went up the three levels to
8  his house.  I brought him, I think, something from the
9  Court or Richard Fong.  The time frame gets a little
10  shifty then.  It's probably I filed your case in April
11  or March and you heard it in April, protective order.
12  Then this is probably May or June.  I think it was May
13  because I don't think the documents were quite
14  requested.
15          But I told Michael Durbin that I had a limited
16  scope attorney and that we were in the process of
17  getting these documents since at these meetings that
18  they had and the voting sessions, the new board that was
19  running said nobody would give them any documents.  They
20  needed help.  This is where I got conscripted.
21          So my husband said, "Well, we'll file a case."
22  She knows how to do all of this stuff."
23          And so that's what -- everybody said, "Yes,
24  yes."  A lot of them, a large number.
25          And I said, "Yes, I'll get them.  I know how to

Page 21

1  get them, but it's got to be by subpoena.  They're
2  supposed to give them, according to the Civil Code
3  section, but if they won't, then we can subpoena all of
4  the things that we need to find out to save our homes."
5          And they were all agreeable.  But the tune
6  changed when I went upstairs, when I saw a different
7  side of him.  There was a DHL man that was coming to
8  deliver something.  And he thundered down the stairs
9  barefoot, and he said he loves a good fight, and he
10  yelled at this man.  And suddenly, I became fearful of
11  him.
12          And he had gone back up.  Where I was standing
13  -- this is a big biker man.  This is, like, 6' 7", okay,
14  guns and everything.  And so this was frightening to me,
15  this, "I love a good fight."  He had a wife in there,
16  and then he had told the wife, he said, "I'm almost done
17  with her" about me.  And so I -- I'm sorry.
18          THE COURT:  That's okay.  Can I interrupt you
19  for a second?
20          MS. BERNSTEIN:  Yes.
21          THE COURT:  Just because I understand and --
22          MS. BERNSTEIN:  I'm going to show the fact that
23  they've lied about stuff on some of these things.
24          THE COURT:  Well, here's what I need to know,
25  because today's proceeding is really much narrower than

**Page 22**

```
 1  all the merits of the things that you're telling me.
 2       MS. BERNSTEIN:  Right.  Okay.
 3       THE COURT:  Obviously, you've provided me with
 4  a letter, and I just want to make a record of the date
 5  and so forth of the letter.  This is a letter dated
 6  October 7, 2019, from Shai, S-H-A-I, T-S-U-R.  And this
 7  is regarding -- this particular person is one of your
 8  mental health therapists.  And I read that letter.  I've
 9  also seen a letter in your binder which is Exhibit G to
10  your binder, which is a letter dated August 26th.
11       MS. BERNSTEIN:  Let me go to G so I can
12  remember it.
13       THE COURT:  Yes, ma'am.
14       MS. BERNSTEIN:  That's why I need the books
15  here.  Thank you.
16       THE COURT:  August 26, 2019, also from the same
17  person, Shai --
18       MS. BERNSTEIN:  Yeah.  I think it's --
19       THE COURT:  -- T-S-U-R.  This is a letter to
20  both Judge Brand and to myself.
21       MS. BERNSTEIN:  Uh-huh.
22       THE COURT:  And describing, again, some of your
23  symptoms and explaining your condition to me.  And
24  that's helpful.  There's also -- and I've been looking
25  through some of the other exhibits that you've provided
```

**Page 23**

```
 1  which include some of your medical records and so forth.
 2  I want to just finish one thing.
 3       And the issue is:  What I'm trying to figure
 4  out today, as I indicated in my ruling, is what period
 5  of time I should extend the stay.  And based on the
 6  letter I see from -- I apologize.  I don't know how to
 7  pronounce it.
 8       MS. BERNSTEIN:  Shai Tsur.
 9       THE COURT:  Tsur.
10       MS. BERNSTEIN:  Yes.
11       THE COURT:  -- from Shai Tsur of October the
12  7th.  And I can't -- is Shai a man or a woman?
13       MS. BERNSTEIN:  He's a man.
14       THE COURT:  He's a man.  I want to use the
15  right pronoun.  He indicates, and I'm just going to read
16  a portion of the letter into the record.  It says, "It
17  is my opinion that a stay from all legal proceedings for
18  at least six months would allow Mary time for both
19  medical and mental health rehabilitation."  And that's
20  what he's indicated in his letter.
21       So that's what I needed to understand because
22  you need -- I want you to understand, I need -- I can
23  grant these proceedings, but I have to check in from
24  time to time.  I can't grant you an indefinite stay.  I
25  can't grant an indefinite stay.
```

**Page 24**

```
 1       And so it's just something you need to
 2  understand.  If he says that -- based on his letter that
 3  six months is the appropriate time period for this next
 4  stay, then that's probably what I'll do because now I
 5  have a basis because he's obviously familiar with your
 6  condition and has indicated that he believes six months
 7  is the appropriate time frame.
 8       So my intention, Ms. Bernstein, would be to go
 9  ahead and grant a further stay for the six months, set a
10  hearing in six months to have you come back, and we'll
11  see where you are at that time.  And that will give you
12  time to work with him on your therapy, and then we can
13  deal with it at that time.
14       I do want you to understand that because you
15  are the plaintiff in the case and you brought the case
16  and you also have legal training from your history, you
17  understand that it's important for me to monitor the
18  progress of the lawsuit.
19       MS. BERNSTEIN:  Yes.
20       THE COURT:  And that I can't -- I'm going to
21  have to check in with you from time to time to see how
22  you're doing, see how it's progressing.
23       The defendants in the case also have rights and
24  they have rights -- you know, I can't let the stay go
25  forever, but I can let it go -- I can take periodic
```

**Page 25**

```
 1  assessments and see where it's going.  You have to
 2  understand that at some point, you know, the defendants
 3  are also entitled to have -- they have due process
 4  rights as well, and they're entitled to have the
 5  proceeding, you know, move ahead.
 6       But I feel comfortable that I can grant the
 7  stay for an additional six months and then we'll pick it
 8  up at that time.
 9       Yes, ma'am?
10       MS. BERNSTEIN:  Yes.  Okay.  That's fine.  But
11  there's other stuff I want to cover.  And that's fine.
12  I'm very grateful.  Okay?  What I want is for it to be
13  spelled out.  Because they didn't let me have six months
14  to rehabilitate.  They aggravated me.
15       And there's a subpoena now for the John Gibson
16  matter for the WhatsApp because I learned through -- and
17  I sent you pictures of the gentleman that was disabled,
18  okay, and some other people that have come forward that
19  told me that this is circulating, and that's why it was
20  -- trying to gaslight me.  When I go out to get a walk,
21  people are looking and texting and all of that, which is
22  messing with my head.  Okay?
23       So the thing is:  I need the order this time to
24  spell it out to them that that means to leave her alone.
25  Okay?  I don't want to have to do restraining orders.  I
```

Page 26

1  want these people to stay away from me.  And it's clear
2  that they're directing them to do some of this with the
3  WhatsApp.
4        So with the Michael Durbin, the John Gibson,
5  the Susan Candell, and the Mark Simonson, they are very
6  aggressive people.  But other people have aggravated,
7  and I can't do things about them, but I don't want these
8  people pestering me.  That means just let me be.  We
9  don't socialize with any -- my husband is disabled which
10  is why he's not here.  My son is desperately trying to
11  finish his computer science.  He was impaired in this
12  accident.  That's why it's taken him until 2016 to get
13  that done.
14        But, again, I love that son.  And he's stressed
15  out and they are very stressed out from this.  So I
16  don't know how you can spell it out in the order that
17  this means a stay for me to be able to rehabilitate.  If
18  they aggravate me, we're going to be right back here
19  again.  Okay?
20        And for the Luanne Rutherford, defense counsel,
21  to imply that I'm doing this to string it along when I'm
22  the one that very aggressively got discovery going in a
23  year and a half, did so much work, substantive work, to
24  get this done before my health failed, okay, or
25  terrorizing me, I don't point out the fact that she has

Page 27

1  multiple aliases or that she has bad credit, so she
2  shouldn't be attacking me for my disability.  Okay?
3        So I just want -- with the stay being
4  granted, I want the caveat, something about the order
5  that this means that they're not to bother me.  Luanne
6  Rutherford, also in that hearing, brought it up to the
7  judge that I was perfectly capable because I was issuing
8  tenancy requests.  Okay?
9        And I've explained to these people, because
10  they retaliated on me immediately.  When you were
11  gracious enough to give me that order last time and we
12  had the understanding, I gave you transcripts of that.
13  It was that, yes, if they let me rehabilitate, and my
14  exercise in the pool and everything, then that will help
15  me because we didn't know what my new baseline was going
16  to be since my knee fell.  They immediately retaliated.
17        I sent you a copy of that e-mail dated
18  April 16th.  Our hearing was April 11th.  I forgot that
19  there were two different pools, and one had a step and
20  one didn't.  Okay.  And because my leg had become so
21  weakened from the stress with my mother and from not
22  utilizing it, I had stated to them, "Please, just switch
23  over to the other one heated.  It doesn't have a step.
24  Okay?  It's very difficult for me to leave it."
25        And they either feigned ignorance or were being

Page 28

1  spiteful and said, "No, we're not going to accommodate
2  you because you got a stay and you asked for the stay,
3  so deal with it."
4        Then that came further.  Even though we're
5  paying for assessments, we've been ignored.  She brought
6  that up in the hearing.  She said, "She's well enough.
7  She's e-mailing people about tenancy requests" because I
8  said, "It may come to the point where I may need a
9  ramp."  Okay?  Because there's three steps at my door
10  and I don't know if I'm going to further depreciate, if
11  this is my new baseline.  We don't know.  We're trying
12  to gauge that.
13        And nothing -- I'd heard that they were going
14  to look into it.  And I asked them, I said, you know,
15  "Is there easements," or whatever the documents, they
16  didn't get back to me.  She again pointed me out to that
17  judge, darkening the waters.  I never even got to say a
18  word in that hearing.  It wasn't heard, but it was
19  continued, but the judge was trying to get a feel for
20  it.  Ben Tram (phonetic) something or other, that was
21  the judge.
22        And she was portraying me as somebody that
23  targeted this innocent huge biker for no reason, and
24  that if I was well enough to e-mail tenancy requests,
25  then I could handle all of these cases without problems.

Page 29

1  The tenancy is completely separate from the litigation.
2  The medical things and I need a ramp, that doesn't have
3  anything to do if I have a stay or not.  If I need to
4  use the pool without a step, that has nothing to do with
5  -- and I should not been penalized for getting a stay
6  because my health deteriorated.  I cannot help that.
7        THE COURT:  Here's what I want you to
8  understand.  I don't have unlimited jurisdiction.
9        MS. BERNSTEIN:  I understand.  Okay.
10        THE COURT:  My jurisdiction is over this
11  particular case and the proceedings in this particular
12  case.
13        MS. BERNSTEIN:  Right.
14        THE COURT:  I don't have jurisdiction over
15  those individuals that you've named.
16        MS. BERNSTEIN:  Okay.
17        THE COURT:  I don't get to tell them what they
18  can and can't do.
19        MS. BERNSTEIN:  So that's why we have that,
20  then, for those judges, okay, the restraining orders.
21        THE COURT:  So you need to understand all I can
22  do is give you relief from having to deal with discovery
23  and so forth in this case.
24        MS. BERNSTEIN:  Okay.
25        THE COURT:  And, of course, then I'm going to

Page 30

1  have to check back with you periodically to see how
2  you're doing.
3          MS. BERNSTEIN:  Right.
4          THE COURT:  And then, you know, you also
5  understand that the lawsuit can't -- you know, I don't
6  know what's going to happen in the future.  I'm going to
7  just take it one step at a time.
8          MS. BERNSTEIN:  Well, that's all I can do too.
9          THE COURT:  Right.  But you understand that at
10  some point, you know, the defendants are also entitled
11  to due process, and they're entitled to not have this
12  lawsuit on the books and have me tell them that they
13  can't bring any motions, they can't --
14          MS. BERNSTEIN:  I understand.
15          THE COURT:  Do you see what I'm saying?
16          MS. BERNSTEIN:  I do.
17          THE COURT:  At some point, you know, you're
18  going to need to try to make other arrangements, maybe
19  to have someone help you with the lawsuit.  I'm not
20  saying this has to happen right now.
21          MS. BERNSTEIN:  You saw about Kevin Horan too,
22  the medical conditions; right?  You saw that; correct?
23          THE COURT:  Yes, but I want you to understand
24  that at some point, you need to be starting to think
25  about maybe can you get some help so that you --

Page 31

1          MS. BERNSTEIN:  I understand.
2          THE COURT:  -- can just become a party and not
3  necessarily the party --
4          MS. BERNSTEIN:  Well, I understand.
5          THE COURT:  The person that's driving the whole
6  thing.
7          MS. BERNSTEIN:  Right.  And I understand that.
8  And that's what we were doing with Kevin, and another
9  trial attorney is going to come on later.  So that's
10  exactly what we were doing.  Okay?
11          But, again, if they don't allow me to even
12  gather my wits, this was all stuff I had no control
13  over, and I understand it, but they do have control.  I
14  have been diplomatic and civil and they can likewise be
15  that.  They are "the Board," and they can tell the
16  people, which I wrote to the property manager which is
17  the mouthpiece for the Board to stop having people
18  bother me.  Stop trying to get me to dismiss the case
19  like a mafiosi or thugs.  Okay?  This is going to go
20  through a process.  Okay?  I have a constitutional right
21  for a lawsuit, okay, and it's going to be done.
22          So if you keep aggravating me, if the man, the
23  TRO, the gentleman was driving in his truck after me
24  waving "bye, bye, bye," by mocking me, and the walker
25  and all of this, this messes with my head.  This is the

Page 32

1  president of the Board.
2          So that is traumatic.  I've been hit by a
3  vehicle in -- there, you've read it.  I was beaten for
4  four years by my stepfather, thrown against walls.
5  People upstairs slamming furniture, I understand.  Okay?
6  But these are my conditions.  And living in this, okay,
7  and not even being able to think or even put my thoughts
8  together to call, to meet someone, okay, I can't.  And
9  it's a very primitive, Neanderthal way to operate.
10  Okay?
11          And I realize that this president of the Board
12  is only a mechanic, but he's got some sense because he
13  works for the United States postal office and they have
14  harassment training, sexual harassment training, all of
15  it.  I worked for the federal government as a clerk.
16  I've also, you know, been in the private sector.  And
17  any big companies -- everybody knows what it is.
18          And if you didn't spell it out, first of all,
19  he knew that I was uncomfortable with him in front of my
20  place because of how his tune changed.  I went all the
21  way out of the way to avoid you.  He said, "I am going
22  to be here a lot, so get used to it."  I don't have to.
23  I'm not that child again.  I don't have to have people
24  touching me, on me, touching my property anymore without
25  some type of pushback or consequences.  I don't have to.

Page 33

1  Okay?
2          And when he's driving around and I'm not
3  smiling or waving, and you see the terror on my face, he
4  knows what he's doing to me.  And so out of complete
5  frustration because it wasn't enough, the body language,
6  the words, I had to do this.  Okay?
7          And with the defense counsel acting --
8  vilifying me, stating that she brought this because of
9  absolute terror, this man has four guns.  The other one
10  on the other side has guns.  They're looking at me.
11  They're glaring at me because they're upset or they've
12  been fed disinformation about this case or what have
13  you.  They can all do whatever they want regarding their
14  property.  I have a right to investigate and protect my
15  own.  And I don't have to defer to these people there.
16          THE COURT:  All right, ma'am.  Well, I
17  understand, but as I said earlier --
18          MS. BERNSTEIN:  I understand.
19          THE COURT:  -- I don't have unlimited
20  jurisdiction --
21          MS. BERNSTEIN:  I understand.
22          THE COURT:  -- to tell people, you know, to
23  stay away and so forth.  Those are things, as you
24  understand, you can try to seek that relief in other
25  types of proceedings.  It's not part of this lawsuit.

Page 34

1    MS. BERNSTEIN:  No, it's not.
2    THE COURT:  The best I can do --
3    MS. BERNSTEIN:  I understand.
4    THE COURT:  -- right now is to grant your stay
5  for an additional six months.
6    MS. BERNSTEIN:  Yes.
7    THE COURT:  Let's set up a hearing time for you
8  to come back six months --
9    MS. BERNSTEIN:  Perfect.
10    THE COURT:  -- and see where we are.  Okay?
11  That's the best I can do for you today.
12    MS. BERNSTEIN:  I understand.  And you saw --
13    MR. WILLIAMS:  Your Honor.
14    THE COURT:  Just a moment, Counsel.
15    MR. WILLIAMS:  Your Honor --
16    THE COURT:  Just a moment, Counsel.
17  Ma'am, he can't see me.
18    MS. BERNSTEIN:  I have one more thing.
19    THE COURT:  And I'm going to let you say one
20  more thing, but I want him to understand I'm going to
21  let you finish that, and then I'm going to hear from
22  him, and then we're going to move forward.
23    What is the additional one thing you wanted to
24  tell me?
25    MS. BERNSTEIN:  They misunderstood -- I wasn't

Page 35

1  certain how to do this because even though I worked in
2  the legal field, I didn't do every single legal
3  procedure or what have you.  Okay?
4    So with the stay, because I wanted to get my
5  CMC filed and let everybody know what I was going to be
6  doing rather than the element of surprise here,
7  disappearing on the 7th, Monday, and just saying, "Hey,
8  I'm going to need six more months," I wanted to let
9  everybody know to give them their chance to oppose it.
10  Okay?
11    And also, I mentioned then -- and like I said,
12  I am disabled, but I was letting them know that I'm
13  moving for a motion to amend the complaint.  Okay?  I
14  will be incorporating these people in this.  That's not
15  today, but we can set up that time frame if you wanted
16  to today, or we can come back and set that up.  But
17  hopefully, they let me have my rest, I'm able to
18  recover, and we move like lighting speed next time when
19  I come back.
20    And so I'm going to be amending that complaint,
21  though.  That's probably the first order of business
22  because then they're going to be able to also do more
23  discovery or whatever they want to do, file an answer
24  with that.  But that is the first thing.  That these
25  four people are being added to that and one other

Page 36

1  person.
2    So that is not being heard today.  And I
3  understand the procedures about the proposed amended --
4  I mean, the proposed amended complaint.  And so all I
5  was merely letting the Court know and them know is:
6  This is what's going to be in the works.  Of course, I
7  haven't written that yet.  That will be written.  Okay?
8    But, yes, I'm going to need time to do that,
9  and that's not going to be done during the six months
10  rehabilitation.  But I'm looking at that filing -- if
11  you're going to be granting until, say, June the
12  parameter of time for this stay, then probably July or
13  August, I would probably submit that amended complaint
14  immediately thereafter.
15    THE COURT:  Let me hear from counsel for the
16  defendants.  Go ahead, Counsel.  And, Counsel, just
17  speak up and speak slowly so the court reporter can get
18  a full record of what you want to tell me.
19    MR. WILLIAMS:  Yes.  Thank you, Your Honor.
20    So I just need to point out several of our
21  grounds for our stringent objections that we have to
22  continuing the stay in this matter.
23    First of all, we are unable to fully evaluate
24  the grounds on which the plaintiff is contending that
25  she needs a stay if we are not provided with the

Page 37

1  evidence that she has submitted.  And we understand that
2  this is medical information or includes medical
3  information, but this lawsuit includes claims that
4  directly relate to the same type of medical information
5  and which are going to be explored and need to be
6  explored in discovery.
7    So as we are inevitably going to be getting
8  into these issues, it's unreasonable for us to be unable
9  to see all of the grounds upon which plaintiff is asking
10  for a stay.
11    THE COURT:  Let me ask you a question about
12  that.  I'm taking notes.  And I'm looking through the
13  file, but perhaps you can tell me, has a protective
14  order been issued in this case?  Have you requested a
15  protective order that would allow for the sharing, you
16  know, of certain kinds of confidential information
17  within the context of a court proceeding?
18    MR. WILLIAMS:  Have we filed a protective
19  order?  Is that your question, Your Honor?
20    THE COURT:  Well, yeah.  It's not so much
21  sought one, but the idea is -- you know, when a case
22  involves confidential information, one of the things the
23  parties can do is prepare an appropriate protective
24  order that governs the information that is part of the
25  case process.

Page 38

1    And so I'm wondering whether that's something
2  -- I don't recall any such order has yet been requested
3  or entered in this case.  And I'm asking you if you are
4  aware of whether one has been entered in this matter.
5    MR. WILLIAMS:  Not to my knowledge.  However,
6  my understanding is that the plaintiff has filed a
7  motion for a protective -- per the Court's docket that
8  I'm looking at on the computer, it looks as if plaintiff
9  filed for a protective order back in February, but we
10  were never served with any papers about a protective
11  order.  If that was what that was for, then that is why
12  I'm unaware of it.
13    But I don't know if that was for that purpose
14  or for another purpose.  I would have imagined that had
15  to do with the discovery dispute that we were in before
16  the initial stay was initiated.
17    THE COURT:  Yeah.  I'm talking about -- I
18  understand.  I'm talking more about --
19    MR. WILLIAMS:  Sure.
20    THE COURT:  -- a protective order that just
21  governs potentially confidential information and so
22  forth that could be shared throughout the proceeding,
23  not a protective order prohibiting some particular
24  individualized form of discovery.
25    All right.  You've answered my question.  I'll

Page 39

1  let you continue.  I've got point number one, and you
2  may continue.
3    MR. WILLIAMS:  Thank you, Your Honor.
4    We are also, as the stay continues, as this
5  case continues, the defendants and the members of the
6  defendant homeowner association are severely prejudiced
7  insofar as they are unable to secure things like
8  financing.  Both Fannie Mae and Freddie Mac won't
9  provide financing for residences in litigation such as
10  this.  And they have to disclose to any potential buyers
11  that there is litigation going on, which causes a
12  significant chilling effect on the ability to sell their
13  property.
14    And the fact that this matter has been stayed
15  and that Your Honor has indicated a willingness to
16  continue staying it causes serious prejudice and
17  hardships to the membership who are unable to do these
18  things because we are unable to get the case resolved.
19    THE COURT:  Let me ask you about that because I
20  saw that in your papers, but all I really saw was
21  argument about that.  I didn't really see any facts or,
22  you know, evidence of things that have actually happened
23  or problems that have arisen as a result of litigation.
24    I understand the position from sort of a -- you
25  know, from an argumentative standpoint as to -- that

Page 40

1  sounds like an argument regarding prejudice, but I
2  haven't actually seen you guys provide me with any
3  factual support for that particular claim.
4    So do you have any factual support for that;
5  and if so, can you get it ready so that I can consider
6  it the next time she requests a further stay?
7    MR. WILLIAMS:  We can absolutely go and seek
8  the factual support that you're asking for from the
9  membership.
10    THE COURT:  So what I'm hearing you tell me is:
11  You're confirming what I understood from reading the
12  papers, which is:  You really don't have -- you haven't
13  yet presented me with any actual factual support to
14  support that claim.
15    MR. WILLIAMS:  We do not yet have, for example,
16  a declaration from members saying that they have
17  attempted and been unable to do this.  However, we are
18  aware that this is something that cannot occur as a
19  general matter.
20    THE COURT:  All right.  I understand.
21  Continue.  What's your next argument?
22    MR. WILLIAMS:  Additionally, it is -- it seems
23  clear to us that the plaintiff has been able to take
24  steps in furtherance of the litigation or issues related
25  to the litigation notwithstanding the stay.  For

Page 41

1  example, as she stated, she's filed for multiple
2  restraining orders and put together paperwork related to
3  those restraining orders and attended hearings related
4  to those restraining orders.  She's also sent written
5  requests to the HOA and property manager seeking to
6  review documentation and to get answers regarding how
7  decisions are made.  These sorts of issues and filings
8  seem to clearly demonstrate that plaintiff is able to
9  participate to a significant degree in the litigation
10  process, and we think undermines the claim that a stay
11  is necessary at this point in time.
12    Furthermore, from the fact that plaintiff is
13  also filing to seek to amend the complaint, that's
14  another thing that she seems perfectly able to do, but
15  now claims that there needs to be a stay.  And it seems,
16  I guess, implicitly -- to imply that the stay should not
17  encompass this particular motion, just everything else.
18    THE COURT:  That's not what she said.  She said
19  she's giving me a preview of what she expects to happen
20  in the future.  She hasn't said she's seeking leave to
21  amend her complaint now.  She hasn't even prepared the
22  proposed amended complaint.  And I think she understands
23  that she can't have her cake and eat it too.  In other
24  words, have a stay and also prosecute the lawsuit
25  herself during the period when the stay is ongoing.

**Page 42**

1   With regard to your statements regarding her
2   request for restraining orders and so forth, what she's
3   told -- first of all, those proceedings are not before
4   me and they're not part of anything I'm going to be
5   issuing an order on.  But as you heard her express
6   herself this morning, her belief is that contacts from
7   certain folks on the Board and so forth are preventing
8   her from receiving the benefit of the stay that I've
9   granted up to this point.  In other words, allowing her
10  to rehabilitate her symptoms and so forth as she moves
11  forward.
12      So that's what she's telling me.  Now, I'm not
13  making any findings and I'm not making my ruling on the
14  stay based on those statements by her because those are
15  not before me in this proceeding, but what I've heard
16  her say is that she believes that the conduct of some of
17  these folks is tending to exacerbate her symptoms and
18  not allowing her to recover from the symptoms that she's
19  been experiencing.
20      So, you know, I have no control over -- I don't
21  have control over those folks because they're not before
22  me and those issues are not presented here in this case
23  nor do I have any basis to preclude her from seeking
24  other relief from, you know, other means, including
25  restraining orders.  I don't have that -- those are not

**Page 43**

1   before me today.
2       But the link that you're making is one that I
3   don't agree with, which is:  You're saying, "Well, if
4   she's capable of bringing legal proceedings to try to
5   obtain restraining orders against this conduct,
6   therefore, she's capable of prosecuting this lawsuit."
7   That does not logically connect.  She's basically
8   looking at -- as the devil's advocate, she's basically
9   trying to get the people on your end to give her the six
10  months of relief that she needs to get her feet under
11  her with regard to bringing this matter forward.
12      So I'm just responding to your argument.  Go
13  ahead.  I'll turn the floor back over to you.
14          MR. WILLIAMS:  Thank you, Your Honor.
15      The last thing I'd just like to say is:  If
16  Your Honor is inclined to grant a further stay that Your
17  Honor consider a shorter period than the six months
18  requested so that we can reevaluate the situation and
19  readdress these issues sooner than six months down the
20  road.
21          THE COURT:  Okay.  Well, what's the basis for
22  that?  I've got -- the medical professional from the
23  Permanente Medical Group has told me in this letter that
24  he believes that six months is going to be the period of
25  time necessary for her to make progress with regard to

**Page 44**

1   her disabilities.  And so, you know, what factual basis
2   can you provide me to support a stay of a shorter period
3   of time?
4           MR. WILLIAMS:  Well, Your Honor, having not
5   been provided with that letter or any other
6   documentation that describes the plaintiff's factual
7   basis for this request, I confess, I'm unprepared to
8   attempt to come up with an opposing factual basis at
9   this point.
10          THE COURT:  Okay.  Well, again, you know, maybe
11  you should think about or research whether you could
12  propose that a protective order be put in place in this
13  case that would give the Court greater latitude so that
14  you could be provided with some of these matters that
15  are being presented by Ms. Bernstein.  You're going to
16  have to look up the law on that because, you know, we
17  basically have competing interests that I am going to
18  have to be focusing on.  We've got her interests, her
19  personal -- her privacy interests related to her claims
20  for disability and for accommodation and then, of
21  course, your due process rights to be provided with
22  information you need so that you can adequately advocate
23  on behalf of your clients.
24      And I respect all of those concerns.  I'm
25  thinking that perhaps some briefing, research, may need

**Page 45**

1   to be put together on your part so that the Court can
2   then hopefully, if it's appropriate, put in place a
3   protective order that will allow the Court to be able to
4   provide you and share with you some of the information
5   that she's provided to me.
6           MR. WILLIAMS:  I understand, Your Honor.  I
7   suppose my belief and understanding was:  The standard
8   is -- or the burden is on the other -- it is presumed
9   that anything that is filed with the Court must be
10  filed -- must be also presented to the other side.  And
11  then that the burden would be on the plaintiff to
12  support why something must be withheld from us and why
13  it should simply be given to the Court without -- and
14  argued upon without the benefit of our being able to see
15  it.
16          THE COURT:  Let me just --
17          MR. WILLIAMS:  As Your Honor's request --
18          THE COURT:  I was going to say, what I want you
19  to understand is and look into is that with regard to a
20  request for accommodation, certain privacy rules apply
21  that limit -- you know, they'd have to be handled --
22  specially handled.  And I'm limited -- based on my
23  understanding until you can persuade me otherwise based
24  on your own research, I'm limited in what I can share
25  with you regarding those requests, yet I still have to

Page 46

1 consider them.
2       So, again, you know, I'm not -- I'm just
3 suggesting to you that this is an area where I believe
4 research is going to need to be done because we have
5 competing interests and I'm ultimately going to have to
6 balance those interests. And so I would just suggest to
7 you you would want to look into that because I am
8 limited in what I can share with you when she provides
9 information to me as part of a request for
10 accommodations.
11      MR. WILLIAMS: I understand, Your Honor. And
12 if Your Honor wants further briefing on this issue, we
13 will certainly provide it.
14      THE COURT: Well, I think that's probably
15 something that's going to be important when we take up
16 this issue again the next time it comes up. You know, I
17 think you're going to want to look into that, and I'm
18 going to need you folks to do some research on that.
19      And maybe there's -- you know, I'm hoping
20 there's -- obviously, I'm going to have to balance the
21 interests, but I think the Court would certainly benefit
22 from research done on this particular, shall we say,
23 competing interests issue.
24      MR. WILLIAMS: Understood, Your Honor.
25      THE COURT: Okay. Is there anything else you

Page 47

1 wanted to share with me before I take the matter under
2 submission?
3       MR. WILLIAMS: I believe I've stated our
4 objections and their grounds, Your Honor.
5       THE COURT: Okay, Counsel. Thanks so much. I
6 appreciate it.
7       Yes, Ms. Bernstein, a brief reply.
8       MS. BERNSTEIN: Yeah.
9       THE COURT: Because I don't have unlimited
10 time.
11      MS. BERNSTEIN: Yes, I understand, a brief
12 reply. I'm going to go ahead and address Reshma. These
13 can be made part of the deposition. Okay -- I'm sorry,
14 the transcript.
15      THE COURT: Which parts?
16      MS. BERNSTEIN: I'm going to give these to her.
17 You haven't seen these yet, as exhibits.
18      THE COURT: Well, I just want to be sure.
19 You're asking me to -- the things you're going to hand
20 to the clerk, you want to be made part of the record and
21 put into the record?
22      MS. BERNSTEIN: I would like to. But this is
23 not medical stuff. This is property stuff. I'm
24 attacking what he's saying right now. Okay?
25      THE COURT: What part of it are you attacking?

Page 48

1       MS. BERNSTEIN: The part that he's stating that
2 the property -- they can't get anybody because of my
3 "litigation." This is the deplorable condition. And I
4 have a statement to make -- give that to you for you to
5 look at (handing), compared to what it was a few years
6 ago myself there. Thank you. It can be part of the
7 record or it doesn't have to be part of the transcript.
8 It's just for you to see. But it's not privileged. And
9 they've seen these documents before over and over.
10 Okay?
11      THE COURT: Let me just describe for the record
12 what you're giving me so Counsel can understand.
13 Basically, I'm being handed photographs of --
14      MS. BERNSTEIN: The property.
15      THE COURT: Certain aspects -- certain parts of
16 the property, areas around the pool, the chaise lounges
17 around the pool and -- let me see what else we've got.
18 Grass -- grassy areas that are dying or don't appear
19 particularly healthy and debris on pathways.
20      Basically, you know, these are things
21 suggesting that the property is not being well
22 maintained is kind of what I take from this. I'm not
23 quite sure what these other photographs are about.
24      MS. BERNSTEIN: That's me when I was younger
25 and my son there and how it was. It was very nice. I'm

Page 49

1 showing you what it looked like.
2       THE COURT: Oh, okay. So in contrast, she's
3 provided some photographs showing --
4       MS. BERNSTEIN: The property.
5       THE COURT: -- the property some years ago when
6 it was in better condition.
7       I'm not sure that I need these right now,
8 ma'am.
9       MS. BERNSTEIN: You may not.
10      THE COURT: I understand the point you're
11 making, but he's making a different point. His point is
12 that the lawsuit -- the existence of the lawsuit creates
13 issues that might make it, might, and I'm emphasizing
14 the word "might," might make it difficult or affect
15 people's ability to sell or otherwise. But that's not
16 really before me today.
17      MS. BERNSTEIN: Right. I understand.
18      THE COURT: I'm not going to get into that.
19      MS. BERNSTEIN: I'm just attacking -- I'm
20 rebutting what he said, and I'll make it very brief.
21      So that's that. Okay. There are patios that
22 are completely missing. The new board, they've "had
23 this money for about two years." None of it has been
24 done. There's one building that's been worked on. So I
25 don't buy that and that's not it at all. And I have a

**Page 50**

1  right to a lawsuit, number one.
2  The protective order you're talking about,
3  absolutely, because this is why in the John Gibson case,
4  I had to subpoena because there's stuff circulating
5  about me with the WhatsApp. The last thing I want is my
6  private medical things circulated and discussed.
7  Everybody already knows a lot, but I want some modicum
8  of privacy left.
9  The fire sprinklers, I called because the
10  TRO -- they had stated that that never even happened.
11  So I called NorCal. They said -- again, with the
12  urgency, why they made me go through and other people go
13  through that inspection under threat of a 250-dollar
14  fine with Mike Durbin, that it had to be done
15  immediately. None of those repairs have been done for
16  almost two years.
17  THE COURT: Ma'am, he didn't bring that up. I
18  need you to focus on whatever arguments he made that you
19  want to rebut.
20  MS. BERNSTEIN: He mentioned about the tenancy
21  things, that that means that I'm perfectly able to be an
22  attorney, to come into court all the time with things
23  just because I'm asking for a ramp or tenancy things.
24  No, I'm not. Okay? I'm not catatonic just because I am
25  disabled. Okay? I'm still able to communicate and

**Page 51**

1  function, but I can't function of that -- what I
2  normally can and under the stress. That's why I don't
3  work as a paralegal or an advocate anymore because I
4  can't do it all of the time. I can do one day with you
5  here, and this is very traumatic, and then it's going to
6  be three days of dealing with nothing.
7  So, again, for them to say well, because she's
8  breathing or she's doing this, then she certainly can do
9  all of this fine, I'm allowed to file a complaint. When
10  I worked in the legal field, I would see sometimes
11  attorneys filed 16 amended complaints, okay, and so on
12  and so forth. So that's neither here nor there. I'm
13  entitled to that.
14  There's a pattern of abuse with them. I've
15  sent them a copy of the protective order they talked
16  about. And then, like you talked about, this Drew
17  gentleman is doing the same thing that Luanne tried to
18  do when you granted the order last time. Let's give her
19  the stay but with the caveat that she could be working
20  during the stay. She wanted to do discovery during the
21  stay. How is that mentally recuperating?
22  And he -- "Well, why can't we work around
23  that?" Not really six months, but six months. "Okay.
24  She got a stay, but then she'll do depositions and
25  she'll do this and that." And, again, I didn't want to

**Page 52**

1  have to do any of this. The last thing I like is coming
2  into court with any of it.
3  So to make it seem like this is something that
4  I just decided to have four restraining orders, I had to
5  do these things. I had to deal with the Kevin Moran
6  matter to get another attorney. Okay? These are things
7  I had to do. They're statute of limitations. So,
8  again, this is something that he's failing to understand
9  or won't. Or the insensitivity towards the disabled
10  with the Board and the defense counsel is just
11  objectionable, really. Okay?
12  THE COURT: All right. Thank you, ma'am.
13  MS. BERNSTEIN: It really is.
14  THE COURT: I appreciate everyone's arguments.
15  I'm prepared to take the matter under submission. My
16  inclination is to grant the stay for the further six
17  months, and I'll set out a hearing date in the future.
18  Let me do the math in my head briefly, ma'am.
19  We're talking -- let me pause for a moment. We're
20  really talking about March would be the next time I'd
21  probably see you. March or April would be six months
22  from now.
23  MS. BERNSTEIN: This is October.
24  THE COURT: This is October. So if we go
25  November, December, January, February, March, April, six

**Page 53**

1  months. So I would set a proceeding in April.
2  And then in the meantime, I'm happy for folks
3  to research and provide the Court with a proposed
4  protective order that would govern the confidential
5  information that needs to be provided in the course of
6  the litigation so that we can take care of that issue
7  and --
8  MS. BERNSTEIN: For attorneys' eyes only or
9  something?
10  THE COURT: Well, you've seen them before and
11  there's model ones --
12  MS. BERNSTEIN: I'm not going to do it. They
13  can draft that.
14  THE COURT: Well, I understand, but it
15  obviously needs to be customized to take into account
16  the issues that are involved in this particular
17  proceeding.
18  MS. BERNSTEIN: Right. Exactly.
19  THE COURT: Okay, folks. I want to thank you
20  all for your arguments. I appreciate them very much.
21  I'm taking the matter under submission, and I will issue
22  an order in the next day or so.
23  Thank you.
24  MS. BERNSTEIN: Thank you.
25  (Proceedings concluded at 11:12 a.m.)



Page 54

REPORTER'S CERTIFICATION

1

2

3       I, Sheila Pham, a Certified Shorthand Reporter, do

4   hereby certify:

5       That the foregoing proceedings were taken before me

6   at the time and place therein set forth, that the

7   proceedings were reported stenographically by me and

8   were thereafter transcribed under my direction and

9   supervision, and that the foregoing pages contain a

10  full, true and accurate record of all proceedings and

11  testimony to the best of my skill and ability.

12      In witness whereof, I have subscribed my name.

13

14

15  Dated:

16

17

18

19

20              Sheila Pham
                CSR No. 13293

21

22

23

24

25

---

**1**

**10:06** 3:2

**11:12** 3:2 53:25

**11th** 27:18

**14** 12:16

**15** 5:10 17:12

**16** 51:11

**16th** 27:18

**18** 12:7,17

**1st** 18:12

---

**2**

**2010** 9:13

**2015** 8:14

**2016** 26:12

**2017** 13:5 14:16

**2019** 3:1 22:6,16

**20th** 13:2,4 14:16

**24th** 10:15 13:6 14:14

**250-dollar** 50:13

**26** 16:20 22:16

**26th** 22:10

**27** 17:17

**2:00** 18:19

**2nd** 18:13

---

**3**

**33** 13:7,17

---

**6**

**6' 7"** 21:13

---

**7**

**7** 22:6

**70** 13:8,18

---

**7th** 7:13 23:12 35:7

---

**9**

**9** 3:1

---

**A**

**A-S-S-O-C-I-A** 3:8

**a.m.** 3:2 53:25

**ability** 39:12 49:15

**abrasions** 16:20 17:8

**absolute** 33:9

**absolutely** 40:7 50:3

**abuse** 51:14

**abused** 15:20

**accident** 16:21 17:7 26:12

**accommodate** 28:1

**accommodation** 44:20
  45:20

**accommodations** 46:10

**account** 53:15

**accountability** 12:18

**acrimonious** 11:15

**acting** 33:7

**action** 4:1

**activism** 10:18

**actual** 40:13

**added** 35:25

**additional** 25:7 34:5,23

**Additionally** 40:22

**address** 8:19 47:12

**adequately** 44:22

**ADHD** 8:6

**advocate** 9:9 43:8 44:22
  51:3

**affect** 49:14

**African** 7:24

**afternoons** 7:15,17

---

**age** 19:10

**aggravate** 26:18

**aggravated** 25:14 26:6

**aggravating** 31:22

**aggravation** 5:4

**aggressive** 26:6

**aggressively** 26:22

**agree** 43:3

**agreeable** 21:5

**ahead** 24:9 25:5 36:16
  43:13 47:12

**aliases** 27:1

**allowed** 51:9

**allowing** 42:9,18

**ally** 10:7

**amend** 35:13 41:13,21

**amended** 36:3,4,13 41:22
  51:11

**amending** 35:20

**amounts** 20:3

**analysis** 14:18

**angry** 10:16 15:25

**answers** 41:6

**anymore** 32:24 51:3

**apologize** 8:16 23:6

**appearance** 3:14 11:21

**appearing** 3:17

**apply** 45:20

**appointed** 9:17

**April** 20:10,11 27:18 52:21,
  25 53:1

**area** 46:3

**areas** 48:16,18

**argued** 45:14

**argument** 39:21 40:1,21
  43:12

**argumentative** 39:25

**arguments** 50:18 52:14
  53:20

---

**arisen** 39:23

**arrangements** 30:18

**article** 18:17

**aspects** 48:15

**assaults** 8:5

**assessment** 13:6

**assessments** 10:12 25:1
  28:5

**Associa** 3:7

**association** 39:6

**attacking** 27:2 47:24,25
  49:19

**attempt** 7:21 44:8

**attempted** 40:17

**attended** 41:3

**attorney** 3:17 17:22 20:16
  31:9 50:22 52:6

**attorneys** 51:11

**attorneys'** 53:8

**August** 22:10,16 36:13

**automatically** 14:3,4

**avoid** 32:21

**awarded** 9:10

**aware** 38:4 40:18

---

**B**

**back** 5:6 7:25 8:15 10:17
  12:24 14:9,15 17:20 19:18
  21:12 24:10 26:18 28:16
  30:1 34:8 35:16,19 38:9
  43:13

**bad** 19:9 27:1

**balance** 46:6,20

**ball** 15:11

**barefoot** 21:9

**Barisciano** 9:6

**based** 23:5 24:2 42:14
  45:22,23

**baseline** 27:15 28:11

basically 43:7,8 44:17 48:13,20

basis 24:5 42:23 43:21 44:1,7,8

beaten 32:3

begin 7:3

behalf 3:18 44:23

behold 15:15

beholden 11:8

belief 42:6 45:7

believed 10:14

believes 24:6 42:16 43:24

Ben 28:20

beneficial 19:4

benefit 42:8 45:14 46:21

Bernstein 3:4,5,7,9,11,20, 22 4:6,11,14,23 5:15,17,24 7:10,14 13:5 16:24 17:2 18:4,6,9 21:20,22 22:2,11, 14,18,21 23:8,10,13 24:8, 19 25:10 29:9,13,16,19,24 30:3,8,14,16,21 31:1,4,7 33:18,21 34:1,3,6,9,12,18, 25 44:15 47:7,8,11,16,22 48:1,14,24 49:4,9,17,19 50:20 52:13,23 53:8,12,18, 24

big 11:5 16:14 18:2 21:13 32:17

biker 21:13 28:23

binder 6:4 22:9,10

bit 8:2 16:7

black 9:4

blame 12:21

Blast 18:20

blew 18:11,14

board 8:24 9:11,17,23 10:4,9,10,12 11:4,23 12:3, 4,9,16 13:21 14:10 20:18 31:15,17 32:1,11 42:7 49:22 52:10

body 33:5

book 18:2

books 22:14 30:12

boss 11:6 17:21

bother 27:5 31:18

bothered 11:25

bought 13:17

Brand 22:20

break 5:11

breaks 5:9

breath 7:6

breathe 5:21

breathing 51:8

briefing 44:25 46:12

briefly 52:18

bring 30:13 50:17

bringing 43:4,11

brought 20:8 24:15 27:6 28:5 33:8

buddy-buddy 16:12

building 18:10 49:24

burden 45:8,11

Bush 17:10

business 35:21

busy 9:7 19:6

buy 49:25

buyers 39:10

bye 31:24

---

**C**

cake 41:23

California 3:1,7,8

call 3:6 32:8

called 19:2 50:9,11

calling 3:7 15:25

cameras 15:18

Candell 12:10 26:5

capable 27:7 43:4,6

capacity 11:7

car 17:11 18:12

care 53:6

career 8:10

carport 9:18

case 6:16 8:21 11:22 19:25 20:10,21 24:15,23 29:11, 12,23 31:18 33:12 37:14, 21,25 38:3 39:5,18 42:22 44:13 50:3

cases 28:25

catatonic 50:24

catch 7:6

cats 16:11

caused 13:13 16:22

caveat 27:4 51:19

census 8:15,25 9:13

chaise 48:16

chance 3:20 19:20 35:9

change 4:4

changed 19:17 20:6 21:6 32:20

Charlie 12:6,17

check 23:23 24:21 30:1

chess 12:20

child 8:5,7 14:2 15:20 17:6,15,19 18:1,19 19:13 32:23

childhood 8:4

children 16:18 18:23 19:5

chilling 39:12

circulated 50:6

circulating 25:19 50:4

circumstances 4:3

city 14:19 19:6

civil 21:2 31:14

claim 40:3,14 41:10

claimed 14:9

claims 37:3 41:15 44:19

clear 26:1 40:23

clerk 4:10 32:15 47:20

clients 44:23

CMC 35:5

Code 21:2

comfortable 25:6

commit 15:13 16:4

communicate 50:25

companies 32:17

compared 48:5

competing 44:17 46:5,23

complaint 6:21 10:10 35:13,20 36:4,13 41:13,21, 22 51:9

complaints 51:11

complete 33:4

completely 13:14 29:1 49:22

computer 26:11 38:8

concerns 44:24

concluded 53:25

condemned 14:19

condition 22:23 24:6 48:3 49:6

conditions 5:17 8:18 30:22 32:6

condominium 17:2

condominiums 10:2

conduct 42:16 43:5

confess 44:7

confidential 4:16 37:16, 22 38:21 53:4

confirming 40:11

confusion 14:8

connect 43:7

conquered 20:2

conscripted 20:20

consequences 32:25

constitutional 31:20

contacted 15:10

contacts 42:6

contending 36:24

context 37:17

continue 39:1,2,16 40:21

continued 28:19

continues 39:4,5

continuing 36:22

contrast 49:2

control 31:12,13 42:20,21

controlled 12:5

copy 6:3 27:17 51:15

correct 30:22

counsel 3:15,19 26:20
33:7 34:14,16 36:15,16
47:5 48:12 52:10

couple 7:4,11 9:3 15:16

court 3:4,6,13,19,24 4:13,
21,22 5:13,16,18,19 7:9,12
13:4 16:23 17:1 18:3,5,8
20:9 21:18,21,24 22:3,13,
16,19,22 23:9,11,14 24:20
29:7,10,14,17,21,25 30:4,
9,15,17,23 31:2,5 33:16,
19,22 34:2,4,7,10,14,16,19
36:5,15,17 37:11,17,20
38:17,20 39:19 40:10,20
41:18 43:21 44:10,13 45:1,
3,9,13,16,18 46:14,21,25
47:5,9,15,18,25 48:11,15
49:2,5,10,18 50:17,22
52:2,12,14,24 53:3,10,14,
19

Court's 3:21 38:7

cover 25:11

crazy 10:20

create 11:15 12:5

created 12:4,8

creates 49:12

credit 27:1

Crisis 6:15

critical 5:3

culpability 12:22

customized 53:15

_____

D

_____

darkening 28:17

date 22:4 52:17

dated 7:10,12 22:5,10
27:17

day 6:5 8:21 20:6 51:4
53:22

daycare 17:11

days 7:11 15:17 51:6

deal 24:13 28:3 29:22 52:5

dealing 51:6

debris 48:19

deceiving 14:11

December 52:25

decent 8:12

decided 6:15 52:4

decisions 41:7

declaration 4:17 40:16

defendant 39:6

defendants 3:18 24:23
25:2 30:10 36:16 39:5

defense 3:14 26:20 33:7
52:10

defer 11:5,9 33:15

degree 8:11 15:3 41:9

deliver 21:8

delving 12:12

demonstrate 41:8

deplorable 48:3

deposition 47:13

depositions 12:14 51:24

depreciate 28:10

describe 48:11

describes 44:6

describing 22:22

designation 8:1

desperately 26:10

deteriorated 29:6

deteriorating 9:11

development 17:3

devil's 43:8

DHL 21:7

diagnose 8:8

diagnosis 8:1

died 17:22

difficult 27:24 49:14

diplomatic 31:14

directing 26:2

directly 9:15 37:4

disabilities 8:12 44:1

disability 8:2 17:24 27:2
44:20

disabled 10:20 13:15
25:17 26:9 35:12 50:25
52:9

disappearing 35:7

discharged 15:4

disclose 39:10

discovery 12:14 26:22
29:22 35:23 37:6 38:15,24
51:20

discussed 50:6

disinformation 33:12

dismiss 31:18

dispute 38:15

distraction 12:5

division 10:8

divisive 11:15

docket 38:7

doctor 5:2,25 6:10 7:7

doctors 6:14 15:6,10,25
16:1,2

documentation 41:6 44:6

documents 5:1 7:4 20:13,
17,19 28:15 48:9

door 9:18 19:19 28:9

doors 12:20

doubled 13:8

draft 53:13

dramatic 8:20

Drew 3:16 51:16

drive 15:12

driven 6:13 15:14

driving 31:5,23 33:2

drop 6:16

dropped 15:11

drove 17:11

dry 7:20

due 25:3 30:11 44:21

Durbin 8:22 9:14 12:1,24
19:17 20:15 26:4 50:14

dying 48:18

_____

E

_____

e-mail 27:17 28:24

e-mailed 4:15 6:2

e-mailing 28:7

earlier 33:17

easements 28:15

eat 41:23

effect 39:12

Elam 17:21

elderly 13:15

eldest 16:17

elected 11:7,11

element 35:6

emergency 10:12

emotional 5:9 8:6

emphasizing 49:13

encompass 41:17

end 43:9

ended 10:17 13:10

enforcement 7:1

engineer 19:3

entered 38:3,4

entitled 25:3,4 30:10,11 51:13

escalated 15:24

evacuated 18:19

evaluate 36:23

everyone's 52:14

evidence 20:4 37:1 39:22

exacerbate 42:17

exercise 27:14

exhibit 19:15 22:9

exhibits 19:13 22:25 47:17

existence 49:12

expected 20:5

expects 41:19

experiences 17:5

experiencing 42:19

explained 27:9

explaining 22:23

explored 37:5,6

explosion 18:10

express 42:5

extend 23:5

eyes 53:8

—————   F   —————

face 16:21 17:8 33:3

fact 21:22 26:25 39:14 41:12

facts 39:21

factual 40:3,4,8,13 44:1,6,8

failed 26:24

failing 52:8

familiar 24:5

families 13:16

family 16:13

Fannie 39:8

fast 4:24

father-in-law 17:3 19:2

fear 15:19

fearful 21:10

February 38:9 52:25

fed 33:12

federal 32:15

feel 13:12 17:16 25:6 28:19

feet 17:12 43:10

feet all 18:18

feigned 27:25

fell 27:16

felt 5:7 12:25 16:5

females 16:2

fiduciary 11:12

field 8:10 9:7 17:18 35:2 51:10

fight 10:25 21:9,15

fighting 13:8 15:7

figure 23:3

file 6:6,17 20:21 35:23 37:13 51:9

filed 10:9 12:3 20:10 35:5 37:18 38:6,9 41:1 45:9,10 51:11

filing 36:10 41:13

filings 41:7

financing 39:8,9

find 10:4 21:4

findings 42:13

fine 4:10 10:22 25:10,11 50:14 51:9

finish 23:2 26:11 34:21

fire 50:9

Fisher 17:22

flipped 17:15

floor 43:13

focus 17:23 50:18

focusing 44:18

folks 42:7,17,21 46:18 53:2,19

follow 4:11

Fong 14:8 20:9

forever 24:25

forget 4:7

forgot 27:18

form 38:24

forward 25:18 34:22 42:11 43:11

found 12:2

frame 12:25 20:9 24:7 35:15

Francisco 16:22

Freddie 39:8

Fremont 14:19

frightened 14:20,21

frightening 11:20 21:14

front 32:19

frustrated 10:24

frustrating 11:16 15:9

frustration 33:5

full 36:18

fully 36:23

function 51:1

furniture 32:5

furtherance 40:24

future 4:5 30:6 41:20 52:17

—————   G   —————

gaslight 25:20

gather 31:12

gauge 28:12

gave 4:6 5:6,25 7:4 27:12

general 40:19

gentleman 25:17 31:23 51:17

George 15:16

Gibson 16:9 25:15 26:4 50:3

give 11:14 13:25 20:19 21:2 24:11 27:11 29:22 35:9 43:9 44:13 47:16 48:4 51:18

giving 18:16 41:19 48:12

glaring 33:11

glasses 7:23 19:16

good 3:4,5 5:22 21:9,15

gossip 16:11

govern 53:4

government 15:7 32:15

governs 37:24 38:21

gracious 27:11

grand 13:8,17,18

grandchildren 16:18

grant 3:25 23:23,24,25 24:9 25:6 34:4 43:16 52:16

granted 27:4 42:9 51:18

granting 36:11

Grass 48:18

grassy 48:18

grateful 25:12

greater 44:13

grooming 14:3

grounds 36:21,24 37:9 47:4

group 10:9 43:23

guess 9:23 14:16 16:4 41:16

guide 16:15

guns 21:14 33:9,10

guy 8:22 9:14 19:17

guys 40:2

**H**

half 15:1 26:23

hallway 18:1

hand 47:19

handed 48:13

handing 48:5

handle 28:25

handled 45:21,22

happen 30:6,20 41:19

happened 10:13 39:22 50:10

happenstance 19:22

happy 53:2

harassment 6:16 32:14

hardships 39:17

Harvey 17:21

head 25:22 31:25 52:18

health 22:8 23:19 26:24 29:6

healthy 48:19

hear 34:21 36:15

heard 14:8 16:7 20:11 28:13,18 36:2 42:5,15

hearing 8:20 10:15 13:1,6 14:9,14 24:10 27:6,18 28:6,18 34:7 40:10 52:17

hearings 9:9 41:3

heated 27:23

held 7:15

helped 17:22

helpful 22:24

Hey 35:7

highly 18:14,21,25

history 24:16

hit 18:12 32:2

HOA 41:5

homeowner 39:6

homeowners 11:4,6

homes 14:23 21:4

honest 10:4

Honor 3:16 34:13,15 36:19 37:19 39:3,15 43:14,16,17 44:4 45:6 46:11,12,24 47:4

Honor's 45:17

hoping 46:19

Horan 30:21 52:5

hospitalization 14:15

hospitalized 13:2

hour 17:20

house 13:25 14:25 20:8

HUD 6:21,22

hug 13:25

huge 10:12 20:3 28:23

hundred 14:17

husband 17:19 18:16,22 20:21 26:9

**I**

idea 37:21

ignorance 27:25

imagined 38:14

immediately 27:10,16 36:14 50:15

impaired 26:11

implicitly 41:16

imply 26:21 41:16

important 5:21 24:17 46:15

inclination 52:16

inclined 3:25 43:16

include 23:1

includes 37:2,3

including 42:24

incorporating 35:14

indefinite 23:24,25

individualized 38:24

individuals 29:15

inevitably 37:7

information 37:2,3,4,16, 22,24 38:21 44:22 45:4 46:9 53:5

initial 38:16

initiated 38:16

injuries 17:13,16 19:9

innocent 28:23

insensitivity 52:9

inspection 50:13

intense 7:2

intention 24:8

interests 11:12 44:17,18, 19 46:5,6,21,23

interrupt 21:18

interview 18:17

investigate 10:13 33:14

involved 53:16

involves 37:22

issue 23:3 46:12,16,23 53:6,21

issued 37:14

issues 37:8 40:24 41:7 42:22 43:19 49:13 53:16

issuing 27:7 42:5

items 4:14

**J**

January 10:15 13:6 14:14 52:25

jeopardy 15:5

job 17:20

John 15:16 16:9 25:15 26:4 50:3

judge 22:20 27:7 28:17,19, 21

judges 29:20

July 13:2,4 14:16 36:12

June 14:15 18:12,13 20:12 36:11

jurisdiction 29:8,10,14 33:20

**K**

Kevin 30:21 31:8 52:5

key 11:1,2

keys 11:1

killed 17:6,14 18:11,13

Kills 18:20

kind 9:2 48:22

kinds 37:16

knee 27:16

knew 13:2,22 14:11 32:19

knowingly 14:2

knowledge 38:5

**L**

Labor 9:11

labyrinth 8:17

language 33:5

large 20:24

latitude 44:13

law 7:1 44:16

lawsuit 24:18 30:5,12,19 31:21 33:25 37:3 41:24 43:6 49:12 50:1

leading 10:16

learned 12:2,14 25:16

leave 6:8 25:24 27:24 41:20

left 16:17 50:8

leg 17:13,17 27:20

legal 8:10 9:7 17:18 23:17 24:16 35:2 43:4 51:10

letter 5:1 7:7 22:4,5,8,9,10, 19 23:6,16,20 24:2 43:23

44:5

**letters** 5:25 10:18

**letting** 35:12 36:5

**level** 11:21

**levels** 20:7

**lied** 21:23

**lies** 12:22

**life** 8:3,12 9:12

**lighting** 35:18

**likewise** 31:14

**limit** 45:21

**limitations** 52:7

**limited** 20:15 45:22,24 46:8

**link** 43:2

**listing** 19:15

**litigation** 17:20 29:1 39:9, 11,23 40:24,25 41:9 48:3 53:6

**live** 11:16 18:22,25 19:5

**lived** 8:12 17:3

**lives** 16:20

**living** 32:6

**lo** 15:15

**loan** 15:3

**locate** 7:3

**located** 14:10

**locked** 10:23 15:1

**locks** 10:25

**logically** 43:7

**long** 12:19

**longer** 15:4

**looked** 49:1

**Lori** 17:22

**lose** 14:23

**lot** 4:15 5:4,8 7:21 15:2 20:24 32:22 50:7

**lots** 5:6

**lounges** 48:16

**love** 21:15 26:14

**loves** 21:9

**Luanne** 3:17 8:19 26:20 27:5 51:17

---

**M**

**Mac** 39:8

**made** 13:20 41:7 47:13,20 50:12,18

**Mae** 39:8

**mafiosi** 31:19

**main** 5:25 11:2

**maintained** 48:22

**maintaining** 9:4

**make** 5:19 19:21 22:4 30:18 43:25 48:4 49:13,14, 20 52:3

**making** 42:13 43:2 49:11

**male** 6:11 16:2

**man** 8:23 16:9 21:7,10,13 23:12,13,14 31:22 33:9

**manager** 31:16 41:5

**March** 20:11 52:20,21,25

**Mark** 26:5

**marriage** 18:24

**married** 8:9

**Mary** 3:11 23:18

**master's** 8:11 15:3

**math** 52:18

**matter** 3:6,12,21 6:1 25:16 36:22 38:4 39:14 40:19 43:11 47:1 52:6,15 53:21

**matters** 44:14

**Meadowbrook** 19:6

**means** 11:11 25:24 26:8, 17 27:5 42:24 50:21

**meantime** 53:2

**mechanic** 32:12

**medical** 23:1,19 29:2 30:22 37:2,4 43:22,23 47:23 50:6

**medication** 7:16,20

**meet** 32:8

**meetings** 20:17

**members** 39:5 40:16

**membership** 39:17 40:9

**menopause** 15:2

**mental** 22:8 23:19

**mentally** 51:21

**mentioned** 3:24 35:11 50:20

**merits** 22:1

**messes** 31:25

**messing** 25:22

**met** 9:13

**Michael** 8:22 9:14 12:24 20:15 26:4

**Mike** 12:1 19:17 50:14

**mind** 7:17,19 10:19 12:25

**minions** 12:9

**minute** 13:25

**minutes** 5:11

**Mishra** 4:7

**missed** 13:12

**missing** 49:22

**misunderstood** 34:25

**mocking** 31:24

**model** 53:11

**modicum** 50:7

**molested** 14:2

**moment** 7:9 18:3 34:14,16 52:19

**Monday** 35:7

**money** 20:4 49:23

**monitor** 24:17

**month** 13:16 14:16 15:8

**months** 4:5 5:3 6:2,12 10:16 23:18 24:3,6,9,10 25:7,13 34:5,8 35:8 36:9 43:10,17,19,24 51:23 52:17,21 53:1

**morning** 3:4,5 18:20 42:6

**mother** 8:9 15:20 27:21

**motion** 35:13 38:7 41:17

**motions** 6:17 30:13

**mouth** 7:20

**mouthpiece** 31:17

**move** 11:10 25:5 34:22 35:18

**moved** 13:16 16:16 17:2

**moves** 42:10

**moving** 35:13

**multiple** 8:4 27:1 41:1

**Mystery** 18:20

---

**N**

**named** 16:9 29:15

**narrower** 21:25

**nationalities** 13:14

**Neanderthal** 32:9

**necessarily** 31:3

**needed** 20:20 23:21

**neglected** 15:20

**neighbors** 16:9

**nice** 9:16 48:25

**night** 17:25 18:12,18

**noises** 15:19

**Norcal** 50:11

**Northern** 3:7,8

**notebook** 16:15

**notes** 37:12

**notice** 12:12,13

**notwithstanding** 40:25

**November** 52:25

**number** 4:4 10:13 20:24 39:1 50:1

**numbers** 19:15

**O**

**Oakland** 3:1

**objectionable** 52:11

**objections** 36:21 47:4

**obligated** 13:12,17

**observation** 15:17

**obstacles** 8:13

**obtain** 43:5

**occupied** 10:19

**occur** 40:18

**occurred** 6:13

**October** 3:1 7:12 22:6 23:11 52:23,24

**office** 32:13

**offices** 6:20

**older** 18:23

**ongoing** 41:25

**operate** 32:9

**opinion** 23:17

**oppose** 35:9

**opposing** 12:11 44:8

**opposition** 12:6

**order** 3:6 6:6 16:10 20:11 25:23 26:16 27:4,11 35:21 37:14,15,19,24 38:2,9,11, 20,23 42:5 44:12 45:3 50:2 51:15,18 53:4,22

**orders** 7:2,18 25:25 29:20 41:2,3,4 42:2,25 43:5 52:4

**orotate** 4:18

**ostearthritis** 19:9

**ostensibly** 10:11

**P**

**pain** 18:18

**paint** 7:5

**papers** 38:10 39:20 40:12

**paperwork** 41:2

**paralegal** 9:8 51:3

**parameter** 36:12

**part** 4:17 33:25 37:24 42:4 45:1 46:9 47:13,20,25 48:1,6,7

**participate** 41:9

**parties** 37:23

**parts** 47:15 48:15

**party** 31:2,3

**pathways** 48:19

**patios** 49:21

**pattern** 51:14

**pause** 52:19

**pay** 13:11,17 20:2,5

**paying** 28:5

**payments** 13:13

**peace** 7:18

**pedestrian-vehicle** 17:7

**penalized** 29:5

**people** 6:7 7:5,24 9:5,8 10:9,15,19 11:1,14 12:3, 18,19 13:16,18 14:17 15:19 18:13 19:23 25:18, 21 26:1,6,8 27:9 28:7 31:16,17 32:5,25 33:15,22 35:14,25 43:9 50:12

**people's** 49:15

**Perfect** 34:9

**perfectly** 27:7 41:14 50:21

**period** 4:2 23:4 24:3 41:25 43:17,24 44:2

**periodic** 24:25

**periodically** 30:1

**permanent** 8:2

**Permanente** 43:23

**permission** 11:11

**person** 22:7,17 31:5 36:1

**personal** 44:19

**perspiring** 5:11

**persuade** 45:23

**pestering** 26:8

**petition** 10:10 12:3,7

**Pharaoh** 11:9

**phonetic** 8:22 12:10 28:20

**photographs** 48:13,23 49:3

**pick** 25:7

**picture** 7:5 16:19

**pictures** 7:5,24 9:4 16:17 25:17

**pieces** 12:20

**pill** 18:18

**place** 6:21 7:18 32:20 44:12 45:2

**places** 8:22

**plaintiff** 3:12 24:15 36:24 37:9 38:6,8 40:23 41:8,12 45:11

**plaintiff's** 44:6

**pleaded** 6:22

**plenty** 5:14

**point** 4:20 9:13 15:14 25:2 26:25 28:8 30:10,17,24 36:20 39:1 41:11 42:9 44:9 49:10,11

**pointed** 28:16

**pool** 10:23 14:25 19:14 27:14 29:4 48:16,17

**pools** 19:8 27:19

**portion** 23:16

**portraying** 28:22

**position** 9:24 39:24

**postal** 32:13

**potential** 39:10

**potentially** 13:18 38:21

**power** 6:18,24 11:3

**power-hungry** 11:13

**power-placed** 11:14

**precaution** 16:6

**preceding** 10:17

**preclude** 42:23

**prejudice** 39:16 40:1

**prejudiced** 39:6

**prepare** 37:23

**prepared** 41:21 52:15

**presence** 7:16

**presented** 40:13 42:22 44:15 45:10

**president** 8:24 32:1,11

**presumed** 45:8

**pretended** 12:11

**prevent** 19:10

**preventing** 42:7

**preview** 41:19

**previous** 18:24

**primitive** 32:9

**privacy** 44:19 45:20 50:8

**private** 16:13 32:16 50:6

**privileged** 48:8

**privileges** 11:14

**problems** 8:6,15 9:2 28:25 39:23

**procedure** 35:3

**procedures** 36:3

**proceed** 6:12,19

**proceeding** 21:25 25:5 37:17 38:22 42:15 53:1,17

**proceedings** 6:11 23:17, 23 29:11 33:25 42:3 43:4 53:25

**process** 20:16 25:3 30:11 31:20 37:25 41:10 44:21

**professional** 43:22

**progress** 24:18 43:25

**progressing** 24:22

**prohibiting** 38:23

*BERNSTEIN HEARING     10/09/2019*

Index: project..shorter

project 9:14

pronoun 23:15

pronounce 23:7

property 9:2 14:17,18
31:16 32:24 33:14 39:13
41:5 47:23 48:2,14,16,21
49:4,5

propose 44:12

proposed 36:3,4 41:22
53:3

prosecute 41:24

prosecuting 43:6

protect 33:14

protected 16:19

protective 20:11 37:13,15,
18,23 38:7,9,10,20,23
44:12 45:3 50:2 51:15 53:4

provide 39:9 40:2 44:2
45:4 46:13 53:3

provided 22:3,25 36:25
44:5,14,21 45:5 49:3 53:5

psychiatrist 6:10

PTSD 8:7

purpose 38:13,14

pushback 32:25

put 6:15 7:8 19:16 32:7
41:2 44:12 45:1,2 47:21

                  Q

question 37:11,19 38:25

                  R

railroad 18:6

ramp 28:9 29:2 50:23

rapport 13:22

read 22:8 23:15 32:3

readdress 43:19

reading 7:23 40:11

ready 40:5

realize 19:19 32:11

realtor 19:4

reason 10:25 28:23

rebut 50:19

rebutting 49:20

recall 10:10 38:2

receiving 42:8

recently 9:17

record 3:10,17 5:4,19,22
22:4 23:16 36:18 47:20,21
48:7,11

records 23:1

recover 35:18 42:18

recovering 17:8

recuperating 51:21

reenter 15:23

reentered 8:14

reevaluate 43:18

regard 42:1 43:11,25
45:19

register 13:23 14:1

rehabilitate 25:14 26:17
27:13 42:10

rehabilitation 23:19 36:10

relate 37:4

related 40:24 41:2,3 44:19

relief 29:22 33:24 42:24
43:10

relieved 12:25

remark 14:7

remember 4:8 22:12

repairs 50:15

reply 47:7,12

reporter 4:22 5:19 36:17

represent 9:8

representation 17:23

representative 9:9

request 4:1 42:2 44:7
45:17,20 46:9

requested 20:14 37:14
38:2 43:18

requests 6:7 27:8 28:7,24
40:6 41:5 45:25

research 44:11,25 45:24
46:4,18,22 53:3

Reshma 4:7 47:12

residences 39:9

Residential 6:15

resolved 39:18

respect 44:24

responding 43:12

responsibility 12:18

rest 35:17

restraining 6:6 7:1,18
16:10 25:25 29:20 41:2,3,4
42:2,25 43:5 52:4

result 6:5 39:23

retaliated 27:10,16

retired 19:3

review 41:6

revolving 12:20

Richard 14:8 20:9

rid 10:12

rights 24:23,24 25:4 44:21

road 43:20

room 10:20

ruled 11:19

ruler 11:18

rules 45:20

ruling 3:21,25 23:4 42:13

running 20:19

rush 5:16

Rutherford 3:18 8:19
26:20 27:6

                  S

S-H-A-I 22:6

San 16:21

save 21:4

scene 17:14

school 8:5

science 26:11

scope 6:24 20:16

Scott 17:10

secondary 15:21

secretary 9:24

section 21:3

sector 32:16

secure 39:7

security 9:9,10

seek 33:24 40:7 41:13

seeking 41:5,20 42:23

sell 39:12 49:15

Senators 7:1

Senators' 6:20

sense 32:12

separate 29:1

served 38:10

sessions 20:18

set 24:9 34:7 35:15,16
52:17 53:1

severe 6:17

severely 39:6

sexual 32:14

SF 18:20

Shai 6:10 7:7 22:6,17 23:8,
11,12

share 45:4,24 46:8 47:1

shared 38:22

sharing 37:15

she'll 51:24,25

shifty 20:10

shock 17:18

short 9:15

shorter 43:17 44:2

show 21:22

showing 49:1,3

shows 14:11

slc 4:19

side 5:6 21:7 33:10 45:10

signed 15:5

significant 39:12 41:9

Simonson 26:5

simply 45:13

single 35:2

sir 3:5

situation 11:15 43:18

slamming 32:5

slats 18:6

slow 4:21

slowly 5:20 36:17

smiling 33:3

social 9:8,10

socialize 26:9

socialized 16:8

son 16:17,19 18:23 26:10,
14 48:25

sooner 43:19

sort 39:24

sorts 41:7

sought 37:21

sounds 40:1

speak 5:20 36:17

special 13:6

specially 45:22

speed 35:18

spell 25:24 26:16 32:18

spelled 25:13

spiteful 28:1

splintered 12:4

sprinklers 50:9

stairs 21:8

standard 45:7

standing 21:12

standpoint 39:25

Stanford 19:3

start 15:9 16:14

started 8:14 9:1,11

starting 30:24

state 3:9

stated 15:11 27:22 41:1
47:3 50:10

statement 17:21 48:4

statements 42:1,14

States 32:13

stating 33:8 48:1

status 10:21

statute 52:7

stay 4:1 6:1 23:5,17,24,25
24:4,9,24 25:7 26:1,17
27:3 28:2 29:3,5 33:23
34:4 35:4 36:12,22,25
37:10 38:16 39:4 40:6,25
41:10,15,16,24,25 42:8,14
43:16 44:2 51:19,20,21,24
52:16

stayed 39:14

staying 39:16

step 27:19,23 29:4 30:7

stepfather 32:4

steps 28:9 40:24

stimuli 15:18

stir 10:20

stop 6:22,25 31:17,18

story 16:16

strategy 5:8

street 17:10 18:13

stress 6:5 9:12 13:13
15:15 27:21 51:2

stressed 5:12 26:14,15

string 26:21

stringent 36:21

stroller 17:15

struggles 11:3

stuff 4:15 7:22 14:5,10
15:2 20:22 21:23 25:11
31:12 47:23 50:4

subject 11:10

subjects 11:19

submission 47:2 52:15
53:21

submit 36:13

submitted 37:1

subpoena 21:1,3 25:15
50:4

substantive 26:23

sucked 14:4

suddenly 21:10

suggest 46:6

suggesting 46:3 48:21

suicide 15:12,14 16:4

supervisor 8:25

support 40:3,4,8,13,14
44:2 45:12

suppose 45:7

supposed 11:17 21:2

surface 12:13

surprise 35:6

Susan 12:10,16 26:5

sustained 17:12

swimming 10:22

switch 7:22 27:22

symptoms 22:23 42:10,
17,18

_____

T

T-S-U-R 22:6,19

tab 16:23

takes 14:23

taking 37:12 53:21

talk 7:22 16:11 19:21

talked 6:1 51:15,16

talking 19:18 38:17,18
50:2 52:19,20

talks 18:16

targeted 28:23

team 19:23

teenage 8:9

telling 14:22 20:2 22:1
42:12

tenancy 27:8 28:7,24 29:1
50:20,23

tending 42:17

tentative 3:21,25

terrible 10:1

terrified 14:24

terror 33:3,9

terrorizing 26:25

texting 25:21

therapist 5:25 9:5

therapists 22:8

therapy 9:3 10:18 24:12

thing 13:2 23:2 25:23 31:6
34:18,20,23 35:24 41:14
43:15 50:5 51:17 52:1

things 12:11 21:4,23 22:1
26:7 29:2 33:23 37:22
39:7,18,22 47:19 48:20
50:6,21,22,23 52:5,6

thinking 44:25

thought 7:8 10:6 15:13
17:14 19:23

thoughts 32:7

threat 50:13

threw 17:12

thrilled 19:22

thrown 32:4

thugs 31:19

thundered 21:8

time 4:3 5:7,14,22 6:13
7:25 9:5,15 12:19 15:1,8
20:9 23:5,18,24 24:3,7,11,

12,13,21 25:8,23 27:11
30:7 34:7 35:15,18 36:8,12
40:6 41:11 43:25 44:3
46:16 47:10 50:22 51:4,18
52:20

**times** 18:25

**today** 23:4 34:11 35:15,16
36:2 43:1 49:16

**today's** 21:25

**told** 6:25 14:7,18 18:22
19:8 20:15 21:16 25:19
42:3 43:23

**top** 16:19,24

**torment** 6:18

**tormented** 12:9

**touching** 32:24

**Traci** 9:5

**training** 24:16 32:14

**Tram** 28:20

**transcript** 47:14 48:7

**transcripts** 27:12

**trauma** 15:21

**traumatic** 8:4 16:21 17:4,
17 18:21 19:1 32:2 51:5

**traumatized** 18:15

**treasurer** 9:23

**treatment** 15:23

**tremendous** 13:13

**trial** 31:9

**TRO** 31:23 50:10

**TROS** 7:15

**truck** 31:23

**Tsur** 23:8,9,11

**tune** 20:6 21:5 32:20

**turn** 17:9,25 18:9 43:13

**turning** 16:14

**type** 32:25 37:4

**types** 33:25

---

**U**

**Uh-huh** 3:22 22:21

**ultimately** 46:5

**unable** 36:23 37:8 39:7,17,
18 40:17

**unaware** 38:12

**uncomfortable** 32:19

**undermines** 41:10

**understand** 5:18 13:15
16:4 21:21 23:21,22 24:2,
14,17 25:2 29:8,9,21 30:5,
9,14,23 31:1,4,7,13 32:5
33:17,18,21,24 34:3,12,20
36:3 37:1 38:18 39:24
40:20 45:6,19 46:11 47:11
48:12 49:10,17 52:8 53:14

**understanding** 4:2 27:12
38:6 45:7,23

**understands** 41:22

**understood** 40:11 46:24

**United** 32:13

**unlimited** 29:8 33:19 47:9

**unprepared** 44:7

**unreasonable** 37:8

**upset** 13:18 33:11

**upstairs** 21:6 32:5

**urgency** 50:12

**utilizing** 27:22

---

**V**

**vehicle** 32:3

**version** 12:4

**versus** 3:7

**vilifying** 33:8

**visited** 19:7

**volunteer** 11:7

**voted** 11:25

**voting** 11:17 20:18

---

**W**

**waiting** 19:21

**walk** 4:18 20:7 25:20

**walker** 31:24

**walking** 13:19 18:1

**walls** 32:4

**wanted** 13:7,11 27:3 34:23
35:4,8,15 47:1 51:20

**waters** 28:17

**waving** 31:24 33:3

**weakened** 27:21

**Wednesday** 3:1

**West** 12:6,17

**Whatsapp** 25:16 26:3 50:5

**white** 18:2

**wife** 21:15,16

**Williams** 3:16,17 34:13,15
36:19 37:18 38:5,19 39:3
40:7,15,22 43:14 44:4
45:6,17 46:11,24 47:3

**willingness** 39:15

**windows** 15:18 18:11,14

**withheld** 45:12

**wits** 31:12

**woman** 6:10 12:8 23:12

**wondering** 38:1

**word** 28:18 49:14

**words** 33:6 41:24 42:9

**work** 15:4 20:1 24:12
26:23 51:3,22

**worked** 32:15 35:1 49:24
51:10

**working** 19:24 51:19

**works** 32:13 36:6

**wound** 5:10

**written** 6:17 36:7 41:4

**wrote** 31:16

---

**Y**

**year** 10:17 12:20,21 13:4
26:23

**years** 8:1,10 9:3 12:7,16,
17 15:6 32:4 48:5 49:5,23
50:16

**yelled** 21:10

**younger** 48:24

# EXHIBIT Q

## The Great Tribulation

[15] "Therefore when you see the 'abomination of desolation,' spoken of by Daniel the prophet, standing in the holy place" (whoever reads, let him understand), [16] "then let those who are in Judea flee to the mountains. [17] Let him who is on the housetop not go down to take anything out of his house. [18] And let him who is in the field not go back to get his clothes. [19] But woe to those who are pregnant and to those who are nursing babies in those days! [20] And pray that your flight may not be in winter or on the Sabbath. [21] For then there will be great tribulation, such as has not been since the beginning of the world until this time, no, nor ever shall be. [22] And unless those days were shortened, no flesh would be saved; but for the elect's sake those days will be shortened.

[23] "Then if anyone says to you, 'Look, here *is* the Christ!' or 'There!' do not believe *it.* [24] For false christs and false prophets will rise and show great signs and wonders to deceive, if possible, even the elect. [25] See, I have told you beforehand.

[26] "Therefore if they say to you, 'Look, He is in the desert!' do not go out; *or* 'Look, *He is* in the inner rooms!' do not believe *it.* [27] For as the lightning comes from the east and flashes to the west, so also will the coming of the Son of Man be. [28] For wherever the carcass is, there the eagles will be gathered together.

 **Superior Court of Alameda County Public Portal**

# Document Download

### Bernstein VS Associa Northern California

Case Number: HG18897381   Filed: 2018-03-19 14:14:52   Judicial Officer:
Category: Other Personal Injury/Property Damage/Wrongful Death   Type: Civil Unlimited

Documents | 🛒 My Cart (0 item(s) - $0.00) | 🔍 My Download History

Between [          ] and [          ]     🛒 Add All To Cart

Show [25 ▾] entries     Search: [protective order]

| Date Filed | Document Name | | | |
|---|---|---|---|---|
| 03/04/2022 | Order re: Hearing on Motion for Protective Order | 1 Page(s) | Preview | ⊕ Download |
| 03/04/2022 | Minute Order (Hearing on Motion for Protective Order) | 3 Page(s) | Preview | ⊕ Download |
| 01/26/2022 | Minute Order (Hearing on Motion for Protective Order) | 2 Page(s) | Preview | ⊕ Download |
| 01/12/2022 | Order re: Hearing on Motion to Strike Motion to Strike Complaint; Hearing on Demurrer - without Motion to Strike; Hearing on Motion for Protective Order | 2 Page(s) | Preview | ⊕ Download |
| 07/20/2021 | Opposition to Motion for Protective Order Filed | 5 Page(s) | Preview | ⊕ Download |
| 02/24/2021 | Motion for Protective Order - Motion Rescheduled | 2 Page(s) | Preview | ⊕ Download |
| 04/13/2020 | Motion for Protective Order - Motion Rescheduled | 2 Page(s) | Preview | ⊕ Download |
| 10/09/2019 | Motion for Protective Order - Motion Rescheduled | 2 Page(s) | Preview | ⊕ Download |
| 02/15/2019 | Motion for Protective Order Filed for Plaintiff | 6 Page(s) | Preview | ⊕ Download |

Showing 1 to 9 of 9 entries (filtered from 1,088 total entries)

NOTE: Please purchase the document(s) in your cart prior to leaving this page. Any document(s) not purchased will be removed from the cart.

Go Back

Terms of Service

Contact Us
About this Site

Copyright © Journal Technologies, USA. All rights reserved.

# EXHIBIT R

## The Coming of the Son of Man

29 "Immediately after the tribulation of those days the sun will be darkened, and the moon will not give its light; the stars will fall from heaven, and the powers of the heavens will be shaken. 30 Then the sign of the Son of Man will appear in heaven, and then all the tribes of the earth will mourn, and they will see the Son of Man coming on the clouds of heaven with power and great glory. 31 And He will send His angels with a great sound of a trumpet, and they will gather together His [a]elect from the four winds, from one end of heaven to the other.

## The Parable of the Fig Tree

32 "Now learn this parable from the fig tree: When its branch has already become tender and puts forth leaves, you know that summer *is* near. 33 So you also, when you see all these things, know that [b]it is near—at the doors! 34 Assuredly, I say to you, this generation will by no means pass away till all these things take place. 35 Heaven and earth will pass away, but My words will by no means pass away.

## No One Knows the Day or Hour

36 "But of that day and hour no one knows, not even the angels of [c]heaven, but My Father only. 37 But as the days of Noah *were,* so also will the coming of the Son of Man be. 38 For as in the days before the flood, they were eating and drinking, marrying and giving in marriage, until the day that Noah entered the ark, 39 and did not know until the flood came and took them all away, so also will the coming of the Son of Man be. 40 Then two *men* will be in the field: one will be taken and the other left. 41 Two *women will be* grinding at the mill: one will be taken and the other left. 42 Watch therefore, for you do not know what [d]hour your Lord is coming. 43 But know this, that if the master of the house had known what [e]hour the thief would come, he would have watched and not allowed his house to be broken into. 44 Therefore you also be ready, for the Son of Man is coming at an hour you do not expect.

thank you
For Helping us





Happy Mothers Day





# EXHIBIT S

## The Faithful Servant and the Evil Servant

⁴⁵ "Who then is a faithful and wise servant, whom his master made ruler over his household, to give them food [ii]in due season? ⁴⁶ Blessed *is* that servant whom his master, when he comes, will find so doing. ⁴⁷ Assuredly, I say to you that he will make him ruler over all his goods. ⁴⁸ But if that evil servant says in his heart, 'My master is delaying [ij]his coming,' ⁴⁹ and begins to beat *his* fellow servants, and to eat and drink with the drunkards, ⁵⁰ the master of that servant will come on a day when he is not looking for *him* and at an hour that he is not aware of, ⁵¹ and will cut him in two and appoint *him* his portion with the hypocrites. There shall be weeping and gnashing of teeth.

### The Seventh Seal and the Golden Censer

8 When he opened the seventh seal, there was silence in heaven for about half an hour.

² And I saw the seven angels who stand before God, and seven trumpets were given to them.

³ Another angel, who had a golden censer, came and stood at the altar. He was given much incense to offer, with the prayers of all God's people, on the golden altar in front of the throne. ⁴ The smoke of the incense, together with the prayers of God's people, went up before God from the angel's hand. ⁵ Then the angel took the censer, filled it with fire from the altar, and hurled it on the earth; and there came peals of thunder, rumblings, flashes of lightning and an earthquake.

### The Trumpets

⁶ Then the seven angels who had the seven trumpets prepared to sound them.

⁷ The first angel sounded his trumpet, and there came hail and fire mixed with blood, and it was hurled down on the earth. A third of the earth was burned up, a third of the trees were burned up, and all the green grass was burned up.

⁸ The second angel sounded his trumpet, and something like a huge mountain, all ablaze, was thrown into the sea. A third of the sea turned into blood, ⁹ a third of the living creatures in the sea died, and a third of the ships were destroyed.

¹⁰ The third angel sounded his trumpet, and a great star, blazing like a torch, fell from the sky on a third of the rivers and on the springs of water— ¹¹ the name of the star is Wormwood.[a] A third of the waters turned bitter, and many people died from the waters that had become bitter.

¹² The fourth angel sounded his trumpet, and a third of the sun was struck, a third of the moon, and a third of the stars, so that a third of them turned dark. A third of the day was without light, and also a third of the night. ¹³ As I watched, I heard an eagle that was flying in midair call out in a loud voice: "Woe! Woe! Woe to the inhabitants of the earth, because of the trumpet blasts about to be sounded by the other three angels!"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

| | |
|---|---|
| Mary Bernstein<br>Plaintiff/Petitioner(s)<br>vs.<br>Associa Northern California et al<br>Defendant/Respondent(s) | No.      HG18897381<br><br>Date:    03/04/2022<br>Time:    9:00 AM<br>Dept:    512<br>Judge:   Eumi Lee<br><br>ORDER re: Hearing on Motion to Quash<br>Service of Summons |

No appearance from the Plaintiff. The Court continued the hearing on the motion to quash service of summons to 3/25/22 at 9:00 AM in Department 512.

The Court orders the deadlines for Farmers Group, Inc.'s discovery responses remained tolled, and will be extended until 30 days after the issuance of the order on the motion to quash.

The Hearing on Motion to Quash Service of Summons scheduled for 03/04/2022 is continued to 03/25/2022 at 09:00 AM in Department 512 at Hayward Hall of Justice.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Dated: 03/04/2022

Eumi Lee / Judge

---

ORDER re: Hearing on Motion to Quash Service of Summons                    Page 1 of 1

# EXHIBIT T

**The Woman and the Dragon**

12 A great sign appeared in heaven: a woman clothed with the sun, with the moon under her feet and a crown of twelve stars on her head. ² She was pregnant and cried out in pain as she was about to give birth. ³ Then another sign appeared in heaven: an enormous red dragon with seven heads and ten horns and seven crowns on its heads. ⁴ Its tail swept a third of the stars out of the sky and flung them to the earth. The dragon stood in front of the woman who was about to give birth, so that it might devour her child the moment he was born. ⁵ She gave birth to a son, a male child, who "will rule all the nations with an iron scepter."[a] And her child was snatched up to God and to his throne. ⁶ The woman fled into the wilderness to a place prepared for her by God, where she might be taken care of for 1,260 days.

⁷ Then war broke out in heaven. Michael and his angels fought against the dragon, and the dragon and his angels fought back. ⁸ But he was not strong enough, and they lost their place in heaven. ⁹ The great dragon was hurled down—that ancient serpent called the devil, or Satan, who leads the whole world astray. He was hurled to the earth, and his angels with him.

¹⁰ Then I heard a loud voice in heaven say:

"Now have come the salvation and the power
    and the kingdom of our God,
    and the authority of his Messiah.
For the accuser of our brothers and sisters,
    who accuses them before our God day and night,
    has been hurled down.
¹¹ They triumphed over him
    by the blood of the Lamb
    and by the word of their testimony;
they did not love their lives so much
    as to shrink from death.
¹² Therefore rejoice, you heavens
    and you who dwell in them!
But woe to the earth and the sea,
    because the devil has gone down to you!
He is filled with fury,
    because he knows that his time is short."

¹³ When the dragon saw that he had been hurled to the earth, he pursued the woman who had given birth to the male child. ¹⁴ The woman was given the two wings of a great eagle, so that she might fly to the place prepared for her in the wilderness, where she would be taken care of for a time, times and half a time, out of the serpent's reach. ¹⁵ Then from his mouth the serpent spewed water like a river, to overtake the woman and sweep her away with the torrent. ¹⁶ But the earth helped the woman by opening its mouth and swallowing the river that the dragon had spewed out of his mouth. ¹⁷ Then the dragon was enraged at the woman and went off to wage war against the rest of her offspring—those who keep God's commands and hold fast their testimony about Jesus.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice, Department 512

### JUDICIAL OFFICER: HONORABLE EUMI LEE

Courtroom Clerk: Melvyn Gonzales                         CSR: Coral Corey

---

**HG18897381**                                                         March 4, 2022
                                                                            9:00 AM

**Bernstein VS Associa Northern California**

---

## MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Case Management Conference**

ORDER RE: CASE MANAGEMENT

The Court has ordered the following after review of the case.

No appearance from the Plaintiff. The Court continued the case management conference to 3/25/22 at 9:00 AM in Department 512.

The Case Management Conference scheduled for 03/04/2022 is continued to 03/25/2022 at 09:00 AM in Department 512 at Hayward Hall of Justice.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

Chad Finke, Executive Officer / Clerk of the Court

By:          M. Gonzales, Deputy Clerk
                        Minutes of: 03/04/2022
                        Entered on: 03/04/2022

# EXHIBIT U

**The Beast out of the Earth**

[11] Then I saw a second beast, coming out of the earth. It had two horns like a lamb, but it spoke like a dragon. [12] It exercised all the authority of the first beast on its behalf, and made the earth and its inhabitants worship the first beast, whose fatal wound had been healed. [13] And it performed great signs, even causing fire to come down from heaven to the earth in full view of the people. [14] Because of the signs it was given power to perform on behalf of the first beast, it deceived the inhabitants of the earth. It ordered them to set up an image in honor of the beast who was wounded by the sword and yet lived. [15] The second beast was given power to give breath to the image of the first beast, so that the image could speak and cause all who refused to worship the image to be killed. [16] It also forced all people, great and small, rich and poor, free and slave, to receive a mark on their right hands or on their foreheads, [17] so that they could not buy or sell unless they had the mark, which is the name of the beast or the number of its name.

[18] This calls for wisdom. Let the person who has insight calculate the number of the beast, for it is the number of a man.[e] That number is 666.

Exodus 12:23

The Exodus

31 During the night Pharaoh summoned Moses and Aaron and said, "Up! Leave my people, you and the Israelites! Go, worship the Lord as you have requested. 32 Take your flocks and herds, as you have said, and go. And also bless me."

33 The Egyptians urged the people to hurry and leave the country. "For otherwise," they said, "we will all die!" 34 So the people took their dough before the yeast was added, and carried it on their shoulders in kneading troughs wrapped in clothing. 35 The Israelites did as Moses instructed and asked the Egyptians for articles of silver and gold and for clothing. 36 The Lord had made the Egyptians favorably disposed toward the people, and they gave them what they asked for; so they plundered the Egyptians.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Hayward Hall of Justice

| | |
|---|---|
| Mary Bernstein | No.    HG18897381 |
| Plaintiff/Petitioner(s) | |
| vs. | Date:   05/02/2024 |
| Associa Northern California et al | Time:   9:08 AM |
| | Dept:   517 |
| Defendant/Respondent | Judge:   Keith Fong |
| (s) | |

ORDER re: Vacating Order to Show Cause

In view of Plaintiff's accommodation request, the Order to Show Cause issued on 03/05/2024 is vacated.

The Order to Show Cause Re: Failure to Appear scheduled for 05/07/2024 is vacated .

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated :  05/02/2024

Keith Fong / Judge

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>05/02/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>S. Clark |
| PLAINTIFF/PETITIONER:<br>Mary Bernstein | |
| DEFENDANT/RESPONDENT:<br>Associa Northern California et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>HG18897381 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Hayward, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Chandon Sheath
1208 Albacore Terrace
Fremont, CA 94536

WELLS FARGO BANK, N.A.
595 Market Street
San Francisco, CA 94105

Chad Finke, Executive Officer / Clerk of the Court

Dated: 05/02/2024

By:

S. Clark, Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT V

Psalm 91
1 Whoever dwells in the shelter of the Most High
   will rest in the shadow of the Almighty.[a]
2 I will say of the Lord, "He is my refuge and my fortress,
   my God, in whom I trust."

3 Surely he will save you
   from the fowler's snare
   and from the deadly pestilence.
4 He will cover you with his feathers,
   and under his wings you will find refuge;
   his faithfulness will be your shield and rampart.
5 You will not fear the terror of night,
   nor the arrow that flies by day,
6 nor the pestilence that stalks in the darkness,
   nor the plague that destroys at midday.
7 A thousand may fall at your side,
   ten thousand at your right hand,
   but it will not come near you.
8 You will only observe with your eyes
   and see the punishment of the wicked.

9 If you say, "The Lord is my refuge,"
   and you make the Most High your dwelling,
10 no harm will overtake you,
   no disaster will come near your tent.
11 For he will command his angels concerning you
   to guard you in all your ways;
12 they will lift you up in their hands,
   so that you will not strike your foot against a stone.
13 You will tread on the lion and the cobra;
   you will trample the great lion and the serpent.

14 "Because he[b] loves me," says the Lord, "I will rescue him;
   I will protect him, for he acknowledges my name.
15 He will call on me, and I will answer him;
   I will be with him in trouble,
   I will deliver him and honor him.
16 With long life I will satisfy him
   and show him my salvation."

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Hayward Hall of Justice, Department 517

### JUDICIAL OFFICER: HONORABLE KEITH FONG

Courtroom Clerk: Samantha Clark                                   CSR: None

---

**HG18897381**                                                   May 2, 2024
                                                                 9:06 AM
**Bernstein VS Associa Northern California**

---

### MINUTES

**APPEARANCES:**

No Appearances

**NATURE OF PROCEEDINGS: Vacating Order to Show Cause**

In view of Plaintiff's accommodation request, the Order to Show Cause issued on 03/05/2024 is vacated.

The Order to Show Cause Re: Failure to Appear scheduled for 05/07/2024 is vacated .

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

By:            S. Clark, Deputy Clerk
               Minutes of: 05/02/2024
               Entered on: 05/02/2024

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>05/02/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>S. Clark |
| PLAINTIFF/PETITIONER:<br>Mary Bernstein | |
| DEFENDANT/RESPONDENT:<br>Associa Northern California et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL<br>PROCEDURE 1010.6** | CASE NUMBER:<br>HG18897381 |

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Vacating Order to Show Cause entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

Andrew S. Elliot
SEVERSON & WERSON
ase@severson.com

Christopher Bernard Allard
McNamara, Ambacher, Wheeler, Hirsig & Gray LLP
christopher.allard@mcnamaralaw.com

Julie Elizabeth Hayashida
BHC Law Group LLP
jhayashida@bhc.law

Mary Bernstein
mbernsteinpurple@hotmail.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 05/02/2024                    By:

S. Clark, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE**
**CODE OF CIVIL PROCEDURE 1010.6**

# EXHIBIT W

Psalm 83 is a supplication for God's help against Israel's enemies[1234]. It is the last of the Psalms of Asaph, a collection of psalms that mainly use the title Elohim for God[24]. The psalm describes the situation of Israel being surrounded and threatened by various nations that plot its destruction[123]. The psalmist prays to God to intervene and defeat these enemies, as he did in the past, and to make them acknowledge his sovereignty

## Psalm 83[a]

**A song. A psalm of Asaph.**

[1] O God, do not remain silent;
  do not turn a deaf ear,
  do not stand aloof, O God.
[2] See how your enemies growl,
  how your foes rear their heads.
[3] With cunning they conspire against your people;
  they plot against those you cherish.
[4] "Come," they say, "let us destroy them as a nation,
  so that Israel's name is remembered no more."

[5] With one mind they plot together;
  they form an alliance against you—
[6] the tents of Edom and the Ishmaelites,
  of Moab and the Hagrites,
[7] Byblos, Ammon and Amalek,
  Philistia, with the people of Tyre.
[8] Even Assyria has joined them
  to reinforce Lot's descendants. [b]

03/28/2018  08:10    510-742-0307         FEDEX OFFICE    5185              PAGE  04

**FILED BY FAX**

MC-950

ATTORNEY (Name, State Bar number, and address):
Kevin Horan   SBN 90534

1697 Sorenson Drive
Lincoln CA.95648
   TELEPHONE NO.: 916-599-0084      FAX NO.:
   E-MAIL ADDRESS: kwhoranlaw@gmail.com
ATTORNEY FOR (Name): Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
   STREET ADDRESS: 24405 Amador St
   MAILING ADDRESS:
   CITY AND ZIP CODE: Hayward, CA 94544
   BRANCH NAME:

PLAINTIFF/PETITIONER:  Mary Helen Bernstein

DEFENDANT/RESPONDENT: Associa Northern California

OTHER:

_FOR COURT USE ONLY_

ALAMEDA COUNTY
March 28, 2018
CLERK OF
THE SUPERIOR COURT
By Alicia Espinoza, Deputy
CASE NUMBER:
**HG18897381**

CASE NUMBER:
HG18897381

☐ **NOTICE OF LIMITED SCOPE REPRESENTATION**
☐ Amended

JUDGE: Hon Colwell
DEPT: 511

[Note: This form is for use in civil cases other than family law. For family law cases, use form FL-950.]

1. Attorney (name):  Kevin Horan
   and party (name):  Mary Helen Bernstein
   who is the ☑ petitioner/plaintiff  ☐ respondent/defendant  ☐ other (describe):

   have an agreement that the attorney will provide limited scope representation in this case to the party.

2. The attorney will represent the party
   a. ☑ at the hearing on (date):  April 5, 2018
      ☑ and at any continuance of that hearing
      ☐ until submission of the order after hearing
   b. ☐ at the trial on (date):
      ☐ and at any continuance of that trial
      ☐ until judgment
   c. ☑ other (specify nature and duration of representation):
      Assistance to client with multiple disability issues for hearing on Ex Parte Application re:
      Enforcement of Emergency Assessment

3. By signing this form, the party agrees to sign Substitution of Attorney-Civil (form MC-050) at the completion of
   the representation described above.

Page 1 of 3

Form Adopted for Mandatory Use     **NOTICE OF LIMITED SCOPE REPRESENTATION**     Cal. Rules of Court, rule 3.36
Judicial Council of California                                                   www.courts.ca.gov
MC-950 [New January 1, 2007]

03/28/2018  08:10   510-742-0307          FEDEX OFFICE    5185              PAGE  05

MC-950

| PLAINTIFF/PETITIONER: Mary Helen Bernstein | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Associa Northern California | HG18897381 |
| OTHER: | |

4. During the limited scope representation, parties and the court must serve papers on both the attorney named above and directly on the party. (Cal. Rules of Court, rule 3.36.) The party's name and address for purpose of service are as follows:

Name: Mary Helen Bernstein

Address *(for the purpose of service):*
3416 Deerwood Terrace #113
Fremont, CA 94536

Telephone: 510-938-6280                        Fax:

This notice accurately states all current matters and issues on which the attorney has agreed to serve as an attorney for the party in this case. The information provided on this form is not intended to state all of the terms and conditions of the agreement between the party and the attorney for limited scope representation.

Date:

Mary Helen Bernstein
          (TYPE OR PRINT NAME OF PARTY)                              (SIGNATURE OF PARTY)

Date:

Kevin Horan
          (TYPE OR PRINT NAME OF ATTORNEY)                           (SIGNATURE OF ATTORNEY)

MC-950 [New January 1, 2007]        **NOTICE OF LIMITED SCOPE REPRESENTATION**        Page 2 of 3

## EXHIBIT X

⁹ Do to them as you did to Midian,
   as you did to Sisera and Jabin at the river Kishon,
¹⁰ who perished at Endor
    and became like dung on the ground.
¹¹ Make their nobles like Oreb and Zeeb,
    all their princes like Zebah and Zalmunna,
¹² who said, "Let us take possession
    of the pasturelands of God."

¹³ Make them like tumbleweed, my God,
    like chaff before the wind.
¹⁴ As fire consumes the forest
    or a flame sets the mountains ablaze,
¹⁵ so pursue them with your tempest
    and terrify them with your storm.
¹⁶ Cover their faces with shame, Lord,
    so that they will seek your name.

¹⁷ May they ever be ashamed and dismayed;
    may they perish in disgrace.
¹⁸ Let them know that you, whose name is the Lord—
    that you alone are the Most High over all the earth.

 The State Bar *of California*

**Kevin Warren Horan #90534**
License Status: Not Eligible to Practice Law

---
**CONSUMER ALERT**
This attorney is suspended from the practice of law. As a result, the attorney is ineligible to practice law in California. The State
Bar posts consumer alerts online when attorneys are suspended from practice. Anyone who believes they have been the victim
of attorney misconduct is urged to file a complaint with the State Bar.
---

Address: 1697 Sorenson Dr, Lincoln, CA 95648
Phone: 916-599-0084 | Fax: Not Available
Email: kwhoranlaw@gmail.com | Website: Not Available

## More about This Attorney  ▼

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ❶ | Discipline ❶ | Administrative Action ❶ |
|------|------------------|--------------|--------------------------|
| Present | Not eligible to practice law in CA | | |
| 12/26/2019 | Not eligible to practice law in CA | Ordered inactive | |
| 7/2/2019 | Not eligible to practice law in CA | | Suspended, failed to pay fees |
| 11/29/1979 | Admitted to the State Bar of California | | |

Here is what you need to know to access discipline documents in public cases:

Documents are added to the State Bar Court's online docket as events occur.

Search for a Case

To search for a case, please copy the case number displayed above and click Search
for a Case. In the search box, paste the complete case number. If the case number
begins with "19" or higher, you must add the prefix SBC to the case number, e.g., SBC
[CASE NUMBER]. If a case number begins with 18 or lower, there's no need to add
SBC.

Most public case records since 2000 are available through search. Older case records are available on request. The State
Bar Court began posting public discipline documents online in 2005.

NOTE: Only Published Opinions may be cited or relied on as precedent in State Bar Court proceedings.

DISCLAIMER: Any posted Notice of Disciplinary Charges, Conviction Transmittal or other initiating document, contains only
allegations of professional misconduct. The licensee is presumed to be innocent of any misconduct warranting discipline
until the charges have been proven.

**Additional Information:**
- About the disciplinary system

Copyright © 2024 The State Bar of California

8/21/24, 2:13 PM                                          Kevin Warren Horan # 90534 - Attorney Licensee Search

  

# EXHIBIT Y

**Psalm 27**

**Of David.**

¹ The Lord is my light and my salvation—
   whom shall I fear?
The Lord is the stronghold of my life—
   of whom shall I be afraid?

² When the wicked advance against me
   to devour[a] me,
it is my enemies and my foes
   who will stumble and fall.
³ Though an army besiege me,
   my heart will not fear;
though war break out against me,
   even then I will be confident.

⁴ One thing I ask from the Lord,
   this only do I seek:
that I may dwell in the house of the Lord
   all the days of my life,
to gaze on the beauty of the Lord
   and to seek him in his temple.
⁵ For in the day of trouble
   he will keep me safe in his dwelling;
he will hide me in the shelter of his sacred tent
   and set me high upon a rock.

**MARY HELEN BERNSTEIN, MSAJS**
**3416 Deerwood Terrace, #113**
**Fremont, CA  94536**
**Email:** mbernsteinpurople@hotmail.com
**(510) 938-6280**
**Plaintiff Pro Se**

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| MARY HELEN BERNSTEIN, | Case No.   HG18897381 |
| Plaintiff, | |
| vs. | **SUPPLEMENTAL** DECLARATION OF MARY BERNSTEIN IN SUPPORT OF MOTION TO STRIKE TAX COSTS OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND IN SUPPORT OF **REPLY** IN SUPPORT OF MOTION TO STRIKE TAX COSTS [1] |
| ASSOCIA NORTHERN CALIFORNIA, et al., | |
| Defendants. | |
| | Date: April 2, 2024 |
| | Time: 2:30 pm |
| | Dept.: 517 |

---

[1] *So do not fear, for I am with you;*
   *do not be dismayed, for I am your God.*
*I will strengthen you and help you;   I will uphold you with my righteous right hand.  Isaiah 41:10*
https://www.youtube.com/watch?v=AEa2QH0wYQc **When God's patience runs out PT 1**
https://www.youtube.com/watch?v=HsiNGEDRcyg **When God's patience runs out PT 2**

**SUPPLEMENTAL** DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION
FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA,
MASSINGHAM, MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 1 -



Oceanside California Mary and baby brother Frankie in the homeless shelter playpen. Frankie Oceanside California 1960-1962.



This Week on the Bible Bus

1, Mary Bernstein, declare:

1.  I am the plaintiff in this matter. I am familiar with all of the pleadings and documents filed in this case as well as discovery. His blood redeems us. There was a price against us that we could not pay, but the blood of Jesus redeemed us. 1 Peter 1:18-19 says, "Forasmuch as ye know that ye were not redeemed with corruptible things.... But with the precious blood of Christ, as of a lamb without blemish and without spot." His blood brings us into fellowship with God. Senate judiciary act of 1789 specifically gave people to right represent in court. Two cases haines v kerner 404 US 519 (1972) Erickson v Pardus 551 US 89 (2007). This is a pro se declaration motion entitled to a liberal reading and less stringent standards as this declaration motion was prepared without the assistance of legal counsel.



2.  The firm of Harsuyker, Stratman & Williams Abrego flied an Answer on behaf of Meadow Brook Village Association – Fremont and Notice of Association of Counsel on April 26, 2018. Richard A. Fong, Jr. had been the attorney for the defendants and substituted out May 24, 2018. Harsuyker, Stratman & Williams Abrego filed an an answer additionally on behalf of Associa Noarther California on May 7, 2018. An Amemded Answer was filed without

**SUPPLEMENTAL** DECLARATION OF MARY BERNSTEIN IN SUPPORT OF OPPOSITION TO MOTION FOR ATTORNEY FEES AND OBJECTION TO MEMORANDUM OF COSTS ASSOCIA NORTHERN CALIFORNIA, MASSINGHAM. MEADOW BROOK VILLAGE ASSOCIATION – FREMONT AND REPLY MOTION TO STRIKE COSTS

- 2 -

## EXHIBIT Z

[6] Then my head will be exalted
   above the enemies who surround me;
at his sacred tent I will sacrifice with shouts of joy;
   I will sing and make music to the Lord.

[7] Hear my voice when I call, Lord;
   be merciful to me and answer me.
[8] My heart says of you, "Seek his face!"
   Your face, Lord, I will seek.
[9] Do not hide your face from me,
   do not turn your servant away in anger;
   you have been my helper.
Do not reject me or forsake me,
   God my Savior.
[10] Though my father and mother forsake me,
   the Lord will receive me.
[11] Teach me your way, Lord;
   lead me in a straight path
   because of my oppressors.
[12] Do not turn me over to the desire of my foes,
   for false witnesses rise up against me,
   spouting malicious accusations.

[13] I remain confident of this:
   I will see the goodness of the Lord
   in the land of the living.
[14] Wait for the Lord;
   be strong and take heart
   and wait for the Lord.

MARY BERNSTEIN, MSAJS
3416 Deerwood Terrace, #113
Fremont, CA  94536
Email: mbernsteinpurple@hotmail.com
(510) 938-6280

October 5 2024

Via  USPS & Email
george.cardona@calbar.ca.gov
leaht.wilson@calbar.ca.gov
drew.aresca@calbar.ca.gov

George Cardona
Chief Trial Counsel
The State Bar of California
845 South Figueroa Street
Los Angeles, California 90017-2515

Leah T. Wilson
Executive Director
The State Bar of California
845 South Figueroa Street
Los Angeles, California 90017-2515

Drew Aresca
The State Bar of California
Office of the Chief Trial Counsel
180 Howard Street
San Francisco, CA 94105

Re:  Christopher Bernard Allard # #264842 Follow up per your request
State Bar Complaint Christopher Bernard Allard Case No. 24-O-13046#

Dear Mr. Cardona, Ms. Wilson and Mr. Aresca:

In 2019 your office assisted me regarding abuses suffered by my

I am a disabled litigant that has spent over $70,000 on case for trial.  I receive social security am senior citizen and caregiver for disabled family members.  I am from Washington DC.

In August 2021 my husband had stroke and in November 2021 my late Mother passed away.  My Mother had been the caretaker for my severely disabled younger sister of which I am now the caretaker.  The stress of the litigation housing crisis, my own medical issues and the stress of caring for disabled family members has taken a toll on me requiring medical stays and continuances.  This attorney Christopher Allard has now attempted to bankrupt me with fraudulent recreated billing entries submitted on behalf of an attorney that is no longer with the firm which I am exposing and bogus inflated costs in motion for attorney fees and memorandum of costs.  Farmers carrier insurance waived pursuing fees and costs however this attorney McNamara law firm pursuing.

*"Once is an accident, twice is a coincidence, three times is a pattern." The idea is that people open up to the possibility that something is plausible by seeing relevant elements happen enough times that we decide a pattern is believable. It's kind of a "conception through perception" game.*

attorney and ordered inactive Kevin Horan victims compensation fund.  I conducted small claims trial if you recall and won judgment retainer returned.  This is another instance wherein I am being abused by

counsel insurance company.  We have a Farmers' Insurance master policy to protect homeowners in the common development.

My family and I own a unit in Meadow Brook Village, have since 1988 never missing a payment.  We just paid a special assessment September 2024.  We are insured by Farmers Insurance under a master insurance policy covering the property.  We are clients of Farmers Insurance, I am a client of Farmers Insurance that has been victimized by this attorney.

**I have been very ill for some time and am finally able to address  my sister and I both extremely ill hospitalizations**



## "Once is a coincidence and twice is a pattern"
## <u>Once An Accident, Twice A Coincidence, Three Times A Pattern</u>

- 5 20 2022 email agreement farmers to waive attorneys fees and costs invoice entry #522 McNamara attempted to get paid twice duplicate billing has been paid by farmers.

- No protective order filed on 11 5 2020  #128 for attorney to review

- No lengthy hearing travel time attending hearing 11 9 2020 #131 for 4.9 hours  - no commute time as covid remote blue jean hearings

- Plaintiff's limited scope attorneys will testify that no such telephone conference ever occurred between Lloyd Winter and Luanne
- Rutherford or Christopher Allard which Christopher Allard attests to that all of these entries are true invoices and billing entries.

- #296 no third motion for recusal ever filed 9 13 2021

- #304 no telephone call occurred 9 28 201 for 1.2 hours with my limited scope attorneys they will testify

- Multiple cases all intertwined with this HG18897381 judgment over reach